UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY), | ) ) ) ) ) ) ) CIVIL ACTION NO. 05-11150-DPW |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ABBOTT LABORATORIES, | ) ) |
| Defendant. | ) ) |

## DECLARATION OF JOSEPH H. ZWICKER

I, Joseph H. Zwicker, declare:

1.      I am an attorney with Choate, Hall & Stewart LLP ("Choate"), counsel for Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and ManuLife Insurance Company (f/k/a "Investors Partner Life Insurance") (collectively, "John Hancock").

2.      I am duly admitted to practice law in Massachusetts, California and New York.

3.      I, along with other attorneys at Choate, represent John Hancock in the above-captioned matter.  The following statements are made with my personal knowledge and if sworn as a witness I could and would testify competently thereto.

4.      Attached as Exhibit A hereto is a true and correct copy of a letter from Stephen J. Blewitt of John Hancock to James L. Tyree of Abbott, dated January 5, 2006.

5.      Attached as Exhibit B hereto is a true and correct copy of a letter from Suzanne A. Lebold of Abbott to Steven J. Blewitt of John Hancock, dated January 24, 2006.

6.      Attached as Exhibit C hereto is a true and correct copy of a transcript of a hearing held before this Court in the above-captioned matter on October 13, 2005.

7.      Attached as Exhibit D hereto is a true and correct copy of Abbott's Response to John Hancock's Interrogatory No. 13.

8.      Attached as Exhibit E hereto is a true and correct copy of the Joint Statement pursuant to Local Rule 16.1.

9.      In preparing the instant motion, I reviewed Abbott's Annual Research Plans ("ARPs") between 2001 and 2005.  Based on those ARPs, Abbott claims to have spent approximately $486 million on Program Related costs during the four-year Program Term.  That amount is substantially less than the Aggregate Spending Target of $614 million under the Research Funding Agreement.

10.     Under the Research Funding Agreement, the difference between the Aggregate Spending Target ($614 million) and Abbott's claimed actual spending ($486 million) over the Program Term is known as the Aggregate Carryover Amount.  Abbott was required to spend the Aggregate Carryover Amount ($128 million) by December 31, 2005.

11.     It did not.  In a response to an interrogatory posed by John Hancock, Abbott represented that it spent only $74 million in 2005, leaving $54 million of the Aggregate Carryover Amount unspent.  (See Ex. D).

12.     Under the terms of the Research Funding Agreement, Abbott owes John Hancock one-third of that amount, or $18 million.

13.     John Hancock believes that Abbott's actual spending on Program Related costs from 2001 to 2005 may be even less than Abbott represented.  Therefore, Abbott may owe John Hancock even more than $18 million.  Until John Hancock obtains full discovery, the actual amount of its claim is unknown.

Executed this 3rd day of February, 2006 at Boston, Massachusetts.

/s/ Joseph H. Zwicker
Joseph H. Zwicker
BBO No. 560219
Choate, Hall and Stewart
Two International Place
Boston, MA 02110

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on February 3, 2006.


                                  /s/ Lisa H. Lipman
                                  Lisa H. Lipman

# Exhibit A

**John Hancock Life Insurance Company**

Stephen J. Blewitt
Senior Managing Director
Bond & Corporate Finance Group

John Hancock Place
Post Office Box 111
Boston, Massachusetts 02117
Phone: (617) 572- 9624
Fax: (617) 450-8053
e-mail: sblewitt@jhancock.com



WORLDWIDE SPONSOR

January 5, 2006

<u>BY TELECOPIER AND U.S. MAIL</u>

James L. Tyree
Senior Vice President
Abbott Nutrition International
ABBOTT LABORATORIES
200 Abbott Park Road
Abbott Park, Illinois 60064-6189

Re:    Research Funding Agreement by and between Abbott Laboratories and John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Investors Partner Life Insurance Company (collectively, "John Hancock"), dated as of March 13, 2001 (the "Agreement")

Dear Jim:

I write pursuant to Sections 3.3(b) and 16.7 of the Agreement. Section 3.3(b) provides, in relevant part, that,

> [i]f Abbott does not spend the Aggregate Carryover Amount on Program Related Costs during such subsequent year [i.e., 2005], Abbott will pay to John Hancock one-third of the Aggregate Carryover Amount that remains unspent by Abbott, within thirty (30) days after the end of such subsequent year.

Abbott has yet to provide John Hancock with its 2006 Annual Research Plan or its 2005 Status Report as required under the Agreement. The Annual Research Plan for 2006 should have been delivered to us on or before November 17, 2005 and the Status Report was due on or before December 1, 2005. In a letter dated December 6, 2005, I requested that you provide me with those documents immediately. You have not responded to my letter or provide me with the reports. On December 19, 2005, I e-mailed Suzanne Lebold notifying her regarding your lack of response to my letter and requesting her assistance with providing me with those reports. On December 22, 2005, Ms. Lebold responded that the "documents are being put together and will be available shortly".

James L. Tyree
January 5, 2006
Page 2

        In the meantime, John Hancock has information from Abbott that indicates that Abbott did not spend the entire Aggregate Carryover Amount in 2005, and that a payment equal to one-third of the unspent amount will be due and payable to John Hancock, pursuant to Section 3.3(b), on or before January 30, 2006. We also have reason to believe, however, that Abbott currently does not intend to make such a payment to John Hancock by the required deadline.

        In light of Abbott's apparent intention not to make the payment required under Section 3.3(b), John Hancock hereby requests an executive meeting with Abbott within thirty (30) days of this notice for the purpose of attempting to resolve the foregoing dispute in accordance with the requirements of Section 16.7. I invite you to contact me at your earliest convenience to schedule such a meeting. Or, if Abbott wishes, we can discuss this issue at the court-ordered mediation session in Boston on January 9, 2006. Please let me know Abbott's preference prior to that date.

                                        Very truly yours,

                                        Stephen J. Blewitt

cc:    President – Abbott Pharmaceutical Products Division  (by fax and first class mail)
       General Counsel – Abbott Laboratories (by fax and first class mail)
       Suzanne A. Lebold, Ph.D. – Abbott Laboratories (by e-mail and first class mail)
       Lawrence R. Desideri, Esq. (by fax and first class mail)
       Peter E. Gelhaar, Esq. (by first class mail)
       Brian A. Davis, Esq. (by first class mail)

# Exhibit B



Suzanne A. Lebold, PhD
Divisional Vice President
Scientific Assessment & Technology Licensing
Abbott
Dept. R50A, Bldg. AP34-2
200 Abbott Park Road
Abbott Park, IL 60064-6157

t 847-937-1436
f 847-937-1771
Email: suzanne.a.lebold@abbott.com

January 24, 2006

## VIA FAX AND FEDERAL EXPRESS

Mr. Stephen J. Blewitt
Senior Managing Director
John Hancock Life Insurance Company
John Hancock Place
Post Office Box 111
Boston, MA 02117
Phone: 617-572-9624 / Fax: 617-572-6454

Re: **Research Funding Agreement Between Abbott Laboratories ("Abbott") and John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and Investors Partner Life Insurance Company (collectively, "Hancock") Dated March 13, 2001 (the "Agreement")**

Dear Mr. Blewitt:

I write in response to your January 5, 2006 letter to James Tyree in which you request an executive meeting with Abbott concerning a payment you claim is owed to Hancock pursuant to Section 3.3(b) of the Agreement. As a preliminary matter, I previously informed that Mr. Tyree has moved on to a different position. Pursuant to Section 16.1 of the Agreement, I ask that you please direct all future correspondence on matters relating to the Agreement to me and not to Mr. Tyree. With regard to the substance of your January 5 letter, John Hancock's claim is contrary to both the language and purpose of the Agreement, and it directly contradicts the sworn testimony you gave to the federal court in Boston concerning the Agreement.

Hancock's demand for payment under Section 3.3(b) is premised on the false assumption that Abbott was required to spend $614 million without regard to the actual contribution made by Hancock. As you testified in the affidavit you submitted to the federal court in Boston, and upon which (in part) Hancock prevailed at the trial level, the very purpose of the Agreement was for Hancock to *share* with Abbott the financial burden of the development of new pharmaceutical compounds so that Abbott could pursue more potentially viable drug development opportunities than its projected internal funding would allow. As you stated to the Court under oath,


**Abbott**
A Promise for Life



Abbott, for its part, agreed to spend at least $400 million of its own funds on Program Related Costs over the four-year Program Term, and to make certain milestone and royalty payments to John Hancock depending on the progress and commercial success of the Program Compounds. . . . The *combined total* of John Hancock's maximum funding contribution and Abbott's minimum funding contribution (*i.e.*, $614,000,000) is defined in the Agreement as the "Aggregate Spending Target." (Emphasis added).

Because the Aggregate Spending Target, as you described it, was from the outset a "combined total" of both Abbott's $400 million minimum funding contribution *and* Hancock's $214 million maximum funding contribution, the Aggregate Spending Target necessarily is reduced by any payments Hancock does not make under the Agreement. Nothing in the Agreement requires Abbott to increase its share of this "combined total" to make up for payments Hancock does not make. Indeed, Section 3.5 of the Agreement makes clear that Abbott's sole responsibility is to provide funding "in excess of Program Payments from John Hancock."

As I believe you are aware, through 2005 Abbott has spent far more than its $400 million portion of the Aggregate Spending Target, independent of Hancock's payments to date. Abbott's spending on Program Related Costs through 2005, independent of Hancock's $104 million contribution, was approximately $441 million. Accordingly, for this and other reasons, there has been no shortfall on Abbott's part that would trigger any obligation to make any payment to Hancock under Section 3.3(b) of the Agreement.

With respect to the scheduling of an executive meeting, Abbott is amenable to conducting an executive-level global settlement discussion. Please let us know how you would like to proceed.

Very truly yours,

Suzanne A. Lebold, Ph.D.
Divisional Vice President
Scientific Assessment and Technology Licensing
Global Pharmaceutical Licensing and New Business Development

**Abbott**
A Promise for Life



cc:    VIA FAX and FEDERAL EXPRESS
       John Hancock Life Insurance Company
       200 Clarendon Street, T-57
       Boston, MA  02117
       Attn:   Bond & Corporate Finance Group
       Phone: 617-572-6000 / Fax: 617-572-6454

       John Hancock Life Insurance Company
       200 Clarendon Street, T-50
       Boston, MA  02117
       Attn:   Investment Law Division
       Phone: 617-572-6000 / Fax: 617-572-9268

**Abbott**
A Promise for Life

# Exhibit C

JOHN HANCOCK V ABBOTT>

```
 1              UNITED STATES DISTRICT COURT
 2               DISTRICT OF MASSACHUSETTS
 3   * * * * * * * * * * * * * * *
                                 *
 4   JOHN HANCOCK LIFE INSURANCE  *
        COMPANY                   *
 5                  Plaintiff     *
                                 *
 6      VERSUS                    *    CA-05-11150-DPW
                                 *
 7   ABBOTT LABORATORIES          *
                  Defendant       *
 8                                *
     * * * * * * * * * * * * * * *
 9
            BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10
             UNITED STATES DISTRICT COURT JUDGE
11
                   STATUS CONFERENCE
12
                   OCTOBER 13, 2005
13
     APPEARANCES:
14
          BRIAN A. DAVIS, ESQ., Choate, Hall & Stewart,
15        Two International Place, 100-150 Oliver Street,
          Boston, Massachusetts  02110, on behalf of the
16        Plaintiff
17        LAWRENCE R. DESIDERI, ESQ., Winston & Strawn, LLP,
          35 West Wacker Drive, Chicago, Illinois  60601-9703,
18        on behalf of Defendant
19        PETER E. GELHARR, ESQ., Donnelly, Conroy & Gelhaar,
          LLP, One Beacon Street, 33rd Floor, Boston,
20        Massachusetts  02108, on behalf of Defendant
21                      Courtroom No.  1 - 3rd Floor
                        1 Courthouse Way
22                      Boston, Massachusetts 02210
                        2:45 P.M. - 3:00 P.M.
23
             Pamela R. Owens - Official Court Reporter
24           John Joseph Moakley District Courthouse
               1 Courthouse Way - Suite 3200
25              Boston, Massachusetts  02210
```

JOHN HANCOCK V ABBOTT>

Page 2

1    CA-05-11150-DPW
2    OCTOBER 13, 2005
3        THE COURT: Well, I guess what's bothersome
4    to me about the schedule is it seemed prolonged. I
5    mean, you've been at it for a while, haven't you, --
6        MR. DAVIS: Your Honor, --
7        THE COURT: -- the disputes about this
8    contract?
9        MR. DAVIS: Brian Davis, Your Honor,
10   representing John Hancock. You call in round one, as
11   we call it, discovery was limited. The issues were very
12   limited.
13       THE COURT: I understand. But this is the
14   kind of discovery schedule that's established for anti-
15   trust cases. It's not -- you know, what is there that
16   requires this kind of extended work?
17       MR. DAVIS: There are a number of issues in
18   the case, Your Honor, that -- honestly, I didn't think
19   that the schedule that we put out was too protracted.
20   But the number of issues --
21       THE COURT: It's about two years, you know, 18
22   months.
23       MR. DAVIS: Well, I think we set up less than
24   a year for discovery -- fact discovery.
25       THE COURT: That's not -- well, fact

Page 3

1    discovery, yes. But the close of expert discovery is
2    January 2007. I just don't understand what's going to
3    take so long here.
4        MR. DAVIS: Your Honor, there will be
5    documents that we need to collect. That has been a bit
6    of a struggle in the past and I anticipate that we might
7    run into some struggles this time around.
8        THE COURT: What do you mean "struggles?"
9        MR. DAVIS: We had some difficulty. We had
10   some disagreements the last time around with respect to
11   document production that required some motion practice
12   as you may recall. I'm hopeful that we won't have that
13   again, but I'm anticipating that we may. And in
14   addition, there are --
15       THE COURT: Is that going to happen?
16       MR. DESIDERI: They filed a motion to compel
17   in the other case, Your Honor. There could be some
18   motion practice.
19       THE COURT: Why? Look, you really have been
20   after each other for some time. You understand that I'm
21   going to provide a full opportunity to explore the case.
22   This kind of low-grade motion practice seems to me to be
23   not worth the effort. You should have some pretty clear
24   idea of what it is that you want and you should air on
25   the side of generosity in giving it to them and get down

Page 4

1    to it and a lot faster than that. I mean, it should
2    move a little quicker.
3        MR. DESIDERI: I think one of the reasons why
4    we went through and worked out the schedule for the
5    length of it was the number of issues as well. There
6    are a fairly substantial number of issues in the case
7    that the parties have alleged.
8        THE COURT: Number of issues. What does that
9    mean?
10       MR. DESIDERI: A lot of allegations, a lot of
11   factual intense allegations.
12       THE COURT: Well, but you're in a position to
13   know what your intent was and to respond fairly
14   quickly, I would assume.
15       The short of it is you've got to do something
16   more than say they alleged a lot and we anticipate
17   trouble. That doesn't do it with me. First, I don't
18   anticipate trouble.
19       MR. DESIDERI: Nor do we.
20       THE COURT: And there will be trouble if
21   trouble is created just so you both understand.
22       MR. DESIDERI: Oh, I understand. I hope there
23   is no trouble, Your Honor.
24       THE COURT: Right. Okay. So now we're on the
25   same sheet. And my view, I guess, is that you can close

Page 5

1    all of your discovery -- that's all of your discovery
2    off by September 29th. And, so, I back it up a bit.
3        First, I don't see that you should be joining
4    additional parties. Who else is coming into this?
5        MR. DESIDERI: I don't foresee --
6        MR. DAVIS: Your Honor, at this point in time,
7    I don't anticipate any.
8        THE COURT: Okay. So that's a placeholder.
9        Amendment of pleadings, why would you be
10   amending your pleadings?
11       MR. DAVIS: That's a possibility, Your Honor.
12   As you noted in your September 16th decision, there is a
13   payment due at the end of 2005. We have indications
14   from Abbott that they may not wish to make that payment.
15   If they do not, then we'll be amending to add. The
16   payment is not due until the end of 2005. It's not yet
17   ripe, but we may have to amend. It's due by the end of
18   January.
19       THE COURT: But it's solely for that purpose?
20       MR. DAVIS: Yes, Your Honor. That's why I
21   chose that particular date.
22       THE COURT: All right. But we're not amending
23   to expand what I've been told are numerous issues in
24   this case.
25       So, what kind of experts are we talking about

2 (Pages 2 to 5)

JOHN HANCOCK V ABBOTT>

Page 6

1  here?
2      MR. DAVIS: Your Honor, there may be some
3  industry experts regarding the development of
4  pharmaceutical compounds because there are some issues
5  regarding whether they have engaged in commercially
6  unreasonable efforts. But also, I expect the other
7  experts -- the economic experts -- to calculate what the
8  losses have been to John Hancock on account of the
9  claims that have been asserted.
10     THE COURT: Well, but you can do that now.
11     MR. DAVIS: They are working on it.
12     THE COURT: I would assume so. But that means
13  that they can probably get it done substantially before
14  December. So, I'm going to back it up a bit.
15     You don't plan on any experts of your own.
16  These are going to be -- if you have experts, they are
17  going to be rebuttal experts; is that it?
18     MR. DESIDERI: Most likely, but not for sure,
19  Your Honor.
20     THE COURT: Okay. Tell me what the "not for
21  sure" part is.
22     MR. DESIDERI: There are allegations that we
23  didn't develop our own drugs at a commercially
24  reasonable pace. We may have experts, for example,
25  that can come in and testify that we did, in fact, act

Page 7

1  reasonably.
2      THE COURT: But that's a rebuttal expert to
3  their allegation. Do you have something of your own
4  that you're going to be doing?
5      MR. DESIDERI: Nothing that comes to mind,
6  Your Honor, but we could.
7      THE COURT: Okay. Well, so tell me what you
8  could do.
9      MR. DESIDERI: I'm trying to think of all the
10  issues, all the allegations that they have upon which
11  expert testimony might be appropriate. In response to
12  some of their other allegations, I think that we
13  could have experts on custom and practice in the
14  pharmaceutical industry.
15     THE COURT: Again, though, these are rebuttal
16  experts. I'm just trying to get the schedule
17  straightened away. Are there any affirmative experts
18  that you're going to be using -- that is, that you
19  believe you have the burden of proof and consequently
20  are going to be attempting to proffer experts on behalf
21  of your position on that burden of proof?
22     MR. DESIDERI: I don't think there are any in
23  which we would have the burden of proof. But there may
24  be some that are not strict rebuttal to an expert they
25  have. For example, Your Honor, we may think an expert

Page 8

1  witness -- for example, even if they didn't call an
2  expert to say what we did was commercially unreasonable,
3  we might still want to call them and just say what we
4  did is commercially unreasonable -- commercially
5  reasonable. I'm sorry.
6      THE COURT: All right. So I guess what I'm
7  going to suggest is that the parties by May 5th exchange
8  an indication of who the experts they intend to proffer
9  are, what subject matter of experts that you want to
10  proffer. It's just an outline of it, but it gives some
11  idea so that you're both aware of what's --
12     MR. DESIDERI: Of the affirmative experts?
13     THE COURT: Right. And then as to those
14  experts, expert reports to be provided by June 1,
15  rebuttal experts by July 7. And these are the kinds of
16  reports that are necessary for compliance with Rule 26.
17  And then I'll permit the close of expert discovery by
18  August 25th. That means you're doing the discovery
19  depositions -- if you choose to do that -- during that
20  time period.
21     Then what I'm going to do is say that the
22  dispositive motions will be filed by September 29th;
23  that responses are to be filed by October 26th; and
24  replies by November 18th. And then we'll see where we
25  stand on this. But that seems to me, based on the

Page 9

1  fairly substantial experience the parties have had in
2  this area, to be a more appropriate schedule for this
3  case.
4      Now, are there other things we need to deal
5  with here?
6      MR. DAVIS: No, Your Honor. May I just ask:
7  With the schedule that you contemplate, is there a
8  cutoff for fact discovery? When would that be?
9      THE COURT: It's the same time as the cutoff
10  of expert discovery.
11     MR. DAVIS: Very good.
12     THE COURT: You can conduct your -- I'm not
13  going to interfere with the way in which you conduct
14  your discovery --
15     MR. DAVIS: Understood.
16     THE COURT: -- or the sequencing in which you
17  conduct your discovery. It just all has to be over by
18  October -- August --
19     MR. DAVIS: 25th.
20     THE COURT: -- 25th. I mean, it's clear
21  you're not going to do fact discovery that impacts on
22  experts, but you'll work it out among yourselves. I'm
23  not going to get involved in that.
24     And similarly, as I think I indicated, I don't
25  see any reason for trouble on documents and stuff. Just

3 (Pages 6 to 9)

OCTOBER 13, 2005>

JOHN HANCOCK V ABBOTT>

Page 10

1  get it done.
2      All right.  Now, what else?
3      One thing that may or may not impact on this:
4  I assume that an appeal is going to be taken; is that
5  likely or do you know?
6      MR. DESIDERI:  Yes.  It's likely, Your Honor.
7      THE COURT:  Okay.  I don't see that it has an
8  impact on this case.  It will proceed in the ordinary
9  course and be resolved in the ordinary course.  And my
10  expectation is it's a relatively limited record.
11      MR. DAVIS:  Your Honor, on that point, only I
12  note there's a counterclaim having to do with failure to
13  pay the fourth program payment.  And I think that that
14  counterclaim is resolved by round one.  And I'm assuming
15  that there isn't much need for discovery on that issue,
16  additional discovery on that issue, since it had already
17  been addressed in round one.
18      THE COURT:  Right.
19      MR. DAVIS:  We won't be doing further
20  discovery on that point.
21      THE COURT:  I don't -- is there?
22      MR. DESIDERI:  No.
23      THE COURT:  I mean, if the memorandum and
24  order I issued is correct, then it's almost mechanical
25  at that point.  Okay.  But I simply don't see any reason

Page 11

1  for modifying the discovery schedule to deal with -- the
2  discovery schedule in this to deal with the contingency
3  that's created by the appeal.  We'll simply move forward
4  on that and the appeal will move forward.  And that
5  presumably will be about the same time that there would
6  be a resolution by the end of the discovery, I would
7  think, based on my sense of how long it takes one of
8  these cases to get put in a posture for review by the
9  Court of Appeals -- review and resolution.
10      All right.  Anything else we need to talk
11  about?
12      MR. DESIDERI:  Not from our end.
13      MR. DAVIS:  No, Your Honor.
14      THE COURT:  Okay.  Fine.  Thank you very much.
15      MR. ZWICKER:  Thank you, Your Honor.
16      RECESSED AT 3:00 P.M.
17
18      C E R T I F I C A T E
19      I, PAMELA R. OWENS, Official Court Reporter,
20  U. S. District Court, do hereby certify that the
21  foregoing is a true and correct transcription of the
22  proceedings taken down by me in machine shorthand and
23  transcribed by same.
24
25

4 (Pages 10 to 11)

OCTOBER 13, 2005>

# Exhibit D

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

JOHN HANCOCK LIFE INSURANCE )
COMPANY, JOHN HANCOCK VARIABLE )
LIFE INSURANCE COMPANY, and )
MANULIFE INSURANCE COMPANY (f/k/a )
INVESTORS PARTNER LIFE INSURANCE )     CIVIL ACTION NO. 05-11150-DPW
COMPANY), )
           Plaintiffs, )
)
)
    v. )
)
ABBOTT LABORATORIES, )
)
           Defendants, )

### ABBOTT LABORATORIES' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Abbott Laboratories ("Abbott"), by its undersigned counsel and pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rules, hereby responds and objects the First Set of Interrogatories of Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Investors Partner Life Insurance Company's (collectively, "Hancock").

### GENERAL OBJECTIONS AND RESPONSES

The following General Objections and Responses apply to each and every one of the numbered interrogatories below, and the General Objections and Responses shall be deemed continuing as to each interrogatory and are not waived, or in any way limited, by the specific objections and answers to any individual interrogatory.

    1.    Abbott objects to the "Definitions and Instructions" set forth in Hancock's interrogatories, as well as the interrogatories themselves, to the extent that

13.    Please state all modifications that have been made to Abbott's preliminary Annual Research Plan for 2005 since November 16, 2004, including without limitation the monetary effect of each such modification and the reason(s) for each such modification.

Response:  Abbott specifically objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and exceeds the total number of permitted interrogatories, including all discrete subparts.  Abbott further objects to this interrogatory to the extent that it seeks information provided to Hancock that is the subject of either of the Non-Use Agreements between Abbott and Hancock on the ground that the information is not discoverable or admissible and thus outside the permitted scope of discovery under Fed. R. Civ. P. 26.

Subject to these specific objections and its General Objections and Responses, and without waiving them, Abbott states that there have been no "modifications" made to the preliminary Annual Research Plan for 2005 as provided to Hancock on or about November 16, 2004.  Further answering, however, Abbott states that the total amount of spending on the remaining Program Compounds during 2005, as set forth below, was approximately $11.6 million greater than the amount of total spending for 2005 that Abbott estimated in its preliminary Annual Research Plan for 2005 without any additional contribution from Hancock.

Further answering, Abbott's actual and Last Best Estimate ("LBE") of total expenditures on the Program Compounds for 2005 is as follows:

| In Millions of U.S. Dollars | Month 11 YTD 2005 | Month12 LBE 2005 | Total Year 2005 |
|---|---|---|---|
| ABT-510 | 15.3 | 1.4 | 16.7 |
| ABT-627 Atrasentan Base | 39.0 | 4.1 | 43.1 |
| ABT-627 Atrasentan Hormone Naive Prostate Cancer | 0.0 | 0.0 | 0.0 |
| ABT-627 Japan | 1.4 | 0.1 | 1.5 |

-15-

| | | | |
|---|---|---|---|
| ABT-627 Non-Prostate Cancers | 0.9 | 0.1 | 1.0 |
| ABT-751 | 11.1 | 1.0 | 12.1 |
| Total Program Spend | 67.7 | 6.7 | 74.4 |

**14.    Please state the total amount of Abbott's intended and reasonably expected expenditures on Program Related Costs for the year 2005 as of the date of these interrogatories.**

Response:  Abbott specifically objects to the interrogatory on the grounds that it is not relevant to the claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, and exceeds the total number of permitted interrogatories, including all discrete subparts.   Subject to its specific objections and its General Objections, and without waiving these objections, Abbott states as of October 26, 2005, the total amount of Abbott's intended and reasonably expected expenditures on Program Related Costs for the year 2005 was $64.7 million.

Respectfully Submitted,

ABBOTT LABORATORIES

By:_____
One of its attorneys

Peter E. Gelhaar, Esq.
Michael S. Dorsi, Esq.
DONNELLY, CONROY & GELHAAR, LLP
1 Beacon Street, 33rd Floor
Boston, Massachusetts  02108
(617) 720-2880

and

Lawrence R. Desideri, Esq.
Stephen V. D'Amore, Esq.
Stephanie S. McCallum, Esq.
WINSTON & STRAWN LLP

-16-

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     CIVIL ACTION NO. 05-11150-DPW |

## JOINT STATEMENT
## PURSUANT TO LOCAL RULE 16.1

Pursuant to Local Rule 16.1(D) and the Court's September 6, 2005 Order, plaintiffs John

Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and ManuLife

Insurance Company (f/k/a Investor Partner Life Insurance Company) (collectively, "John Hancock"),

and defendant Abbott Laboratories ("Abbott"), hereby submit the following Joint Statement:

1.    **Agenda of Matters to be Discussed at the October 13, 2005 Scheduling Conference.**

    a.    Pre-trial schedule and discovery matters;

    b.    Trial by magistrate judge; and

    c.    Report on settlement discussion status.

**2.**    **Rule 26(f) Conference.**

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1(B), a teleconference was held on September 22, 2005, and was attended by Brian Davis, Karen Collari Troake and Joseph Zwicker for John Hancock, and Lawrence Desideri, and Stephen D'Amore for Abbott. This Joint Statement reports the results of that conference and, except where indicated, jointly proposes a discovery plan and pre-trial schedule as set forth below. .

**3.**    **Rule 26(a)(1) Initial Disclosures.**

Pursuant to the Court's Order of September 6, 2005, the parties have agreed to an exchange of the initial disclosures required by Fed. R. Civ. P. 26(a)(1) by October 27, 2005.

**4.**    **Limitations on Discovery.**

The proposals set forth below are subject to further motions by the parties, either jointly or individually.

The parties have agreed to the following limitations, subject to modification by leave of court:

> (i)    Twenty (20) depositions per side pursuant to Fed. R. Civ. P. 30(d)(2);
>
> (ii)    Twenty-five (25) interrogatories per side;
>
> (iii)    Thirty (30) requests to admit per side;
>
> (iv)    Three (3) sets of requests for production of documents per side; and
>
> (v)    The deposition of each proposed trial expert pursuant to Fed. R. Civ. P. 30(d)(2).

5.    **Scheduling.**

The parties agree that formal phasing of discovery is not necessary in this litigation. The proposals set forth below are subject to further motion by the parties, either jointly or individually.

| Event | Proposed Deadlines |
|---|---|
| Initial Disclosures | October 27, 2005 |
| Joinder of Other Parties | January 6, 2006 |
| Amendment of Pleadings | February 6, 2006 |
| Completion of Fact Discovery | September 29, 2006 |
| Initial Expert Reports | November 18, 2006 |
| Rebuttal Expert Reports | December 16, 2006 |
| Close of Expert Discovery | January 30, 2007 |
| Filing of Dispositive Motions and Opening Briefs | March 15, 2007 |
| Response Briefs on Dispositive Motions | April 17, 2007 |
| Reply Briefs on Dispositive Motions | May 8, 2007 |
| Final Pre-Trial Conference | To be set by Court |
| Trial | To be set by Court |

6.    **Protective Order.**

On July 15, 2005, the Court entered the agreed upon stipulated protective order governing the handling of confidential and proprietary materials produced in discovery.

7.    **Trial by Magistrate Judge.**

The parties do not consent to trial by Magistrate Judge.

8.    **Settlement.**

The parties have engaged in face-to-face settlement negotiations and have exchanged written settlement proposals pursuant to Local Rule 16.1(C). The parties agree that, at present, a settlement does not appear likely.

3982568v4

9.    **Certifications Pursuant to Local Rule 16.1(D)(3).**

a.    John Hancock's certification is attached hereto as Exhibit A.

b.    Abbott's certification is attached hereto as Exhibit B.

ABBOTT LABORATORIES

By its attorneys,

JOHN HANCOCK LIFE INSURANCE
COMPANY, JOHN HANCOCK VARIABLE
LIFE INSURANCE COMPANY and
MANULIFE INSURANCE COMPANY

By their attorneys,

Peter E. Gelhaar (BBO # 188310)
Michael S. D'Orsi (BBO # 566960)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts  02108
Tel:  (617) 720-2880

Brian A. Davis (BBO # 546462)
Joseph H. Zwicker (BBO # 560219)
Karen Collari Troake (BBO # 566922)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Tele: 617-248-5000

Lawrence R. Desideri (*pro hac vice*)
Stephen D'Amore (*pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
Tel. (312) 558-5600

Date:   October 6, 2005

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was
served upon the attorney of record for each other party
by mail (by hand) on *and electronically*
on 10/06/05

- 4 -

3982568v4