**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE | ) | |
| COMPANY, JOHN HANCOCK VARIABLE LIFE | ) | |
| INSURANCE COMPANY, and MANULIFE | ) | |
| INSURANCE COMPANY (f/k/a INVESTORS | ) | |
| PARTNER LIFE INSURANCE COMPANY), | ) | |
|     Plaintiffs, | ) | CIVIL ACTION NO. 05-11150-DPW |
| | ) | |
|     v. | ) | |
| | ) | |
| ABBOTT LABORATORIES, | ) | |
| | ) | |
|     Defendants, | ) | |
| | ) | |

**ABBOTT LABORATORIES' MOTION TO IMPOUND CONFIDENTIAL**
**INFORMATION IN PLAINTIFFS' SUPPLEMENTAL COMPLAINT**

Abbott Laboratories, by its undersigned counsel, hereby moves the Court to redact and place under seal certain limited portions of Plaintiffs' Supplemental Complaint that reflect confidential business information. Attached to this motion as Exhibit A is a suggested redacted form of the Supplemental Complaint identifying the few portions of the Supplemental Complaint that Abbott seeks to have redacted and placed under seal. In support of its motion, Abbott states as follows:

1.    Before this case was filed, John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Investors Partner Life Insurance Company (collectively "Hancock") and Abbott had asserted claims against each other arising out of the Research Funding Agreement (the "Agreement") in *John Hancock Life Insurance Company, et al. v. Abbott Laboratories*, Civil Action No. 03-12501-DPW ("Prior Action"). In the Prior Action, the parties agreed to a Stipulated Protective Order, and pursuant to that Stipulated Protective Order, the Agreement was designated as

1

confidential.  As a result, the parties moved to impound their summary judgment briefs and supporting materials.  The Court granted these motions to impound and also granted Abbott's motion to redact and seal portions of the Court's September 16, 2005 Memorandum and Order deciding those summary judgment motions.

2.     On June 3, 2005, Hancock filed this Current Action against Abbott under seal.  As with the Prior Action, the Agreement forms the basis of the parties' dispute in the Second Action.  After Abbott was served with the Complaint, the parties conferred and prepared a redacted copy of the Complaint for the pubic file.  On July 15, 2005, the Court entered a Stipulated Protective Order permitting the designation of certain material as confidential.  On July 29, 2005, Abbott moved without objection from Hancock to impound and seal its Answer and Counterclaim.

3.     On February 3, 2006, Hancock filed a motion for leave to file the Supplemental Complaint.  Hancock attached a copy of its proposed Supplemental Complaint as an exhibit to its motion.  Although Hancock conferred with Abbott before filing its motion, Hancock did not inform Abbott that it intended to file its proposed Supplemental Complaint, which included confidential information from the Agreement that was not already part of the public record, in the public record.  Abbott did not realize that Hancock had filed its proposed Supplemental Complaint in the public record until several months later.  On June 8, 2006, this Court granted Hancock's motion for leave to file its Supplemental Complaint.

4.     During the week of June 12, 2006, counsel for Hancock conferred with counsel for Abbott concerning confidentiality issues involving the filing of the Supplemental Complaint.  On June 20, 2006, counsel for Abbott informed counsel for

Hancock in writing that Abbott considered certain portions of the Supplemental Complaint to contain confidential information, and counsel for Abbott identified certain limited portions of the Supplemental Complaint that Abbott requested to have redacted and sealed. Those portions of the Supplemental Complaint consisted of material from paragraphs 9, 11, 25-28, 34, 48, heading B on page 12, and heading C on page 13 of the Supplemental Complaint.

5.     On June 21, 2006, counsel for Hancock informed counsel for Abbott in writing that "John Hancock does not wish to accept the burden of seeking to redact anything" from the Supplemental Complaint and that Hancock intended to file its Supplemental Complaint in the public file.  Counsel for Hancock added that "John Hancock will not actively oppose such a motion [to redact] on the part of Abbott, but will reiterate its belief that none of the information in its Supplemental Complaint is sufficiently sensitive to warrant redaction."  A copy of the e-mail correspondence between counsel for the parties is attached hereto as Exhibit C.

6.     On June 23, 2006, Hancock filed is Supplemental Complaint in the public file, without the redactions requested by Abbott, even though Hancock filed its original Complaint in this action, containing the same confidential information, under seal.  Abbott now moves to redact its confidential information from the public file.

7.     The need for the Stipulated Protective Order, and for certain information contained in the Supplemental Complaint to remain under seal, arises from the confidential nature of the Agreement and the research and development work and funding of the Program Compounds underlying it.  Specifically, Article 10 of the Agreement contains confidentiality provisions that obligate the Hancock parties to maintain as confidential,

among other things, all "information and data related to the Program Compounds or Products." See Agreement § 10.1.

8.      Abbott has not disclosed publicly, and considers to be confidential business information, the identification of the specific compounds subject to the Agreement and their intended application.  Information regarding compound development and the funding of compound development is disclosed within Abbott only to selected personnel on a need to know basis.  Abbott also considers and treats the success or failure rates of the selected group of compounds that are subject to the Agreement as confidential business information.  See Declaration of Kenneth D. Stiles, attached hereto as Exhibit B.

9.      The information Abbott seeks to redact from the Supplemental Complaint is narrowly tailored to preserve the confidential nature of Abbott's research and development of the Program Compounds.  Thus, as indicated specifically in the attached proposed redacted form of the Supplemental Complaint, the information Abbott seeks to redact and seal falls within the following categories:

(a)      The total number of Program Compounds, the number that have ceased development, and the number of compounds that continue in development.  We propose redacting the number of Program Compounds from paragraph 11 of the Supplemental Complaint.

(b)      All information identifying the Program Compounds, including descriptions of the compounds and the research and development work concerning them. For this category, it is appropriate to redact the names of the Program Compounds from paragraphs 9, 25 through 28, 34, and 38 and heading B on page 12 and C on page 13 of the

Supplemental Complaint. Additionally, it is necessary to redact the development status of the Program Compounds in paragraphs 25 and 27 of the Supplemental Complaint.

10. This information is the same type of information that Abbott moved to redact from this Court's September 16, 2005 Memorandum And Order in the Prior Action and that the Court permitted to be redacted from the public file. In addition, as noted above, this information is the same information contained in Hancock's original Complaint that was placed under seal.

11. Although "[t]he common law presumes a right of public access to judicial records," this right is not "unfettered." Siedle v. Putnam Invs., 147 F.3d 7, 9-10 (1st Cir. 1998). As a result, "[i]mportant countervailing interests can, in given instances, overwhelm the usual presumption" and limit public access to specific information. Id. at 10. Courts have repeatedly recognized that the protection of confidential business information can constitute an important countervailing interest warranting limiting public access. See, e.g., Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 547 (7th Cir. 2002) (recognizing that trade secrets are entitled to protection from disclosure); Herrnreiter v. Chi. Hous. Auth., 281 F.3d 634, 636 (7th Cir. 2002) (same). Redaction of specific information from judicial records is an appropriate way to balance the public's right to access and important countervailing private interests in the protection of confidential business information. See In re Providence Journal Co., 293 F.3d 1, 15 (1st Cir. 2002).

12. The limited portions of the Supplemental Complaint that Abbott seeks to have redacted and sealed meet the legal standards for removal of information from the public record. The information Abbott seeks to have redacted from the Supplemental Complaint is not information that is generally open to the public. All of the information

sought to be redacted falls within the scope of the confidentiality provisions of the Agreement executed by the parties. The information sought to be redacted also constitutes important confidential business information of Abbott, as set forth in the accompanying affidavit of Kenneth Stiles.

13.     Pursuant to Local Rule 7.1(A)(2), Abbott has sought the consent of the Hancock parties to this motion to redact and seal portions of the Order and provided the proposed form of Redacted Order to opposing counsel. Counsel for Hancock has indicated that Hancock will not oppose Abbott's motion but that Hancock does not believe that Abbott's confidential information is sufficiently sensitive to warrant redaction. Hancock's current position is inconsistent with its position in the Prior Action and in the Current Action before February 2006. As explained above, before that date, Hancock stipulated to the entry of the Protective Order and filed its original Complaint under seal.

## CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court grant its motion to redact and seal portions of the Supplemental Complaint filed by Hancock on June 23, 2006, as well as the corresponding portions of the proposed Supplemental

Complaint that was attached as an exhibit to Hancock's Motion for Leave to File

Supplemental Complaint, filed on February 3, 2006.


Respectfully Submitted,
ABBOTT LABORATORIES


By: /s/ Peter E.Gelhaar_____

Peter E. Gelhaar, Esq.
Michael S. D'Orsi, Esq.
DONNELLY, CONROY & GELHAAR, LLP
1 Beacon Street, 33rd Floor
Boston, Massachusetts  02108
(617) 720-2880

and

Lawrence R. Desideri, Esq.
Stephen V. D'Amore, Esq.
Stephanie S. McCallum, Esq.
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

*Counsel for Abbott Laboratories*


## **LOCAL RULE 7.1 CERTIFICATION**

The undersigned hereby certifies that counsel for Abbott Laboratories has conferred

with counsel for Plaintiffs in a good faith effort to resolve or narrow the issues in this Motion.

/s/ Peter E. Gelhaar
Peter E. Gelhaar

## Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 29, 2006.

/s/ Peter E. Gelhaar
Peter E. Gelhaar

Date:  June 29, 2006

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY), | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 05-11150-DPW |
| v. | ) ) ) | |
| ABBOTT LABORATORIES, | ) ) ) | |
| Defendant. | ) ) ) | |

## SUPPLEMENTAL COMPLAINT

### Introduction

1.    This is an action for fraud, breach of contract, and indemnification in which plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and ManuLife Insurance Company (f/k/a "Investors Partner Life Insurance") seek compensatory and punitive damages, costs and attorneys' fees for defendant Abbott Laboratories' misrepresentations and other conduct that violates the Research Funding Agreement entered into by and between the plaintiffs and defendant and dated as of March 13, 2001 (the "Agreement").   This action is filed as a separate related action to the pending matter captioned *John Hancock Life Insurance Company, et al. v. Abbott Laboratories*, Civil Action

No. 03-12501-DPW (the "Existing Action"), pursuant to Section (1) of the Court's Scheduling Order entered in the Existing Action on March 30, 2004.

## The Parties

2.      Plaintiff John Hancock Life Insurance Company is a company, duly formed and existing under the laws of the Commonwealth of Massachusetts, that maintains its corporate headquarters in Boston, Suffolk County, Massachusetts. John Hancock Life Insurance Company is one of the nation's leading insurance companies, providing a broad array of insurance and investment products to retail and institutional customers, primarily in North America.

3.      Plaintiff John Hancock Variable Life Insurance Company is a company, duly formed and existing under the laws of the Commonwealth of Massachusetts, that maintains its corporate headquarters in Boston, Suffolk County, Massachusetts. John Hancock Variable Life Insurance Company provides variable life insurance products that link life insurance coverage and an investment return to an underlying portfolio of investments chosen by the policyholder.

4.      Plaintiff ManuLife Insurance Company (collectively, with plaintiffs John Hancock Life Insurance Company and John Hancock Variable Life Insurance Company, "John Hancock") is a company, duly formed and existing under the laws of the State of Delaware, that maintains its corporate headquarters in Boston, Suffolk County, Massachusetts. ManuLife Insurance Company is a wholly-owned subsidiary of John Hancock Variable Life Insurance Company that sells various types of life insurance products. ManuLife Insurance Company formerly was known as "Investors Partner Life Insurance."

5.      Defendant Abbott Laboratories ("Abbott") is a corporation, duly formed and existing under the laws of the State of Illinois, that maintains its corporate headquarters in Abbott Park, Illinois. Abbott is a broad-based healthcare company that discovers, develops,

manufactures and markets products and services that span the continuum of care -- from prevention and diagnosis to treatment and cure. Abbott's principal businesses are global pharmaceuticals, nutritionals, and medical products, including diagnostics and cardiovascular devices. Abbott achieved record sales and net earnings of $19.7 billion and $3.2 billion, respectively, in 2004. Its leadership positions in several multibillion-dollar businesses provide Abbott with a unique balance of revenue growth opportunities and cash flow sources that allow Abbott to invest in its future.

### Jurisdiction and Venue

6.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(1) because defendant Abbott resides in this district within the meaning of 28 U.S.C. § 1391(c), and further because Section 16.2 of the parties' Agreement provides that Abbott,

> consents ... to the exclusive jurisdiction of the courts of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts ... for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or thereunder or with respect to the transactions contemplated hereby or thereby, and expressly waives any and all objections that it may have as to venue in such courts.

### The Facts

*The Agreement And Its Relevant Terms*

8.      On March 13, 2001, John Hancock and Abbott entered the Agreement, whereby John Hancock agreed to provide funding to Abbott for research and development activities on a portfolio of potential pharmaceutical products or "Program Compounds" (the "Research Program") in exchange for the right to receive certain management fees and future milestone and royalty payments from Abbott.

9.

10.     Under the terms of the Agreement, John Hancock agreed to contribute up to a specified maximum amount toward the costs incurred by Abbott in operating the Research Program ("Program Related Costs") in four annual installments (the "Program Payments") over the period from March 13, 2001 through December 31, 2004 (individually, the four "Program Years" and, collectively, the four-year "Program Term"). Abbott agreed, in return, to invest at least twice the amount of John Hancock's contribution from its own funds towards the operation

-4-

of the Research Program, and committed to spend certain minimum amounts on Program Related Costs during each Program Year (the "Annual Minimum Spending Target"), as well as a minimum aggregate total on Program Related Costs over the four-year Program Term (the "Aggregate Spending Target").

11.    The Agreement, which comprises more than thirty-five (35) pages, was the subject of extensive negotiations between the parties and their counsel over a period of approximately one year. From John Hancock's perspective, the financial attractiveness of the Agreement turned largely upon the specific identity of, and commercial prospects for, the Program Compounds encompassed by the Research Program. John Hancock ran numerous analytical models based on financial projections for the Program Compounds in order to ensure, as best that it could, that the risks associated with its anticipated investment in the Research Program were justified by the potential rewards that John Hancock would receive if and when some or all of the Program Compounds were approved and commercialized.

12.    Because the financial return, if any, that John Hancock ultimately will receive on its investment in the Program Compounds is heavily dependent on the commercial success of those Compounds, John Hancock had a strong interest in ensuring, before the Agreement was signed, that: (a) Abbott had a good faith intention to aggressively pursue development of each of the Program Compounds; and (b) Abbott had a good faith belief that each of the Program Compounds possessed reasonably favorable commercial prospects. In order to satisfy John Hancock's concerns on these points, Abbott agreed to provide John Hancock, in Article 12 of the Agreement, with certain written representations and warranties concerning the development status of the Program Compounds, including, *inter alia*, a representation and warranty that,

> [s]et forth on <u>Exhibit 12.2(d)</u> is the full name, chemical name, detailed description of the stage of development and current status

for each Program Compound. Set forth on <u>Exhibit 1.6</u> in each Annual Research Plan is a description of projected milestones and dates thereof, projected year of NDA filing, and projected costs to be incurred by Abbott during the Program Term, for each Program Compound. Such projections were prepared in good faith and with due care based on reasonable assumptions, and represent the reasonable estimate of Abbott based on information available as of the date of such projections and as of the date hereof.... (Section 12.2[d]).

13.    Abbott further represented and warranted to John Hancock that,

[t]here is no fact known to Abbott (other than generally available information concerning the pharmaceutical industry in general) as of the date of this Agreement that has not been disclosed in this Agreement or any Exhibit to this Agreement which has resulted in, or could reasonably be expected to result in, a material adverse effect on the prospects or condition (including safety, efficacy, scientific viability or commercial [viability]) of the Research Program or any of the Program Compounds. (Section 12.2[i]).

14.    The Agreement contains various other terms that are intended to protect John Hancock's interests by ensuring that Abbott fairly and diligently fulfills its research and development obligations under the Agreement, including terms which provide, *inter alia*, that Abbott:

(a)    must employ "Commercially Reasonable Efforts" (defined in the Agreement as "efforts which are consistent with those normally used by other pharmaceutical companies with respect to other pharmaceutical compounds or products which are of comparable commercial value and market potential at a similar stage of development or product life") to develop each of the Program Compounds and "achieve the objectives of the Research Program efficiently and expeditiously" (Sections 1.10, 2.3 and 4.1);

(b)    must keep John Hancock fully informed of any modifications to its written "Annual Research Plans" ("ARPs") by requiring that "[a]ny such modifications ... be promptly provided to John Hancock" (Section 2.2);

-6-

(c)    shall not "research, develop, manufacture, market, sell, distribute, out-license or otherwise treat" the Program Compounds any differently "as compared to any other Abbott compounds or products" on account of any of the rights granted to John Hancock under Agreement (Section 4.4); and

(d)    shall, "as soon as is practicable," out-license or divest any "Ceased Compound" (defined in the Agreement as a Program Compound that Abbott has "substantially cease[d] developing, marketing or selling") to a third party, and shall "remunerate John Hancock based on sales of such Ceased Compound by the third party that has acquired or licensed the Ceased Compound ... in a manner most consistent with the allocation that would have applied hereunder had such Ceased Compound not been so out-licensed or divested..." (Section 4.3[d]).

15.    John Hancock's obligation under the Agreement to make additional Program Payments during the four-year Program Term is not absolute, however. In entering into the Agreement, John Hancock did not want to obligate itself to continue investing in the Program Compounds if the commercial prospects for those Compounds diminished significantly over the four-year Program Term. Accordingly, John Hancock's obligation to make its second, third and fourth Program Payments was made expressly contingent upon the demonstration by Abbott, on an annual basis, of the continued commercial viability of the Program Compounds.

16.    For purposes of the Agreement, the continued commercial viability of the Program Compounds is measured by reference to Abbott's planned expenditures on Program Related Costs over the four-year Program Term. Section 2.2 of the Agreement requires Abbott to provide John Hancock, at least forty-five days (45) prior to the start of each Program Year, with a written ARP that spells out Abbott's anticipated Research Program expenditures for that year and for each year remaining in the Program Term. If Abbott's ARP for any given year did not "reasonably demonstrate [Abbott's] ... intent and reasonable expectation to expend on Program Related Costs during the Program Term an amount in excess of the Aggregate Spending Target" as set forth in the Agreement, then John Hancock's "obligation to make any remaining

Program Payments for any succeeding Program Years" automatically would terminate pursuant to Section 3.4(iv) of the Agreement.

17.    Section 3.3 of the Agreement sets forth Abbott's obligations to John Hancock in the event that Abbott fails to reach the Aggregate Spending Target for Program Related Costs over the four-year Program Term. Section 3.3(b) states that Abbott "will expend the difference between its expenditures for Program Related Costs during the Program Term and the Aggregate Spending Target (the "Aggregate Carryover Amount") on Program Related Costs during the *subsequent year* commencing immediately after the end of the Program Term (emphasis added)." If Abbott fails to spend the entire Aggregate Carryover Amount during such subsequent year, Section 3.3(b) obligates Abbott to "pay to John Hancock one-third of the Aggregate Carryover Amount that remains unspent by Abbott, within thirty (30) days after the end of such subsequent year."

18.    The four-year Program Term ended on December 31, 2004, and the "subsequent year commencing immediately after the end of the Program Term" ended on December 31, 2005. Accordingly, Abbott was required to spend the Aggregate Carryover Amount by December 31, 2005, and required to pay to John Hancock one-third of the Aggregate Carryover Amount that remains unspent by Abbott as of that date on or before January 30, 2006.

19.    The Agreement further provides John Hancock with the power to objectively verify Abbott's compliance with the terms of the Agreement, including the right to retain an independent auditor of John Hancock's choosing (and reasonably acceptable to Abbott) who is empowered to inspect, copy and audit the "books and records of Abbott and each Subcontractor related to the Research Program ... at any time and from time to time." John Hancock is required to pay the fees and expenses of its chosen auditor in the first instance. If, however, the

-8-

work of John Hancock's auditor "reveals any material breach of Abbott's responsibilities" under the Agreement, then Section 2.5 provides that Abbott "shall (i) pay the reasonable fees and expenses charged by such auditor, and (ii) fully and promptly cure such breach."

*John Hancock's Efforts to Audit Abbott's Compliance*
*With The Terms of the Agreement*

20.    Since the Agreement was executed on March 13, 2001, John Hancock has become aware of certain potential breaches of the Agreement by Abbott.  Such potential breaches include, but are not limited to, misrepresentations by Abbott in the negotiation and execution of the Agreement, as well as violations by Abbott of its development and administrative responsibilities under the Agreement.

21.    Consistent with the terms of the Agreement, and in an effort to assist in confirming or refuting Abbott's suspected violations, John Hancock initiated an independent audit of Abbott's books and records on April 12, 2004.  On that date, John Hancock sent a letter to Abbott notifying Abbott of John Hancock's intention to undertake a compliance audit pursuant to Section 2.5 of the Agreement, and identifying the independent auditor that had been selected by John Hancock.  John Hancock accompanied its audit notification letter to Abbott with a description of the specific books and records related to the Research Program that John Hancock requested be made available for examination by its independent auditor within thirty (30) days.

22.    Abbott unreasonably and unjustifiably has delayed, and continues to delay, its response to John Hancock's audit request, and has taken affirmative steps to obstruct the legitimate efforts of John Hancock's independent auditors to confirm or refute Abbott's compliance with terms of the Agreement.  Tactics employed by Abbott to hinder, delay and

obstruct John Hancock's efforts to audit Abbott's compliance with the terms of the Agreement include, but are not limited to:

    (a)    unreasonably and unjustifiably objecting to John Hancock's chosen auditor for a period of months, then arbitrarily withdrawing its objection;

    (b)    unreasonably and unjustifiably delaying production of the majority of the relevant books and records requested by John Hancock's auditor for almost one year (and counting);

    (c)    unreasonably and unjustifiably refusing to make certain relevant books and records available for inspection and copying at all (including, without limitation, various books and records documenting Abbott's actual expenditures on Program Related Costs);

    (d)    unreasonably and unjustifiably redacting various relevant books and records produced during the course of the audit so as to eliminate relevant information and render certain materials effectively unintelligible, notwithstanding the existence of a written confidentiality agreement between the parties;

    (e)    unreasonably and unjustifiably understaffing and under-funding Abbott's response to John Hancock's audit request in order to further delay the examination of Abbott's relevant books and records by John Hancock's auditor;

    (f)    unreasonably and unjustifiably delaying for periods of six months or more the photocopying of books and records designated by John Hancock's auditor during the inspection process;

    (g)    unreasonably and unjustifiably refusing to provide John Hancock's auditor with photocopies of various books and records produced by Abbott, and designated by John Hancock's auditor, during the inspection process;

(h)    unreasonably and unjustifiably refusing to permit John Hancock or its independent auditor to make their own photocopies of Abbott's books and records produced for audit purposes;

(i)    unreasonably and unjustifiably violating acknowledged deadlines for the completion of Abbott's production of books and records responsive to John Hancock's audit requests;

(j)    unreasonably and unjustifiably ignoring or refusing to answer various written and oral inquiries by John Hancock and its auditor regarding Abbott's relevant books and records; and

(k)    unreasonably and unjustifiably acting in a manner contrary to the usual course of contractual compliance audits, and contrary to Abbott's own conduct in reasonably similar circumstances in the past.

23.    As of the date of its original Complaint in this action, Abbott still had not produced all of the material books and records related to the Research Program that were requested by John Hancock and its auditor on April 12, 2004, and refused to do so. Abbott also refused to answer inquiries by John Hancock and its auditor seeking information that is necessary to complete the audit of Abbott's compliance with the Agreement.

*Abbott's Violations of the Agreement*

A. Obstructing John Hancock's Compliance Audit

24.    Abbott unreasonably and unjustifiably has hindered, delayed and obstructed John Hancock's attempts to audit Abbott's compliance with the terms of the Agreement as expressly permitted under Section 2.5. Upon information and belief, Abbott's efforts to hinder, delay and obstruct John Hancock's audit activities are intended to undermine, and have had the effect of undermining, John Hancock's ability to obtain information which would tend to confirm that Abbott has breached the Agreement in various other ways as set forth below.

-11-

B. Misrepresenting the Development Status of .

25.

26.    The development status of .                    of March 2001 constitutes a material fact

for purposes of John Hancock's decision to enter into the Agreement.  John Hancock reasonably

and justifiably relied upon Abbott's misrepresentations regarding the development status of

in making that decision.  Had John Hancock known the true development status of

before the Agreement was executed, John Hancock would have demanded different

terms, such as the substitution of another compound with a comparable projected value or more

favorable financial terms with respect to the remaining Program Compounds, or may not have

entered into the Agreement at all.

C. Misrepresenting the Development Status of

27.

28.     The development status of            of March 2001 constitutes a material fact

for purposes of John Hancock's decision to enter into the Agreement.  John Hancock reasonably

and justifiably relied upon Abbott's misrepresentations regarding the development status of

in making that decision.  Had John Hancock known the true development status of

before the Agreement was executed, John Hancock would have demanded different

terms, such as the substitution of another compound with a comparable projected value or more

favorable financial terms with respect to the remaining Program Compounds, or may not have entered into the Agreement at all.

### D. Misrepresenting Its Intended and Reasonably Expected Spending on Program Related Costs

29.    Upon information and belief, Abbott has misrepresented its "intended and reasonably expected" expenditures on Program Related Costs in ARPs that it has provided to John Hancock.   The Research Program cost projections that Abbott has provided to John Hancock in various ARPs reflect Abbott's "nominal" spending, as opposed to its "expected" spending.   At all relevant times, Abbott's true "expected" spending on Program Related Costs was considerably less than the amounts communicated to John Hancock in Abbott's ARPs. Abbott has misrepresented its intended and reasonably expected spending plans to John Hancock in order to induce John Hancock to enter into the Agreement, and to make Program Payments to Abbott that would not otherwise be due under the terms of the Agreement.

30.    Abbott's intended and reasonably expected expenditures on Program Related Costs constitute material facts for purposes of John Hancock's decision to enter into the Agreement.  John Hancock reasonably and justifiably relied upon Abbott's misrepresentations regarding its intended and reasonably expected expenditures on Program Related Costs in making that decision.  Had John Hancock known the true level of Abbott's intended and reasonably expected expenditures, John Hancock would have demanded different terms, such as the substitution of another compound with a comparable projected value or more favorable financial terms with respect to the remaining Program Compounds, may not have made certain Program Payments, or may not have entered into the Agreement at all.

E. Failing to Use Commercially Reasonable Efforts
to Develop the Program Compounds

31.    Upon information and belief, Abbott has failed to use Commercially Reasonable
Efforts to develop the Program Compounds.  Abbott previously represented to John Hancock in
its 2005 ARP that the current commercial prospects for the active Program Compounds warrant
the expenditure of a stated sum towards Program Related Costs in 2005.  Upon information and
belief, Abbott since has modified its 2005 ARP so as to reduce its intended and reasonably
expected expenditures on Program Related Costs by more than fifty percent (50%) in retaliation,
*inter alia,* for the automatic termination of John Hancock's obligation to make additional
Program Payments for the third and fourth Program Years pursuant to the express terms of the
Agreement.

32.    Abbott's decision to reduce its intended and reasonably expected expenditures on
Program Related Costs in 2005 to less than one-half the amount that Abbott has represented is
warranted by the current commercial prospects for the active Program Compounds is
inconsistent with the level of effort normally used by other pharmaceutical companies with
respect to other pharmaceutical compounds or products which are of comparable commercial
value and market at a similar stage of development and, therefore, not Commercially Reasonable
for purposes of Section 4.1 of the Agreement.

F. Refusing to Provide John Hancock With a Copy
of Abbott's Modified 2005 ARP

33.    Abbott has refused to provide John Hancock with a copy of its modified 2005
ARP.  Abbott provided its original 2005 ARP to John Hancock in November 2004.  Upon
information and belief, Abbott since has modified its original 2005 ARP so as to dramatically
reduce Abbott's intended and reasonably expected expenditures on Program Related Costs in

-15-

2005. Section 2.2 of the Agreement obligates Abbott to "promptly provide[]" John Hancock with "[a]ny ... modifications" to its ARPs. Notwithstanding the express requirements of Section 2.2, Abbott has refused or ignored John Hancock's requests for a copy of Abbott's modified 2005 ARP.

### G. Failing to Out-License or Divest Various Ceased Compounds

34.    Upon information and belief, Abbott has failed to out-license or divest itself of various Ceased Compounds, including, without limitation,          and          "as soon as is practicable" as required under Section 4.3(d) of the Agreement.

35.    Upon further information and belief, Abbott has chosen not to out-license or divest itself of the foregoing Ceased Compounds for fear that, if those Compounds were successfully developed and marketed by a third party, Abbott might lose future sales of various competing compounds that Abbott has under development, which are not subject to John Hancock's royalty rights.

### H. Failing To Pay John Hancock One-Third Of The Actual Aggregate Carryover Amount

36.    Because Abbott unreasonably and unjustifiably has hindered, delayed and obstructed John Hancock's attempts to audit Abbott's compliance with the terms of the Agreement, Abbott's actual spending on Program Related Costs over the four-year Program Term ended on December 31, 2004, and the "subsequent year commencing immediately after the end of the Program Term" ended on December 31, 2005, currently is unknown. Abbott has represented and John Hancock has reason to believe, however, that Abbott's actual spending on Program Related Costs during the Program Term was considerably less than the Aggregate Spending Target, and that Abbott's actual spending on Program Related Costs during such subsequent year was considerably less than the Aggregate Carryover Amount.

37.     Pursuant to Section 3.3(b) of the Agreement, Abbott was required to pay John Hancock one-third of the actual, unspent Aggregate Carryover Amount on or before January 30, 2006. Notwithstanding the express requirements of Section 3.3(b), Abbott has failed to make such payment to John Hancock.

*John Hancock's Efforts to Resolve Its Claims Against Abbott Amicably*

38.     On April 1, 2005, John Hancock provided written notification to Abbott of the existence and nature of the disputes identified in Sections A-G above in accordance with Section 16.7 of the Agreement. Authorized representatives of John Hancock and Abbott subsequently met in Chicago, Illinois on May 20, 2005, in an effort to resolve their disputes amicably. That effort was unsuccessful.

39.     On January 5, 2006, John Hancock provided written notification to Abbott of the existence and nature of the disputes identified in Section H above in accordance with Section 16.7 of the Agreement. Representatives of Abbott did not meet with John Hancock for the purpose of resolving those disputes within the time period permitted under Section 16.7.

## Claims

COUNT I
(Fraud)

40.     John Hancock hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 39 of this Complaint, *supra*.

41.     Abbott materially misrepresented the development status of the Program Compounds in the representations and warranties contained in Sections 12.2 of the Agreement, and applicable Schedules thereto, all in the manner described in this Complaint.

42.     Abbott materially misrepresented its "intended and reasonably expected" expenditures on Program Related Costs in ARPs that it has provided to John Hancock, all in the manner described in this Complaint.

43.     Abbott made the foregoing misrepresentations to John Hancock wantonly and willfully for the purpose of fraudulently inducing John Hancock to enter into the Agreement, and to make various Program Payments to Abbott on the terms stated therein.

44.     John Hancock justifiably relied upon Abbott's misrepresentations to its detriment by, among other things, entering into the Agreement, and making Program Payments to Abbott in accordance with the terms thereof.

45.     As a result of Abbott's misrepresentations, John Hancock has been defrauded by Abbott and has suffered, and likely will continue to suffer, monetary damages and harm in an amount to be determined.

COUNT II
(Breach of Contract)

46.     John Hancock hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 45 of this Complaint, *supra.*

47.     The Agreement constitutes a valid and binding contract between the parties. John Hancock has performed all of its obligations under the Agreement.

48.     Abbott has breached its obligations to John Hancock under the Agreement, *inter alia*, by:

   (a)     misrepresenting the development status of                to John Hancock prior to, and at the time of, the execution of the Agreement;

   (b)     misrepresenting the development status of .                John Hancock prior to, and at the time of, the execution of the Agreement;

   (c)     misrepresenting Abbott's intended and reasonably expected expenditures on Program Related Costs in ARPs that Abbott has provided to John

-18-

Hancock;

(d)    failing to use Commercially Reasonable Efforts to develop the Program Compounds;

(e)    refusing to provide John Hancock with a copy of Abbott's modified 2005 ARP;

(f)    failing to out-license or divest itself of certain Ceased Compounds, including, without limitation,                and                as soon as is practicable; and

(g)    unreasonably and unjustifiably hindering, delaying and obstructing John Hancock's efforts to audit Abbott's compliance with the terms of the Agreement.

(h)    failing to pay John Hancock one-third of the actual, unspent Aggregate Carryover Amount pursuant to Section 3.3(b) of the Agreement.

49.    By engaging in the foregoing conduct, Abbott further has breached the covenant of good faith and fair dealing that is implied by law in every contract, including the Agreement.

50.    Abbott has breached its express and implied obligations under the Agreement willfully and wantonly in order to induce John Hancock to enter into the Agreement, induce John Hancock to make various Program Payments to Abbott on the terms stated therein, and inhibit John Hancock's ability to detect and confirm Abbott's misconduct.

51.    As a result of Abbott's willful and wanton breaches of its express and implied obligations under the Agreement, John Hancock has suffered, and likely will continue to suffer, monetary damages and harm in an amount to be determined.

COUNT III
(Indemnification)

52.    John Hancock hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 51 of this Complaint, *supra*.

53.    Abbott has breached its representations, warranties and obligations to John Hancock under the Agreement as set forth herein.

54.    As a result of Abbott's various breaches of its representations, warranties and obligations under the Agreement, John Hancock has suffered, and likely will continue to suffer, "Losses" as defined in Section 1.27 of the Agreement.  John Hancock's Losses include, without limitation, costs, damages, and other reasonable expenses such as audit charges and attorneys' fees.

55.    Abbott agreed in Section 12.6 of the Agreement to indemnify John Hancock, *inter alia*, "from and against all Losses related to or arising out of, directly or indirectly … any breach by Abbott of its representations, warranties or obligations hereunder…"

56.    On April 1, 2005, John Hancock provided written notification to Abbott that John Hancock has sustained, and likely will continue to sustain, compensable Losses on account of Abbott's various breaches of its representations, warranties and obligations under the Agreement, for which John Hancock is entitled to indemnification pursuant to Section 12.6 of the Agreement.

57.    Notwithstanding John Hancock's request for indemnification, Abbott has refused to indemnify John Hancock for its compensable Losses.

**Prayers for Relief**

WHEREFORE, John Hancock respectfully requests that the Court:

(a)     award John Hancock compensatory damages in an amount to be determined, plus interest and costs, for Abbott's fraud under Count I of the Complaint;

(b)     award John Hancock compensatory damages in an amount to be determined, plus interest and costs, for Abbott's various breaches of contract under Count II of the Complaint;

(c)     enter an order directing Abbott to indemnify John Hancock for its compensable Losses, including John Hancock's damages, costs, and other reasonable expenses such as audit charges and attorneys' fees, under Count III of the Complaint;

(d)     award John Hancock punitive damages for Abbott's willful and wanton misconduct in an amount to be determined under Counts I and II of the Complaint; and

(e)     grant John Hancock such other and further relief as the Court deems just and appropriate in the circumstances.

> JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY AND MANULIFE INSURANCE COMPANY
>
> By their attorneys,
>
> _____
> Brian A. Davis (BBO No. 546462)
> Joseph H. Zwicker (BBO No. 560219)
> Stacy Blasberg (BBO No. 657420)
> CHOATE, HALL & STEWART LLP
> Two International Place
> Boston, Massachusetts 02110
> Telephone: 617-248-5000

Dated: February 3, 2006

4035580.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and INVESTORS PARTNER LIFE INSURANCE COMPANY,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant/Counter-Plaintiff. | Civil Action No. 03 CV 12501DPW<br><br>Hon. Douglas P. Woodlock |

**DECLARATION OF KENNETH D. STILES**

## CONFIDENTIAL INFORMATION
## SUBJECT TO PROTECTIVE ORDER ENTERED BY THE COURT

This envelope (or container) containing the above-identified paper filed by Abbott Laboratories, is not to be opened nor the contents thereof displayed or revealed except by further Order of the Court or by agreement of the Parties.

SEALED ORIGINAL—DO NOT SCAN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, et al., | ) ) ) ) | |
| Plaintiffs/counter-defendants, | ) ) | Civil Action No. 03-12501-DPW |
| vs. | ) ) | Hon. Judge Douglas P. Woodlock |
| ABBOTT LABORATORIES, | ) ) ) | |
| Defendant/counter-plaintiff. | ) ) | |

## DECLARATION OF KENNETH D. STILES

I, Kenneth D. Stiles, hereby declare and state that:

1. I am currently employed by Defendant Abbott Laboratories as Assistant Controller of Global Pharmaceutical Research & Development.

2. I make this declaration in support of Defendant Abbott Laboratories' Motion To Redact And Seal Portions Of September 16, 2005 Memorandum And Order.

3. I am competent to testify and have personal knowledge of the facts set forth in this declaration.

4. I understand that the Court's September 16, 2005 Memorandum and Order ("Order") includes the following categories of information: a) specific references to the dollar amounts under the Research Funding Agreement ("Agreement"), including projected, minimum and actual funding made in connection with that Agreement; b) specific identification of the development compounds subject to the Agreement and their intended applications; c) specification of the total number of compounds subject to the Agreement and the number of compounds that were discontinued or remain active; and d) other references to specific aspects of

the Research Program subject to the Agreement, including the identification of certain of Abbott's business collaborators with respect to individual compounds subject to the Agreement.

5. Although it is publicly known that Abbott researches and develops pharmaceutical compounds, Abbott does not publicly disclose the details of that research and development work, including the information described above in paragraph 4. For example, although Abbott discloses from time to time the total amount of its annual research and development expenditures, it does not disclose publicly the amount of research and development spending on any individual compound or group of selected compounds. Moreover, Abbott does not disclose publicly the sources of outside funding for research and development activities, and in some instances is precluded from doing so by agreement. And information concerning compound development and the funding of compound development is shared within Abbott only with selected personnel on a need to know basis. Abbott considers the information identified in paragraph 4, above, to be highly confidential and takes appropriate steps to ensure that this type of information is kept confidential.

6. Permitting public disclosure of the information described in paragraph 4 would put Abbott at a competitive disadvantage for various reasons. Disclosure would provide Abbott's competitors with insight into Abbott's research programs and the amount of its projected and actual research spending on a group of selected pharmaceutical compounds. Disclosure would also reveal information about Abbott's discontinuation of the development of certain compounds. Additionally, Abbott has confidentiality agreements with its business collaborators that require it to keep confidential their identity and their participation with Abbott in specific research programs. The confidentiality provisions of the Agreement itself, contained in Article 10 thereof, are one example of such confidentiality agreements.

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 19, 2005 in Lake County, Illinois.

*Kenneth D. Stiles*

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: *Michael D.*

3

-----Original Message-----
From: Davis, Brian [mailto:BDavis@choate.com]
Sent: Wednesday, June 21, 2006 6:40 AM
To: D'Amore, Stephen
Cc: Zwicker, Joseph H.
Subject: RE: Hancock v Abbott


Steve,

As I mentioned when we last spoke, John Hancock does not wish to accept
the burden of seeking to redact anything.  Given that a copy of John
Hancock' proposed Supplemental Complaint already is on file (and has
been for several months), I intend to file the final version today as we
have been instructed to do by the Court.  Abbott then is free to ask the
Court to redact whatever it wishes from the file.  John Hancock will not
actively oppose such a motion on the part of Abbott, but will reiterate
its belief that none of the information in its Supplemental Complaint is
sufficiently sensitive to warrant redaction.  John Hancock also will
express the same position to the First Circuit regarding the contents of
the parties' briefs and the appendix.


Regards,

Brian


Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com


-----Original Message-----
From: D'Amore, Stephen [mailto:SDamore@winston.com]
Sent: Tuesday, June 20, 2006 6:41 PM
To: Davis, Brian
Cc: Desideri, Lawrence; msd@dcglaw.com
Subject: Hancock v Abbott



Brian, to follow-up on our conversation last week, we request that
Hancock redact parts of the following portions of its supplemental
complaint:
Paragraphs 9, 11, 25-28, 34, 48, heading B on page 12 and heading C on

page 13.  The information that should be redacted is the same
information that I identified in a recent email concerning Abbott's
anticipated motion to unseal the First Circuit record.  We also need to
discuss redacting from the public file the proposed supplemental
complaint Hancock filed previously.  I will be back in Chicago on Friday
if you would like to give me a call.

Sincerely,

Steve

---------------------------
Stephen V. D'Amore
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
312.558.5934
312.558.5700 (fax)

sdamore@winston.com

The contents of this message are privileged and confidential. If this
message is received in error, please destroy it without reading. This
message should not be forwarded or distributed without the permission of
the author.

The contents of this message may be privileged and confidential.
Therefore, if this message has been received in error, please delete it
without reading it. Your receipt of this message is not intended to
waive any applicable privilege. Please do not disseminate this message
without the permission of the author.
************************************************************************
******
Any tax advice contained in this email was not intended to be used, and
cannot be used, by you (or any other taxpayer) to avoid penalties under
the Internal Revenue Code of 1986, as amended.
************************************************************************
This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along
with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message,
please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any
advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender

to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com
**************************************************************************