UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY), | ) ) ) ) ) ) ) | Civil Action No. 05-11150-DPW Hon. Judge Douglas P. Woodlock |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| ABBOTT LABORATORIES, | ) ) | |
| Defendant. | ) ) | |

**ABBOTT'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE PRAYER FOR RESCISSION IN THE FIRST AMENDED SUPPLEMENTAL COMPLAINT**

Defendant Abbott Laboratories ("Abbott") respectfully submits this Memorandum in

Support of its Motion to Strike the Prayer for Rescission in the First Amended Supplemental

Complaint filed by Plaintiffs John Hancock Life Insurance Company, John Hancock Variable

Life Insurance Company, and Manulife Insurance Company (f/k/a Investors Partner Life

Insurance) (collectively, "Hancock").

## I.    INTRODUCTION

On December 29, 2006, Hancock filed its First Amended Supplemental Complaint,

which, for the first time, includes a prayer for rescission of the Research Funding Agreement as a

remedy for alleged misrepresentations by Abbott prior to execution of the Agreement in 2001.

1237205.1

Under long-standing Illinois law, an allegedly defrauded party must promptly seek rescission after notice of the alleged fraud. If the party delays or continued to treat the contract as valid and binding, it is deemed to have affirmed the contract and waived the right to rescission and is therefore limited to monetary damages for the alleged fraud.

Hancock's request for rescission comes five and a half years after execution of the agreement, at least two and a half years after Hancock admittedly had notice of the alleged misrepresentations, and sixteen months after Hancock filed its original complaint seeking enforcement of the Agreement and monetary damages for the alleged misrepresentations. During this long period of delay in seeking rescission, Hancock has continued to treat the Agreement as valid and binding, and availed itself of its rights under the Agreement. In *Hancock I*, Hancock sought and obtained a declaration from this Court enforcing the terms of the Agreement and affirming that the Agreement "remains in full force and effect." It also availed itself of its audit rights pursuant to the terms of the Agreement and otherwise demanded and accepted Abbott's performance under the Agreement. Finally, in this action, Hancock has sought to enforce the terms of the Agreement and recover money damages; most recently, filing a motion for partial summary judgment that seeks payment of funds to Hancock pursuant to Section 3.3(b).

After its long delay and affirmation of the Agreement, Hancock cannot now demand that the Agreement be rescinded and the parties returned to the *status quo ante*. Based on the facts as alleged in the Complaint and in judicially noticeable documents, Hancock is barred from the remedy of rescission as a matter of law. Therefore, the Court should strike the prayer for rescission.

1237205.1

## II.    FACTUAL BACKGROUND

In March 2001, Abbott and Hancock entered into a Research Funding Agreement

("Agreement") in which they committed to co-fund Abbott's development of a portfolio of nine

pharmaceutical compounds (the "Program Compounds). Ex. 1 (First Am. Supp. Cmplt.), ¶¶ 1, 8-

10.

In December 2003, Hancock filed an action in this Court (*Hancock I*) seeking a

declaration that, pursuant to Section 3.4 of the Agreement, it was relieved of its future funding

obligations because Abbott's projected spending fell below a specified threshold. Ex. 2 (Cmplt.

for Decl. Judg., *Hancock I*).[1]   Hancock did not argue that the Agreement was void or voidable; to

the contrary, it sought to enforce the Agreement and specifically requested that the Court enter a

final judgment "declaring that the Agreement otherwise is in full force and effect in accordance

with its terms." *Id.* at 6 (Prayer for Relief, § (b)). On September 29, 2004, Abbott and Hancock

filed cross-motions for summary judgment. On September 16, 2005, the Court granted

Hancock's motion for summary judgment, ruling that Hancock's funding obligations were

terminated pursuant to Section 3.4 and that "[t]he Research and Funding Agreement is otherwise

in full force and effect in accordance with its terms." Ex. 3 (9/16/05 Final Judgment & Decl.) at

---

[1] All citations to "Ex." refer to the exhibits attached to the accompanying Request for Judicial Notice. On a motion to strike, it is proper for the Court to take judicial notice of the pleadings, hearing transcript, and orders in the current litigation and *Hancock I*. *See* Schwarzer, Hon. William W., *et al.*, Prac. Guide Fed. Civ. Proc. Before Trial (Nat. Ed.) Ch 9-G, § 9:403 (2007). "As with motions to dismiss for failure to state a claim, the grounds for a motion to strike must appear on the face of the pleading under attack, or from matters which the court may judicially notice (e.g., the court's own files or records)." *Id.* (citations omitted); *see also See Hughes v. McMenamon*, 379 F. Supp. 2d 75, 78 (D. Mass. 2005) ("In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken."). *See Panico v. Whiting Milk Co.*, 335 F.Supp. 315, 316 n.1 (D. C. Mass. 1971) (court took judicial notice of pleadings from prior litigation in considering motion to dismiss).

1237205.1

2.  After Abbott appealed, Hancock reiterated its arguments for enforcement of the Agreement to the Court of Appeals for the First Circuit, submitting that "the district court's Final Judgment in favor of John Hancock" (including the Court's declaration that the Agreement is "in full force and effect") "should be affirmed in its entirety."  Ex. 4 (4/3/06 Brief of Pltfs. Appellees) at 22.  *See also id.* at 64.

Hancock allegedly became "aware of certain potential breaches of the Agreement by Abbott" after the Agreement was executed, including "misrepresentations by Abbott in the negotiation and execution of the Agreement."  Ex. 1 (First Am. Supp. Cmplt.), ¶ 20.  On April 12, 2004, "in an effort to assist in confirming or refuting Abbott's suspected violations", Hancock initiated an audit of Abbott's books and records pursuant to Section 2.5 of the Agreement.  *Id.*, ¶ 21.  On April 1, 2005, pursuant to the dispute resolution provision of the Agreement, "Hancock provided written notification to Abbott" of the existence and nature of its dispute regarding alleged misrepresentations by Abbott.  *Id.* at ¶ 40.  On June 3, 2005 – while *Hancock I* was pending – Hancock filed a new action against Abbott, alleging fraud, breach of contract, and indemnification (*Hancock II*).  Ex. 5 (Cmplt., *Hancock II*).  Hancock sought compensatory damages, interest, costs, punitive damages, indemnification and "such other and further relief as the Court deems just and appropriate in the circumstances."  *Id.* at 19.  Hancock alleged that if it "had known the true development status" of ABT-518 and ABT-594 it "would have demanded different terms . . . or may not have entered into the Agreement at all."  *Id.*, ¶¶ 24, 26.  Hancock did not seek rescission of the Agreement, however, or include any allegation that the Agreement was void or voidable due to Abbott's alleged misrepresentations.  *Id.* at 19.  To the contrary, Hancock alleged that "the Agreement constitutes a valid and binding contract

- 4 -

between the parties" and sought only monetary damages for Abbott's alleged misrepresentations. *Id.*, ¶ 43; *id.* at 19.

On February, 6, 2006, in response to an Abbott interrogatory, Hancock for the first time purported to "reserve the right" to seek rescission. Ex. 6 (Pltfs' Reply Mem. In Supp. of Mot. for Leave to Amend Supp. Cmplt. at 10). Four months later, however, when Hancock filed a Supplemental Complaint, it still did not include a request for rescission of the Agreement or any allegation that the Agreement was void or voidable. Ex. 7 (Supp. Cmplt.). To the contrary, Hancock sought enforcement of another provision of the contract – demanding payment of funds by Abbott pursuant to Section 3.3(b). *Id.*, ¶¶ 36-39. The Supplemental Complaint also continued to allege that "the Agreement constitutes a valid and binding contract between the parties." *Id.*, ¶ 47.

On October 24, 2006 – two and a half years after it initiated an audit based on suspected fraud and sixteen months after it filed its complaint for monetary damages based on alleged fraud – Hancock sought leave to amend its Supplemental Complaint to include a request for rescission. Ex. 8 (Pltfs.' Mot. for Leave to Amend Supp. Cmplt.). As part of a comprehensive resolution of pending motions, Abbott withdrew its opposition to Hancock's motion for leave to amend but expressly reserved its right to otherwise contest any and all claims in the amended supplemental complaint. Ex. 9 (12/21/06 Stip. and Proposed Order Re: Certain Pending Motions & Scheduling), § 3(a). On December 29, 2006, Hancock filed its First Amended Supplemental Complaint with a new Prayer for Relief requesting that the Court:

> alternatively, enter an order rescinding the Agreement and
> restoring the status quo ante, including but not limited to, directing
> Abbott to refund any and all Program Payments made by John

- 5 -

> Hancock, less any payments already received by John Hancock,
> plus interest and costs[.]

Ex. 1 (First Am. Supp. Cmplt.) at 24 (Prayers for Relief, § (e)).  Notwithstanding the new prayer

for rescission, Hancock continued to allege that "the Agreement constitutes a valid and binding

contract between the parties."  *Id.* at ¶ 48.

## III.   ARGUMENT

### A.   A Prayer for Relief Is Subject to a Motion to Strike Where the Pleadings Themselves Disclose That the Remedy is Unavailable as a Matter of Law

Hancock's prayer for rescission is subject to a motion to strike because the pleadings

themselves disclose that the remedy is unavailable as a matter of law.  *See Bureerong v. Uvawas*,

922 F.Supp. 1450, 1479 n.34 (C.D. Cal. 1996) ("a motion to strike may be used to strike any part

of the prayer for relief when the damages sought are not recoverable as a matter of law"); *Nichia*

*Corp. v. Seoul Semiconductor Ltd.*, 2006 WL 1233148 (N.D. Cal. 2006) (granting motion to

strike prayer for treble damages).  *See also Foston v. Swanson*, 306 Ill. 518, 523 (1923)

(sustaining demurrer to rescission claim where plaintiff delayed twenty-five months after

obtaining knowledge of the alleged fraud); *Huiller v. Ryan*, 306 Ill. 88 (1922) (sustaining

demurrer to rescission claim where plaintiff delayed eighteen months after obtaining knowledge

of the alleged fraud); *Schoenbrod v. Rosenthal*, 36 Ill. App. 2d 112, 121 (1962) (granting motion

to dismiss claims for equitable relief for alleged fraud on grounds of laches); *Hartsman v.*

*Abboreno*, 18 Ill. 2d 467, 470 (1960) (under Illinois law "the defense of laches can be raised by a

motion to dismiss if:  (1) an unreasonable delay appears on the face of the pleading; (2) no

sufficient excuse for delay appears or is pleaded; and (3) the motion specifically points out the

defect.").

**B.      Illinois Law Bars Claim for Rescission Where the Allegedly Defrauded Party Fails to Seek Rescission Promptly Upon Learning of the Fraud**

"For anyone who seeks to rescind a contract on grounds of fraud in [Illinois], time is clearly of the essence." *Swartz v. Schaub*, 826 F. Supp. 274, 277 (1993). "Illinois law has long recognized that the victim of contract fraud who wishes to rescind that contract must not only announce his or her election promptly but must act on that intention with like promptness." *Id.* If the allegedly defrauded party delays or takes actions consistent with affirmance of the contract, the right to rescission is waived and the party is limited to damages as a remedy for the alleged fraud. In an early case, the Illinois Supreme Court held that:

> [w]here a party desires to rescind upon the ground of mistake or fraud, he must, upon discovery of the facts *at once* announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted.

*Follett v. Brown*, 188 Ill. 244, 248 (1900) (emphasis added).

On repeated occasions, the Illinois Supreme Court has applied this rule to bar delayed claims for rescission. *See, e.g.*, *Kanter v. Ksander*, 344 Ill. 408, 415 (1931) ("A party to a contract who desires to rescind it for fraud must make his election to do so promptly after learning of the fraud. He must announce his purpose and adhere to it.") (delay of 8 to 11 months barred rescission); *Wollenberger v. Hoover*, 179 N.E. 42, 55-57 (1931) (plaintiff who originally sued to enforce a lien for purchase money due under real estate contract could not thereafter rescind the contract); *Brown v. Brown*, 142 Ill. 409, 428 (1892) ("if the party defrauded would disaffirm the contract, he must do so at the earliest practical moment after the discovery of the

- 7 -

fraud. This is the time to make the election, and it must be done promptly and unreservedly. He

must not hesitate . . .").  In *Eisenberg v. Goldstein*, the Illinois Supreme Court reiterated that:

> A person who has been misled by fraud or misrepresentation is
> required, as soon as he learns the truth, to disaffirm or abandon the
> transaction with all reasonable diligence, so as to afford both
> parties an opportunity to be restored to their original position.  If,
> after discovering the untruth of the representations, he conducts
> himself with reference to the transaction as though it were still
> subsisting and binding, he thereby waives all benefit of relief from
> the misrepresentations.

29 Ill. 2d 617, 622 (1963) (delay of one year barred claim for rescission).  *See also Booker v.*

*Myler*, 2006 WL 1302521 at *5-6 (N.D. Ill. 2006) (reviewing Illinois cases); *Mrotzek v. Gitcho*,

158 Ill. App. 3d 15, 16-18 (1987) ("A party seeking equitable relief against fraud should

commence proceedings for relief as soon as reasonably possible.  Acquiescence, consisting of

unnecessary delay after such knowledge [of the facts], will defeat the equitable relief.");

*Schoenbrod*, 36 Ill. App. 2d at 121 ("It has been uniformly held in Illinois that anyone seeking to

rescind a transaction on the ground of fraud must elect to do so promptly after learning of the

fraud, must announce his purpose and must adhere to it.") (citing cases); 12A Ill. Law & Prac.

Contracts § 377 ("A party who desires to rescind a contract on the ground of fraud or false

representations must do so promptly, or within a reasonable time on discovery of the fraud, or

promptly after learning or hearing of it.").

　　As explained in *Guy v. Duff & Phelps, Inc.*, 628 F. Supp. 252 (N.D. Ill. 1985), the

"general rescission doctrine", in Illinois and elsewhere, "focuses almost exclusively on delay."

*Id.* at 261.  "Most cases stressing the need for the prompt assertion of rescission rights make no

reference to the doctrine of laches, and do not at all mention any need to show prejudice in

addition to delay." *Id.*  "Those cases treat the prompt election requirement as an integral

component of rescission doctrine, not dependant on another area of the law." *Id.*  The court

noted that "[e]ven those rescission cases that have made reference to the laches doctrine have

downplayed the prejudice element":

> In cases based on fraud far greater emphasis is placed on the delay
> in asserting the claim than on a change of circumstances, for an
> unreasonable lapse of time between discovering the supposed fraud
> and bringing the suit is of itself prejudicial to the party charged
> with fraud.  The very nature of the charge calls for prompt action.
> An unexplained delay raises an immediate doubt as to a plaintiff's
> right to ask the intervention of a court of equity which is an appeal
> to justice and good conscience.  One who requests the help of a
> court of equity must be of good faith and must be diligent in
> prosecuting his claim.  The natural reaction of a person who has
> been defrauded is to cry out in protest and to move with alacrity in
> seeking redress.  When he does neither, his claim and his motives
> are suspect.

*Id.* at 261-62 (quoting *Schoenbrod*, 36 Ill. App. 2d at 120).

Likewise, in *Booker*, the court noted that the rule against unreasonable delay in the

rescission context is stricter than the general laches doctrine as applied in other contexts.

"Laches generally bars an action only where the defendant demonstrates both a lack of diligence

by the claimant and resulting prejudice." *Booker*, 2006 WL 1302521 at *6. "In cases involving

fraud, however, 'far greater emphasis is placed on the delay in asserting the claim than on a

change of circumstances, for an unreasonable lapse of time between discovering the supposed

fraud and bringing the suit is of itself prejudicial to the party charged with fraud." *Id.* (quoting

*Schoenbrod*, 183 N.E. 2d at 192; *Swartz*, 826 F. Supp. at 277; *Mrotzek*, 158 Ill. App. 3d at 16).

"Illinois courts focus on the reasonableness of the delay because 'an unexplained delay raises an

immediate doubt as to a [party's] right to ask the intervention of a court of equity.'" *Id.* "When

- 9 -

a party does not 'move with alacrity in seeking redress . . . his claim and his motives are

suspect.'" *Id.*

     **C.**    **Hancock's Prayer for Rescission is Barred Because Hancock Delayed in Seeking Rescission and Continued to Treat the Contract and Valid and Binding**

          **1.**    **Hancock Had Knowledge of the Alleged Fraud at Least as Early as April 2004 (and Certainly No Later than June 2005), and Was Obligated to Promptly Seek Rescission at That Time**

By its own admission, Hancock became aware of alleged "misrepresentations by Abbott

in the negotiation and execution of the Agreement" no later than April 12, 2004. Ex. 1 (First

Am. Supp. Cmplt.), ¶ 20.  Hancock admits that, on that date, it initiated an audit of Abbott's

books and records for the purpose of "confirming or refuting" these "suspected violations." *Id.*,

¶ 21.[2]  Hancock also admits that, pursuant to the dispute resolution provision of the Agreement,

it provided notice to Abbott on April 1, 2005 of the alleged misrepresentations.  *Id.*, ¶ 40.

Even if Hancock's obligation to promptly seek rescission was not triggered by April 2004

or April 2005, it certainly was triggered by the time it filed its initial complaint in this action in

June 2005.  In its June 3, 2005 Complaint, Hancock alleged that Abbott "materially

misrepresented the development status of the Program Compounds . . . wantonly and willfully

for the purpose of fraudulently inducing John Hancock to enter into the Agreement" and that

Hancock "justifiably relied upon Abbott's misrepresentations to its detriment by, among other

things, entering into the Agreement[.]" Ex. 5 (Cmplt.), ¶ 42, 44-45.

---

[2] As noted in Abbott's opposition to Hancock's motion for leave to amend its complaint, Hancock actually made allegations to Abbott as early as November 2003 regarding the purported misrepresentations.  On this motion to dismiss, however, Abbott limits itself to the facts alleged in the complaint and other judicially noticeable documents.

1237205.1

2.      **Despite Knowledge of the Alleged Fraud, Hancock Delayed Seeking Rescission For Two and a Half Years**

After gaining knowledge of the alleged fraud at least as early as April 2004 (and certainly no later than June 2005), Hancock did not promptly seek rescission of the Agreement. Instead, Hancock delayed more than two and a half years after suspecting fraud and sixteen months after filing its initial complaint seeking only monetary damages for fraud. This is far too long. A plaintiff believing himself to be defrauded must assert his right to rescission *promptly* after discovering the alleged fraud, or else he will be deemed to have affirmed the contract and waived the right to rescission. *See, e.g., Follett v. Brown*, 188 Ill. 244, 248 (1900) ("[w]here a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts *at once* announce his purpose, and adhere to it"). Court have not hesitated to hold that plaintiffs are barred from rescission for delays shorter than Hancock's. *See, e.g., Swartz*, 826 F. Supp. at 278 (nine months); *Guy*, 628 F. Supp. at 261-62 (one year); *Eisenberg v. Goldstein*, 29 Ill. 2d at 621 (one year); *Kanter*, 344 Ill. at 415 (8 to 11 months); *Huiller v. Ryan*, 306 Ill. 88, 94 (1922) (eighteen months); *Follett*, 188 Ill. at 248 (six months).

3.      **Since Gaining Knowledge of the Alleged Fraud, Hancock Continued to Treat the Agreement As Valid and Avail Itself of Its Rights Under the Agreement**

Hancock did not merely delay in seeking rescission, it continued to treat the Agreement as valid and avail itself of its rights under the Agreement during that time.

First, Hancock demanded and accepted continued performance according to the terms of the Agreement. For example, after notice of the alleged fraud, Hancock availed itself of its audit rights pursuant to Section 2.5 of the Agreement. Ex. 1 (First Am. Supp. Cmplt.), ¶ 21. Hancock also demanded that Abbott continue to perform its other obligations under the Agreement – such

- 11 -

as making commercially reasonable efforts to develop the Program Compounds and meeting minimum thresholds for spending on the development of the Program Compounds. *Id.*, ¶¶ 17-18, 33-34. Hancock's "election to proceed with performance on the contract is inconsistent with the remedy of rescission." *Zeidler v. A & W Restaurants, Inc.*, 2001 WL 62571, at *7 (N.D. Ill.). *See also Brown*, 142 Ill. at 430 (plaintiff was "duty bound to make her election [to affirm or rescind the contract] at once, or at least before requiring further performance by the other party.").

Second, during the first sixteen months of the present action, Hancock sought not to rescind the Agreement, but to enforce its terms and obtain monetary damages. Hancock alleged that if it "had known the true development status" of ABT-518 and ABT-594, it "would have demanded different terms . . . or may not have entered into the Agreement at all", but it did not seek rescission of the Agreement or include any allegation that the Agreement was void or voidable due to Abbott's alleged misrepresentations. Ex. 5 (Cmplt.), ¶¶ 24, 26, p. 19; Ex. 7 (Supp. Cmplt.), ¶¶ 26, 28, p. 20. To the contrary, Hancock alleged that "the Agreement constitutes a valid and binding contract between the parties" and sought compensatory damages, interest, costs, punitive damages, and indemnification. Ex. 5 (Cmplt.), ¶ 43, p. 19; Ex. 7 (Supp. Cmplt.), ¶ 47, p. 20. In the Supplemental Complaint Hancock filed in June 2006, Hancock added a demand for enforcement of another provision of the Agreement – payment by Abbott pursuant to Section 3.3(b) – and subsequently sought summary judgment on this claim. Ex. 7 (Supp. Cmplt.), ¶¶ 17-18, 33-34. Even now – despite the new claim for rescission – Hancock continues to allege that "the Agreement constitutes a valid and binding contract between the parties." Ex. 1 (First Am. Supp. Cmplt.), ¶ 48.

- 12 -

1237205.1

Third, well after obtaining knowledge of the alleged fraud, Hancock continued to prosecute its claim for enforcement of the Agreement in *Hancock I*.  Throughout *Hancock I*, Hancock never argued that the Agreement was void or voidable; instead, it sought and obtained a final judgment enforcing its rights under Section 3.4 and "declaring that the Agreement otherwise is in full force and effect in accordance with its terms." Ex. 2 (Cmplt., *Hancock I*) at 6 (Prayer for Relief, § (b)).  Hancock sought and obtained a declaratory judgment enforcing its rights under Section 3.4 and affirming that the Agreement "remains in full force and effect." Ex. 3 (9/16/05 Final Jdgmt. & Decl.) at 2.  In briefs and oral argument before the First Circuit in 2006, Hancock argued that the final judgment (including the declaration that the Agreement "remains in full force and effect") "should be affirmed in its entirety." Ex. 4 (4/3/06 Brief of Pltfs. Appellees) at 22.  On September 28, 2006, the First Circuit affirmed the Final Judgment.

Hancock's decision to seek and obtain judgment enforcing the Agreement after notice of the alleged fraud precludes its belated request for rescission. *See e.g., Wollenberg*, 179 N.E. at 55-57; *City of Chicago v. Michigan Beach Housing Coop.*, 297 Ill. App. 3d 317, 320 (1998); *Anderson v. Chicago Trust & Sav. Bank*, 195 Ill. 341 (1902).  In *Anderson*, the plaintiff filed an action for relief against a usurious loan agreement and alleged that he was fraudulently induced to purchase stock in the Midland Company as a condition of the loan. *Anderson*, 63 N.E. at 203. The defendant sought and obtained a preliminary injunction prohibiting the defendant from disposing of the stock. *Id.* at 204-05. Subsequently – after the franchise of the Midland Company was revoked – the plaintiff added a prayer for rescission of the agreement. *Id.* at 204. The trial court granted rescission, but the appellate court reversed. *Id.* at 205. The appellate held that "the principle which controls here is not so much that [plaintiff] has been guilty of laches,

- 13 -

1237205.1

but that, with knowledge of the facts, he deliberately affirmed the contract, and kept [defendants] from control of the property, by the injunction order, for two years before deciding to rescind." *Id.* at 206.  The Illinois Supreme Court affirmed, holding that "when, after sufficient knowledge of [the] fraud, [plaintiff] elected to" enforce his rights under the agreement and obtain a preliminary injunction against the defendant, "he waived his right to rescind."  *Id.* at 207.

In *City of Chicago*, the City discovered alleged misrepresentation by a housing developer to whom it had loaned funds.  *Id.* at 320.  It initially sued for various breaches of the loan agreement but did not seek rescission.  *Id.* at 321.  Furthermore, it continued to perform its obligations under the agreement and provide tax credits to the developer.  *Id.* at 320-21.  After its original claims were dismissed, the City filed an amended complaint alleging fraud and, in response to a counterclaim, argued that the developer's fraud excused the City from its obligations under the loan agreement.  *Id.*  The court rejected the City's attempt to avoid its obligations under the contract.  *Id.* at 322.  It noted that "[t]he city had two legal remedies available when it became aware of defendants' misrepresentations:  (1) rescind the contract and recover the consideration paid; or (2) affirm the contract and sue for damages."  *Id.*  It held that since the City "failed to promptly exercise the option to rescind the contract" and instead "sued for damages" and continued to perform under the contract, it "remains obligated under [the contract], though still free to sue for damages."  *Id.*  Likewise here, Hancock had two potential remedies: rescind the contract and recover its Program Payments or affirm the contract and sue for damages.  It chose the latter option and cannot now reverse itself and seek rescission.

4.    **Although Abbott is Not Required to Show Prejudice on this Motion, It Was Prejudiced by Hancock's Delay in Seeking Rescission**

As noted above, delay alone is sufficient to bar a claim for rescission and a showing of prejudice is generally not required. *Guy*, 628 F. Supp. at 261-62.  In fact, however, Abbott would be prejudiced if Hancock were allowed to pursue rescission after Hancock has continued to demand performance by Abbott long after learning of the alleged fraud.  After notice of the alleged fraud, Hancock sought and obtained a declaratory judgment from this Court that the Agreement "remains in full force and effect" and continued to demand that Abbott perform its obligations under the Agreement.  For example, Hancock demanded that Abbott submit to an audit of its books and records, make "commercially reasonable efforts" to develop the Program Compounds for the benefit of both parties, and meet specified spending thresholds in its development of the Program Compounds.[3]  Ex. 1 (First Am. Supp. Cmplt.), ¶¶ 17-18, 21, 33-34, 38-39.  Hancock's belated request for rescission of the Agreement, after years of demanding performance by Abbott, is inequitable and complicates any effort to return the parties to the *status quo ante*.  *Brown*, 142 Ill. at 409 (plaintiff was "duty bound to make her election [to affirm or rescind the agreement] at once, or at least before requiring further performance by the other party.").

---

[3] The parties disagree over the nature of those contractual obligations, with Abbott contending it fully performed its obligations and Hancock contending otherwise.  The relevant point on this motion is that Hancock insisted on continued performance and Abbott continued to perform in accordance with its understanding of the terms of the Agreement.

- 15 -

> 5.    **Hancock Cannot Save Its Rescission Claim By Pointing to Vague
>        Allegations in Its Original Complaint or Its Purported Reservation of
>        the "Right" to Rescission in a February 2006 Interrogatory Response**

Hancock may argue – as it did in its motion for leave to amend – that vague allegations in

the original complaint implicitly asserted a rescission claim.  This argument is without merit.

Hancock's assertion in the original complaint that if it "had known the true development status"

of ABT-518 and ABT-594 it "would have demanded different terms . . . or may not have entered

into the Agreement at all," *id.*, ¶¶ 24, 26, is merely a factual allegation and does not give any

indication that Hancock is seeking rescission, rather than damages, as a remedy.  Likewise, the

vague, boilerplate language in the Prayer for Relief requesting "other relief as the Court deems

just and appropriate" does not constitute a request for rescission.  It gives no indication that

Hancock considered rescission to be a "just and appropriate" remedy or that it was requesting

such relief.  This vague boilerplate language hardly satisfies the requirement that a plaintiff

clearly and promptly "*announce his purpose* and adhere to it." *Kanter*, 344 Ill. at 415 (emphasis

added).

Hancock also may argue that it should be allowed to amend its complaint to reference its

February, 6, 2006 interrogatory response, in which it purported for the first time to "reserve the

right" to seek rescission. Ex. 6 (Pltfs' Reply Mem. In Supp. of Mot. for Leave to Amend Supp.

Cmplt. at 10).  This amendment would be futile since it would not remedy the flaw in Hancock's

rescission claim.  First, Hancock's purported reservation of its "right" to seek rescission was not

timely, since it came at least 22 months after Hancock was on notice of the alleged fraud and

eight months after Hancock filed its original complaint seeking monetary damages for fraud.

Second, "it is not enough under Illinois law simply to say that you are ready to bring suit for

- 16 -

rescission – instead you must act on that kind of statement and do it promptly." *Swartz*, 826 F. Supp. at 278. *See also Booker*, 2006 WL 1302521 at *5 ("where a party desires to rescind for fraud he must, upon discovery of the facts, at once *commence proceedings* for relief as soon as reasonably possible.") (*quoting Mrotzek*, 158 Ill. App. 3d at 16-17) (emphasis added). After it belatedly purported to reserve its rights in February 2006, Hancock continued to delay and take actions affirming the Agreement. For example, it filed a Supplemental Complaint in June 2006 that still did not include a request for rescission, added a claim for enforcement of another provision of the Agreement (Section 3.3(b)), and continued to assert that "the Agreement constitutes a valid and binding contract between the parties." Ex. 7 (Supp. Cmplt., ¶ 36-39, 47, p. 20-21). Hancock did not seek leave to amend its complaint to include a rescission claim until October 2006, at least two and a half years after suspecting fraud and sixteen months after filing its original complaint, which is far too late. *See Swartz*, 826 F. Supp. at 278 (rescission claim was barred where the plaintiff's lawyer threatened to sue for damages and/or rescission two months after learning of the alleged fraud, and reiterated the threat over the next two months, but did not file a claim for rescission until nine months after discovery of the fraud).

### 6.    Hancock Cannot Be Permitted to Affirm the Agreement When It Believes it Is More Profitable and Seek to Enforce the Agreement When Circumstances Change

When Hancock filed its original Complaint, it may have believed it would be more profitable to enforce the Agreement and seek monetary damages, since by doing so it would retain the right to receive royalties from Abbott for Program Compounds that entered the market. Now that Hancock is speculating that "the royalties are not looking very good", Ex. 10 (12/6/06 Tr.) at 40:15-17, it may have decided it is more profitable to seek rescission – forgoing its right

- 17 -

to royalties and obtaining a refund of its $100 million investment. The law does not allow this type of "wait and see" approach to asserting a right to rescission. "A party will not be permitted to speculate for a time on the probabilities of an advantageous bargain, after he has discovered a cause for rescission, but must act promptly to compel it." *Sutter v. Rose*, 64 Ill. App. 263, *3 (1896). The Illinois Supreme Court has noted that:

> It is a settled principle in equity that one who has been misled and defrauded shall not be permitted, after he learns of the fraud, to stand passive, and speculate on the election that the law gives him to either rescind the contract or waive the fraud, as the events of the future may determine it to be profitable or otherwise for him to do.

*Follett*, 188 Ill. at 247. *See also Brown*, 142 Ill. at 428 ("if [the plaintiff] concludes to abide by [a contract], as upon the whole advantageous, he shall not afterwards be permitted to question its validity.")

For example, in *Guy*, the plaintiff, pursuant to a term in his employment agreement, sold corporate stock back to his employer at current book value when terminating his employment. 628 F. Supp. at 254. He alleged that the company committed fraud by failing to disclose pending negotiations for sale of the company, which increased the potential value of the stock beyond book value. *Id.* at 254-55. After learning of the pending acquisition, the plaintiff filed suit for fraud and violations of state and federal securities laws and sought monetary damages. *Id.* at 255. Subsequently, the companies announced termination of the proposed acquisition. *Id.* One week later, the plaintiff filed a motion for leave to amend his complaint to add an alternative remedy of rescission under the Securities Exchange Act of 1934. *Id.* The court held that the claims were invalid, but even if valid, the prayer for rescission – added more than a year after plaintiff learned of the alleged misrepresentation and nine months after he originally filed suit for

- 18 -

monetary damages – was untimely. *Id.* at 261-62. It observed that when the plaintiff originally

filed his complaint, he apparently found the prospect of damages more appealing. *Id.* at 262.

Relying on both federal and Illinois law regarding timeliness of demands for rescission, the court

held that "[u]nder the principles demanding prompt rescission, [plaintiff] cannot switch signals

now simply because he decided" that changed circumstances "rendered rescission more

attractive than damages." *Id.*

> ### 7.    Hancock's Delay In Seeking Rescission Is Not Excused by Lack of Knowledge of the Alleged Misrepresentations

Hancock's delay in seeking rescission is not excused by any lack of knowledge regarding

the alleged fraud. Hancock has admitted that it suspected misrepresentations by Abbott at least

as early as April 12, 2004. Ex. 1 (First Am. Supp. Cmplt.), ¶¶ 20-21. And, without a doubt, by

the time Hancock filed its original complaint on June 3, 2005, it had sufficient knowledge of the

alleged fraud to seek rescission. Ex. 5 (Cmplt.), ¶¶ 23-26, 36-41 (alleging misrepresentations).

Despite that knowledge, Hancock chose not to pursue rescission as a remedy, but instead chose

to affirm the contract and seek enforcement, money damages, and declaratory relief. *Id.* at 19.

The fact that Hancock may have learned additional facts regarding the purported

misrepresentations in discovery in this litigation is irrelevant. "[A] party discovering fraud can

not lie by until he discovers its full extent before acting. A further discovery of fraud will not

give a further election to rescind." *Sutter*, 64 Ill. App. 263, *3 (1896). For example, in *Booker*,

the plaintiff attempted to excuse his delay in filing a claim for rescission by arguing that he did

not suspect fraud when a check for the first installment payment bounced but only when a second

check was returned for insufficient funds three years later. *Booker*, 2006 WL 1302521 at *6.

The court held that, "Illinois law requires greater diligence." *Id.* "As soon as he discovered facts

1237205.1

suggesting fraud (here, the initial bounced check), [the plaintiff] was obligated to take action."
*Id.*  It concluded that "[b]ecause [plaintiff] failed to enforce his rights in a timely fashion despite
having notice of [defendant's] fraud, his rescission claim cannot prevail." *Id.*

## IV.    CONCLUSION

Hancock's prayer for rescission is barred as a matter of law, based on the facts as alleged
in the Complaint and judicially noticeable documents.  Accordingly, Abbott respectfully requests
that the Court grant its motion to strike the request for rescission from the Prayer for Relief in
Hancock's First Amended Supplemental Complaint.

ABBOTT LABORATORIES

By its attorneys

/s/ Michael S. D'Orsi                          /s/ Jeffrey I. Weinberger
Michael S. D'Orsi                              Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Peter E. Gelhaar (BBO#188310)                  Gregory D. Phillips (Admitted Pro Hac Vice)
Michael S. D'Orsi (BBO #566960)                Eric J. Lorenzini (Admitted Pro Hac Vice)
DONNELLY, CONROY & GELHAAR LLP                 Ozge Guzelsu (Admitted Pro Hac Vice)
1 Beacon St., 33rd Floor                       MUNGER, TOLLES & OLSON LLP
Boston, Massachusetts 02108                    355 South Grand Avenue, 35th Floor
(617) 720-2880                                 Los Angeles, CA  90071
peg@dcglaw.com                                 (213) 683-9100
msd@dcglaw.com

Dated: January 12, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on January 12,
2007.

Date: January 12, 2007.

                          /s/ Michael S. D'Orsi
                          Michael S. D'Orsi

1237205.1