UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  Civil Action No. 05-11150-DPW <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM IN SUPPORT OF MOTION OF NONPARTY STONETURN GROUP, LLP TO QUASH OR MODIFY SUBPOENA

## I.    INTRODUCTION

This memorandum is filed by the nonparty StoneTurn Group, LLP ("StoneTurn") in support of the Motion of Nonparty StoneTurn Group, LLP to Quash or Modify Subpoena (the "Motion").

The Motion concerns a subpoena for documents and a deposition issued by the defendant Abbott Laboratories ("Abbott") on March 23, 2007 (the "Subpoena"). For the reasons described in more detail below, the Motion should be allowed because (a) the Subpoena improperly seeks to require a partner of StoneTurn to be deposed twice in this action, (b) the Subpoena is the second subpoena seeking documents from StoneTurn in this case, (c) StoneTurn already produced documents in response to the first subpoena, (d) the request for documents in the Subpoena is duplicative, overbroad and unduly

burdensome, and (e) the Subpoena seeks the production of highly confidential documents that belong to other third parties and not relevant to this action.

## II.    **FACTUAL BACKGROUND**

Pursuant to the terms of a Research Funding Agreement (the "Agreement") between John Hancock Life Insurance Company ("John Hancock") and Abbott dated March 13, 2001, John Hancock had the right to retain an independent consultant to conduct an audit concerning Abbott's compliance with certain terms of the Agreement. StoneTurn specializes in providing, among other things, forensic accounting, contract compliance review and litigation support services. John Hancock retained StoneTurn to conduct an audit of Abbott's compliance with the Agreement (the "Abbott/Hancock Audit"). StoneTurn attempted to complete the Abbott/Hancock Audit in the period from approximately June 2004 through March 2005.

StoneTurn was served with a subpoena for documents (the "First Subpoena") issued by Abbott in January 2006. A copy of the First Subpoena is attached to the Affidavit of Andrew C. Griesinger ("Griesinger Affidavit"), filed herewith, as Exhibit 1. The First Subpoena requested the production of twelve different categories of documents that concerned the Abbott/Hancock Audit. StoneTurn objected to certain request for documents in the First Subpoena. A copy of StoneTurn's letter objecting to the First Subpoena is attached to the Griesinger Affidavit as Exhibit 2. StoneTurn nevertheless produced documents in response to the First Subpoena. Abbott apparently was satisfied with StoneTurn's production of documents in response to the First Subpoena. Abbott has not filed a motion to compel the production of further documents in response to the First Subpoena.

After StoneTurn produced documents in response to the First Subpoena, StoneTurn voluntary allowed Abbott to depose Chris Martinez and Mark Hair, its two employees who were

primarily responsible for working on the Abbott/Hancock Audit. Chris Martinez was the partner

in charge of the audit. He supervised and performed a substantial amount of the audit work.

Mark Hair was a managing director at the time of the audit. He reported to Mr. Martinez

concerning the audit and did a substantial amount of the audit work.

Abbott deposed Mr. Martinez on November 3, 2006 and on March 22, 2007. Mr.

Martinez was deposed for more than seven hours. Abbott obtained a total of 435 pages of

deposition testimony from Mr. Martinez. Mr. Hair was deposed on November 2, 2006 for

approximately seven hours. Abbott obtained a total of 194 pages of deposition testimony from

Mr. Hair on that day. StoneTurn has agreed to produce Mr. Hair for continued examination on a

second day, provided that the examination is limited to four hours or less and concerns certain

documents that were produced after Mr. Hair testified on November 2, 2006. *See* Griesinger

Affidavit, ¶¶ 4-5.

At their depositions, Messrs. Martinez and Hair provided testimony not only about the

Abbott/Hancock Audit, but also about contractual compliance audits that they performed

throughout their careers for other nonparties. Mr. Martinez estimated that he has performed

approximately one hundred contractual compliance audits in his entire career, consisting of

approximately twelve contractual audits performed while he was employed by Coopers &

Lybrand, approximately eighty audits performed while he was employed by Deloitte & Touche,

and approximately eight audits performed while he was employed by StoneTurn. *See* Griesinger

Affidavit, Ex. 3 (Martinez Dep. at pages 13, 32 and 59-60).

The deposition testimony of Mr. Martinez concerning other contractual compliance

audits was designated confidential, in order to protect confidential information concerning third

parties. Nevertheless, Mr. Martinez answered all of Abbott's questions about the other

compliance audits he conducted. Approximately 35 pages of his deposition testimony are devoted to audits unrelated to the Abbott/Hancock Audit. Although Mr. Hair's experience with contractual compliance audits was less extensive than Mr. Martinez's experience, Mr. Hair also provided confidential testimony concerning other contractual compliance audits in which he was involved. Id.

On March 23, 2007, the day after Mr. Martinez's deposition concluded, Abbott issued the Subpoena that is the subject of this Motion. A copy of the Subpoena is attached hereto as Exhibit A and to the Griesinger Affidavit as Exhibit 4. The Subpoena seeks almost exclusively documents concerning contractual compliance audits that StoneTurn performed for clients other than John Hancock that do not involve Abbott or John Hancock in any way. The Subpoena also includes a request for a Rule 30(b)(6) deposition of a witness to testify about topics that concern contractual compliance audits that StoneTurn performed for clients other than John Hancock that do not involve Abbott or John Hancock in any way.

StoneTurn's counsel accepted service of the Subpoena on March 30, 2007 and served a timely objection to the Subpoena on April 3, 2007. A copy of the letter objecting to the Subpoena is attached to the Griesinger Affidavit as Exhibit 5. StoneTurn has objected to producing documents in response to the subpoena, and to producing a witness to testify concerning unrelated contractual compliance audits StoneTurn has performed for clients other than John Hancock.

**III.    ARGUMENT**

   **A.    <u>Abbott Should Not Be Permitted to Depose Mr. Martinez Again</u>.**

The Subpoena includes a request pursuant to Rule 30(b)(6) for detailed testimony exclusively concerning contractual compliance audits performed by StoneTurn that are

completely unrelated to the Abbott/Hancock Audit. Because Mr. Martinez has been the partner in charge of most, if not all, of the contractual compliance audits performed by StoneTurn, Mr. Martinez is the witness StoneTurn would have to produce to testify in response to the Rule 30(b)(6) notice.[1]

In light of the fact that Mr. Martinez has already been deposed extensively in this action, and has already testified about other compliance audits he performed, Abbott should not be permitted to burden StoneTurn and Mr. Martinez by deposing Mr. Martinez again. Abbott could have served its Rule 30(b)(6) notice *before* it took the depositions of Mr. Martinez and Mr. Hair, in order to ensure that it would not subject StoneTurn's employees to more than one deposition. StoneTurn has already provided extensive information to Abbott concerning the Abbott/Hancock Audit and concerning other, unrelated audits. There is no reason or need for another deposition under these circumstances.

Abbott does not have the right under the Rules of Civil Procedure to depose the same person twice in the same case. Fed. R. Civ. P. 30(a)(2)(B) provides that a party must obtain leave of court to depose a person if "the person to be examined already has been deposed in the case." Here, Abbott is seeking to take the deposition of Mr. Martinez twice, without first obtaining leave from the Court to do so. In a similar circumstance, involving Fed. R. Civ. P. 30(b)(6) deposition notices, the First Circuit, citing Fed. R. Civ. P. (a)(2)(B), upheld the trial court's decision to quash a subpoena that effectively sought to take the deposition of the same person twice without first obtaining leave of court. *See* Ameristar Jet Charter, Inc. v. Signal

---

[1]It is apparent that Abbott expected Mr. Martinez to testify because Mr. Martinez's office is located in Austin, Texas and Abbott issued the subpoena from the United States District Court for the Southern District of Texas. Abbott apparently did not wish to depose Mr. Hair, whose office is located in San Francisco. Abbott issued the First Subpoena from the District of Massachusetts, because StoneTurn also has an office in Boston. Abbott could have issued the Subpoena from this district also, but apparently chose not to do so in light of its desire to depose Mr. Martinez again.

Composites, Inc., 244 F.3d 189, 192-93 (1st Cir. 2001). *See also* Miscellaneous Docket Mater

No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922 (8th Cir. 1999) (affirming decision to

quash subpoena seeking second deposition of witness on the ground, among others, that the

second deposition would be burdensome).  A second deposition of Mr. Martinez concerning

unrelated contract compliance audits would also be inappropriate and unduly burdensome for the

reasons stated in the following section of this memorandum.

### B.    StoneTurn Should Not Be Required to Produce Documents Concerning Unrelated Contractual Compliance Audits.

The first twenty-one requests for documents contained in the Subpoena seek documents

that relate to contractual compliance audits performed by StoneTurn *other than* the

Abbott/Hancock Audit that is at issue in this case.[2]  The first of the twenty-one requests seeks

documents sufficient to show StoneTurn's "policies and practices regarding the contractual

compliance audits."  *See* Exhibit A attached hereto.  StoneTurn acknowledges that if it had

created any documents that set forth any generally applicable policies, standards or practices for

conducting contractual compliance audits that were in effect during the period when StoneTurn

was conducting the Abbott/Hancock Audit, such documents could be discoverable.  StoneTurn

has informed Abbott that it has no such documents, however.  *See* Griesinger Affidavit, Ex. 5 at

page 1.  Abbott nevertheless has persisted in claiming that such documents must somehow exist

and must be produced.  This conduct by Abbott demonstrates a disregard for its obligation under

Rule 45(c)(1) to take reasonable steps to avoid imposing undue burden and expense on the non-

party who must respond to the subpoena.  Abbott disregards that obligation by stubbornly

insisting that StoneTurn search for and produce documents that it does not have and did not

---

[2]Although StoneTurn has raised the issues concerning the production of documents in a motion to quash, Rule 45(c)(2)(B) generally requires the party that issues a subpoena for documents to file a motion to compel the production of documents.  StoneTurn has been forced to file the Motion because the Subpoena also seeks the deposition of Mr. Martinez.

create.

The next twenty requests for documents in the Subpoena (numbers 2 through 21) all seek documents specifically concerning contractual compliance audits StoneTurn performed for clients other than John Hancock that do not involve Abbott in any way. Abbott may assert that the requests are "narrowly tailored" because they ask for documents "sufficient to reflect" or "show" certain information. However, the twenty requests effectively seek comprehensive and detailed information concerning other compliance audits, such as the contracts at issue (Request No. 2), documents "sufficient to reflect" the purpose and scope of the audit (Request No.3), the final audit report (Request No. 4), and documents "sufficient to reflect" the identities of the parties to each audit (Request No. 5). The requests also seek documents concerning ridiculously picayune details, such as (a) documents "sufficient to show" the extent to which documents provided in the audit were redacted (Request No. 12), (b) documents "sufficient to show" whether any indexes of documents were provided by the subject of the audit to StoneTurn, including the indexes themselves (Request No. 13-14), (c) documents "sufficient to show" the length of time that elapsed between the date a request for copies of documents was made by StoneTurn and the date when the copies were provided (Request 15), and (d) documents "sufficient to reflect" the "name and position" of every person interviewed by StoneTurn and the subject matter of each interview (Request No. 19). *See* Exhibit A attached hereto.

The requests for these documents are clearly unduly burdensome. They effectively attempt to seek all documents StoneTurn has concerning unrelated contractual compliance audits. Indeed, it is likely that even if StoneTurn produced all of its documents, those documents *still* might not be "sufficient to reflect or show" the many details requested by Abbott.

The requests for documents also do not seek relevant or admissible information. Facts

concerning the Abbott/Hancock Audit are relevant. Facts concerning other audits that StoneTurn performed are not relevant. Abbott apparently contends that it needs documents concerning all audits performed by StoneTurn because Mr. Martinez might be asked at trial whether any particular experience he had with the Abbott/Hancock Audit was consistent with his general experience. *See* Griesinger Affidavit, Ex. 6 at page 2. It would be absurd to require third parties to produce documents simply because the party requesting the documents imagines that his counsel could use them to conduct a theoretical cross-examination concerning irrelevant subjects that would waste the court's time. Following Abbott's logic, a third party witness might be required to produce his college transcript if the witness testifies about his or her educational background, or a legal expert who provides opinions about the defendant's conduct in a legal malpractice case might be required to produce documents concerning all the cases he or she tried. The permissible scope of discovery is not so broad.

The production of the documents requested could not reasonably assist Abbott in conducting an effective cross-examination, even if the cross-examination were allowed. Mr. Martinez estimated that he conducted approximately one hundred contractual audits in his career, only approximately eight of which were conducted while he has been employed by StoneTurn. In order to become intimately familiar with Mr. Martinez's experience, Abbott logically would have to subpoena documents concerning the many audits Mr. Martinez conducted before he started working for StoneTurn.[3] Abbott has no right to obtain the documents Mr. Martinez generated or reviewed while he was performing work that is not relevant to the work he performed for John Hancock.

Even if the documents requested had some remotely marginal relevance, the rules do not

---

[3]While he worked at Deloitte & Touche, Mr. Martinez conducted one contractual compliance audit that involved Abbott. StoneTurn has no documents concerning that audit, however.

require them to be produced. *See* Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,

333 F.3d 38, 41 (1st Cir. 2003)(trial court has discretion to quash subpoena even where it can be

assumed that documents requested are somewhat relevant). *See also* Wright & Miller, 9A Fed.

Prac. & Proc. Civ. 2d § 2459, at page 46 ("[I]t should be kept in mind that it is perfectly possible

for a subpoena duces tecum to be unreasonable or oppressive, or be subject to a protective order,

even though it seeks relevant evidence.").

Rule 26(b)(2)(i) permits the Court to limit discovery that would be "unreasonably

cumulative or duplicative." Abbott already has deposed Messrs. Martinez and Hair, and it

already has had an opportunity to ask them about other contractual compliance audits they

performed. The Subpoena is therefore unreasonably cumulative and duplicative.

Rule 26(b)(2)(iii) allows the Court to limit discovery where the "burden or expense of the

proposed discovery outweighs its likely benefit...." The burden on StoneTurn is not just the

burden associated with searching for and producing documents. Abbott is seeking to pry into

and potentially compromise StoneTurn's client relationships, and to impose burdens on all the

third parties that participated with StoneTurn in contractual compliance audits. The parties that

participated in these audits naturally expect that details concerning the audits would not be

disclosed in completely unrelated proceedings. StoneTurn's relationships with its clients could

be compromised regardless of whether the documents are produced pursuant to a protective

order. The parties to completely unrelated contractual audits have the right to expect that the

details concerning their private business affairs will not be disclosed under any circumstances in

a completely unrelated proceeding.

StoneTurn, of course, is obligated to keep information concerning its audits confidential.

An example of an agreement to maintain the confidentiality of such information that StoneTurn

executed is attached to the Griesinger Affidavit as Exhibit 7. (The names of the parties to the agreement other than StoneTurn and other identifying information have been redacted.) The effect of disclosure of the documents Abbott now seeks on StoneTurn and other nonparties imposes a burden that clearly is not outweighed in any sense by the hypothetical and nearly imperceptible benefit Abbott might gain by having inadmissible documents available for an irrelevant and likely ineffectual cross examination.

"[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs...." Cusumano v. Microsoft, Corp., 2162 F.3d 708, 717 (1st Cir. 1998). This is particularly true here. The interests of a number of different third parties are involved, including not only StoneTurn, but also StoneTurn's clients and the other parties involved in contractual compliance audits. Abbott cannot show that there is any compelling need to disregard the interests of these third parties. An order quashing the Subpoena is permitted under these circumstances in order to prevent the third parties whose documents are requested from "annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c).

## C.     StoneTurn Should Not Be Obligated to Produce Back to Abbott Copies of Documents that Abbott Sent to StoneTurn.

The final request for documents in the Subpoena (the second of two paragraphs numbered 21) seeks the production of "[a]ll documents that Abbott copied and produced to StoneTurn pursuant to the audit that StoneTurn conducted on behalf of John Hancock Life Insurance Company." Abbott apparently claims that it did not segregate or keep its own copy of the documents it sent to StoneTurn. Therefore, in light of Abbott's failure to do this, Abbott seeks to burden StoneTurn with a request for a copy of its own documents.

In connection with the Abbott/Hancock Audit, StoneTurn inspected Abbott's documents

at Abbott's facilities and requested that Abbott provide copies of certain of those documents.

StoneTurn provided a copy of the documents it received from Abbott to John Hancock's counsel.

Abbott already asked for these documents over a year ago in the First Subpoena, when it sought

the production of "[a]ll Abbott documents inspected or obtained by StoneTurn in connection

with the audit that were provided by StoneTurn to Hancock." *See* Griesinger Affidavit, Ex. 1

(paragraph 11 of document request).  Over a year ago, StoneTurn objected in response to the

First Subpoena to producing Abbott's own documents back to Abbott, and it did not produce

them. Id., Ex. 2 at page 2, ¶ 2.  Abbott did not file a motion to compel the production of those

documents.

     StoneTurn should not be required to produce the documents it received from Abbott for

a number of reasons.  First, if it was important for Abbott to obtain the documents, it should have

moved for an order to compel their production in response to the First Subpoena.  Abbott should

not be permitted to remedy its failure to act long ago by seeking the same document in a

duplicative second subpoena.  Second, StoneTurn is unnecessarily burdened by the request

because Abbott obviously should have segregated or made and saved its own copy of the

documents it produced to StoneTurn.  A third party such as StoneTurn should not have to bear

the burden of correcting Abbott's mistake or oversight.  Third, although it is possible that

StoneTurn can reassemble the copies of documents it received from Abbott, it would be difficult

for StoneTurn to do so, because the documents are located in more than one of StoneTurn's

offices.  Finally, the documents have always been available from John Hancock.  Abbott always

could have requested the documents from John Hancock.  Pursuant to Fed. R. Civ. P. 26(b)(2)(i)

the Court is may limit discovery of this nature where the discovery "is obtainable from some

other source that is more convenient, less burdensome, or less expensive."  Certainly, it is more

convenient and less burdensome for Abbott to seek the documents from a party to this litigation than to attempt to require a nonparty to produce them.

### D.    StoneTurn Should Be Awarded Its Attorneys' Fees

Fed. R. Civ. P. 45(c) requires the courts to enforce the duty of the party issuing a subpoena to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena. In enforcing this duty, the courts may impose an "appropriate sanction, which may include... a reasonable attorney's fee." Fed. R. Civ. P. 45(c)(1). StoneTurn should be awarded its fees incurred in presenting this Motion. Abbott has not taken reasonable steps to avoid imposing undue burden on StoneTurn, particularly in light of the fact that StoneTurn already has provided substantial discovery in this action. It was unreasonable for Abbott to issue a second Subpoena to StoneTurn for documents and to seek to take the deposition of Mr. Martinez for a second time. It was unreasonable for Abbott to seek additional discovery concerning subject matters that are tangential, at best, to issues involving the Abbott/Hancock Audit and that concern instead the confidential affairs of third parties for whom StoneTurn provided unrelated services. An award of attorneys' fees is appropriate because Abbott's conduct has been patently unreasonable under the circumstances. *See, e.g.*, Tidwell-Williams v. Northwest Georgia Health System, Inc., 1998 WL 1674745, *7 (N.D. Ga. 1998)(awarding costs and attorney's fees to nonparty where party's "untenable position in court unnecessarily subjected [nonparty] to an undue burden").

## IV.    CONCLUSION

For the foregoing reasons, StoneTurn respectfully requests that this Court grant the Motion and award StoneTurn its attorneys' fees and costs incurred in connection with this Motion. Alternatively, StoneTurn requests that the Court modify the Subpoena by limiting its

scope in a manner that eliminates any unnecessary and unwarranted burden on StoneTurn and requires Abbott, pursuant to Rule 45(c)(2), to pay StoneTurn's costs of compliance with the modified order, including copying expenses, attorneys' fees and the fees that StoneTurn's employees would ordinarily charge for their time if they were engaged in billable matters for their clients.

STONETURN GROUP, LLP

By its attorneys,

/s/ Andrew C. Griesinger
Andrew C. Griesinger (BBO No. 211285)
GRIESINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, Massachusetts 02110
Tele: 617-542-9900
Fax: 617-542-0900

Dated: April 19, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants (if any) on April 19, 2007.

/s/ Andrew C. Griesinger
Andrew C. Griesinger

EXHIBIT A

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

SOUTHERN  DISTRICT OF  TEXAS

JOHN HANCOCK LIFE INSURANCE COMPANY, et al.

V.

ABBOTT LABORATORIES

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-11150-DPW

TO:    StoneTurn Group LLP          512-469-5577
       100 Congress Avenue, Suite 2000
       Austin, TX 78701

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Ex. A**

| PLACE OF DEPOSITION    Affiliated Reporters, 805 W. 10th Street, Suite 400, Austin, TX 78701 | DATE AND TIME April 23, 2007 at 9:30 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
    **See Ex. B**

| PLACE | DATE AND TIME April 9, 2007 at 9:30 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE March 23,2007 |
|---|---|
| Attorneys for Abbott Laboratories | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Eric J. Lorenzini                    213-683-9207
Munger, Tolles & Olson LLP, 355 South Grand Avenue, 35th Floor, Los Angeles, CA  90071

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE SERVED: | PLACE |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

## Exhibit A:  Subject Matter of the Deposition

### Instructions

Pursuant to Rule 30(b)(6) of the Rules of Federal Procedure, StoneTurn Group LLP shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf regarding the matters described below.  The person(s) so designated shall testify as to matters known or reasonably available to the organization.

### Definitions

"Contractual compliance audit" means an audit initiated by one or more parties to an agreement, pursuant to a provision of the agreement, in order to determine whether another party or parties are in compliance with the terms of the agreement.

"StoneTurn" means StoneTurn Group LLP and its partners, officers, employees, and agents.

### Deposition Topics

1.      StoneTurn's policies regarding the conduct of contractual compliance audits during the period from January 1, 2004 to the present.

2.      StoneTurn's practices with respect to contractual compliance audits conducted from January 1, 2004 to the present, including but not limited to:

      a.      The relationship between audits conducted by StoneTurn and any pending or threatened litigation;

      b.      The contractual provisions pursuant to which StoneTurn conducted the audits;

      c.      The purpose and scope of the audits;

      d.      Documents and interviews requested by StoneTurn from the subjects of the audit; and

      e.      Audit reports created by StoneTurn.

2.      The responses by subjects of contractual compliance audits conducted by StoneTurn from January 1, 2004 to the present to the audits, including but not limited to:

      a.      Objections to document requests;

      b.      The quantity, type, and responsiveness of documents made available;

c.    The extent to which documents were redacted for reasons other than attorney-client privilege or the work product doctrine;

d.    Whether the subject of the audit provided StoneTurn with an index of the documents it made available and, if so, the nature of the index;

e.    The time from StoneTurn's initial document requests to completion of document production by the subject of the audit, and the extent to which the subject of the audit missed deadlines or target dates for production of documents;

f.    The procedures for copying of documents requested by StoneTurn (i.e., were copies made by StoneTurn or the subject of the audit);

g.    Any objections to the selection of StoneTurn as auditor;

h.    The extent to which the subject of the audit permitted StoneTurn to interview its employees and the nature and scope of any such interviews;

i.    The number of staff the subject of the audit devoted to responding to the audit (to the extent known to StoneTurn); and

j.    Any significant delays or refusals by the subject of the audit to respond to inquiries by StoneTurn.

4.    The authenticity, nature, and content of the documents produced by StoneTurn pursuant to this subpoena.

5.    StoneTurn's search, collection, and production of documents responsive to this subpoena.

## Exhibit B:  Document Requests

<u>Instructions</u>

Unless otherwise indicated, these requests call for documents created between January 1, 2004 and the present.

<u>Definitions</u>

"Contractual compliance audit" means an audit initiated by one or more parties to an agreement, pursuant to a provision of the agreement, in order to determine whether another party or parties are in compliance with the terms of the agreement.

"Documents" means every writing or record of every type and description that is in StoneTurn's possession, control or custody, whether maintained in paper, electronic, or other form.

"StoneTurn" means StoneTurn Group LLP and its partners, officers, employees, and agents.

<u>Documents Requested</u>

1.      Documents sufficient to show StoneTurn's policies and practices regarding contractual compliance audits.

2.      With respect to each contractual compliance audit conducted by StoneTurn, the written agreement pursuant to which the audit was conducted.

3.      With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect the purpose and scope of the audit (e.g., any notices of the audit provided to the subject of the audit).

4.      With respect to each contractual compliance audit conducted by StoneTurn, the final audit report(s), if any, that StoneTurn provided to its client(s).

5.      With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect the name of the party on whose behalf the audit was initiated and the subject of the audit.

6.      With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect whether StoneTurn was retained directly by a party to the contract or by counsel to the party.

7.      With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect whether, as of the date the audit was initiated, litigation

related to the contract at issue was pending or threatened between the party initiating the audit and the subject of the audit.

8.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect StoneTurn's requests for documents from the subject of the audit.

9.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect any objections by the subject of the audit to StoneTurn's document requests.

10.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to show the approximate quantity and type of documents the subject of the audit made available to StoneTurn.

11.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect whether the subject of the audit made available all of the documents requested by StoneTurn.

12.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect whether, and to what extent, the subject of the audit redacted documents made available to StoneTurn for reasons other than attorney-client privilege or the work product doctrine.

13.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to show whether the subject of the audit provided StoneTurn with an index of the documents it made available.

14.    With respect to each contractual compliance audit conducted by StoneTurn, all indicies of documents provided to StoneTurn by the subject of the audit.

15.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to show the approximate length of time from StoneTurn's initial request for documents to completion of document production by the subject of the audit.

16.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect whether the subject of the audit missed any deadlines or target dates for production of documents requested by StoneTurn.

17.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to show the procedures for copying documents made available by the subject of the audit (e.g., whether StoneTurn made copies of documents itself or submitted requests for copies to the subject of the audit).

18.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect whether the subject of the audit objected to the selection of StoneTurn as auditor.

19.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect the name and position of any employees of the subject of the audit who were interviewed by StoneTurn and the subject matter of any such interviews.

20.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect the number of staff the subject of the audit devoted to responding to the audit (to the extent known to StoneTurn).

21.    With respect to each contractual compliance audit conducted by StoneTurn, documents sufficient to reflect any significant delays or refusals by the subject of the audit to respond to inquiries by StoneTurn.

21.    All documents that Abbott copied and produced to StoneTurn pursuant to the audit that StoneTurn conducted on behalf of John Hancock Life Insurance Company.