UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY),<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendants. | CIVIL ACTION NO. 05-11150-DPW |

**ABBOTT LABORATORIES' OPPOSITION TO MOTION OF
STONETURN GROUP, LLP TO QUASH OR MODIFY SUBPOENA**

I.   **INTRODUCTION**

During *Hancock I*, Hancock retained StoneTurn, a litigation consulting firm, to conduct an "audit" of Abbott pursuant to the Research Funding Agreement ("Agreement"). Hancock's complaint alleges that Abbott, in its response to the audit, breached the Agreement by, *inter alia*, "unreasonably and unjustifiably acting in a manner contrary to the usual course of contractual compliance audits[.]" Abbott has reason to believe Hancock may seek to introduce evidence regarding purported general practices and procedures for contractual compliance audits at trial. Abbott therefore served a subpoena on StoneTurn requesting the production of documents and a Rule 30(b)(6) deposition regarding StoneTurn's policies and practices with respect to such audits.

StoneTurn has refused to produce *any* documents responsive to the subpoena. StoneTurn

argues that "[f]acts concerning other audits that StoneTurn performed are not relevant" in this case because they relate to audits conducted pursuant to different contracts between entities that are not parties to this action. During the meet-and-confer process, Abbott offered to withdraw its document and deposition requests if Hancock would stipulate that it would not seek to introduce evidence concerning audits of companies other than Abbott. Hancock refused, despite the fact that StoneTurn (who presumably would offer the evidence) believes such evidence would be irrelevant and inadmissible. Absent a stipulation or a Court order barring Hancock from introducing evidence regarding audits of companies other than Abbott, Abbott must obtain documents from StoneTurn on that subject matter so it can respond to Hancock at trial.

StoneTurn argues that the document requests are unduly burdensome. But Abbott narrowly tailored the requests to ask for documents "sufficient to reflect" certain information, as opposed to "all documents" regarding particular subjects. Therefore, most of the requests would likely be satisfied by production of a few key documents regarding each audit. In addition, StoneTurn has acknowledged that it has conducted only a small number of contractual compliance audits, so the documents should be easy to locate.

StoneTurn also bases its refusal to produce documents on nondisclosure agreements with third parties. But many of the document requests call for information regarding the mechanics of the audits (e.g., number of documents produced and timing of document product) and other information that is clearly not confidential. In addition, to the extent requested information is confidential, StoneTurn may designate it "Confidential" or "Highly Confidential" pursuant to the protective order.

Finally, StoneTurn has refused to produce a witness to testify on its behalf regarding contractual compliance audits of companies other than Abbott. StoneTurn contends that a

30(b)(6) deposition is inappropriate because it would need to designate Mr. Martinez and he has already been deposed as an individual in this action. But Mr. Martinez was deposed in his individual capacity, regarding his participation in the audit of Abbott. Although Mr. Martinez provided some unsubstantiated testimony at that deposition concerning general audit practices and procedures, Abbott did not have an effective opportunity to examine him because StoneTurn had not produced any documents regarding that subject. The current subpoena calls for StoneTurn to produce documents regarding its audit policies and practices and designate a witness (not necessarily Mr. Martinez) to testify on that subject. Thus, the deposition would not be duplicative of the prior individual deposition of Mr. Martinez.

II. **ARGUMENT**

    A. **Absent a Stipulation or Court Order Barring Hancock from Introducing Evidence Regarding Audits of Companies Other than Abbott, StoneTurn Should Be Required to Produce a Witness Regarding Policies and Practices With Respect to Such Audits**

Absent a stipulation or court order barring Hancock from introducing evidence regarding audits of companies other than Abbott, Abbott should be allowed to depose a StoneTurn representative regarding such audits.[1] StoneTurn argues that "Mr. Martinez is the witness StoneTurn would have to produce in response to the Rule 30(b)(6) notice" and Abbott should not be allowed to conduct the deposition because Mr. Martinez has already been deposed in his individual capacity in this action. Mot. at 5. Hancock's argument fails on a number of grounds.

First, Abbott has not yet had an effective opportunity to depose any StoneTurn witness regarding audits of companies other than Abbott. At his deposition, Mr. Martinez made some generalizations regarding other audits he performed, but Abbott did not have an effective

---

[1] Abbott's subpoena initially noticed the deposition of StoneTurn for April 23, 2007. Abbott, Hancock, and StoneTurn agreed to reschedule the deposition for June 20, 2007 (waiving the April 30 discovery cutoff) in order to allow the Court adequate time to rule on StoneTurn's motion for a protective order. Lorenzini Decl., ¶ 7, Ex. B.

opportunity to examine him because StoneTurn had not produced any documents regarding other audits. Griesinger Aff., Ex. 4; Lorenzini Decl., ¶ 5. Thus, the deposition of StoneTurn requested by the current subpoena would not be duplicative of the deposition of Mr. Martinez.

Second, Abbott is not seeking a second deposition of the same person thus there is no need for leave of court pursuant to Rule 30(a)(2)(B). Mr. Martinez was deposed in his individual capacity with respect to his audit of Abbott. The current subpoena requests the deposition of a different person (StoneTurn) regarding a different subject (StoneTurn's general policies and practices with respect to contractual compliance audits). The cases cited by Hancock are inapposite. In *Ameristar*, the First Circuit held that it was not "plainly wrong" for the district court to quash a second 30(b)(6) *deposition subpoena issued to the same corporation* because the corporation had already been deposed once pursuant to Rule 30(b)(6). *See Ameristar Jet Charter, Inc. v. Signal Composites*, 244 F.3d 189, 191-93 (1st Cir. 2001). Similarly, in *Miscellaneous Docket Matter No. 1*, the court quashed a second *deposition subpoena issued to the same individual. Miscellaneous Docket Matter No. 1. v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922 (8th Cir. 1999). By contrast, Abbott does not seek to depose the same person twice. It deposed Mr. Martinez once in his individual capacity and now seeks the deposition of a corporate representative of StoneTurn regarding different subjects.[2]

Third, if StoneTurn wishes to avoid the need for Mr. Martinez to appear again, it is free to designate another corporate representative so long as the representative is adequately knowledgeable and prepared to testify regarding the deposition topics. Although Abbott agrees

---

[2] The deposition of Mr. Martinez in his individual capacity lasted for more than one day only because it became apparent during the first day that critical documents withheld by StoneTurn and Hancock on the basis of privilege -- including StoneTurn's index of the documents produced by Abbott in the audit -- were not actually privileged. Lorenzini Decl. ¶ 6. In response to Abbott's protests, Hancock and StoneTurn agreed to produce the improperly withheld documents and make Mr. Martinez and Mr. Hair available for a half day regarding the documents. *Id.*

that Mr. Martinez would be an appropriate designee, it has never suggested that he is the only appropriate designee. StoneTurn originally informed Abbott that it would likely designate Mark Hair as its 30(b)(6) representative because Mr. Hair was already scheduled to appear for a continued deposition in his individual capacity. Griesinger Aff. Ex. 6 at 5. Abbott did not object to such designation but simply asked StoneTurn for information regarding Mr. Hair's participation in contractual compliance audits of companies other than Abbott in order to assess the appropriateness of the designation. *Id.* at 5-6. StoneTurn did not provide the requested information regarding Mr. Hair, but instead informed Abbott that it had decided that if it needed to designate a witness, it would designate Mr. Martinez. Lorenzini Decl., Ex. B. If, as Hancock contends, StoneTurn is an experienced independent auditing firm and not merely a litigation support firm, it should have partners or employees in addition to Mr. Martinez who are qualified to testify regarding StoneTurn's practices and procedures with respect to contractual compliance audits.

> B. **Absent a Stipulation or Court Order Barring Hancock from Introducing Evidence Regarding Audits of Companies Other than Abbott, StoneTurn Should Be Required to Produce Documents Regarding Such Audits**

In the absence of a stipulation or court order barring Hancock from introducing evidence regarding audits of companies other than Abbott, Abbott is entitled to discovery of documents regarding such audits.

> 1. **Absent a Stipulation or Court Order Barring Hancock from Introducing Evidence Regarding Audits of Companies Other than Abbott, the Documents Sought by Abbott Are Potentially Relevant to Hancock's Audit Claims**

StoneTurn argues that "[f]acts concerning other audits that StoneTurn performed are not relevant" because "they concern completely unrelated contracts between persons or entities that are not parties to this action." *See* Mot. at 8 & Griesinger Aff., Ex. 5 at ¶ 3(a). During the meet-

and-confer process, Abbott noted that Hancock's complaint alleges that Abbott violated the audit provision of the agreement by "unreasonably and unjustifiably acting in a manner contrary to the usual course of contractual compliance audits[.]" Griesinger Aff., Ex. 6 at 3. Abbott explained that, in light of Mr. Martinez's testimony at his deposition, it had reason to believe that Hancock might seek to introduce testimony at trial by Mr. Martinez or another employee of StoneTurn regarding audits of companies other than Abbott in an attempt to prove this claim. *Id.* Abbott explained to StoneTurn that if Hancock attempted to introduce such evidence Abbott would argue that the evidence was inadmissible as irrelevant, prejudicial, confusing, misleading, and a waste of time. *Id.* Abbott agrees with StoneTurn that each audit is unique and audits differ in numerous respects (e.g., the specific terms of the contractual audit provision, the nature of the contract, the scope and purpose of the audit). Abbott also explained that it would oppose any effort by Hancock to introduce such evidence as improper expert testimony because, among other things, the deadline for designation of experts and exchange of expert reports has long since passed and Hancock has not designated anyone as an expert regarding contractual compliance audits. *Id.* However, Abbott explained that in the absence of a stipulation or Court order precluding Hancock from seeking to introduce such evidence, Abbott had a right to seek documents and deposition testimony that might allow it to rebut any such evidence. *Id.*

Abbott offered to withdraw its requests for production of documents and a Rule 30(b)(6) deposition if Hancock would stipulate that it would not seek to introduce testimony regarding contractual compliance companies of companies other than Abbott. *Id.*; Lorenzini Decl., ¶ 8; Griesinger Aff., Ex. 6 at 3-4. Hancock unreasonably refused to agree to such a stipulation despite its own auditor's position that such evidence would be irrelevant and inadmissible. *Id.* Unless Hancock reconsiders its position and agrees not to seek to introduce evidence regarding

audits of companies other than Abbott or the Court issues an order barring Hancock from introducing such evidence, Abbott must have access to StoneTurn's documents and testimony regarding the subject so it can effectively cross-examine any witness who presents such testimony.[3]

### 2. StoneTurn's Contention That It Lacks Documents Responsive to the First Request Is Based on a Deliberately Narrow Reading of the Request

Abbott's first request calls for documents "sufficient to show StoneTurn's policies and practices regarding contractual compliance audits." Griesinger Aff., Ex. 4. Request 1. StoneTurn contends that it has no documents that "set forth any generally applicable policies, standards or practices for conducting contractual compliance audits that were in effect during the period when StoneTurn was conducting the Abbott/Hancock Audit." Mot. at 6. But, as Abbott explained to StoneTurn during the meet-and-confer process, the scope of the request is not as narrow as StoneTurn has construed it. Griesinger Aff., Ex. 6 at 1-2. Even if StoneTurn does not have any formal written policies, it certainly should have documents that reflect its *practices*. Also, if StoneTurn has policies regarding audits in general that are applicable, in whole or in part, to contractual compliance audits, such documents are responsive and should be produced.[4]

### 3. StoneTurn Has Failed To Substantiate Its Argument that the Requests Are Unduly Burdensome and It Declined Abbott's Offer to Discuss Modifications To the Requests to Address StoneTurn's Objections

StoneTurn argues that Abbott's requests are unduly burdensome because they seek

---

[3] StoneTurn contends that the documents Abbott has requested "could not reasonably assist Abbott in conducting an effective cross-examination [of Mr. Martinez], even if the cross-examination were allowed because "Mr. Martinez conducted approximately 100 audits in his career, only eight of which were conducted while he was employed at StoneTurn." Mot. at 8. Abbott chose to focus its requests on StoneTurn because StoneTurn was the entity that acted as Hancock's auditor.

[4] In addition, StoneTurn artificially seeks to limit the request to documents "in effect during the period when StoneTurn was conducting the Abbott/Hancock audit," Mot. at 6, even though the requests call for documents from 2004 to the present.

documents concerning "ridiculously picayune details" of other contractual compliance audits. Mot. at 7. But all of the so-called "ridiculously picayune details" cited by StoneTurn directly parallel the audit allegations in Hancock's complaint. Lorenzini Decl., Exh. A (First Am. Supp. Cmplt., ¶ 22). As long as Hancock's complaint includes such "picayune" claims, Abbott has the right to gather evidence to defend against such claims.

StoneTurn also incorrectly contends that Abbott's requests "effectively attempt to seek all documents StoneTurn has concerning unrelated contractual compliance audits." Mot. at 7. To minimize the burden on StoneTurn, Abbott generally requested documents "sufficient to show" certain information, rather than all documents regarding a topic. Griesinger Aff., Ex. 4. Therefore, it is likely that production by StoneTurn of a few key documents regarding each audit would satisfy its obligations with respect to the bulk of the requests. For example, the final audit reports requested by Abbott in Request 4 might very well contain information sufficient to reflect the scope of the audits (Request 3), the identity of the parties to the audit (Requests 5 and 6), whether StoneTurn was retained by counsel (Request 6), whether litigation was pending or anticipated (Request 7), the type of documents requested by StoneTurn (Request 8), the audited parties' objections and responses to such requests (Requests 9-11), the date on which documents were requested and date on which document production was complete (Request 15), the employees who were interviewed in the course of the audit (request 19), and other information sought by Requests 2-21. If StoneTurn does not have an audit report regarding a particular audit, or if the report does not reflect all of the information requested, StoneTurn could satisfy many of the requests by producing a few other key documents such as the StoneTurn retention agreement, audit notices, StoneTurn's requests for documents and responses thereto, indices of documents produced in the audits, and the contract pursuant to which the audit was conducted.

Furthermore, StoneTurn acknowledged during the meet-and-confer process that it has only conducted a small number of contractual compliance audits. Griesinger Aff., Ex. 6 at 3. Therefore, it should not have to search a large number of files to locate responsive documents.

StoneTurn disingenuously contends that the Court should be particularly careful to avoid burdening the company because it is a "nonparty." Mot. at 12. StoneTurn is an agent of Hancock in this litigation. In 2004, StoneTurn was retained by Hancock's litigation counsel, Choate, Hall & Stewart on behalf of Hancock to "audit" Abbott for the purpose of gathering evidence regarding potential claims against Abbott. Lorenzini Decl., Ex. B (First Am. Supp. Cmplt, ¶¶ 20-21). To this day, StoneTurn continues to provide litigation consulting services for Choate on behalf of Hancock in this matter. Thus, it is not appropriate to be any more restrictive of discovery directed at StoneTurn than discovery directed at Hancock itself.

Finally, StoneTurn's arguments regarding "burden" ring hollow because it declined Abbott's repeated offers to discuss potential modifications to the document requests and simply refused to produce *any* documents responsive to the subpoena. Griesinger Aff., Ex. 6 at 3; Lorenzini Decl., ¶¶ 3-4, Ex. B, C.

### 4. StoneTurn Cannot Refuse to Produce Documents Based on Its Nondisclosure Agreements With Third Parties

StoneTurn's refusal to produce *any* documents responsive to the subpoena on the grounds that it "is obligated to keep information concerning its audits confidential" is not justified.

First, many of the requests call for documents concerning the mechanics of the audits (e.g., procedures for copying documents, timing of document production, quantity of documents produced) and other information that is clearly not confidential. *See, e.g.*, Griesinger Aff., Ex. 4, Document Requests 6, 10, 11, 12, 13, 15, 16, 17, 18, 20, 21. The representative non-disclosure agreement ("NDA") submitted by StoneTurn contains no restrictions on StoneTurn's production

of such documents. The NDA applies only to "specifications, designs, plans, drawings, software, data, prototypes, or other business and/or technical information" that are "proprietary or confidential" and "clearly marked" as such by the disclosing party. Griesinger Aff., Ex. 7, § 2.

Second, to the extent that documents requested by the subpoena are confidential, StoneTurn may designate them "Confidential" or "Highly Confidential" pursuant to the protective order. *See* Stipulated Protective Order, filed July 15, 2005. Under the protective order, documents designated Confidential may only be used for purposes of the litigation, must be filed under seal, and must be destroyed or returned at the conclusion of the litigation. *Id.* Documents designated "Highly Confidential" are subject to all of the same restrictions and disclosure is limited to outside counsel. *Id.*

Third, the representative NDA submitted by StoneTurn expressly allows StoneTurn to disclose confidential information in response to a subpoena provided it gives the disclosing party prompt notice and reasonably cooperates with the disclosing party's "efforts to secure an appropriate protective order." Griesinger Aff., Ex. 7, § 5(F). StoneTurn has not submitted evidence that any third party believes the current protective order is inappropriate or otherwise objects to production of the requested documents pursuant to the protective order. Indeed, StoneTurn informed Abbott prior to filing this motion that it had not even begun to contact any of the third parties to assess their position. Griesinger Aff., Ex. 6 at 3.

C. **Abbott Will Withdraw Its Request That StoneTurn Produce Copies of Documents That Abbott Copied and Provided to StoneTurn In the Audit If StoneTurn and/or Hancock Enter a Stipulation Regarding the Identity of the Documents That Were Produced**

Abbott's final request calls for "[a]ll documents that Abbott copied and produced to StoneTurn pursuant to the audit[.]" Griesinger Aff., Ex. 4, ¶ 21. Abbott explained to StoneTurn

that it would be satisfied if either StoneTurn or Hancock produced documents responsive to these requests. *Id.*, Ex. 6 at 3-4. At the time, Abbott did not believe it had a copy set of these documents but, after StoneTurn's motion was filed, Abbott learned that its former counsel had retained a copy. In light of this new information, Abbott will produce a set of these documents to StoneTurn and Hancock and will withdraw its request that StoneTurn produce these documents provided that StoneTurn and/or Hancock stipulate that these are the set of documents copied and delivered to StoneTurn in the audit.

      D.    **StoneTurn's Request for Attorneys Fees is Unjustified; If Anything, Abbott Should Be Awarded Attorneys' Fees Because StoneTurn Filed This Motion Without Adequately Meeting-and-Conferring to Attempt to Resolve the Dispute**

As explained above, StoneTurn's motion for a protective order should be denied. But even if the Court does not deny the motion, StoneTurn's request for attorney's fees is unwarranted. This motion came about only because (a) Hancock unreasonably refused to stipulate that it would not seek to introduce evidence regarding audits of companies other than Abbott, despite the position of its own auditor (who presumably would offer the evidence) that such evidence would be irrelevant and inadmissible; and (b) StoneTurn declined Abbott's repeated offers to discuss modifications to the subpoena to address StoneTurn's objections and instead simply refused to produce a single document or make a witness available for deposition. Shortly before StoneTurn filed this motion, Abbott informed StoneTurn that it did not believe it had satisfied its obligation to adequately meet and confer and "reiterat[ed] its offer to discuss modifications to the subpoena (e.g., narrowing the scope of the document requests to address your objections regarding over breadth, burden, and confidentiality)." Lorenzini Decl., ¶ 3, Ex. B. StoneTurn did not respond to Abbott's offer to continue the meet-and-confer process; rather, the next day its simply filed its motion. Lorenzini Decl., ¶ 4, Ex. C.

III.    **Conclusion**

For the reasons stated above, the Court should deny StoneTurn's motion for a protective order. Alternatively, the Court should bar Hancock from introducing evidence regarding contractual compliance audits of companies other than Abbott.

ABBOTT LABORATORIES


By its attorneys


/s/ Michael S. D'Orsi
Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

and

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Ozge Guzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9100

Dated: May 3, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants as of May 3, 2007.

/s/ Michael S. D'Orsi
Michael S. D'Orsi

Dated: May 3, 2007

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that s/he caused a copy of the foregoing ABBOTT LABORATORIES' OPPOSITION TO MOTION OF STONETURN GROUP, LLP TO QUASH OR MODIFY SUBPOENA to be served by hand upon the following:

Andrew Griesinger
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110-2214

On this 3rd day of May 2007.

/s/ Michael S. D'Orsi
Michael S. D'Orsi