## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), <br><br> *Plaintiffs*, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> *Defendant*. | Civil Action No. 05-11150-DPW |

### MEMORANDUM OF ABBOTT LABORATORIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION TOPICS 1 and 2 OF HANCOCK'S RULE 30(b)(6) DEPOSITION NOTICE

Defendant Abbott Laboratories ("Abbott") respectfully submits this Memorandum in Support of Motion for Protective Order regarding deposition topics 1 and 2 of Hancock's Rule 30(b)(6) deposition notice.

### REQUEST FOR ORAL ARGUMENT

Abbott respectfully requests that the Court set a hearing on its Motion for a Protective Order Regarding Deposition Topics 1 and 2 of Hancock's Rule 30(b)(6) Deposition Notice.

### I.   INTRODUCTION

On March 30, 2007, one month before the discovery deadline in this matter, Hancock served a broad and sweeping Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition notice containing twenty-four topics of examination encompassing almost every factual issue in this case. While Abbott has agreed to prepare (and, in fact, has produced) witnesses for most of the

2839087.1

topics, and Hancock has agreed to withdraw or defer others, the parties have been unable to reach an agreement regarding two of the topics in the deposition notice. Topics 1 and 2 of the notice request that Abbott prepare one or more witnesses regarding Abbott's knowledge and belief concerning the prospects and conditions of ABT-518 and ABT-594 as of March 13, 2001, the date the parties entered into the Research Funding Agreement. Hancock has already taken, or will take in the next few weeks, the depositions of all of the individuals who are most knowledgeable with respect to these topics. The project heads and several members of each development team for both compounds, many of whom are former Abbott employees, were deposed at length regarding the status of the compounds as of March 2001. Hancock also subpoenaed an outside consultant for ABT-594 and took his deposition in London, England.

    In addition, Hancock has also deposed Dr. John Leonard, who was the Corporate Vice-President for Global Pharmaceutical Development responsible for overseeing the development of both ABT-518 and ABT-594 during the relevant time period. Dr. Jeffrey Leiden, the former Chief Scientific Officer who was the executive decision-maker with regard to the development of Abbott's entire portfolio, including ABT-518 and ABT-594, was deposed recently and testified at length regarding these topics. Phillip Deemer, the business manager who brokered the Research Funding Agreement with Hancock, also testified regarding the status of these compounds as of the date of the agreement. Keith Hendricks, who was head of Abbott's Decision Support Group, testified as a Rule 30(b)(6) witness regarding, inter alia, Abbott's estimates of the probability of success, future sales, and the value of ABT-518 and ABT-594 as of 2000 and 2001. Despite the fact that Hancock has deposed or will depose a total of seventeen individuals who were directly and indirectly involved in the development of these compounds in

2001, Hancock insists that it needs additional testimony regarding the prospects and conditions of these two compounds in 2001.[1]

Abbott is at a loss regarding what additional testimony it can offer regarding these topics. The key witnesses already deposed have testified extensively regarding topics 1 and 2 of Hancock's Rule 30(b)(6) deposition notice. Abbott does not have any additional witnesses whom it could prepare on these topics who would provide non-cumulative testimony. Hancock stated that the testimony it had already taken was "incomplete," but when Abbott requested that Hancock clarify what additional testimony it seeks to acquire regarding these compounds, Hancock's sole response was that certain individuals such as Bruce McCarthy, Chris Silber, and Phil Deemer "claimed a lack of recollection" regarding documents that they had authored. Given that most of these documents were drafted six years ago, it is not surprising that the witnesses could not recall the details of all the events. It is unreasonable for Hancock to expect that Abbott will be able to prepare an additional witness to testify regarding documents authored by these individuals if the individuals themselves do not have a specific recollection of facts regarding the documents.

In order to fulfill its obligations under Rule 30(b)(6), Abbott has offered to designate the prior testimony of the witnesses already deposed as the company's Rule 30(b)(6) deposition testimony to bind the company. Hancock has refused Abbott's offer without any explanation.

Under Rule 26, discovery shall be limited if it is unduly burdensome, cumulative, or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive. Hancock's Rule 30(b)(6) deposition notice on topics 1 and 2 is unduly burdensome and unreasonably cumulative and duplicative. With Abbott's offer to designate

---

[1] Hancock is currently scheduled to take twenty-five depositions in this matter, the limit for depositions set by this Court.

prior deposition testimony as its 30(b)(6) corporate testimony, Hancock has a more convenient and less burdensome method of obtaining the same result and yet has unreasonably refused to accept Abbott's offer. Abbott therefore respectfully seeks that the Court issue a protective order with regard to topics 1 and 2 of Hancock's Rule 30(b)(6) deposition notice.

**II.    ARGUMENT**

### A.    Rule 26 Provides That Discovery Shall Be Limited Where It Is Unduly Burdensome, Duplicative, or Cumulative

While leave for discovery is generally freely given, Rule 26(b)(2)(C) provides that discovery shall be limited where it is unduly burdensome, or unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C); *Boston Edison Co. v. U.S.*, 75 Fed. Cl. 557, 566-67 (Fed. Cl. Ct. 2007). In *Boston Edison Co. v. United States*, the Federal Claims Court granted a protective order for certain Rule 30(b)(6) deposition topics because those topics overlapped with "areas covered by the prior depositions," and were therefore duplicative of discovery already taken in the case. *Id.* at 566.[2] Under Rule 26(c), the Court, for good cause shown, may make any order which justice requires to protect a party or person from, *inter alia*, annoyance, oppression, or undue burden, including that the disclosure of discovery may be had only on specified terms and conditions. Fed. R. Civ. P. 26(c)(2).

There is good cause under Rule 26(c) for the issuance of a protective order based on the fact that Hancock has already deposed seventeen witnesses on topics 1 and 2 of its Rule 30(b)(6) deposition. Hancock seeks to have additional Abbott witnesses testify on the same topics which not only would be duplicative and cumulative of testimony already given in this case, but would

---

[2] While the Federal Claims Court relied on the Rules of the United States Court of Federal Claims, the court noted that the Federal Claims rules mirrored the Federal Rules of Civil Procedure. *See id.* at 561.

require the additional witnesses to review and be competent to testify regarding the hundreds of pages of prior deposition testimony.  Requiring Abbott to prepare additional witnesses on these topics would be unduly burdensome.  Abbott has therefore demonstrated good cause for the court to issue a protective order barring Abbott's deposition on topics 1 and 2 of Hancock's 30(b)(6) deposition notice.[3]

### B. Hancock Has Already Deposed or Will Depose the Individuals Most Knowledgeable Regarding Topics 1 and 2 of Its 30(b)(6) Deposition Notice

Hancock has already deposed the individuals most knowledgeable about ABT-518 and ABT-594.  The heads of both projects and subordinate members of each team were deposed at length regarding Abbott's knowledge and belief concerning the prospects and conditions of ABT-518 and ABT-594 as of the date of the Research Funding Agreement.  Preparing a 30(b)(6) witness on these topics would require Abbott to have a witness who has already testified in this matter review the deposition transcripts of all of the other individuals already deposed and regurgitate the same information that Hancock has already obtained through the earlier depositions.  Such an exercise would be burdensome and redundant.

Hancock has already taken hundreds of pages of deposition testimony on the status of both of these compounds as of March 2001.  Dr. Chris Silber, Abbott's Venture Head for analgesia compounds, and Dr. Bruce McCarthy, Medical Director for the Analgesia Venture, the heads of the ABT-594 project who are both former employees, testified at length regarding the status of ABT-594 as of March 2001.[4]  Exh. A (McCarthy Trans. I at 21:17-226:7); Exh. B

---

[3] Hancock's Rule 30(b)(6) deposition notice is attached as Exhibit T to the Guzelsu Affidavit.

[4] Dr. Bruce McCarthy was also the Venture Head for Analgesia during part of the relevant time period.

(McCarthy Trans. II at 5:25-158:13); Exh. C (Silber Trans. at 22:21-249:19).[5]  Marilyn Collicott, the Clinical Project Manager for ABT-594, also testified at length regarding the clinical trials for ABT-594.  Exh. D (Collicott Trans. at 32:22-237:8).  Hancock has deposed the statistician for the M99-114 clinical study for ABT-594, James Thomas, regarding the statistical issues regarding that clinical study.  Exh. E (Thomas Trans. at 13:2-251:10).  Dr. Michael Meyer, the scientist most knowledgeable about preclinical issues and back-up compounds for ABT-594, was also deposed on the status of ABT-594.  Exh. F (Meyer Trans. at 42:3-187:23).  The senior manager for new product development, Andrea Landsberg, who was responsible for the commercial forecasting of ABT-594 was also deposed by Hancock.  Exh. G (Landsberg Trans. at 22:24-212:13).  In addition to these individuals, Hancock subpoenaed Dr. Paul Andrews, a scientist at St. George's University in London, to testify regarding a presentation he made to the ABT-594 team on emesis (vomiting) in the spring of 2001.  Exh. H (Andrews Trans. at 13:21-66:20).

    Dr. Nisen, Divisional Vice-President of Oncology Development, and Dr. Nabulsi, Venture Head of the Oncology Venture, the project heads for ABT-518 who are former employees, were also deposed on the status of the compound as of March 2001.  Exh. I (Nisen Trans. at 34:20-250:21); Exh. J (Nabulsi Trans. at 35:7-191:16).  In addition to the project heads, Hancock has deposed Diane D'Amico, the Clinical Project Manager for ABT-518 regarding her knowledge of the status of ABT-518 as of March 2001.  Exh. K (D'Amico Trans. I at 29:10-159:8); Exh. L (D'Amico Trans. II at 213:20-297:10).  Jim Looman, the associate medical director who oversaw the clinical trials for ABT-518 in the Netherlands was also deposed

---

[5] The exhibits cited to in this memorandum are attached to the concurrently filed Guzelsu Affidavit.  The transcript citations in this memorandum are not meant to be a comprehensive listing of all of the deposition testimony regarding these topics.  There may be additional testimony that is not cited herein.

regarding the clinical trials for ABT-518 as of March 2001. Exh. M (Looman Trans. at 19:14-88:18). Elizabeth Kowaluk, a member of the decision support group for ABT-518, was also deposed at length regarding ABT-518. Exh. N (Kowaluk Trans. at 32:21-154:23). Lise Loberg, the toxicologist on the ABT-518 compound testified regarding her knowledge of the status of ABT-518 as of March 2001. Exh. O (Loberg Trans. at 13:17-70:1).

The two senior executives most knowledgeable about the status of these compounds, Dr. John Leonard and Dr. Jeffrey Leiden, have been deposed in this matter. Dr. John Leonard was the Corporate Vice-President for Global Pharmaceutical Development responsible for overseeing the development of both ABT-518 and ABT-594 and testified regarding both of these topics. Exh. P (Leonard Trans. at 70:11-237:15). Dr. Jeffrey Leiden, Abbott's former Chief Scientific Officer and the primary decision-maker with regard to Abbott's portfolio, also testified at length regarding the status of these compounds as of March 2001. Exh. Q (Leiden Trans. at 108:19-139:18; 146:8-174:11; 200:4-224:2; 231:11-277:15; 305:10-323:2). Additionally, Phillip Deemer, the director of business development and licensing who negotiated the agreement with Hancock, was also deposed regarding the status of ABT-518 and ABT-594 as of the date of the Research Funding Agreement. Exh. R (Deemer Trans. at 93:14-117:6; 165:20-169:11). Keith Hendricks, the head of Abbott's Decision Support Group testified as a Rule 30(b)(6) witness on Abbott's estimates of the probability of success, future sales, and value of ABT-518 and ABT-594 in 2000 and 2001, and also answered questions as a percipient witness regarding the status of the two compounds as of March 13, 2001, Abbott's valuation and methods of valuation for the compounds during 2001 through the present, and Abbott's probabilities of success during 2001 and through the present. Exh. S (Rule 30(b)(6) Deposition Notice); Exh. T (Rule 30(b)(6) Deposition Notice); Exh. U (Hendricks Trans. at 79:19-89:24; 103:19-105:20; 143:8-143:14;

208:23-219:11). Hancock has left no stone unturned in the depositions of the individuals involved in the development of these compounds.

Hancock has cited as its only justification for these additional depositions that certain witnesses, "such as Bruce McCarthy, Chris Silber, and Phil Deemer, regularly claimed a lack of recollection of key events that were codified in documents they authored." Exh. W (April 18, 2007 Letter from Joseph Zwicker to Jeffrey Weinberger). Given that most of the events occurred six to seven years ago, it is not surprising that witnesses were not able to recall all of the events in detail. It is unclear how Abbott would prepare an additional Rule 30(b)(6) deponent regarding these issues where the individuals most knowledgeable have provided the knowledge they have and they do not recall some facts regarding the events. If the company itself lacks knowledge regarding particular events or documents, it cannot prepare a Rule 30(b)(6) witness on those issues. Indeed, Rule 30(b)(6) only requires that the company "testify as to matters known *or reasonably available* to the organization." Fed. R. Civ. P. 30(b)(6) (emphasis added).

Hancock has not provided any other guidance regarding the additional information it seeks through this deposition despite Abbott's request that Hancock "identify any particular information" Hancock believes it does not have "which could be provided by a Rule 30(b)(6) witness." Exh. V (April 13, 2007 Letter from Jeffrey Weinberger to Brian Davis) and Exh. W (April 18, 2007 Letter from Joseph Zwicker to Jeffrey Weinberger). Abbott should not be required to prepare additional witnesses who do not have first-hand knowledge of these issues to provide the same information on the same topics already covered by a multitude of earlier depositions.

### C. Abbott Will Designate Portions of Prior Deposition Testimony as Abbott's Rule 30(b)(6) Testimony to Bind the Company

Abbott has offered to designate the testimony of individuals who have already testified (or who will testify in the near future) as the testimony of the company in order to fulfill Abbott's obligations under Rule 30(b)(6).[6]  Exh. V (April 13, 2007 Letter from Jeffrey Weinberger to Brian Davis).  Courts have allowed a party to designate prior fact witness testimony as 30(b)(6) testimony in order to avoid unnecessary duplicative depositions.  *See, e.g., Fireman's Fund Ins. Co. v. Community Coffee Co., L.L.C.*, 2007 WL 647293, at *1 (E.D. La. Feb. 28, 2007).  Hancock has refused this offer without any explanation.  Abbott should be allowed to designate the prior testimony of the individuals already deposed in this matter as the company 30(b)(6) testimony to prevent duplicative testimony on these issues.  "Under Rule 26, courts shall limit discovery if that which is sought is obtainable from some other source that is more convenient, less burdensome, or less expensive.  Fed.R.Civ.P. 26(b)(2)(C)(i)."  *UniRAM Technology, Inc. v. Monolithic System Technology, Inc.*, 2007 WL 915225, at *2 (N.D. Cal. March 23, 2007); *Exxon Research and Engineering Co. v. U.S.*, 44 Fed. Cl. 597, 601-02 (Fed. Cl. Ct. 1999) ("[W]hich of the available devices is most appropriate, i.e., which device would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this?").  Allowing Abbott to designate the prior testimony of the seventeen percipient fact witnesses on these topics would be a less burdensome method of obtaining the same result for Hancock without the undue burden the additional depositions would pose on Abbott.

---

[6] Abbott has offered to review the deposition testimony cited in this memorandum, and the other deposition testimony taken in this case, in order to determine which excerpts would be designated as Abbott's 30(b)(6) testimony.

Abbott therefore respectfully requests that the Court grants its motion for protective order for topics 1 and 2 of Hancock's Rule 30(b)(6) deposition notice.

Dated: May 7, 2007

Respectfully submitted,

ABBOTT LABORATORIES

By: ___/s/ Michael S. D'Orsi_____
Michael S. D'Orsi

One of its attorneys

Peter E. Gelhaar (BBO#188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880
peg@dcglaw.com
msd@dcglaw.com

and

Jeffrey I. Weinberger (*pro hac vice*)
Gregory D. Phillips (*pro hac vice*)
Eric J. Lorenzini *(pro hac vice)*
Ozge Guzelsu *(pro hac vice)*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Tele:  (213) 683-9100
*Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 7, 2007.

Date: May 7, 2007.

_____/s/ Michael S. D'Orsi_____
Michael S. D'Orsi