UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), <br><br>*Plaintiffs*, <br><br>v. <br><br>ABBOTT LABORATORIES, <br><br>*Defendant*. | Civil Action No. 05-11150-DPW |

## ABBOTT LABORATORIES' ASSENTED TO MOTION FOR LEAVE TO FILE REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION FOR PROTECTIVE ORDER

Pursuant to Local Rule 7.1(B)(3), defendant Abbott Laboratories ("Abbott") requests leave to file the attached Reply Memorandum in support of its Motion For Protective Order Regarding Deposition Topics 1 and 2 of Hancock's Rule 30(B)(6) Deposition Notice. ("Motion"). *See* Ex. A (Abbott's proposed Reply Memorandum). John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Manulife Insurance Company ("Hancock") stipulated to Abbott's filing of a reply brief on May 2, 2007 in the Stipulation and Proposed Order Regarding Briefing on Defendant's Motion for Protective Order. Some of the issues raised in Hancock's opposition brief were not addressed in Abbott's Motion and require a response and clarification from Abbott.

2926027.1

For the above reasons, Abbott respectfully requests leave to file the attached Reply Memorandum.

Dated: May 18, 2007                              Respectfully submitted,

ABBOTT LABORATORIES

By:  ___/s/ Michael S. D'Orsi_____
     Michael S. D'Orsi

One of its attorneys

Peter E. Gelhaar (BBO#188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880
peg@dcglaw.com
msd@dcglaw.com

and

Jeffrey I. Weinberger (*pro hac vice*)
Gregory D. Phillips (*pro hac vice*)
Eric J. Lorenzini *(pro hac vice)*
Ozge Guzelsu *(pro hac vice)*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Tele:  (213) 683-9100

*Counsel for Abbott Laboratories*

## LOCAL RULE 7.1 CERTIFICATION

The undersigned hereby certifies that counsel for John Hancock Life Insurance stipulated to Abbott Laboratories' filing of the Reply in Support of the Motion for Protective Order in the Stipulation and Proposed Order filed with this Court on May 2, 2007.

                                                            /s/ Michael S. D'Orsi
                                                                 Michael S. D'Orsi

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 18, 2007.

Date: May 18, 2007.

                                                            /s/ Michael S. D'Orsi
                                                               Michael S. D'Orsi

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), <br><br> *Plaintiffs*, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> *Defendant*. | Civil Action No. 05-11150-DPW |

**REPLY MEMORANDUM OF ABBOTT LABORATORIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION TOPICS 1 and 2 OF HANCOCK'S RULE 30(b)(6) DEPOSITION NOTICE**

Defendant Abbott Laboratories ("Abbott") respectfully submits this Reply Memorandum in Support of its Motion for Protective Order regarding deposition topics 1 and 2 of Hancock's Rule 30(b)(6) deposition notice.

## I.   INTRODUCTION

Hancock has deposed countless Abbott witnesses who have testified at length regarding the corporation's knowledge of the issues raised in Hancock's opposition. Hancock is now seeking additional testimony because the individuals most knowledgeable regarding these issues do not have perfect recollections of events that occurred six years ago. Hancock has not addressed the central issue raised by Abbott's motion: Hancock has already deposed the individuals most knowledgeable on these topics and Abbott does not have any witnesses who can

2958576.1

provide additional or different testimony on the status of these compounds as of March 2001. In short, Hancock already has the corporation's knowledge on these topics.

The specific topics cited by Hancock in its opposition underscore the limited nature of the topics on which Abbott's witnesses lacked recollection. Two of Abbott's witnesses were unable to recall the specifics of brief presentations they made six years ago. Three of Abbott's witnesses were unable to recall a potential partnership deal with Purdue to co-develop ABT-594 that was never seriously pursued other than a few emails and a single meeting.

Additionally, Hancock cites the testimony of Abbott witnesses that they did not recall seeing a document entitled "Initial Portfolio Prioritization." Abbott already answered a request for admission regarding the "Initial Portfolio Prioritization" document, in which Abbott provided Hancock with the full extent of its knowledge regarding the document. Most importantly, Hancock's arguments regarding the "Initial Portfolio Prioritization" document are moot because Abbott agreed weeks ago to designate a witness to testify specifically regarding this document in response to separate Rule 30(b)(6) deposition topics included in the same notice served by Hancock.

Hancock also claims that it is entitled to testimony on an issue that is not even covered by topics 1 and 2 of its Rule 30(b)(6) notice. Topics 1 and 2 are limited to what Abbott knew and believed regarding the "prospects and conditions" of ABT-518 and ABT-594 as of March 13, 2001. *See* Guzelsu Aff., Exh. T at 3.[1] Hancock's opposition claims, incorrectly, that Abbott's witnesses have failed to provide testimony regarding "how Abbott created, and ensured the substantive accuracy of, the Descriptive Memoranda" that were exhibits to the Research Funding Agreement. Opp. at 7. Even a broad reading of topics 1 and 2 would not encompass the creation

---

[1] The Guzelsu Affidavit was filed concurrently with Abbott's Motion for Protective Order.

2

of the Descriptive Memoranda and Abbott's internal procedures for ensuring the accuracy of the documents. Moreover, Abbott already provided Hancock with a detailed description of the creation of the Descriptive Memoranda in its December 2005 interrogatory responses.

Hancock has learned exactly what Abbott knew and believed regarding the prospects and conditions of ABT-518 and ABT-594 as of March 13, 2001 from seventeen witnesses it has already deposed. Hancock is not entitled to additional testimony on issues that have already been covered by these prior depositions. *See Boston Edison Co. v. U.S.*, 75 Fed. Cl. 557, 566-67 (Fed. Cl. Ct. 2007) (granting a protective order for certain Rule 30(b)(6) deposition topics that overlapped with "areas covered by the prior depositions"). None of the cases cited by Hancock mirror the situation presented in this case where seventeen prior depositions have been taken on the same topics and the corporation cannot offer any additional or different testimony on the topics. Under these circumstances, where the Rule 30(b)(6) deposition would be wholly duplicative of the earlier testimony provided in the litigation, Abbott should be allowed to designate the prior testimony of its percipient witnesses as its Rule 30(b)(6) testimony. *See, e.g., Fireman's Fund Ins. Co. v. Community Coffee Co., L.L.C.*, 2007 WL 647293, at *1 (E.D. La. Feb. 28, 2007) ("If [plaintiff] wishes to designate any of these witnesses as its corporate representative as to a particular topic, it may do so and advise [defendant] of the relevant pages of the prior deposition so as to avoid duplication."). Under these circumstances, a protective order is warranted to protect Abbott from the undue burden presented by Hancock's Rule 30(b)(6) deposition notice.

On a separate note, Abbott is yet again being forced to refute Hancock's misleading and improper contentions regarding the merits of the underlying case in what should be a relatively simple and straightforward discovery motion. Hancock's opposition contains sweeping and

unsupported arguments that are unrelated to the discrete discovery issue raised in Abbott's motion for protective order. In motion after motion, Hancock has repeatedly attempted to bias the Court against Abbott by putting forth every theory of Hancock's case regardless of whether the arguments are related to the motion at hand. Abbott should not be required to address the underlying merits of this litigation and correct Hancock's misstatements every time Hancock files a brief in this litigation.

## II. ARGUMENT

### A. The Instances of Lack of Recollection Cited By Hancock Highlight the Burdensome and Cumulative Nature of Hancock Rule 30(b)(6) Deposition Notice

1. Abbott Already Has Answered Requests For Admission and Agreed to Produce a Rule 30(b)(6) Witness Regarding the Creation of the "Initial Portfolio Prioritization" Document in Response to Separate Topics in Hancock's Deposition Notice; Abbott Has No Other Knowledge Regarding This Document

Hancock's opposition cites the inability of Abbott witnesses to recall a document entitled "Initial Portfolio Prioritization", even though Abbott has already disclosed to Hancock the full extent of its knowledge regarding this document and has agreed to produce a Rule 30(b)(6) witness to reiterate that knowledge. Abbott informed Hancock in its responses to requests for admissions that the document was not created by an Abbott employee and Abbott employees have no knowledge regarding the document. Lorenzini Aff., Exhibit A at 4 (Abbott's Objections and Responses to Hancock's First Request for Admissions).[2] Abbott also informed Hancock that the only copy of the document in Abbott's files was on the hard drive of Dr. Leiden's computer

---

[2] Hancock implies that Abbott failed to serve its responses to Hancock's First Request for Admissions in a timely fashion. *See* Opp. at 6 n.3. To allow time to gather additional information, Abbott sought a brief extension of time to respond to Hancock's Requests for Admissions which Hancock granted on April 19, 2007. Lorenzini Aff., Exh. M (April 19, 2007 Email from Karen Collari Troake). Abbott served its Objections and Responses to the requests on the date for which the extension was granted. Lorenzini Aff., Exh. A (Abbott's Objections and Responses to Hancock's First Request for Admissions).

2958576.1   4

and that the metadata in the electronic version of the document indicate that it was authored by McKinsey & Company in the spring of 2001. *Id.* Dr. Leiden testified that he did not prepare the document and that he did not know who had prepared the document. Guzelsu Aff., Exh. Q at 234:2-8. Hancock currently has in its possession all of the information available to Abbott regarding this document. Furthermore, Hancock has served a subpoena on McKinsey & Company requesting documents and a deposition specifically on the creation of this document. Lorenzini Aff., Exh. B at 8 (McKinsey Subpoena and Deposition Notice). Hancock's opposition also disregards the fact that its Rule 30(b)(6) deposition notice of Abbott includes two topics (No. 22 and 23) specifically related to this document and Abbott already agreed -- a month ago -- to produce a witness on those topics. Abbott's witness will reiterate the information known or reasonably available to Abbott regarding the creation of the document. Guzelsu Aff., Exhs. T at topics 22-23 (Hancock's Rule 30(b)(6) Deposition Notice) & V (April 13, 2007 Letter from Jeffrey Weinberger to Brian Davis). Therefore, to the extent Hancock's Topic 1 and 2 seek testimony regarding the "Initial Portfolio Prioritization" document, it is moot.

        2.        It Is Unsurprising that Witnesses Do Not Recall All the Specifics of Events That Occurred Six Years Ago; Abbott Does Not Have Additional Corporate Knowledge To Provide Regarding These Subjects

Hancock argues it is entitled to additional witness testimony regarding the March 2001 portfolio prioritization meeting because two witnesses did not remember specifics regarding presentations they made six years ago. Hancock states that neither Dr. McCarthy nor Dr. Nisen were able to testify regarding "any discussion about the two compounds" despite the fact that both witnesses made presentations during that meeting. Opp. at 6. Hancock's representations regarding these witnesses testimony is misleading and inaccurate. While Dr. McCarthy did not specifically recall making a presentation regarding ABT-594 during the meeting, he did identify the presentation itself when it was shown to him during his deposition, and testified at length

regarding the contents of the presentation. Guzelsu Aff., Exh. A at 211:21-218:14 (McCarthy I Tr.). Dr. Nisen also testified regarding the presentation that he made during the meeting although he did not remember the specifics of what was discussed at the meeting. Guzelsu Aff., Exh. I at 190:23-199:9 (Nisen Tr.). Dr. Leiden also testified regarding what Abbott knew about ABT-594 and ABT-518 as of the date of the portfolio review meeting and about the meeting generally. Guzelsu Aff., Exh. Q at 74:5-81:21; 86:7-88:23; 190:2-192:12; 221:16-222:3; 243:17-245:18; 259:17-24. Dr. Leonard also authenticated Dr. Nisen's written presentation on ABT-518 and testified regarding both the presentation and discussions during and after the meeting concerning the compound. Guzelsu Aff., Exh. P at 84:11-91:5 (Leonard Tr.). Given that these presentations were given six years ago and lasted fifteen to thirty minutes, it is not remarkable that Dr. Nisen and Dr. McCarthy do not remember the specifics of what was discussed. Lorenzini Aff., Exh. C (ABBT0118740-43) (Portfolio Review Meeting Agenda reflecting ABT-518 presentation was 15 minutes and ABT-594 presentation was 30 minutes). Hancock already has deposed the individuals most knowledgeable regarding the discussions of ABT-518 and ABT-594 during the portfolio prioritization meeting. Abbott should not therefore be required to prepare a Rule 30(b)(6) witness to review the transcripts of Dr. McCarthy, Dr. Nisen, Dr. Leonard, and Dr. Leiden and provide Hancock with the same information it already has regarding this meeting.

      Similarly, Hancock makes much ado about Abbott's decision in late 2000 and early 2001 to seek a funding partner for ABT-594. Opp. at 8-9. As the documents demonstrate, Abbott sought a development partner to help co-fund ABT-594. Zwicker Aff., Exh. R. In February 2001, Abbott was considering a partnership with Purdue. *Id.* While Abbott was considering co-development of the compound, it had decided against out-licensing the compound and instead

wanted to actively continue to develop the compound in-house. *Id.* Furthermore, both Abbott and Purdue realized that any decisions regarding co-development would have to wait until after the results from the blinded M99-114 study were un-blinded in April 2001. *Id.*; Lorenzini Aff., Exh. D (ABBT0119894-95). Both Abbott and Purdue recognized that the M99-114 trial would provide critical information regarding whether Abbott would be able to develop an efficacious dosage of ABT-594 without problematic side effects. Lorenzini Aff., Exh. E at 231:1-232:24 (McCarthy Tr.); Lorenzini Aff., Exh.D (ABBT0119894-95). Contrary to Hancock's allegations, Abbott was not aware as of March 2001 what the incidence of nausea and vomiting would be for ABT-594 at its efficacious doses, because the data from the M99-114 trial had not yet been un-blinded. Lorenzini Aff., Exh. E at 231:1-232:24 (McCarthy Tr.).

Considering that the partnership plans were not pursued other than a few emails and one meeting, it is hardly surprising that the individuals involved in the brief negotiations did not recall the potential partnership deal. Moreover, Hancock has deposed the individuals most knowledgeable regarding these discussions, including Dr. Silber, Dr. McCarthy, and Andrea Landsberg. Abbott's witnesses have provided Hancock with the documents and testimony at Abbott's disposal. Abbott should therefore not be required to prepare a Rule 30(b)(6) witness to provide the same testimony Hancock has already elicited regarding this issue.

        3.     Topics 1 and 2 of Hancock's Rule 30(b)(6) Notice Do Not Properly Call For Testimony Regarding the Creation of the Descriptive Memoranda; Also, Abbott Already Has Provided Hancock With the Requested Information in Its Interrogatory Responses

Hancock claims that topics 1 and 2 of its deposition notice entitle Hancock to testimony regarding the creation of the Descriptive Memoranda attached as exhibits to the Research Funding Agreement. Opp. at 7-8. Topics 1 and 2 of the deposition notice are limited to Abbott's knowledge and beliefs regarding the prospects and conditions of ABT-518 and ABT-594 as of

2958576.1                                                                 7

March 13, 2001. These topics do not include Abbott's internal procedures regarding the creation of the Descriptive Memoranda that were attached as exhibits to the Research Funding Agreement. Hancock's deposition notice is limited to the topics covered therein which cannot be reasonably read to include the creation of documents that were exhibits to the Research Funding Agreement. If Hancock believed it was entitled to deposition testimony on the creation of these memoranda, it should have properly included those topics in its notice. Guzelsu Aff., Exh. T (Hancock's Rule 30(b)(6) Deposition Notice). It did not. Hancock cannot now bootstrap additional topics into its deposition notice after the deadline for issuing deposition notices has long passed.

Additionally, Abbott already provided Hancock over a year ago with a detailed description of how Abbott created, and ensured the substantive accuracy of, the Descriptive Memoranda in response to Hancock's interrogatories. Lorenzini Aff., Exh. F at 4-5 (Abbott's Objections and Responses to Plaintiff's First Set of Interrogatories). Abbott informed Hancock that its Comptroller Steven Cohen directed the creation of the memorandum with the assistance of Chris Turner. *Id.* at 5. The memoranda "were assembled and verified through consultation with each of the respective discovery or development heads of the compounds . . . who had responsibility for providing and verifying the information concerning the compounds or programs" including Dr. Nisen for ABT-518 and Dr. McCarthy for ABT-594. *Id.* The interrogatory response also states that Mr. Turner consulted with these individuals regarding the respective compounds and provided the memoranda to those individuals "for verification of the accuracy of the information." Lorenzini Aff., Exh. F at 5. Once the memoranda had been reviewed by the respective development heads for the compounds, the memoranda were provided to John Leonard and Dan Norbeck for review. *Id.* Dr. Leonard's deposition testimony

confirms that he reviewed the descriptive memoranda for accuracy after they were created. Lorenzini Aff., Exh. G at 24:1-32:1; 41:17-45:23 (Leonard Tr.). Hancock has substantial deposition testimony and interrogatory responses regarding the creation of the Descriptive Memoranda. Abbott should not be required to prepare a Rule 30(b)(6) witness on topics not covered by the deposition notice and which have already been covered by the discovery taken in this matter.

        4.     Hancock's Numerous Misstatements Regarding the Underlying Issues In This Case Are Prejudicial and Irrelevant

Hancock's opposition is yet again replete with misstatements regarding the underlying issues in this litigation. While Abbott notes that these misstatements are irrelevant to Abbott's discovery motion, it will provide an brief response in order to illustrate the inaccuracy of Hancock's statements. As the countless witnesses in this matter have already testified, Abbott did not plan to terminate either ABT-518 or ABT-594 before it executed the Research Funding Agreement. *See*, *e.g.*, Lorenzini Aff., Exh.G at 277:13- 278:9 (Leonard Tr.); Lorenzini Aff., Exh. H at 297:7-298:23 (Nisen Tr.); Guzelsu Aff., Exh. Q at 308:6-312:1;314:5-320:24 (Leiden Tr.); Guzelsu Aff., Exh. P at 77:2-80:24; 108:17-109:20; Lorenzini Aff., Exh. G at 264:13-265:11; 272:20-274:12 (Leonard Tr.); Lorenzini Aff., Exh. I at 290:8-11 (Nabulsi Tr.). Abbott only decided to terminate development of the compounds later, in light of new information that became available after execution of the agreement. Under the Research Funding Agreement, Abbott had the right to terminate development of compounds if commercially reasonable and Hancock was well aware of the possibility that some or all compounds in the portfolio would be terminated.

For example, ABT-594 was not terminated until October 2001, after the results from the M99-114 clinical trial were un-blinded in April 2001 and after Abbott underwent an extensive

analysis of the results of the trial to determine whether the compound had an efficacious dosage without problematic side effects. Lorenzini Aff., Exh. G at 277:13- 278:9 (Leonard Tr.). Prior to execution of the agreement, Hancock was aware that, like other Phase II compounds, ABT-594's commercial viability was uncertain. Abbott informed Hancock that there was a "Low" probability of achieving its target of "Low nausea/vomiting" for ABT-594 and that it planned to make a "Go/No Go decision" regarding ABT-594 after the M99-114 trial in April 2001. Hancock knew -- based on information provided by Abbott, as well as its own due diligence -- that there was a good chance ABT-594 would not proceed past the April 2001 Go/No Go decision point. Lorenzini Aff., Exh. J (JH 008166, JH 008172); Lorenzini Aff., Exh. J (JH 008171); Lorenzini Aff., Exh. K (JH002973-79); Lorenzini Aff., Exh. L. Hancock's expert noted that "[t]here appears to be some risk of not passing phase II clinical trials" and Hancock estimated the probability of success for ABT-594 was only 50 percent. Lorenzini Aff., Exh. K at 6 (JH002973-79); Lorenzini Aff., Exh. L at 13 (reflecting 50% probability of approval for "CCM" (ABT-594)).

Likewise, ABT-518 was not terminated until June 2001, after the May 2001 American Society of Clinical Oncology ("ASCO") conference when Abbott acquired new and more detailed information regarding lack of efficacy and side effects of similar compounds under development by competitors that suggested greater risks for the entire class of drugs. Guzelsu Aff., Exh. Q at 308:6-312:1;314:5-320:24 (Leiden Tr.); Guzelsu Aff., Exh. P at 77:2-80:24; 108:17-109:20; Lorenzini Aff., Exh. G at 264:13-265:11; 272:20-274:12 (Leonard Tr.). Until the ASCO conference in May, Abbott had not made any decision to terminate the development of ABT-518. *Id.* Hancock's erroneous contention that Abbott only continued to develop ABT-518 in the spring of 2001 because it was part of the deal with Hancock is not supported by any of

the testimony in this case, including Dr. Leonard's testimony, on which Hancock relies. Opp. at 6 n. 4. Dr. Leonard testified that:

> The program, my recommendation to proceed on this program was based entirely on the prospects, the medical prospects, preclinical prospects of the program. My recommendation was that we should proceed because I thought that the hypothesis still stood and bore testing.

Guzelsu Aff., Exh. P at 98:20-99. It is therefore disingenuous for Hancock to argue that Abbott had decided to terminate either of these compounds before it entered into the Research Funding Agreement or that it continued to develop them to induce Hancock to enter the Research Funding Agreement with Hancock.

Hancock's opposition contains several additional misstatements that are irrelevant to this discovery dispute that Abbott will not address here but at the proper time, during the trial.

### B. Abbott Is Entitled To a Protective Order to Prevent Duplicative and Cumulative Depositions on Topics Already Covered By Prior Depositions

Hancock cites cases that it contends support its argument that it is entitled to additional deposition testimony on the topics already covered by the prior depositions of Abbott witnesses. Yet none of these cases addresses the scenario presented here. Hancock has deposed seventeen witnesses on these same exact topics and now claims that it is entitled to additional testimony from a Rule 30(b)(6) witness in order to obtain Abbott's "corporate knowledge" regarding the topics. Abbott's corporate knowledge, however, is limited to "matters known *or reasonably available* to the organization." Fed. R. Civ. P. 30(b)(6) (emphasis added). Abbott does not have any additional or different information regarding these topics. Abbott is not attempting to hide "undisclosed facts regarding the compounds' development that cannot be gleaned from the existing witnesses." Opp. at 10. A Rule 30(b)(6) deposition would be a waste of time because the corporation as a whole does have any more knowledge regarding these events than the

individuals who actually participated in them. All that a Rule 30(b)(6) witness could do is regurgitate the testimony already provided by prior witnesses.

Given that the examples cited by Hancock and discussed above, most of which are limited to specific meetings and presentations, it is evident that Abbott's witnesses have provided Hancock with substantial testimony on topics 1 and 2 of its deposition notice. The only lack of recollection by Abbott witnesses cited by Hancock that are covered by topics 1 and 2 of its deposition notice are the two presentations in March 2001, the potential partnership deal regarding ABT-594 in late 2000 and early 2001, and the creation of a third-party document for which Abbott has already designated a Rule 30(b)(6) witness. Their lack of recollection is reasonable given the amount of time that has elapsed since these events. Hancock cannot justify the considerable time and expense of preparing witnesses on the broad topics in its notice based on their reasonable lack of recollection with regard to these events.

Designating the deposition testimony of those witnesses who have already testified is the less burdensome and appropriate vehicle to resolve this discovery dispute. Fed.R.Civ.P. 26(b)(2)(C)(i); *UniRAM Technology, Inc. v. Monolithic System Technology, Inc.*, 2007 WL 915225, at *2 (N.D. Cal. March 23, 2007); *Exxon Research and Engineering Co. v. U.S.*, 44 Fed. Cl. 597, 601-02 (Fed. Cl. Ct. 1999). Abbott should therefore be allowed to designate the prior testimony of these witnesses on topics 1 and 2 to prevent undue burden and duplicative and cumulative depositions.

### III.     CONCLUSION

For the foregoing reasons, Abbott respectfully requests that Court grant its Motion for Protective Order Regarding Deposition Topics 1 and 2 of Hancock's Rule 30(b)(6) Deposition Notice.

Dated: May 18, 2007

Respectfully submitted,

ABBOTT LABORATORIES

By:   /s/ Michael S. D'Orsi
      Michael S. D'Orsi

One of its attorneys

Peter E. Gelhaar (BBO#188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880
peg@dcglaw.com
msd@dcglaw.com

and

Jeffrey I. Weinberger (*pro hac vice*)
Gregory D. Phillips (*pro hac vice*)
Eric J. Lorenzini *(pro hac vice)*
Ozge Guzelsu *(pro hac vice)*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Tele:  (213) 683-9100
*Counsel for Abbott Laboratories*

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 7, 2007.

Date: May 18, 2007.

           /s/ Michael S. D'Orsi
             Michael S. D'Orsi