**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), | ) ) ) ) ) ) ) | Civil Action No. 05-11150-DPW |
| | ) ) | **REDACTED PUBLIC VERSION** |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | |
| ABBOTT LABORATORIES, | ) ) | |
| *Defendant.* | ) | |

<u>**AFFIDAVIT OF ERIC LORENZINI IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION TOPICS 1 AND 2 OF HANCOCK'S RULE 30(b)(6) DEPOSITION NOTICE (REDACTED PUBLIC VERSION)**</u>

I, Eric Lorenzini, hereby state that:

1.      I currently am employed as an associate at Munger, Tolles & Olson LLP.  I submit this declaration in support of Defendant Abbott Laboratories' ("Abbott's") Motion for Protective Order Regarding Deposition Topics 1 and 2 of Hancock's Rule 30(b)(6) Deposition Notice.  If called as a witness, I could and would testify competently to the facts stated herein.

2.      Attached hereto as Exhibit A is a true and correct copy of Abbott's Objections and Responses to Hancock's First for Request for Admissions, dated April 27, 2007.

3.      Attached hereto as Exhibit B are true and correct copies of the Subpoena in a Civil Case to McKinsey & Company and Notice of Deposition of McKinsey & Company,

dated April 27, 2007.

    4.        Attached hereto as Exhibit C is a true and correct copy of the document entitled "Portfolio Review Meeting - March 7 - 9, 2001."

    5.        Attached hereto as Exhibit D is a true and correct copy of an email from Christopher Silber to Bruce McCarthy, Michael Blamesen, James Sullivan and Richard Marasco, dated March 6, 2001.

    6.        Attached hereto as Exhibit E are true and correct copies of excerpts of the deposition of Dr. Bruce McCarthy, taken September 29, 2006.

    7.        Attached hereto as Exhibit F is a true and correct copy of Abbott's Objections and Responses to Plaintiff's First Set of Interrogatories, dated December 31, 2005.

    8.        Attached hereto as Exhibit G are true and correct copies of excerpts of the deposition of John Leonard, taken November 30, 2006.

    9.        Attached hereto as Exhibit H are true and correct copies of excerpts of the deposition of Dr. Perry Nisen, taken November 22, 2006.

    10.     Attached hereto as Exhibit I are true and correct copies of excerpts of the deposition of Azmi Nabulsi, taken January 24, 2007.

    11.     Attached hereto as Exhibit J is a true and correct copy of the document entitled "ABT-594 Descriptive Memorandum - February 2001."

    12.     Attached hereto as Exhibit K is a true and correct copy of an email from Lynn Klotz to Stephen Blewitt, dated July 28, 2000.

    13.     Attached hereto as Exhibit L is a true and correct copy of a report from Stephen Blewitt and Scott Hartz to the John Hancock Life Insurance Company Bond & Corporate Finance Group, dated September 21, 2000.

- 2 -

14.     Attached hereto as Exhibit M is a true and correct copy of an email from Karen Collari Troake to Eric Lorenzini, dated April 19, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this affidavit is executed this 21st day of May, 2007, in Los Angeles, California.

_____
Eric Lorenzini

- 3 -

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 21, 2007.

Date: May 21, 2007.

/s/ Michael S. D'Orsi
Michael S. D'Orsi

2960320.1

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY), | CIVIL ACTION NO. 05-11150-DPW |

Plaintiffs,

v.

ABBOTT LABORATORIES,

Defendants.

**ABBOTT LABORATORIES' RESPONSES AND OBJECTIONS TO**

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS**

Defendant Abbott Laboratories, by its undersigned counsel and pursuant to Rule 36 of the

Rules of Federal Procedure and Local Rules, hereby responds and objects to the First Set of

Requests for Admission of Plaintiffs John Hancock Life Insurance Company, John Hancock

Variable Life Insurance Company, and Manulife Insurance Company ("Hancock").

**GENERAL OBJECTIONS AND RESPONSES**

The following General Objections and Responses apply to each and every one of the

numbered Requests below, and the General Objections and Responses shall be deemed

continuing as to each Request and are not waived, or in any way limited, by the specific

objections and answers to any individual Request.

1.      Abbott objects to the "Definitions" set forth in Hancock's Requests, as well as the

Requests themselves, to the extent that Hancock seeks to require Abbott to provide information

beyond that required by the Federal Rules of Civil Procedure or Local Rules of the Court.

2.     Abbott objects to each Request to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges.

3.     Abbott objects to each and every Request to the extent that it is unduly burdensome.

4.     Abbott objects to each and every Request to the extent that it calls for information that is not relevant to any of the claims or defenses in this litigation.

5.     Abbott objects to each and every Request to the extent that it calls for information not known to current employees, directors, and officers of Abbott.

6.     To the extent that Abbott responds to specific Requests to which it has objected, Abbott's objections are not waived by the furnishing of such information and Abbott reserves the right to maintain such objections with respect to any additional information.

7.     To the extent that Abbott responds to a specific Request, Abbott does not admit Plaintiffs' characterizations of any documents, facts, theories, or conclusions.

8.     To the extent that Abbott responds to a specific Request, Abbott does not admit the relevance of such information to the subject matter of this litigation. Further, by responding to Hancock's requests, Abbott is not waiving any applicable privileges nor shall the inadvertent disclosure of any privileged information operate as a waiver of any applicable privilege or immunity from discovery.

9.     The responses to these Requests are based on information currently known to Abbott and its current employees, and Abbott expressly reserves the right to supplement its responses to these Requests with further additional information and documents as such information and documents become available to Abbott in the course of this litigation.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR ADMISSION NO. 1:

The document attached to these Requests for Admission as <u>Exhibit A</u> is a true and accurate copy of an actual or proposed agenda for pharmaceutical "Portfolio Review" or "Portfolio Review meeting" that Abbott conducted on or about March 7-9, 2001.

### RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Abbott objects to this Request on the grounds that it is vague and ambiguous, particularly with respect to the term "actual or proposed agenda."

Subject to and without waiver of its general and specific objections, Abbott responds as follows:

Admit

### REQUEST FOR ADMISSION NO. 2:

The original of the document attached to these Requests for Admission as <u>Exhibit A</u> was prepared by Abbott in or about February or March 2001, was kept in the course of Abbott's regularly conducted business activities, and was created consistent with Abbott's regular practice of making reports, records or data compilations of such business activity.

### RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Abbott objects to this Request on the grounds that it is vague and ambiguous.

Subject to and without waiver of its general and specific objections, Abbott responds as follows:

Admit

**REQUEST FOR ADMISSION NO. 3:**

The document attached to these Requests for Admission as <u>Exhibit B</u> is a true and accurate copy of an "Initial Portfolio Prioritization" that was prepared by Abbott in connection with the March 2001 "Portfolio Review" or "Portfolio Review Meeting" that is referenced in <u>Exhibit A</u>, hereto.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Abbott objects to this Request on the grounds that it is vague and ambiguous.

Subject to and without waiver of its general and specific objections, Abbott responds as follows:

Deny. A copy of the document attached as Exhibit B to Hancock's requests was stored on the desktop computer formerly used by Dr. Jeffrey Leiden. The document was stored in a file path named "none/Documents and Settings/LeidenJM/My Documents/Current Projects/Dev Review Summary." The File/Properties of the electronic version of the document state that the "Author" is "McKinsey User", the "Company" is "McKinsey & Company", the Title is "Development Portfolio Prioritization", the "Created" date is March 8, 2001, the "Printed" date is March 17, 2000 [sic], and the document was "Last saved by: McKinsey User."

Dr. Leiden is no longer employed by Abbott. Abbott has not located any other copies of this document in its files. Abbott has not been able to identify any employees who have previously seen copies of this document or have any information regarding it.

**REQUEST FOR ADMISSION NO. 4:**

The original of the document attached to these Requests for Admission as <u>Exhibit B</u> was prepared by Abbott in or about March of 2001, was kept in the course of Abbott's regularly

-4-

conducted business activities, and was created consistent with Abbott's regular practice of making reports, records or data compilations of such business activity.

## RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Abbott objects to this Request on the grounds that it is vague and ambiguous. Abbott objects to this Request on the grounds that it calls for information not known or readily obtainable by Abbott.

Subject to and without waiver of its general and specific objections, Abbott responds as follows:

Deny. A copy of the document attached as Exhibit B to Hancock's requests was stored on the desktop computer formerly used by Dr. Jeffrey Leiden. The document was stored in a file path named "none/Documents and Settings/LeidenJM/My Documents/Current Projects/Dev Review Summary." The File/Properties of the electronic version of the document state that the "Author" is "McKinsey User", the "Company" is "McKinsey & Company", the Title is "Development Portfolio Prioritization", the "Created" date is March 8, 2001, the "Printed" date is March 17, 2000 [sic], and the document was "Last saved by: McKinsey User."

Dr. Leiden is no longer employed by Abbott. Abbott has not located any other copies of this document in its files. Abbott has not been able to identify any employees who have previously seen this document or have any information regarding it.

## REQUEST FOR ADMISSION NO. 5:

The document attached to these Requests for Admission as <u>Exhibit C</u> is a true and accurate copy of an "Initial Portfolio Prioritization" that was prepared by Abbott in connection with the March 2001 "Portfolio Review" or "Portfolio Review Meeting" that is referenced in <u>Exhibit A</u>, hereto.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Abbott objects to this Request on the grounds that it is vague and ambiguous. Abbott objects to this Request on the grounds that it calls for information not known or readily obtainable by Abbott.

Subject to and without waiver of its general and specific objections, Abbott responds as follows:

Deny. A copy of the document attached as Exhibit C to Hancock's requests was stored on the desktop computer formerly used by Dr. Jeffrey Leiden. The document was stored in a file path named "none/Documents and Settings/LeidenJM/My Documents/Current Projects/Next Steps - develop portfolio prioritiz." The File/Properties of the electronic version of the document state that the "Author" is "McKinsey User", the "Company" is "McKinsey & Company", the Title is "Development Portfolio Prioritiz", the "Created" date is March 8, 2001, the "Printed" date is March 17, 2000 [sic], and the document was "Last saved by: McKinsey User."

Dr. Leiden is no longer employed by Abbott. Abbott has not located any other copies of this document in its files. Abbott has not been able to identify any employees who have previously seen this document or have any information regarding it.

**REQUEST FOR ADMISSION NO. 6:**

The original of the document attached to these Requests for Admission as <u>Exhibit C</u> was prepared by Abbott in or about March of 2001, was kept in the course of Abbott's regularly conducted business activities, and was created consistent with Abbott's regular practice of making reports, records or data compilations of such business activity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Abbott objects to this Request on the grounds that it is vague and ambiguous. Abbott

objects to this Request on the grounds that it calls for information not known or readily obtainable by Abbott.

Subject to and without waiver of its general and specific objections, Abbott responds as follows:

Deny. A copy of the document attached as Exhibit C to Hancock's requests was stored on the desktop computer formerly used by Dr. Jeffrey Leiden. The document was stored in a file path named "none/Documents and SettingsJM/Leiden/My Documents/Current Projects/Next Steps - develop portfolio prioritiz." The File/Properties of the electronic version of the document state that the "Author" is "McKinsey User", the "Company" is "McKinsey & Company", the Title is "Development Portfolio Prioritization", the "Created" date is March 8, 2001, the "Printed" date is March 17, 2000 [sic], and the document was "Last saved by: McKinsey User."

Dr. Leiden is no longer employed by Abbott. Abbott has not located any other copies of this document in its files. Abbott has not been able to identify any employees who have previously seen copies of this document or have any information regarding it.

ABBOTT LABORATORIES

By its attorneys

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Ozge Guzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9100

and

Michael S. D'Orsi
Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

Dated: April 26, 2007

## VERIFICATION

I, John Leonard, declare:

I am Vice President Global Pharmaceuticals Research and Development at Abbott Laboratories. I have been authorized to make this verification on behalf of Abbott Laboratories in this action.

I have read the foregoing ABBOTT LABORATORIES' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS and know the contents thereof. I am informed and believe that the matters stated therein are true and on that ground I declare under penalty of perjury under the laws of the State of California that the same are true and correct.

Executed at Abbott Park, Illinois on this 24 day of April, 2007.

_____
John Leonard

2763925.1

## PROOF OF SERVICE

I, Jennifer C. Smith, declare:

1. I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Suite 3500, Los Angeles, California 90071-1560.

2. On April 27, 2007, I served the original and/or a true and correct copy of the document entitled **ABBOTT LABORATORIES' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, mailed as marked below, and addressed as follows:

*See Attached Service List*

☒ **U.S. Mail:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

☐ **Federal Express:** I am "readily familiar" with the firm's practice of collection and processing correspondence for delivery to an employee of Federal Express. Under that practice it would be delivered to an employee of Federal Express on that same day at Los Angeles, California with charges to be billed to Munger, Tolles & Olson LLP's account to be delivered to the offices of the addressee(s) on in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 27, 2007, at Los Angeles, California.

Jennifer C. Smith

# SERVICE LIST

Hancock, et al. v. Abbott Laboratories
Case No. 05-11150-DPW

Joseph H. Zwicker
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110
Telephone:(617) 248-5076
Facsimile: (617) 248-4000
Email:     jzwicker@choate.com

Michael S. D'Orsi
Donnelly, Conroy & Gelhaar, LLP
1 Beacon Street
33rd Floor
Boston, MA  02108
Telephone:(617) 720-2880
Facsimile: (617) 720-3554
Email:     msd@dcglaw.com

**EXHIBIT B**

# Redacted

# Confidential

**EXHIBIT C**

**Portfolio Review Meeting**
**March 7 – 9, 2001**
**The Hyatt Deerfield**

Attendees:

Abbott:

J. Leiden, B. Dempsey, A. Higgins, D. Norbeck, J. Leonard, E. Ogunro, E. Sun, M. Verlinden, P. Nisen, R. Granneman, R. Patterson, E. Shek, X. Frapaise, J. Nemmers, J. Arnott, E. Fiorentino, R. Guillaume, D. Pizzuti, P. Scaman, M. Roebel, C. Ward, K. Hendricks, J. Tyree, Y. Fujiwara, T. Seely

Knoll/BASF pharma:

I. Loew, S. Roellinger, U. Granzer, N. Bender, B. Kamen, M. Spigelman, F. Frickel, F. Richter, S. Roellinger, T. Zimmerman, C.Mendel, E. Chong, Steven Fischkoff, M. Luz, T. Seaton, C. Parow, B. Barchuk, R. Nuber, T. Hirose, E. V. Borcke, B. Hargan, R. Krautheimer, U.Legler, R. Janocha, J. Salfeld, U. Grau

McKinsey:

J. Hopfield

HIGHLY CONFIDENTIAL
ABBT0118740

## Portfolio Review Meeting
## March 7 – 9, 2001
## The Hyatt Deerfield

### Wednesday, March 7

| Time | Topic | Presentation | Discussion | Presenter |
|------|-------|--------------|------------|-----------|
| 7:30 am | Welcome/ introduction | 10 min | | J. Leiden |
| 7:40 am | Meeting objectives | 10 min | | J. Leonard |
| | **Anti-Infectives** | **Presentation** | **Discussion** | |
| | Quinolones | | | |
| 7:50 am | - ABT- 492 | 20 min | 5 min | C. Craft |
| 8:15 am | - HSR- 903 | 30 min | 10 min | T. Hirose/R. Krautheimer |
| | **Anti-virals** | | | |
| 8:55 am | Triangle projects | 30 min | 10 min | M. Heath-Chiozzi |
| | - HIV and HBV (FTC; DAPD) | | | |
| 9:35 am | *Morning Break* | | | |
| | **Urology** | | | |
| 9:55 am | BSF 42027 (ETA/ BPH) | 30 min | 10 min | M. Luz/U. Legler |
| | **T3/T4** | | | |
| 10:35 am | T3/T4 | 15 min | 5 min | C. Schreiber/T. Miller |
| | **Asthma** | | | |
| 10:55 am | Hokunalin tape | 15 min | 5 min | T. Hirose/R. Krautheimer |
| | **Oncology** | | | |
| 11:15 am | ABT-510 | 20 min | 15 min | P. Nisen |
| 11:50 am | ABT-751 | 20 min | 15 min | P .Nisen |
| 12:25 pm | *Lunch* | | | |
| 1:25 pm | ABT-518 | 15 min | 5 min | P. Nisen |
| 1:45 pm | Rubitecan | 20 min | 5 min | P. Nisen |
| 2:10 pm | Theragyn | 20 min | 5 min | P. Nisen |
| 2:35 pm | ABT-627 | 30 min | 10 min | P. Nisen |
| 3:15 pm | *Afternoon Break* | | | |
| | **Cardiology** | | | |
| 3:35 pm | Darusentan | 30 min | 10 min | M. Luz/M. Kirchengast |
| | (LU 135252) & other ETAs | | | |
| | **Thrombosis** | | | |
| 4:15 pm | PEG-hirudin | 30 min | 10 min | V. Ifthekar/U. Legler |
| 4:55 pm | Ancrod | 30 min | 10 min | D. Levy/U. Legler |
| 5:35 pm | Urokinase/ | 30 min | 10 min | S. Guptha |
| | Pro-urokinase | | | |

HIGHLY CONFIDENTIAL
ABBT0118741

**Portfolio Review Meeting**
**March 7 – 9, 2001**
**The Hyatt Deerfield**

**Thursday, March 8**

### Neuroscience

| | | Presentation | Discussion | |
|---|---|---|---|---|
| 7:30 am | ABT 594 | 30 min | 10 min | B. McCarthy |
| 8:10 am | ABT-963 | 15 min | 15 min | Granneman/Doan/Bell |
| 8:40 am | BSF 201640 | 30 min | 10 min | B. Rendenbach-Mueller |
| 9:20 am | BSF 74398 (Parkinson) | 30 min | 10 min | S. Dawe |
| 10:00 am | *Morning Break* | | | |
| 10:20 am | Dilaudid OROS | 45 min | 15 min | B. Gold/R. Krautheimer |
| 11:20 am | BSF 190555 (Schizophrenia) | 30 min | 10 min | B. Rendenbach-Mueller |
| 12:00 pm | *Lunch* | | | |
| 1:00 pm | Hydrocodone | 10 min | 10 min | S. Collins |
| 1:20 pm | Bimoclomol ( ABT-822) | 30 min | 10 min | B. Wallin |

### Gastro-enterology

| | | | | |
|---|---|---|---|---|
| 2:00 pm | Ganaton (pro-kinetic) | 15 min | 5 min | S. Dawe/R. Krautheimer |
| 2:20 pm | TU-199 (proton pump inh.) | 30 min | 10 min | T. Hirose/ R. Krautheimer |
| 3:00 pm | AU - 224 (colon pro-kinetic) | 20 min | 5 min | T. Hirose/ R. Krautheimer |
| 3:25 pm | *Afternoon Break* | | | |

### Phase III Projects

| | | | | |
|---|---|---|---|---|
| 3:45 pm | ABT-773 | 30 min | 15 min | C. Craft |
| 4:30 pm | D2E7 | 45 min | 30 min | C. Spiegler/.E. v. Borcke |

HIGHLY CONFIDENTIAL
ABBT0118742

**Portfolio Review Meeting**
**March 7 – 9, 2001**
**The Hyatt Deerfield**

**Friday, March 9**

### Phase III Projects (cont'd)

| | | Presentation | Discussion | |
|---|---|---|---|---|
| 7:30 am | Segard | 45 min | 15 min | L. Daum/T. King |
| 8:30 am | J695 | 30 min | 10 min | R. Janocha/T. King |
| 9:10 am | Clivarine | 30 min | 15 min | F. Misselwitz/S. Schaeffer |
| 9:55 am | *Morning Break* | | | |
| 10:15 am | Rythmol SR | 30 min | 15 min | A. Pethö-Schramm/E. Schneider |
| 11:00 am | Levosimendan | 30 min | 15 min | C MacLeod |

### Phase IV Projects

| | | | | |
|---|---|---|---|---|
| 11:45 am | Clarithromycin | 15 min | 5 min | C. Olson |
| 12:05 pm | Omnicef | 15 min | 5 min | C. Olson |
| 12:25 pm | *Lunch* | | | |
| 1:25 pm | Kaletra | 15 min | 5 min | E. Sun |
| 1:45 pm | Norvir | 15 min | 5 min | E. Sun |
| 2:05 pm | Meridia ( Sibutramine ) | 15 min | 5 min | E. Chong/W. Hargan |
| 2:25 pm | Uprima | 15 min | 5 min | S. Bukofzer |
| 2:45 pm | Trandolapril (patch, intervention trials) | 15 min | 5 min | B. Rendbach-Mueller/ U. Legler/N. Bender |
| 3:05 pm | *Afternoon Break* | | | |
| 3:25 pm | Fenofibrate | 15 min | 5 min | D. Yannicelli |
| 3:45 pm | Depakote | 15 min | 5 min | K. Sommerville |
| 4:05 pm | Gengraf | 15 min | 5 min | T. Japour |
| 4:25 pm | **Conclusion** | | | Jeff Leiden |

HIGHLY CONFIDENTIAL
ABBT0118743

**EXHIBIT D**

# Redacted

# Confidential

**EXHIBIT E**

Page 1

1              UNITED STATES DISTRICT COURT

2                        FOR THE

3              DISTRICT OF MASSACHUSETTS

4

5    JOHN HANCOCK LIFE INSURANCE

6    COMPANY, JOHN HANCOCK VARIABLE

7    LIFE INSURANCE COMPANY, and

8    MANULIFE INSURANCE COMPANY

9    (f/k/a INVESTORS PARTNER

10   INSURANCE COMPANY),

11          Plaintiffs,

12   vs              Civil Action No. 05-11150-DPW

13   ABBOTT LABORATORIES,

14          Defendant.

15   _____/

16

17

18   DEPONENT:     BRUCE GERALD MCCARTHY, M.D.

19   DATE:         Friday, September 29, 2006

20   TIME:         9:00 a.m.

21   LOCATION:     350 South Main Street, Suite 400

22                 Ann Arbor, Michigan

23   REPORTER:     Angela E. Broccardo, CSR 4679

24

25

Page 230

1 A. Yes, two instances, one when we had the results
2   of the 114 study, and it was -- I remember Jeff
3   was there. I remember John was there. I don't
4   remember who else was there, John Leiden, and --
5 Q. You said John Leiden. Did you mean John
6   Leonard?
7 A. Sorry, John Leonard and Jeff Leiden, and I think
8   there were just a few other people there, and we
9   were talking about the results of the study, and
10  he had asked that we consider how -- if we could
11  still make the trade off between efficacy and
12  side effects work at intermediate doses. And
13  that led to another intensive effort of thinking
14  to make those intermediate doses work, which
15  resulted in a kind of final recommendation or
16  discussion with -- I believe with Jeff, and the
17  decision to stop development. But those are
18  really the only things I remember about
19  interaction with Jeff on 594.
20 Q. The unblinded results for the 114 study, were
21  they adverse in any way?
22      MR. PHILLIPS: Objection.
23      THE WITNESS: I don't know the
24  definition -- what do you mean by adverse?
25 BY MR. DAVIS:

Page 231

1 Q. What did you perceive to be the results of the
2   study after they were unblinded? Good,
3   positive, negative, somewhere in between?
4 A. Somewhere in between.
5 Q. More positive than negative? Vice versa?
6 A. I would say as much of one as the other.
7 Q. What were the aspects of the unblinded results
8   that you thought were negative?
9 A. I'm sorry, I was answering the question before
10  about the -- I'm sorry, the unblinded. The
11  portions of the unblinded results that were
12  negative were that there was not -- it did not
13  appear to be that there was a dose at which
14  there was an appealing balance between the
15  benefit of the drug and the nausea, vomiting and
16  dizziness.
17 Q. Did you regard that as a significant negative?
18      MR. PHILLIPS: Objection.
19      THE WITNESS: I saw that as certainly a
20  very unlikely -- sorry. I interpreted that to
21  mean that the utility of further developing the
22  drug was pretty low.
23 BY MR. DAVIS:
24 Q. Is it fair to say that after the results of the
25  114 study were unblinded and you looked at those

Page 232

1   results, you believed that it was less -- it was
2   more likely than not that 594 would not be
3   further developed?
4 A. Yes.
5 Q. Was it the nausea, vomiting and dizziness that
6   caused to you think that?
7 A. It was the interrelationship of the efficacy and
8   the nausea, vomiting and dizziness.
9 Q. When you say the interrelationship, meaning that
10  you didn't think that the efficacy was so great
11  as to offset the nausea, vomiting and dizziness
12  that was observed in the trial?
13 A. That's correct.
14 Q. Going into the 114 trial, did you understand 594
15  to be efficacious?
16 A. I believed it was.
17 Q. Did you have data to that effect?
18 A. I believed that -- I interpreted the data that
19  we had available at the time to feel confident
20  enough to recommend that we should invest in a
21  study like 114 to further evaluate the efficacy.
22 Q. Do you still believe that 594 is efficacious?
23 A. With the 114 data, I do believe that the drug is
24  efficacious.
25      (Marked for identification

Page 233

1       Deposition Exhibit No. 46.)
2 BY MR. DAVIS:
3 Q. Dr. McCarthy, I'll show you what's been marked
4   as Exhibit 46 and ask you if you've seen this
5   document or a document in this format before.
6 A. I've seen documents in this format.
7 Q. Have you seen this one in particular before?
8 A. I don't recall.
9 Q. The documents that you saw in this format, how
10  did it come about that you received them?
11 A. The first part I would receive at various times.
12  I believe they had something more to do with
13  budget cycle planning, and summarized from a
14  portfolio level, they were intended to be
15  one-page summaries of the portfolio analysis.
16  The other pages look like the typical monthly
17  status update pages.
18 Q. Did you contribute to the creation of these
19  documents, to your knowledge?
20 A. My contribution to the first page was small and
21  indirect in that, you know, about at annual
22  intervals we would develop budgets which
23  contributed to, for example, development costs.
24  And on the other pages, the monthly update,
25  there were components that I would contribute

59 (Pages 230 to 233)

1
2  ATTORNEY: GREGORY D. PHILLIPS
3  CASE NAME: JOHN HANCOCK vs. ABBOTT LABORATORIES
4  WITNESS: BRUCE GERALD MCCARTHY, M.D.
5  REPORTER: Angela E. Broccardo, CSR-4679
6
7      Since the signature was not waived,
8  herein is the signature page and errata sheet.
9      The read and sign process is an
10  opportunity to correct any inaccuracies or
11  errors inadvertently made in the transcription
12  process and should not be used as a forum for
13  changing or altering testimony.
14      Please note any corrections on the
15  errata sheet, sign the signature page, and
16  return only the signature page and errata sheet
17  to:
18      BRIAN A. DAVIS
19      Choate, Hall & Steward, LLP
20      Two International Place
21      Boston, Massachusetts 02110
22  You have thirty (30) days to complete the
23  correction process.
24  PLEASE FOLLOW THESE INSTRUCTIONS.
25  DO NOT RETURN TO ESQUIRE DEPOSITION SERVICES.

---

ERRATA SHEET

1
2
3  CASE: JOHN HANCOCK vs. ABBOTT LABORATORIES
4  WITNESS: BRUCE GERALD MCCARTHY, M.D.
5
6  PAGE LINE CORRECTION
7  ___:___:_____
8  ___:___:_____
9  ___:___:_____
10 ___:___:_____
11 ___:___:_____
12 ___:___:_____
13 ___:___:_____
14 ___:___:_____
15 ___:___:_____
16 ___:___:_____
17 ___:___:_____
18 ___:___:_____
19 ___:___:_____
20 ___:___:_____
21 ___:___:_____
22 ___:___:_____
23 ___:___:_____
24 ___:___:_____
25 ___:___:_____

---

1  This is the original transcript of:
2
3      BRUCE GERALD MCCARTHY, M.D.
4
5  We have provided a court envelope within this
6  transcript.
7  When the signature page and errata sheet have
8  been executed and sent directly to you:
9
10     1. Insert signature page in the original
11        transcript.
12     2. Attach the errata sheet to the back
13        cover of original transcript.
14     3. Put original transcript in the court
15        envelope provided and seal.
16
17  If you do not receive the executed signature
18  page and errata within 30 days, you may seal the
19  original transcript in the court envelope
20  provided.
21
22
23
24
25

---

SIGNATURE PAGE

1
2
3
4
5
6
7
8  _____
9  BRUCE GERALD MCCARTHY, M.D.
10
11 _____
12 DATE
13
14
15 Subscribed and sworn to before me
16 this _____ day of _____, 2006.
17
18
19
20 _____
21 Notary Public
22 County of _____ State of _____
23 My commission Expires: _____
24
25

74 (Pages 290 to 293)

**ESQUIRE DEPOSITION SERVICES**
**1-866-619-3925**

**EXHIBIT F**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE | ) | |
| COMPANY, JOHN HANCOCK VARIABLE | ) | |
| LIFE INSURANCE COMPANY, and | ) | |
| MANULIFE INSURANCE COMPANY (f/k/a | ) | |
| INVESTORS PARTNER LIFE INSURANCE | ) | |
| COMPANY), | ) | CIVIL ACTION NO. 05-11150-DPW |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABBOTT LABORATORIES, | ) | |
| | ) | |
| Defendants, | ) | |

## ABBOTT LABORATORIES' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Abbott Laboratories ("Abbott"), by its undersigned counsel and pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rules, hereby responds and objects the First Set of Interrogatories of Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Investors Partner Life Insurance Company's (collectively, "Hancock").

## GENERAL OBJECTIONS AND RESPONSES

The following General Objections and Responses apply to each and every one of the numbered interrogatories below, and the General Objections and Responses shall be deemed continuing as to each interrogatory and are not waived, or in any way limited, by the specific objections and answers to any individual interrogatory.

1.    Abbott objects to the "Definitions and Instructions" set forth in Hancock's interrogatories, as well as the interrogatories themselves, to the extent that

Hancock seeks to require Abbott to provide information beyond that required by the Federal Rules of Civil Procedure or Local Rules of the Court.

2.     Abbott objects to each Interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges.

3.     Abbott objects to each and every Interrogatory to the extent that it is overly broad in scope or time and unduly burdensome.

4.     Abbott objects to each and every Interrogatory to the extent that it calls for information that is not relevant to any of the claims or defenses in this litigation.

5.     Abbott objects to each and every Interrogatory to the extent that it calls for information outside of Abbott's possession, custody, or control.

6.     To the extent that Abbott responds to specific Interrogatories to which it has objected, Abbott's objections are not waived by the furnishing of such information and Abbott reserves the right to maintain such objections with respect to any additional information.

7.     To the extent that Abbott responds to a specific Interrogatory, Abbott does not admit Plaintiffs' characterizations of any documents, facts, theories, or conclusions.

8.     To the extent that Abbott responds to a specific Interrogatory, Abbott does not admit the relevance of such information to the subject matter of this litigation.  Further, by responding to Hancock's interrogatories, Abbott is not waiving any applicable privileges nor shall the inadvertent disclosure of any privileged information operate as a waiver of any applicable privilege or immunity from discovery.

9.     The responses to these Interrogatories are based on information currently known to Abbott and its current employees, and Abbott expressly reserves the right to supplement its responses to these Interrogatories with further additional information and documents as such information and documents become available to Abbott in the course of this litigation.

10.     Except where specifically indicated below, the individuals identified in response to these interrogatories are all current or former employees of Abbott to be contacted only through counsel of record for Abbott herein.

11.     Abbott objects to these interrogatories on the ground that in total, including all discrete subparts, they exceed the total number of interrogatories permitted by the Federal Rules of Civil Procedure, Local Rules and any Orders entered by the Court in this case.

Subject to these General Objections and Responses, and without waiving the same, Abbott states as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

**1.     Please identify each person who participated in the creation of the Compound Reports that are appended to the Research Funding Agreement as Exhibit 12.2(i).**

**Response:**   Abbott specifically objects to this interrogatory on the grounds that it is overly broad and unduly burdensome.  Subject to these specific objections and its General Objections and Responses, and without waiving them, Abbott states that, other than administrative or support staff, the following individuals were the principal participants in the creation of the Compound Reports that are appended to the Research Funding Agreement as Exhibit 12.2(i):

-3-

Steven Cohen

Chris Turner

John Leonard

Dan Norbeck

Perry Nisen

Bruce McCarthy

Stan Bukofser

Carl Kraft

James Sullivan

Additionally, Robert Weiland, Rosemarie Waleska, Jeffrey Ropers, and Erik Zimmer may have been involved, or participated in some manner, in the creation of the Compound Reports. Abbott's investigation continues.

**2.    Please describe Abbott's efforts, prior to March 13, 2001, to verify or confirm the accuracy of the representations and warranties contained in Sections 12.2(d) and 12.2(i) of the Research Funding Agreement, including without limitation the identity of each person who participated in such effort and a complete description of his or her duties and responsibilities with respect to such effort.**

**Response:**   Abbott specifically objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Abbott also objects to this interrogatory to the extent it seeks information protected from disclosure under the attorney-client privilege. Abbott also objects to this interrogatory on the ground that it seeks information more appropriately sought through deposition. Subject to these specific objections and its General Objections and Responses, and without waiving them, Abbott states that the individuals identified in response to Interrogatory 1, above, were those individuals who

-4-

were principally involved in confirming the accuracy of the representations and warranties contained in Sections 12.2(d) and 12.2(i) of the Research Funding Agreement.

Further answering, Abbott states that the Exhibits to the Research Funding Agreement that are the subject of the representations and warranties contained in Sections 12.2(d) and 12.2(i) of the Research Funding Agreement were prepared at the direction of the then Controller of the Pharmaceutical Products Division Research and Development Group, Steven Cohen, primarily with the assistance of Chris Turner. The information contained in the Exhibits that are the subject of the representations and warranties contained in Sections 12.2(d) and 12.2(i) of the Research Funding Agreement were assembled and verified through consultation with each of the respective discovery or development heads of the compounds that are the subject of those exhibits, including the following individuals, who had responsibility for providing and verifying the information concerning the compounds or programs set forth in parenthesis next to each of their names:

> Perry Nisen (ABT-510, ABT-518, ABT-627, ABT-751 and FTI Program)
>
> Bruce McCarthy (ABT-594)
>
> Stan Bukofser (ABT-773 and ABT 492)
>
> James Sullivan (Dopamine Receptor Agonist (Male ED) Program)

Further answering, Abbott states that Mr. Turner consulted with the individuals identified above concerning the respective compounds/programs for which they had responsibility, included the information in the Compound Reports, and then provided the Compound Reports to the appropriate individuals, listed above, for verification of the accuracy of the information. Once this process was completed, the exhibits were provided to John Leonard and Dan Norbeck for further review.

**3.    Please identify each person who participated in any effort, or actual or tentative decision by Abbott, prior to March 13, 2001, to "slow[] down" ABT-518 as referenced in the Abbott document bearing bates stamp no. AL 000403.**

**Response:**    Abbott specifically objects to this interrogatory on the ground that it is overly broad, unduly burdensome, and vague. Subject to these specific objections and its General Objections and Responses, and without agreeing that the characterization of the development status of ABT-518 set forth in Interrogatory 3 or in document AL 000403 is accurate, Abbott states that the individuals who have knowledge of the information set forth in document AL 000403 or who were principally involved in the relevant underlying events are:

Phillip Deemer

Perry Nisen

John Leonard

Jeffrey Leiden

Abbott's investigation continues.

**4.    Please identify each person who participated in any effort, or actual or tentative decision by Abbott, prior to March 13, 2001, to put ABT-518 "back on track" as referenced in the Abbott document bearing bates stamp no. AL 000403.**

**Response:**    Abbott specifically objects to this interrogatory on the ground that it is overly broad, unduly burdensome, and vague. Subject to these specific objections and its General Objections and Responses, and without agreeing that the characterization of the development of ABT-518 set forth in Interrogatory 4 or document AL 000403 is accurate, Abbott states that the individuals who have knowledge of the information set forth in document AL 000403 or who were principally involved in the relevant underlying events are:

-6-

Phillip Deemer

Perry Nisen

John Leonard

Jeffrey Leiden

Diane D'Amico

Azmi Nabulsi

Todd Janus

Jan Schellens
The Netherlands Cancer Institute
Plesmanlaan 121
1066 CX Amsterdam
The Netherlands

Abbott's investigation continues.

**5.    Please identify each person having knowledge of the "518 debacle" referenced in the Abbott document bearing bates stamp no. AL 000403.**

**Response:** Abbott specifically objects to this interrogatory on the ground that it is overly broad, unduly burdensome, and vague. Subject to these specific objections and its General Objections and Responses, and without agreeing to the characterization set forth in Interrogatory 5 or document AL 000403, Abbott states that the individuals with knowledge of the reference to the "518 debacle" in document AL 000403 are:

Philip Deemer

Perry Nisen

Additionally, for more complete context, Abbott refers Hancock to its responses to Interrogatories 3 and 4, above.

-7-

6.   **Please describe in as much detail as possible the development status of ABT-518 as of March 13, 2001, including without limitation the expected development funding and milestones.**

> **Response:** Abbott specifically objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, including in its request for a description "in as much detail as possible" of the complex and extensive development status of a pharmaceutical compound. Subject to these specific objections and its General Objections and Responses, pursuant to Fed. R. Civ. P. 33(d) and Local Rule 33.1(b), to the extent it has not already provided such documents, Abbott will produce within 14 days of the date of serving the responses to these interrogatories the following business records that will provide a detailed description of the development status of ABT-518 on or about March 2001:

> > March 2001 monthly compound status report for ABT-518;

> > March 2001 Monthly Highlights Memorandum;

> > Compound Report for ABT-518, attached as Exhibit 12.2(i) to Research Funding Agreement;

> > Development Cost Summary for ABT-518, attached as Exhibit 1.6 to Research Funding Agreement;

> > DDC Report (PPCC) for ABT-518

> > Investigators Drug Brochure for ABT-518; and

> > Further answering, and given Hancock's request for a description "in as much detail possible," additional documents concerning ABT-518 that will be produced by Abbott and Hancock throughout the litigation, and deposition testimony to be given in the course of this litigation, may provide additional information responsive to this interrogatory.

-8-

7.     **Please identify each person who participated in Abbott's decision in 2001 to end further development funding of ABT-518.**

**Response:**  Abbott objects to this interrogatory on the ground that it is overly broad and unduly burdensome.  Subject to its specific objection and its General Objections and responses, the individuals who principally participated in the decision to end further development funding of ABT-518 by Abbott are:

> Jeffrey Leiden
>
> John Leonard
>
> Perry Nisen
>
> Arthur Higgins
>
> Eugene Sun
>
> Marleen Verlinden
>
> Steve Cohen
>
> Keith Hendricks

> Abbott's investigation continues.

8.     **Please describe in as much detail as possible the development status of ABT-594 as of March 13, 2001, including without limitation the expected development funding and milestones.**

**Response:**  Abbott specifically objects to this interrogatory on the grounds that it is overly broad and unduly burdensome, including in its request for a description "in as much detail as possible" of the complex and extensive development status of a pharmaceutical compound.  Subject to these specific objections and its General Objections and Responses, pursuant to Fed. R. Civ. P. 33(d) and Local Rule 33.1(b), to the extent it has not already provided such documents, Abbott will produce within 14 days of the date of serving the responses to these interrogatories the following business records that will

provide a detailed description of the development status of ABT-594 on or about March 2001:

       March 2001 monthly compound status report for ABT-594;

       March 2001 Monthly Highlights Memorandum;

       Compound Report for ABT-594, attached as Exhibit 12.2(i) to Research Funding Agreement;

       Development Cost Summary for ABT-594, attached as Exhibit 1.6 to Research Funding Agreement;

       DDC Report (PPCC) Report for ABT-594;

       Investigators Drug Brochure for ABT-594; and

       Further answering, and given Hancock's request for a description "in as much detail possible," additional documents concerning ABT-594 that will be produced by Abbott and Hancock throughout the litigation, and deposition testimony to be given in the course of this litigation, may provide additional information responsive to this interrogatory.

      **9.**    **Please identify each person who participated in Abbott's decision in 2001 to terminate further development of ABT-594.**

      **Response:**  Abbott specifically objects to the interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to its specific objections and its General Objections and Responses, and without waiving them, Abbott states that the decision to terminate further development of ABT-594 by Abbott ultimately was made by Abbott's Pharmaceutical Executive Committee, which consisted at the relevant time of the following persons:

      Jeffrey Leiden

      John Leonard

William Dempsey

David Goffredo

Arthur Higgins

Dan Norbeck

Doug Sporn

Michael Beatrice

Lance Wyatt

Chris Ward

Eugene Sun

Further answering, Abbott states that the following individuals were or may have been involved or participated in some manner in the decision to cease the development of ABT-594 by Abbott.

Walid Awni

Michael Fash

Brian Biarnesen

Keith Hendricks

Nigel Livesey

Elizabeth Kowaluk

Steve Kuemmerle

Lisa Lux

Bruce McCarthy

Michael Meyer

David Morris

-11-

David Ross

James Sullivan

Rose Waleska

Danhui Wang

Abbott's investigation continues.

**10.     Please describe Abbott's efforts since March 13, 2001 to out-license any of the Program Compounds, including without limitation ABT-518, ABT-594, ABT-492 and ABT-792 (sic), and further including the identity of each person who participated in such efforts on behalf of Abbott, the content and terms of any and all proposals or solicitations, the identity of each potential licensee with whom Abbott has communicated, and the response received from each potential licensee.**

**Response:**  Abbott specifically objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and exceeds the total number of permitted interrogatories, including all discrete subparts.  Abbott further objects to this request to the extent that it requests information that is not discoverable or admissible as evidence, and thus outside the scope of permissible discovery under Fed. R. Civ. P. 26, because of certain Non-Use Agreements executed between Abbott and Hancock.  Pursuant to those agreements, executed in September 2004 and August 2005, the parties agreed that "[n]o action taken or statement, writing or other communication hereafter sent made or authored by employees of John Hancock or Abbott. . . for the sole purpose of out-licensing various program compounds in connection with the Business and pursuant to the terms of the Research Funding Agreement. . . shall be discoverable or admissible in evidence for any purpose...in any subsequent action between John Hancock and Abbott."  Accordingly, Abbott objects to this interrogatory to the extent it seeks out-licensing information between the effective periods of the two Non-Use Agreements, specifically from July 7, 2004 through June 30, 2005 and from August 22, 2005 to the present.  Abbott further objects to

this interrogatory to the extent that it requires disclosure of the information that is subject to confidentiality agreements with third parties not involved in this litigation.

Subject to its specific objections and its General Objections and Responses, and without waiving them, Abbott states that it has attempted to out-license or divest each of the following Program Compounds: ABT-518, ABT-594, ABT-773, ABT-492, and ABT-724. Abbott's investigation continues with respect to out-licensing efforts on ABT-100.

As Hancock is aware, Abbott outlicensed ABT-773. The individuals from Abbott principally involved in that transaction were Michael Johanssen, Ake Johanssen, Joe Nolan and Mylene Salamero. Abbott is also in the process of out-licensing ABT-492.

Further answering, pursuant to Fed. R. Civ. P. 33(d) and Local Rule 33.1(b), to the extent it has not already provided such documents, Abbott will produce within 14 days of the date of serving the responses to these interrogatories documents from which a further response to this interrogatory can be derived.

Abbott's investigation continues.

**11.    Please identify each person who participated in the Compliance Audit on Abbott's behalf, including without limitation a complete description of his or her duties and responsibilities with respect to the Compliance Audit.**

**Response:** Abbott specifically objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and exceeds the total number of permitted interrogatories, including all discrete subparts. Abbott further objects to the phrase "participated in" as vague and ambiguous. Subject to its specific objections and its General Objections and Responses, and without waiving them, Abbott states that, apart from Abbott's in-house counsel and outside counsel of record who provided legal advice

-13-

and counsel to Abbott and communicated with outside counsel for Hancock concerning the audit, listed below are the persons who principally participated in gathering, reviewing, and producing materials for the "Compliance Audit" on Abbott's behalf, together with a description of their duties and responsibilities:

| Name | Description of Duties and Responsibilities |
|------|--------------------------------------------|
| Michelle Campbell | Paralegal, coordinated collection and review of materials for production |
| Carey Crimmins | Contract attorney from Special Counsel who reviewed audit documents for production |
| Ronald Richards | Contract paralegal from Manpower who reviewed audit documents for production |
| Christopher Fleck | Contract paralegal from Manpower who reviewed audit documents for production |
| Karen Cole-Kearney | Contract paralegal from Manpower who reviewed audit documents for production |
| Ray Harris | Contract paralegal from Manpower who reviewed audit documents for production |
| Ron Michael | Contract paralegal from Manpower who reviewed audit documents for production |
| Twenty-Four Seven copy service | Copied documents for audit review and production |

Abbott's investigation continues.

**12.    Please identify each other contract compliance audit that Abbott has undertaken or been subject to at any time from January 1, 1995 to the present, including, without limitation, the identity of each person who participated in each such audit, the inclusive date(s) of each such audit, the purpose(s) of each audit, and the results of each such audit.**

**Response:** Abbott specifically objects to the interrogatory on the grounds that it is overly broad, unduly burdensome, not relevant to the claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, and exceeds the total number of permitted interrogatories, including all discrete subparts.

-14-

13.    Please state all modifications that have been made to Abbott's preliminary Annual Research Plan for 2005 since November 16, 2004, including without limitation the monetary effect of each such modification and the reason(s) for each such modification.

Response:  Abbott specifically objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and exceeds the total number of permitted interrogatories, including all discrete subparts.  Abbott further objects to this interrogatory to the extent that it seeks information provided to Hancock that is the subject of either of the Non-Use Agreements between Abbott and Hancock on the ground that the information is not discoverable or admissible and thus outside the permitted scope of discovery under Fed. R. Civ. P. 26.

Subject to these specific objections and its General Objections and Responses, and without waiving them, Abbott states that there have been no "modifications" made to the preliminary Annual Research Plan for 2005 as provided to Hancock on or about November 16, 2004.  Further answering, however, Abbott states that the total amount of spending on the remaining Program Compounds during 2005, as set forth below, was approximately $11.6 million greater than the amount of total spending for 2005 that Abbott estimated in its preliminary Annual Research Plan for 2005 without any additional contribution from Hancock.

Further answering, Abbott's actual and Last Best Estimate ("LBE") of total expenditures on the Program Compounds for 2005 is as follows:

| In Millions of U.S. Dollars | Month 11 YTD 2005 | Month 12 LBE 2005 | Total Year 2005 |
|---|---|---|---|
| ABT-510 | 15.3 | 1.4 | 16.7 |
| ABT-627 Atrasentan Base | 39.0 | 4.1 | 43.1 |
| ABT-627 Atrasentan Hormone Naive Prostate Cancer | 0.0 | 0.0 | 0.0 |
| ABT-627 Japan | 1.4 | 0.1 | 1.5 |

-15-

| | | | |
|---|---|---|---|
| ABT-627 Non-Prostate Cancers | 0.9 | 0.1 | 1.0 |
| ABT-751 | 11.1 | 1.0 | 12.1 |
| Total Program Spend | 67.7 | 6.7 | 74.4 |

14.    **Please state the total amount of Abbott's intended and reasonably expected expenditures on Program Related Costs for the year 2005 as of the date of these interrogatories.**

Response:  Abbott specifically objects to the interrogatory on the grounds that it is not relevant to the claim or defense of any party, not reasonably calculated to lead to the discovery of admissible evidence, and exceeds the total number of permitted interrogatories, including all discrete subparts.  Subject to its specific objections and its General Objections, and without waiving these objections, Abbott states as of October 26, 2005, the total amount of Abbott's intended and reasonably expected expenditures on Program Related Costs for the year 2005 was $64.7 million.

Respectfully Submitted,

ABBOTT LABORATORIES

By:_____
    One of its attorneys

Peter E. Gelhaar, Esq.
Michael S. Dorsi, Esq.
DONNELLY, CONROY & GELHAAR, LLP
1 Beacon Street, 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

and

Lawrence R. Desideri, Esq.
Stephen V. D'Amore, Esq.
Stephanie S. McCallum, Esq.
WINSTON & STRAWN LLP

-16-

35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that s/he caused a copy of the foregoing **Abbott Laboratories' Response to Plaintiffs' First Set Of Interrogatories** to be served by U.S. Mail upon the following:

Brian A. Davis
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

on this 31st day of December, 2005.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that s/he caused a copy of the foregoing **Abbott Laboratories' Response to Plaintiffs' First Set Of Interrogatories to** be served by U.S. Mail upon the following:

Brian A. Davis
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

on this 31st day of December, 2005.

**EXHIBIT G**

# Redacted

# Confidential

**EXHIBIT H**

CONFIDENTIAL

1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2         FOR THE DISTRICT OF MASSACHUSETTS
 3               -    -    -
 4    JOHN HANCOCK LIFE        : CIVIL ACTION
      INSURANCE COMPANY,       :
 5    JOHN HANCOCK VARIABLE    :
      LIFE INSURANCE COMPANY,  :
 6    and MANULIFE INSURANCE   :
      COMPANY (f/k/a INVESTORS :
 7    PARTNER INSURANCE        :
      COMPANY),                :
 8               Plaintiffs,:
 9          V.                 :
                               :
10    ABBOTT LABORATORIES,     :
               Defendant. : NO. 05-11150-DPW
11               -    -    -
12          November 22, 2006
13               -    -    -
14            CONFIDENTIAL
15               -    -    -
16        Videotaped deposition of PERRY
17    NISEN, M.D., Ph.D., held in the offices
      of Morgan Lewis, LLP, 18th Floor, 1701
18    Market Street, Philadelphia, Pennsylvania
      19103, commencing at 9:05 a.m., on the
19    above date, before Denise D. Bach, a
      Federally Approved Registered
20    Professional Reporter and a Certified
      Shorthand Reporter.
               -    -    -
21
22        ESQUIRE DEPOSITION SERVICES
           Four Penn Center, Suite 1210
23        1600 John F. Kennedy Boulevard
          Philadelphia, Pennsylvania 19103
24            (215) 988-9191
```

CONFIDENTIAL
1

```
 1      IN THE UNITED STATES DISTRICT COURT
 2        FOR THE DISTRICT OF MASSACHUSETTS
 3            - - -
 4   JOHN HANCOCK LIFE      : CIVIL ACTION
     INSURANCE COMPANY,     :
 5   JOHN HANCOCK VARIABLE  :
     LIFE INSURANCE COMPANY, :
 6   and MANULIFE INSURANCE  :
     COMPANY (f/k/a INVESTORS:
 7   PARTNER INSURANCE       :
     COMPANY),               :
 8            Plaintiffs,:
          v.                :
 9                          :
     ABBOTT LABORATORIES,    :
10        Defendant. : NO. 05-11150-DPW
11            - - -
12      November 22, 2006
13            - - -
14   CONFIDENTIAL
15            - - -
16      Videotaped deposition of PERRY
     NISEN, M.D., Ph.D., held in the offices
17   of Morgan Lewis, LLP, 18th Floor, 1701
     Market Street, Philadelphia, Pennsylvania
18   19103, commencing at 9:05 a.m., on the
     above date, before Denise D. Bach, a
19   Federally Approved Registered
     Professional Reporter and a Certified
20   Shorthand Reporter.

21
22      ESQUIRE DEPOSITION SERVICES
       Four Penn Center, Suite 1210
23    1600 John F. Kennedy Boulevard
       Philadelphia, Pennsylvania 19103
24         (215) 988-9191
```

CONFIDENTIAL
2

```
 1   A P P E A R A N C E S :
 2
 3      CHOATE HALL & STEWART LLP
        BY: BRIAN A. DAVIS, ESQUIRE
 4     Two International Place
       Boston, Massachusetts 02110
 5     (617) 248-5000
       bad@choate.com
 6     Counsel for the Plaintiffs
 7
 8      MUNGER, TOLLES & OLSON LLP
        BY: ERIC LORENZINI, ESQUIRE
 9     355 South Grand Avenue
       Los Angeles, California 90071
10     (213) 683-9207
       lorenzinie@mto.com
11     Counsel for the Defendant
12
13   A L S O   P R E S E N T :
14
        JASON HOFFMAN, Videographer
15
16
17
18
19
20
21
22
23
24
```

I N D E X

| WITNESS | | PAGE |
|---|---|---|
| PERRY NISEN, M.D., Ph.D. | | |
| By Mr. Davis | | 9, 405, 468 |
| By Mr. Lorenzini | | 389, 447 |

E X H I B I T S

| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Nisen-1 | Descriptive Memorandum, May 2000, Bates ABBT246447/246454 | 41 |
| Nisen-2 | ABT-518 February 2001 Document, Bates ABBT0000343/0000348 | 50 |
| Nisen-3 | E-mail, 4/7/00, Bates ABBT297359/297373 | 84 |
| Nisen-4 | E-mail, 6/23/00, Bates ABBT366187 | 107 |
| Nisen-5 | ABT-518 Transition Strategy, Bates ABBT256634/256645 | 110 |
| Nisen-6 | Oncology Portfolio Analysis Inputs, Bates ABBT292350/302721 | 130 |
| Nisen-7 | E-mail string, Bates ABBT0046117 | 136 |
| Nisen-8 | MMPI Working Group Minutes, 1/11/01, Bates ABBT0045274/0045276 | 140 |
| Nisen-9 | Forecast Methodology and Assumptions, Bates ABBT0012938/0012969 | 142 |
| Nisen-10 | ABT-518 Descriptive Memorandum, February 2001, Bates ABBT0004032/0004039 | 149 |
| Nisen-11 | Abbott Portfolio Review, March 7-9, 2001, Bates ABBT0013224/0013232 | 190 |
| Nisen-12 | E-mail w/attachments, 3/22/01, Bates ABBT300130/300132 | 199 |
| Nisen-13 | MMPI Monthly Meeting Agenda, 3/8/01, Bates ABBT0045253 | 202 |
| Nisen-14 | Letter, 3/9/01, Bates ABBT0049922/0049926 | 205 |
| Nisen-15 | M00-235 Teleconference Notes, 6/21/01, Bates ABBT0033089/0033119 | 208 |
| Nisen-16 | E-mail string, 5/2/01, Bates ABBT0055426 | 230 |
| Nisen-17 | E-mail, 5/25/01, Bates ABBT0059368 | 233 |
| Nisen-18 | E-mail, 3/12/01, Bates ABBT0004031 | 237 |

1      A.   He took over as the finance
2  guy for R&D.
3      Q.   For Mr. Cohen?
4      A.   Yeah, I think so.   There
5  might have been somebody in between.   I
6  don't know.
7      Q.   Does this e-mail refresh
8  your recollection as to when it was that
9  Abbott decided to permanently halt the
10  Phase I clinical trial of ABT-518?
11      A.   Well, it's dated May 31st,
12  so it sounds like its around that time,
13  doesn't it?
14      Q.   It does.   But my question is
15  a little different, which is -- again,
16  we're trying to get at your recollection
17  here today, and my question is, does this
18  refresh your recollection about when it
19  occurred?
20      A.   No, no.
21      Q.   Do you have any doubt that
22  it occurred sometime on or before May 31,
23  2001?
24      A.   It's around then.

297

1      Q.   When it refers to the MMPI
2  shutdown in this e-mail, that is, in
3  fact, a reference to terminating the
4  further development of ABT-518, is that
5  right?
6           MR. LORENZINI:   Objection.
7           THE WITNESS:   Yes.
8  BY MR. DAVIS:
9      Q.   As you sit here today, do
10  you recall the process that was followed
11  within Abbott to -- that resulted in the
12  shutdown of the development program for
13  ABT-518?
14      A.   Do I recall that there was a
15  decision made to terminate the project,
16  is that your question?
17      Q.   Well, my -- my question was
18  about the process, but let's start there.
19           Do you recall the decision
20  being made to terminate the further
21  development of ABT-518?
22      A.   I recall the decision was
23  made to terminate its development.
24      Q.   Okay.   And was that made by

298

the PEC?
2           MR. LORENZINI:   Objection.
3           THE WITNESS:   I don't
4      remember exactly who made it or
5      how it was made or when it was
6      made.
7  BY MR. DAVIS:
8      Q.   Did you -- did you
9  participate in that decision?
10      A.   I don't remember.
11      Q.   Was it a group decision?
12      A.   I don't remember.
13      Q.   Was it a decision driven in
14  part, to your knowledge, by Abbott's
15  desire to save money?
16      A.   I don't remember.
17      Q.   Do you recall having a
18  series of e-mails or communications with
19  others within Abbott regarding how much
20  Abbott could save on a Phase I clinical
21  trial by shutting it down?
22      A.   I do remember discussions
23  related to savings of stopping.   I do
24  remember some discussions that it wasn't

299

turn the water spigot on and off; that a
2  lot of the expenses were already made and
3  that there wouldn't be savings to the
4  extent that you'd stop it cold and then
5  all spending would stop immediately,
6  something like that.   I do remember
7  discussions like that.
8      Q.   If you take a look on the
9  second page of Exhibit 26, near the
10  bottom, there's an e-mail from Mr. Woidat
11  to Mr. Funck with a cc to you, among
12  others.   Again, referencing the MMPI
13  Phase I study options, it states, "The
14  $0.8 million external savings occurs
15  under the first 'shutdown' scenario
16  mentioned below, i.e., whereby we do NOT
17  enroll additional patients and simply
18  maintain existing patients on drug for
19  the study duration."
20           Do you see that?
21      A.   Yes.
22      Q.   Then the next paragraph
23  says, "The second alternative below
24  (favored by Perry) whereby we enroll all

300

```
 1   that we're having here is we're talking
 2   about a complex and detailed body of
 3   information, and does -- I think you're
 4   asking me does this accurately represent
 5   the challenges and issues, positives and
 6   negatives about those molecules, I don't
 7   know.  I'm not sure.
 8        Q.   No, actually, my question
 9   was much simpler.
10        A.   Okay.
11        Q.   Doesn't make any reference
12   to the fact that Pfizer stopped those
13   Phase III trials, does it?
14             MR. LORENZINI:  He's just
15   asking what's in the document.
16             THE WITNESS:  It doesn't say
17   that in here, no.
18             MR. DAVIS:  Okay.  I have no
19   further questions.
20             MR. LORENZINI:  I have no
21   further questions.
22             THE VIDEOGRAPHER:  That
23   concludes today's videotape
24   deposition.  The time is 5:37.
```

```
 1             C E R T I F I C A T E
 2             I hereby certify that the
 3   proceedings and evidence noted are
 4   contained fully and accurately in the
 5   notes taken by me on the deposition of
 6   the above matter, and that this is a
 7   correct transcript of the same.
 8
 9
10
11             _____
12             DENISE D. BACH, CSR
13
14             DATE:_____
15
16
17
18             (The foregoing certification
19   of this transcript does not apply to any
20   reproduction of the same by any means,
21   unless under the direct control and/or
22   supervision of the certifying reporter.)
23
24
```

```
 1             (Videotape deposition is
 2   concluded at 5:37 p.m.)
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

```
 1   INSTRUCTIONS TO WITNESS
 2             Please read your deposition
 3   over carefully and make any necessary
 4   corrections.  You should state the reason
 5   in the appropriate space on the errata
 6   sheet for any correction that is made.
 7             After doing so, please sign
 8   the errata sheet and date it.
 9             You are signing same subject
10   to the changes you have noted on the
11   errata sheet, which will be attached to
12   your deposition.
13             It is imperative that you
14   return the original errata sheet to the
15   deposing attorney within thirty (30) days
16   of receipt of the deposition transcript
17   by you.  If you fail to do so, the
18   deposition transcript may be deemed to be
19   accurate and may be used in court.
20
21
22
23
24
```

```
 1        - - - - - - -
 2         E R R A T A
 3        - - - - - - -
 4    PAGE    LINE    CHANGE
 5    ___     ___     _____
 6    ___     ___     _____
 7    ___     ___     _____
 8    ___     ___     _____
 9    ___     ___     _____
10    ___     ___     _____
11    ___     ___     _____
12    ___     ___     _____
13    ___     ___     _____
14    ___     ___     _____
15    ___     ___     _____
16    ___     ___     _____
17    ___     ___     _____
18    ___     ___     _____
19    ___     ___     _____
20    ___     ___     _____
21    ___     ___     _____
22    ___     ___     _____
23    ___     ___     _____
24    ___     ___     _____
```

```
 1                    LAWYER'S NOTES
 2    PAGE    LINE
 3    ____    ____    _____
 4    ____    ____    _____
 5    ____    ____    _____
 6    ____    ____    _____
 7    ____    ____    _____
 8    ____    ____    _____
 9    ____    ____    _____
10    ____    ____    _____
11    ____    ____    _____
12    ____    ____    _____
13    ____    ____    _____
14    ____    ____    _____
15    ____    ____    _____
16    ____    ____    _____
17    ____    ____    _____
18    ____    ____    _____
19    ____    ____    _____
20    ____    ____    _____
21    ____    ____    _____
22    ____    ____    _____
23    ____    ____    _____
24    ____    ____    _____
```

```
 1            ACKNOWLEDGMENT OF DEPONENT
 2        I, _ _ _ _ _ _ _ _ _ _ _ _ _, do hereby
 3    certify that I have read the foregoing
 4    pages, _ _ _ _ _ _ and that the same is a
 5    correct transcription of the answers
 6    given by me to the questions therein
 7    propounded, except for the corrections or
 8    changes in form or substance, if any,
 9    noted in the attached Errata Sheet.
10    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
11    DATE            SIGNATURE
12
13    Subscribed and sworn to before me this
14    _ _ _ _ _ day of _ _ _ _ _ _ _ _ _,
15    200_.
16    My commission expires: _ _ _ _ _ _ _ _ _
17                        Notary Public
18
19
20
21
22
23
24
```

**EXHIBIT I**

Page 1

1    UNITED STATES DISTRICT COURT
2    FOR THE DISTRICT OF MASSACHUSETTS
3
4
5    JOHN HANCOCK LIFE INSURANCE    )
6    COMPANY, JOHN HANCOCK VARIABLE )
7    LIFE INSURANCE COMPANY and    )
8    MANULIFE INSURANCE COMPANY    )
9    (f/k/a INVESTORS PARTNER    )
10   INSURANCE COMPANY),    )
11           Plaintiffs,    ) Civil Action No.
12     -vs-    ) 05-11150-DPW
13   ABBOTT LABORATORIES,    )
14           Defendant.    )
15
16   THE VIDEOTAPED DEPOSITION OF
17   AZMI NABULSI
18
19       January 24, 2007
20
21
22
23
24

Page 2

1
2
3
4    The videotaped deposition of AZMI NABULSI,
5    called by the Plaintiffs for examination, taken
6    pursuant to the Federal Rules of Civil Procedure of
7    the United States District Courts pertaining to the
8    taking of depositions, taken before CORINNE T.
9    MARUT, C.S.R. No. 84-1968, a Notary Public within
10   and for the County of DuPage, State of Illinois,
11   and a Certified Shorthand Reporter of said state,
12   at the Marriott Lincolnshire Resort, 10 Marriott
13   Drive, Lincolnshire, Illinois, on the 24th day of
14   January, A.D. 2007, commencing at 9:00 a.m.
15
16
17
18
19
20
21
22
23
24

Page 3

1    PRESENT:
2    CHOATE, HALL & STEWART LLP,
3    (Two International Place,
4    Boston, Massachusetts 02110,
5    617-248-5000), by:
6    MR. JOSEPH H. ZWICKER,
7    jzwicker@choate.com,
8        appeared on behalf of the Plaintiffs;
9
10   MUNGER, TOLLES & OLSON LLP,
11   (355 South Grand Avenue, 35th Floor,
12   Los Angeles, California 90071-1560,
13   213-683-9276), by:
14   MR. GREGORY D. PHILLIPS,
15   gregory.phillips@mto.com,
16       appeared on behalf of the Defendant
17       and the Deponent.
18
19   VIDEOTAPED BY:
20       ERIC CAMPBELL,
21       Esquire Deposition Services.
22
23
24   REPORTED BY: CORINNE T. MARUT, C.S.R. No. 84-1968

Page 4

1        THE VIDEOGRAPHER: Good morning. We are on
2    the record at 9:00 a.m. Today's date is
3    January 24, 2007.
4        Here begins the videotaped deposition of
5    Dr. Azmi Nabulsi, taking place in Lincolnshire,
6    Illinois.
7        This deposition is being taken in the
8    matter of John Hancock Life Insurance Company,
9    et al. vs. Abbott Laboratories.
10       Will counsel please state their names
11   for the record.
12   MR. ZWICKER: For the Plaintiffs, Joseph
13   Zwicker, Choate, Hall & Stewart, Boston,
14   Massachusetts.
15   MR. PHILLIPS: For Abbott Laboratories and for
16   the witness, Dr. Azmi Nabulsi, Greg Phillips,
17   Munger, Tolles & Olson, LLP, Los Angeles,
18   California.
19   THE VIDEOGRAPHER: Thank you, counsel.
20       Will the Court Reporter now please swear
21   in the witness.
22       (WHEREUPON, the witness was duly
23        sworn.)
24   MR. ZWICKER: May I proceed?

1 (Pages 1 to 4)

Page 289

1  were later in development.
2  BY MR. ZWICKER:
3    Q.  And they were tracked closely.  True?
4    MR. PHILLIPS:  Objection to the form.
5  BY THE WITNESS:
6    A.  As others.
7  BY MR. ZWICKER:
8    Q.  Have we looked at a single document
9  today describing the MMPI competitors that did not
10  include a reference to marimastat and prinomastat,
11  to your recollection?
12    MR. PHILLIPS:  Objection to the form.  The
13  documents speak for themselves.
14  BY THE WITNESS:
15    A.  If I recollect the documents I have seen
16  have these two compounds in them.
17    (WHEREUPON, a certain document was
18       marked Nabulsi Deposition Exhibit
19       No. 33, for identification, as of
20       1-24-2007.)
21    MR. ZWICKER:  The record should reflect that
22  before the witness is Nabulsi Exhibit No. 33, which
23  is a letter from Daphne Pals at Abbott to Steven
24  Blewitt at Hancock and it's dated September 20,

Page 290

1  2001.
2  BY MR. ZWICKER:
3    Q.  Do you see that?
4    A.  Yes.
5    Q.  You're not copied on the letter.  Have
6  you ever seen it before?
7    A.  No.
8    Q.  You testified earlier today that you
9  learned that ABT-518 had been terminated in May or
10  early June of 2001, correct?
11    A.  Correct.
12    Q.  Do you know why it was that Abbott did
13  not inform Hancock until September 20 --
14    A.  No.
15    Q.  -- of the fact that ABT-518 had been
16  terminated?
17    MR. PHILLIPS:  Objection to the form; assumes
18  facts not in the record.
19  BY THE WITNESS:
20    A.  I had no interaction regarding the
21  Hancock.  Hancock deal as a whole was invisible to
22  me.
23    (WHEREUPON, a certain document was
24       marked Nabulsi Deposition Exhibit

Page 291

1       No. 34, for identification, as of
2       01-24-2007.)
3    MR. ZWICKER:  Before the witness is Nabulsi --
4    MR. PHILLIPS:  I'm sorry.  I seem to have your
5  copy.
6    MR. ZWICKER:  No, you don't.
7    MR. PHILLIPS:  Oh, okay.
8    MR. ZWICKER:  I just wrote on it.
9    MR. PHILLIPS:  Okay.
10    MR. ZWICKER:  Before the witness is Nabulsi
11  Exhibit No. 34, which is a memo dated August 10,
12  2001 from Steven K. Davidsen to Perry Nisen.
13  BY MR. ZWICKER:
14    Q.  Dr. Nabulsi, do you recognize this
15  document?
16    A.  I believe I have seen a version of this,
17  yes.
18    Q.  What's the subject matter of this
19  document?
20    MR. PHILLIPS:  Objection to the form.  It
21  speaks for itself.  The document speaks for itself.
22  BY MR. ZWICKER:
23    Q.  Put it this way.  What -- what do you
24  understand the discussion about 518 that is

Page 292

1  disclosed in this document to be?
2    MR. PHILLIPS:  Objection to the form.
3    Dr. Nabulsi, in light of Mr. Zwicker's
4  question, you know, you have the right or the
5  ability to read the document if you so desire.
6    MR. ZWICKER:  Oh, absolutely.
7  BY THE WITNESS:
8    A.  I'm looking at it to be able to answer
9  your question here.
10    Okay.
11  BY MR. ZWICKER:
12    Q.  I think the question pending was:  Do
13  you recall the discussion around 518 that's set
14  forth in this document?
15    A.  These discussions are the same type of
16  discussions and understandings and beliefs that the
17  team had across the time period that we've been
18  discussing in the development of 518.
19    Q.  So, the document reflects the project
20  team's view that development of 518 should continue
21  notwithstanding the ASCO results?
22    A.  Correct.
23    Q.  Did Dr. Nisen share that view?
24    MR. PHILLIPS:  Objection to the form, as

73 (Pages 289 to 292)

Page 297

1  STATE OF ILLINOIS )
2                   ) SS:
3  COUNTY OF DU PAGE )
4        I, CORINNE T. MARUT, C.S.R. No. 84-1968,
5  a Notary Public within and for the County of
6  DuPage, State of Illinois, and a Certified
7  Shorthand Reporter of said state, do hereby
8  certify:
9        That previous to the commencement of the
10 examination of the witness, the witness was duly
11 sworn to testify the whole truth concerning the
12 matters herein;
13       That the foregoing deposition transcript
14 was reported stenographically by me, was thereafter
15 reduced to typewriting under my personal direction
16 and constitutes a true record of the testimony
17 given and the proceedings had;
18       That the said deposition was taken
19 before me at the time and place specified;
20       That the reading and signing by the
21 witness of the deposition transcript was agreed
22 upon as stated herein;
23       That I am not a relative or employee or
24 attorney or counsel, nor a relative or employee of

Page 298

1  such attorney or counsel for any of the parties
2  hereto, nor interested directly or indirectly in
3  the outcome of this action.
4        IN WITNESS WHEREOF, I do hereunto set my
5  hand and affix my seal of office at Chicago,
6  Illinois, this 30th day of January, 2007.
7
8
9
10      CORINNE T. MARUT, C.S.R. No. 84-1968
11      Notary Public, DuPage County, Illinois.
12      My commission expires August 15, 2009.
13
14
15
16
17
18
19
20
21
22
23
24

Page 299

1              INDEX
2  AZMI NABULSI              EXAMINATION
3  BY MR. ZWICKER.................... 5
4
5
6            EXHIBITS
7  NABULSI DEPOSITION EXHIBIT          MARKED FOR ID
8    No. 1...................... 35
9    No. 2...................... 56
10   No. 3...................... 64
11   No. 4...................... 79
12   No. 5...................... 83
13   No. 6...................... 87
14   Nos. 7 and 8.............. 96
15   No. 9...................... 98
16   Nos. 10 and 11.............126
17   Nos. 12 and 13.............138
18   No. 14....................164
19   No. 15....................167
20   No. 16....................181
21   No. 17....................191
22   No. 18....................200
23   No. 19....................218
24

Page 300

1            EXHIBITS
2  NABULSI DEPOSITION EXHIBIT          MARKED FOR ID
3    No. 20....................220
4    No. 21....................222
5    No. 22....................238
6    No. 23....................241
7    No. 24....................243
8    No. 25....................248
9    No. 26....................250
10   No. 27....................269
11   No. 28....................276
12   No. 29....................278
13   Nos. 30 and 31.............280
14   No. 32....................283
15   No. 33....................289
16   No. 34....................291
17
18
19
20
21
22
23
24

75 (Pages 297 to 300)

**EXHIBIT J**

# Redacted

# Confidential

**EXHIBIT K**

# Redacted

# Confidential

**EXHIBIT L**

# Redacted

# Confidential

**EXHIBIT M**

## Guzelsu, Ozge

| | |
|---|---|
| **From:** | Troake, Karen Collari [KTroake@choate.com] |
| **Sent:** | Thursday, April 19, 2007 6:45 AM |
| **To:** | Lorenzini, Eric |
| **Cc:** | Abati, Richard; Weinberger, Jeffrey; Phillips, Gregory; Davis, Brian; Zwicker, Joseph H. |
| **Subject:** | RE: Depositions of Dr. Bukofzer and Ms. Meyer |

Eric

This will confirm that Abbott may have until Friday, April 27 to respond to Hancock's Requests for Admissions.

Additionally, please confirm at your earliest convenience whether you can proceed with the 30 (b)(6) deposition (Topics 10-21 as they relate to the Bond Investment Committee) of Wilma Davis on the morning of April 24.

Regards.

Karen Collari Troake

C H O A T E

Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
t 617-248-5192
f 617-248-4000
ktroake@choate.com
www.choate.com
-----Original Message-----
**From:** Lorenzini, Eric [mailto:Eric.Lorenzini@mto.com]
**Sent:** Wednesday, April 18, 2007 7:48 PM
**To:** Zwicker, Joseph H.
**Cc:** Troake, Karen Collari; Abati, Richard; Weinberger, Jeffrey; Phillips, Gregory; Davis, Brian
**Subject:** Depositions of Dr. Bukofzer and Ms. Meyer

Joe,

I am responding to your request to reschedule the depositions of Dr. Bukofzer and Ms. Meyer due to your scheduling conflicts in another matter.

To accommodate your request, we can reschedule the deposition of Dr. Bukofzer to May 9. Please let us know promptly whether you would like to make that change. Dr. Bukofzer leaves on a trip shortly thereafter, so is unavailable the rest of May. We disagree with your contention that any more than seven hours is necessary for Dr. Bukofzer's deposition, since the Rule 30(b)(6) deposition topics on which he is the designated witness overlap completely with the topics on which you would question him in his individual capacity.

I informed Karen this morning that Ms. Meyer is available on April 24, the date we originally discussed, but she said that date is no longer convenient for you because you have a preliminary injunction hearing in Boston on April 25. Therefore, we propose rescheduling the deposition for May 22, 23, 24, or 25, dates on which Ms. Meyer

5/17/2007

and Abbott counsel are currently available.  I am sorry, but we are not able to accommodate your preference for scheduling the depositions of Dr. Bukofzer and Ms. Meyer on consecutive days (e.g., Ms. Meyer is out of town the week of May 7).  Please let me promptly whether you prefer May 22, 23, 24, or 25.

Eric

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

---