**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY),<br><br>            Plaintiffs,<br><br>     v.<br><br>ABBOTT LABORATORIES,<br><br>            Defendants. | CIVIL ACTION NO. 05-11150-DPW<br>Hon. Judge Douglas P. Woodlock |

**ABBOTT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL HANCOCK TO PRODUCE ARBITRATOR'S OPINION REJECTING TESTIMONY OF HANCOCK'S DAMAGES EXPERT REGARDING ALLEGED LOST PROFITS**

Defendant Abbott Laboratories ("Abbott") respectfully submits this Memorandum in Support of Its Motion to Compel Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Manulife Insurance Company (f/k/a Investors Partner Life Insurance) (collectively, "Hancock") to Produce Arbitrator's Opinion Rejecting Testimony of Hancock's Damages Expert Regarding Alleged Lost Profits.

**I.      INTRODUCTION**

Hancock's damages expert, Alan Friedman, has offered a fundamentally flawed and speculative opinion regarding the profits Hancock allegedly would have made from sale of the Program Compounds but for Abbott's alleged misrepresentations. At his deposition, Mr. Friedman disclosed the existence of a recent arbitration opinion in which the arbitrator (a retired judge) in another case, *Gen-Probe*, rejected as overly speculative Mr. Friedman's testimony

regarding a similar subject matter -- the alleged lost future profits from sale of a developmental medical product. Abbott requested a copy of the *Gen-Probe* opinion, but Hancock has refused Abbott's request, contending that the opinion: (1) "is not discoverable under the federal rules"; (2) "is potentially subject to confidentiality agreements and/or protective orders," and (3) "is outside the scope of expert discovery agreed upon by the parties." Ex. 10  (7/13/07 letter from Abati to Lorenzini). Hancock also contends that Abbott's request for production of the *Gen-Probe* opinion is inconsistent with Abbott's objection to Hancock's request for "any and all court or arbitration opinions, decisions or rulings that mention or refer to [Abbott's damages expert] Mr. Tucker or any expert opinion that he has rendered." None of Hancock's objections provide a valid basis for its withholding of the *Gen-Probe* opinion.

      First, the Federal Rules of Civil Procedure provide for discovery of non-privileged documents that are relevant or likely to lead to admissible evidence. The *Gen-Probe* opinion, and potential cross examination at trial regarding that opinion, is directly relevant to assessing the diligence, methodology, calculations, and principles of Hancock's damages expert. Second, the existence of "potentially" applicable "confidentiality agreements and/or protective orders" does not provide a justification for Hancock's withholding of the *Gen-Probe* opinion. The protective order in this case is sufficient to protect any confidential information contained in the *Gen-Probe* opinion. If necessary, Abbott also would consent to the redaction of any irrelevant and highly commercially sensitive text in the opinion. Third, Abbott's request for the *Gen-Probe* opinion is not outside the scope of discovery agreed upon by the parties. Abbott and Hancock agreed to certain limitations on expert discovery in this case, but did not limit the discoverability of documents relating to prior testimony of expert witnesses. Instead, Abbott and Hancock agreed that requests for such documents would be governed by the default Federal Rules of Civil

2

Procedure. Finally, there is no comparison between Abbott's narrowly tailored request for a single opinion that rejected Mr. Friedman's testimony regarding a similar subject matter and Hancock's overbroad and burdensome request for "[a]ny and all court or arbitration opinions, decisions or rulings that mention or refer to Mr. Tucker or any expert opinion that he has rendered."

## II. STATEMENT OF FACTS

Hancock has designated Alan Friedman as an expert witness regarding "the damages, if any, resulting from Abbott's alleged fraud and breach" of contract. Ex. 1 (Friedman report).[1] Mr. Friedman's report purports to calculate the difference between the "royalty payments and lost milestone payments" Hancock would have received during the period from 2003 to 2015 if the attributes of ABT-518, ABT-594, and ABT-773 were "as represented by Abbott as of the time of the Agreement." *Id.* at 6-12, Exhibits 3.2-4.8. Mr. Friedman compared those hypothetical revenues to the expected revenues based on the "current outlook" for the compounds. *Id.* at 6. Friedman based his estimate of Hancock's lost future revenue on the "Expected Sales" (i.e., projected sales discounted by probability of success) of the three compounds as of March 13, 2001, when the compounds were under development. *Id.*

As explained by Abbott's damages expert, Alan Tucker of Navigant Consulting, Mr. Friedman's report "suffer[s] from numerous methodological and calculation errors." Ex. 2 (Tucker report) at 6. *See also id.* at 6-25. For example, Mr. Friedman "improperly used expected values to determine claimed damages." *Id.* at 6. Mr. Friedman's approach "improperly assumes that he can predict with reasonable certainty, the likely timing and amount of commercial success of one or two or three 'chances' to turn a developmental drug compound

---

[1] All citations to "Ex. __" refer to the exhibits attached to the Affidavit of Eric J. Lorenzini ("Lorenzini Aff.") submitted concurrently herewith.

3

into a commercial product." *Id.* Mr. Tucker observed that Mr. Friedman's approach "is equivalent to claiming damages for a start-up business based on initial projections even though the business has a high chance of failure." *Id.* "For example, the expected probability of FDA approval was 12.5% for ABT-518 in Mr. Friedman's Base Case analysis[,]" which "equates to an expected probability of failure of 87.5%." *Id.* at 6-7. "Mr. Friedman nevertheless claims damages, despite the high likelihood of failure and the resultant uncertainty of any impact to Hancock of the alleged misrepresentations." *Id.* at 7. In addition, Mr. Friedman's assumption that ABT-518, ABT-594, and ABT-773 would have performed as well as expected in the 2001 projections, but for the alleged misrepresentations, has no basis." *Id.* at 11. "The reasonableness of his assumption is undermined" by the fact that the actual results for other compounds in the deal "fell far short of initial expectations" for reasons unrelated to any alleged misrepresentations. *Id.*

      Mr. Friedman's expert report disclosed that he previously testified at a deposition and arbitration hearing in the matter of *Gen-Probe Incorporated v. Bayer Corporation*. Ex. 1 at Exhibit 1.2. At his deposition on May 24, 2007, Mr. Friedman provided additional information regarding the *Gen-Probe* case. Ex. 3 (Friedman Tr.) at 72-78. He was retained in that case by Choate, Hall, and Stewart on behalf of Bayer Corporation ("Bayer"). *Id.* at 72:14-24. He testified regarding the profits Bayer allegedly would have received in the future from sales of a medical diagnostic product, but for breaches of contract by its development partner, Gen-Probe. *Id.* at 72:14-24; 72:20-75:8; 74:4-75:8. His "methodology involved looking at available information about prospects, the market, and programs and plans that were discussed to be pursued, expectation versus actual" and may have involved "an expected value approach based on probabilistic outcomes." *Id.* at 75:10-16; 76:6-17. The arbitrator in *Gen-Probe*, a retired

4

judge, issued a written ruling criticizing and rejecting Mr. Friedman's testimony. *Id.* at 78:6-15; 81:19-21. Mr. Friedman could not recall whether the arbitrator used the word "speculative" in rejecting Mr. Friedman's testimony. *Id.* at 79:4-12, 80:8-10. But he confirmed that the arbitrator rejected his opinion on the grounds that "this was a total startup activity and that it's difficult to come to a conclusion [regarding lost future profits] when you don't have [a] history" that would provide a reasonable basis for such a calculation. *Id.* at 78:16-80:10. Mr. Friedman testified that he "might" have a copy of the opinion. *Id.* at 80:11-12.

At Mr. Friedman's May 24 deposition, Abbott counsel requested production of the *Gen-Probe* opinion and Hancock counsel agreed to consider the request. *Id.* at 80:11-15. On June 11, 2007, Abbott renewed its request. Ex. 4 (6/11/07 letter from Lorenzini to Davis) at 4. Hancock acknowledged that its counsel in the present case, Brian Davis of Choate, Hall, and Stewart, who also represented Bayer and Mr. Friedman in *Gen-Probe*, has a copy of the arbitrator's opinion. Lorenzini Aff., ¶ 11, Ex. 9 at 3. Hancock, however, refused to produce a copy of the opinion. Lorenzini Aff., Ex. 5 at 4, Ex. 8 at 4. The parties met and conferred over the course of several weeks but were unable to resolve the dispute. Lorenzini Aff., ¶ 16, Ex. 5 (6/12/07 letter from Davis to Lorenzini) at 4; Ex. 6 (6/14/07 letter from Lorenzini to Davis) at 4-5; Ex. 7 (7/2/07 letter from Lorenzini to Abati) at 4; Ex. 8 (7/5/07 letter from Abati to Lorenzini) at 3; Ex. 9 (7/6/07 letter from Lorenzini to Abati) at 3; Ex. 10 (7/13/07 letter from Abati to Lorenzini) at 2; Ex. 11 (7/25/07 email from Abati to Lorenzini); Ex. 12 (7/30/07 email from Lorenzini to Abati).

III. <u>ARGUMENT</u>

    A. <u>THE FEDERAL RULES ENTITLE PARTIES TO DISCOVERY OF DOCUMENTS RELATED TO EXPERT WITNESSES' TESTIMONY IN PRIOR CASES IF THE REQUESTS ARE REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE AND NOT UNDULY BURDENSOME</u>

The scope of discovery under the federal rules is broad: "Parties may obtain discovery

5

regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Rule 26 broadly defines the term relevancy at the discovery stage of litigation." *Ares-Serono, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219 (D. Mass. 1993). "A document is relevant therefore if there is *any* possibility that the information sought may be relevant to the subject matter of the action." *Id.* (emphasis in original) (internal quotations omitted). "Where there is a doubt over relevancy, the court should still permit discovery." *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998). Information is discoverable "even if the information requested would not be admissible at trial, provided it appears reasonably calculated to lead to the discovery of admissible evidence." *St. Joseph Hosp. v. INA Underwriters Ins. Co.*, 117 F.R.D. 24, 25-26 (D. Me. 1987).

Accordingly, the parties may obtain discovery of documents related to an expert witness' testimony in prior cases if the requests are reasonably calculated to lead to admissible evidence and not unduly burdensome. *See Expeditors Int'l of Washington, Inc. v. Vastera, Inc.*, 2004 WL 406999, *1-4 (N.D. Ill. Feb. 26, 2004) (compelling production of documents from prior cases involving similar subject matter); *Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 679, 680-81 (D. Colo. 1991) (compelling production of documents from prior cases involving similar subject matter). Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides for mandatory disclosure of certain expert witness information, such as a listing of prior cases in which the witness has testified, without a request from the opposing party. Fed. R. Civ. P. 26(a)(2)(B)  The rule does not, however, place limitations on the right of a party to discovery of additional relevant information regarding an opponent's expert witness. *Id.*  Indeed, the Advisory Committee notes regarding the mandatory disclosure requirement in Rule 26(a)(2)(B) expressly state that:

6

> [t]he enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information without a discovery request. *Nor are parties precluded from using traditional discovery methods to obtain further information regarding these matters* . . .

Advisory Comm. Notes for 1993 Amendments to Fed. R. Civ. P. 26(a) (emphasis added). Therefore, parties are entitled to discovery of relevant documents regarding an expert's testimony in prior cases. *Expeditors*, 2004 WL 406999 at *1-4 (N.D. Ill. Feb. 26, 2004); *Hawkins*, 139 F.R.D. at 680-81.

"[T]he court may limit discovery of relevant material if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Coker*, 177 F.R.D. at 685. "[T]he party resisting production," however, "bears the responsibility of establishing undue burden" and "must substantiate that position with detailed affidavits or other evidence[.]" *Id.* at 686.

### B. THE ARBITRATOR'S RULING IS RELEVANT TO AN ASSESSMENT OF THE RELIABILITY AND CREDIBILITY OF HANCOCK'S DAMAGES EXPERT

The *Gen-Probe* opinion, and potential cross examination at trial regarding that opinion, is relevant to assessing the reliability and credibility of Mr. Friedman's damages opinion. Courts have recognized that documents related to an expert's testimony in prior cases are often relevant, particularly where they involve similar subject matter. *Rondout Valley Central School Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 476 (N.D.N.Y. 2004); *Expeditors*, 2004 WL 406999 at *2; *Hawkins*, 139 F.R.D. at 680-81. In particular, where (as here) there is a written opinion from a prior case rejecting an expert witness' testimony, that opinion may "have a bearing on the weight or credibility to be given the [expert's] report and testimony" in the present case. *Rondout*, 321

7

F. Supp. 2d at 476. In *Rondout*, the court held that prior cases rejecting an expert's testimony were an insufficient basis for exclusion of the expert's opinion from evidence. *Id.* The court noted, however, that the prior cases could be highly relevant at trial: "[i]f relevant to the present case, those previous cases that questioned [the expert's] diligence, methodology, calculations, and principles may indeed be fertile bases for a vigorous cross examination." *Id.*

The relevance of the *Gen-Probe* opinion to the present case is apparent based on the similarities between the subject matter of Mr. Friedman's opinion, and the similarity of the critiques of his opinion, in the two cases. In both cases, Mr. Friedman testified regarding the profits the claimant allegedly would have made in the future from sales of a developmental medical product but for the alleged breaches of contract. In both cases, Mr. Friedman's analysis was criticized (and, in *Gen-Probe*, ultimately rejected) on the grounds that it was overly speculative because there was no historical data regarding past sales of the product upon which to reasonably calculate lost future profits. Ex. 2 (1/19/07 Tucker report) at 6; Ex.3 (Friedman Tr.) at 78:16-80:10.

During the meet and confer process, Hancock contended that *Gen-Probe* was irrelevant because of purported differences in the subject matter and methodology of Mr. Friedman's opinion in the two cases. Ex. 13.[2] Specifically, Hancock noted that *Gen-Probe* involved a medical diagnostic device, rather than a pharmaceutical compound, and contended that Mr. Friedman's lost profits analysis in *Gen-Probe* did not involve an "probabilistic damage analysis." *Id.* The fact that one case involved a medical device and one involved a pharmaceutical compound, and that Mr. Friedman may or may not have used an "probabilistic

---

[2] Hancock declined, however, to allow Abbott counsel to review the expert report Mr. Friedman submitted in *Gen-Probe* to evaluate its contention that the purported differences between the cases render the *Gen-Probe* opinion irrelevant. Lorenzini Aff., ¶ 16.

damage analysis" in *Gen-Probe*,³ are eclipsed by the similarities between the cases.  In both cases, Mr. Friedman attempted to calculate profits that would have been made in the future from sales of a developmental medical/pharmaceutical product but for alleged breaches of contract, where the product had no history of prior sales to provide a reasonable basis for such calculations.  More important, any differences between the subject matter and methodology of Mr. Friedman's opinion in *Gen-Probe* and the present case go to weight of the *Gen-Probe* opinion, or potentially its admissibility at trial, not its discoverability.  *See Swicegood v. Medical Protective Co.*, 2004 WL 1698285, *3 (N.D.Tex. Jul. 29, 2004).  Furthermore, to the extent Mr. Friedman's methodology in *Gen-Probe* differed from his methodology in the present case, that difference itself would be relevant to assessing the reliability and credibility of his opinion in this case.  Abbott is "entitled to explore the . . . potential inconsistencies between the views he intends to express in the underlying case and the testimony and opinions he has given, and the damages theories and methodologies he had adopted, in his prior" cases involving similar subject matter.  *Expeditors*, 2004 WL 406999 at *2.⁴

---

³ Although Hancock now contends that Mr. Friedman's testimony in *Gen-Probe* did not involve an "probabilistic damage analysis," Mr. Friedman testified that he "might" have used such a calculation. Ex. 3 (Friedman Tr.) at 75:10-23; 76:6-17.

⁴ Furthermore, the only way Abbott can obtain significant information regarding the *Gen-Probe* arbitrator's criticism of Mr. Friedman's testimony is through its document request.  Because the *Gen-Probe* opinion was issued in a private arbitration, it is not publicly available.  Also, Mr. Friedman claimed in his deposition to be unable to recall the details of his methodology or the arbitrator's rejection of his testimony.  *See* Ex. 3 (Friedman Tr.) at 75:10-78:4; 79:4-12; 80:8-10.  As a "compromise," Hancock offered to stipulate that the arbitrator in *Gen-Probe* rejected Mr. Friedman's testimony regarding lost profits from sale of a medical device.  Lorenzini Aff., ¶ 16.  Hancock's proposed stipulation would have limited value at trial, however, because it would not disclose the details of Mr. Friedman's methodology, the similarities of the subject matter in the two cases, the arbitrator's assessment of Mr. Friedman's reliability and credibility, and the arbitrator's reasoning in rejecting Mr. Friedman's testimony.  *Id.*  Because the details of the *Gen-Probe* arbitrator's rejection of Mr. Freidman's testimony are unavailable through other means, Abbott's request for the written opinion is particularly appropriate.  *See Hawkins*, 139 F.R.D. at 681 (requests for documents regarding expert's work on prior cases were particularly appropriate where the witness had been deposed and could not recall the specifics of his prior projects).

C.  **THE PURPORTED EXISTENCE OF "POTENTIALLY" APPLICABLE CONFIDENTIALITY AGREEMENTS AND/OR PROTECTIVE ORDERS DOES NOT JUSTIFY WITHHOLDING OF THE *GEN-PROBE* OPINION**

Hancock has not contended that production of the *Gen-Probe* opinion is unduly burdensome. Lorenzini Aff., ¶ 11, Exs. 8, 10.[5] Instead, Hancock objects to production on the grounds that the opinion "is potentially subject to confidentiality agreements and/or protective orders." Ex. 10 (7/13/07 letter from Abati to Lorenzini). Hancock's objection is not valid.

First, Hancock has not even established that "confidentiality agreements and/or protective orders" exist, remain in effect, and are applicable to the arbitrator's opinion in *Gen-Probe*. It merely has argued that the opinion is "potentially subject to confidentiality agreements and/or protective orders," while refusing to provide Abbott counsel with a copy of any such agreements or orders. Lorenzini Aff., ¶ 11, Ex. 9 (7/6/07 letter from Lorenzini to Abati). That is not sufficient for Hancock to even begin to meet its burden in resisting discovery of relevant evidence. *See Grynberg v. Total S.A.*, 2006 WL 1186836, *2 (D. Colo. May 3, 2006) (party's "objections based on confidentiality are carefully worded, stating only that disclosure of the [documents] 'would or may contravene' certain contractual confidentiality obligations. . . . There is no outright statement that the responsive materials are subject to the confidentiality provisions."); *Expeditors*, 2004 WL 406999 at *4 (referencing party's "conclusory and unsupported assertions" regarding protective orders in other cases); *United States v. Panhandle*

---

[5] Hancock has not disputed, and cannot dispute, that the *Gen-Probe* opinion is within its "possession, custody or control." It has acknowledged that its counsel in the present case, Mr. Davis, who also represented Bayer and Mr. Friedman in *Gen-Probe*, has a copy. Lorenzini Aff., ¶ 11, Ex. 9 at 3. It contends that Mr. Friedman does not have copy, Ex. 13 (7/31/07 email from Davis to Lorenzini). Even if that is true, Mr. Friedman could obtain a copy from his former client, Bayer, or his counsel, Mr. Davis, therefore, the opinion is within the indirect control of Hancock. *See Grynberg*, 2006 WL 1186836 at *5 (university transcript of a party's expert witness was within the party's "indirect control" because the expert is "engaged by [the party]" and the expect "can obtain a copy upon request from the university"). *See also Poole v. Textron, Inc.*, 192 F.R.D. 494, 501 (D. Md. 2000) (if a party "has the legal right or ability to obtain the documents from another source on demand, that party is deemed to have 'control.'").

*Eastern Corp.*, 118 F.R.D. 346, 349-50 (D. Del. 1988) (denying motion for order barring production of arbitration documents, where there was insufficient evidence of an applicable confidentiality agreement and specific harm that would result from production of the documents).

Second, even if confidentiality agreements or protective orders exist and are applicable to the *Gen-Probe* opinion, they likely include a provision allowing production of the opinion pursuant to legal process or with notice to, or consent of, the parties. During the meet and confer process, Hancock did not deny that the "potentially" applicable "confidentiality agreements and/or protective orders" include such provisions. Lorenzini Aff., ¶¶ 9, 11. Hancock has refused, however, to take whatever steps might be appropriate under the agreements or protective orders to facilitate production of the *Gen-Probe* opinion. *Id.* If the "potentially" applicable "confidentiality agreements and/or protective orders" allow production of the opinion pursuant to legal process, or if the parties to the *Gen-Probe* case are willing to consent to its production, then there is no obstacle to Hancock's production of the document.

Third, even if the "potentially" applicable "confidentiality agreements and/or protective orders" purported to bar production of the *Gen-Probe* opinion in response to legal process without consent of the parties, that would not trump Hancock's discovery obligations in this case. *Grynberg*, 2006 WL 1186836 at *2-3; *Expeditors*, 2004 WL 406999 at *4. There is a "substantial body of authority . . . holding that documents are not immune from discovery merely because they are subject to contracts requiring that they be maintained confidentially." *Grynberg*, 2006 WL 1186836 at 3. "Parties cannot create a privilege against civil discovery by mere written agreement." *Id.* Similarly, "protective orders should not be used as shields to resist the production of relevant information." *Expeditors*, 2004 WL 406999 at *4 (rejecting argument

11

that motion to compel expert documents should be denied because the documents were subject to protective orders). "[P]rotective orders are designed to encourage apprehensive litigants to produce responsive materials and should not be used as an excuse to avoid discovery." *Expeditors*, 2004 WL 406999 at *4. *See also In re Bankers Trust Co.*, 61 F.3d 465, 467-71 (6th Cir. 1995) (federal regulation was invalid to the extent that it purported to bar bank's production of confidential documents in response to a discovery request); *Merchants Bank v. Vescio*, 205 B.R. 37, 40-41 (D. Vt. 1997) (following *Bankers Trust*).[6]

Fourth, Hancock cannot meet its burden of establishing that production of the *Gen-Probe* opinion, *subject to the protective order in this case*, would result in harm that outweighs Abbott's right to discovery of relevant information. Production of the *Gen-Probe* opinion would not harm the competitive interests of the *Gen-Probe* parties, because the protective order in this case would protect any confidential information. The opinion could be designated "Confidential," which would bar its use outside of this litigation and require the parties to return or destroy the opinion at the conclusion of the case. Ex. 15 (Protective Order), ¶¶ 12, 23. Alternatively, the opinion could be designated "Highly Confidential," which would impose even stricter restrictions on use of the document. *Id.*, ¶¶ 13-14. If necessary, Abbott is even willing to consent to the redaction of any irrelevant and highly commercially sensitive text from the opinion to the extent such redaction does not reduce the understandability of the sections of the opinion relating to Mr. Friedman's testimony. Therefore, there is no basis for Hancock to withhold the *Gen-Probe* opinion. *See Grynberg*, 2006 WL 1186836 at *3 (ordering production of documents subject to confidentiality agreement and noting that the court "can address the

---

[6] Surely if a party cannot rely on a court-issued protective order or a federal regulation as a basis for refusing to respond to a request for production of documents, *see Expeditors*, 2004 WL 406999 at *4, *Bankers Trust Co.*, 61 F.3d at 467-71, it cannot rely on a private agreement or stipulated order entered by a private arbitrator.

confidentiality concerns, if any, through the existing [protective order] and additional limitations on the access to and use of the requested information." *See also Ares-Serano*, 151 F.R.D. at 219-20 (ordering production of documents over confidentiality objection and holding that existing protective order will provide adequate protection); *Expeditors*, 2004 WL 406999 at *4 ("even if I find that some confidentiality protection is warranted, this cannot serve as a proper basis to deprive [a party] of this discovery").

> D. **ABBOTT'S REQUEST FOR THE *GEN-PROBE* OPINION IS NOT "OUTSIDE THE SCOPE OF EXPERT DISCOVERY AGREED UPON BY ABBOTT AND HANCOCK"**

Abbott and Hancock agreed to certain limitations on expert discovery in this case (e.g., non-disclosure of draft expert reports), but did not limit the discoverability of documents relating to prior cases in which the experts were involved. Lorenzini Aff., ¶ 17, Ex. 14 (4/16/07 email from Lorenzini to Zwicker). Instead, Abbott and Hancock agreed that requests for such documents would be governed by the default Federal Rules of Civil Procedure. *Id.* As explained above, the *Gen-Probe* opinion is discoverable under the Federal Rules because it is relevant and production is not unduly burdensome.

> E. **ABBOTT'S NARROWLY TAILORED REQUEST FOR A SINGLE DIRECTLY RELEVANT OPINION IS NOT INCONSISTENT WITH ITS OBJECTION TO HANCOCK'S OVERBROAD AND BURDENSOME REQUEST FOR "ANY AND ALL COURT OR ARBITRATION OPINIONS, DECISIONS OR RULINGS THAT MENTION OF REFER TO" ABBOTT'S EXPERT WITNESS**

During the meet and confer process, Hancock argued that "Abbott objected to the production of *comparable documents* from Mr. Tucker on the same grounds" that Hancock cited for its refusal to produce the *Gen-Probe* opinion. Ex. 10 (7/13/07 letter from Abati to Lorenzini). In fact, however, Hancock never requested "comparable documents" from Mr. Tucker. Hancock propounded a blunderbuss request for "any and all court or arbitration

13

opinions, decisions or rulings that mention or refer to Mr. Tucker or any expert opinion that he has rendered." Unlike Abbott, Hancock did not limit its request to recent prior opinions in which the expert's testimony regarding similar subject matter was rejected. There is no comparison between Hancock's overbroad and burdensome request and Abbott's narrowly tailored request for a single opinion that is likely to be relevant to an assessment of the reliability and credibility of Hancock's damages expert. In any event, Hancock did not elicit any testimony that an opinion of Mr. Tucker regarding a similar issue was ever rejected by a court or arbitrator. Ex. 16 (Tucker Tr.) at 24-26.

## IV.    CONCLUSION

For the reasons stated above, Abbott respectfully requests that the Court order Hancock to produce a copy of the *Gen-Probe* opinion.

ABBOTT LABORATORIES

By its attorneys

/s/ Michael S. D'Orsi

Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

and

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Ozge Guzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
(213) 683-9100

Dated:  Aug. 1, 2007

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**

      The undersigned hereby certifies that Abbott counsel has conferred with counsel for Hancock and attempted in good faith the resolve or narrow the issues presented by this Motion.

Dated: Aug. 1, 2007

                                            /s/ Michael S. D'Orsi

**CERTIFICATE OF SERVICE**

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 1, 2007.

Date: Aug. 1, 2007

                                                    /s/ Michael S. D'Orsi