# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JOHN HANCOCK LIFE INSURANCE
COMPANY, JOHN HANCOCK VARIABLE
LIFE INSURANCE COMPANY, and
MANULIFE INSURANCE COMPANY (f/k/a
INVESTORS PARTNER INSURANCE
COMPANY),

        Plaintiffs,

        v.

ABBOTT LABORATORIES,

        Defendants.

CIVIL ACTION NO. 05-11150-DPW
Hon. Judge Douglas P. Woodlock

---

**AFFIDAVIT OF ERIC J. LORENZINI IN SUPPORT OF ABBOTT LABORATORIES'
MOTION TO COMPEL HANCOCK TO PRODUCE
ARBITRATOR'S OPINION REJECTING TESTIMONY OF HANCOCK'S DAMAGES
EXPERT REGARDING ALLEGED LOST PROFITS (PUBLIC REDACTED VERSION)**

I, Eric Lorenzini, hereby state under oath:

1.      I currently am employed as an associate at Munger, Tolles & Olson LLP, which

represents defendant Abbott Laboratories ("Abbott") in this action.  I submit this affidavit, and

the attached exhibits, in support of Abbott's Motion to Compel Hancock to Produce Arbitrator's

Opinion Rejecting Testimony of Hancock's Damages Expert Regarding Alleged Lost Profits.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Expert Report of

Alan Friedman, dated October 13, 2006.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Expert Report of

Avram S. Tucker of Navigant Consulting, Inc., dated January 19, 2007.

4.      Attached hereto as Exhibit 3 are true and correct copies of excerpts from the

transcript of the deposition of Alan Friedman taken on May 24, 2007.

5.      Attached hereto as Exhibit 4 is a true and correct copy of a letter that I sent to Brian Davis on June 11, 2007.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a letter dated June 12, 2007 that I received from Brian Davis.

7.      Attached hereto as Exhibit 6 is a true and correct copy of a letter that I sent to Brian Davis on June 14, 2007.

8.      Attached hereto as Exhibit 7 is a true and correct copy of a letter that I sent to Brian Davis on July 2, 2007.

9.      On July 2, 2007, I conferred by telephone with Rich Abati regarding production of the *Gen-Probe* opinion.  Mr. Abati confirmed that Brian Davis worked with Mr. Friedman in the *Gen-Probe* matter.  I asked Mr. Abati to provide us with a copy of the "potentially" applicable "confidentiality agreements and/or protective orders" so Abbott could assess the merits of Hancock's confidentiality objections.  I also asked whether the "potentially" applicable "confidentiality agreements and/or protective orders" contain provisions for production of documents pursuant to legal process or with notice to, and/or consent of, the parties, noting that such provisions are typical.  Mr. Abati agreed to investigate and respond to these questions.

10.     Attached hereto as Exhibit 8 is a true and correct copy of a letter dated July 5, 2007 that I received from Richard C. Abati.

11.     During the entire meet and confer process, Hancock never contended that Abbott's request for production of the *Gen-Probe* opinion was unduly burdensome.  In a telephone conference on or around July 6, Mr. Abati confirmed that Mr. Davis has a copy of the *Gen-Probe* opinion rejecting Mr. Friedman's testimony.  Despite repeated requests, Hancock

never responded to Abbott's request for a copy of the potentially" applicable "confidentiality agreements and/or protective orders" and never responded to Abbott's question regarding whether the agreements and/or orders include provisions for production of documents pursuant to legal process or with notice to, and/or consent of, the parties. Attached hereto as Exhibit 9 is a true and correct copy of a letter that I sent to Richard Abati on July 6, 2007.

12.    Attached hereto as Exhibit 10 is a true and correct copy of a letter dated July 13, 2007 that I received from Richard C. Abati.

13.    Attached hereto as Exhibit 11 is a true and correct copy of an email that I received from Richard C. Abati on July 25, 2007.

14.    Attached hereto as Exhibit 12 is a true and correct copy of a letter that I sent to Richard C. Abati on July 30, 2007.

15.    Attached hereto as Exhibit 13 is a true and correct copy of an email that I received from Brian Davis on July 31, 2007.

16.    In a telephone conference with Mr. Abati on July 18, 2007, I proposed that Hancock allow Abbott counsel to review the expert report Mr. Friedman submitted in *Gen-Probe* to evaluate Hancock's contention that the purported differences between the cases rendered the *Gen-Probe* opinion irrelevant. In a July 20, 2007 telephone conference, Mr. Davis rejected that proposal. Mr. Davis also indicated that he did not intend to ask the parties in the *Gen-Probe* case whether they would consent to production of the arbitrator's opinion. As a "compromise," Mr. Davis offered to stipulate that the arbitrator in *Gen-Probe* rejected Mr. Friedman's testimony regarding lost profits from sales of a medical diagnostic device. He indicated that the stipulation would state that Mr. Friedman did not use a "probabilistic damage analysis" in that case. Abbott declined Hancock's proposal, explaining that the proposed stipulation would not provide

significant information regarding the arbitrator's analysis of Mr. Friedman's testimony, thus would add little to the general deposition testimony already elicited from Mr. Friedman.

17.      Abbott and Hancock agreed to certain limitations on expert discovery in this case (e.g., non-disclosure of draft expert reports), but did not limit the discoverability of documents relating to prior cases in which the experts were involved.  Attached hereto as Exhibit 14 is a true and correct copy of an email I sent to Joseph Zwicker on April 16, 2007 that memorializes our agreement regarding expert discovery.

18.      Attached hereto as Exhibit 15 is a true and correct copy of the Stipulated Protective Order in this matter, filed July 1, 2005.

19.      Attached hereto as Exhibit 16 are true and correct copies of excerpts from the transcript of the deposition of Avram Tucker taken on Jun 27, 2007.


I affirm under pains and penalties of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed this 1st day of August, 2007, in Los Angeles, California.

　　　　　　　　　　　　　　　　　　____/s/ Eric J. Lorenzini_____

　　　　　　　　　　　　　　　　　　　　Eric J. Lorenzini

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

The undersigned hereby certifies that Abbott counsel has conferred with counsel for Hancock and attempted in good faith the resolve or narrow the issues presented by this Motion.

Dated:  August 1, 2007

_____ /s/ Michael S. D'Orsi _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 8, 2007.

Date: Aug. 8, 2007

_____ /s/ Michael S. D'Orsi _____

**EXHIBIT 1**

**CONFIDENTIAL - REDACTED**

**EXHIBIT 2**

**CONFIDENTIAL - REDACTED**

**EXHIBIT 3**

**CONFIDENTIAL - REDACTED**

**EXHIBIT 4**

MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

———————

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

June 11, 2007

WRITER'S DIRECT LINE
(213) 683-9207
(213) 593-2907 FAX
Eric.Lorenzini@mto.com

SENT BY E-MAIL & U.S. MAIL

Brian Davis
Choate, Hall & Stewart
Two International Place
Boston, MA  02110

Re:    *John Hancock v. Abbott Laboratories*

Dear Brian:

I am writing in response to your May 24, 2007 letter, which requested that Abbott amend its responses to certain interrogatories and produce certain documents. Abbott has confirmed that its responses to the interrogatories are accurate and complete, therefore, it has no plans to amend them. Your request for documents is overbroad, burdensome, untimely, calls for the production of irrelevant and highly confidential material, and is inconsistent with Hancock's failure to produce documents recently requested by Abbott. Nonetheless, Abbott would be willing to compromise regarding the document request on the terms described below.

<u>Interrogatories Nos. 6 & 8</u>

There is no need for Abbott to amend its responses to Interrogatories Nos. 6 and 8 of Hancock's First Set of Interrogatories. The interrogatories asked Abbott to describe the development status of ABT-518 and ABT-594 as of March 13, 2001, including "the expected development funding." In response, Abbott referenced documents that it had produced, or would produce, including the "March 2001 monthly compound [or project] status reports" ("MPSRs") and the "Development Cost Summar[ies] [or Annual Research Plans] . . . attached as Exhibit 1.6 to the Research Funding Agreement" ("ARPs"). These documents are sufficient to reflect

3079042.1

MUNGER, TOLLES & OLSON LLP

June 11, 2007
Page 2

Abbott's "expected development funding" on the compounds, as requested in the interrogatories. The MPSRs, internal Abbott documents prepared in the ordinary course of business, include projections of Abbott's "Development" "Cost[s] to NDA" for the compounds. (*See e.g.*, D'Amico Ex. 7 (March 2001 ABT-518 MPSR)). Similarly, the ARPs, which were provided to Hancock with the RFA, state Abbott's "Projected Spending by Year" for each compound. (RFA, Ex. 1.6).

You are wrong that Hancock's use of the undefined term "expected" in Interrogatories Nos. 6 and 8 means that Abbott must provide risk-adjusted cost estimates on each compound as of March 13, 2001. As Mr. Hendricks testified, in its internal decision analysis process, Abbott sometimes uses a technical term "expected cost" to refer to risk-adjusted expense estimates (i.e., its planned spending discounted based on the risk of not passing certain milestones) on a portfolio of compounds. (Hendricks Tr. at 110-14, 184-85, 195-98). Mr. Hendricks noted, however, that this is "a far less frequent understanding of the term" "expected" than its use in "common parlance." (*Id.* at 197:8-14). He explained that "on a project-by-project basis" the risk-adjusted expense estimate is not meaningful because it is a hypothetical number that does not reflect Abbott's planned or likely actual spending on the project. (*Id.* at 184:5-22, 194:19-195:15, 197:10-20). Abbott will either spend more or less than the risk-adjusted expense estimate, depending on whether a project passes a particular milestones, but it *will not* spend the risk-adjusted amount. (*Id.* at 184:1-22). Therefore, if the goal is to report "what will be spent next year, on a compound-by-compound basis, the risk adjusted or the decision analysis expected expense is not a good definition to use, because the expense is for sure to be wrong on that project." (*Id.* at 196:17-22). Accordingly, when Abbott internally "plan[s] for budgeting purposes, on a project-by-project [basis]," it generally "report[s] the expectations of spending" assuming that the compounds pass each milestone. (*Id.* at 197:15-17. *See also* D'Amico Ex. 7 (MPSR reporting non-risk adjusted projected spending on ABT-518)).

In response to Interrogatories Nos. 6 and 8, Abbott reported its "expected development costs" in the ordinary sense of the term because the interrogatories do not request Abbott's risk-adjusted expense estimates and Abbott's internal projected costs for particular compounds are generally not risk-adjusted. To the extent Abbott calculated risk-adjusted expense estimates for ABT-518 and ABT-594 at any point in time, the documents reflecting such calculations have been produced to Hancock, and Hancock has had a full opportunity to question Mr. Hendricks and other witnesses about that topic. (*See, e.g.*, Hendricks Tr. at 109-14).

You also are incorrect that the RFA requires Abbott to provide Hancock with its risk-adjusted projected spending on the Program Compounds. This issue is a subject of Hancock's complaint and this is not the appropriate time or place for a complete response, but a few points are worth noting. Section 1.6 defines the ARP as "a reasonably and consistently detailed statement of the . . . *budget* for the Research Program for every Program Year" and specifies that the first annual ARP is attached as Exhibit 1.6. (RFA, § 1.6 (emphasis added)). "[B]udget," in any ordinary sense of the word (and as used by Abbott and Hancock), refers to planned spending, not the risk-adjusted cost estimates Abbott sometimes calculates for specific decision analysis

3079042.1

MUNGER, TOLLES & OLSON LLP

June 11, 2007
Page 3

purposes. Furthermore, it is clear from the face of the first annual ARP -- which is attached as
Exhibit 1.6 to the RFA and incorporated by reference into the definition of ARP -- that the
parties did not intend to include risk adjusted expense estimates in the ARPs. The first annual
ARP simply refers to "Projected Spending by Year" through all milestones and makes no
mention of risk-adjusted expense estimates. (RFA, Ex. 1.6). Nor does Section 3.4 require
Abbott to report risk-adjusted expense estimates. Indeed, Section 3.4 does not impose any
reporting requirements, it simply cross-references the reporting requirements imposed by Section
1.6. Section 3.4 provides that Hancock may terminate Program Payments if Abbott does not
"reasonably demonstrate in its *Annual Research Plan*, its intent and reasonable expectation to
expend" certain amounts during the Program Term. (RFA, § 3.4) (emphasis added). As
discussed above, in the ARPs, Abbott is simply required to report its development "budget" for
each compound; the budget figures reported in the ARP reflected Abbott's "intent and
reasonable expectation" regarding development expenditures.

### Interrogatory No. 15

Even assuming, for the sake of argument, that Section 1.45 of the RFA defines the first
"Program Year" as March 13, 2001 to December 31, 2001, there is no need for Abbott to amend
its responses to Interrogatory No. 15. Interrogatory No. 15 does not ask Abbott to state its actual
spending during each *Program Year*. Instead, it simply asks for Abbott's "actual spending on
Program Related Costs for each Program Compound *during each year* of the four-year Program
Term (i.e., 2001 through and including 2004)[.]" Abbott's response to this Interrogatory is
accurate and complete. Abbott's response lists "its actual spending on Program Related Costs
for each of the Program Compounds for the period 2001-2005[.]" (Abbott's Responses &
Objections to Hancock's Second Set of Interrogatories, Response to No. 15). In addition, your
comments regarding Mr. Hendricks' testimony on this subject are misleading. Hancock's Rule
30(b)(6) deposition notice did not include any topics regarding Abbott's actual spending on the
Program Compounds in 2001 or its reporting of such expenditures to Hancock in the ARPs, and
Mr. Hendricks testified he had no personal knowledge of those subjects. (3/30/07 Notice of
Deposition of Abbott Laboratories; Hendricks Tr. at 121:15-123:2 (no participation in creation of
ARPs, except perhaps in 2005). Mr. Hendricks testified that in Abbott's general practice -- i.e.,
not specifically in the context of reporting cost figures pursuant to a contract with specialized
reporting terms -- the term "actuals" would refer to the total year's actual expenses. (Hendricks
Tr. at 124:23-125:3). Mr. Hendricks had no knowledge, however, of whether the "2001 Actuals"
in the 2003 ARP reflected full year spending because he was not involved with the creation of
that ARP and did not know how much Abbott actually spent on the Program Compounds in
2001. Furthermore, this issue is irrelevant, because Hancock's First Amended Supplemental
Complaint does not include any claims regarding alleged failure to report spending from March
13, 2001 to December 31, 2001 on the Program Compounds.

MUNGER, TOLLES & OLSON LLP

June 11, 2007
Page 4

### Request for Documents

We have confirmed that the minutes of the meetings of the Abbott Board of Directors do not contain any information regarding the Program Compounds or any other information responsive to your document requests.

The Operations Highlights presentations to the Abbott Board of Directors contain an overview of the operations of the entire corporation. The information in such documents is highly confidential and almost entirely irrelevant and non-responsive to Hancock's document requests. Hancock's request for such documents is overbroad and burdensome, in part because it is not bounded by time. In addition, Hancock first made this request after the discovery cut-off. Nonetheless, we would be willing to produce any Operations Highlights presentations from January 2000 to December 2002 that contain information regarding the Program Compounds, if: (1) Hancock agrees that Abbott may redact all text that does not concern the Program Compounds; and (2) Hancock produces the responsive documents it has withheld, the existence of which was revealed during the recent depositions of Mr. Blewitt and Mr. Friedman, namely the (a) the recent loan review documents, Monte Carlo simulations and other documents reflecting Hancock's projections regarding ABT-773 (*see* May 22, 2007 email from Lorenzini to Davis); (b) the arbitrator's opinion in *Gen Probe Incorporated v. Bayer Corporation* (*see* Rough Draft of Transcript of 5/24/07 Deposition of Alan Friedman Tr. ("Friedman Tr.") at 86-90); (c) documents reflecting the Monte Carlo calculations performed by Mr. Friedman (*see* Friedman Tr. at 142); (d) the calculations and analyses underlying Mr. Friedman's opinion regarding damages attributable to alleged misrepresentations concerning specific compounds (*see* Friedman Tr. at 310-11); (e) documents relied upon by Mr. Friedman in forming his opinions regarding Hancock's audit damages and/or reflecting his underlying calculations and analyses regarding those alleged damages (including the invoices from StoneTurn and Choate, Hall, and Stewart for audit-related work) (*see* Friedman Tr. at 321-22, 336-37); any (f) any other documents relied upon by Mr. Friedman in forming his opinions and/or reflecting the underlying calculations and analyses included in his final expert report, to the extent not already produced. Please let us know whether you accept that proposed compromise.

Sincerely,

Eric J. Lorenzini

EJL:mac1

3079042.1

**EXHIBIT 5**



CHOATE HALL & STEWART LLP

June 12, 2007

Brian A. Davis
(617) 248-5056
bad@choate.com

<u>BY ELECTRONIC AND OVERNIGHT MAIL</u>

Eric J. Lorenzini, Esquire
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue,  35th Floor
Los Angeles, CA 90071

Re:    John Hancock v. Abbott Laboratories
       <u>Open Discovery Issues</u>

Dear Eric:

I write to address certain open discovery issues, including those previously discussed in my letter to you dated May 24, 2007, in your letter to me dated yesterday, and in various e-mails on both sides.  Each issue is addressed separately below.

<u>Abbott's Responses to Various John Hancock Interrogatories</u>

Abbott refuses to amend its responses to John Hancock Interrogatory Nos. 6 and 8 in order to provide John Hancock with its "expected," as opposed to its "nominal," planned spending on each of the Program Compounds for each Program Year.  John Hancock has a reasonable basis for requesting this information because, *inter alia*, the Research Funding Agreement requires Abbott to "demonstrate in its Annual Research Plan its intent and *reasonable expectation* to expend" the amounts stated on Program Related Costs (emphasis added).   Furthermore, Paragraphs 31-32 of John Hancock's First Amended Supplemental Complaint specifically allege that Abbott has "misrepresented its 'intended and reasonably expected' expenditures on Program Related Costs" by providing John Hancock with its "nominal," as opposed to its "expected" spending numbers.  The fact that Abbott disagrees with John Hancock on this point is not grounds for Abbott simply to refuse to provide the information requested.  I propose that we conduct a meet and confer on this issue by telephone on Friday, June 15, at 2:00 EDT.  Please confirm that you will be available to talk on that date and time.

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
June 12, 2007
Page 2

Abbott refuses to amend its response to John Hancock Interrogatory No. 15 to provide Hancock with its actual expenditures on Program Related Costs during the first year of the four year Program Term, which is explicitly defined in the Research Funding Agreement as the period of time "commenc[ing] on the Execution Date [*i.e.*, March 13, 2001] and end[ing] on December 31, 2001." This information is directly relevant to John Hancock's claim that Abbott has failed to pay Hancock one-third of the Aggregate Carryover Amount, which is defined in the Research Funding Agreement as "the difference between [Abbott's] expenditures for Program Related Costs during the Program Term and the Aggregate Spending Target...." The amount of John Hancock's damages resulting from that breach of the Research Funding Agreement by Abbott will depend, in part, on the amount of Abbott's actual expenditures on Program Related Costs during the first year of the four year Program Term. Again, the fact that Abbott disagrees with John Hancock on this point is not grounds for Abbott simply to refuse to provide the information requested. I propose that we discuss this issue during our upcoming meet and confer.

<u>Abbott's Responses to John Hancock's Documents Requests</u>

You have represented that "the minutes of the meetings of the Abbott Board of Directors do not contain any information regarding the Program Compounds or any other information responsive to your document requests." Please confirm in writing that your representation includes any information pertaining to John Hancock or the Research Funding Agreement. If this is not agreeable to Abbott, I would like to discuss the issue during our upcoming meet and confer.

Your proposal regarding the Operations Highlights is not acceptable. To the extent that those Operations Highlights make any reference to John Hancock, the Research Funding Agreement, or either ABT-518, ABT-594 or ABT-773, they should have been produced by Abbott long ago. Furthermore, the parties already have entered into, and the Court already has approved, a Stipulated Protective Order that allows Abbott to designate and produce any non-public commercial information that it deems to be "particularly sensitive" as "Highly Confidential." If Abbott has a good faith reason to do so, it may designate and produce the Operations Highlights as "Highly Confidential" in accordance with the terms of the Stipulated Protective Order. John Hancock does not agree that Abbott may redact anything other than privileged information from the Operations Highlights before producing them in this litigation, particularly in light of the numerous inappropriate redactions that Abbott made in the course of John Hancock's attempted compliance audit. Please produce properly designate, unredacted copies of the Operations Highlights immediately. If Abbott is not willing to do so, I would like to discuss the issue during our upcoming meet and confer.

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
June 12, 2007
Page 3


Abbott's Rule 30(b)(6) Witnesses

With respect to Topic Nos. 7 and 8 of John Hancock's March 30, 2007 Rule 30(b)(6) Notice of Deposition, you have represented that Abbott "has no information regarding Abbott's valuation of ABT-518 and ABT-594 from the date of termination to the present." Please confirm in writing that your representation means that Abbott did not place any monetary value whatsoever on either ABT-518 or ABT-594 after it decided to terminate its further development of those Program Compounds. If Abbott is not willing to do so, I would like to discuss the issue during our upcoming meet and confer.

With respect to Topic No. 9 of John Hancock's March 30, 2007 Rule 30(b)(6) Notice of Deposition, we still are awaiting the documents that you have promised concerning this topic. Abbott is not entitled to avoid producing a Rule 30(b)(6) witness to testify on the issue simply by producing documents, but we will defer that fight until we see the documents that Abbott intends to produce. Please deliver them to our offices this week.

With respect to Topic Nos. 22 and 23 of John Hancock's March 30, 2007 Rule 30(b)(6) Notice of Deposition, you have represented that Abbott "has no additional information regarding the 'Initial Portfolio Prioritization' documents" beyond what it already has disclosed in its Responses and Objections to John Hancock's First Set of Requests for Admissions. Please confirm in writing that Abbott has surveyed all of the available known attendees at, and participants in, Abbott's March 7-9, 2001 and May 4-5, 2001 portfolio prioritization meetings, and that none of them recognizes or can provide any additional information whatsoever concerning the substance, origin or use of the Initial Portfolio Prioritization documents in any form, including without limitation as they appear in Leonard Deposition Exhibit Nos. 60, 61, 65 and 66. If this is not agreeable to Abbott, I would like to discuss the issue during our upcoming meet and confer.

With respect to Topic No. 24 of John Hancock's March 30, 2007 Rule 30(b)(6) Notice of Deposition, to our knowledge Abbott never designated a Rule 30(b)(6) witness to testify on its behalf concerning that topic. If Abbott did designate such a witness, please identify the witness, the date on which he or she was designated by Abbott, and the means by which he or she was designated by Abbott. Unless and until Abbott can produce that information, John Hancock has the right to, and intends to, go forward with a Rule 30(b)(6) deposition of Abbott on Topic No. 24. If Abbott is not willing to make a witness available, I would like to discuss the issue during our upcoming meet and confer.

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
June 12, 2007
Page 4


Mr. Tucker's Documents

John Hancock first noticed Mr. Avram Tucker on May 29, 2007, and included in its Notice of Deposition a list of documents to be produced by Mr. Tucker. Abbott agreed to produce various requested documents in its Responses and Objections to Hancock's Notice of Deposition of Avram Tucker, served on June 4, 2007. We still are awaiting the production of those documents. Given the current uncertainty regarding the date of Mr. Tucker's deposition, please ensure that copies of his documents are delivered to our offices no later than noontime on Friday, June 15, 2007.

Abbott's Requests for Additional Documents from Alan Friedman

We are reviewing your requests for additional documents from Alan Friedman and will respond to those requests by sometime early next week. With respect to your request for "the arbitrator's opinion in *Gen-Probe Incorporated v. Bayer Corporation*," however, I do not understand why Abbott believes that it is entitled to a copy of that document when Abbott has objected to John Hancock's request for comparable documents from Mr. Tucker on the grounds, *inter alia*, that Hancock's request is "not reasonably calculated to lead to relevant evidence, potentially subject to confidentiality agreements and/or protective orders, and outside the scope of expert discovery agreed upon by Abbott and Hancock." Please explain the reason for Abbott's apparent inconsistency on this point.

Thank you, in advance, for your anticipated cooperation. I look forward to speaking with you this week on the specific topics about which we have requested a meet and confer.

Very truly yours,

Brian A. Davis

cc:    Gregory D. Phillips, Esq. (by electronic and regular mail)
       Peter E. Gelhaar, Esq. (by regular mail)
       Michael S. D'Orsi, Esq. (by regular mail)
       Joseph H. Zwicker, Esq.

4221172.1

**EXHIBIT 6**

# MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

———

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

June 14, 2007

WRITER'S DIRECT LINE
(213) 683-9207
(213) 593-2907 FAX
Eric.Lorenzini@mto.com

**SENT BY E-MAIL & U.S. MAIL**

Brian Davis
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

Re:     *John Hancock v. Abbott Laboratories*

Dear Brian:

In your June 12, 2007 letter, you suggest that we meet and confer by telephone on June 15 at 2:00 EST regarding "the specific topics about which [you] have requested a meet and confer." We would be glad to meet and confer at that time, provided that you agree to meet and confer at the same time regarding Abbott's requests to Hancock as described in my June 7 email, June 11 letter, and this letter.

I'll briefly respond to some of the points raised in your June 12 letter in order to clarify the issues for resolution in our telephone conference.

**Interrogatories Nos. 6 & 8**

Your letter states that "[t]he fact that Abbott disagrees with John Hancock" on the issue of whether the RFA requires Abbott to report its risk-adjusted spending, "is not grounds for Abbott simply to refuse to provide the information requested." This is a complete misrepresentation of Abbott's position, as that position was stated in my letter of June 11. While Abbott certainly does disagree with Hancock's interpretation of this contract provision, that is not the basis for our position that a supplemental interrogatory response is unnecessary. As I

MUNGER, TOLLES & OLSON LLP

June 14, 2007
Page 2

explained in my letter, the responses to Interrogatories Nos. 6 and 8 stated Abbott's "expected
development costs" in the ordinary sense of the term because the interrogatories do not request
Abbott's risk-adjusted expense estimates and Abbott's internal expense projections generally are
not risk-adjusted. To the extent Abbott calculated risk-adjusted expense estimates for ABT-518
and ABT-594 at any point in time, the documents reflecting such calculations have been
produced to Hancock, and Hancock has had a full opportunity to question Mr. Hendricks and
other witnesses on that topic. (*See, e.g.*, Hendricks Tr. at 109-14).

### Interrogatory No. 15

With respect to Interrogatory No. 15, you again misrepresent Abbott's position -- stating
in your letter that "the fact that Abbott disagrees with John Hancock on this point is not grounds
for Abbott simply to refuse to provide the information requested." While Abbott certainly does
disagree with Hancock's suggestion that its reporting of 2001 spending breached the RFA, that is
not the basis for its position that its response to Interrogatory No. 15 is complete and accurate.
As explained in my June 11 letter, Interrogatory No. 15 does not ask Abbott to state its actual
spending during each *Program Year*. Instead, it simply asks for Abbott's "actual spending on
Program Related Costs for each Program Compound *during each year* of the four-year Program
Term (i.e., 2001 through and including 2004)[.]" Hancock never propounded an interrogatory
asking that Abbott state its spending during each Program Year. It cannot make up for its failure
by attempting to revise an existing interrogatory after the discovery cut-off. Furthermore, this
issue is irrelevant, because Hancock's First Amended Supplemental Complaint does not include
any claims regarding alleged failure to report spending from March 13, 2001 to December 31,
2001 on the Program Compounds.

### Request for Documents

We confirm that the minutes of the meetings of the Abbott Board of Directors do not
contain any information regarding the Program Compounds, John Hancock, or the Research
Funding Agreement ("RFA").

As explained in my June 11 letter, the Operations Highlights presentations to the Abbott
board consist almost entirely of information completely unrelated to the Program Compounds,
absolutely irrelevant to any issue in this case, non-responsive to Hancock's document requests,
and very competitively sensitive. There are only a few bullet points on a few of these documents
that relate in any way whatsoever to the Program Compounds or are in any way potentially
responsive to Hancock's requests. There is no mention of Hancock or the RFA. As explained in
my letter, we are willing to produce these documents in exchange for Hancock's production of
responsive documents it has withheld. But, in light of the great commercial sensitivity of the
documents, we would insist on redacting the text that is non-responsive and irrelevant. This is
consistent with the practice followed by Hancock, which redacted commercially sensitive and
irrelevant information from the minutes of its board meetings. Of course, we also strongly
dispute your unsupported allegation that Abbott made "numerous inappropriate redactions" in

MUNGER, TOLLES & OLSON LLP

June 14, 2007
Page 3

the audit. Abbott believes that its redactions in the audit were proper and appropriate. On our call on Friday, I will be glad to describe the contents of the Operations Highlights generally and describe our intended redaction guidelines to assure you that we will not redact anything at all responsive or relevant.

### Rule 30(b)(6) Witnesses

*Topics 7 and 8*

In my June 7, 2007 email to you, I confirmed (for the second time) that "Abbott has no information regarding Abbott's valuation of ABT-518 and ABT-594 from the date of termination to the present" because "Abbott has not conducted any such valuations." Your letter asks Abbott to "confirm in writing that your representation means that Abbott did not place any monetary value whatsoever on either ABT-518 or ABT-594 after it decided to terminate further development of those Program Compounds." Of course, as is obvious from my June 7 email, that is not what our representation means. Abbott does *not* represent that it believed the compounds were of no monetary value whatsoever after it terminated their development, but rather that it did not conduct any valuations of the compounds from the date of termination to the present.

*Topic 9*

We are in the process of gathering the information regarding Abbott's post-termination valuation of ABT-773 and expect to be able to provide it to you next week.

*Topics 22 and 23*

As we've explained numerous times, Abbott only located a single copy of each of the "Initial Portfolio Prioritization" documents, on the computer of Mr. Leiden. We provided Hancock with the metadata, which indicated that the document was created by McKinsey and Company and included the creation date. Since the document apparently was not distributed beyond Dr. Lieden, no one else is likely to have any information regarding it. Hancock has had an opportunity to question numerous witnesses who attended the portfolio review meeting, including, most recently and among others, Dr. Leiden, Mr. Hendricks, Dr. Bukofzer, and Dr. Leonard, and none recalled ever seeing it. As explained in my June 7 email, Dr. Leonard was designated and fully prepared to testify regarding the information known and reasonably available to Abbott regarding Topics 22 and 23. For some reason, Hancock chose not to expressly question Dr. Leonard regarding these topics or his preparation for deposition on the topics (although it did question him extensively regarding the "Initial Portfolio Prioritization" document). Abbott has no obligation to represent that it has "surveyed all of the available known attendees at, and participants in, Abbott's March 7-9, 2001 and May 4-5, 2001 portfolio prioritization meetings" to confirm that they cannot provide "any additional information whatsoever concerning the substance, origin or use of the Initial Portfolio Prioritization

3079042.1

MUNGER, TOLLES & OLSON LLP

June 14, 2007
Page 4

documents." Abbott has completely fulfilled its obligations to adequately prepare and produce a witness to testify on Topics 22 and 23.

*Topic 24*

With respect to Topic 24 (the Analgesia Venture presentation), Hancock has had the opportunity to depose numerous witnesses who are listed as recipients of this document. (11/30/06 Leonard Tr. 192-203; 6/1/07 Leonard Tr. (Rough Draft) at 3-5; 3/16/07 McCarthy Tr. at 125-130; Woidat Tr. at 38-72). We also believe you were notified of Mr. Leonard's designation as Abbott's representative on Topic 24 prior to his continued deposition, although we have not yet been able to locate a written record of the notice. In any event, Dr. Leonard provided notice at the very beginning of his continued deposition that he had prepared to testify as a corporate representative on this subject by talking to two other recipients of the document, Michael Comilla and Michael Biarnesen. (6/1/07 Leonard Tr. (Rough Draft) at 3-5). Abbott has no significant information regarding Topic 24, other than the information provided in the depositions of Dr. Leonard, Dr. McCarthy, and Mr. Woidat. We have contacted all persons who we believe, after a diligent investigation, might have authored the document, and none have any recollection of authoring it. Also, the document was collected in paper form, so we have no metadata that would indicate the author. We have spoken to several recipients of the document, including Dr. Leonard, Mr. Woidat, Mr. Comilla, and Mr. Biarnesen and none had anything substantive to add to the testimony of Mr. Woidat, Dr. McCarthy, and Dr. Leonard. Accordingly, we believe we have satisfied our obligation with respect to Topic 24.

**Mr. Tucker's Documents**

The deposition of Mr. Tucker is scheduled for June 27. The documents we agreed to produce in response to Hancock's request will probably not be ready by this Friday, but we will produce them as soon as possible next week.

**Abbott's Request For Responsive Documents Withheld by Hancock**

My June 11 letter renewed Abbott's request for documents that are responsive to Abbott's prior requests and have been improperly withheld by Hancock, the existence of which was revealed during the recent depositions of Mr. Blewitt and Mr. Friedman. Your letter states that Hancock is "reviewing [Abbott's] requests for additional documents from Alan Friedman and will respond to those requests by sometime early next week." There is no reason to delay your response until next week -- the documents requested from Mr. Friedman are clearly relevant and responsive to requests that Abbott served on Hancock and that Hancock agreed to produce, so it should not be difficult to agree to produce the documents and set a date for production early next week. It is important that we have these documents by next Wednesday, because they may be relevant for the deposition of Mr. Tucker. With respect to Abbott's request for the *Gen-Probe* opinion, there is no inconsistency between Abbott's narrowly tailored request for a single opinion rendered in one of Mr. Friedman's prior cases -- in which an arbitrator rejected his

MUNGER, TOLLES & OLSON LLP

June 14, 2007
Page 5

methodology in a similar situation (calculating alleged lost profits from investment in pharmaceutical development) as overly speculative -- and Abbott's objection to Hancock's blunderbuss request for "[a]ny and all court or arbitration opinions, decisions or rulings that mention or refer to Mr. Tucker or any expert opinion that he has rendered." Hancock's request is, among other things, overbroad, burdensome, and not reasonably calculated to lead to discoverable evidence.

Your letter does not respond to our request for responsive documents that have been withheld by Hancock and were not disclosed until the recent deposition of Mr. Blewitt. These are documents that Hancock should have produced long ago. Please confirm that you will produce these document no later than June 20, since they may be relevant in preparing for the deposition of Mr. Tucker.

As explained in my June 11 letter, Abbott's production of the Operations Highlights presentations is contingent on Hancock's production of the responsive documents that were revealed at the recent depositions of Mr. Blewitt and Mr. Friedman.

### Hancock's Response to Interrogatories

Interrogatory No. 2 asks Hancock to "describe with particularity" all documents that it alleges Abbott failed to produce during the audit. Hancock's response is wholly inadequate -- Hancock merely refers to the two lists of categories of documents *requested* by Hancock. It does not identify *with particularity* any documents that Hancock alleges were requested and should have been produced, but were *not produced*. In addition, Hancock has failed to provide any response to the questions in Interrogatories No. 3, 5, 6, and 7 of Abbott's First Set of Interrogatories regarding when and how Hancock first learned of each alleged breach, misrepresentation, or omission. This information is expressly called for by the interrogatories, clearly relevant, and within Hancock's knowledge, therefore, there is no basis for your refusal to answer. Please agree that you will amend your responses by the end of next week to provide this information.

Please confirm that you will meet and confer regarding our recent requests to Hancock (as described in my June 7 email, June 11 letter, and this letter), as well as Hancock's requests, on our telephone conference call on Friday at 2:00 EST. Assuming we receive that confirmation, I look forward to speaking with you at that time.

Sincerely,

Eric J. Lorenzini

EJL:mac1

3079042.1

**EXHIBIT 7**

MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

July 2, 2007

WRITER'S DIRECT LINE
(213) 683-9207
(213) 593-2907 FAX
Eric.Lorenzini@mto.com

**SENT BY E-MAIL**

Brian Davis
Choate, Hall & Stewart
Two International Place
Boston, MA  02110

Re:  *John Hancock v. Abbott Laboratories*

Dear Brian:

I am following up on our meet-and-confer telephone conference on June 15, 2007.  I will not take time here to reiterate our positions on the issues, which are described in my June 11 and 14 letters and June 7 email.  Instead, I will summarize new ground that was covered in the telephone conference and set forth our responses to your proposals.

**Interrogatories Nos. 6 and 8**

During the call, I reiterated that there is no need for Abbott to amend its responses to interrogatory Nos. 6 and 8 to provide its risk-adjusted spending projections as of March 13, 2001 because the interrogatory does not request that information.  Also, I noted that to the extent Abbott has any documents reflecting risk-adjusted spending projections for the Program Compounds as of March 13, 2001, it has produced them and Hancock has had an opportunity to examine Abbott witnesses regarding those documents.

You proposed that Abbott (a) provide confirmation that it has produced all documents reflecting risk-adjusted spending for the Program Compounds as of March 13, 2001;

3185976.2

MUNGER, TOLLES & OLSON LLP

July 2, 2007
Page 2

(b) identify those documents by Bates number; and (c) confirm that it has no additional data regarding risk-adjusted spending projections for the Program Compounds as of March 13, 2001.

Abbott has no obligation to provide the additional information and representations that Hancock requests. In December 2005, Abbott fully answered Hancock's interrogatories regarding expending spending by referencing the spending projections in the Annual Research Plans and monthly program status reports. Hancock did not raise any objection to Abbott's responses at the time. Now, one and a half years later, Hancock is attempting to revise the interrogatories to seek new information. This is improper -- discovery operates according to rules -- if Hancock wanted to ask this information in an interrogatory, it should have done so long ago. Nonetheless, Abbott will voluntarily confirm that it has produced all documents reflecting risk-adjusted spending projections for the Program Compounds as of March 13, 2001 that could be located after a reasonable search.

### Interrogatories No. 15

When we spoke, I noted that Hancock's Interrogatory No. 15 did not ask Abbott to state its spending from March 13, 2001 to December 31, 2001 or during each Program Year. Instead, it asked for Abbott's actual spending "*during each year* of the *four-year* Program Term (i.e., *2001 through and including 2004*)[.]" (emphasis added). You contended that the definition of Program Year is incorporated by reference into the definition of Program Term and, therefore, it would have been redundant to ask Abbott to state its actual spending from March 13, 2001 to December 31, 2001 or during each "Program Year." Contrary to your contention, it would not have been redundant and, indeed, the entire structure of the interrogatories shows that Hancock actually requested that Abbott report its spending on a calendar year basis. First, the interrogatory describes the relevant time frame as a "four-year" period, not a period of three years and nine and a half months. Second, it asks Abbott to state its spending during "each year" of that period, rather than each Program Year. Third, it expressly requests that Abbott state its actual spending from "2001 through and including 2004," rather than March 13, 2001 through December 31, 2004.

During the long period of discovery, Hancock never propound an interrogatory asking for Abbott's actual spending from March 13, 2001 to December 31, 2001. Now that the discovery period has ended, Hancock cannot belatedly revise its interrogatories to seek information it could have sought earlier.

### Request for Documents

During our telephone call, we resolved the issue of your request for responsive minutes of the meetings of the Abbott board of directors. I reiterated that we reviewed the minutes of the meetings of the Abbott Board of Directors from 2000 to 2002 and they do not contain any information regarding the Program Compounds, John Hancock, or the Research Funding

3185976.2

MUNGER, TOLLES & OLSON LLP

July 2, 2007
Page 3

Agreement ("RFA"). Based on that representation, you agreed not to pursue production of these non-responsive documents.

I explained that we reviewed the Operations Highlights presentations from 2000 to 2002 and that a handful contain some responsive information, but that the vast majority of the documents are highly confidential and irrelevant. I explained that presentations created prior to 2000 and after 2002 are unlikely to contain any responsive information. You agreed that there was no need to review Operation Highlights presentations before 2000 or after 2002. We proposed to produce any responsive Operations Highlights presentations with redaction of all non-responsive and irrelevant text. You proposed that Abbott produce the documents with redaction of non-responsive text in all sections of the document except the "Pharmaceuticals" section. We continue to believe your request is unreasonable, since the material that we propose to redact in the "Pharmaceuticals" section is totally irrelevant. We are willing, however, to continue to discuss this issue to try to find a compromise solution. Perhaps we could leave the beginning portion of each bullet point in the "Pharmaceuticals" section of the presentation unredacted so you can see for yourself that it concerns a drug or compound other than the Program Compounds.

### Rule 30(b)(6) Witnesses

*Topics 7 and 8*

We have already represented to you that Abbott did not conduct any valuations of ABT-518 and ABT-594 from the date of termination to the present. During the meet-and-confer, you asked whether, for accounting purposes, Abbott assigned any value to ABT-518 or ABT-594 on its books after termination of development. I said that I would need to confirm, but that I did not believe it did so. You agreed that if Abbott confirmed that fact, Hancock would be satisfied that Abbott had fulfilled its obligations with respect to this deposition topic. We expect to be able to provide that confirmation this week.

*Topic 9*

It has taken a little longer than expected to gather the information regarding Abbott's post-termination valuation of ABT-773. We expect to produce the documents today.

*Topics 22 and 23*

We strongly disagree with your contention that Dr. Leonard was not adequately prepared to testify regarding Topics 22 and 23. In an attempt to resolve this issue, however, we agreed to disclose the names of the Abbott employees that we contacted regarding the Initial Portfolio Prioritization document. You reserved your right to request that we contact additional employees regarding the document and we reserved our right to oppose any such request.

3185976.2

MUNGER, TOLLES & OLSON LLP

July 2, 2007
Page 4

As you know, we only located a single copy of the Initial Portfolio Prioritization - on the hard drive of Dr. Leiden's computer -- and provided you with the metadata. Nevertheless, we also spoke to Stanley Bukofzer, Keith Hendricks, John Leonard, Jim Looman, Michael Meyer, Carol Meyer, Azmi Nabulsi, Jim Thomas, and Thomas Woidat to see if they had any information regarding the document. In addition, although we are not obligated to seek information from non-employees, we spoke to Jeffrey Leiden and Bruce McCarthy. None of these individuals had any recollection of ever seeing the document. Our preparation of Dr. Leonard on Topics 22 and 23 was more than adequate, particularly in light of the fact that the Initial Portfolio Prioritization document was not located in the files of anyone other than Dr. Leiden.

*Topic 24*

In my June 14 letter, I stated that Abbott had "no significant information regarding Topic 24 (the Analgesia Venture presentation), other than the information provided in the depositions of Dr. Leonard, Dr. McCarthy, and Mr. Woidat. In the call, I explained that I actually was not aware of *any* additional information regarding the document, whether significant or insignificant. You agreed to withdraw your request regarding Topic 24 if Abbott could confirm that it had no information regarding Topic 24 (the Analgesia Venture presentation), other than the information provided in the depositions of Dr. Leonard, Dr. McCarthy, and Mr. Woidat. We have investigated further and can now make that representation.

**Abbott's Request For Responsive Documents Withheld by Hancock**

We continue to request that Hancock produce the *Gen-Probe* opinion that was discussed in the deposition of Mr. Friedman. Abbott's narrowly targeted request is not in any way comparable to Hancock's overbroad and burdensome request for reports and testimony by Mr. Tucker. Please let us know if and when Hancock will produce the *Gen-Probe* opinion.

**Hancock's Response to Interrogatories**

Hancock agreed to supplement its response to Interrogatory No. 2 to "describe with particularity" all documents that it alleges Abbott failed to produce during the audit.

We asked Hancock to amend its responses to Interrogatories No. 3, 5, 6, and 7 of Abbott's First Set of Interrogatories to state when and how Hancock first learned of each alleged breach, misrepresentation, or omission. You noted that Hancock had already supplemented its response to Interrogatories No. 5 and 6, and would supplement its response to Interrogatories No. 3 and 7 to state when and how Hancock first learned of each alleged breach, misrepresentation, or omission. You also implied that Hancock was considering supplementing its responses to other parts of these interrogatories, on subjects other than the time and manner that Hancock learned of the alleged breaches and misrepresentations. I explained that any such amendments should have been provided long ago. I reiterated that we reserve our right to seek relief --

MUNGER, TOLLES & OLSON LLP

July 2, 2007
Page 5

including exclusion of evidence -- for Hancock's failure to seasonably amend its interrogatory responses as required by the Federal Rules.

### Abbott's Response to Interrogatories

During our call, you also made new requests regarding Abbott interrogatory responses that we had not planned to discuss.

*Interrogatories No. 6 and 8*

During our call -- one and a half years after Abbott served its objections and responses to Interrogatories No. 6 and 8 -- you requested for the first time that Abbott amend its responses to provide additional information regarding the development status of ABT-518 and ABT-594 as of March 13, 2001. Hancock's request is not well-taken. As Abbott noted in its original objections, these interrogatories are overly broad and unduly burdensome. Abbott's interrogatory responses referenced some of the key documents reflecting the status of the compounds and noted that additional information would be available to Hancock in the depositions and document production. Since that time, Hancock has deposed 23 witnesses -- several for more than one day -- regarding the development status of these compounds as of March 13, 2001. It also has access to thousands of documents produced by Abbott that reflect the status of the compounds. Accordingly, Abbott has fulfilled its obligations under the Rules with respect to Interrogatories No. 6 and 8.

*Interrogatory No. 10*

You requested that Abbott amend its response to Interrogatory No. 10 to include any additional information regarding Abbott's efforts to out-license ABT-518 and ABT-594. The Rules only require parties to amend an interrogatory response "if the additional or correction information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. Proc. 26(e)(2). Additional information regarding Abbott's efforts to out-license ABT-518 and ABT-594 has already been made known to Hancock through Abbott's responses to Interrogatories No. 18 and 19 in Hancock's Third Set of Interrogatories, the depositions of Abbott witnesses, and Abbott's document production. Therefore, we have no obligation to amend our response to Interrogatory No. 10 at this time.

*Interrogatory No. 16 and 17*

Interrogatories No. 16 and 17 asked Abbott to identify which statements in Section 12.2 of the RFA, if any, were untrue or inaccurate, and why. Abbott objected on multiple grounds, including that a response would necessarily involve disclosure of attorney work product. Nearly a year ago (soon after Munger Tolles & Olson substituted in as counsel for Abbott), we met-and-conferred with you regarding these interrogatories and you decided not to move to compel.

MUNGER, TOLLES & OLSON LLP

July 2, 2007
Page 6

There is no point in revisiting this issue.  All of our objections to these interrogatories remain as valid as ever, therefore, we will not amend our responses.

Sincerely,

Eric J. Lorenzini

EJL:mac1

3185976.2

**EXHIBIT 8**

# C|H|O|A|T|E|

CHOATE HALL & STEWART LLP

July 5, 2007

Richard C. Abati
(617) 248-5076
rza@choate.com

BY ELECTRONIC AND OVERNIGHT MAIL

Eric J. Lorenzini, Esquire
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Re:    John Hancock et al. v. Abbott Laboratories
       Open Discovery Issues

Dear Eric:

I write to address certain open discovery issues, including those previously discussed in various letters and e-mails from both sides. Set forth below is John Hancock's understanding of our meet and confer process.

Abbott's Responses to Interrogatory Nos. 6 and 8

Abbott has refused to amend its responses to John Hancock's Interrogatory Nos. 6 and 8 in order to provide John Hancock with its "expected," as opposed to its "nominal," planned spending on each of the Program Compounds for each Program Year. Instead, Abbott has offered to "confirm that it has produced all documents reflecting risk-adjusted spending projections for the Program Compounds as of March 13, 2001 that could be located after a reasonable search." Letter from Eric Lorenzini to Brian Davis dated July 2, 2007 at 2. John Hancock understands the terms "expected" and "risk-adjusted" to mean the same thing in the context of Abbott's spending projections for the Program Compounds.

For the sake of compromise, John Hancock will agree to accept the foregoing representation *provided* Abbott confirms specifically that it has produced all documents reflecting its "expected" or "risk-adjusted" spending projections for the Program Compounds referred to as "Exp. R&D Cost" in the following (and other) documents: ABBT 3192; ABBT 3362; ABBT 280503; ABBT 292826; ABBT 292250; ABBT 292231; ABBT 293308; ABBT 292089; ABBT 292773; ABBT 293538; ABBT 318090; and ABBT 318260. John Hancock also has requested that Abbott produce legible copies of these documents (to the extent feasible). Please let me know by the end of business tomorrow, July 6, 2007, whether Abbott accepts this compromise.

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
July 5, 2007
Page 2

Otherwise, John Hancock will promptly seek to protect its rights by moving to compel supplemental responses to Interrogatory Nos. 6 and 8.

In addition, with respect to additional disclosures by Abbott regarding the development status of ABT-518 and ABT-594 as of March 13, 2001, I hereby acknowledge your representation that Abbott has disclosed all information reasonably within its custody and control by its document productions and by its witnesses in depositions taken to date.

Abbott's Response to Interrogatory No. 10

Based on Abbott's responses to Interrogatory Nos. 18 and 19, John Hancock hereby withdraws its request that Abbott amend its response to Interrogatory No. 10.

Abbott's Response to Interrogatory No. 15

Abbott has refused to amend its response to John Hancock Interrogatory No. 15 to provide John Hancock with its actual expenditures on Program Related Costs during the first year of the four year Program Term, which is explicitly defined in the Research Funding Agreement as the period of time "commenc[ing] on the Execution Date [*i.e.*, March 13, 2001] and end[ing] on December 31, 2001." According to Abbott, "Hancock actually requested that Abbott report its spending on a calendar year basis." July 2, 2007 Letter at 2. John Hancock views this as an unreasonable interpretation of Interrogatory No. 15 aimed at denying John Hancock access to plainly relevant information. The parties have satisfied their meet and confer obligations and the issue is ripe for the Court's consideration.

Abbott's Response to Interrogatory Nos. 16 and 17

Abbott has refused to amend its responses to John Hancock Interrogatory Nos. 16 and 17. Abbott should be required to disclose any material facts regarding the Compounds known to Abbott as of March 13, 2001 that were not disclosed to John Hancock. John Hancock reserves all of its rights with respect to this discovery.

Abbott's Responses to John Hancock's Documents Requests

The parties have endeavored to reach a compromise regarding Abbott's production of certain "Operations Highlights" presentations from 2000 to 2002. Most recently, Abbott has agreed to produce any "responsive Operations Highlights with redaction of non-responsive and irrelevant text." July 2, 2007 Letter at 3. In response to John Hancock's concerns about the redaction of certain material which appears in the "Pharmaceuticals" section of these documents, Abbott has offered to "leave the

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
July 5, 2007
Page 3

beginning portion of each bullet point" in this section when producing these documents. In an effort to avoid needless motion practice, and subject to a full reservation of rights to request unredacted versions of Abbott's Operations Highlights presentations, John Hancock accepts Abbott's offer.

<u>John Hancock's Rule 30(b)(6) Notice</u>

*Topics 7 and 8*

Abbott has represented that it "did not conduct any valuations of ABT-518 and ABT-594 from the date of termination to present." July 2, 2007 at 3. For the sake of compromise, John Hancock has agreed to accept this representation *provided* Abbott confirms further that it never valued either compound as an asset on its corporate books and records. John Hancock awaits this confirmation.

*Topics 22 and 23*

Based on Abbott's representation that, based on its due diligence in the discovery of this matter, John Leonard's testimony reflects all of Abbott's collective knowledge regarding the creation of, analysis reflected in, or actions taken by Abbott in connection with the "Initial Portfolio Prioritization" document, the parties have reached a compromise on Topics 22 and 23.

<u>Abbott's Request for the *Gen Probe* Opinion</u>

Abbott has requested a copy of "the *Gen-Probe* opinion that was discussed in the deposition of [Alan] Friedman." July 2, 2007 Letter at 4. John Hancock has rejected this request on the grounds that it is not reasonably calculated to lead to relevant evidence, is potentially subject to confidentiality agreements and/or protective orders, and is outside the scope of expert discovery agreed upon by Abbott and John Hancock. John Hancock has pointed out on several occasions that Abbott objected to the production of comparable documents from Mr. Tucker on the same grounds. In an effort to elaborate on the irrelevance of the requested document to this litigation, however, John Hancock also disclosed that the *Gen Probe* matter did not involve John Hancock or the pharmaceutical industry. In a further effort to resolve this request, John Hancock now identifies the litigants in the *Gen Probe* matter: Gen-Probe Incorporated; Bayer Corporation; and Bayer HealthCare LLC. Please let me know by the end of business tomorrow, July 6, 2007, whether Abbott still wishes John Hancock to produce this irrelevant document.

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
July 5, 2007
Page 4


<u>John Hancock's Responses to Abbott's Interrogatory Nos. 2, 3 and 7</u>

John Hancock has agreed to supplement its responses to Interrogatory Nos. 2, 3 and 7 on July 13, 2007.

Very truly yours,

Richard C. Abati

cc:    Jeffrey Weinberger, Esq. (by electronic and regular mail)
       Gregory D. Phillips, Esq. (by electronic and regular mail)
       Ozge Guzelsu, Esq. (by electronic and regular mail)
       Peter E. Gelhaar, Esq. (by regular mail)
       Michael S. D'Orsi, Esq. (by regular mail)
       Brian A. Davis, Esq.
       Joseph H. Zwicker, Esq.
       Karen Collari Troake, Esq.

**EXHIBIT 9**

MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

July 6, 2007

WRITER'S DIRECT LINE
(213) 683-9207
(213) 593-2907 FAX
Eric.Lorenzini@mto.com

SENT BY E-MAIL

Richard C. Abati
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

Re:    *John Hancock v. Abbott Laboratories*

Dear Rich:

I am in receipt of your July 5, 2007 letter setting forth "John Hancock's understanding of our meet and confer process." Below are our responses, as well as some corrections and clarifications to your summary of the meet-and-confer process.

### Abbott's Response to Interrogatory Nos. 6 and 8

To clarify, Abbott has not refused to provide John Hancock with its "expected" spending on the Program Compounds. Abbott's interrogatory responses reference documents that reflect Abbott's "expected" spending (in the ordinary sense of the term) as of March 13, 2001. What we decline to do is provide risk-adjusted spending projections, because the interrogatories do not request that information.

In any event, Abbott accepts your compromise proposal. Abbott will investigate and confirm it has produced all documents reflecting "Exp. R&D Cost" for the Program Compounds, such as the documents designated with the Bates numbers set forth in your letter. Please note that acceptance of this proposal should not be construed as agreement with any meaning Hancock may ascribe to these documents or the terms "expected" and "Exp. R&D Cost."

3216243.1

MUNGER, TOLLES & OLSON LLP

July 6, 2007
Page 2

### Abbott's Response to Hancock's Document Requests

Hancock agreed to accept Abbott's production of responsive Operations Highlights presentations with redaction of irrelevant and non-responsive material. Hancock reserved its right, upon review of the documents, to request removal of any redactions it believes are inappropriate (and we reserved our right to oppose any such request). Yesterday, pursuant to our agreement, we produced the documents. Unless we hear otherwise, we assume this issue is fully resolved.

### Hancock's Rule 30(b)(6) Notice

#### Topics 7 and 8

Abbott has confirmed that that it never valued ABT-518 or ABT-594 as an asset on its corporate books and records. Pursuant to our agreement, this representation resolves the dispute over Topics 7 and 8.

#### Topic 9

Your letter does not mention our meet and confer regarding Topic 9 (Abbott's valuation of ABT-773). Pursuant to our agreement, Abbott has produced documents reflecting valuations and/or expected sales projections of ABT-773 created after the decision to terminate internal development of the compounds. Hancock reserved its right to seek a continued deposition on this topic, if necessary, after review of the documents. We have explained that we do not believe there is a need for a continued deposition, but we are willing to entertain any reasonable request by Hancock for additional information regarding these documents. Having not received a response, I assume that Hancock does not believe a continued deposition or additional information in response to this topic is necessary. Please let me know promptly if my understanding is incorrect.

#### Topics 22 and 23

The statement in your letter that Abbott represented that "John Leonard's testimony reflects all of Abbott's collective knowledge regarding the creation of analysis reflected in, or actions taken by Abbott in connection with the 'Initial Portfolio Prioritization' document" is not quite accurate. During our July 2 call, I said that Abbott would represent that the testimony of Abbott witnesses, including Dr. Leonard, and Abbott's response to Hancock's First Set of Requests for Admission, reflect all of Abbott's corporate knowledge regarding the *creation and circulation of the "Initial Portfolio Prioritization" documents*. I explained that Abbott would not make any broader representation that might be construed to preclude future testimony that Hancock might argue is somehow related to the "Initial Portfolio Prioritization" document, e.g., testimony regarding what transpired during the portfolio review process. You said you believed the narrower representation would be sufficient and that you would confirm. On July 5, you

3216243.1

MUNGER, TOLLES & OLSON LLP

July 6, 2007
Page 3

confirmed that we had resolved the dispute regarding these topics and did not request any broader representation. Please let me know if you disagree with this clarification of our agreement.

### Abbott's Request For the *Gen-Probe* Opinion

Contrary to your contention, Abbott's request for the arbitrator's opinion in the *Gen-Probe* case is reasonably calculated to lead to relevant evidence. Mr. Friedman acknowledged that in the *Gen-Probe* case he submitted an opinion on behalf of the plaintiff calculating alleged lost future profits from a medical product. He acknowledged that the arbitrator, a retired judge, criticized his methodology and concluded that there was no reasonable basis for calculating lost future profits. In the current case, Mr. Friedman also has submitted on opinion on behalf of the plaintiff purporting to calculate lost future profits from a medical product. The arbitrator's opinion is probative of the reliability of Mr. Friedman's methodology for calculating lost future profits. It also is reasonably calculated to lead to other admissible evidence (e.g., Mr. Friedman could be questioned at trial regarding whether his methodology in the current case differs from the methodology that was rejected in *Gen-Probe*).

Hancock has refused to provide any information to support its conclusory statement that the arbitrator's opinion "is potentially subject to confidentiality agreements and/or protective orders" that would preclude its production. I requested a copy of the purported confidentiality agreement and/or protective order, but you have not responded. You also have not yet responded to my question regarding whether the purported confidentiality agreement and/or protective order includes a provision allowing disclosure pursuant to law or after providing notice to the other parties.

Your statement that the *Gen-Probe* opinion is outside the scope of expert discovery agreed upon by Abbott and Hancock is not accurate. Our agreement expressly provided that requests for documents from an expert regarding prior cases would be governed by the default Federal Rules of Civil Procedure. Under the Federal Rules, our request for the *Gen-Probe* opinion is proper because it is reasonably calculated to lead to discoverable evidence and is not burdensome.

You also have not responded to my request for information regarding whether Mr. Friedman has a copy of the *Gen-Probe* opinion. You did confirm, however, that Mr. Davis has a copy.

Abbott requests that Hancock promptly produce a copy of the *Gen-Probe* opinion. Alternatively, please provide a copy of the confidentiality agreement and/or protective order so we can evaluate your contention that those agreements and/or orders may preclude production of the opinion.

MUNGER, TOLLES & OLSON LLP

July 6, 2007
Page 4

### Hancock's Responses to Interrogatory Nos. 2, 3, and 7

To be clear, Hancock specifically agreed to amend its responses to the parts of Interrogatory Nos. 3 and 7 concerning when and how Hancock first learned of each alleged breach, misrepresentation, or omission.  To the extent Hancock intends to supplement its responses to other parts of these interrogatories, we reserve our right to seek relief -- including exclusion of evidence -- for Hancock's failure to seasonably amend its interrogatory responses as required by the Federal Rules.

Sincerely,

Eric J. Lorenzini

EJL:mac1

3216243.1

**EXHIBIT 10**

# |C|H|O|A|T|E|

CHOATE HALL & STEWART LLP

July 13, 2007

Richard C. Abati<br>(617) 248-5076<br>rza@choate.com

BY ELECTRONIC AND OVERNIGHT MAIL

Eric J. Lorenzini, Esquire
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Re:     John Hancock et al. v. Abbott Laboratories
        Open Discovery Issues

Dear Eric:

This follows up on my July 5, 2007 letter and responds to your letter dated July 6, 2007.  Set forth below is John Hancock's understanding of the open issues from our recent meet-and-confer process.

Abbott's Responses to Interrogatory Nos. 6 and 8

Abbott is in the process of confirming that it has produced all documents reflecting "expected" or "risk-adjusted" spending projections for the Program Compounds referred to as "Exp. R&D Cost" in the following (and other) documents:  ABBT 3192 (same); ABBT 3362 (same); ABBT 280503 (same); ABBT 292826 (ABBT 292664); ABBT 292250 (ABBT 292664); ABBT 292231 (ABBT 292664); ABBT 293308 (ABBT 292664); ABBT 292089 (ABBT 292664); ABBT 292773 (ABBT 292664); ABBT 293538 (ABBT 292664); ABBT 318090 (ABBT 318090); and ABBT 318260 (ABBT 318244).  (Note:  per your request, the Bates number for each spreadsheet's "parent" document appears in parenthesis.)  John Hancock also has requested that (a) Abbott produce legible copies of these documents (to the extent feasible) and (b) Abbott confirm whether it maintains them in electronic format.   In addition, if electronic versions of these documents do, in fact, exist, John Hancock hereby requests their immediate production.

Please respond to each of John Hancock's requests as soon as possible and, at a minimum, by Monday, July 16, 2007.

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
July 13, 2007
Page 2


Abbott's Response to Interrogatory No. 15

As discussed, the parties have satisfied their meet and confer obligations regarding Abbott's refusal to amend its response to John Hancock Interrogatory No. 15. John Hancock intends to file a motion to compel on this issue shortly.

Topics 22 and 23 of John Hancock's Rule 30(b)(6) Notice

Abbott is in the process of confirming that it designates John Leonard's testimony in response to Topic Nos. 22 and 23. Please let me know whether Abbott will provide such confirmation as soon as possible and, at a minimum, by Monday, July 16, 2007.

Abbott's Request for the *Gen Probe* Opinion

John Hancock has rejected Abbott's request for the *Gen Probe* opinion on the grounds that it is not discoverable under the federal rules, is potentially subject to confidentiality agreements and/or protective orders, and is outside the scope of expert discovery agreed upon by Abbott and John Hancock. John Hancock also has pointed out that Abbott objected to the production of comparable documents from Mr. Tucker on the same grounds. It is my understanding that Abbott nonetheless intends to file a motion to compel on this issue, and will do so in the next ten (10) days.

John Hancock's Supplemental Responses to Interrogatory Nos. 2, 3 and 7

John Hancock recently requested additional time to supplement its responses to Interrogatory Nos. 2, 3 and 7. In response, Abbott offered to extend the original agreed-upon deadline of today until Monday, July 16, 2007. John Hancock hereby accepts this offer.

Very truly yours,

Richard C. Abati

Letter to Eric J. Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
July 13, 2007
Page 3


cc:    Jeffrey Weinberger, Esq. (by electronic and regular mail)
       Gregory D. Phillips, Esq. (by electronic and regular mail)
       Ozge Guzelsu, Esq. (by electronic and regular mail)
       Peter E. Gelhaar, Esq. (by regular mail)
       Michael S. D'Orsi, Esq. (by regular mail)
       Brian A. Davis, Esq.
       Joseph H. Zwicker, Esq.
       Karen Collari Troake, Esq.

**EXHIBIT 11**

## Contreras, Noemi

| | |
|---|---|
| **From:** | Abati, Richard [rabati@choate.com] |
| **Sent:** | Wednesday, July 25, 2007 2:18 PM |
| **To:** | Lorenzini, Eric |
| **Cc:** | Davis, Brian; Zwicker, Joseph H. |
| **Subject:** | John Hancock v. Abbott |

Eric:

I write to follow-up on your conversation with Brian Davis earlier today. It is my understanding that Abbott has offered to disclose its actual monthly spending on the nine Program Compounds in January, February and March of 2001. In return, John Hancock would withdraw its pending motion to compel a supplemental response to Hancock's Interrogatory No. 15. John Hancock will accept Abbott's offer with the following terms: (1) Abbott provides a sworn interrogatory response on or or before August 3, 2007, which discloses its actual monthly spending on the nine Program Compounds in January, February and March of 2001; (2) Abbott produces all back-up data to these disclosures on or before August 3, 2007; and (3) Abbott states in the same supplemental interrogatory response that it has no means to break down the monthly spending figures on a per diem basis. Does Abbott accept these terms?

On another note, have you had an opportunity to consider Brian's idea regarding the Gen-Probe opinion?

Rich

Richard C. Abati

C H O A T E

Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
t 617-248-5076
f 617-248-4000
rabati@choate.com
www.choate.com

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

**EXHIBIT 12**

## Lorenzini, Eric

**From:**     Lorenzini, Eric
**Sent:**     Monday, July 30, 2007 10:58 AM
**To:**       Abati, Richard
**Subject:**  Gen-Probe

Rich,

The compromise proposal that Brian made last week regarding the Gen-Probe opinion is not acceptable.  Therefore, we plan to file a motion as early as tomorrow.  I have a couple questions:

1) You never responded to my inquiry regarding whether Mr. Friedman's firm, CRA International, has a copy of the Gen-Probe opinion.  It seems likely a copy would have been retained somewhere in the firm.  Please let me know today if you have been able to determine whether or not they have a copy.

2) We plan to file a motion to impound my affidavit and attached exhibits, because the exhibits include confidential information such as the expert reports of Mr. Friedman and Mr. Tucker.  Please confirm today that you assent to impoundment of the affidavit and exhibits.  Also, please let us know whether you would like us to include in the motion for impoundment a request to impound the memorandum in support of the motion.  The only information in the memorandum that has been designated confidential is the information regarding the Gen-Probe case that was provided by Mr. Friedman at his deposition.  Please let us know whether you believe that information is commercially sensitive and requires impoundment.

Thank you.

Eric

1

**EXHIBIT 13**

**Lorenzini, Eric**

| | |
|---|---|
| **From:** | Davis, Brian [bdavis@choate.com] |
| **Sent:** | Tuesday, July 31, 2007 12:53 PM |
| **To:** | Lorenzini, Eric |
| **Subject:** | RE: Gen-Probe |

No need to impound from our perspective.  The mere existence and nature of the proceeding is not confidential.

Brian

-----Original Message-----
From: Lorenzini, Eric [mailto:Eric.Lorenzini@mto.com]
Sent: Tuesday, July 31, 2007 2:20 PM
To: Davis, Brian
Cc: Abati, Richard; Zwicker, Joseph H.; Troake, Karen Collari
Subject: RE: Gen-Probe

Brian,

To clarify, does Hancock believe that we should impound the memorandum
in support of the motion, as well as the exhibits?  The only information
in the memorandum that has been designated confidential is the
information regarding the Gen-Probe case that was provided by Mr.
Friedman at his deposition and designated "Highly Confidential" by
Hancock.  Mr. Friedman only provided general information about the case,
and did not disclose details such as the amounts of the alleged damages.
But if Hancock believes that the information is commercially sensitive,
we will move to impound it at your request.

Eric

-----Original Message-----
From: Davis, Brian [mailto:bdavis@choate.com]
Sent: Tuesday, July 31, 2007 6:00 AM
To: Lorenzini, Eric
Cc: Abati, Richard; Zwicker, Joseph H.; Troake, Karen Collari
Subject: RE: Gen-Probe

Eric,

Rich is away this week sunning himself on some distant shore.  Rather
than run down the last remaining drops of juice on his Blackberry, Rich
asked me to respond to your e-mail regarding the Gen-Probe matter in his
absence.  Here are our answers:

1.    I believe that Rich previously informed you that we have
confirmed that Mr. Friedman does not possess a copy of the arbitrator's
decision in the Gen-Probe matter.  That representation encompassed CRA
as well.

2.    We will not oppose Abbott's request for impoundment.  Please be
sure to note in your motion papers, however, the additional information
that we already have provided to you to the effect that the Gen-Probe
matter DID NOT involve pharmaceutical products (it involved diagnostic
equipment and assays), and that it DID NOT involve what Abbott describes
as a probabilistic damage analysis.  You also may wish to mention our
offer of compromise, which we surely will bring up if Abbott does not.

Regards,

Brian Davis

1

Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com
Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall &
Stewart LLP.  The substance of this message, along with any attachments,
may be confidential and legally privileged.  If you are not the
designated recipient of this message, please destroy it and notify the
sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include
the following statement in this message: Any advice contained herein (or
in any attachment hereto) regarding federal tax matters was not intended
or written by the sender to be used, and it cannot be used by any
taxpayer, for the purpose of avoiding penalties that may be imposed on
the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us
at choate.com
Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The
substance of this message, along with any attachments, may be confidential and legally
privileged.  If you are not the designated recipient of this message, please destroy it
and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following
statement in this message: Any advice contained herein (or in any attachment hereto)
regarding federal tax matters was not intended or written by the sender to be used, and it
cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed
on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

**EXHIBIT 14**

## Lorenzini, Eric

| | |
|---|---|
| **From:** | Lorenzini, Eric |
| **Sent:** | Monday, April 16, 2007 12:34 PM |
| **To:** | Zwicker, Joseph H. |
| **Cc:** | Davis, Brian |
| **Subject:** | RE: Expert Discovery |

Joe,

I simply mean that the default rules would apply to any requests for prior reports and testimony by expert witnesses.  Therefore, such materials would be discoverable to the extent they are relevant (*see* Rule 26(b) (1)), subject to the limitations on discovery imposed by Rule 26(b)(2)(iii) and 26(c) (undue burden, etc.).  Is that acceptable?

Eric

---

**From:** Zwicker, Joseph H. [mailto:JZwicker@choate.com]
**Sent:** Monday, April 02, 2007 5:07 AM
**To:** Lorenzini, Eric
**Cc:** Davis, Brian
**Subject:** RE: Expert Discovery

Eric,

Can you explain with greater specificity how you intend for the Federal Rules to govern disclosure of prior reports and testimony?  Thanks.

Joe.


Joseph H. Zwicker
Choate, Hall & Stewart LLP
2 International Place
Boston, MA 02110
617-248-5065 telephone
617-248-4000 facsimile
-----Original Message-----
**From:** Lorenzini, Eric [mailto:Eric.Lorenzini@mto.com]
**Sent:** Friday, March 30, 2007 2:53 PM
**To:** Zwicker, Joseph H.
**Cc:** Davis, Brian; Troake, Karen Collari; Abati, Richard; Weinberger, Jeffrey; Guzelsu, Ozge; Phillips, Gregory
**Subject:** RE: Expert Discovery

Joe,

This email is to follow up on your email below and our subsequent conversation in Boston.  We concur with your description of our agreement regarding expert discovery, as outlined in your March 14 email below.  As we discussed in Boston, there's no need to address the issue of the discoverability of expert's prior reports and testimony in our agreement.  The issue of whether and to what extent prior reports and testimony are discoverable will simply be governed by the default Federal Rules of Civil Procedure and Local Rules.  Please let me know if this is inconsistent with your understanding of our agreement.  Thank you.

Eric

**From:** Zwicker, Joseph H. [mailto:JZwicker@choate.com]
**Sent:** Wednesday, March 14, 2007 11:42 AM
**To:** Lorenzini, Eric
**Cc:** Davis, Brian; Troake, Karen Collari; Abati, Richard
**Subject:** RE: Expert Discovery

Eric:

I didn't intend to summarize any agreement.  I previously informed you that we were amenable to restrictions on expert discovery along the lines you suggested and would make a concrete proposal in the future.  We did so.

We are agreeable to limiting expert discovery to:  (1) an expert's deposition; (2) an expert's final report (including any opinions and assumptions underlying that report), and (3) documents relied upon by an expert in forming his or her opinion, and reflecting the underlying calculations and analyses included in the final expert report.  An expert's work papers, including report drafts, and correspondence with counsel shall not be discoverable or admissible.

We would like to discuss further your apparent suggestion that any and all prior reports and testimony by an expert is discoverable.


Joseph H. Zwicker
Choate, Hall & Stewart LLP
2 International Place
Boston, MA 02110
617-248-5065 telephone
617-248-4000 facsimile
-----Original Message-----
**From:** Lorenzini, Eric [mailto:Eric.Lorenzini@mto.com]
**Sent:** Wednesday, March 14, 2007 2:03 PM
**To:** Zwicker, Joseph H.
**Cc:** Davis, Brian; Troake, Karen Collari; Abati, Richard; Weinberger, Jeffrey; Phillips, Gregory; Guzelsu, Ozge
**Subject:** RE: Expert Discovery

Joe,

I'm not certain your email accurately summarizes our agreement.  In our discussion a couple months ago, I proposed that we agree to exclude draft reports, work papers, and correspondence with counsel from expert discovery.  Some time ago, in an email to Greg, you indicated that Hancock accepted that proposal.  Your email below could be read to suggest a broader limitation on expert discovery than we had discussed or agreed upon.  For example, it could be read to suggest that expert discovery would exclude documents relied upon by the experts in forming their opinion, documents reflecting the underlying calculations and analyses included in the final expert report, and prior reports and testimony by the experts.  Did you intend to suggest that expert discovery should exclude such documents?  Please clarify.  Thank you.

Eric

    -----Original Message-----
    **From:** Zwicker, Joseph H. [mailto:JZwicker@choate.com]
    **Sent:** Tuesday, March 06, 2007 7:44 AM
    **To:** Lorenzini, Eric
    **Cc:** Davis, Brian; Troake, Karen Collari; Abati, Richard
    **Subject:** Expert Discovery


7/31/2007

I am following up on our discussion regarding the scope of expert discovery in the above-captioned matter. We are prepared to agree to the following procedure. First, the parties agree to limit expert discovery to an expert's deposition and final report (including any opinions and assumptions underlying that report). Second, the expert's work papers, including report drafts, and correspondence with counsel, shall be not discoverable or admissible. Let me know Abbott's position. Thanks.

Joseph H. Zwicker



Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
t  617-248-5065
f  617-248-4000
m 617-633-0157
jzwicker@choate.com
www.choate.com

_____

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com
_____

_____

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

7/31/2007

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

EXHIBIT 15

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY and MANULIFE INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 05-11150-DPW |
| v. | ) ) | |
| ABBOTT LABORATORIES, | ) ) ) | |
| Defendant. | ) ) | |

## STIPULATED PROTECTIVE ORDER

WHEREAS, certain documents, materials and other information of parties John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, ManuLife Insurance Company, and Abbott Laboratories (individually, a "Party," collectively, the "Parties") or other entities subject to discovery or disclosure in this action (the "Litigation") may be claimed to constitute or contain confidential, trade secret, or proprietary commercial information; and

WHEREAS, the interests of the Parties, and the proprietary activities in which they are engaged, would be jeopardized if non-public, product development, marketing, strategic, planning, financial and other confidential, competitively sensitive materials and information that is produced in this Litigation were disclosed; and

WHEREAS, the Parties wish to ensure that any and all proprietary or confidential commercial information that is produced in this Litigation is not disseminated beyond the confines of the Litigation;

NOW, THEREFORE, the Parties hereby stipulate and agree, pursuant to Fed. R. Civ. P.26(c)(7), and this Court hereby orders as follows:

1.    This Stipulated Protective Order (the "Stipulated Order") shall govern the handling and treatment of all confidential, trade secret, or proprietary documents, materials and other information, including deposition testimony and deposition transcripts, that are produced or provided in the course of any pre-litigation contractual audit involving the Parties, in pre-trial discovery, and in preparation for trial in this Litigation.

2.    Documents produced and testimony given in the course of any pre-litigation contractual audit involving the Parties or in this Litigation, including without limitation, documents and testimony designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the provisions of this Stipulated Order, or information derived therefrom, shall be used solely for purposes of the preparation and trial of the Litigation, for any related appellate proceeding, and for no other purpose, including without limitation any commercial or business purpose.

3.    For purposes of this Stipulated Order, the term "Producing Party" shall mean any Party to this Litigation who produces or discloses information or materials in the course of any pre-litigation contractual audit involving the Parties or in the Litigation, or whose witnesses give deposition testimony.  The term "Producing Party" also shall include any non-party who agrees, in writing, to be bound by the terms of this Stipulated Order pursuant to Paragraph 9, *infra,* and produces or discloses confidential or proprietary information in the Litigation.  The term "Receiving Party" shall mean any Party or non-party to whom information or materials are produced or disclosed in the course of any pre-litigation contractual audit involving the Parties or in this Litigation, or who elicits deposition testimony from a Producing Party.  The term

"Designating Party" shall mean any Party or non-party who designates documents or information as CONFIDENTIAL or HIGHLY CONFIDENTIAL pursuant to the terms of this Stipulated Order.

4.    For purposes of this Stipulated Order, the words "document" and "documents" shall mean all written or electronic documents, data, materials, videotapes, and other tangible items, and all information contained therein or that can be derived therefrom.

5.    A Party may designate as "CONFIDENTIAL" any document or information (including discovery responses or portions thereof), not known to the general public, which the Designating Party, in good faith, deems to incorporate or embody confidential, trade secret, or proprietary commercial information belonging to the Designating Party.  Such designation shall be made at the time of delivery of a copy of the document or information by the Producing Party to the Receiving Party.  The designation "Confidential" shall be made by stamping or writing the words "CONFIDENTIAL" or "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the face of the copy of the document or information so designated.  Any document or information that has been or may be produced by one Party to any other Party pursuant to the Research Funding Agreement by and between the Parties and dated as of March 13, 2001, as well as any document or information derived therefrom, shall be deemed "Confidential" and shall be so designated by the Producing Party unless otherwise agreed by the Parties.

6.    Notwithstanding the provisions of Paragraph 5, *supra,* a Party may designate as "HIGHLY CONFIDENTIAL" any document or information (including discovery responses or portions thereof), not known to the general public, if that Party, in good faith, deems the information contained therein to be particularly sensitive (*e.g.,* highly confidential research, business plans or strategies, or other competitive information), such that its disclosure may result

in the loss of a significant competitive advantage to the Designating Party. Such designation shall be made at the time of delivery of a copy of the document or information by the Producing Party to the Receiving Party. The designation "Highly Confidential" shall be made by stamping or writing the words "HIGHLY CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the face of the copy of the document or information so designated.

7.    Documents or information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the terms of this Stipulated Order hereinafter are referred to collectively as "CONFIDENTIAL MATERIAL." All CONFIDENTIAL MATERIAL not reduced to documentary or tangible form or which cannot reasonably be designated in the manner set forth in Paragraphs 5 and 6, *supra,* shall be designated by a Party as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by informing the other Party of such designation in writing contemporaneous with the production of the CONFIDENTIAL MATERIAL and by labeling the container for such CONFIDENTIAL MATERIAL with the appropriate legend.

8.    If a Producing Party elects to produce original files and records for inspection and the inspecting Party desires to inspect those files, no confidentiality designations need be made by the Producing Party in advance of the initial inspection. Thereafter, upon selection of specified documents for copying by the inspecting Party, the Producing Party shall designate the copies of such documents as may contain protected subject matter with the appropriate designation at the time the copies are produced to the inspecting Party in accordance with the provisions of this Stipulated Order. During the time between the inspection of such original files and records and production of copies of such files and records, the Parties agree to treat all of the

files and records subject to inspection as if they had been designated HIGHLY CONFIDENTIAL pursuant to the terms of this Stipulated Order.

9.    Non-parties to this Litigation may accept and agree to be bound by the terms of this Stipulated Order, provided that each such non-party first shall execute an acknowledgment and agreement, in the form attached hereto as Exhibit A, and provide a copy of the executed Exhibit A to all current Parties. A non-party to this Litigation that thereby agrees to be bound by the terms of this Stipulated Order may designate any discoverable documents or information not known to the general public which the non-party, in good faith, deems to be confidential, trade secret, or proprietary in nature, as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by means of the procedures described in Paragraphs 5, 6 or 7, *supra*. All documents or information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by a non-party in accordance with the terms of this Stipulated Order shall be treated by the Parties as CONFIDENTIAL MATERIAL.

10.    Notwithstanding the foregoing, a Producing Party's or non-party's inadvertent failure to designate a document or information as CONFIDENTIAL MATERIAL as set forth in Paragraphs 5, 6 or 7, *supra*, shall not constitute a waiver of any claim that the inadvertently disclosed material is entitled to protection under this Stipulated Order. Promptly upon learning of an inadvertent failure to designate a document or information as CONFIDENTIAL MATERIAL, the Producing Party or non-party may so designate a document or information as CONFIDENTIAL MATERIAL, with the effect that the designated document or information thereafter shall be subject to the protections of this Stipulated Order. In the event that a belated designation is made, each Receiving Party or non-party promptly shall take all reasonable steps to retrieve the relevant material to the extent it has been disclosed to persons who would not be

-5-

authorized to view it under Paragraphs 12 and 13, *infra,* shall identify in writing to the Producing Party those persons, other than authorized persons, to whom documents or information designated as "HIGHLY CONFIDENTIAL" has been disclosed, and shall return any unmarked copies of the relevant material that are recovered to the Producing Party or non-party within fourteen (14) calendar days of the receipt of properly marked, substitute copies from the Producing Party.

11.    A Party or participating non-party may designate any deposition transcript or portion thereof as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by so stating on the record or by giving notice in writing to the other Parties and participating non-parties within fourteen (14) calendar days of receipt of the deposition transcript, prior to which time all deposition transcripts shall be treated by the Parties as CONFIDENTIAL MATERIAL in their entirety. Whenever CONFIDENTIAL MATERIAL is expected to be disclosed in a deposition, the Producing Party or participating non-party making the confidential designation shall have the right to exclude from attendance at the deposition every person except the deponent, the stenographer, and those individuals authorized under Paragraphs 12 and 13 of this Stipulated Order, *infra,* to receive the CONFIDENTIAL MATERIAL. All designations of confidentiality shall be made reasonably and in good faith.

12.    All documents designated as "CONFIDENTIAL" and any information obtained from such documents shall be retained by outside counsel, shall be used for the purpose of this Litigation only, and for no other purpose, and shall not be disclosed to any other person; *provided, however, that* documents designated as "CONFIDENTIAL" may be disclosed to the following:

     (a)    outside counsel and members, associates and employees of the firms of which outside counsel are members. For purposes of this Stipulated Order, "outside

-6-

counsel" shall mean the firm Choate, Hall & Stewart LLP for plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and ManuLife Insurance Company, and the firms Donnelly, Conroy & Gelhaar, LLP and Winston & Strawn LLP for defendant Abbott Laboratories;

(b)    present in-house counsel and employees of each Party who are given access to the documents by outside counsel for said Party as is reasonably necessary for the purposes of this Litigation and for no other purpose;

(c)    former employees of each Party who are given access to the documents by outside counsel for said Party as is necessary for the purposes of this Litigation and for no other purpose, *provided that* each such former employee first executes an acknowledgment, in the form attached hereto as Exhibit A, agreeing to be bound by the provisions of this Stipulated Order;

(d)    the Court, as provided in Paragraph 16, *infra;*

(e)    independent stenographic personnel, court reporters, videographers, or photocopying, document imaging or database services providing services in the Litigation;

(f)    outside experts or consultants retained by a Party for purposes of the Litigation, *provided that* each such expert or consultant first executes an acknowledgment, in the form attached hereto as Exhibit A, agreeing to be bound by the provisions of this Stipulated Order;

(g)    any witness or deponent who may or actually does give testimony in the Litigation, *provided that:* (i) such witness or deponent is listed on the face of the CONFIDENTIAL MATERIAL, is the originator, author, or an identified recipient of such CONFIDENTIAL MATERIAL, has personal knowledge concerning such CONFIDENTIAL MATERIAL, or has personal knowledge regarding the subject matter of the CONFIDENTIAL MATERIAL; (ii) such witness or deponent is a current officer, director, or employee of the Producing Party; (iii) the Producing Party consents in writing to the disclosure of the CONFIDENTIAL MATERIAL to such witness or deponent; or (iv) the Court orders such disclosure; and

(h)    any other person to whom the Producing Party agrees beforehand, in writing, that disclosure may be made, or to whom the Court determines that disclosure may be made.

13.    All documents designated as "HIGHLY CONFIDENTIAL" and any information obtained from such documents shall be retained by outside counsel, shall be used for the purpose of this Litigation only and for no other purpose, and shall not be disclosed to any other person;

*provided, however, that* documents designated as "HIGHLY CONFIDENTIAL" may be disclosed to the following:

    (a)    outside counsel and members, associates and employees of the firms of which outside counsel are members;

    (b)    present in-house counsel for a Party and, in addition, a total of no more than two (2) in-house employees of each Party who have a reasonable need to know the contents of such documents, provided that each such person first executes an acknowledgment, in the form attached hereto as Exhibit A, agreeing to be bound by the provisions of this Stipulated Order;

    (c)    the Court, as provided for in Paragraph 16, infra;

    (d)    independent stenographic personnel, court reporters, videographers, or photocopying, document imaging or database services providing services in the Litigation;

    (e)    outside experts or consultants retained by a Party for purposes of the Litigation;

    (f)    any witness or deponent who may or actually does give testimony in the Litigation, provided that: (i) such witness or deponent is listed on the face of the CONFIDENTIAL MATERIAL, is the originator, author, or an identified recipient of such CONFIDENTIAL MATERIAL, has personal knowledge concerning such CONFIDENTIAL MATERIAL, or has personal knowledge regarding the subject matter of the CONFIDENTIAL MATERIAL; (ii) such witness or deponent is a current officer, director, or employee of the Producing Party; (iii) the Producing Party consents in writing to the disclosure of the CONFIDENTIAL MATERIAL to such witness or deponent; or (iv) the Court orders such disclosure; and

    (g)    any other person to whom the Producing Party agrees beforehand, in writing, that disclosure may be made, or to whom the Court determines that disclosure may be made.

    14.    Before a Party may disclose documents or information designated by any other Party as HIGHLY CONFIDENTIAL to any person listed in Paragraph 13(e), 13(f)(iii), or 13(f)(iv), that party shall, at least five (5) business days prior to such disclosure, notify the Designating Party, in writing and by facsimile, of its intent to disclose HIGHLY CONFIDENTIAL MATERIALS to such persons. Such notification shall be made to all counsel of record in this Litigation and shall include the name, current address, and present employment

affiliation (including job title) of the person to whom such disclosure is proposed. The notification shall include a copy of an acknowledgement and agreement signed by the person to whom disclosure is proposed in the form attached hereto as Exhibit A. A Designating Party receiving such notification may, for good cause, object to the proposed disclosure by giving notice of such objection and the reasons therefore, in writing and by facsimile, to the party seeking to make the disclosure. Such notice of objection shall be made within five (5) business days of receipt of the notification of intent to disclose, and no disclosure shall be made before expiration of the five (5) business-day objection period. If an objection is made and not resolved by agreement of the parties, the Designating Party shall, within an additional seven (7) calendar days, move the Court to prohibit the proposed disclosure. The proposed disclosure shall not take place until any objection and associated motion by the Designating Party is resolved by the Court or otherwise. Failure to object or move within the time periods set forth above shall be deemed consent to the proposed disclosure as set forth in the notification.

15.    Counsel of record for the Parties shall employ reasonable protective measures to ensure that the information and documents governed by this Stipulated Order are used only for the purposes specified herein, and disclosed only to authorized persons. All CONFIDENTIAL MATERIAL shall be kept in a secure manner by each Receiving Party and by those who are authorized to have access to such material as set forth in Paragraphs 12 and 13, *supra*.

16.    All CONFIDENTIAL MATERIAL presented to the Court through argument, memoranda, pleadings or otherwise shall be submitted pursuant to the rules for impoundment set forth in Local Rule 7.2 (D. Mass.) (Impounded and Confidential Materials). The Designating Party may file whatever papers it deems appropriate in support of such motion for impoundment. All CONFIDENTIAL MATERIAL that a Party is granted leave to file with the Court shall be

-9-

submitted under seal by filing the document(s) in a sealed envelope or container bearing a

statement substantially in the following form:

CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER ENTERED BY THE COURT

This envelope (or container) containing the above-identified papers filed
by [name of Party], is not to be opened nor the contents thereof displayed
or revealed except by further Order of the Court or by agreement of the
Parties.

The contents of such filings shall be kept under seal by the Court and treated in

accordance with the provisions of this Stipulated Order.

17.    If a Party or participating non-party that has obtained CONFIDENTIAL

MATERIAL pursuant to this Stipulated Order: (a) is subpoenaed in another proceeding; (b) is

served with a demand in another action to which it is a party; or (c) is served with any other legal

process by one not a Party to this Litigation, for the purpose of obtaining the disclosure of such

CONFIDENTIAL MATERIAL, the Receiving Party shall give prompt written notice of its

receipt of such subpoena, demand or legal process to counsel of record for all Parties to the

Litigation and any participating non-party so as to allow any Party or participating non-party at

least ten (10) days, or such lesser time as such subpoena, demand or legal process specifies for

production, to intercede and protect its rights.  Provided that such notice is given, nothing herein

shall be construed as requiring any Party or anyone else covered by this Stipulated Order to

challenge or appeal any order requiring production of any CONFIDENTIAL MATERIAL, or to

subject itself to *any* penalties for non-compliance with any subpoena, demand or legal process, or

to seek any related relief from this or any Court.

18.    Nothing in this Stipulated Order is intended to determine or affect, in any way, the

use or admissibility of such CONFIDENTIAL MATERIAL in this Litigation.  Furthermore,

nothing herein shall be deemed to restrict in any manner any Party's dissemination or use of its own CONFIDENTIAL MATERIAL.

19.     In the event that any CONFIDENTIAL MATERIAL is, either intentionally or inadvertently, disclosed to someone not authorized to receive such material under this Stipulated Order, or if a person so authorized breaches any of his or her obligations under this Stipulated Order, counsel of record for the Party involved immediately shall disclose the unauthorized disclosure or breach to the Producing Party's counsel of record, and also shall use his or her best efforts to obtain the return of all copies of the CONFIDENTIAL MATERIAL and to prevent any further disclosures of the same.

20.     The restrictions concerning CONFIDENTIAL MATERIAL set forth in this Stipulated Order shall not apply to any document or information which, as can be demonstrated from written documents, deposition testimony or other tangible evidence:

(a)     was, is or becomes public knowledge, not in violation of the provisions of this Stipulated Order;

(b)     was or is acquired in good faith from a person possessing the right to disclose such information who is not a Producing Party, related to a Producing Party, or a former or present employee of a Producing Party; or

(c)     was or is discovered or created independently by the Receiving Party.

21.     If a Receiving Party objects to the designation by a Producing Party or participating non-party of any document or information as CONFIDENTIAL MATERIAL, the Receiving Party so objecting shall state the objection by letter to counsel of record for the Producing Party, or by letter to the designating non-party directly if no counsel has appeared on their behalf, and copy all counsel of record in this action. After providing this notice of objection, the Parties (and to the extent the challenged designation is made by a participating non-party, such non-party or its counsel) shall confer within seven (7) calendar days in an

attempt to resolve the dispute regarding the designation of the documents or information. If the Parties are unable to resolve the dispute, the Receiving Party may within an additional seven (7) calendar days move the Court to remove the CONFIDENTIAL or HIGHLY CONFIDENTIAL designation. In resolving any such motion, the Producing Party shall have the burden of demonstrating that the document or information at issue constitutes CONFIDENTIAL MATERIAL. Until the Court rules on the motion, the relevant documents or information shall continue to be treated by each Receiving Party or participating non-party as CONFIDENTIAL or HIGHLY CONFIDENTIAL as designated by the Producing Party or non-party.

22.    Nothing herein shall preclude any Party or non-party from seeking an order from the Court that any portion of the evidence be taken *in camera*, with all related testimony and CONFIDENTIAL MATERIAL sealed and withheld from the general public.

23.    Upon final termination of this action, and exhaustion of all avenues of appeal, each Receiving Party shall assemble and return to the appropriate Producing Party, or destroy, if such Producing Party so requests, all CONFIDENTIAL MATERIAL (except attorney work product), and all copies thereof, *provided that* nothing herein shall preclude outside counsel of record for each Party from retaining one copy of each CONFIDENTIAL or HIGHLY CONFIDENTIAL document that was attached or identified as an exhibit (i) to any pleading or paper submitted to the court during the course of this Litigation or (ii) to a deposition taken in this Litigation, or (iii) to a list of exhibits to be used at any trial or hearing in this Litigation, and all such documents shall remain subject to this Stipulated Order.

24.    Nothing herein shall prevent a Party from seeking to amend, modify or change the terms of this Stipulated Order, either by means of a signed agreement between all of the Parties (and relevant non-parties, to the extent that their interests are affected) that is submitted to the

Court, or by moving for relief from the Court. Furthermore, nothing in this Stipulated Order shall be deemed to affect or govern the disclosure, dissemination, production, admissibility or use of documents or information claimed to be protected by the attorney-client privilege, the work product doctrine or any other privilege, immunity or protection.

25.     Upon execution, this Stipulated Order shall be binding upon the Parties hereto, upon each non-party that has agreed to abide by its terms, and upon their respective counsel of record, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents and independent contractors.

26.     In the event anyone shall violate or threaten to violate the terms of this Stipulated Order, the aggrieved Party immediately may apply to obtain injunctive relief against any such person violating or threatening to violate any of the terms of this Stipulated Order, and in the event that the aggrieved Party does so, the responding Party, subject to the provisions of this Stipulated Order, shall not employ as a defense thereto the claim that the aggrieved Party possesses an adequate remedy at law.

27.     This Stipulated Order is effective immediately and shall survive the conclusion of this Litigation. This Court shall retain jurisdiction for the purpose of enforcing the terms of this Stipulated Order.

[signature page follows]

-13-

AGREED TO BY THE PARTIES:

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY | ABBOTT LABORATORIES |

By their attorneys,                                       By its attorneys,


/s/ Karen Collari Troake

Brian A. Davis (BBO No. 546462)
Karen Collari Troake (BBO No. 566922)
Stacy Blasberg (BBO No. 657420)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tele: 617-248-5000

/s/ Peter E. Gelhaar

Peter E. Gelhaar (BBO No. 188310)
Michael S. D'Orsi (BBO No. 566960)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
Tele: 617-720-2880

and

Lawrence R. Desideri (*pro hac vice*)
Stephen V. D'Amore (*pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
Tele: 312-558-5600

-14-

SO ORDERED this ___ day of _____, 2005


_____

United States District Court Judge

## EXHIBIT A

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY and MANULIFE INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 05-11150-DPW |
| v. | ) ) | |
| ABBOTT LABORATORIES, | ) ) | |
| Defendant. | ) ) | |

## ACKNOWLEDGMENT OF,
## AND AGREEMENT TO BE BOUND BY,
## STIPULATED PROTECTIVE ORDER

The undersigned, on oath, deposes and states as follows:

I, _____, do hereby acknowledge that I have been provided with a copy of the Stipulated Protective Order governing the treatment of "Confidential Material" produced by the Parties or non-parties in the above-referenced litigation (the "Order").

I have read, and I understand, the provisions of the Order, and I hereby represent and warrant that I am bound by it and agree to abide by it. I further acknowledge that I may be held responsible for any failure on my part to comply with all provisions of the Order, and agree to submit myself to the jurisdiction of this Court for purposes of enforcing the Order. I understand that a violation of the Order may subject me to sanctions and damages, including for contempt of Court.

Signed under the pains and penalties of perjury in _____ (city, state).

Date:_____, 200__                    Signature:_____

**EXHIBIT 16**

Page 1

1                    UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF MASSACHUSETTS

3

4    JOHN HANCOCK LIFE INSURANCE        )
     COMPANY, JOHN HANCOCK VARIABLE )
5    LIFE INSURANCE COMPANY, and        )
     MANULIFE INSURANCE COMPANY         )
6    (f/k/a INVESTORS PARTNER           )
     INSURANCE COMPANY),                )
7                                       )
              Plaintiffs,               )
8                                       )
        vs.                             )   No. 05:11150-DPW
9                                       )
     ABBOTT LABORATORIES,               )
10                                      )
              Defendants.               )
11   _____)

12

13

14

15

16              DEPOSITION OF AVRAM TUCKER

17                Los Angeles, California

18              Wednesday, June 27, 2007

19                       Volume

20

21

22

23   Reported by:
     MARIA A. HASAKIAN
24   CSR No. 8469
     Job No. 923929/10415

25

Page 2

```
 1              UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3

 4   JOHN HANCOCK LIFE INSURANCE      )
     COMPANY, JOHN HANCOCK VARIABLE   )
 5   LIFE INSURANCE COMPANY, and      )
     MANULIFE INSURANCE COMPANY       )
 6   (f/k/a INVESTORS PARTNER         )
     INSURANCE COMPANY),              )
 7                                    )
                  Plaintiffs,         )
 8                                    )
        vs.                           )   No. 05:11150-DPW
 9                                    )
     ABBOTT LABORATORIES,             )
10                                    )
                  Defendants.         )
11   _____)

12

13

14

15

16          Deposition of AVRAM TUCKER,

17       Volume 1, taken on behalf of Plaintiffs,

18       at 1901 Avenue of the Stars, Suite 950,

19       Los Angeles, California, beginning at

20       9:05 a.m. and ending at 4:49 p.m. on

21       Wednesday, June 27, 2007, before MARIA

22       A. HASAKIAN, Certified Shorthand

23       Reporter No. 8469.

24

25
```

Page 24

1    public.

2        Q    Can you just describe the general area, medical

3    area, that the compound was directed towards?

4        A    You know, I don't recall specifically, but it

5    may have been related to cancer.  Although, I'll confirm.

6        Q    All right.  Are you aware of any prior cases

7    that you've been involved with, in which you have

8    testified, either deposition or trial, in which your

9    analysis or opinions have been criticized or called into

10   question in any way by the fact finder or the court?

11       A    The only thing that fits into that category is

12   that I have had some testimony where, for example, I

13   relied on a document that the court decided wasn't going

14   to be admissible, so I wasn't allowed to testify.  But

15   that would be the extent of it.

16       Q    On how many occasions has that occurred?

17       A    I think one or two.

18       Q    Do you recall the cases in which that occurred?

19       A    I don't recall the names.  One had to do with a

20   Korean company that was involved in selling beef in

21   Korea.

22       Q    And what was the other one?

23       A    I don't recall the other one.  It was

24   somewhere -- it was in the Midwest.

25       Q    Were the decisions in those matters reported?

Page 25

1    A    There were no decisions.

2    Q    Were the rulings of the court reported in any

3    way, to your knowledge?

4    A    Not that I'm aware of.

5    Q    Were they memorialized in writing?

6    A    I don't know.

7    Q    You have a recollection that in those cases the

8    court ruled that you were not permitted to testify.

9    Beyond that, you don't know of any written documentation

10   of that fact?

11   A    That's correct.

12   Q    Those are the only occasions that you can think

13   of which you have testified and your testimony has been

14   called into question or criticized in any way by the

15   court or the fact finder?

16   A    Well, I think there's been cases where the

17   court has adopted 90 percent of what I've said but not 10

18   percent.  But other -- something like that.  No, I'm not

19   aware of anything where they criticized my notes.

20   Q    Are you aware of cases in which the court has

21   rejected your testimony?

22   A    Well, I don't recall any case where the court

23   said, "We are rejecting his testimony."  There have been

24   cases where I've testified on damages, and we've either

25   won or lost on liability.  And it hasn't been relevant.

Page 26

1      Q    Do you recall any cases in which your analysis

2    of damages has been rejected by the court?

3      A    Do you mean by "rejected," that this is, for

4    example, not a proper measure of damages or something

5    like that?

6      Q    Yeah.

7      A    Not aware of anything like that.

8      Q    What other -- aside from the cases that you've

9    identified here today, what other experience do you have

10   involving the pharmaceutical industry?

11     A    I've worked on cases that have involved

12   products related to the pharmaceutical industry as

13   opposed to drug compounds.

14          And I teach at Stanford.  And, although the

15   course is focused on long-term contracts, one of the

16   things that we do is we talk about industries that

17   long-term contractors work in, including the

18   pharmaceutical industry.  And we talk about -- we compare

19   long-term contractors to other types of companies.  So we

20   teach the students how to study a bank versus long-term

21   contractor, a pharmaceutical company versus a long-term

22   contractor.

23          I've also worked on construction matters

24   involving the pharmaceutical industry.  I testified in

25   South Carolina related to the construction of a

Page 266

```
 1

 2

 3

 4

 5              I, AVRAM TUCKER, do hereby declare under

 6    penalty of perjury that I have read the foregoing

 7    transcript of my deposition; that I have made such

 8    corrections as noted herein, in ink, initialed by me, or

 9    attached hereto; that my testimony as contained herein,

10    as corrected, is true and correct.

11         EXECUTED this _____ day of _____,

12

13    20____, at _____, _____.

14                    (City)                    (State)

15

16         _____

              AVRAM TUCKER

17            Volume 1

18

19

20

21

22

23

24

25
```

Page 267

1

2

3          I, the undersigned, a Certified Shorthand

4    Reporter of the State of California, do hereby certify:

5          That the foregoing proceedings were taken

6    before me at the time and place herein set forth; that

7    any witnesses in the foregoing proceedings, prior to

8    testifying, were placed under oath; that a verbatim

9    record of the proceedings was made by me using machine

10   shorthand which was thereafter transcribed under my

11   direction; further, that the foregoing is an accurate

12   transcription thereof.

13          I further certify that I am neither financially

14   interested in the action nor a relative or employee of

15   any attorney of any of the parties.

16          IN WITNESS WHEREOF, I have this date subscribed

17   my name.

18

19   Dated: *July 10, 2007*

20

21

22          _____
            MARIA A. HASAKIAN
            CSR No. 8469
23

24

25