# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JOHN HANCOCK LIFE INSURANCE
COMPANY, JOHN HANCOCK VARIABLE
LIFE INSURANCE COMPANY, and
MANULIFE INSURANCE COMPANY (f/k/a
INVESTORS PARTNER INSURANCE
COMPANY),

        Plaintiffs,

    vs.

ABBOTT LABORATORIES,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 05-11150-DPW
Hon. Judge Douglas P. Woodlock

## ABBOTT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON HANCOCK'S RESCISSION CLAIM

Defendant Abbott Laboratories ("Abbott") respectfully submits this reply memorandum in support of its motion for summary judgment on the claim for rescission by Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Manulife Insurance Company (f/k/a Investors Partner Life Insurance) (collectively, "Hancock").

### Introduction

Hancock fails to raise any genuine issue of material fact in response to Abbott's motion for summary judgment. The undisputed facts show that Hancock's claim for rescission is precluded as a matter of law by the contractual limitation of remedies provisions, the judicial estoppel doctrine, and Illinois law concerning waiver of the right to rescission.

Hancock argues that Section 11.2 of the Research Funding Agreement ("Agreement" or "RFA") only precludes "termination" of the Agreement, and does not expressly limit the remedy

of "rescission." By definition, however, rescission involves termination, and therefore is limited by Section 11.2. Furthermore, Hancock offers no response to Abbott's argument that Section 11.3 precludes Hancock's request for refund of its Program Payments. These modest limitation of remedies provisions are valid and enforceable to the extent Hancock seeks rescission as a remedy for breach of warranty.

Hancock vainly attempts to avoid judicial estoppel by relying on the scheduling order in *Hancock I*. The scheduling order, however, merely provided that "[o]ther disputes, when ripe, may be raised in a separate related action." It did not give Hancock a license to obtain a final judgment based on the position that the Agreement was "in full force and effect," only to later take the inconsistent position that it should be rescinded. Hancock's claim that Abbott was not prejudiced is immaterial since prejudice is not a required element for judicial estoppel. In any event it clearly would be prejudicial to allow Hancock to pursue the inconsistent remedy of rescission after it secured a final judgment enforcing and affirming the Agreement.

Hancock's attempts to avoid application of the waiver doctrine are equally unavailing. Under Illinois law, Hancock clearly waived its right to seek rescission by delaying for years after it had knowledge of the alleged misrepresentations and affirming the Agreement through its actions. As noted above, Hancock's delay and affirmation of the Agreement are not excused by the *Hancock I* scheduling order. Hancock did not promptly pursue rescission as an alternative remedy in a separate action, but instead deliberately failed to bring a rescission claim for three years, during which time it secured a final judgment enforcing the Agreement and demanded continued performance by Abbott.

Hancock's argument that Abbott waived its right to seek summary judgment based on the untimeliness of Hancock's demand for rescission because it stipulated to a withdrawal of its opposition to Hancock's motion to amend its complaint is frivolous. The stipulation itself clearly provides that Abbott "otherwise reserves the right to contest any and all claims" in the amended complaint, which would clearly include summary judgment motions that the parties may have contemplated filing after the close of discovery. Hancock's argument that Hancock's long delay in seeking rescission is excused because Abbott allegedly "obstructed" the audit and made "baseless" discovery objections is a meritless diversionary tactic. Under Illinois law, Hancock had an obligation to seek rescission as soon as it gained knowledge of the alleged fraud, not wait until the completion of discovery. By Hancock's own admission, it had knowledge of the alleged misrepresentations regarding ABT-518 in "June 2004" and knowledge of the misrepresentations regarding all three compounds by the "Fall/Winter 2004," based on documents produced in the audit and discovery.

Contrary to Hancock's assertion, Fed. R. Civ. P. 54(c) does not expand Hancock's substantive rights under Illinois law. Rule 54(c) provides that the Court may grant relief "to which each party is entitled," but Hancock is not "entitled" to rescission under Illinois law. Nor can Hancock avoid summary judgment by arguing that there is a disputed issue of fact with respect to its motive for delay, because its delay is alone sufficient to constitute waiver, irrespective of Hancock's motive. In any event, despite the spin by Hancock, there is no genuine dispute that Hancock made its belated request for rescission after the outlook for the investment worsened due to negative developments with respect to compounds that Hancock does not allege were misrepresented.

- 3 -

Finally, Hancock's argument that Abbott cannot demonstrate prejudice from Hancock's delay is wrong on two counts. First, Abbott's motion is not based on laches, but on the general rescission doctrine, under which delay alone gives rise to waiver. Second, Abbott clearly would be prejudiced if Hancock were allowed to seek rescission after demanding continued performance by Abbott and securing a final judgment enforcing the Agreement.

### **Argument**

I.  THE RESEARCH FUNDING AGREEMENT PRECLUDES HANCOCK'S REQUEST FOR TERMINATION OF THE AGREEMENT AND REFUND OF ITS PAYMENTS

Hancock argues that Section 11.2 only limits the circumstances under which Hancock can "terminate" the Agreement and is inapplicable to a claim for "rescission." Plaintiffs' Mem. of Law in Opp. to Defs.' Mot. for Summ. Judg. ("Pltfs' Opp.") at 4-5. Hancock's argument is unavailing because the requested remedy of rescission necessarily involves termination of the Agreement. *See Kirchhoff v. Rosen*, 227 Ill. App. 3d 870, 877, 592 N.E.2d 371, 375 (1992) ("*'Rescission' means . . . a termination of a contract* with restitution.") (emphasis added); *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 712 (N.D. Ill. 2007) ("'Rescission' is an extraordinary remedy that involves the judicial termination of a party's contractual obligation."). By precluding termination in the present circumstances, Section 11.2 necessarily precludes rescission.

Hancock makes the meritless argument that Section 11.2, when read in its entirety, "preserves" rather than "precludes" Hancock's right to seek rescission. Pltfs.' Opp. at 3-4. Regardless of whether one reads Section 11.2 in its entirely, or reads only the relevant text quoted in Abbott's opening brief, it clearly provides that Hancock has no right to terminate the Agreement in the present circumstances. Section 11.2 states that:

- 4 -

> there shall only be a limited right to terminate this Agreement
> under the following circumstances. . . . In the event that the court
> . . . has issued a ruling that Abbott has breached a material
> obligation under this Agreement, and such ruling specified the
> actions to be taken on account of such breach, and Abbott has
> failed to comply with the terms of such ruling . . .

RFA, § 11.2(b). In those limited circumstances, i.e., where Abbott has failed to comply with a court ruling, Section 11.2 provides that "in addition to all other rights available to Hancock under law and equity . . . John Hancock shall have the right to terminate the Agreement . . ." *Id.* In all other circumstances, the "limited right to terminate this Agreement" is inapplicable and, instead, "consideration shall be given to remedying any breach of this Agreement through the payment of . . . such *other* legal or equitable remedies as shall be appropriate under the circumstances . . ." *Id.* (emphasis added). If accepted, Hancock's argument that the references to "such other legal or equitable remedies as shall be appropriate" and "all other rights available to John Hancock under law and equity" "preserve" Hancock's right to seek rescission would render the limitations of remedies clause completely meaningless. Obviously these phrases instead refer to remedies *other than termination* (e.g., damages, specific performance, and declaratory relief).

Hancock's opposition brief offers no response to Abbott's argument that Section 11.3 precludes a refund of Hancock's Program Payments even if the Agreement is terminated. Section 11.3 provides that "[e]xpiration or, if applicable, termination of this Agreement shall not relieve the parties of any obligation accruing prior to such expiration or termination." RFA, § 11.3. Hancock's request for an order rescinding the Agreement and directing "Abbott to refund any and all Program Payments made by John Hancock" is precluded by Section 11.3 because it would retroactively relieve Hancock of its obligation to make its first and second Program Payments, an obligation that undisputedly has already accrued and been performed.

- 5 -

Finally, Hancock incorrectly argues that Section 11.2, if applied to bar rescission, would be void for reasons of public policy, even as applied to Hancock's breach of warranty claim. Pltfs.' Opp. at 5. "[C]ontractual limitations are generally held valid in [Illinois], unless it would be against the settled public policy of the State to do so, or there is something in the social relationship of the parties to the contract militating against upholding the agreement." *First Financial Ins. Co. v. Purcolator Security, Inc.*, 69 Ill. App. 3d 413, 417, 388 N.E.2d 17, 20 (1979). Therefore, exculpatory clauses are valid to the extent they limit liability for conduct that is not "willful and wanton." *See Adams v. Myers*, 250 Ill. App. 3d 477, 486, 620 N.E.2d 1298, 1305 (1993); *Kleinwort Benson North Am., Inc. v. Quantum Fin. Services, Inc.*, 285 Ill. App. 3d 202, 216, 673 N.E.2d 369, 379 (1996) (holding that exculpatory clauses "for *willful and wanton conduct*" are void, therefore, exculpatory clause was invalid "insofar as it purports to limit [the defendant's] claim for fraud") (emphasis added). Breach of warranty is not an intentional tort, and may be premised on innocent or negligent conduct. Accordingly, in the absence of a finding of "willful and wanton" conduct, the limitation of remedies provisions preclude rescission as a remedy for breach of warranty.

II.    HANCOCK IS JUDICIALLY ESTOPPED FROM SEEKING RESCISSION BECAUSE IT SECURED A FINAL DECLARATORY JUDGMENT ENFORCING THE AGREEMENT AND AFFIRMING THAT IT WAS "IN FULL FORCE AND EFFECT"

Hancock's opposition brief completely avoids addressing Abbott's actual judicial estoppel argument and instead attacks a straw man. Hancock argues that because the scheduling order in *Hancock I* limited discovery in the case to the "aggregate spending target" claim and provided that Hancock could raise other disputes in a separate related action, Abbott cannot base a judicial estoppel argument upon Hancock's failure to assert a rescission claim in *Hancock I*.

- 6 -

Pltfs.' Opp. at 6. Similarly, Hancock argues that Abbott "agreed in open court in *Hancock I* that it would not preclude John Hancock from subsequently raising other disputes concerning the RFA in a separate action on the ground that those disputes should have been brought in *Hancock I*." *Id.* at 7-8. Abbott has never contended that judicial estoppel arises from Hancock's failure to assert claims in *Hancock I*. Instead, judicial estoppel arises because Hancock initially adopted the position that the Agreement was "in full force and effect" and should be enforced, secured final judgment (and affirmation of the judgment) based on that position, and then took the contradictory position in this case that the Agreement should be rescinded. *Newton v. Aitken*, 260 Ill. App. 3d 717, 754, 633 N.E.2d 213, 216 (1994) ("a remedy based on a theory of disaffirmance of a contract (rescission) is inconsistent with a remedy arising out of its affirmance (e.g., damages)."); *ConnectU LLC v. Zuckerberg*, 482 F. Supp. 2d 3, 12 (D. Mass. 2007) (Woodlock, J.) ("where a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage, the doctrine of judicial estoppel may be invoked" (quoting *Alternative Systems Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (internal quotations omitted)). The doctrine of judicial estoppel prevents Hancock from "playing fast and loose with the courts" in this manner. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). The scheduling order did not give Hancock immunity from the judicial estoppel doctrine. It merely provided that "[o]ther disputes, when ripe, may be raised in a separate related action." Affidavit of Stacy L. Blasberg, filed February 9, 2007 (Blasberg Aff."), Exh. 22 at ¶ 1. Hancock could have filed a claim for rescission in "a separate related action" and withdrawn its request for affirmation and enforcement of the Agreement. Instead, it chose to secure a final judgment relieving it from $110 million in Program Payments based on

- 7 -

*enforcement* of the Agreement and affirming that the Agreement remained "in full force and effect." Abbott's Statement of Facts, filed July 20, 2007 ("SOF"), ¶¶ 6, 30-31, 39-40.

Hancock argues that Abbott's continued performance of the Agreement "is insufficient to demonstrate the kind of 'serious prejudice' that is necessary to justify a finding of judicial estoppel." Pltfs.' Opp. at 6-7. But "harm to an opponent is not an invariable prerequisite to judicial estoppel." *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 214 (1st Cir. 1987). "Unlike equitable estoppel, which requires such prejudice, the function of judicial estoppel is to protect the integrity of the courts." *Id.* Although courts give consideration to "whether the party asserting the alleged inconsistent position would gain an unfair advantage[,]" this is "not a 'sine qua non to the applicability of judicial estoppel' for it is the court's acceptance of the argument, 'not the benefit flowing from the acceptance, that primarily implicates judicial integrity.'" *ConnectU,* 482 F. Supp. 2d at 12 (quoting *Synopsys,* 374 F.3d at 33).

Moreover, unlike in *Desjardins*, a case relied upon by Hancock, Abbott would suffer prejudice from Hancock's change of position. In *Desjardins*, the court correctly noted that "there are many situations, *especially at the outset of litigation*, where a party is free to assert a position from which it later withdraws -- or even to assert, in the alternative, two inconsistent positions of its potential claims or defenses." *Desjardins v. Van Buren Comm. Hosp.*, 37 F.3d 21, 23 (1st Cir. 1994) (emphasis added). In *Desjardins*, a party was not judicially estopped from changing its initially asserted positions where it abandoned two of the positions prior to a ruling by the court and the other position merely resulted in a temporary stay of an appeal that was not "shown to have caused any serious prejudice to judicial proceedings or the position of the opposing party." *Id.* at 23. By contrast, Hancock maintained its position that the Agreement

should be enforced from December 2003, when it filed its complaint, until the First Circuit affirmed the judgment in September 2006. SOF, ¶¶ 6, 30-31, 39-40. Also, unlike in *Desjardins*, Hancock did not merely obtain a temporary procedural advantage -- it secured a final judgment excusing it from $110 million in payments and a judicial declaration that Abbott's contractual obligations remained "in full force and effect." *Id.*, RFA, § 3.1.

III.    HANCOCK WAIVED ITS RIGHT TO SEEK RESCISSION BY DELAYING FOR YEARS AFTER KNOWLEDGE OF THE ALLEGED FRAUD AND TAKING ACTIONS AFFIRMING THE AGREEMENT

    A.    *Hancock Affirmed the Agreement by Securing a Final Declaratory Judgment in* Hancock I *Enforcing Its Terms and Declaring It "In Full Force and Effect"*

As shown in Abbott's moving papers, Hancock's actions in *Hancock I* preclude its request for rescission under the doctrine of waiver, as well as judicial estoppel. Rather than address Abbott's actual waiver position, Hancock again sets up a straw man argument based on the scheduling order in *Hancock I.* Pltfs.' Opp. at 9. As noted above, the scheduling order merely provided that "[o]ther disputes, when ripe, may be raised in a separate related action." Blasberg Aff., Exh. 22. The order did not require Hancock to wait until final judgment in *Hancock I*, much less seek and obtain affirmation of the judgment in the Court of Appeals, before raising other disputes. Nor did the scheduling order excuse Hancock from the controlling substantive law of Illinois, which provides that a party waives its right to rescission if it delays or takes actions affirming the contract. The waiver did not arise from Hancock's failure to assert fraud or rescission claims in *Hancock I* but from its years of delay in filing a claim in a "*separate related action*" seeking rescission and its calculated decision to secure a final judgment enforcing the Agreement and declaring it "in full force and effect." Blasberg Aff., Exh. 22; *Wollenberger v. Hoover*, 346 Ill. 511, 539-46, 179 N.E. 42, 55-57 (1931) (plaintiff who sued to

- 9 -

enforce a lien for purchase money due under a contract could not thereafter rescind the contract); *Anderson v. Chicago Trust & Sav. Bank*, 195 Ill. 341, 352, 63 N.E. 203, 207 (1902) ("when, after knowledge of [the] fraud, [plaintiff] elected to" enforce his rights under the agreement and obtain a preliminary injunction, "he waived his right to rescind"); *Kel-Keef Enter., Inc. v. Quality Components Corp.*, 316 Ill. App. 3d 998, 1008, 738 N.E.2d 524, 531-32 (2000) ("It is clear that the prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights."); *City of Chicago v. Michigan Beach Housing Coop.*, 297 Ill. App. 3d 317, 322, 696 N.E.2d 804, 809 (1998) (plaintiff that "failed to promptly exercise the option to rescind" and, instead, "sued for damages" and continued to perform, "remains obligated under [the contract], though still free to sue for damages").[1]

B.    *Hancock Affirmed the Agreement and Waived its Right to Rescission by Continuing to Demand Performance by Abbott*

Waiver is further established by the undisputed fact that, after knowledge of the alleged misrepresentations, Hancock continued to demand and accept performance by Abbott under the Agreement. SOF, ¶¶ 21-29. In response, Hancock argues that a party "may seek both its actual damages and rescission of the underlying agreement as alternative remedies," and that there is typically no "election of remedies" until final judgment, therefore, Hancock's demands for performance of the Agreement "do not constitute a waiver or election of remedies." Pltfs.' Opp.

---

[1] Even though Hancock is now belatedly requesting rescission, its pending motion for partial summary judgment on its claim for damages pursuant to Section 3.3(b) (the "Aggregate Spending Target" claim) seeks final judgment premised upon the inconsistent theory of enforcement of the Agreement. *See Newton*, 260 Ill. App. 3d at 754, 633 N.E.2d at 216 (rescission and damages are inconsistent remedies). Hancock admits that it cannot obtain both damages pursuant to Section 3.3(b) and rescission. Pltfs.' Mem. in Supp. of Mot. for Partial Summ. Judg. on Count II, filed July 20, 2007, at 15 n.4. Accordingly, if the Court permits Hancock to pursue rescission, it would constitute an additional ground for denial of Hancock's Section 3.3(b) motion or, at a minimum, for deferral of a ruling on that motion while Hancock's claim for rescission is pending.

at 10. Hancock's references to alternative pleading and "election of remedies" confuse, rather than clarify, the issue. "It is somewhat misleading to think of the choice an injured party has to make between avoiding and affirming a contract in 'election of remedies' terms." *Gannett Co., Inc. v. Register Publishing Co.*, 428 F. Supp. 818, 825 (D. Conn. 1977). Although "[a]s a matter of pleading" a party may be permitted to assert a claim for rescission or damages in the alternative, "[t]he real issue is not one of pleading but of substantive contract law":

> One fraudulently induced into a contract, for instance, may, as a matter of substantive law, either affirm or disaffirm the agreement. An election of the substantive right to affirm extinguishes the substantive right to disaffirm. And so an attempt to invoke the remedy of rescission after an action on the contract may fail, not because of election of inconsistent remedies, but because the plaintiff no longer has the substantive right to disaffirm.

*Id.* Hancock's argument also is divorced from the facts of the case. Hancock did *not* promptly "seek both its actual damages and rescission of the underlying agreement as alternative remedies." Pltfs.' Opp. at 10. Instead, for three years after knowledge of the alleged misrepresentations Hancock sought only enforcement of the Agreement and performance by Abbott, and obtained a final judgment affirming the Agreement. Under Illinois law, Hancock's conduct constitutes an affirmation of the Agreement that waives any subsequent demand for rescission. *Zeidler v. A & W Restaurants, Inc.*, No. 99-C2591, 2001 WL 62571, at *7 (N.D. Ill. Jan. 25, 2001) ("A party that wishes to rescind a contract must do so promptly, and an election to proceed with performance on the contract is inconsistent with the remedy of rescission."); *Brown v. Brown*, 142 Ill. 409, 430, 32 N.E. 500, 506 (1892) ("[The plaintiff] was duty bound to make her election at once, or at least before requiring further performance by the other party.").

C.     *Hancock Waived Its Right to Seek Rescission By Delaying For Years After Knowledge of the Alleged Misrepresentations*

The undisputed facts show that Hancock delayed seeking rescission for years after it admittedly had knowledge of the alleged misrepresentations. Its lengthy delay in seeking rescission is alone sufficient to constitute waiver under well established Illinois law.

      1.     Abbott Never Relinquished Its Right to Seek Summary Judgment on Hancock's Claim for Rescission

Hancock makes the incredible argument that "Abbott waived any argument based on the alleged untimeliness of John Hancock's prayer for rescission" when it stipulated to withdraw its opposition to Hancock's motion to file an amended complaint containing misrepresentation claims regarding ABT-773 and a prayer for rescission. Pltfs.' Opp. at 10-11.[2] Hancock's argument is directly contradicted by the stipulation itself, in which Abbott merely agreed not to oppose Hancock's filing of an amended complaint and expressly reserved its right to contest the claims asserted therein:

> Abbott agrees to withdraw its opposition to John Hancock's Motion to Amend. . . . *Abbott otherwise reserves the right to contest any and all claims asserted in John Hancock's Amended Supplemental Complaint.*

SOF, ¶ 43; Affidavit of Eric J. Lorenzini, filed July 20, 2007 ("Lorenzini Aff."), Exh. 47 at §
3(a)   Abbott's stipulation to allow Hancock to file an amended complaint did not waive its right to file a motion for summary judgment on the claims in that complaint.

Equally absurd is Hancock's argument that the parties' representation to the Court that the December 2006 stipulation resolved "anything that ha[d] been filed or [was] a gleam in the

---

[2]  Hancock does not argue that Abbott waived its right to seek summary judgment on Hancock's rescission claim on grounds other than delay, such as the judicial estoppel doctrine, the limitation of remedies provision of the Agreement, or Hancock's affirmation of the Agreement. Pltfs.' Opp. at 10-11.

eye of any of the attorneys" meant that Abbott relinquished its right to seek summary judgment based on Hancock's waiver of the right to rescission.[3] This is akin to arguing that Abbott stipulated to liability on the ABT-773 misrepresentation claim by withdrawing its opposition to Hancock's motion to amend its complaint to add that claim. The purpose of the stipulation was to resolve *discovery and procedural motions* that were "pending or that [were] currently threatened," not motions for summary judgment that the parties may have contemplated filing in the future. December 6, 2006 Hearing Tr., Morning Session (Docket No. 100) at 3:1-25 & Afternoon Session (Docket No. 101) at 3:1-4:22; Lorenzini Aff., Exh. 47 (Stipulation and Proposed Order) at 1-2 ("the Court directed the parties to meet and confer regarding whether they could resolve the *Discovery-Related Motions* [defined to include Hancock's motion to amend]") (emphasis added).

> 2.    Hancock's Meritless Allegation That Abbott "Obstruct[ed]" the Audit and Made "Baseless Discovery Objections" Is Irrelevant, Because Hancock Has Admitted It Had Knowledge of the Alleged Misrepresentations Regarding All Three Compounds in 2004

Hancock attempts to excuse its long delay in seeking rescission by claiming that "[d]iscovering the nature and extent" of the alleged misrepresentations "has been a long, arduous process" and arguing that Abbott "obstruct[ed]" its contractual compliance audit and made "baseless" discovery objections. Pltfs.' Opp. at 11-13. Besides being untrue, this is an irrelevant and diversionary argument. Hancock was "obligated to take action" promptly after "discover[ing] facts suggesting fraud" to preserve its right to seek rescission. *Booker v. Myler*, No. 06-C1184, 2006 WL 1302521, at *6 (N.D. Ill. May 11, 2006). *See also Sutter v. Rose*, 64

---

[3] Hancock mischaracterizes the record by stating that this motion for summary judgment was filed "a few months" after the stipulation. Pltfs.' Opp. at 11 n.3. In fact, it was filed nearly eight months later, after the close of discovery.

Ill. App. 263, *3 (1896) ("[A] party discovering fraud can not lie by until he discovers its full extent before acting. A further discovery of fraud will not give a further election to rescind.").

There is no genuine dispute that Hancock claimed to have "documentation" of the alleged misrepresentations regarding ABT-594 in November 2003. SOF, ¶ 4; Hancock's Counter Statement of Facts, filed August 21, 2007 ("Resp."), ¶ 4.[4] Furthermore, Hancock has admitted in a verified interrogatory response that it had knowledge of the alleged misrepresentations regarding ABT-518 "on or around June 2004," and knowledge of the alleged misrepresentations regarding ABT-594 and ABT-773 in the "Fall/Winter 2004," from documents produced by Abbott in the audit and in discovery. Lorenzini Aff., Exh. 16 at 28-31. Hancock did not seek to amend its complaint to add a prayer for rescission until October 2006, three years after it first had knowledge of the alleged misrepresentations. SOF, ¶ 42.[5]

The cases cited by Hancock for the proposition that "[a] defendant cannot defeat a rescission claim on grounds of undue delay when the defendant itself is responsible, in whole or in large part, for the alleged delay" are easily distinguishable. For example, in *Evans*, "from the very moment" the plaintiff learned of the fraud he "declined to go further with the contract, and

---

[4] Hancock incorrectly contends that the document Abbott cites to support this statement is inadmissible under Fed. R. Evid. 408 because it "refers to confidential settlement negotiations." Resp., ¶ 4. Rule 408(a) only bars the use of statements made in settlement negotiations "when offered to prove liability for, invalidity of, or amount of a claim . . . or to impeach through a prior inconsistent statement." Fed. R. Evid. 408(a). Rule 408(a) "does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)." Fed. R. Evid. 408(b). Here, Abbott is offering the statements only to show Hancock's knowledge of the alleged fraud.

[5] The prayers in Hancock's June 2005 Complaint and June 2006 Supplemental Complaint for "such other and further relief as the Court deems just and appropriate," *see* Resp. at 15-17, 19-20, 35-36, 45, do not constitute requests for rescission. This vague, boilerplate language did not give any indication that Hancock believed rescission was "just and appropriate" or that it intended to seek such a remedy. It hardly satisfies the rule that a party who desires rescission "must *announce his purpose* and adhere to it." *Kanter v. Ksander*, 344 Ill. 408, 414, 176 N.E. 289 (1931) (emphasis added).

tendered back his deed," but the defendant led the plaintiff "by one promise and another, to

believe that things would finally be made right, until finally, . . . [he] secretly left" the state of

Missouri, leaving plaintiff in possession of worthless property and "in a destitute condition."

*Evans v. Brooks*, 124 P. 599, 601, 603 (Okla. 1912). These facts are hardly analogous to the

instant case, where Hancock admittedly knew of the alleged misrepresentations by 2004 but

failed to pursue rescission and instead obtained a final judgment enforcing the contract.

> 3.     Rule 54(c) Does Not Create Substantive Legal Rights to Which Hancock
>        is Not Otherwise Entitled

Hancock next contends that "Abbott's argument that John Hancock unduly delayed in

seeking rescission is . . . effectively moot" because of Rule 54(c) of Federal Rules of Civil

Procedure. Pltfs.' Opp. at 14. Hancock's argument just begs the question, however, because the

Rule only allows the Court to "grant the relief *to which each party is entitled . . .*" Fed. R. Civ.

P. 54(c); *In re Blinds to Go Share Purchase Litig.*, 443 F. 3d 1, 3 (1st Cir. 2006) (holding that it

was proper to grant rescission where it was "consistent with the contract and with equitable

remedial principles"). Under Illinois law, Hancock is not "entitled" to the relief of rescission and

such an award would not be "consistent with equitable remedial principles" because Hancock

unduly delayed and took actions affirming the agreement. In similar circumstances, federal

courts have denied the remedy of rescission because it is not available under substantive Illinois

law, notwithstanding the purely procedural provisions of Rule 54(c). *See Zeidler*, 2001 WL

62571, at *7-8; *Swartz v. Schaub*, 826 F. Supp. 274, 277-78 (N.D. Ill. 1993); *Guy v. Duff &*

*Phelps, Inc.*, 628 F. Supp. 252, 261-62 (N.D. Ill. 1985); *Booker*, 2006 WL 1302521, at *5-6.

4.     There is No Material Disputed Fact Regarding Hancock's Motives for Not Timely Seeking Rescission

Hancock attempts to avoid summary judgment by arguing that there is a disputed issue of fact as to whether Hancock delayed seeking rescission because it believed the Agreement might still be profitable. This argument fails for two reasons.

First, any factual issue is immaterial, since Hancock's delay is alone sufficient to constitute waiver, irrespective of its motive. Whether Hancock waited because it hoped for a better financial return under the contract, because it first wanted to secure a judgment in *Hancock I*, or some other reason, is beside the point. While a plaintiff's speculation regarding the profitability of the agreement is an equitable factor weighing against rescission, the plaintiff's motives for delay are not a required element for a finding of waiver. *See, e.g., Guy*, 628 F. Supp. at 261-62 ("promptness alone will determine whether [the plaintiff] may proceed with his rescission claim . . . [w]hether he viewed the Security Pacific deal as a sure thing, or whether he was unwilling to give up the proceeds of sale, or whether he found the prospect of a return to the Duff & Phelps stockholder fold . . . unattractive, or whether a combination of those and other factors was at work, is a matter on which this Court need not guess."); *DeSantis v. Brauvin Realty Partners*, 248 Ill. App. 3d 930, 937, 618 N.E.2d 548, 553 (1993) (the "doctrine of 'waiver by conduct'" provides that "[a] person who has been misled by fraud or misrepresentation is required, as soon as he learns the truth, to disaffirm or abandon the transaction with all reasonable diligence") (quoting *Eisenberg v. Goldstein*, 29 Ill. 2d 617, 622, 195 N.E.2d 184, 186-87 (1963)).[6]

---

[6] Hancock makes the unsupported argument that "John Hancock, unlike the plaintiff in *Guy*, did not unduly delay in notifying Abbott of its intention to seek rescission of the Agreement as an alternative remedy after learning the extent of Abbott's misrepresentations, omissions, and fraud." Pltfs.' Opp. at 14-

Second, despite the spin in Hancock's opposition, there is no genuine dispute that Hancock made its belated request for rescission only after the outlook for the investment worsened due to negative developments regarding compounds that Hancock does not allege were misrepresented. It is undisputed that as of September 6, 2005, Hancock estimated a 12.3 percent internal rate of return on the investment, with a probability of loss equal to 10 to 12 percent. SOF, ¶ 32, Lorenzini Aff., Exh. 38 (Hancock loan review, dated September 6, 2005) at JHII012060; Resp., ¶ 32.  By December 6, 2005, Hancock had lowered its estimate of the internal rate of return to 1 percent and increased its estimate of the probability of loss to 20 percent, due to negative developments with respect to ABT-627 (Endothelin), a compound Hancock does not allege was misrepresented. *Compare* Lorenzini Aff., Exh. 38 at JHII012060 *with* Lorenzini Aff., Exh. 39 (Hancock loan review, dated December 6, 2005) at JH012052, JH012054-55 (probability of success for Endothelin "lowered [from 70 percent to 40 percent] due to decision of [FDA's Oncologic Drugs Advisory Committee on September 13, 2005] to not recommend approval of compound to FDA") and "Peak Sales lowered [from $500 million to $400 million] due to potential commercial limitations due to potential toxicity concerns"). *See also* SOF, ¶ 34; Resp., ¶ 34.  There is no genuine dispute that Hancock purported to "reserve its rights" to seek rescission two months later, in February 2006.  SOF, ¶ 35; Resp., ¶ 35.  There also is no genuine dispute that Hancock further downgraded its assessment of the investment in 2006 due to Abbott's decision to cease development of ABT-627 and ABT-510 (TSP), another compound not alleged to have been misrepresented.  SOF, ¶ 41; Resp., ¶ 41; Lorenzini Aff., Exh. 44 at JHII 021957-58 (Hancock loan review with a "Holdings Run Date" of September 30, 2006

---

15 n.6. In fact, the undisputed evidence shows that Hancock's delay was substantially longer than the one

- 17 -

and "Loan Review Date" of December 13, 2006 stating that "Abbott ceased development" of

ABT-627 and ABT-510 "in 2006" and reflecting a 0 percent estimated probability of success for

the compounds).[7] It was not until October 2006, after the prospects for the investment had

precipitously declined, that Hancock belatedly sought to amend its complaint to add a claim for

rescission. SOF, ¶ 42; Resp., ¶ 42.

IV.    ALTHOUGH A SHOWING OF PREJUDICE IS UNNECESSARY, ABBOTT WAS
       PREJUDICED BY HANCOCK'S DELAY AND AFFIRMATION OF THE
       AGREEMENT

Hancock's argument that Abbott would not be prejudiced if Hancock were allowed to

seek rescission, Pltfs.' Opp. at 15, is wrong on two counts. First, Hancock relies on cases

involving the doctrine of laches, but Abbott's motion is based on waiver under the general

rescission doctrine, not laches. The "general rescission doctrine[,]" in Illinois and elsewhere,

"focuses almost exclusively on delay." *Guy*, 628 F. Supp. at 261. "Most cases stressing the need

for the prompt assertion of rescission rights make no reference to the doctrine of laches, and do

not at all mention any need to show prejudice in addition to delay." *Id.* "Those cases treat the

prompt election requirement as an integral component of rescission doctrine, not dependant on

another area of the law." *Id.* "Even those rescission cases that have made reference to the laches

doctrine have downplayed the prejudice element":

---

year delay of the plaintiff in that case. *Guy*, 628 F. Supp. at 261-62.

In its Counterstatement of Facts, Hancock makes the conclusory and incorrect statement that "the record citations do not support Defendant's assertion" that Hancock lowered its estimates of the returns on the investment due to factors unrelated to the alleged misrepresentations. Resp., ¶ 41. As explained above, the citations support this fact and Hancock does not provide any explanation as to why it believes otherwise or offer any contrary evidence. *Id.* Hancock also purports to dispute other facts in a similarly conclusory manner. *See, e.g.*, Resp., ¶ 4, 11-12, 29, 31-34, 41-42, 50, 52-53. These type of responses are insufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e) (non-moving party must "set out specific facts showing a genuine issue for trial."); *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986) (non-moving party "must present affirmative evidence" showing there is a genuine issue of fact).

> [F]ar greater emphasis is placed on the delay in asserting the claim
> than on a change of circumstances, for an unreasonable lapse of
> time between discovering the supposed fraud and bringing the suit
> is of itself prejudicial to the party charged with fraud.

*Id.* at 261-62 (quoting *Schoenbrod v. Rosenthal*, 36 Ill. App. 2d 112, 120, 183 N.E.2d 188, 192

(1962)). *See also Gannett*, 428 F. Supp. at 826 ("the 'laches' language used by the parties . . .

tends to obscure the real issue. . . . the power to avoid the transaction is *conditional* on an offer

made promptly after acquiring knowledge of the fraud . . . *the power of avoidance is lost* if the

injured party unreasonably delays manifesting his intention to avoid to the other party, or if he

manifests an intention to affirm, or if he exercises dominion over the object of the contract. The

emphasized words are substantive and not procedural concepts.") (emphasis in original).

Second, allowing Hancock to seek rescission, after it delayed for years and repeatedly

affirmed the Agreement, *would* seriously prejudice Abbott. After knowledge of the alleged

misrepresentations, Hancock secured a final declaratory judgment excusing it from $110 million

in payments and affirming that Abbott's contractual obligations were "in full force and effect."

SOF, ¶ 31, Lorenzini Aff., Exh. 34, RFA, § 3.1. Consistent with this affirmation of the

Agreement, Hancock continued to demand that Abbott perform its obligations. Accordingly,

Abbott paid Hancock $4 million in management fees, spent over $150 million of its own funds

on development of the Program Compounds in 2004 and 2005 alone, provided progress reports

to Hancock, committed time and resources responding to Hancock's contractual compliance

audit, and divested ABT-773 and ABT-492 to other companies under terms that provide for

Hancock to share any royalties. SOF, ¶¶ 21-29. Allowing Hancock to rescind after Abbott's

performance of these obligations would seriously prejudice Abbott. In addition, Abbott's

performance of these contractual obligations resulted in benefits to Hancock and costs to Abbott that are difficult to quantify, and it would now be impossible to restore the status quo ante.

Hancock incorrectly argues that *Time Warner Sports Merchandising v. Chicagoland Processing Corp*, 974 F. Supp. 1163 (N.D. Ill. 1997) supports its contention that Abbott's performance of the Agreement does not constitute prejudice. First, *Time Warner* concerned an assertion that the claimant "waived its fraud claim" entirely (i.e., waived the right to monetary damages as well as rescission) and Illinois courts have applied a different (and more stringent) test for waiver in such circumstances. *Id.* (citing *Lee v. Heights Bank*, 112 Ill. App. 3d 987, 995, 446 N.E.2d 248, 254 (1983)). Second, the issue presented in *Time Warner* was whether continued performance of the agreement *by the party seeking rescission* caused prejudice. *Id.* at 1170. Here, by contrast, Abbott does not contend that prejudice arose from continued performance (if any) by Hancock but from Hancock's demand and acceptance of continued performance by Abbott. Furthermore, there is additional prejudice here because Hancock, unlike the party in *Time Warner*, secured a final judgment enforcing the Agreement before seeking rescission.

## Conclusion

For the reasons stated above, and in its opening brief, Abbott respectfully requests that the Court grant its motion for summary judgment on Hancock's claim for rescission.

ABBOTT LABORATORIES

By its attorneys,

_____/s/ Michael S. D'Orsi___
Michael S. D'Orsi

Dated: September 11, 2007

- 20 -

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Özge Güzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
(213) 683-9100

and

Peter E. Gelhaar (BBO#188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880
peg@dcglaw.com
msd@dcglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 11, 2007.

Date: September 11, 2007.

_____ /s/ Michael S. D'Orsi _____
Michael S. D'Orsi

3563215 5

- 22 -