UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. | CIVIL ACTION NO. 05-11150-DPW <br><br> **LEAVE TO FILE GRANTED ON SEPTEMBER 27, 2007** |

## PLAINTIFFS' MEMORANDUM IN RESPONSE TO ABBOTT LABORATORIES' OPPOSITION TO STONETURN'S MOTION TO QUASH

Pursuant to this Court's Order of September 27, 2007, Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and Manulife Insurance Company (collectively, "John Hancock" or "Hancock"), respectfully submit this Memorandum in response to Abbott Laboratories' Opposition to the Motion of StoneTurn Group, LLP to Quash or Modify Subpoena (Docket Entry No. 121) (the "Motion to Quash").

### Additional Factual Background

John Hancock filed its original Complaint on June 3, 2005 and its First Amended Supplemental Complaint on December 29, 2006 (Docket Entry No. 103) (the "Complaint" or "Compl."). John Hancock's claims against Abbott include fraud, breach of contract, and indemnification. *See* Compl. ¶¶ 40-57. Hancock's breach of contract claims include those relating

to its failed attempt to audit Abbott's compliance with the parties' Research Funding Agreement, dated March 13, 2001, (the "RFA" or the "Agreement"). *See id.* John Hancock's audit request was prompted in part by the fact that three of the nine Program Compounds encompassed by the RFA failed within months of execution of the Agreement. In an effort to determine what had gone wrong almost immediately with one-third of its portfolio of Program Compounds, John Hancock first attempted to exercise its right under Section 2.5 of the RFA to audit Abbott's books and records pertaining to the Research Program. John Hancock retained StoneTurn to act as its independent auditor.[1]

Notwithstanding the clear terms of Section 2.5, Abbott strenuously resisted John Hancock's attempted compliance audit. *See* Compl., ¶¶ 20-23. Specifically, Abbott resisted by, *inter alia*: (1) refusing to provide numerous documents requested by StoneTurn during the audit; (2) refusing to permit StoneTurn personnel to copy any Abbott records produced during the audit, and delaying providing StoneTurn with copies of documents identified for copying by StoneTurn for up to six months at a time; (3) refusing to permit StoneTurn personnel access to Abbott's employees for purposes of asking questions and gathering further information; and (4) improperly redacting numerous documents so as to render them unreadable and unusable. As alleged in the Complaint, these actions by Abbott, among others, establish that Abbott acted "in a manner contrary to the usual course of contractual compliance audits, and contrary to Abbott's own conduct in reasonably similar circumstances in the past." Compl., ¶ 22(K). These allegations have been part of this case since Hancock filed its initial Complaint in June, 2005.

---

[1] Abbott implies that Hancock retained StoneTurn in connection with *Hancock I*. *See* Abbott Laboratories' Opposition to Motion of StoneTurn Group, LLP to Quash or Modify Subpoena (Docket Entry No. 125) ("Opposition" or "Opp."), p. 1. This is incorrect. StoneTurn was retained by John Hancock to undertake a contractual compliance audit as provided for in the RFA. StoneTurn did not undertake any work in relation to *Hancock I*.

-2-

During discovery in this action, John Hancock requested, for comparative purposes, documents in Abbott's possession pertaining to other contractual compliance audits undertaken by or of Abbott and/or its business partners. *See* Request No. 14 of John Hancock's First Request for the Production of Documents and Things (dated October 7, 2005), annexed as Ex. C to the Affidavit of Richard C. Abati (Docket Entry No. 64) ("Abati Aff.").[2] Abbott made a blanket objection to this Request and refused to produce any of the requested documents. *See* Abati Aff., Ex. H (p. 9). In its opposition to Hancock's Motion to Compel this information, Abbott characterized the information sought as "bear[ing] no relevance to Hancock's claims in this litigation." *See* Abbott's Consolidated Memorandum in Opposition to Plaintiffs' Motion to Compel and in Support of its Motion for Protective Order (Docket Entry No. 160), p. 18. As part of the parties' global resolution of various discovery disputes, including John Hancock's Motion to Compel, Hancock agreed to withdraw that Motion with respect to other audit information. *See* Stipulation and Proposed Order Regarding Certain Pending Motions and Scheduling, dated December 21, 2006 (Docket Entry No. 102) (the "Stipulation"), ¶ 1(e).

## Argument

I. ABBOTT SHOULD BE PRECLUDED FROM DISCOVERING DOCUMENTS THAT IT PREVIOUSLY REFUSED TO PRODUCE TO JOHN HANCOCK ON THE GROUND THAT THEY WERE IRRELEVANT.

Abbott now seeks the very same information from StoneTurn that it refused to produce to John Hancock – documents and testimony relating to other contractual compliance audits.

---

[2] Request No. 14 provides:
Documents concerning other contractual compliance audits that Abbott has undertaken or been subject to at any time from January 1, 1995 to the present, including, without limitation, documents sufficient to identify names of parties who participated in each audit, the inclusive date(s) of each audit, the purpose(s) of each audit, the audit processes employed, and the results of each audit.

Abbott cannot have its cake and eat it too. If Abbott refused to provide information regarding its other contractual compliance audits – information that is far more relevant than audits related to third parties – it should be precluded from seeking the same information from StoneTurn.[3] *See, e.g.*, Simpson v. Univ. of Colorado, 220 F.R.D. 354, 361 (D. Colo. 2004); Estate of Sorrells v. City of Dallas, 192 F.R.D. 203, 209 (N.D. Tex. 2000).

II.  ABBOTT'S REQUEST FOR ADDITIONAL DISCOVERY REGARDING OTHER COMPLIANCE AUDITS SHOULD BE DENIED AS UNTIMELY.

Prior to entering into the Stipulation, and as detailed in the Motion to Quash, Abbott served StoneTurn with a subpoena seeking various documents. Nowhere in that subpoena did Abbott request the production of information concerning other contractual compliance audits undertaken by StoneTurn. Subsequently, Abbott deposed two StoneTurn representatives, Chris Martinez and Mark Hair. Abbott questioned both witnesses extensively regarding their audit-related experience and the conduct of other audits they had been involved in. Abbott now complains that its examination of Messrs. Martinez and Hair was impeded by its lack of access to documents *that it did not request prior to their depositions*. The fact that Abbott did not have any documents related to other StoneTurn compliance audits is due to the simple fact that Abbott did not ask for them. Thus, any suggestion that Abbott's examination of Mr. Martinez and Mr. Hair somehow was "hampered" due to the lack of documents concerning other audits, or that their related testimony was "general" and "unsubstantiated," is entirely of Abbott's own making and does not justify further any discovery on the issue by Abbott.[4]

---

[3]  If the Court concludes that StoneTurn should produce the requested documents and testimony regarding other audits, then Hancock respectfully requests that, for the reasons stated in its Motion to Compel, Abbott be required to produce information and testimony regarding its other contractual compliance audits.

[4]  Abbott erroneously attributes to John Hancock arguments on this issue made by StoneTurn in its Motion to Quash. *See* Opp., p. 3.

III.  **ABBOTT'S REQUEST FOR A STIPULATION OR COURT ORDER BARRING JOHN HANCOCK FROM INTRODUCING EVIDENCE OF OTHER COMPLIANCE AUDITS SHOULD BE REJECTED.**

Finally, Abbott offers to withdraw its request for other audit information from StoneTurn if *John Hancock* stipulates or is ordered not to offer any evidence regarding other compliance audits in its case in chief. *See* Opp. p. 10. Abbott's proposal should be rejected. John Hancock should not be prohibited from offering relevant evidence regarding other contractual compliance audits, as well as evidence of Mr. Martinez's and Mr. Hair's extensive experience in conducting such audits – as elicited in deposition *by Abbott* – merely because Abbott failed to pursue these issues with StoneTurn in a timely manner.[5] This is particularly true given that Abbott has been on notice since at least 2005 that John Hancock contends Abbott breached the RFA by "unreasonably and unjustifiably acting in a manner contrary to the usual course of contractual compliance audits . . . ." Compl., ¶ 22(K). The information is relevant and Abbott's lack of diligence is not grounds to prejudice Hancock.[6]

### Conclusion

Therefore, for the reasons set forth above, John Hancock respectfully requests that the Motion to Quash be granted.

---

[5] Abbott contends that it would oppose the introduction of evidence by John Hancock regarding Mr. Martinez's and Mr. Hair's other audit experience on the grounds that it would constitute "improper expert testimony." Opp., p. 6. First, absent a motion *in limine* precluding such evidence, Abbott's argument is premature. Second, it is not improper expert testimony to offer evidence of a witness's relevant background. *See* Weinstein's Federal Evidence § 401.04 (Joseph M. McLaughlin ed., 2d ed. 1997) (collecting cases); *see also* Butler v. Dagney, No. TH98-0196-C-T/H, 2001 WL 521821, at *8-9 (S.D. Ind. Mar. 5, 2001). Nor is it improper expert testimony to offer evidence as to how the failed Abbott audit differed from other audits that these individuals participated in -- especially where Abbott had an opportunity to extensively question both witnesses regarding these issues.

[6] It is also worth noting that, contrary to Abbott's assertions, this proposal was never discussed with Hancock's counsel.

JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY AND MANULIFE INSURANCE COMPANY

By their attorneys,

*/s/ Karen Collari Troake*
Brian A. Davis (BBO No. 546462)
Joseph H. Zwicker (BBO No. 560219)
Karen Collari Troake (BBO No. 566922)
CHOATE, HALL & STEWART
Two International Place
Boston, MA 02110
Telephone: 617-248-5000
Fax: 617-248-4000

Date: October 2, 2007

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was served by electronic and overnight mail upon Peter E. Gelhaar, Esq., Donnelly, Conroy & Gelhaar, LLP, One Beacon Street, 33rd Floor, Boston, MA 02108, and Eric J. Lorenzini, Esq., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071, on this 2nd day of October, 2007.

                                                   */s/ Karen Collari Troake*
                                                   Karen Collari Troake

4203291v2