# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY), ) ) ) ) ) ) ) ) ) |  |
| Plaintiffs   ) | Civil Action No. 05-11150-DPW |
| v.   ) ) |  |
| ABBOTT LABORATORIES,   ) ) |  |
| Defendants.   ) ) |  |

## ABBOTT LABORATORIES'
## ANSWER AND AFFIRMATIVE DEFENSES
## TO THE SECOND AMENDED SUPPLEMENTAL COMPLAINT

Defendant Abbott Laboratories ("Abbott"), for its answer to the Second Amended Supplemental Complaint filed by plaintiffs, John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Manulife Insurance Company (f/k/a Investors Partner Insurance Company) (collectively "Hancock"), states as follows:

1. Abbott admits than Hancock's action asserts claims for fraud, breach of contract, and indemnification and that Hancock seeks recovery of compensatory and punitive damages, rescission costs and attorneys' fees, but Abbott denies any liability to Hancock for the claims and damages alleged. Abbott further admits the existence of a Research Funding Agreement dated as of March 13, 2001 between Abbott, on the one hand, and John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Investors Partner

- 1 -

4015708.1

Life Insurance Company, on the other than (the "Agreement"). Abbott further admits that this action purports to be filed as a separate related action to the matter captioned *John Hancock Life Insurance Company et al. v. Abbott Laboratories*, Civil Action No. 03-12501-DPW. Abbott denies the remaining allegations of paragraph 1.

**Parties**

2. Abbott, on information and belief, admits John Hancock Life Insurance Company is a Massachusetts corporation having its corporate headquarters in Boston, Massachusetts and that it, among other things, provides insurance and investment products to customers. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations of paragraph 2 and, therefore, denies those allegations.

3. Abbott, on information and believe, admits John Hancock Variable Life Insurance Company is a Massachusetts corporation having its corporate headquarters in Boston, Massachusetts and that, among other things, it provides insurance products to customers. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations of paragraph 3 and, therefore, denies those allegations.

4. Abbott, on information and belief, admits that Investors Partner Life Insurance Company is a Delaware corporation, having its corporate headquarters in Boston, Massachusetts. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations of paragraph 4 and, therefore, denies those allegations.

5. Abbott admits that it is an Illinois corporation having its headquarters in Abbott Park, Illinois. Abbott admits that it is a broad based health care company. Abbott admits the remaining allegations of paragraph 5.

**Jurisdiction and Venue**

6. Abbott admits paragraph 6.

7. Abbott admits that venue is proper in this district and that paragraph 7 sets forth portions of the language contained in the Agreement.

### Facts

8. Abbott admits that on March 13, 2001 Abbott and Hancock entered into a written Agreement under which Hancock committed to pay Abbott millions of dollars to help support Abbott's research and development of certain compounds in exchange for the right to receive potential future milestone and royalty payments that might arise from the development of products from those compounds. Abbott denies the remaining allegations of paragraph 8 and refers to the Agreement itself for a statement of its terms.

9. Abbott admits that the nine "Program Compounds" originally encompassed by the Research Program under the Agreement were: (1) ABT-773; (2) ABT-627; (3) ABT-594; (4) ABT-492; (5) ABT-510; (6) ABT-518; (7) ABT-751; and two other compounds, (8) a farnesyltransferase protein inhibitor and (9) a dopamine receptor agonist, neither of which were assigned identification numbers in the Agreement. Abbott denies the remaining allegations of paragraph 9 and refers to the Agreement itself for a statement of its terms.

10. Abbott admits that Hancock committed to pay Abbott the millions of dollars it owes under the Agreement in four annual installments from 2001 through 2004. Abbott further admits that Abbott committed, under the terms specified in the Agreement, also to provide millions of dollars in funding towards the research and development of the compound and, subject to the specific terms and conditions of the Agreement, to spend certain minimum amounts. Abbott denies the remaining allegations of paragraph 10 and refers to the entire Agreement itself for a statement of its terms.

11. Abbott admits that the Agreement comprises more than 35 pages and was the subject of extensive negotiations between the parties and their counsel over a period of approximately one year. Abbott further admits, on information and belief, that Hancock ran

numerous analytical models and conducted other research, either directly or through consultants, to evaluate to risks and rewards of the Agreement. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations of paragraph 11 and, therefore, denies those allegations.

12.     Abbott admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms, representations and warranties. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the remaining allegations of paragraph 12 and, therefore, denies those allegations.

13.     Abbott admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms, representations and warranties. Abbott denies the remaining allegations of paragraph 13.

14.     Abbott admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms. Abbott denies the remaining allegations of paragraph 14.

15.     Abbott admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in the second sentence of paragraph 15 and, therefore, denies those allegations. Abbott denies the remaining allegations of paragraph 15.

16.     Abbott admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms. Abbott denies the remaining allegations of paragraph 16.

17.     Abbott is not required to answer paragraph 17 at this time because this paragraph is the subject of a pending motion to dismiss filed on July 17, 2006.

18.     Abbott is not required to answer paragraph 18 at this time because this paragraph is the subject of a pending motion to dismiss filed on July 17, 2006.

19. Abbott admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms. Abbott denies the remaining allegations of paragraph 19.

20. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations contained in the first sentence of paragraph 20 and, therefore, neither admits nor denies those allegations, but demands strict proof thereof. Abbott denies the existence of any breaches by Abbott and denies the remaining allegations of paragraph 20.

21. Abbott admits that on or about April 12, 2004, Hancock sent a letter to Abbott purporting to give notice of an audit pursuant to Section 2.5 of the Agreement, listing categories of extensive information sought to be examined by Hancock within 30 days and identifying consultants from the StoneTurn Group, LLP as purposed auditors. Abbott denies that Hancock's April 12, 2004 letter proposed an independent audit consistent with the terms of the Agreement. Abbott denies the remaining allegations of paragraph 21.

22. Abbott denies the allegations of paragraph 22.

23. Abbott admits only that Hancock or its representatives made certain requests that exceeded the proper scope of the audit rights and obligations created under Section 2.5 of the Agreement and that Abbott therefore denied those requests. Abbott denies the remaining allegations of paragraph 23.

24. Abbott denies the allegations of paragraph 24.

25. Abbott admits that the second sentence of the introductory paragraph of paragraph 25 contains a partial quotation from one of the exhibits to the Agreement concerning ABT-518, and Abbott refers to the entire Agreement itself for a statement of its terms. Abbott denies the remaining allegations of the introductory paragraph of paragraph 25.

(a) Abbott denies the allegations of paragraph 25(a).

(b) Abbott is not required to answer paragraph 25(b) at this time because this paragraph is the subject of a pending motion to strike filed on November 29, 2007.

   (c) Abbott admits that Abbott represented to John Hancock that Abbott had begun a Phase I clinical trial of ABT-518 in March 2001; Abbott also admits that personnel working on ABT-518 had been instructed to place a temporary hold on the Phase I trial prior to the date of the Agreement.  Abbott denies the remaining allegations of paragraph 25(c).

   (d) Abbott admits that it lifted the hold on the Phase I trial of ABT-518 on March 13, 2001.  Abbott denies the remaining allegations of paragraph 25(d).

   26. Abbott admits that it terminated the development of ABT-518 on or around June 1, 2001.  Abbott denies the remaining allegations of paragraph 26.

   27. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations made in the last sentence of paragraph 27, and, therefore, denies those allegations.  Abbott denies the remaining allegations of paragraph 27.

   28. Abbott admits that the second sentence of the introductory paragraph of paragraph 28 contains two partial quotations from one of the exhibits to the Agreement concerning ABT-594, and Abbott refers to the entire Agreement itself for a statement of its terms.  Abbott is not required to answer the allegation in the introductory paragraph of paragraph 28 "that Abbott's '2001 Current Projection (Plan)' for spending on ABT-594 was '35.0' million dollars, including over $11.5 million for new Phase II and Phase III studies of the compound that Abbott purportedly planned to commence in 2001" at this time because this allegation is the subject of a pending motion to strike filed November 29, 2007.  Abbott denies the remaining allegations of the introductory paragraph of paragraph 28.

   (a) Abbott denies the allegations of paragraph 28(a).

   (b) Abbott admits that it investigated the possible use of one or more outside patient recruitment firms to assist in identifying and enrolling more subjects in its Phase IIb study of ABT-594 in the summer and fall of 2000, but ultimately decided not to retain such a firm in or around December 2000.  Abbott denies the remaining allegations of paragraph 28(b).

   (c) Abbott denies the allegations of paragraph 28(c).

(d)    Abbott admits that in or about late 2000, Abbott made the internal decision to "explor[e] a potential partnership (i.e., co-development) for ABT-594" with another pharmaceutical company. Abbott denies the remaining allegations of paragraph 28(d).

(e)    Abbott admits that it ended enrollment in its Phase IIb study of that compound in early January 2001, at least "2 months ahead of [its] most recent estimate of March 5, 2001," with the knowledge that doing so would result in Abbott enrolling "less than [its] original target of 320 patients." Abbott denies the remaining allegations of paragraph 28(e).

(f)    Abbott is not required to answer paragraph 28(f) at this time because this paragraph is the subject of a pending motion to strike filed on November 29, 2007.

(g)    Abbott denies the allegations of paragraph 28(g).

29.    Abbott denies the allegations of paragraph 29.

30.    Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations made in the last sentence of paragraph 30, and, therefore, denies those allegations. Abbott denies the remaining allegations of paragraph 30.

31.    Abbott admits that the second sentence of the introductory paragraph of paragraph 31 contains a partial quotation from one of the exhibits to the Agreement concerning ABT-773, and Abbott refers to the entire Agreement itself for a statement of its terms. Abbott is not required to answer the allegations in the introductory paragraph of paragraph 31 that "'dosing [was] expected to be once a day,' and that Abbott was developing '[o]ral suspension and I.V. forms [of ABT-773] enabling penetration into pediatrics and hospital segments'" at this time because those allegations are the subject of a pending motion to strike filed November 29, 2007. Abbott denies the remaining allegations of paragraph 31.

(a)    Abbott denies the allegations of paragraph 31(a).

(b)    Abbott is not required to answer paragraph 31(b) at this time because this paragraph is the subject of a pending motion to strike filed on November 29, 2007.

(c)    Abbott is not required to answer paragraph 31(c) at this time because this paragraph is the subject of a pending motion to strike filed on November 29, 2007.

32. Abbott admits that, on December 10, 2001, Abbott's Pharmaceutical Executive Committee ("PEC") decided to make a recommendation that the non-Japanese portion of Abbott's ABT-773 project "be put on hold" and that efforts be made to "aggressively pursue out-licensing or selling" the rights to the compound outside of Japan. Abbott denies the remaining allegations of paragraph 32.

33. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations made in the last sentence of paragraph 33, and, therefore, denies those allegations. Abbott denies the remaining allegations of paragraph 33.

34. Abbott admits that the Research Program cost projections that Abbott has provided to Hancock in Abbott's Annual Research Reports ("ARPs") comply with the reporting requirements of the Agreement. Except as expressly admitted, Abbott denies the remaining allegations of paragraph 34.

35. Abbott lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations made in the last sentence of paragraph 35, and, therefore, denies those allegations. Abbott denies the remaining allegations of paragraph 35.

36. Abbott admits that its 2005 ARP set forth its projected spending on the active Program Compounds as required under the Agreement, and Abbott refers to the 2005 ARP itself for a statement of its terms. Except as expressly admitted, Abbott denies the remaining allegations of paragraph 36.

37. Abbott denies the allegations of paragraph 37.

38. Abbott admits that it provided a 2005 ARP to Hancock in November 2004. Abbott further admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms. Abbott denies that it has any obligation to provide an additional ARP to Hancock until November 2005, provided there is an active research program for any Program Compound at that time. Abbott denies the remaining allegations of paragraph 38.

39. Abbott admits that it has not to date completed an out-license or divestiture of ABT-518 and ABT-594 and certain other Ceased Compounds, but denies that this constitutes a breach of the Agreement. Further responding, Abbott refers to the Agreement itself for a statement of its terms. Abbott denies any remaining allegations of paragraph 39.

40. Abbott denies the allegations of paragraph 40.

41. Abbott is not required to answer paragraph 41 at this time because this paragraph is the subject of a pending motion to dismiss filed on July 17, 2006.

42. Abbott is not required to answer paragraph 42 at this time because this paragraph is the subject of a pending motion to dismiss filed on July 17, 2006.

43. Abbott admits that on or about April 1, 2005, Hancock sent a letter to Abbott setting forth Hancock's belief as to the existence of certain "disputes," as set forth and enumerated in the April 1, 2005 letter. Abbott refers to the April 1, 2005 letter itself for a statement of its terms. Abbott admits that authorized representatives of Hancock and Abbott met in Chicago, Illinois on May 20, 2005 regarding the issues identified in the April 1, 2005 letter and were not able to resolve the disputes discussed at that meeting.

44. Abbott admits that on or about January 5, 2006, Hancock sent a letter to Abbott setting forth Hancock's belief as to the existence of certain "disputes," as set forth and enumerated in the January 5, 2006 letter. Abbott refers to the January 5, 2006 letter itself for a statement of its terms. Abbott admits that representatives of Abbott and Hancock did not meet for the purpose of resolving those disputes within the time period permitted under Section 16.7. Abbott denies any remaining allegations of paragraph 44.

### Claims

#### COUNT 1
(Fraud)

45. Abbott repeats and incorporates herein by reference its responses to the allegations set forth in paragraphs 1 through 44 of Hancock's First Amended Supplemental Complaint in this action.

- 9 -

4015708.1

46. Abbott denies the allegations of paragraph 46.

47. Abbott denies the allegations of paragraph 47.

48. Abbott denies the allegations of paragraph 48.

49. Abbott denies the allegations of paragraph 49.

50. Abbott denies the allegations of paragraph 50.

## COUNT II
### (Breach of Contract)

51. Abbott repeats and incorporates herein by reference its responses to the allegations set forth in paragraph 1 through 50 of Hancock's First Amended Supplemental Complaint in this action.

52. Abbott admits that the Agreement constitutes a valid and binding contract between the parties. Except as expressly admitted, Abbott denies the remaining allegations of paragraph 52.

53. Abbott denies the allegations of paragraph 53.

54. Abbott admits that a covenant of good faith and fair dealing is implied in the Agreement. Except as expressly admitted, Abbott denies the remaining allegations of paragraph 54.

55. Abbott denies the allegations of paragraph 55.

56. Abbott denies the allegations of paragraph 56.

## COUNT III
### (Indemnification)

57. Abbott repeats and incorporates herein by reference its response to the allegations set forth in paragraphs 1 through 56 of Hancock's First Amended Supplemental Complaint in this action.

58. Abbott denies the allegations of paragraph 58.

59. Abbott denies the allegations of paragraph 59.

4015708.1

60. Abbott admits the existence of the Agreement and refers to the entire Agreement itself for a statement of its terms. Abbott denies the remaining allegations of paragraph 60.

61. Abbott admits that on or about April 1, 2005, Hancock sent a letter to Abbott claiming, *inter alia*, the Hancock had sustained losses for which it intended to claim indemnification from Abbott at some unspecified time in the future. Further answering, Abbott refers to the April 1, 2005 letter itself for a statement of its terms. Abbott denies that Hancock has made a proper demand for indemnification of compensable Losses under the Agreement and denies that Hancock is entitled to indemnification from Abbott. Except as expressly admitted, Abbott denies any remaining allegations of paragraph 61.

62. Abbott denies that Hancock made a proper demand for indemnification and denies that Hancock is entitled to indemnification from Abbott. Abbott admits that it has refused to indemnify Hancock for its alleged losses.

WHEREFORE, Abbott respectfully requests that the Court dismiss the Complaint with prejudice, and award Abbot its costs, attorneys' fees and such other relief as the Court deems appropriate.

## **AFFIRMATIVE DEFENSES**

Abbott hereby asserts the following defenses, without assuming any burden of proof on such issues that would otherwise rest on plaintiffs:

### First Affirmative Defense

Hancock has failed to state a claim upon which relief may be granted.

### Second Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of waiver.

### Third Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by the doctrines of laches and unclean hands.

### Fifth Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of election of remedies.

### Sixth Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of ratification.

### Seventh Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of delay.

### Eighth Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by the applicable statute of limitations.

### Ninth Affirmative Defense

Hancock's claims and requests for relief are barred, in whole or in part, by Hancock's own violations and breaches of the Agreement.

- 13 -

### Tenth Affirmative Defense

Some or all of the damages and other relief claimed by Hancock are not recoverable as a matter of law.

### Eleventh Affirmative Defense

Hancock's fraud claim is barred under the economic loss doctrine.

4015708.1

Dated: November 29, 2007        Respectfully submitted,

ABBOTT LABORATORIES

By: ___/s/ Michael S. D'Orsi_____
Michael S. D'Orsi

One of its attorneys

Peter E. Gelhaar (BBO#188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880
peg@dcglaw.com
msd@dcglaw.com

and

Jeffrey I. Weinberger (*pro hac vice*)
Gregory D. Phillips (*pro hac vice*)
Eric J. Lorenzini *(pro hac vice)*
Ozge Guzelsu *(pro hac vice)*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Tele:  (213) 683-9100
*Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 29, 2007.

Date: November 29, 2007.

              /s/ Michael S. D'Orsi       _____
                   Michael S. D'Orsi