UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), Plaintiffs, v. ABBOTT LABORATORIES, Defendant. | CIVIL ACTION NO. 05-11150-DPW |

**PLAINTIFFS' RESPONSE TO DEFENDANT ABBOTT LABORATORIES' OBJECTIONS TO AFFIDAVIT OF STEPHEN J. BLEWITT**

Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and Manulife Insurance Company (collectively, "John Hancock" or the "Plaintiffs"), respectfully submit this Response to defendant Abbott Laboratories' Objections to the Affidavit of Stephen J. Blewitt ("Abbott Objections"). Abbott's Objections are not well-founded and should be overruled for the reasons set forth below.

Mr. Blewitt is a John Hancock employee and the principal negotiator of the March 2001 Research Funding Agreement (the "Agreement") on Hancock's behalf. Abbott contends that Paragraphs 83(a)-(g), 84, 85, 87, 88, 96(a)-(t), 97, 98, 100, 101, 109(a)-(f), 110, 111,

113, 114 and 123 of the Affidavit of Stephen J. Blewitt, dated January 28, 2008, (the "Blewitt Affidavit") -- which describe various Abbott misrepresentations and omissions of which Mr. Blewitt has become aware since the Agreement was signed -- are inadmissible as "hearsay," or because Mr. Blewitt purportedly lacks the "personal knowledge" required for a proper foundation. Abbott Objections at 1. Abbott's hearsay and foundation objections miss the point.

Mr. Blewitt's testimony concerning Abbott's various misrepresentations and omissions is not being offered by John Hancock to prove the truth of what is being asserted, but rather to help establish the factual context for John Hancock's assertion that it relied upon Abbott's misrepresentations and omissions in entering into the Agreement. Mr. Blewitt, as the lead negotiator of the Agreement for John Hancock, is ideally situated to have direct personal knowledge regarding the material information that Abbott did and did not provide to Hancock, and what information Hancock actually relied upon in executing the Agreement. Accordingly, Mr. Blewitt's testimony that is "offered to show plaintiffs' reliance on [the defendant's] misrepresentations, not the truth of the misrepresented facts" is "therefore not hearsay." Akin v. Q-L Investments, Inc., 959 F.2d 521, 530 (5th Cir. 1992) (overruling trial court's exclusion of plaintiffs' affidavit testimony describing alleged misrepresentations by defendants on hearsay grounds); *see also* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The same reasoning applies to Mr. Blewitt's testimony regarding Abbott's obstruction of John Hancock's attempted compliance audit. *See* Abbott

Objections at 2. John Hancock will present other competent evidence to prove the substance of each alleged misrepresentation, omission and act of obstruction by Abbott.[1]

Similarly, Abbott's objections to Paragraph 123 of the Blewitt Affidavit on the grounds that it is "conclusory, lacks foundation and calls for speculation" are without merit. It is undisputed in this proceeding that Abbott *did not* provide its "reasonably expected" spending to John Hancock in its various Annual Research Plans ("ARP"), including its 2002 ARP, as expressly required under Section 3.4(iv) of the Agreement. *See, e.g.,* Abbott's Proposed Additional and Substitute Findings of Fact and Conclusions of Law, dated February 4, 2008, ("Abbott ASFOF"), ¶ 133 ("Abbott was not required under the [Agreement] to report its risk-adjusted expected spending to Hancock."). Contrary to Abbott's assertions, Mr. Blewitt's statement that "Hancock quite possibly would not have made its Second Program Payment in January 2003" if that fact had been disclosed to John Hancock is based entirely on Mr. Blewitt's "personal knowledge of Hancock's investment decisions."

Furthermore, Abbott's assertion that John Hancock previously has not disclosed the basis of this claim is contrary to the record in this case. As set forth in John Hancock's response to Abbott's letter of January 23, 2008 (attached at Tab 1) -- which Abbott did not include with its Objection -- John Hancock consistently has alleged, from the commencement of this action in June 2005, that Abbott, *inter alia*, "has misrepresented its intended and reasonably expected spending plans to John Hancock in order to induce John Hancock to enter into the Agreement, and to make Program Payments to Abbott that would not otherwise be due

[1] The underlying truth of these assertions is demonstrated, *inter alia*, by various exhibits that are explicitly referenced in the Blewitt Affidavit and offered by Plaintiffs and Defendant alike. *See, e.g.,* D735, D828, D785 and Pls' I, T, AB (Blewitt Affidavit, ¶ 83(a)-(g)); D534, D559, D555, D797 and Pls' 18, CK, CR (*id.*, ¶ 96(a)-(t)); D607, D580, D781 and Pls' IP, IW, IC (*id.*, ¶ 109(a)-(f)).

under the terms of the Agreement." *See, e.g.*, Complaint, dated June 3, 2005, ¶ 27. John Hancock also consistently has alleged that "[h]ad John Hancock known the true level of Abbott's intended and reasonably expected expenditures, John Hancock ... may not have made certain Program Payments, or may not have entered into the Agreement at all." *See, e.g., id.*, ¶ 28. It is undisputed in this proceeding that the amount of John Hancock's Second Program Payment was $54 million. Abbott ASFOF, ¶ 139. Accordingly, there is *no basis* to exclude Mr. Blewitt's testimony on this issue at trial.

Lastly, Abbott's objections to Paragraphs 142 and 153 of the Blewitt Affidavit, concerning John Hancock's actual damages, should be overruled. John Hancock already has marked and submitted the actual invoices showing the fees and expenses that it incurred in the course of its attempted audit of Abbott's compliance with the Agreement. *See* PLs' Ex. NQ, NR and PV. As for Mr. Blewitt's testimony in Paragraph 153 regarding damages calculations, these statements are limited to his personal knowledge of the information and accounting methods utilized by Dr. Friedman and in no way constitute improper expert opinion.

JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY and MANULIFE INSURANCE COMPANY

By their attorneys,

*/s/ Brian A. Davis*

Brian A. Davis (BBO No. 546462)
Joseph H. Zwicker (BBO No. 560219)
Richard C. Abati (BBO No. 651037)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000

Date: February 29, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 29, 2008.

*/s/ F. Thompson Reece*
F. Thompson Reece

4305917.1

# TAB 1

CHOATE

CHOATE HALL & STEWART LLP

January 31, 2008

Brian A. Davis
(617) 248-5056
bad@choate.com

BY ELECTRONIC AND REGULAR MAIL

Özge Güzelsu, Esquire
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Re: John Hancock Life Insurance Company, *et al.*
v. Abbott Laboratories
U.S.D.C. (Mass.) Civil Action No. 05-11150-DPW

Dear Özge:

I write in response to your letter to Rich Abati, dated January 23, 2008, concerning John Hancock's claim that Abbott misrepresented its intended and reasonably expected spending on Program Related Costs to John Hancock. I believe that Abbott misperceives the basis for that claim, as well as Hancock's corresponding burden of proof.

From the commencement of this action in June 2005, John Hancock consistently has alleged that Abbott, *inter alia*, "has misrepresented its intended and reasonably expected spending plans to John Hancock in order to induce John Hancock to enter into the Agreement, and to make Program Payments to Abbott that would not otherwise be due under the terms of the Agreement." *See*, *e.g.*, Complaint, dated June 3, 2005, ¶ 27. John Hancock also consistently has alleged that "[h]ad John Hancock known the true level of Abbott's intended and reasonably expected expenditures, John Hancock ... may not have made certain Program Payments, or may not have entered into the Agreement at all." *See*, *e.g.*, *id.*, ¶ 28.

Abbott had the obligation, under Section 3.4(iv) of the Research Funding Agreement, to "reasonably demonstrate [to John Hancock] in its Annual Research Plan its intent and reasonable expectation to expend on Program Related Costs during the Program Term an amount in excess of the Aggregate Spending Target." The sworn testimony of Mr. Keith Hendricks, Abbott's Rule 30(b)(6) designee, however, establishes that Abbott's various Annual Research Plans, including without limitation its 2002 Annual Research Plan delivered in late 2001, did not meet the requirements of Section 3.4(iv) because they provided Abbott's inflated "nominal" spending numbers, as opposed to

Letter to Özge Güzelsu, Esq.
MUNGER, TOLLES & OLSON LLP
January 31, 2008
Page 2


its more realistic "expected" spending numbers. John Hancock intends to prove at trial that Abbott's failure in this regard, at a minimum, automatically terminated Hancock's obligation to make its Second Program Payment of $54 million. Because the amount of that Second Program Payment is known, there is no need for expert testimony concerning John Hancock's damages with respect to this claim.

Very truly yours,

Brian A. Davis

4296148.1