UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY),<br><br>          Plaintiffs,<br><br>          v.<br><br>ABBOTT LABORATORIES,<br><br>          Defendants. | CIVIL ACTION NO. 05-11150-DPW<br>Hon. Judge Douglas P. Woodlock |

**OBJECTIONS TO AFFIDAVIT OF LYNN KLOTZ, PH.D.**

Abbott Laboratories ("Abbott") objects to paragraphs 35(a)-(f), 36(a)-(l), 37(a)-(c), and 38-40 (to the extent they incorporate paragraphs 35-37) of the Affidavit of Lynn Klotz, Ph.D. on the grounds of lack of foundation and hearsay.  Each of these paragraphs purports to present "testimony" regarding events that occurred at internal Abbott meetings which Dr. Klotz did not attend, or based upon his interpretation of internal Abbott documents which were not written by or addressed to Dr. Klotz.  The purported "testimony" is nothing more than an improper brief filed by Hancock in an attempt to present additional argument to the Court.

Abbott further objects to these same paragraphs on the grounds that Dr. Klotz was instructed in his deposition not to answer any questions with respect to knowledge he obtained after July 2000 because any such knowledge constituted attorney work product.  (Klotz

Deposition, p. 14, lns. 8 to p. 18, ln. 10). Dr. Klotz testified at his deposition that (1) he did no work on the Abbott-Hancock transaction after July 2000, (Klotz deposition, p. 14, lns. 8-17); (2) he had no knowledge or information about any issues in that case from July 2000 (before the events described in these paragraphs allegedly took place), until he was retained by Choate Hall & Stewart in 2006 as a non-testifying consultant (Klotz Deposition, p. 14, lns. 8 to p. 18, ln. 10; p. 218, ln. 17 to p. 219, ln. 1); (3) that he had no intention of testifying at trial to anything that occurred after July 2000. (Klotz deposition, p. 219, ln. 10 to p. 220, ln. 2). True and correct copies of the above cited portions of the deposition of Lynn Klotz, May 2007 are attached as Exhibit A.

4535591.1

ABBOTT LABORATORIES

By its attorneys

    /s/ Eric J. Lorenzini
Eric J. Lorenzini

Michael S. D'Orsi
Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

and

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Ozge Guzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
(213) 683-9100


Dated: March 3, 2008

**CERTIFICATE OF SERVICE**

       I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 3, 2008.

Date:  March 3, 2008.

                                                                    /s/ Eric J. Lorenzini

# Exhibit A

Klotz, Lynn PhD (Linked)  11/16/2006  9:10:00 AM

1   Volume:  I, Pages 1 - 224    Exhibits: 1 - 19

2          UNITED STATES DISTRICT COURT

3         FOR THE DISTRICT OF MASSACHUSETTS

4           CIVIL ACTION NO. 05-1150DPW

5   - - - - - - - - - - - - - - - - - - - - - x

6   JOHN HANCOCK LIFE INSURANCE COMPANY,

7   JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY,

8   and MANULIFE INSURANCE COMPANY,

9   (f/k/a INVESTORS PARTNER INSURANCE COMPANY),

10           Plaintiffs,

11       v.

12  ABBOTT LABORATORIES,

13           Defendant.

14  - - - - - - - - - - - - - - - - - - - - - x

15

16      VIDEOTAPED DEPOSITION OF LYNN KLOTZ, Ph.D.

17       Thursday, November 16, 2006,  9:10 a.m.

18          Donnelly, Conroy & Gelhaar

19            One Beacon Street

20            Boston, Massachusetts

21

22  Reporter:  Dana Welch, CSR, RPR

23

24       Certified LiveNote Trainer

1       Q. For what purpose were you -- were you

2    looking at the Friedman report?

3       A. I think just general background.

4       Q. Is there anything in the report that you

5    noted that you thought was incorrect?

6       A. No. I thought he did a very good job and

7    thorough.

8       Q. Did you -- when was the last work you did

9    for John Hancock as a consultant in connection with

10   this investment?

11      A. The last work was on this investment. It

12   was the interview with Dr. Leonard at Abbott. And

13   I wrote up a preliminary memo on what -- what --

14   how the interview went and what was said.

15      Q. Okay. We'll be looking at that.

16         That was sometime in the -- in 2000,

17   correct?

18      A. Yeah.

19      Q. And since then, you've done -- besides the

20   preparation for this deposition, you've done no

21   work on this?

22      A. Well, a year ago, I was retained by Choate

23   Hall and Stewart to -- to look into some of the

24   technical issues.

1  Q. What technical issues were you retained to

2  look at?

3     MR. DAVIS: Objection. He's not -- we are

4  not planning on calling him as a testifying

5  expert. We have retained him as an

6  independent consultant non-testifying; so work

7  that he's done for us we would regard as work

8  product.

9     So I'm going to instruct him not to answer

10  questions about that work. He's certainly

11  free to answer any questions about the work

12  that he did pertaining to this transaction

13  before he was retained as an independent

14  consultant.

15  Q. All right. When -- when exactly were you

16  retained; do you know?

17  A. I can't say exactly. I'm guess -- spring

18  of 2000 would be my guess.

19  Q. I mean, in terms of the consultation --

20  strike that.

21     In terms of the retention by Choate

22  Hall --

23  A. About -- about a year ago.

24  Q. About a year ago.

1      (Interruption for clarification by the

2    reporter.)

3      (Off-the-record discussion.)

4    Q. And I -- and I know you know what I'm

5    going to say, but you've got to wait.

6      The other thing is, is sometimes I

7    pause --

8    A. Yeah.

9    Q. -- in the middle of a sentence because I

10   want to get it right so that we have a clear

11   record.

12   A. Okay.

13   Q. And that's not really an invitation for

14   you to jump in and answer.

15   A. May have to remind me a few times.

16   Q. All right.  We're not in a rush.  It's not

17   a speed contest.

18      The -- I think the question was, when were

19   you retained by Choate Hall in connection with this

20   case?

21   A. About a year ago.

22   Q. And about how much time have you spent on

23   the matter?

24   A. About a year ago, I spent maybe two, three

1   weeks.

2       Q.  If you could just answer this yes or no.

3   Did you prepare any -- anything in writing in

4   connection with this --

5       MR. DAVIS:  Objection.  I don't think

6   that -- I instruct him not to answer that

7   question.

8       I mean, again, he's not a testifying

9   expert, so I don't think you're entitled to

10   inquire on work that he's done in a

11   non-testifying basis.

12       MR. WEINBERGER:  Well, yeah, I -- I

13   understand.  But I -- I think that because he

14   is a percipient witness, I'm at least entitled

15   to, without getting into the substance of the

16   work, to test whether that's -- you know, it's

17   a legitimate claim or privilege by asking

18   about the existence of things without going

19   into the substance, I think I'm entitled to do

20   that.

21       MR. DAVIS:  No, I don't think you are.

22   We've disclosed the fact that we retained him

23   as a non-testifying expert.  And actually, I

24   don't think you're entitled to any more than

1     that.

2         So I'm going to instruct him not to answer

3     questions about work that he's done for us as

4     a non-testifying expert.  Again, I'm -- he's

5     here today and he's free to discuss with you

6     any work that he did for Hancock prior to

7     that.

8         Q.  Okay.  So I assume you'll follow your

9     counsel's instructions?

10        A.  Yes.

11        Q.  All right.  Now, getting back to the work

12    you did for Hancock -- and actually, I want to ask

13    you something else.

14            Were -- were you asked in connection with

15    this case to pull together any documents, files,

16    e-mails or any other material you have that related

17    to the work you did for John Hancock on this

18    investment?  And I'm not talking about the work,

19    the consulting work you did with Choate Hall, but

20    I'm talking about work you did in 2000.

21        A.  Yes.  All my documents were shared with

22    Steve Blewitt.

23        Q.  Shared in -- shared in what way?

24        A.  I e-mailed them to him as I was doing

1   was coming to market?

2       A.  Is the only one I knew that -- the only

3   one I can remember I knew anything about, I'll put

4   it that way.

5       Q.  You didn't know it was coming to market;

6   just you remember --

7       A.  No.

8       Q.  It says, "Strict go/no go criteria will

9   determine if the MMPI can meet these hurdles."

10  Were you aware of that?

11      MR. DAVIS:  Objection.  You can respond.

12      THE WITNESS:  No, I wasn't.  This stuff

13  doesn't look familiar from the point of view

14  it was in the first memo.  So --

15      MR. WEINBERGER:  Let me just look at my

16  notes.

17      Q.  Just so we're clear on this, from the time

18  you had your call with Dr. Leonard until the time

19  you were contacted by Choate, you had absolutely no

20  involvement in this matter, correct?

21      A.  I sent, after Dr. Leonard's, I wrote up my

22  notes and sent them.  And I can't remember whether

23  Steve had responded to those, you know, saying

24  thank you, I got them.  I don't know.  But beyond

1   that, I had no contact.

2       MR. WEINBERGER: Okay. And counsel, am I

3   correct that it's your position that all work

4   he did from the time that you contacted him

5   until the present is as an expert consultant,

6   non-testifying consultant?

7       MR. DAVIS: From the time he was retained

8   as a non-testifying expert consultant, that

9   work he has done for us is in that capacity.

10      Q. So you have no knowledge with respect to

11  any issues in this case between the date of your

12  interview with Dr. Leonard and your retention by

13  Choate that you would expect to testify about at

14  the trial of this case; is that correct?

15      A. That's not exactly correct. Gretchen

16  Edson asked me for whatever documents I had and

17  that was sometime before I talked to Brian.

18      MR. DAVIS: I object to the question

19  actually. Please pause.

20      Q. She asked you to produce documents.

21      A. Yes.

22      Q. We've already discussed that.

23      A. Yes.

24      Q. But other than that?

Klotz, Lynn PhD (Linked)  11/16/2006  9:10:00 AM

| | |
|---|---|
| 1 | MR. DAVIS: Objection. You can respond. |
| 2 | THE WITNESS: Other than, no. |
| 3 | MR. WEINBERGER: I have nothing further. |
| 4 | MR. DAVIS: You haven't asked him any |
| 5 | questions about 773. I offer you the |
| 6 | opportunity to do so if you wish. |
| 7 | MR. WEINBERGER: 773 is not in this case. |
| 8 | Should the court grant your -- you've got a |
| 9 | motion for leave to amend, which obviously |
| 10 | means it's not in the case, otherwise you |
| 11 | wouldn't need one. And should the court grant |
| 12 | that motion, then we'll need to take |
| 13 | appropriate discovery with respect to 773 as |
| 14 | well as anything else that is the subject of |
| 15 | the amendment. But I'm not going to be taking |
| 16 | depositions about something that is not in |
| 17 | your complaint. |
| 18 | MR. DAVIS: Okay. Abbott has taken |
| 19 | discovery about 773 in this case already. And |
| 20 | I offer you now the opportunity to question |
| 21 | him about 773 if you wish to do so. I don't |
| 22 | want to bring him back later so that you can |
| 23 | further question him about 773 when it has |
| 24 | been an issue in this case and you have the |

Klotz, Lynn PhD (Linked)  11/16/2006  9:10:00 AM

1      C E R T I F I C A T E

2

3      I, LYNN KLOTZ, Ph.D., do hereby certify that

4   I have read the foregoing transcript of my

5   testimony, and further certify that it is a true

6   and accurate record of my testimony (with the

7   exception of the corrections listed below):

8   Page  Line      Correction

9

10

11

12

13

14

15

16

17

18

19      Signed under the pains and penalties of

20   perjury this ____ day of _____, 2006.

21

22             _____

            LYNN KLOTZ, Ph.D.

23

24

Klotz, Lynn PhD (Linked)   11/16/2006  9:10:00 AM

1      CERTIFICATE

2   Commonwealth of Massachusetts

3   Suffolk, ss.

4

5        I, Dana Welch, Registered Professional

6   Reporter and Notary Public in and for the

7   Commonwealth of Massachusetts, do hereby certify

8   that LYNN KLOTZ, Ph.D., the witness whose

9   deposition is hereinbefore set forth, was duly

10  sworn by me and that such deposition is a true

11  record of the testimony given by the witness.

12       I further certify that I am neither related

13  to nor employed by any of the parties in or counsel

14  to this action, nor am I financially interested in

15  the outcome of this action.

16       In witness whereof, I have hereunto set my

17  hand and seal this 20th day of November, 2006.

18

19       _____

         Dana Welch

20       Notary Public

         My commission expires:

21       October 22, 2010

22

23

24