UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. | CIVIL ACTION NO. 05-11150-DPW |

## PLAINTIFFS' RESPONSE
## TO DEFENDANT ABBOTT LABORATORIES'
## OBJECTIONS TO THE AFFIDAVIT OF ALAN FRIEDMAN

Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and Manulife Insurance Company (collectively, "John Hancock" or the "Plaintiffs"), submit this Response to defendant Abbott Laboratories' Objections to the Affidavit of Alan Friedman ("Abbott Objections"). Abbott's Objections reiterate exactly the same arguments raised in Abbott's prior Motion in Limine to Exclude Expert Testimony of Mr. Friedman (Docket Nos. 183 and 185), which was denied by this Court on October 25, 2007. Nothing has changed, and John Hancock respectfully submits that there is no reason for the Court to alter its decision and sustain Abbott's Objections at this time.

Specifically, Abbott objects to Mr. Friedman's expert testimony regarding his analysis of John Hancock's actual damages on the basis that he utilizes an analytical methodology that purportedly: (a) is "contrary to" Illinois law; (b) calculates losses for a "new business" with "new product[s]" that lack "an established market"; and (c) is based on erroneous assumptions. Abbott's Objections at 1-2. In an effort to deprive John Hancock of any meaningful recovery for Abbott's misconduct, Abbott also continues to pursue its Motion for partial summary judgment on Hancock's alternative prayer for rescission of the Agreement, currently pending. *See* Abbott Laboratories' Motion for Summary Judgment on Hancock's Rescission Claim dated July 20, 2007 (Docket No. 143).

Abbott's Objections are based upon an inaccurate characterization of the facts, misinterpretations of the relevant law, and various analytical contradictions. By way of example:

- rather than being a "new business," Abbott is a Fortune 100 company with substantial technical and financial resources that has been in the business of developing new pharmaceutical compounds for almost 100 years, and that has a long, documented history of success in developing and marketing pharmaceutical products;

- rather than lacking "an established market," the Program Compounds about which Abbott misled John Hancock (ABT-518, ABT-594 and ABT-773) all were targeted, according to Abbott's prior, express representations to Hancock, to well-established and lucrative markets (oncology, neuropathic pain and anti-infectives) in which Abbott, by its own admission, has particular expertise (*See, e.g.,* the Descriptive Memoranda for ABT-518, ABT-594 and ABT-773);

- rather than being "unreliable" or an "unacceptable" method of computing damages and results, Mr. Friedman's damage analysis utilizes an unremarkable probability-weighted, discounted cash-flow methodology that various major pharmaceutical companies (including Abbott) actually rely upon for their own projections and internal investment decisions involving new drug compounds, that has been explicitly recognized and sanctioned by various accounting organizations, including but not limited to the American Institute of Certified Public Accountants ("AICPA") and

the Financial Accounting Standards Board ("FASB"), and that fully comports with relevant law; and

- rather than being "based on erroneous assumptions," Mr. Friedman's analysis utilizes Abbott's own historical success data, as well as Abbott's own revenue projections, which Abbott witnesses have testified represent the "best available data," and are "realistic" and "reasonable".

Although it purports to criticize Mr. Friedman's specific analysis, Abbott's true position, reduced to its essence, is that John Hancock *never* can recover its actual losses resulting from Abbott's misrepresentations, omissions and fraud because *no expert* using *any methodology* can calculate lost profits on new pharmaceutical compounds with a "reasonable degree of certainty" due to what Abbott describes as the "inherently extremely risky nature of pharmaceutical product development." *See, e.g.,* Abbott's Memorandum in support of its Motion in Limine (Docket No. 185) at 10. Abbott is wrong. Abbott dramatically overstates the difficulty of proving John Hancock's actual damages, particularly in light of Abbott's long history of pharmaceutical development and the recognized markets for the Program Compounds at issue. Under Illinois law, "once the existence of damage is established, evidence tending to reasonably approximate the extent of the damage is admissible," De Koven Drug Co. v. First Nat'l Bank of Evergreen Park, 27 Ill.App.3d 798, 802, 327 N.E.2d 378, 380-81 (1st Dist. 1975), and Illinois courts indisputably *have* permitted the recovery of actual damages, including lost profits, in prior cases involving the failed development of new pharmaceutical compounds. *See, e.g.,* Milex Products, Inc. v. Alra Labs., Inc., 237 Ill.App.3d 177, 193, 603 N.E.2d 1226, 1237 (2nd Dist. 1992) (awarding lost profits for defendant's failure to develop and produce new pharmaceutical product

where "evidence showed it to have an established market").[1] Furthermore, the Illinois Supreme

Court has ruled in analogous circumstances that plaintiffs such as John Hancock *are not* required

to prove, to a reasonable degree of certainty, that a "better result would have occurred" absent

the defendant's misconduct in order to recover actual damages, but only that the defendant's

misconduct "proximately caused the [plaintiff's] *increased risk of harm or lost chance of*

*recovery*."     Holton v. Mem. Hosp., 176 Ill.2d 95, 119, 679 N.E.2d 1202, 1213 (1997)

(emphasis added).    "To hold otherwise," the Illinois Supreme Court has stated, "would free"

defendants, like Abbott, "from even the grossest acts" of malfeasance. *Id.*

For these reasons and others, Abbott's Objections should be overruled.

> JOHN HANCOCK LIFE INSURANCE
> COMPANY, JOHN HANCOCK VARIABLE
> LIFE INSURANCE COMPANY and
> MANULIFE INSURANCE COMPANY
>
> By their attorneys,
>
> */s/ Stacy L. Blasberg*
> Brian A. Davis (BBO No. 546462)
> Joseph H. Zwicker (BBO No. 560219)
> Richard C. Abati (BBO No. 651037)
> Stacy L. Blasberg (BBO No. 657420)
> CHOATE, HALL & STEWART LLP
> Two International Place
> Boston, Massachusetts 02110
> Tele: 617-248-5000

Date: March 9, 2008

---

[1] Abbott cites to SK Hand Tool Corp. v. Dresser Indus., Inc., 672 N.E.2d 341, 284 Ill.App.3d 417 (1st Dist. 1996) as proof that this Court should not permit Mr. Friedman's testimony regarding lost profits damages in this case. However, in SK Hand Tool, the Court acknowledges that there are circumstances in which such testimony is appropriate, *i.e.,* in a case, like the present action, involving an "established, profitable business[]" and "expert economic analysis." 672 N.E.2d at 348-49, 284 Ill.App.3d at 427-28 (citing Milex with approval).

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 9, 2008.

/s/ Stacy L. Blasberg
Stacy L. Blasberg