# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY), <br><br>     Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br>     Defendants. | CIVIL ACTION NO. 05-11150-DPW <br> Hon. Judge Douglas P. Woodlock |

## ABBOTT LABORATORIES' RESPONSE TO JOHN HANCOCK'S OBJECTIONS TO THE AFFIDAVIT OF KENNETH STILES

Abbott Laboratories ("Abbott") respectfully submits its response to the objections to the affidavit of Kenneth Stiles. John Hancock objects to paragraphs 9 through 17 of Mr. Stiles' affidavit because, Hancock claims, the substance of the testimony was disclosed to John Hancock after the close of discovery and because it was not allowed to conduct discovery regarding the subjects of these paragraphs. John Hancock's arguments are spurious and completely distort the communications between the parties on this issue and should therefore be rejected. These paragraphs relate solely to John Hancock's claim pursuant to Section 3.3(b) of the Research Funding Agreement ("RFA").

On May 25, 2006, John Hancock served on Abbott its Second Set of Interrogatories including Interrogatory No. 15 which requested "Abbott actual spending on Program Related Costs for each Program Compound during each year of the four-year Program Term (*i.e.*, 2001 through and including 2004), and during the subsequent year commencing immediately after the end of the Program Term (*i.e.*, 2005)." Exhibit 1 (John Hancock's Second Set of Interrogatories). On June 30, 2006, Abbott served its responses to John Hancock's Second Set of Interrogatories, including Interrogatory No. 15. Exhibit 2 (Abbott's Responses and Objections to John Hancock's Second Set of Interrogatories). Abbott's response to Interrogatory No. 15 provided Abbott's spending, by year, for 2001 through 2005. *Id.*

On May 24, 2007, nearly one year after Abbott served its responses *and after the close of discovery* on April 30, 2007, John Hancock for the first time requested that Abbott amend its response to Interrogatory No. 15 to include spending for 2001 commencing on March 13, 2001 and ending on December 31, 2001. Exhibit 3 (May 24, 2007 Letter from B. Davis to E. Lorenzini). According to Hancock, since the 2001 Program Year began on March 13, 2001 and not January 1, 2001, Abbott was required to update its response to provide Hancock with Abbott's spending from March 13, 2001 through December 31, 2001. *Id.* On June 11, 2007, Abbott responded to Hancock's request and informed Hancock that its interrogatory requested Abbott's yearly spending, not its spending by Program Year, and therefore its interrogatory responses were complete and accurate. Exhibit 4 (June 11, 2007 Letter from E. Lorenzini to B. Davis).

On July 13, 2007, Hancock filed a Motion to Compel Abbott Laboratories to Provide a Complete and Accurate Response to John Hancock's Interrogatory Seeking Abbott's Actual Spending During Each Year of the Four-Year Program Term. On July 27, 2007, the parties

4638369.1

stipulated that John Hancock would withdraw its motion provided that Abbott amended its response to Interrogatory No. 15 by August 3, 2007 to disclose its actual monthly spending on the Program Compounds in January, February and March 2001 and produce the internal summary-level documents from which the numbers in the amended interrogatory response are derived.  Exhibit 9 (July 27, 2007 Stipulation Regarding Hancock's Motion to Compel).

Abbott provided Hancock, on August 3, 2007, with its amended response to Interrogatory No. 15 which provided the information sought by Hancock.  Exhibit 5 (Abbott's Amended Responses and Objections to John Hancock's Second Set of Interrogatories).  In the course of determining its monthly spending for 2001, Abbott discovered some inadvertent errors in its original response from 2006 regarding its spending on Program Related Costs from 2001 through 2005.  *Id.* At 4-5.  In the interests of accuracy, Abbott amended its earlier response to include additional spending that was not included in the earlier response.  *Id.*

On August 7, 2007, Hancock requested that Abbott further supplement its response to Interrogatory No. 15 by specifically listing the monthly spending for January, February, and March 2001 even though Abbott had already incorporated that information by reference in its amended interrogatory responses.  Exhibit 6 (August 7, 2007 Email from B. Davis to E. Lorenzini).  In its August 7, 2007 request, Hancock also advised Abbott that it might want to take additional discovery, including depositions, regarding the updated information in Abbott's supplemental responses.  *Id.*  In a response dated August 31, 2007, Abbott informed Hancock that it did not believe additional discovery was necessary and that it would provide a written response setting forth the basis for the amendments to Abbott's response to Interrogatory No. 15. Exhibit 7 (August 31, 2007 Email from E. Lorenzini to B. Davis).

On September 18, 2007, Abbott again provided Hancock with the information it requested and specifically listed the monthly spending by compound for the months of January, February, and March 2001. Exhibit 8 (September 18, 2007 Letter from E. Lorenzini to B. Davis). The September 18, 2007 letter also provided a detailed explanation of the reasons for the amendments to Abbott's response to Interrogatory No. 15. *Id.*

On September 19, 2007, the Court held a scheduling conference with the parties. Exhibit 10 (Transcript of September 19, 2007 Scheduling Conference). During the scheduling conference, the Court noted that Hancock had withdrawn its motion to compel and asked the parties to provide "in advance of the hearing on the 25th" on October 12, 2007 an identification of any outstanding discovery issues, including the 2001 actual spending issue, in the Joint Status Report that was to be filed by the parties. *Id.* at 19 & 26. On October 12, 2007, the parties filed their Joint Status Report. Exhibit 11 (October 12, 2007 Joint Status Report). Hancock's noted in the Joint Status Report that it had requested additional information from Abbott concerning its revised spending figures, that the parties were in disagreement over what additional information Abbott was required to provide, and that "the parties hope to resolve their dispute without the Court's intervention, but may be unable to do so." *Id.* at 4.

On October 25, 2007, the Court held the Pretrial Conference for this case. During that conference, the Court noted that Hancock had raised this issue in the Joint Status Report and sought clarification from the parties regarding the status of the spending issue. Exhibit 12 at 40-46 (Excerpts of October 25, 2007 Pretrial Conference). During the conference, counsel for Abbott stated that Abbott would be happy to provide additional information on the issue if Hancock requested it. *Id.* at 42-43. The Court noted that it expected the issue to be resolved by the parties. *Id.* at 46. Subsequent to that hearing, Hancock did not request any additional

4

information from Abbott or seek any additional discovery.

On February 18, 2008, Abbott filed and served the Affidavit of Kenneth Stiles, which sets forth in paragraphs 9-17 the information contained in Abbott's amended responses to Interrogatory No. 15.  Today, the day before Mr. Stiles is scheduled to testify, Hancock has filed objections to Mr. Stiles' affidavit, claiming that Abbott is precluded from offering his testimony because "Hancock never had an opportunity to conduct discovery regarding the subject of these paragraphs . . .."  Hancock was offered ample opportunity to seek additional information regarding Abbott's amended interrogatory response and did not pursue that discovery.  Hancock cannot therefore claim prejudice from its own failure to seek additional discovery.  Moreover, Hancock's claim that Abbott is precluded from offering Mr. Stiles' testimony because it was disclosed after the close of discovery is completely inappropriate.  Hancock first requested that Abbott update its responses after the close of discovery -- it therefore cannot claim prejudice because Abbott responded to its request after the close of discovery.[1]

Accordingly, Abbott respectfully requests that the Court deny John Hancock's objections to Mr. Stiles' affidavit.

---

[1] Abbott also notes that Hancock proposed that the parties agree to supplement their discovery responses after the close of discovery on June 14, 2007 in an email dated May 15, 2007.  Exhibit 13 (May 15, 2007 Email from R. Abati to O. Guzelsu).  Hancock's claim of prejudice is therefore contrived and designed solely to prevent Abbott from presenting testimony about which it has been on notice for months.

4638369.1

ABBOTT LABORATORIES

By its attorneys

/s/ Eric J. Lorenzini

Eric J. Lorenzini

Michael S. D'Orsi
Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

and

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Ozge Guzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
(213) 683-9100

Dated: March 12, 2008

4638369.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 12, 2008.

Date:  March 12, 2008.

_____  /s/ Eric J. Lorenzini_____

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY),<br><br>           Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>           Defendant. | CIVIL ACTION NO. 05-11150-DPW |

## PLAINTIFFS' SECOND SET OF INTERROGATORIES TO DEFENDANT ABBOTT LABORATORIES

Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and ManuLife Insurance Company (collectively, "John Hancock"), by their attorneys, hereby request, pursuant to Fed. R. Civ. P. 26 and 33 and the Local Rules of this Court, that defendant Abbott Laboratories ("Abbott") respond in writing to the following interrogatories within thirty (30) days of service hereof.

### Definitions

For purposes of these interrogatories, John Hancock adopts the "Uniform Definitions in Discovery Requests" contained in Local Rule 26.5. The following additional terms shall have the meanings set forth below:

1.    "You," "your" and "Abbott" shall mean defendant Abbott Laboratories, its various corporate parents, subsidiaries, affiliates, subdivisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them.

2.    "John Hancock" shall mean collectively defendants John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and ManuLife Insurance Company (f/k/a Investors Partner Life Insurance Company), their various subsidiaries, affiliates, divisions and departments, and any and all representatives, successors, assigns, officers, directors, employees, agents, auditors, attorneys or other persons or entities who have acted or purported to act for or on behalf of any of them, including, without limitation, representatives of the StoneTurn Group.

3.    "Research Funding Agreement" shall mean the Research Funding Agreement by and between Abbott and John Hancock, dated as of March 13, 2001.

4.    "Program Compounds" shall have the meaning set forth in the Research Funding Agreement.

5.    "Program Related Costs" shall have the meaning set forth in the Research Funding Agreement.

6.    "Regarding" shall have the same meaning as "concerning."

<u>Instructions</u>

1.    In construing the interrogatories, the singular form of a word shall be interpreted as plural and the plural as singular as necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

-2-

2.    Pursuant to Fed. R. Civ. P. 26(e), the interrogatories shall be deemed to be continuing and, in the event you discover further information that is responsive or that alters or augments the answers now given, you must promptly provide John Hancock with such information by an amended or supplemental response.

3.    The information called for by the interrogatories includes all responsive information in your possession, custody or control wherever located, including without limitation in the possession or custody of your present or former attorneys, accountants, financial advisors, consultants, auditors, or investigators.

4.    If you object to an interrogatory, state the grounds for your objection with particularity. If you object to a portion or part of an interrogatory, state the grounds for your objection to that portion or part with particularity and respond to the portion or part of the interrogatory to which you have not objected.

5.    If Abbott objects to an interrogatory as unduly or overly broad, Abbott shall provide such information within the scope of the interrogatory as Abbott believes is properly discoverable, and shall state, with particularity, its reason for asserting that the remainder of the information requested is beyond the scope of permissible discovery.

<u>Interrogatories</u>

15.    Please state Abbott's actual spending on Program Related Costs for each Program Compound during each year of the four-year Program Term (*i.e.*, 2001 through and including 2004), and during the subsequent year commencing immediately after the end of the Program Term (*i.e.*, 2005).

-3-

16.    Please state whether any of the representations or warranties made by Abbott in Section 12.2 of the Research Funding Agreement were untrue or inaccurate in any way as of March 13, 2001.

17.    If your answer to Interrogatory No. 16, *supra*, is anything other than an unqualified negative, please state in as much detail as reasonably possible which specific representations or warranties made by Abbott in Section 12.2 of the Research Funding Agreement were untrue or inaccurate as of March 13, 2001 and why.

JOHN HANCOCK LIFE INSURANCE
COMPANY, JOHN HANCOCK VARIABLE
LIFE INSURANCE COMPANY and
MANULIFE INSURANCE COMPANY

By their attorneys,

Brian A. Davis (BBO No. 546462)
Joseph H. Zwicker (BBO No. 560219)
Stacy Blasberg (BBO No. 657420)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000

Date:  May 25, 2006

4084394.1

-4-

**CERTIFICATE OF SERVICE**

I hereby certify that a  true copy of this document was served by e-mail and regular mail upon Michael S. D'Orsi, Esq., Donnelly, Conroy & Gelhaar, LLP, One Beacon Street, 33rd Floor, Boston, MA 02108, and Stephen V. D'Amore, Esq., Winston & Strawn LLP, 35 West Wacker Drive, Chicago, Illinois 60601-9703, on this 25th day of May, 2006.

Richard C. Abati

4085450v1

# Exhibit 2



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY),<br><br>              Plaintiffs,<br><br>      v.<br><br>ABBOTT LABORATORIES,<br><br>              Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 05-11150-DPW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ABBOTT LABORATORIES' RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

Defendant Abbott Laboratories ("Abbott"), by its undersigned counsel and pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rules, hereby responds and objects the Second Set of Interrogatories of Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Investors Partner Life Insurance Company's (collectively, "Hancock").

## GENERAL OBJECTIONS AND RESPONSES

The following General Objections and Responses apply to each and every one of the numbered interrogatories below, and the General Objections and Responses shall be deemed continuing as to each interrogatory and are not waived, or in any way limited, by the specific objections and answers to any individual interrogatory.

1.     Abbott objects to the "Definitions and Instructions" set forth in Hancock's interrogatories, as well as the interrogatories themselves, to the extent that

Hancock seeks to require Abbott to provide information beyond that required by the Federal Rules of Civil Procedure or Local Rules of the Court.

2.    Abbott objects to each Interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges.

3.    Abbott objects to each and every Interrogatory to the extent that it is overly broad in scope or time and unduly burdensome.

4.    Abbott objects to each and every Interrogatory to the extent that it calls for information that is not relevant to any of the claims or defenses in this litigation.

5.    Abbott objects to each and every Interrogatory to the extent that it calls for information outside of Abbott's possession, custody, or control.

6.    To the extent that Abbott responds to specific Interrogatories to which it has objected, Abbott's objections are not waived by the furnishing of such information and Abbott reserves the right to maintain such objections with respect to any additional information.

7.    To the extent that Abbott responds to a specific Interrogatory, Abbott does not admit Plaintiffs' characterizations of any documents, facts, theories, or conclusions.

8.    To the extent that Abbott responds to a specific Interrogatory, Abbott does not admit the relevance of such information to the subject matter of this litigation. Further, by responding to Hancock's interrogatories, Abbott is not waiving any applicable privileges nor shall the inadvertent disclosure of any privileged information operate as a waiver of any applicable privilege or immunity from discovery.

9.    The responses to these Interrogatories are based on information currently known to Abbott and its current employees, and Abbott expressly reserves the right to supplement its responses to these Interrogatories with further additional information and documents as such information and documents become available to Abbott in the course of this litigation.

10.    Except where specifically indicated below, the individuals identified in response to these interrogatories are all current or former employees of Abbott to be contacted only through counsel of record for Abbott herein.

11.    Abbott objects to these interrogatories on the ground that in total, including all discrete subparts, they exceed the total number of interrogatories permitted by the Federal Rules of Civil Procedure, Local Rules and any Orders entered by the Court in this case.

Subject to these General Objections and Responses, and without waiving the same, Abbott states as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

**15.    Please state Abbott's actual spending on Program Related Costs for each Program Compound during each year of the four-year Program Term (i.e., 2001 through and including 2004), and during the subsequent year commencing immediately after the end of the Program Term (i.e., 2005).**

**Response:**    Abbott specifically objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. Subject to these specific objections and its General Objections and Responses, and without waiving them, Abbott states that its actual spending on Program Related Costs for each of the Program Compounds for the period 2001-2005 is set forth below:

| Number | Name | 2001 | 2002 | 2003 | 2004 | 2005 | Total |
|--------|------|------|------|------|------|------|-------|
| ABT-100 | FTI | 3.6 | 2.4 | 0.0 | 0.0 | 0.0 | 6.0 |
| ABT-492 | Quinolone | 20.1 | 28.2 | 4.1 | 0.0 | 0.0 | 52.4 |
| ABT-510 | TSP #1 | 8.8 | 12.3 | 18.5 | 23.6 | 16.2 | 79.4 |
| ABT-518 | MMPI | 3.7 | 0.0 | 0.0 | 0.0 | 0.0 | 3.7 |
| ABT-594 | Neuro Pain | 7.8 | 1.4 | 0.0 | 0.0 | 0.0 | 9.2 |
| ABT-627 | Altrasentan Base | 34.1 | 48.1 | 50.7 | 38.4 | 38.7 | 210.0 |
| ABT-627 | Altrsentan Hormone Naïve Prostate Cancer | 0.0 | 1.2 | 2.5 | 2.3 | 3.3 | 9.3 |
| ABT-627 | Japan | 0.0 | 0.1 | 0.2 | 1.5 | 1.5 | 3.3 |
| ABT-627 | Non-Prostate Cancers | 0.0 | 0.0 | 0.2 | 1.0 | 0.9 | 2.1 |
| ABT-724 | Dopamine 4 Agonist | 3.2 | 5.5 | 0.8 | 0.0 | 0.0 | 9.5 |
| ABT-751 | Anti-Mitotic | 6.5 | 9.6 | 11.0 | 13.5 | 12.3 | 52.9 |
| ABT-773 | Base | 80.3 | 13.8 | (0.9) | 0.3 | 0.0 | 93.5 |
| ABT-773 | Japan | 1.4 | 1.9 | 0.0 | 0.0 | 0.0 | 3.3 |
| | Total | 169.5 | 124.5 | 87.1 | 80.6 | 72.9 | 534.6 |

16.    Please state whether any of the representations or warranties made by Abbott in Section 12.2 of the Research Funding Agreement were untrue or inaccurate in any way as of March 13, 2001.

Response:  Abbott specifically objects to this interrogatory on the grounds that it is grossly compound, overly broad and unduly burdensome. Because Section 12.2 of the Research Funding Agreement incorporates by reference nine other documents, containing hundreds of sentences, the task of determining whether any of the representations or warranties made in Section 12.2 are "untrue" or "inaccurate" "in any way" is unduly burdensome. Moreover, if every sentence in Section 12.2 and the documents incorporated therein are considered representations and warranties, the request exceeds the number of interrogatories permitted (including subparts) in this litigation. Abbott also objects to this interrogatory because it seeks information protected from disclosure under the attorney-client privilege and attorney work product doctrine. This

-4-

interrogatory seeks, *inter alia*, Abbott's legal analysis and conclusions as to which statements contained in the numerous documents attached to the Agreement and incorporated into Section 12.2 constitute a representation or warranty and also whether or not any such representations or warranties were untrue or inaccurate in any way. As a result, this interrogatory cannot be answered without disclosing attorney work product and attorney-client privileged communications, and any response by Abbott would be intertwined with the mental impressions, conclusions, opinions, and legal theories of its counsel as a result of its investigation of the claims made by Hancock in this case. Finally, Abbott objects to this interrogatory on the ground that it attempts improperly to shift the burden of proof from Hancock to Abbott on Hancock's claims in this case.

**17.    If your answer to Interrogatory No. 16, supra, is anything other than an unqualified negative, please state in as much detail as reasonably possible which specific representations or warranties made by Abbott in Section 12.2 of the Research Funding Agreement were untrue or inaccurate as of March 13, 2001 and why.**

**Response:**    Abbott    incorporates    by    reference    its    response    to Interrogatory No. 16.

Respectfully Submitted,

ABBOTT LABORATORIES

By: _____
        One of its attorneys

Peter E. Gelhaar, Esq.
Michael S. Dorsi, Esq.
DONNELLY, CONROY & GELHAAR, LLP
1 Beacon Street, 33rd Floor
Boston, Massachusetts  02108
(617) 720-2880

and

Lawrence R. Desideri, Esq.
Stephen V. D'Amore, Esq.
Stephanie S. McCallum, Esq.
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

*Counsel for Abbott Laboratories*

## VERIFICATION

I, Kenneth Stiles, state under penalties of perjury that:  I am Assistant Controller for Global Pharmaceutical Research and Development at Abbott Laboratories ("Abbott").  I have read the foregoing responses to interrogatories and know the contents thereof; that said answers were prepared with the assistance and advice of counsel and employees of Abbott; that the responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently collected and thus far discovered in the course of the preparation of these answers; that Abbott reserves the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and that, subject to the limitations set forth herein, the responses are true to the best of my knowledge, information and belief.

Interrogatory answers signed under the pains and penalties of perjury this 27th day of June, 2006.

Kenneth Stiles

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that s/he caused a copy of the foregoing **Abbott Laboratories' Response to Plaintiffs' Second Set Of Interrogatories** to be served by Facsimile and U.S. Mail upon the following:

Joseph Zwicker
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

on this 30th day of June, 2006.

# Exhibit 3

# C|H|O|A|T|E

CHOATE HALL & STEWART LLP

May 24, 2007

Brian A. Davis
(617) 248-5056
bad@choate.com

BY ELECTRONIC AND OVERNIGHT MAIL

Eric Lorenzini, Esquire
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071

Re:    John Hancock Life Insurance Company, *et al.*
      v. Abbott Laboratories
      U.S.D.C. (Mass.) Civil Action No. 05-11150-DPW

Dear Eric:

I write seeking information and materials that are missing from Abbott's prior responses to John Hancock's Interrogatories and Requests for Production of Documents in this litigation. Over time, it has become apparent that various Abbott interrogatory responses require amendment pursuant to Fed. R. Civ. P. 26(e)(2). Furthermore, testimony from various present and former Abbott personnel has revealed the existence of relevant documents that have not been produced by Abbott.

For example, John Hancock's First Set of Interrogatories Nos. 6 and 8 requested that Abbott provide detailed information regarding the development status of ABT-518 and ABT-594 as of March 13, 2001, including expected development funding. In response, Abbott cited to its First Annual Research Plan, attached to the Research Funding Agreement as Exhibit 1.6, and monthly reports for March 2001. Mr. Hendricks recently testified, however, that Abbott's Annual Research Plans report "nominal" spending numbers that assume each product's continued development and launch, rather than "expected" spending, which adjusts spending forecasts to account for probability of launch and is called for under Section 3.4 of the Agreement. *See* Deposition Transcript of Keith Hendricks ("Hendricks Depo.") dated April 27, 2007, 110:3-10; 116:18-117:24. Similarly, the March 2001 monthly reports for both compounds also appear to report nominal, not expected, spending. Given that both Interrogatories Nos. 6 and 8, as well as various John Hancock document requests, specifically sought information regarding Abbott's "expected" spending, the information and materials produced to date by Abbott on this topic for ABT-594, ABT-518 and ABT-773 obviously are incomplete. *See, e.g.,* Plaintiffs' First Request for Production of Documents to Defendant Abbott Laboratories No. 26 (requesting "[a]ll documents concerning Abbott's proposed or expected spending on any of the

Letter to Eric Lorenzini, Esq.
MUNGER, TOLLES & OLSON LLP
May 24, 2007
Page 2

Program Compounds"). Abbott must promptly amend and/or supplement its discovery responses accordingly.

The need for Rule 26(e)(2) amendments by Abbott also extends to Abbott's reported actual spending on the Program Compounds. For example, in response to Interrogatory No. 15 of Hancock's Second Set of Interrogatories, Abbott reported that its actual spending on Program Related Costs for the 2001 Program Year totaled $169.5 million. As Mr. Hendricks testified when questioned about the 2003 Preliminary Annual Research Plan, "generally" the "2001 Actuals" spending reported in the Plan "would represent the actual year's expenses" for the entire calendar year. *See* Hendricks Depo. at 124:23-125:3; John Hancock Portfolio Summary (2003 Plan) at Bates number JH000811. As you are aware, Section 1.45 of the Research Funding Agreement defines the first "Program Year" as commencing on the date of the Agreement's execution, March 13, 2001, and ending December 31, 2001. For nearly every Program Compound, the reported "2001 Actuals" in the 2003 Plan are identical to actual spending reported in Interrogatory No. 15. If Abbott's response to Interrogatory No. 15 reports twelve months of spending in 2001, these numbers are inaccurate and require amendment.

Finally, Dr. Leiden revealed during his recent deposition that he and/or others within Abbott routinely created bullet-point documents known as "Operation Highlights" for Abbott's Board of Directors, including information concerning the development of ABT-773 and possibly ABT-594. *See* Deposition Transcript of Jeffrey Leiden, dated April 26, 2007, at 389:10-392:22. To date, these presentations and related Board minutes, which are clearly responsive to John Hancock's document requests, have yet to be produced. Please produce these documents right away, and certainly reasonably in advance of Dr. John Leonard's continued deposition next week.

Thank you for your anticipated cooperation.

Very truly yours,

Brian A. Davis

Brian A. Davis

cc:    Peter E. Gelhaar, Esq. (by electronic mail)
       Michael S. D'Orsi, Esq. (by electronic mail)
       Joseph H. Zwicker, Esq.
       Karen Collari Troake, Esq.

4215363v1

# Exhibit 4

# MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

———

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

ROBERT K. JOHNSON
ALAN V. FRIEDMAN
RONALD L. OLSON
RICHARD S. VOLPERT
DENNIS C. BROWN
ROBERT E. DENHAM
JEFFREY I. WEINBERGER
ROBERT A. ADLER
CARY B. LERMAN
CHARLES D. SIEGAL
RONALD K. MEYER
GREGORY P. STONE
VILMA S. MARTINEZ
BRAD D. BRIAN
BRADLEY S. PHILLIPS
GEORGE M. GARVEY
WILLIAM D. TEMKO
STEVEN L. GUISE
ROBERT B. KNAUSS
STEPHEN M. KRISTOVICH
JOHN W. SPIEGEL
TERRY E. SANCHEZ
STEVEN M. PERRY
MARK B. HELM
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
GREGORY D. PHILLIPS
LAWRENCE C. BARTH
KATHLEEN M. MCDOWELL
GLENN D. POMERANTZ
THOMAS B. WALPER
RONALD C. HAUSMANN
PATRICK J. CAFFERTY, JR.
JAY M. FUJITANI
O'MALLEY M. MILLER
SANDRA A. SEVILLE-JONES
MARK H. EPSTEIN
HENRY WEISSMANN
KEVIN S. ALLRED
BART H. WILLIAMS
JEFFREY A. HEINTZ
JUDITH T. KITANO
KRISTIN LINSLEY MYLES
MARC T.G. DWORSKY
JEROME C. ROTH
STEPHEN D. ROSE
JEFFREY L. BLEICH

GARTH T. VINCENT
TED DANE
MARK SHINDERMAN
STUART N. SENATOR
MARTIN D. BERN
DANIEL P. COLLINS
RICHARD E. DROOYAN
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
MARY ANN TODD
MICHAEL J. O'SULLIVAN
KELLY M. KLAUS
DAVID B. GOLDMAN
BURTON A. GROSS
KEVIN S. MASUDA
HOJOON HWANG
KRISTIN S. ESCALANTE
DAVID C. DINIELLI
ANDREA WEISS JEFFRIES
PETER A. DETRE
PAUL J. WATFORD
DANA S. TREISTER
CARL H. MOOR
DAVID M. ROSENZWEIG
DAVID H. FRY
LISA J. DEMSKY
MALCOLM A. HEINICKE
GREGORY J. WEINGART
TAMERLIN J. GODLEY
JAMES C. RUTTEN
J. MARTIN WILLHITE
RICHARD ST. JOHN
ROHIT K. SINGLA
LUIS LI
CAROLYN HOECKER LUEDTKE
C. DAVID LEE
MARK H. KIM
BRETT J. RODDA
SEAN ESKOVITZ
SUSAN R. SZABO
LINDA S. GOLDMAN
NATALIE PAGES STONE
FRED A. ROWLEY, JR.
JOSEPH S. KLAPACH
MONIKA S. WIENER
LYNN HEALEY SCADUTO
RANDALL G. SOMMER

AARON H. MAY
SHONT E. MILLER
HANNA SEFERIAN
MANUEL F. CACHÁN
ERIC J. LORENZINI
KATHERINE H. HUANG
KATHERINE H. FORSTER
ROSEMARIE T. RING
JOSEPH J. YBARRA
BLANCA FROMM YOUNG
OZGE GÜZELSU
KATE K. ANDERSON
ALISON J. MARKOVITZ
E. DORSEY HEINZ
SAMUEL N. WEINSTEIN
PAUL N. ROHRER
KIT JOHNSON
JAY K. GHIYA
SUSAN TRAUB BOYD
JENNIFER L. POLSE
TODD J. ROSEN
DANIEL L. GEYSER
BRIAN R. NOCHLEOTNER
DEAN N. KAWAMOTO
GRANT A. DAVIS-DENNY
E. MARTIN ESTRADA
JASON RANTANEN
AMY C. TOVAR
REBECCA GOSE LYNCH
JONATHAN H. BLAVIN
JOHN R. GRIFFIN
KAREN J. FESSLER
MICHELLE T. FRIEDLAND
J. RAZA LAWRENCE
LISA C. NIVAKE
MELINDA EADES LEMOINE
ANDREW W. SONG
DANIEL A. BECK
YOHANCE C. EDWARDS
JULIE O. CANTOR
SETH GOLDMAN
FADIA ISSAM RAFEEDIE
DANIEL B. LEVIN
JOSHUA M. GROBAN
VICTORIA L. BOESCH
HAILYN J. CHEN
BRAD SCHNEIDER

DAVID W. SWIFT
JEAN Y. NIEE
ALEXANDRA LANG SUSMAN
GENEVIEVE A. COX
MIRIAM KIM
MISTY M. SANFORD
BRIAN R. DUFF
AIMEE FEINBERG
JOEL D. WHITLEY
JEFFREY Z. ZINSMEISTER
MONICA DIGGS MANGE
KATHARINE L. HALL
KATHERINE XU
KIMBERLY A. CHI
SHOSHANA E. BANNETT
TINA CHAROENPONG
TERHANN E.S. NAGATA
ADAM B. BADAWI
ASHFAQ G. CHOWDHURY
LEE E. TAYLOR
DEREK J. KAUFMAN
KIMBERLY D. ENCINAS
MARCUS J. SPIEGEL
GABRIEL P. SANCHEZ
BETHANY C. WOODARD
PAULA R. LEVY
CONNIE Y. CHANG
DAVID C. YANG
WILLIAM E. CANO
EMILY PAN
BILL WARD
HENRY E. ORREN
MATTHEW A. SPENCE
BENJAMIN W. HOWELL
WESLEY SHIH
JACOB S. KREUKAMP
PAUL J. KATZ
ARIEL A. NEUMAN

RICHARD D. ESSENSHADT
ALLISON B. STEIN
PETER R. TAFT
OF COUNSEL

E. LEROY TOLLES
RETIRED

June 11, 2007

WRITER'S DIRECT LINE
(213) 683-9207
(213) 593-2907 FAX
Eric.Lorenzini@mto.com

SENT BY E-MAIL & U.S. MAIL

Brian Davis
Choate, Hall & Stewart
Two International Place
Boston, MA  02110

Re:   *John Hancock v. Abbott Laboratories*

Dear Brian:

I am writing in response to your May 24, 2007 letter, which requested that Abbott amend its responses to certain interrogatories and produce certain documents. Abbott has confirmed that its responses to the interrogatories are accurate and complete, therefore, it has no plans to amend them. Your request for documents is overbroad, burdensome, untimely, calls for the production of irrelevant and highly confidential material, and is inconsistent with Hancock's failure to produce documents recently requested by Abbott. Nonetheless, Abbott would be willing to compromise regarding the document request on the terms described below.

## Interrogatories Nos. 6 & 8

There is no need for Abbott to amend its responses to Interrogatories Nos. 6 and 8 of Hancock's First Set of Interrogatories. The interrogatories asked Abbott to describe the development status of ABT-518 and ABT-594 as of March 13, 2001, including "the expected development funding." In response, Abbott referenced documents that it had produced, or would produce, including the "March 2001 monthly compound [or project] status reports" ("MPSRs") and the "Development Cost Summar[ies] [or Annual Research Plans] . . . attached as Exhibit 1.6 to the Research Funding Agreement" ("ARPs"). These documents are sufficient to reflect

MUNGER, TOLLES & OLSON LLP

June 11, 2007
Page 2

Abbott's "expected development funding" on the compounds, as requested in the interrogatories. The MPSRs, internal Abbott documents prepared in the ordinary course of business, include projections of Abbott's "Development" "Cost[s] to NDA" for the compounds. (*See e.g.,* D'Amico Ex. 7 (March 2001 ABT-518 MPSR)). Similarly, the ARPs, which were provided to Hancock with the RFA, state Abbott's "Projected Spending by Year" for each compound. (RFA, Ex. 1.6).

You are wrong that Hancock's use of the undefined term "expected" in Interrogatories Nos. 6 and 8 means that Abbott must provide risk-adjusted cost estimates on each compound as of March 13, 2001. As Mr. Hendricks testified, in its internal decision analysis process, Abbott sometimes uses a technical term "expected cost" to refer to risk-adjusted expense estimates (i.e., its planned spending discounted based on the risk of not passing certain milestones) on a portfolio of compounds. (Hendricks Tr. at 110-14, 184-85, 195-98). Mr. Hendricks noted, however, that this is a "far less frequent understanding of the term" "expected" than its use in "common parlance." (*Id.* at 197:8-14). He explained that "on a project-by-project basis" the risk-adjusted expense estimate is not meaningful because it is a hypothetical number that does not reflect Abbott's planned or likely actual spending on the project. (*Id.* at 184:5-22, 194:19-195:15, 197:10-20). Abbott will either spend more or less than the risk-adjusted expense estimate, depending on whether a project passes a particular milestones, but it *will not* spend the risk-adjusted amount. (*Id.* at 184:1-22). Therefore, if the goal is to report "what will be spent next year, on a compound-by-compound basis, the risk adjusted or the decision analysis expected expense is not a good definition to use, because the expense is for sure to be wrong on that project." (*Id.* at 196:17-22). Accordingly, when Abbott internally "plan[s] for budgeting purposes, on a project-by-project [basis]," it generally "report[s] the expectations of spending" assuming that the compounds pass each milestone. (*Id.* at 197:15-17. *See also* D'Amico Ex. 7 (MPSR reporting non-risk adjusted projected spending on ABT-518)).

In response to Interrogatories Nos. 6 and 8, Abbott reported its "expected development costs" in the ordinary sense of the term because the interrogatories do not request Abbott's risk-adjusted expense estimates and Abbott's internal projected costs for particular compounds are generally not risk-adjusted. To the extent Abbott calculated risk-adjusted expense estimates for ABT-518 and ABT-594 at any point in time, the documents reflecting such calculations have been produced to Hancock, and Hancock has had a full opportunity to question Mr. Hendricks and other witnesses on that topic. (*See, e.g.,* Hendricks Tr. at 109-14).

You also are incorrect that the RFA requires Abbott to provide Hancock with its risk-adjusted projected spending on the Program Compounds. This issue is a subject of Hancock's complaint and this is not the appropriate time or place for a complete response, but a few points are worth noting. Section 1.6 defines the ARP as "a reasonably and consistently detailed statement of the . . . *budget* for the Research Program for every Program Year" and specifies that the first annual ARP is attached as Exhibit 1.6. (RFA, § 1.6 (emphasis added)). "[B]udget," in any ordinary sense of the word (and as used by Abbott and Hancock), refers to planned spending, not the risk-adjusted cost estimates Abbott sometimes calculates for specific decision analysis

MUNGER, TOLLES & OLSON LLP

June 11, 2007
Page 3

purposes. Furthermore, it is clear from the face of the first annual ARP -- which is attached as
Exhibit 1.6 to the RFA and incorporated by reference into the definition of ARP -- that the
parties did not intend to include risk adjusted expense estimates in the ARPs. The first annual
ARP simply refers to "Projected Spending by Year" through all milestones and makes no
mention of risk-adjusted expense estimates. (RFA, Ex. 1.6). Nor does Section 3.4 require
Abbott to report risk-adjusted expense estimates. Indeed, Section 3.4 does not impose any
reporting requirements, it simply cross-references the reporting requirements imposed by Section
1.6. Section 3.4 provides that Hancock may terminate Program Payments if Abbott does not
"reasonably demonstrate in its *Annual Research Plan*, its intent and reasonable expectation to
expend" certain amounts during the Program Term. (RFA, § 3.4) (emphasis added). As
discussed above, in the ARPs, Abbott is simply required to report its development "budget" for
each compound; the budget figures reported in the ARP reflected Abbott's "intent and
reasonable expectation" regarding development expenditures.

### Interrogatory No. 15

Even assuming, for the sake of argument, that Section 1.45 of the RFA defines the first
"Program Year" as March 13, 2001 to December 31, 2001, there is no need for Abbott to amend
its responses to Interrogatory No. 15. Interrogatory No. 15 does not ask Abbott to state its actual
spending during each *Program Year*. Instead, it simply asks for Abbott's "actual spending on
Program Related Costs for each Program Compound *during each year* of the four-year Program
Term (i.e., 2001 through and including 2004)[.]" Abbott's response to this Interrogatory is
accurate and complete. Abbott's response lists "its actual spending on Program Related Costs
for each of the Program Compounds for the period 2001-2005[.]" (Abbott's Responses &
Objections to Hancock's Second Set of Interrogatories, Response to No. 15). In addition, your
comments regarding Mr. Hendricks' testimony on this subject are misleading. Hancock's Rule
30(b)(6) deposition notice did not include any topics regarding Abbott's actual spending on the
Program Compounds in 2001 or its reporting of such expenditures to Hancock in the ARPs, and
Mr. Hendricks testified he had no personal knowledge of those subjects. (3/30/07 Notice of
Deposition of Abbott Laboratories; Hendricks Tr. at 121:15-123:2 (no participation in creation of
ARPs, except perhaps in 2005). Mr. Hendricks testified that in Abbott's general practice -- i.e.,
not specifically in the context of reporting cost figures pursuant to a contract with specialized
reporting terms -- the term "actuals" would refer to the total year's actual expenses. (Hendricks
Tr. at 124:23-125:3). Mr. Hendricks had no knowledge, however, of whether the "2001 Actuals"
in the 2003 ARP reflected full year spending because he was not involved with the creation of
that ARP and did not know how much Abbott actually spent on the Program Compounds in
2001. Furthermore, this issue is irrelevant, because Hancock's First Amended Supplemental
Complaint does not include any claims regarding alleged failure to report spending from March
13, 2001 to December 31, 2001 on the Program Compounds.

MUNGER, TOLLES & OLSON LLP

June 11, 2007
Page 4

### Request for Documents

We have confirmed that the minutes of the meetings of the Abbott Board of Directors do not contain any information regarding the Program Compounds or any other information responsive to your document requests.

The Operations Highlights presentations to the Abbott Board of Directors contain an overview of the operations of the entire corporation. The information in such documents is highly confidential and almost entirely irrelevant and non-responsive to Hancock's document requests. Hancock's request for such documents is overbroad and burdensome, in part because it is not bounded by time. In addition, Hancock first made this request after the discovery cut-off. Nonetheless, we would be willing to produce any Operations Highlights presentations from January 2000 to December 2002 that contain information regarding the Program Compounds, if: (1) Hancock agrees that Abbott may redact all text that does not concern the Program Compounds; and (2) Hancock produces the responsive documents it has withheld, the existence of which was revealed during the recent depositions of Mr. Blewitt and Mr. Friedman, namely the (a) the recent loan review documents, Monte Carlo simulations and other documents reflecting Hancock's projections regarding ABT-773 (*see* May 22, 2007 email from Lorenzini to Davis); (b) the arbitrator's opinion in *Gen Probe Incorporated v. Bayer Corporation* (*see* Rough Draft of Transcript of 5/24/07 Deposition of Alan Friedman Tr. ("Friedman Tr.") at 86-90); (c) documents reflecting the Monte Carlo calculations performed by Mr. Friedman (*see* Friedman Tr. at 142); (d) the calculations and analyses underlying Mr. Friedman's opinion regarding damages attributable to alleged misrepresentations concerning specific compounds (*see* Friedman Tr. at 310-11); (e) documents relied upon by Mr. Friedman in forming his opinions regarding Hancock's audit damages and/or reflecting his underlying calculations and analyses regarding those alleged damages (including the invoices from StoneTurn and Choate, Hall, and Stewart for audit-related work) (*see* Friedman Tr. at 321-22, 336-37); any (f) any other documents relied upon by Mr. Friedman in forming his opinions and/or reflecting the underlying calculations and analyses included in his final expert report, to the extent not already produced. Please let us know whether you accept that proposed compromise.

Sincerely,

Eric J. Lorenzini

EJL:macl

3079042.1

# Exhibit 5

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JOHN HANCOCK LIFE INSURANCE        )
COMPANY, JOHN HANCOCK VARIABLE     )
LIFE INSURANCE COMPANY, and        )
MANULIFE INSURANCE COMPANY (f/k/a  )
INVESTORS PARTNER LIFE INSURANCE   )
COMPANY),                          )    CIVIL ACTION NO. 05-11150-DPW
        Plaintiffs,              )
                              )
        v.                       )
                              )
ABBOTT LABORATORIES,               )
        Defendants,              )

## ABBOTT LABORATORIES' AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

        Defendant Abbott Laboratories ("Abbott"), by its undersigned counsel and pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rules, hereby responds and objects the Second Set of Interrogatories of Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company, and Investors Partner Life Insurance Company's (collectively, "Hancock").

### GENERAL OBJECTIONS AND RESPONSES

        The following General Objections and Responses apply to each and every one of the numbered interrogatories below, and the General Objections and Responses shall be deemed continuing as to each interrogatory and are not waived, or in any way limited, by the specific objections and answers to any individual interrogatory.

        1.      Abbott objects to the "Definitions and Instructions" set forth in Hancock's interrogatories, as well as the interrogatories themselves, to the extent that

Hancock seeks to require Abbott to provide information beyond that required by the Federal Rules of Civil Procedure or Local Rules of the Court.

  2. Abbott objects to each Interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privileges.

  3. Abbott objects to each and every Interrogatory to the extent that it is overly broad in scope or time and unduly burdensome.

  4. Abbott objects to each and every Interrogatory to the extent that it calls for information that is not relevant to any of the claims or defenses in this litigation.

  5. Abbott objects to each and every Interrogatory to the extent that it calls for information outside of Abbott's possession, custody, or control.

  6. To the extent that Abbott responds to specific Interrogatories to which it has objected, Abbott's objections are not waived by the furnishing of such information and Abbott reserves the right to maintain such objections with respect to any additional information.

  7. To the extent that Abbott responds to a specific Interrogatory, Abbott does not admit Plaintiffs' characterizations of any documents, facts, theories, or conclusions.

  8. To the extent that Abbott responds to a specific Interrogatory, Abbott does not admit the relevance of such information to the subject matter of this litigation. Further, by responding to Hancock's interrogatories, Abbott is not waiving any applicable privileges nor shall the inadvertent disclosure of any privileged information operate as a waiver of any applicable privilege or immunity from discovery.

3399690.1

9.     The responses to these Interrogatories are based on information currently known to Abbott and its current employees, and Abbott expressly reserves the right to supplement its responses to these Interrogatories with further additional information and documents as such information and documents become available to Abbott in the course of this litigation.

10.     Except where specifically indicated below, the individuals identified in response to these interrogatories are all current or former employees of Abbott to be contacted only through counsel of record for Abbott herein.

11.     Abbott objects to these interrogatories on the ground that in total, including all discrete subparts, they exceed the total number of interrogatories permitted by the Federal Rules of Civil Procedure, Local Rules and any Orders entered by the Court in this case.

Subject to these General Objections and Responses, and without waiving the same, Abbott states as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

**15.     Please state Abbott's actual spending on Program Related Costs for each Program Compound during each year of the four-year Program Term (i.e., 2001 through and including 2004), and during the subsequent year commencing immediately after the end of the Program Term (i.e., 2005).**

**Response:**   Abbott specifically objects to this interrogatory on the grounds that it is overly broad and unduly burdensome.  Subject to these specific objections and its General Objections and Responses, and without waiving them, Abbott states that its actual spending on Program Related Costs for each of the Program Compounds for the period 2001-2005 is set forth below:

| Number | Name | 2001 | 2002 | 2003 | 2004 | 2005 | Total |
|--------|------|------|------|------|------|------|-------|
| ABT-100 | FTI | 3.6 | 2.4 | 0.0 | 0.0 | 0.0 | **6.0** |
| ABT-492 | Quinolone | 20.1 | 28.2 | 4.1 | 0.0 | 0.0 | **52.4** |
| ABT-510 | TSP #1 | 8.8 | 12.3 | 18.5 | 23.6 | 16.2 | **79.4** |
| ABT-518 | MMPI | 3.7 | 0.0 | 0.0 | 0.0 | 0.0 | **3.7** |
| ABT-594 | Neuro Pain | 7.8 | 1.4 | 0.0 | 0.0 | 0.0 | **9.2** |
| ABT-627 | Altrasentan Base | 34.1 | 48.1 | 50.7 | 38.4 | 38.7 | **210.0** |
| ABT-627 | Altrsentan Hormone Naïve Prostate Cancer | 0.0 | 1.2 | 2.5 | 2.3 | 3.3 | **9.3** |
| ABT-627 | Japan | 0.0 | 0.1 | 0.2 | 1.5 | 1.5 | **3.3** |
| ABT-627 | Non-Prostate Cancers | 0.0 | 0.0 | 0.2 | 1.0 | 0.9 | **2.1** |
| ABT-724 | Dopamine 4 Agonist | 3.2 | 5.5 | 0.8 | 0.0 | 0.0 | **9.5** |
| ABT-751 | Anti-Mitotic | 6.5 | 9.6 | 11.0 | 13.5 | 12.3 | **52.9** |
| ABT-773 | Base | 80.3 | 13.8 | (0.9) | 0.3 | 0.0 | **93.5** |
| ABT-773 | Japan | 1.4 | 1.9 | 0.0 | 0.0 | 0.0 | **3.3** |
| | Total | **169.5** | **124.5** | **87.1** | **80.6** | **72.9** | 534.6 |

**Amended Response:** Abbott specifically objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome. Subject to these specific objections and its General Objections and Responses, and without waiving them, Abbott responds as follows:

After meeting and conferring with Hancock, Abbott agreed to amend its response to this interrogatory to state its actual monthly spending on each of the Program Compounds in January, February, and March 2001. In the course of preparing its amended interrogatory response, Abbott discovered some inadvertent errors in its original response. Abbott's corrected actual calendar year spending on Program Related Costs for each of the Program Compounds for the period 2001-2005 is set forth below:

| Number | Name | 2001 | 2002 | 2003 | 2004 | 2005 | Total |
|--------|------|------|------|------|------|------|-------|
| ABT-100 | FTI | 9.2 | 2.4 | 0.0 | 0.0 | 0.0 | **11.6** |
| ABT-492 | Quinolone | 23.1 | 32.8 | 4.1 | 0.0 | 0.0 | **60.0** |
| ABT-510 | TSP #1 | 8.8 | 12.8 | 18.5 | 23.6 | 16.1 | **79.8** |

-4-

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ABT-518 | MMPI | 3.7 | 0.0 | 0.0 | 0.0 | 0.0 | **3.7** |
| ABT-594 | Neuro Pain | 7.8 | 1.4 | 0.0 | 0.0 | 0.0 | **9.2** |
| ABT-627 | Altrasentan Base | 34.1 | 51.8 | 53.6 | 43.4 | 44.6 | **227.5** |
| ABT-627 | Altrsentan Hormone Naïve Prostate Cancer | - | - | - | - | - | - |
| ABT-627 | Japan | - | - | - | - | - | - |
| ABT-627 | Non-Prostate Cancers | - | - | - | - | - | - |
| ABT-724 | Dopamine 4 Agonist | 8.1 | 6.5 | 0.8 | 0.0 | 0.0 | **15.4** |
| ABT-751 | Anti-Mitotic | 6.5 | 9.7 | 11.0 | 13.5 | 12.3 | **53.0** |
| ABT-773 | Base | 80.8 | 13.9 | (0.9) | 0.3 | 0.0 | **94.1** |
| ABT-773 | Japan | - | - | - | - | - | - |
| | Total | **182.1** | **131.3** | **87.1** | **80.8** | **73.0** | **554.3** |

Abbott's actual monthly expenditures on each Program Compound in 2001 are reflected in the Abbott expense reports attached hereto as Exhibit A. Please note that expenditures on the ED Program (ABT-724) are the sum of the expenditures reported on pages A-38 and B-4. Abbott also is producing concurrently with this amended interrogatory response expense reports reflecting the actual expenditures on each Program Compound from 2002 through 2005.

In addition to the expenditures that are listed above and in the attached expense reports, Abbott made management fee and/or milestone payments to Hancock in the amount of $10 million in 2002, $2 million in 2003, and $2 million in 2004, which constitute Program Related Costs under Section 1.43 of the Research Funding Agreement.

**16.     Please state whether any of the representations or warranties made by Abbott in Section 12.2 of the Research Funding Agreement were untrue or inaccurate in any way as of March 13, 2001.**

**Response:**  Abbott specifically objects to this interrogatory on the grounds that it is grossly compound, overly broad and unduly burdensome. Because Section 12.2 of the Research Funding Agreement incorporates by reference nine other documents, containing hundreds of sentences, the task of determining whether any of the

-5-

representations or warranties made in Section 12.2 are "untrue" or "inaccurate" "in any way" is unduly burdensome.   Moreover, if every sentence in Section 12.2 and the documents incorporated therein are considered representations and warranties, the request exceeds the number of interrogatories permitted (including subparts) in this litigation. Abbott also objects to this interrogatory because it seeks information protected from disclosure under the attorney-client privilege and attorney work product doctrine.  This interrogatory seeks, *inter alia,* Abbott's legal analysis and conclusions as to which statements contained in the numerous documents attached to the Agreement and incorporated into Section 12.2 constitute a representation or warranty and also whether or not any such representations or warranties were untrue or inaccurate in any way.  As a result, this interrogatory cannot be answered without disclosing attorney work product and attorney-client privileged communications, and any response by Abbott would be intertwined with the mental impressions, conclusions, opinions, and legal theories of its counsel as a result of its investigation of the claims made by Hancock in this case.  Finally, Abbott objects to this interrogatory on the ground that it attempts improperly to shift the burden of proof from Hancock to Abbott on Hancock's claims in this case.

**17.     If your answer to Interrogatory No. 16, supra, is anything other than an unqualified negative, please state in as much detail as reasonably possible which specific representations or warranties made by Abbott in Section 12.2 of the Research Funding Agreement were untrue or inaccurate as of March 13, 2001 and why.**

**Response:**     Abbott     incorporates     by     reference     its     response     to

Interrogatory No. 16.

-6-

ABBOTT LABORATORIES

By its attorneys

Eric J. Lorenzini

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Ozge Guzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9100

and

Michael S. D'Orsi
Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

Dated: Aug. 3, 2007

-7-

## VERIFICATION

I, Kenneth Stiles, state under penalties of perjury that: I am Assistant Controller for Global Pharmaceutical Research and Development at Abbott Laboratories ("Abbott"). I have read the foregoing responses to interrogatories and know the contents thereof; that said answers were prepared with the assistance and advice of counsel and employees of Abbott; that the responses set forth herein, subject to inadvertent or undiscovered errors, are based on and therefore necessarily limited by the records and information still in existence, presently collected and thus far discovered in the course of the preparation of these answers; that Abbott reserves the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and that, subject to the limitations set forth herein, the responses are true to the best of my knowledge, information and belief.

Interrogatory answers signed under the pains and penalties of perjury this 3rd day of August, 2007.

_Kenneth D. Stiles_
Kenneth Stiles

3399690.1

# Exhibit A

28-Jan-02
PAGE A-11

## PHARMACEUTICAL PRODUCTS R&D
## GLOBAL DISCOVERY PROJECT EXPENSE REPORT
## FARNESYLTRANSFERASE

| | MONTHLY RESULTS | | | | | | | | | | | | YTD Total | YTD Approved APU | Year |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | March | Aprl | May | June | July | Aug | Sept | Oct | Nov | Dec | | | |
| Discovery Administrative Overhead | 69 | 68 | 69 | 69 | 68 | 69 | 69 | 68 | 69 | 69 | 68 | 69 | 824 | 824 | |
| Discovery Functional | 240 | 243 | 259 | 255 | 210 | 233 | 215 | 208 | 209 | 219 | 221 | 226 | 2,738 | 2,756 | 18 |
| Discovery Svc Prch/Sold-Internal | 265 | 299 | 442 | 446 | 429 | 502 | 390 | 473 | 252 | 151 | 233 | 217 | 4,099 | 3,061 | (1,038) |
| Discovery Service Sold-External | | | | | | | | | | | | | | | |
| Total Discovery (less overhead) | 505 | 542 | 701 | 701 | 639 | 735 | 605 | 681 | 461 | 370 | 454 | 443 | 6,837 | 5,817 | (1,020) |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | 17 | 18 | 25 | 29 | 32 | 63 | 55 | 39 | 21 | 26 | 25 | 21 | 371 | 416 | 45 |
| Toxicology/Pathology | 22 | 25 | 28 | 26 | 16 | 43 | 28 | 19 | 37 | 9 | 10 | 63 | 326 | 163 | (163) |
| Comparative Medicine | 34 | 60 | 129 | 121 | 41 | 100 | 23 | 34 | 7 | 14 | 20 | 26 | 611 | 554 | (57) |
| Strategic and Exploratory | | | | | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | | | | | | | | | | | | | | | |
| Medical Services | | | | | | | | | | | | | | | |
| Phase-IV | | | | | | | | | | | | | | | |
| Phase-I Center | | | | | | | | | | | | | | | |
| Clinical | | | | | | | | | | | | | | | |
| ACPRU - Direct | | | | | | | | | | | | | | | |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | | | | | | | | | | | | | | | |
| Biostatistics | | | | | | 9 | 10 | | | | | | 22 | 14 | (8) |
| Research Information Ctr | | | | 1 | | | (3) | | | 1 | | | | | |
| Information Mgmt & Tech | | | | | | | | | | | | | | | |
| International Manpower | | | | | | | | | | | | | | | |
| Grants - Domestic | | | | | | | | | | | | | | | |
| R&D Project Services | | | | | | | | | | | | | | | |
| International Directors | | | | | | | | | | | | | | | |
| Venture Mangement | | | | | | | | | | | | | | | |
| PARD | | 1 | 1 | 23 | 47 | 40 | 21 | | 22 | 25 | 15 | 26 | 221 | 21 | (200) |
| Regulatory Affairs | | | | | | | 5 | | | 1 | | | 6 | | (6) |
| Research QA | | | | | | | | | | | | | | | |
| Investigational Drug QA | | | | | | | | | | | | | | | |
| SPD | | | | | | | | | | | | | | | |
| Genest Credit | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | |
| Judgment | | | | | | | | | | | | | | | |
| **Total** | 449 | 716 | 953 | 970 | 843 | 1,059 | 815 | 841 | 617 | 515 | 592 | 648 | 9,218 | 7,819 | (1,399) |

COMMENTS

CONFIDENTIAL
ABBT0578006

PHARMACEUTICAL PRODUCTS R&D
GLOBAL DELIVERY PROJECT EXPENSE REPORT
QUINOLONE ABT492

| | | | | | | MONTHLY RESULTS | | | | | | | | YTD | YTD Approved | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | March | April | May | Jun | July | Aug | Sept | Oct | Nov | Dec | Total | APU | Var |
| Discovery | 220 | 327 | 355 | 488 | 246 | 229 | 88 | 251 | 86 | 287 | 186 | 88 | 2,851 | 2,829 | (22) |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | 55 | 114 | 194 | 111 | 127 | 142 | 110 | 112 | 84 | 61 | 71 | 75 | 1,256 | 910 | (346) |
| Toxicology/Pathology | 28 | 53 | 50 | 61 | 134 | 108 | 57 | 40 | 26 | 24 | 28 | 29 | 638 | 1,375 | 737 |
| Comparative Medicine | 1 | 38 | 36 | 23 | 39 | 29 | 22 | 19 | 23 | 28 | 26 | 26 | 316 | 117 | (193) |
| Strategic and Exploratory | | | | | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | | | | | | | | | | | | | | | |
| Medical Services | 4 | 3 | 4 | 4 | 4 | 4 | 3 | 4 | 3 | 4 | 4 | 4 | 45 | 41 | (4) |
| Phase-IV | | | | | | | | | | | | | | | |
| Phase-I Center | | | | | | | | | | | | | | | |
| Clinical | 3 | 4 | 6 | 12 | 19 | 15 | 19 | 12 | 44 | 9 | 14 | 10 | 155 | 279 | 124 |
| ACPRU - Direct | | | | | | | | | | 88 | | | 100 | 83 | (17) |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | 14 | 38 | 25 | 38 | 20 | 15 | 10 | 21 | 14 | 18 | 22 | 17 | 252 | 374 | 122 |
| Biostatistics | 11 | 10 | 39 | 22 | 29 | 35 | 16 | 26 | 19 | 13 | 19 | 13 | 252 | 309 | 57 |
| Research Information Ctr | 1 | 6 | 10 | 2 | 3 | (22) | | | | | | | | | |
| Information Mgmt & Tech | | | | | | | | | | | | | | | |
| International Manpower | 71 | 41 | 52 | 75 | 96 | 77 | 248 | 110 | | | (358) | | 412 | 409 | (3) |
| Grants - Domestic | 170 | (40) | 152 | 152 | 152 | 290 | 464 | 464 | 463 | 755 | 572 | 603 | 4,197 | 5,000 | 803 |
| R&D Project Services | | 3 | | 5 | | 7 | 1 | 10 | | 231 | (51) | (14) | 179 | | (179) |
| International Directors | 8 | 8 | 11 | 5 | 9 | 9 | 5 | 5 | 5 | | | | 64 | 53 | (11) |
| Venture Management | 124 | 118 | 132 | 214 | (58) | 107 | 124 | 70 | 97 | 100 | 320 | 74 | 1,222 | 1,123 | (99) |
| PARD | 115 | 179 | 185 | 203 | 207 | 271 | 202 | 189 | 241 | 225 | 597 | 114 | 2,728 | 951 | (1,777) |
| Regulatory Affairs | 5 | 6 | 3 | 5 | 9 | 46 | 5 | 27 | 17 | 8 | 16 | 11 | 174 | 100 | (74) |
| Research QA | 6 | 6 | 9 | 2 | 17 | 22 | 1 | 14 | 11 | 8 | 6 | 18 | 114 | 322 | 208 |
| Re-org | | | | | | | | | | | | | | | |
| Investigational Drug QA | 3 | 1 | 2 | 4 | 6 | 2 | 17 | 15 | 9 | | | 66 | 152 | 86 | |
| SPD | 280 | 280 | 297 | 295 | 366 | 371 | 716 | 476 | 521 | 606 | 377 | 456 | 5,041 | 5,978 | 937 |
| License Pymt/Royalty | | | | | | | | | | 3,000 | | | 3,000 | 2,600 | (400) |
| Other | | | | | | | | | | | | | | 83 | 83 |
| Judgment | 3 | 3 | | | | | | | | | | | 3 | (192) | (195) |
| Total | 1,419 | 1,192 | 1,563 | 1,713 | 1,417 | 1,761 | 2,093 | 1,862 | 1,669 | 5,486 | 1,658 | 1,524 | 23,059 | 22,897 | (162) |

COMMENTS:
A) Unfavorable PARD variance due to effort on impurity and color issues, as well as an apparent underestimate of the required effort in the April Update.

CONFIDENTIAL
ABBT0578007

28-Jan-02
PAGE B-19

PHARMACEUTICAL PRODUCTS R&D
GLOBAL DELIVERY PROJECT EXPENSE REPORT
TSP PEPTIDE ABT5310

| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | YTD Total | YTD Approved APU | Var |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | MONTHLY RESULTS | | | | | | | | | | |
| Discovery | 71 | 140 | 252 | 161 | 70 | 98 | 71 | 83 | 63 | 61 | 101 | 76 | 1,247 | 1,704 | 457 |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | 24 | 43 | 46 | 8 | 39 | 45 | 25 | 8 | 21 | 31 | 43 | 33 | 366 | 1,045 | 679 |
| Toxicology/Pathology | 2 | 10 | 2 | 6 | 14 | 20 | (21) | 2 | 2 | 6 | 1 | 1 | 45 | 164 | 119 |
| Comparative Medicine | | 1 | 5 | 1 | 3 | 9 | 2 | 3 | 15 | | 1 | 1 | 41 | | (41) |
| Strategic and Exploratory | | | | | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | | | | | | | | | | | | | | | |
| Medical Services | 1 | 1 | 1 | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 10 | 9 | (1) |
| Phase-IV | | | | | | | | | | | | | | | |
| Phase-I Center | | | | | | | | | | | | | | | |
| Clinical | 10 | 14 | 28 | 20 | 29 | 30 | 19 | 29 | 29 | 13 | 9 | 8 | 209 | 205 | (4) |
| ACPRU - Direct | | | | | | | | | | | | | | | |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | 7 | 6 | 6 | 9 | 3 | 14 | 11 | 13 | 8 | 10 | 9 | 5 | 101 | 88 | (13) |
| Biostatistics | 2 | 7 | 5 | 19 | 21 | 12 | 7 | 6 | 11 | 18 | 1 | 6 | 115 | 120 | 5 |
| Research Information Ctr | | 1 | 1 | 5 | 1 | (16) | | | | | | | | | |
| Information Mgmt & Tech | | | | | | | | | | | | | | | |
| International Manpower | | | | | | | | | | | | | | | |
| Grants - Domestic | 115 | 116 | 49 | 78 | 77 | 77 | 110 | 111 | 111 | 111 | 44 | 111 | 1,110 | 1,444 | 334 |
| R&D Project Services | 1 | | 1 | | 1 | 3 | 3 | | | 1 | 1 | | 12 | 9 | (3) |
| International Directors | 1 | | | 1 | 2 | | 1 | 3 | 3 | 2 | 1 | 2 | 15 | 29 | 14 |
| Venture Management | | | | | | | | 3 | 3 | 3 | 58 | 92 | 756 | (33) | |
| PARD | 55 | 58 | 56 | 108 | 98 | 36 | 20 | 140 | 63 | 72 | 58 | 94 | 789 | 756 | (33) |
| Regulatory Affairs | 1 | 158 | 133 | 136 | 4 | 204 | 94 | 114 | 73 | 118 | 117 | 94 | 1,394 | 1,139 | (255) |
| Research QA | 9 | 3 | 14 | 6 | 13 | 25 | 5 | 6 | 1 | 10 | 3 | 1 | 64 | 74 | 10 |
| Re-org | | | | | 4 | 4 | 5 | 6 | 5 | 5 | 5 | 2 | 73 | 56 | (17) |
| Investigational Drug QA | 2 | 2 | | 3 | 3 | 3 | 3 | 4 | 12 | | | 4 | 38 | 52 | 14 |
| SPD | 187 | 185 | 203 | 205 | 259 | 253 | 307 | 300 | 391 | 258 | 247 | 369 | 3,164 | 3,383 | 219 |
| License Pymt/Royalty | | | | | | | | | | | | | | | |
| Other | | | 1 | | | | | | | | | | 1 | (2) | (3) |
| Judgment | | | | | | | | | | | | | | | |
| Total | 548 | 751 | 805 | 771 | 672 | 816 | 661 | 795 | 807 | 719 | 643 | 806 | 8,794 | 10,275 | 1,481 |

COMMENTS

A) Increase due to higher manufacturing costs at Cook.
B) Delay in ROSS submissions and 5 month extension of end date for M01-302.

CONFIDENTIAL
ABBT0578008

28-Jan-02
PAGE B-18

**PHARMACEUTICAL PRODUCTS R&D**
**GLOBAL DELIVERY PROJECT EXPENSE REPORT**
**MMPI DEVELOPMENT ABT770/ABT518**

| | MONTHLY RESULTS | | | | | | | | | | | | YTD Total | YTD Approved APU | Var |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | | | |
| Discovery | 22 | 77 | 107 | 151 | 76 | 163 | | 13 | 16 | 10 | 3 | | 648 | 948 | 300 |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | 77 | 95 | 99 | 50 | 47 | 34 | 45 | 6 | 4 | 5 | 15 | 21 | 498 | 480 | (18) |
| Toxicology/Pathology | 117 | 164 | 122 | 139 | 83 | 23 | (5) | (2) | 1 | 5 | 12 | 2 | 661 | 713 | 52 |
| Comparative Medicine | 28 | 29 | 21 | 15 | 4 | | | | | | | | 97 | 111 | 14 |
| Strategic and Exploratory | 17 | 24 | 12 | 21 | 1 | (75) | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
|   Outcomes Res/Admin | | | | | | | | | | | | | | | |
|   Medical Services | | | | | | | | | | | | | 10 | 9 | (1) |
| Phase-IV | | | | 50 | (50) | | | | | | | | | | |
| Phase-I Center | | | | | | | | | | | | | | | |
| Clinical | 1 | 3 | 5 | 3 | 3 | 1 | 1 | 1 | 2 | 2 | 1 | 1 | 23 | 119 | 96 |
| ACPRU - Direct | | | | | | | | | | | | | | | |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | 4 | 4 | 9 | 12 | 11 | 8 | 2 | 4 | 1 | 3 | 2 | 1 | 61 | 56 | (5) |
| Biostatistics | 2 | 3 | 3 | 3 | 4 | 8 | 1 | 2 | | 2 | 2 | 2 | 29 | 47 | 18 |
| Research Information Ctr | | | | | | | | | | | | | | | |
| Information Mgmt & Tech | 16 | 1 | 2 | 2 | 2 | (11) | 6 | 1 | (7) | | | | | | |
| International Manpower | | | | | | | | | | | | | 23 | 23 | |
| Grants - Domestic | 64 | 64 | 64 | 64 | 64 | 64 | 64 | (246) | | | | | 200 | 200 | |
| R&D Project Services | | | | | | | | | | | | | | | |
| International Directors | 4 | 2 | 2 | 4 | 2 | 1 | 5 | 2 | 2 | 2 | 2 | 2 | 25 | 27 | 2 |
| Venture Management | 2 | | | | 1 | | | | | | 1 | | 27 | | |
| PARD | 70 | 66 | 65 | 123 | 27 | 42 | 23 | 160 | 72 | 83 | 66 | 106 | 902 | 805 | (97) |
| Regulatory Affairs | 42 | 54 | 75 | 30 | 40 | 12 | 22 | 18 | 19 | 2 | 2 | 4 | 349 | 349 | 0 |
| Research QA | 13 | 3 | 15 | 8 | 10 | 5 | 1 | 2 | 5 | 9 | 5 | 2 | 44 | 72 | 28 |
| Re-org | | | | | | | | | | | | | 79 | 70 | (9) |
| Investigational Drug QA | 1 | 5 | 3 | 4 | | 4 | | 1 | 1 | | 1 | 1 | 19 | 23 | 4 |
| SPD | | | | | | | | | | 28 | | | 29 | | (29) |
| License Pymt/Royalty | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | |
| Judgment | | | | | | | | | | | | | | 363 | 363 |
| **Total** | 481 | 603 | 621 | 682 | 326 | 321 | 176 | (39) | 120 | 153 | 111 | 142 | 3,697 | 4,414 | 717 |

COMMENTS: Program Discontinued

CONFIDENTIAL
ABBT0578009

28-Jan-02
PAGE B-13

## PHARMACEUTICAL PRODUCTS R&D
## GLOBAL DELIVERY PROJECT EXPENSE REPORT
## CCM ABT394

| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | YTD Total | YTD Approved APU | Var |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Discovery | 5 | 10 | 5 | 11 | 4 | 4 | 6 | 22 | 1 | 1 | 1 | -- | 72 | 71 | (1) |
| **Drug Safety** | | | | | | | | | | | | | | | |
| Metabolism | 21 | 47 | 65 | 68 | 41 | 31 | 14 | 13 | 1 | 6 | 11 | 2 | 320 | 549 | 229 |
| Toxicology/Pathology | 87 | 128 | 159 | 96 | (24) | 63 | 11 | 31 | 31 | 15 | 26 | 22 | 645 | 694 | 49 |
| Comparative Medicine | 2 | -- | -- | -- | -- | 1 | 1 | -- | -- | -- | -- | -- | 4 | 30 | 26 |
| Strategic and Exploratory | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Medical Affairs** | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | 1 | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Medical Services | 1 | 1 | 1 | -- | -- | 1 | -- | 4 | 2 | -- | -- | 2 | 10 | 34 | 34 |
| Phase-IV | -- | -- | 1 | -- | -- | -- | -- | -- | 2 | -- | -- | 2 | -- | 9 | (1) |
| **Phase-I Center** | | | | | | | | | | | | | | | |
| Clinical | 16 | 13 | 34 | 18 | 21 | 48 | 12 | -- | 17 | 4 | -- | 1 | 184 | 349 | 165 |
| ACP/U - Direct | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | 207 | 207 |
| **Development Operations** | | | | | | | | | | | | | | | |
| Data Management | 19 | 30 | 56 | 24 | 7 | 3 | 4 | 3 | 2 | -- | -- | 1 | 149 | 243 | 94 |
| Biostatistics | 25 | 31 | 43 | 37 | 51 | 36 | 11 | 11 | 5 | 11 | 3 | 8 | 272 | 129 | (143) |
| Research Information Cen | 2 | 3 | 7 | 1 | 5 | (18) | -- | -- | -- | -- | -- | -- | -- | 124 | 124 |
| **Information Mgmt & Tech** | | | | | | | | | | | | | | | |
| International Manpower | 4 | -- | -- | 1 | -- | -- | -- | -- | -- | -- | -- | -- | 5 | -- | 4 |
| Grants - Domestic | -- | -- | 1 | 1 | -- | -- | -- | -- | -- | -- | -- | -- | -- | 9 | 9 |
| R&D Project Services | 100 | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | 100 | 100 | -- |
| International Directors | -- | 1 | 1 | -- | -- | 3 | -- | 4 | 2 | -- | -- | (8) | -- | 39 | 39 |
| Venture Management | 655 | 339 | 357 | 911 | (565) | 329 | 320 | 381 | 340 | 303 | 304 | 494 | 4,168 | 3,655 | (513) |
| PARD | 169 | 193 | 213 | 151 | 146 | 204 | 78 | 88 | 51 | 32 | 10 | 21 | 1,356 | 1,048 | (308) |
| Regulatory Affairs | 1 | -- | 2 | 2 | 4 | 35 | 10 | 4 | 3 | 2 | -- | 6 | 74 | 132 | 58 |
| Research QA | 14 | 19 | 16 | 10 | 19 | 12 | 6 | 19 | 5 | 3 | 4 | 2 | 129 | 81 | (48) |
| **Re-org** | | | | | | | | | | | | | | | |
| Investigational Drug QA | 2 | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| SPD | -- | -- | 1 | -- | -- | -- | -- | 1 | -- | 1 | -- | (1) | 4 | 75 | 71 |
| License Pymt/Royalty | -- | -- | 28 | 47 | 31 | 36 | 127 | 36 | 31 | (70) | 31 | 31 | 328 | 357 | 29 |
| Other | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | 141 | 140 |
| Judgment | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | 134 | 134 |
| **Total** | 1,123 | 817 | 988 | 1,377 | (259) | 788 | 603 | 609 | 491 | 310 | 393 | 581 | 7,821 | 8,210 | 389 |

COMMENTS:
A) Unfavorable variance due to milestone budgeting. The Plan is for 6 months of work, while the system projects it over 12 months. Venture is currently reviewing the Phase II results to determine what-for/bier may be required. Currently, the venture is at a "go" "no-go" decision. If a "no-go" decision is granted, the venture has identified approx. $1.5MM in expenses that would not be incurred. If a "go" decision is granted approx. $5.9MM would be required to fund the project for the rest of the year.

CONFIDENTIAL
ABBT05780010

28-Jan-02
PAGE B-17

PHARMACEUTICAL PRODUCTS R&D
GLOBAL DELIVERY PROJECT EXPENSE REPORT
ENDOTHELIN-ABT-627

| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | YTD Total | YTD Approved APU | Var |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Discovery | 7 | 13 | 23 | 9 | 14 | 3 | 2 | 4 | 32 | 49 | 41 | 26 | 223 | 160 | (63) |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | 31 | 51 | 24 | 37 | 46 | 19 | 47 | 56 | 21 | 18 | 27 | 43 | 420 | 991 | 571 |
| Toxicology/Pathology | 3 | 3 | - | - | 3 | 4 | 3 | - | - | 5 | - | 3 | 21 | 349 | 328 |
| Comparative Medicine | - | - | - | - | - | - | - | - | - | 3 | - | - | 3 | 26 | 23 |
| Strategic and Exploratory | | | | | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | 11 | 35 | 30 | 26 | 38 | 6 | 22 | 25 | 28 | 16 | 16 | 53 | 304 | 259 | (45) |
| Medical Services | 16 | 17 | 16 | 16 | 16 | 17 | 17 | 16 | 16 | 16 | 16 | 17 | 195 | 178 | (17) |
| Phase-IV | - | - | - | - | - | - | - | - | - | - | - | 183 | 183 | - | (183) |
| Phase-I Center | | | | | | | | | | | | | | | |
| Clinical | 20 | 32 | 27 | 12 | 30 | 47 | 30 | 56 | 56 | 62 | (14) | 12 | 300 | 579 | 279 |
| ACPRU - Direct | - | - | - | - | - | - | - | - | - | - | 6 | - | 6 | 696 | 690 |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | 56 | 51 | 68 | 48 | 55 | 37 | 34 | 33 | 31 | 53 | 28 | 51 | 545 | 1,596 | 1,051 |
| Biostatistics | 79 | 92 | 80 | 109 | 67 | 68 | 60 | 74 | 56 | 55 | 62 | 64 | 866 | 743 | (123) |
| Research Information Ctr | 5 | 7 | 11 | 4 | 5 | (32) | - | - | - | - | - | - | - | - | - |
| Information Mgmt & Tech | | | | | | | | | | | | | | | |
| International Manpower | 22 | 12 | 15 | 17 | 15 | 17 | 3 | 3 | (6) | - | - | - | 98 | 170 | 72 |
| Grants - Domestic | 1,035 | 1,035 | 1,035 | 1,035 | 776 | 1,018 | 1,033 | 1,944 | 1,943 | 1,943 | 1,719 | 2,855 | 17,371 | 18,044 | 673 |
| R&D Project Services | 13 | 12 | 12 | 10 | 10 | 10 | 7 | 3 | 4 | 5 | 2 | (72) | 20 | 22 | 2 |
| International Directors | 10 | 11 | 32 | 28 | 29 | 23 | 23 | 42 | 25 | 28 | 22 | 11 | 284 | 154 | (130) |
| Venture Management | 548 | 506 | 504 | 950 | 216 | 1,413 | 712 | (249) | 571 | 648 | 459 | 713 | 6,991 | 6,596 | (395) |
| PARD | 217 | 342 | 429 | 253 | 538 | 553 | 311 | 413 | 378 | 385 | 385 | 955 | 5,139 | 3,562 | (1,577) |
| Regulatory Affairs | 17 | 13 | 13 | 25 | 16 | 49 | 14 | 22 | 14 | 24 | 21 | 18 | 246 | 415 | 169 |
| Research QA | 31 | 14 | 15 | 29 | 27 | 12 | 44 | 8 | 11 | 5 | 27 | 4 | 227 | 428 | 201 |
| Re-org | | | | | | | | | | | | | | | |
| Investigational Drug QA | 15 | 11 | 24 | 14 | 22 | 16 | 19 | 16 | 9 | 19 | 13 | 18 | 196 | 262 | 66 |
| SPD | 41 | 41 | 41 | 40 | (146) | 41 | 41 | 40 | 226 | 41 | 43 | 40 | 469 | 683 | 194 |
| License Pymt/Royalty | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | |
| Judgment | - | - | - | - | - | - | - | - | - | - | - | - | - | (40) | (40) |
| Total | 2,177 | 2,293 | 2,396 | 2,664 | 1,767 | 3,320 | 2,422 | 2,436 | 3,415 | 3,350 | 2,873 | 4,994 | 34,107 | 35,874 | 1,767 |

COMMENTS:
A) Increase in PARD due to last minute charges from Cook.
B) Accrual for M00-244 delayed 1 month/1 month delay in ROSS submission M01-304, offset by accelerated spending
C) M01-283 Otc study on hold

CONFIDENTIAL
ABBT0578011

28-Jan-02
PAGE A-38

PHARMACEUTICAL PRODUCTS R&D
GLOBAL DISCOVERY PROJECT EXPENSE REPORT
ERECTILE DYSFUNCTION

| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | YTD Total | YTD Approved APU | Var |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | MONTHLY RESULTS | | | | | | | | | | | | | YTD | |
| Discovery Administrative Overhead | 65 | 65 | 65 | 65 | 65 | 64 | 65 | 65 | 65 | 65 | 65 | 65 | 779 | 779 | --- |
| Discovery Functional | 185 | 199 | 179 | 182 | 188 | 187 | 249 | 251 | 230 | 225 | 253 | 234 | 2,562 | 2,220 | (342) |
| Discovery Svc Prch/Sold-Internal | 154 | 379 | 344 | 366 | 348 | 468 | 271 | 117 | 91 | 129 | 99 | 80 | 2,846 | 1,672 | (1,174) |
| Discovery Service Sold-External | | | | | | | | | | | | | | | |
| Total Discovery (less overhead) | 339 | 578 | 523 | 548 | 536 | 655 | 520 | 368 | 321 | 354 | 352 | 314 | 5,408 | 3,892 | (1,516) |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | 14 | 21 | 52 | 72 | 46 | 49 | 26 | 29 | 24 | 34 | 27 | 22 | 416 | 304 | (112) |
| Toxicology/Pathology | 2 | 9 | 12 | 20 | 43 | 23 | 4 | 19 | 8 | 18 | 11 | 94 | 263 | 2 | (261) |
| Comparative Medicine | 50 | 23 | 73 | 64 | 48 | 49 | 54 | 47 | 38 | 46 | 45 | 48 | 585 | 934 | 349 |
| Strategic and Exploratory | | | | | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | | | | | | | | | | | | | | | |
| Medical Services | | | | | | | | | | | | | | | |
| Phase-IV | | | | | | | | | | | | | | | |
| Phase-I Center | | | | | | | | | | | | | | | |
| Clinical | | | | | | | | | | | | | | | |
| ACPRU - Direct | | | | | | | | | | | | | | | |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | | | | | | | | | | | | | | | |
| Biostatistics | | | | 2 | 2 | 1 | (3) | 2 | | | | | 4 | | (4) |
| Research Information Ctr | | | | | | | | | | | | | | | |
| Information Mgmt & Tech | | | | | | | | | | | | | | | |
| International Manpower | | | | | | | | | | | | | | | |
| Grants - Domestic | | | | | | | | | | | | | | | |
| R&D Project Services | | | | | | | | | | | | | | | |
| International Directors | | | | | | | | | | | | | | | |
| Venture Management | | | | | | | | | | | | | | | |
| PARD | 1 | | | | 1 | 1 | 1 | | 2 | 3 | | | 3 | 11 | 8 |
| Regulatory Affairs | | | | | | | | | | | | | 6 | | (6) |
| Research QA | | | | | | | | | | | | | | | |
| Investigational Drug QA | | | | | | | | | | | | | | | |
| SPD | | | | | | | | | | | | | | | |
| Genset Credit | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | |
| Judgment | | | | | | | | | | | | | | | |
| Total | 471 | 696 | 725 | 771 | 741 | 842 | 667 | 530 | 458 | 520 | 500 | 543 | 7,464 | 5,922 | (1,542) |

COMMENTS

CONFIDENTIAL
ABBT0578012

28-Jan-02
PAGE B-4

PHARMACEUTICAL PRODUCTS R&D
GLOBAL DELIVERY PROJECT EXPENSE REPORT
DOPAMINE

| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | YTD Total | YTD Approved APU | Var |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Discovery | | | | | | | | | 83 | 29 | 3 | 72 | 187 | | (187) |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | | | | | | | | | | 8 | 35 | 78 | 121 | | (121) |
| Toxicology/Pathology | | | | | | | | | | 3 | 5 | 22 | 30 | | (30) |
| Comparative Medicine | | | | | | | | | | 4 | | 24 | 28 | | (28) |
| Strategic and Exploratory | | | | | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | | | | | | | | | | | | | | | |
| Medical Services | | | | | | | | | 7 | 3 | 9 | | 19 | | (19) |
| Phase-IV | | | | | | | | | | | | | | | |
| Phase-1 Center | | | | | | | | | | | | | | | |
| Clinical | | | | | | | | | 4 | 5 | | | 9 | | (9) |
| ACRU - Direct | | | | | | | | | | | | | | | |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | | | | | | | | | | | | | | | |
| Biostatistics | | | | | | | | | | | | | | | |
| Research Information Ctr | | | | | | | | | | | | | | | |
| Information Mgmt & Tech | | | | | | | | | | | | | | | |
| International Manpower | | | | | | | | | | | | | | | |
| Grants - Domestic | | | | | | | | | | | | | | | |
| R&D Project Services | | | | | | | | | | | | | | | |
| International Directors | | | | | | | | | | | | | | | |
| Venture Management | | | | | | | | | | | | | | | |
| PARD | | | | | | | | | 12 | 64 | 89 | 60 | 225 | | (225) |
| Regulatory Affairs | | | | | | | | | | | | | | | |
| Research QA | | | | | | | | | | | | | | | |
| Re-org | | | | | | | | | | | | | | | |
| Investigational Drug QA | | | | | | | | | | | | | | | |
| SPD | | | | | | | | | | 2 | 2 | 5 | 9 | | (9) |
| License Pymt/Royalty | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | |
| Judgment | | | | | | | | | | | | | | | |
| Total | | | | | | | | | 106 | 118 | 143 | 261 | 628 | | (628) |

SUMMENTS

CONFIDENTIAL
ABBT0578013

28-Jan-02
PAGE B-20

PHARMACEUTICAL PRODUCTS R&D
GLOBAL DELIVERY PROJECT EXPENSE REPORT
EISAI ABT-751

| | Jan | Feb | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | YTD Total | YTD Approved APU | Var |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | MONTHLY RESULTS | | | | | | | | | | |
| Discovery | 22 | 24 | 22 | 11 | 8 | 21 | 4 | 31 | 19 | 25 | 7 | 1 | 195 | 193 | (2) |
| Drug Safety | | | | | | | | | | | | | | | |
| Metabolism | 4 | 1 | 2 | 32 | 2 | 4 | 13 | 40 | 32 | 30 | 40 | 45 | 245 | 694 | 449 |
| Toxicology/Pathology | 2 | 6 | 24 | 57 | 17 | 23 | 18 | 8 | 17 | 6 | 5 | 1 | 184 | 202 | 18 |
| Comparative Medicine | 1 | | 6 | 3 | | | | | | 1 | 1 | 1 | 11 | 103 | 92 |
| Strategic and Exploratory | | | | | | | | | | | | | | | |
| Medical Affairs | | | | | | | | | | | | | | | |
| Outcomes Res/Admin | | | | | | | | | | | | | | | |
| Medical Services | | 2 | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 10 | 9 | (1) |
| Phase-IV | | | | | | | | | | | | | | | |
| Phase-I Center | | | | | | | | | | | | | | | |
| Clinical | 1 | 2 | 2 | 4 | 2 | 2 | 1 | | 7 | 2 | 2 | 15 | 40 | 118 | 78 |
| ACPRU - Direct | | | | | | | | | | | | | | | |
| Development Operations | | | | | | | | | | | | | | | |
| Data Management | | | | | 2 | 1 | 4 | 10 | 8 | 5 | 8 | 11 | 52 | 73 | 21 |
| Biostatistics | 1 | | 1 | 1 | | 1 | 1 | 2 | 1 | | 1 | 3 | 11 | 81 | 70 |
| Research Information Cor | | | | | | | | | | | | | | | |
| Information Mgmt & Tech | | | | 1 | | (1) | 1 | | | | | | | | |
| International Manpower | 4 | | | | | | | | | | (1) | | 4 | 8 | 4 |
| Grants - Domestic | | | | | | | | | | | 112 | 325 | | | |
| R&D Project Services | | 2 | 2 | 3 | | 2 | 2 | 1 | | 112 | 112 | (13) | 549 | 945 | 396 |
| International Directors | | | | | | | | | | | | | | | |
| Venture Management | 200 | 190 | 187 | 353 | 80 | 121 | 66 | 461 | 208 | 224 | 188 | 305 | 2,593 | 2,577 | (16) |
| PARD | 139 | 191 | 242 | 127 | 85 | 93 | 52 | 117 | 110 | 136 | 139 | 152 | 1,583 | 1,231 | (352) |
| Regulatory Affairs | | 1 | | 4 | 3 | 3 | 2 | 3 | 1 | 2 | 3 | | 26 | 73 | 47 |
| Research QA | | | 2 | 4 | 2 | 7 | 2 | 2 | | | 2 | 1 | 20 | 48 | 28 |
| Re-org | | | | | | | | | | | | | | | |
| Investigational Drug QA | | 4 | 11 | 7 | 4 | | | 4 | 1 | 5 | | | 36 | 153 | 117 |
| SPD | 76 | 84 | 76 | 75 | 75 | 75 | 105 | 75 | 75 | 75 | 75 | 78 | 944 | 1,172 | 228 |
| License Pymt/Royalty | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | |
| Judgment | | | | | | | | | | | | | | | |
| **Total** | 450 | 507 | 579 | 663 | 281 | 353 | 274 | 755 | 479 | 634 | 583 | 925 | 6,503 | 7,681 | 1,178 |

**COMMENTS**

A) Delay in ROSS submission M00-231 & M01-303

CONFIDENTIAL
ABBT0578014

## PROOF OF SERVICE

I, Marie A. Contreras, declare:

1.  I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Suite 3500, Los Angeles, California 90071-1560.

2.  On August 3, 2007, I served the original and/or a true and correct copy of the document entitled **ABBOTT LABORATORIES' AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, mailed as marked below, and addressed as follows:

*See Attached Service List*

☒ **U.S. Mail:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

☐ **Federal Express:** I am "readily familiar" with the firm's practice of collection and processing correspondence for delivery to an employee of Federal Express. Under that practice it would be delivered to an employee of Federal Express on that same day at Los Angeles, California with charges to be billed to Munger, Tolles & Olson LLP's account to be delivered to the offices of the addressee(s) on _____ in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2007, at Los Angeles, California.

Marie A. Contreras

**SERVICE LIST**

Hancock, et al. v. Abbott Laboratories
Case No. 05-11150-DPW

Joseph H. Zwicker
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Telephone:(617) 248-5076
Facsimile: (617) 248-4000
Email:     jzwicker@choate.com

Michael S. D'Orsi
Donnelly, Conroy & Gelhaar, LLP
1 Beacon Street
33rd Floor
Boston, MA 02108
Telephone:(617) 720-2880
Facsimile: (617) 720-3554
Email:     msd@dcglaw.com

# Exhibit 6

## Guzelsu, Ozge

| | |
|---|---|
| **From:** | Davis, Brian [bdavis@choate.com] |
| **Sent:** | Tuesday, August 07, 2007 8:10 AM |
| **To:** | Lorenzini, Eric |
| **Cc:** | Weinberger, Jeffrey; Phillips, Gregory; Guzelsu, Ozge; Zwicker, Joseph H.; Abati, Richard |
| **Subject:** | RE: Letter to Joe Zwicker |

Eric,

I note, with interest, the extensive changes that Abbott has made in its actual spending numbers, after the close of fact discovery, allegedly based upon "some inadvertent errors in its original response." Please be advised that John Hancock will want to take additional discovery, including depositions, to better understand the "inadvertent errors" that Abbott cites and Abbott's purported corrections. We can bring the issue to the Court's attention now or after Judge Woodlock rules on John Hancock's pending Motion for Partial Summary Judgment on the question of payment of one-third of the Aggregate Carryover Amount. What is Abbott's preference?

In addition, Abbott agreed to supplement its interrogatory responses to provide John Hancock with its actual monthly spending numbers for January, February and March 2001 **in addition to** providing the summary-level backup documentation upon which it relies. Abbott did the latter, but not the former. In order to avoid any confusion on this issue and to hold Abbott to its word, please provide us with supplemental interrogatory responses that specifically state Abbott's actual monthly spending numbers for each of the Program Compounds for the months of January, February and March 2001.

Brian Davis

---

☒ Right-click here to download pictures. To help protect your privacy, Outlook prevented automatic download of this picture from the Inte

CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com

-----Original Message-----
**From:** Lorenzini, Eric [mailto:Eric.Lorenzini@mto.com]
**Sent:** Friday, August 03, 2007 7:06 PM
**To:** Zwicker, Joseph H.; Davis, Brian; Abati, Richard
**Cc:** Weinberger, Jeffrey; Phillips, Gregory; Guzelsu, Ozge
**Subject:** Letter to Joe Zwicker
**Importance:** High

Joe,

Please see attached letter and accompanying documents.

Eric

*<<Ltr to J. Zwicker for E. Lorenzini.pdf>>    <<Attachment 1 to Ltr to J. Zwicker from E. Lorenzini.pdf>>*
*<<Attachment 2 to Ltr to J. Zwicker from E. Lorenzini.pdf>>    <<Attachment 3 to Ltr to J. Zwicker from E.*
*Lorenzini.pdf>>    <<Attachment 4 to Ltr to J. Zwicker from E. Lorenzini.pdf>>    <<Attachment 5 to Ltr to*

*J. Zwicker from E. Lorenzini.pdf>>    <<Attachment 6 to Ltr to J. Zwicker from E. Lorenzini.pdf>>*
*<<Abbott's Amended Rsp & Objs to Pltfs' 2nd Set of Rogs.pdf>>*

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

---

# Exhibit 7

## Lorenzini, Eric

**From:**     Lorenzini, Eric
**Sent:**     Friday, August 31, 2007 6:20 PM
**To:**       Davis, Brian
**Cc:**        Zwicker, Joseph H.; Troake, Karen Collari; Abati, Richard
**Subject:**  RE: John Hancock/Abbott - Abott's Supplemental Interrogatory Responses

Brian,

Although we do not believe additional discovery is warranted, we will voluntarily provide a written response setting forth the basis for the amendments to Abbott's response to Interrogatory No. 15.   We planned to provide that response today, but unfortunately it will need to wait until next week because we are waiting for information from someone at Abbott who is on vacation.

Have a good Labor Day weekend.

Eric

---

**From:** Davis, Brian [mailto:bdavis@choate.com]
**Sent:** Tuesday, August 28, 2007 12:11 PM
**To:** Lorenzini, Eric
**Cc:** Zwicker, Joseph H.; Troake, Karen Collari; Abati, Richard
**Subject:** John Hancock/Abbott - Abott's Supplemental Interrogatory Responses

Eric,

Where does Abbott stand on the issue of discovery concerning its August 3, 2007 supplemental interrogatory responses?  I first raised the issue back on August 7 and would appreciate a response this week.

Brian



CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5056
Fax: 617-248-4000
E-mail: bad@choate.com

-----Original Message-----
**From:** Lorenzini, Eric [mailto:Eric.Lorenzini@mto.com]
**Sent:** Sunday, August 19, 2007 11:18 PM
**To:** Davis, Brian
**Cc:** Abati, Richard
**Subject:**

Brian,

I'm sorry I haven't had an opportunity to respond to your email regarding the supplemental interrogatory response.  We will respond after we file the summary judgment opposition on Tuesday.

3/12/2008

On another topic, my understanding of our agreement in July is that Abbott and Hancock each assent to the other party's motions to impound the briefs, statement of facts, and affidavits in support of and opposition to the summary judgment motions.  Please let me know if you have any different understanding.  Thanks.

Eric

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

---

# Exhibit 8

MUNGER, TOLLES & OLSON LLP

355 SOUTH GRAND AVENUE

THIRTY-FIFTH FLOOR

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

560 MISSION STREET

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

September 18, 2007

WRITER'S DIRECT LINE
(213) 683-9207
(213) 593-2907 FAX
Eric.Lorenzini@mto.com

SENT BY E-MAIL

Brian Davis
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

Re:   *John Hancock v. Abbott Laboratories*

Dear Brian:

I am responding to your email, dated August 7, 2007, regarding Abbott's amended response to Interrogatory No. 15.

As you know, Abbott's original response to Interrogatory No. 15 set forth actual spending on the Program Compounds during the four year period from 2001 to 2005, as requested by Hancock. After the close of discovery, Hancock sought to revise its interrogatory to request information regarding spending during the period from March 13, 2001 to December 31, 2001. Abbott did not believe Hancock had any right to revise its interrogatory in this manner after the close of discovery. Nonetheless, as a compromise Abbott and Hancock agreed that Abbott would amend its interrogatory response on August 3, 2007 to set forth its actual monthly expenditures on the Program Compounds in 2001. To obtain the information requested by Hancock, Abbott conducted extensive additional investigation, including review of financial records and interviews with Abbott financial personnel. In the course of this investigation, Abbott discovered additional expenditures on the Program Compounds that were not reflected in the original interrogatory response drafted by Abbott's former counsel in this case, Winston and Strawn. Accordingly, Abbott updated its interrogatory response to include the monthly

MUNGER, TOLLES & OLSON LLP

September 18, 2007
Page 2

expenditure figures requested by Hancock, as well as the newly discovered expenditure
information.

Abbott disagrees with your contention that "additional discovery, including depositions,"
is necessary to understand the updated information in the amended interrogatory response. As
stated in the verified interrogatory response, Abbott produced, concurrently with the response,
the financial documents (prepared in the ordinary course of business) from which the actual
spending figures were derived. Hancock has no right to additional discovery regarding this
matter. Nonetheless, as a courtesy, we voluntarily set forth below the newly discovered
information regarding actual expenditures that is reflected in the amended response to
Interrogatory No. 15. In exchange for your agreement to withdraw your request for additional
discovery, we would be willing to submit a verification attesting to these facts.

### Basis for Updated Information in Response to Interrogatory No. 15

Abbott discovered expenditures between January 2001 to July 2001 on development of
ABT-100 (FTI) ($5.6 million) and ABT-724 (ER Dopamine) ($4.9 million) that were not
reflected in the original interrogatory response. The actual expenditures on ABT-100 and ABT-
724 in 2001 are reflected on the financial report produced to Hancock. See ABBT0578006,
ABBT0578012-13.

Abbott discovered milestone payments to Wakunaga Pharmaceutical for the development
of ABT-492 (quinolone) in 2001 ($3 million) and 2002 ($3.5 million). See ABBT0578007
(2001 report reflecting "License Pymt/Royalty" of $3 million); ABBT0578017 (2002 report
listing $3.5 million on the "License Pymt/Royalty" line). According to the terms of the Research
Funding Agreement, these are Program Related Costs. RFA, § 1.43(ii)(b);

Abbott discovered expenditures in 2002 by Abbott's Ludwigshafen facility in Germany
on development of several Program Compounds. These expenditures are listed on the "LU" line
of the financial reports produced to Hancock. See ABBT0578017 (ABT-492, $1.5 million);
ABBT0578018 (ABT-510, $0.4 million); ABBT0578019 ( ABT-627, $2.1 million);
ABBT0578020 (ABT-724, $1 million); ABBT0578021 (ABT-751, $0.1 million).

As of August 3, 2007, we had been unable to locate records confirming all of the
originally reported spending on ABT-773 in 2001 and 2002 so we amended the interrogatory
response to correspond with the lower figures listed in the Global Delivery Expense Report
("GDER"). In response to your August 7 email, we have conducted further inquiry and located
records reflecting additional spending on ABT-773 in 2001 ($0.3 million) and 2002 ($1.8
million, largely due to expenditures on the Japan Program) that were not reflected in the GDER,
but which we have confirmed were actual expenditures on the development of ABT-773. I am
enclosing a copy of Abbott's COMPASS (COMprehensive Project Accounting SyStem) report
reflecting those expenditures, as well as a spreadsheet breaking down the 2001 expenditures by
month. See ABBT0578039-70.

MUNGER, TOLLES & OLSON LLP

September 18, 2007
Page 3

The amended interrogatory response also includes a few other minor miscellaneous adjustments to accurately reflect the expenditures reflected in the financial records. *See e.g.,* ABBT0578017 (ABT-492, 2001 report); ABBT078018 (ABT-510, 2001 report); ABBT0578033 (ABT-627, 2004 report); ABBT078036 (ABT-510, 2005 report); ABBT0578037 (ABT-627, 2005 report).

### January, February and March 2001 Expenditures

Your email wrongly contends that "Abbott agreed to supplement its interrogatory responses to provide John Hancock with its actual monthly spending numbers for January, February and March 2001 in addition to providing the summary-level backup documentation upon which it relies. Abbott did the latter, but not the former." Abbott's amended interrogatory response attached as Exhibit A the expense report setting forth Abbott's monthly expenditures on the Program Compounds in January, February and March 2001. Exhibit A was as much a part of Abbott's verified interrogatory response as the text in the body of the response. It is unclear what purpose Hancock believes would have been served by copying the monthly expenditures listed in Exhibit A into the body of the response. Nonetheless, for your convenience, the table below again provides Hancock with the monthly expenditures on the Program Compounds in January, February, and March 2001 (in thousands), including the adjustments based on the newly discovered information regarding actual expenditures on ABT-773 in 2001 that is described above:

|  | January 2001 | February 2001 | March 2001 |
|---|---|---|---|
| ABT-100 (FTI) | 649 | 716 | 953 |
| ABT-492 (Quinolone) | 1119 | 1192 | 1563 |
| ABT-510 (TSP) | 548 | 751 | 805 |
| ABT-518 (MMPI) | 481 | 503 | 621 |
| ABT-594 (Neuro Pain) | 1123 | 817 | 988 |
| ABT-627 (Endothelin) | 2177 | 2293 | 2396 |
| ABT-724 (ED) | 471 | 696 | 725 |
| ABT-751 (Anti-mitotic) | 450 | 507 | 579 |

3519948.4

MUNGER, TOLLES & OLSON LLP

September 18, 2007
Page 4

| ABT-773 (ketolide) | 8,817 | 9,969 | 9,758 |
| Total | 15,835 | 16,544 | 18,388 |

Please let me know if you have any questions.

Sincerely,

Eric J. Lorenzini

EJL:macl

# Exhibit 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOHN HANCOCK LIFE INSURANCE
COMPANY, JOHN HANCOCK VARIABLE
LIFE INSURANCE COMPANY, and
MANULIFE INSURANCE COMPANY (f/k/a
INVESTORS PARTNER INSURANCE
COMPANY),

        Plaintiffs,

        v.

ABBOTT LABORATORIES,

        Defendants.

CIVIL ACTION NO. 05-11150-DPW
Hon. Judge Douglas P. Woodlock

## STIPULATION REGARDING HANCOCK'S MOTION TO COMPEL

Plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance

Company, and Manulife Insurance Company (f/k/a/ Investors Partner Life Insurance Company)

(collectively, "John Hancock" or "Plaintiffs") and defendant Abbott Laboratories ("Abbott")

(collectively, the "Parties") hereby submit this Stipulation Regarding Plaintiff's Motion to

Compel.

WHEREAS, on July 13, 2007, Plaintiffs filed a "Motion to Compel Abbott Laboratories

to Provide a Complete and Accurate Response to John Hancock's Interrogatory Seeking

Abbott's Actual Spending During 'Each Year of the Four-Year Program Term." ("Motion to

Compel")

WHEREAS, John Hancock's Motion to Compel seeks information regarding Abbott's

research and development expenditures on the Program Compounds between March 13, 2001

and December 31, 2001;

WHEREAS, Abbott represents that it does not compile expenditure figures for the Program Compounds on a more precise level than by month in the ordinary course of its business and, therefore, is unable to produce records of its daily expenditures on each Compound;

WHEREAS, after meeting and conferring regarding the pending Motion to Compel, Abbott and John Hancock have reached the following agreement and jointly request that the Court so order:

1.    John Hancock agrees to withdraw its Motion to Compel.

2.    Abbott agrees to provide a verified amended response to Interrogatory No. 15 on or before August 3, 2007, which discloses its actual monthly spending on the nine Program Compounds in January, February and March of 2001.

3.    Abbott agrees to produce the internal summary-level documents from which the numbers in the amended interrogatory response are derived (e.g., a summary report listing total monthly expenditures per compound) on or before August 3, 2007.


SO ORDERED this _____ day of _____, 2007


_____
United States District Court Judge

JOHN HANCOCK LIFE INSURANCE
COMPANY, JOHN HANCOCK VARIABLE
LIFE INSURANCE COMPANY,
and MANULIFE INSURANCE COMPANY

ABBOTT LABORATORIES

By their attorneys,

By its attorneys,

/s/ Brian A. Davis _____
Brian A. Davis (BBO No. 546462)
Joseph H. Zwicker (BBO No. 560219)
Karen Collari Troake (BBO No. 566922)
CHOATE, HALL & STEWART
Two International Place
Boston, Massachusetts 02110
Tele: 617-248-5000

/s/ Michael S. D'Orsi
Peter E. Gelhaar (BBO No. 188310)
Michael S. D'Orsi (BBO No. 566960)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
Tele: 617-720-2880

and

Jeffrey I. Weinberger (*pro hac vice*)
Gregory D. Phillips (*pro hac vice*)
Eric J. Lorenzini (*pro hac vice*)
Ozge Guzelsu (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
335 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
Tele: 213-683-9100

Date:   July 27, 2007

<u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**</u>

The undersigned hereby certifies that Abbott counsel has conferred with counsel for Hancock and resolved the issues presented by this Motion.

Dated:  July 27, 2007

/s/ Michael S. D'Orsi
_____

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 27, 2007. Date: July 27, 2007

/s/ Michael S. D'Orsi

# Exhibit 10

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE | ) | C.A. No. 05-11150-DPW |
| INSURANCE COMPANY, ET AL, | ) | Courtroom No. 1 |
| PLAINTIFFS | ) | |
| VS. | ) | |
| ABBOTT LABORATORIES, | ) | 1 Courthouse Way |
| DEFENDANTS | ) | Boston, MA  02210 |

SCHEDULING CONFERENCE

SEPTEMBER 19, 2007

10:02 a.m.

BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

UNITED STATES DISTRICT COURT JUDGE

VALERIE A. O'HARA

OFFICIAL COURT REPORTER

Page 2

1  A P P E A R A N C E S :
2     Choate, Hall & Stewart, by BRIAN A. DAVIS, ESQ.,
   KAREN C. TROAKE, ATTORNEY, and JOSEPH H. ZWICKER, ESQ.
3  Two International Place, Boston, Massachusetts 02110, for
   the Plaintiffs;
4
      Munger, Tolles & Olson LLP, by JEFFREY I. WEINBERGER,
5  ESQ. and ERIC J. LORENZINI, ESQ., 355 South Grand Avenue,
   35th Floor, Los Angeles, California 90071-1560; for the
6  Defendant.
7     Donnelly, Conroy & Gelhaar, LLP, by MICHAEL S. D'ORSI,
   ESQ., One Beacon Street, Boston, Massachusetts 02108; for
8  the Defendant.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1              PROCEEDINGS
2        THE CLERK:  All rise.  This Honorable Court is now
3   in session.  You may be seated.  Calling the case
4   Civil Action No. 05-11150, John Hancock Life Insurance
5   Company vs. Abbott Laboratories.
6        THE COURT:  Well, I think I want to approach this
7   from a somewhat different perspective.  I think you have to
8   assume that we're going to try this case, that the motions
9   concerning misrepresentation as a contract matter for
10  summary judgment are likely to be denied.
11       I have considerable doubt whether or not I'm going
12  to permit a restitutionary remedy, although I think that's
13  an issue that ultimately I can deal with at the last moment
14  and that I'm unlikely to embrace the view of Hancock with
15  respect to 3.3(b).  I had hoped to be able to have a
16  memorandum out on all of these matters actually by this
17  hearing, but I've been unable to do that, but I will keep
18  plugging away at it, but I'd like to treat this for more
19  instrumental purposes to see what do we need to do to get
20  the case ready for trial.  What else is out there?
21       I assume it's a trial on misrepresentation, that's
22  what it's going to be about, and so without tieing you down,
23  I think that's what I'd like to focus our time on now.  I
24  don't think there's any need for much more paper to be shed
25  on the other issues, so I guess, Mr. Davis, it's from your

Page 4

1   perspective.
2        MR. DAVIS:  Good morning, your Honor, I'd like to
3   make sure I understood precisely what you said, which is
4   that, first, I take it then the motion for summary judgment
5   by Hancock you expect will be denied?
6        THE COURT:  Yes.
7        MR. DAVIS:  Also, Abbott's motion for summary
8   judgment with respect to rescission, you will put that off,
9   that will be denied?
10       THE COURT:  My expectation, my present expectation
11  is that it is unlikely I'm going to permit a restitutionary
12  remedy here.  I haven't reached a final conclusion about
13  that, and I'm not sure until the end of the case it's
14  necessary to reach that final conclusion, but I think it's
15  unlikely that there will be restitution.
16       MR. DAVIS:  That doesn't mean that your Honor
17  would not award actual damages?
18       THE COURT:  That's really what I'm focusing on
19  now, and the question is a trial on actual damages, but
20  whether it's a trial on liability first, then damages
21  second, whether it's the two together, and what else needs
22  to be done.  There are some discovery motions that I haven't
23  focused on fully yet that I do want to talk about.
24       MR. DAVIS:  I'm sorry, your Honor, I apologize
25  again, the 3.3(b) issue you thought it was unlikely?

Page 5

1        THE COURT:  Unlikely.
2        MR. DAVIS:  If at some point in time, you would
3   hear any further argument on that point?
4        THE COURT:  I can't imagine hearing any.  It's
5   ringing in my ears unless there's something that somewhere
6   in these papers hasn't been touched on, and the first
7   question that I would ask if that's true, why not?
8        MR. DAVIS:  There was a recent case out of the
9   Seventh Circuit, your Honor.
10       THE COURT:  Send me a copy of it.
11       MR. DAVIS:  I will do that, that's the River East
12  Plaza case, I'll send you a copy of that.  Your Honor, then
13  I think what we have left to do here today is definitely
14  very limited.  There are some discovery motions pending.  I
15  think that those need to be resolved.  I think that we need
16  to talk in terms of what your Honor is thinking by way of a
17  trial schedule.  If I had to estimate, I don't know if your
18  Honor runs full or half trial days.
19       THE COURT:  I think of them as full trial days.
20  Lawyers who participate in them think they're full days, but
21  they run from 9 to 1.
22       MR. DAVIS:  9 to 1.  Your Honor, realistically I
23  think we're looking about two to three weeks for the
24  trial.
25       THE COURT:  Okay.

70225d76-5fb1-4336-a91c-752f87382f83

Page 6

1    MR. DAVIS: I expect that a fair amount of the
2  evidence may come in by way of depositions, video so that
3  may eliminate the need for a number of live witnesses.
4    THE COURT: Why is that?
5    MR. DAVIS: Because a number of them are no longer
6  in the jurisdiction, your Honor, or they've left Abbott, for
7  example, a number of people that we deposed were former
8  Abbott employees, were from Japan or elsewhere, so that's
9  part of the reason why I think that that testimony had to
10 come in either in written form, or we did video most of
11 those depositions, so we can play the video. I still expect
12 that they'll be a number of live witnesses, and there will
13 be expert testimony on both the industry experts and damage
14 experts, so, again, I'm trying to be realistic here, I think
15 we're talking about two to three weeks. What needs to be
16 done, I think that there might be -- there might be some
17 motions in limine in advance of that. I don't know what
18 your Honor's practice is with respect to those.
19   THE COURT: I try to deal with them as promptly as
20 they come up. There's no further discovery with the
21 exception of those discovery motions as far as you're
22 concerned?
23   MR. DAVIS: That's correct.
24   THE COURT: Do you have a view about bifurcating
25 the trial with respect to liability and damages? I have an

Page 7

1  inclination to think that it's not a good idea or would lead
2  to duplication here.
3    MR. DAVIS: My experience, your Honor, is that it
4  bumps up the fee which I suppose is a wonderful thing but
5  not in the interest of my client so I think --
6    THE COURT: Well, when I hear bump up fee, that
7  means my uncompensated additional time is bumped up, too,
8  and I do care about that.
9    MR. DAVIS: I appreciate that. I'm talking in the
10 interests of my client, your Honor, I think it just
11 duplicates efforts. We have to gear up twice for trial.
12   THE COURT: Right.
13   MR. DAVIS: I think we can do it all at one time,
14 so we would be prepared to put on both the liability --
15   THE COURT: Now, let me understand from your
16 damage point of view how you conceive damages assuming
17 there's no restitutionary remedy.
18   MR. DAVIS: We have a damage expert, your Honor,
19 Mr. Alan Freedman. Mr. Freedman has done a calculation.
20 Again, what we've attempted to do because these were
21 compounds that everyone understood had some chance of
22 success and some chance of not succeeding, Mr. Freedman's
23 calculation takes what we think are very conservative
24 projections regarding the likely tail of these compounds,
25 discounts them by the probabilities of success and comes up

Page 8

1  with damage estimates that give credit to Abbott.
2    THE COURT: Where does he get his discounts?
3    MR. DAVIS: The discounts are based in part on
4  data that was provided by Abbott at the time the deal was
5  being negotiated and based in part on industry statistics
6  about the likelihood of success. There are a number of
7  studies that have been done about the likelihood of success
8  of commercializing of various compounds at various stages of
9  development, so those were utilized as well.
10   The DeMasi study is a leading study by a Tufts
11 professor. We've used that information as well. This is
12 all information, by the way, that Abbott routinely uses in
13 its own projection for compound, so we've tried to do it in
14 a very similar way to what Abbott does internally when
15 they're making their own business decisions and projections
16 about investment income so we tried to turn that into what
17 we think is a credible damage theory, and, again,
18 recognizing that we're looking into a future that --
19   THE COURT: Just a second. I'm sorry, go ahead.
20   MR. DAVIS: We're looking at a but for world
21 recognizing that, and that's part of the reason why we have
22 proposed both an actual damage theory and a restitution
23 theory. I think part of Abbott's strategy here, I'm trying
24 to kill the rest of the recision theory upfront was to try
25 to set it up for argument later on that damages were

Page 9

1  speculative leaving us with no remedy whatsoever, but I
2  think your Honor has taken care of that, so we'll offer
3  both, and we think --
4    THE COURT: Well, what are you offering as to
5  restitution? There's nothing additional to offer as to
6  restitution, is there? And for damages, for liability and
7  damages, it is a jury trial, restitution would ultimately
8  rest in my responsibility, wouldn't it?
9    MR. DAVIS: Jury-waived, your Honor, all of this
10 by terms of the contract, this is all jury-waived.
11   THE COURT: Okay.
12   MR. DAVIS: So it would be entirely up to you, and
13 so that's why we've proposed those alternatives. I agree,
14 the decision restitution calculation is very simple. It's
15 really a matter of what we've received back vs. what we put
16 in. You're entitled to award interest if you see fit in
17 those circumstances. We do that calculations as well.
18   THE COURT: When you say I'm entitled to the -- I
19 don't know Illinois prejudgment interest law.
20   MR. DAVIS: In Illinois, your Honor, it's governed
21 by Illinois law that Illinois recognizes a right in the
22 discretion of the court to award prejudgment interest in
23 recision cases using the prejudgment interest.
24   THE COURT: No, what about a direct damage case?
25   MR. DAVIS: In actual damages as well,

3  (Pages 6 to 9)

70225d76-5fb1-4336-a91c-752f87382f83

Page 10

1 absolutely.
2    THE COURT: So, unlike Massachusetts, which
3 imposes a virtual obligation?
4    MR. DAVIS: I think I was talking, I'm sorry, your
5 Honor, solely restitution. In that case I believe it's
6 discretionary with the Court, and in an actual damage case I
7 believe it's a matter of statute, the calculation.
8    THE COURT: All right.
9    MR. DAVIS: So we can make those calculations, we
10 can put that evidence on for your Honor.
11    THE COURT: So, if this is jury-waived, I think in
12 terms of presenting it, I'm less bothered by the deposition
13 prospect because what I generally do in jury-waived cases as
14 follows: I'll have Mr. Lovett set out after we talk about
15 this a bit a pretrial order, but generally I take direct
16 evidence by affidavit, and people can challenge the
17 admissibility of evidence in these affidavits, but that
18 stands as the direct testimony, then the party opposing who
19 hasn't submitted that affidavit has the opportunity to
20 cross-examine will be given an opportunity to cross-examine,
21 if they chose to, and that's where the live testimony would
22 first begin.
23    Now, if you're talking about a series of
24 depositions and -- well, depositions, either video or
25 otherwise, I suppose that they can be spliced together to

Page 11

1 perform the same function, but the elimination of direct
2 examination in nonjury cases for me anyway is a time saver,
3 substantial time saver as much as it's always interesting to
4 see people's techniques in conducting direct examination,
5 I'd prefer to get right down to it and do that in the quiet
6 of my chambers, and that means I'm hot when I see the
7 cross-examination of any witnesses, and I will be prepared
8 at least with respect to the direct case.
9    So what I do is issue generally, and I think I
10 will in this case, a Pretrial Order that directs the
11 preparation of affidavits and/or depositions with direct
12 testimony and agreement between the parties with respect to
13 the depositions of witnesses who are unavailable, an
14 opportunity for the parties to designate those they'd like
15 to cross-examine and the exchange of what I'll call findings
16 of fact and conclusions of law marked up so that the parties
17 can indicate things that are truly not in dispute but are
18 necessary findings and conclusions, those things that they
19 think are irrelevant and those things they think are
20 disputed, so I'm focused on those as well, and the --
21    MR. DAVIS: I'd assume we'd also have an agreed
22 upon set of exhibits?
23    THE COURT: Yes. The exhibits would be referenced
24 in the affidavits themselves or by annotating the
25 depositions, if that becomes necessary, so I can follow

Page 12

1 through on it. It generally takes probably six or seven
2 weeks for the process to go back and forth because the
3 parties get to see it ahead of time, that's what the marking
4 up does, and I would think that that would substantially
5 reduce the trial time for this case.
6    Now, what I would be looking at, I think, is the
7 end of February, more likely, the beginning of March for
8 trial time, and I would propose to carve out three weeks,
9 but I would desperately hope that it didn't take anything
10 like that.
11    MR. DAVIS: That time frame would be fine, your
12 Honor.
13    THE COURT: From the defendant's point of view?
14    MR. WEINBERGER: Yes, I do have a trial in March,
15 but I can try to move that.
16    THE COURT: Where is it?
17    MR. WEINBERGER: It's in superior court in
18 Los Angeles, but I will try and move it. You can hold these
19 dates, and I can advise the Court if I'm successful.
20    THE COURT: Right. When is that trial, and how
21 long is it supposed to be?
22    MR. WEINBERGER: I think it's two weeks, and if
23 I'm not mistaken, it's around March 15, something in that
24 time frame.
25    THE COURT: Are you plaintiff or defendant?

Page 13

1    MR. WEINBERGER: Defendant.
2    THE COURT: Why don't we say March 3rd. That
3 would require moving to continue that trial in Los Angeles.
4 Do you know if that's an older case or younger than this?
5    MR. WEINBERGER: It's not that old, I think it's
6 about a year old.
7    THE COURT: Okay. Ordinarily what we do when we
8 have conflicts within the Commonwealth, and actually we do
9 it by reference to a local rule is give deference to those
10 cases that are older, even in the state courts, but not to
11 ones that are younger, but if there's a problem, I don't
12 like to interfere with somebody else's trial schedule, so if
13 the judge in California is concerned about that, get back as
14 quickly as possible.
15    MR. WEINBERGER: I'll immediately inquire about
16 the possibility.
17    THE COURT: So what we're talking about is for the
18 parties to have carved out the weeks of March 3, March 10
19 and March 17 for trial here, and I think what I would like
20 to do is circulate the pretrial order, and you can modify it
21 or adjust it, and I think it would be useful to have a
22 further conference here in say the end of October so that
23 you've got some idea and you can identify problems at that
24 point so we can get them relatively promptly. You folks
25 come from Los Angeles, right? What's more convenient for

4 (Pages 10 to 13)

Page 14

1  you, the afternoons or the mornings?
2      MR. WEINBERGER: I think it really doesn't matter,
3  your Honor.
4      THE COURT: If I say 2:30 on Thursday,
5  October 25th for what I'll call a status --
6      MR. DAVIS: That's fine, your Honor.
7      THE COURT: -- or preliminary pretrial conference,
8  something like that so that we can see if we can get this
9  into shape for the beginning of the submissions. The
10  submissions go back and forth between the parties, they
11  don't come to me until the last you've been through all of
12  what you want to do.
13      Now, let me mention two other things. I've
14  earlier expressed my concern which I continue to have about
15  the amount of sealing that's gone on here in my view that I
16  am going to be appointing a master to deal with this, and it
17  probably will be coincident with the trial preparation.
18      I'm going to allow the various sealing motions
19  here with the proviso that it's subject to being revisited
20  in light of a protocol that I hope the master will develop
21  to deal with what may properly be disclosed or may not
22  consistent with what I believe to be the Court's obligations
23  to provide transparency to disputes that are being resolved
24  in the court.
25      Now, my understanding of the discovery matters

Page 15

1  that are really still outstanding, and I've tried to develop
2  an outline here about it, one had to do with the disclosure
3  of documents to Dr. Fairweather. Has that been resolved
4  effectively?
5      MR. DAVIS: That's resolved, your Honor.
6      MR. WEINBERGER: Yes.
7      THE COURT: So I'll treat what is document No. 89,
8  which is a motion to file a reply memorandum there as moot
9  in light of the resolution by the parties. Now, the next
10  one has to do with the StoneTurn Group motion to quash or
11  modify the subpoena. Where does that stand now?
12      MR. DAVIS: I think that's still outstanding, your
13  Honor.
14      THE COURT: Do they have to be heard separately at
15  present?
16      MR. WEINBERGER: I think they are separately
17  represented, your Honor.
18      THE COURT: Why don't we put that, unless that's
19  going to pose timing problems here, I can't imagine given
20  the time frame we're talking about, let's put that down, and
21  that's No. 121, Mr. Lovett, down for hearing on the 25th as
22  well. And the parties will notify counsel for StoneTurn--
23      MR. DAVIS: Yes, your Honor.
24      THE COURT: -- to be present. Then we have the
25  protective order regarding preparation of witnesses to

Page 16

1  testify about ABT-518 and ABT-594. That's document No. 127.
2  Where does that stand?
3      MR. DAVIS: Still pending.
4      THE COURT: Okay. Let me understand from Abbott's
5  point of view why do you need a 30(b)(6) representative?
6  Are you trying to pin them down, is that it, to have
7  someone?
8      MR. DAVIS: That's probably directed to me, your
9  Honor, Hancock, we're the one seeking the 30(b)(6) depo.
10  Yes.
11      THE COURT: Why can't you do it with admissions?
12  As I understand the state of the record, is this directed at
13  Hancock?
14      MR. DAVIS: It's their motion for protective order
15  for a 30(b)(6) depo, so it's Abbott's motion, but they are
16  our depositions.
17      THE COURT: I guess what I understand is that
18  there have been a fairly large number of depositions of
19  various Abbott employees who either can't speak for Abbott
20  or can't, depending on who they are. This is the kind of
21  thing that I don't ordinarily think belongs in a 30(b)(6)
22  setting, and to the degree that you're trying to pin them
23  down as a corporate entity, I don't know why admissions
24  isn't a way of dealing with that.
25      MR. DAVIS: That's one way of doing it, your

Page 17

1  Honor. This is one of these cases where the documents say
2  one thing and Abbott witnesses either state something else
3  or they deny any knowledge, including any documents they
4  offer.
5      THE COURT: Well, what's going to happen with a
6  30(b)(6) under these circumstances is that it would be like
7  the cartoon of the tweed ring in which they're all standing
8  in a circle, and each one is pointing to the next person in
9  line so that they circle around with nobody taking
10  responsibility for it. If you've talked to everybody, all
11  the usual suspects, I don't know what the 30(b)(6) does
12  except to introduce a degree of formality to the process.
13      MR. DAVIS: The only reason I hesitate, your
14  Honor, is because we did have limitations on the number of
15  depositions that we could take in this case, 25, and we used
16  that number, and I expect that we're going to hear from
17  Abbott at some point in time that there were other people
18  who could have, should have been deposed, and then maybe
19  they had the relevant knowledge, and that's why we thought a
20  30(b)(6) would be the appropriate way to address some of
21  those issues, then Abbott has the obligation to make sure
22  the information is made available.
23      THE COURT: So, what is the response to that?
24      MR. WEINBERGER: I think in the motion, in our
25  opposition, we told them that everybody who had relevant

70225d76-5fb1-4336-a91c-752f87382f83

Page 18

1  knowledge about these programs had been deposed so I don't
2  think that's a real concern. I think admissions is the way
3  to get at this, and we will take a corporate position. We
4  have to some extent in the summary judgment opposition,
5  we've stated what Abbott's view as to what happened, and
6  we'll do that admissions, but a witness is going to be -- we
7  don't have a witness who can do anything but be told by us
8  what other people have testified to and regurgitated back.
9       THE COURT: I guess what I think I'll do with this
10  is I will effectively allow the motion for protective order
11  on the condition that Abbott affirms that no persons who
12  have not already been deposed have knowledge with respect to
13  this and subject to Abbott answering what I'll style as
14  admissions because they are I think in this context
15  admissions rather than interrogatories and that you make
16  those requests for admissions by next Monday so that we've
17  got these things in place in time for the pretrial
18  conference in October, or is that too burdensome?
19       MR. DAVIS: Can we have until Friday of next week,
20  if that's possible?
21       THE COURT: Okay. So, Friday, the 28th and
22  they'll be answered by October 19th, all right.
23       MR. WEINBERGER: Yes.
24       THE COURT: And I hope that and expect that the
25  admissions won't be drafted in a way that creates additional

Page 19

1  discovery contentions and that they will be answered fairly
2  and directly.
3       MR. WEINBERGER: Yes, your Honor, they'll be
4  answered in accordance with the proof we intend to offer at
5  trial.
6       THE COURT: Okay. So that I think takes care of
7  No. 127. I want to be certain that I understand this, but
8  there was a -- and what I'm doing is pulling this off the
9  docket list as still open motions. There was a motion I
10  believe No. 140 that was a motion to compel answers about
11  actual spending during each of the four-year program terms.
12  I think it was withdrawn, but I want to be sure about
13  that.
14       MR. DAVIS: That motion, your Honor, correct, was
15  withdrawn. There are still some -- it was withdrawn based
16  on a promise by Abbott to provide some information. We
17  still have some disputes about that perhaps, but I can let
18  you know in advance of the hearing on the 25th if that's
19  still an issue.
20       THE COURT: I'm going to set a time for
21  identification of any further discovery issues, not to
22  solicit the opportunity to have me resolve further discovery
23  issues but simply to identify them. There is No. 155 which
24  is the Abbott motion to compel Hancock's production of the
25  arbitrator's opinion. I understand that arbitrator's

Page 20

1  opinion is subject to some sort of protective order.
2       MR. DAVIS: Yes.
3       THE COURT: But is there any reason why it can't
4  be turned over to Abbott subject to that protective order,
5  Abbott's counsel?
6       MR. DAVIS: I think, your Honor, it's a completely
7  different case, completely different damage theory. At the
8  end of the day, it will have no impact on this case and it
9  requires us jumping through a series of hoops.
10       THE COURT: So what kind of hoops?
11       MR. DAVIS: Trying to get to the agreement of the
12  parties in that case, one of whom does not wish to agree to
13  anything to allow the disclosure of that document. You know
14  what I would propose, your Honor, is that perhaps if your
15  Honor ordered us to give it to you in camera, take a look at
16  it, you can decide whether you thought it was worthwhile to
17  give over to Abbott. I think, again, at the end of the day
18  when you look at it, it's not interesting, and it's not
19  worth, with all due respect.
20       THE COURT: Then why would I want to look at it
21  then?
22       MR. DAVIS: Actually, that's part of the basis for
23  the reason why we think that this is an unnecessary fire
24  fight is that you can take a look at it and make a
25  determination whether you think it would have any impact on

Page 21

1  Abbott's case, but turning it over to a private party like
2  Abbott I think is going to require us to and go to parties
3  who I would tell you in that particular case, for example,
4  opposing counsel would not speak with me, would not
5  acknowledge my presence in a room, let alone agree to make
6  any concessions.
7       THE COURT: Whose protective order is it?
8       MR. DAVIS: It's a protective order agreed to by
9  the parties. It was a JAMS Arbitration, your Honor.
10       THE COURT: So this was a private party?
11       MR. DAVIS: It was a private arbitrator.
12       THE COURT: Not that I would proceed in this
13  fashion, but there's nothing really to prevent me from
14  questions of judicial deference from saying that I order it?
15       MR. DAVIS: I think that's correct, your Honor.
16       THE COURT: Well, I think I'm going to allow that
17  motion only to the extent of having submitted to me the
18  arbitrator's opinion, and I would assume that I will be able
19  to understand the issues there.
20       MR. DAVIS: Yes, your Honor. I think if you look
21  at it in the context of the motions that have been filed, I
22  think it will be pretty self-evident.
23       THE COURT: Do I need to look at the damages
24  report by your expert?
25       MR. DAVIS: I can make that available, your Honor,

70225d76-5fb1-4336-a91c-752f87382f83

Page 22

1 if that would be helpful.
2 THE COURT: Why don't you provide both of those so
3 at least I have some idea of what your theory is with your
4 damages expert and whether or not this is material in some
5 fashion to impeachment or otherwise calling into question
6 his opinion in this case.
7 MR. DAVIS: Understood.
8 MR. WEINBERGER: Your Honor, just to be clear on
9 this, I don't know if it would be self-evident from the
10 study or not, but we -- and I did want to bring this up at
11 some point, we do intend to bring a limine motion to strike
12 that damage study, and I think it might be helpful either
13 now in 30 seconds or at some point for me to explain to
14 you --
15 THE COURT: I'll take both, 30 seconds now.
16 MR. WEINBERGER: All right. Basically, there are
17 two, among others, two most important grounds, the whole
18 damage theory is based upon a probabilistic recovery so that
19 he takes a drug that it was a 10 percent projected
20 probability for recovering, and he says I'm going to
21 discount the expected royalties by 90 percent and the 10
22 percent of the damages. There are two problems with that.
23 One, in our view, the law does not allow for recovery of
24 damages which are 90 percent certain of not being recovered.
25 There has to be a reasonable certainty in recovering lost

Page 23

1 profits. You can't do it based upon a 10 percent.
2 THE COURT: Let me tell you how I think I
3 understand where this is going, and what I'm going to do is
4 try to set a date in advance of our next meeting to take
5 this up in some fashion.
6 MR. WEINBERGER: All right.
7 THE COURT: Or for you to take up and at least
8 give me a preliminary motion in limine in respect of their
9 damage expert, so why don't I do that right now and say that
10 I want the damage report that's been issued here by your
11 expert, that is the Hancock expert, submitted to me say
12 October 5th together with the arbitrator's report, then on
13 October 5th you can make, call it a motion in limine to
14 strike the damage expert for all of the theories.
15 MR. WEINBERGER: You want a full in limine motion
16 by October 5th?
17 THE COURT: I think so. That's sufficient time,
18 isn't it?
19 MR. WEINBERGER: I'm only thinking that that week
20 I'm involved, if I could have another week, it would be very
21 helpful. Eric Lorenzini tells me he's on jury duty, so if
22 we could have another week, that would be helpful.
23 THE COURT: New Jersey isn't that far.
24 October 12th --
25 MR. WEINBERGER: Yes, your Honor.

Page 24

1 THE COURT: -- for a motion in limine, dealing
2 with that.
3 MR. WEINBERGER: Yes.
4 MR. DAVIS: Your Honor, we'll have an opportunity
5 to respond to that in advance of the hearing?
6 THE COURT: Yes, but it's going to be on a shorter
7 turnaround, the 19th. I mean, nobody's plowing new ground
8 on the theories, the application may be a little different,
9 but the theories of exclusion.
10 MR. WEINBERGER: Yes. Can I point out that the
11 basis for a lot of this is in our expert report, and he's
12 been deposed, and I think they're pretty familiar with what
13 we're claiming.
14 THE COURT: I'll take a look at that, but, in any
15 event, that will give me the context in which to decide
16 whether or not compelling the arbitrator's opinion fully is
17 appropriate, but I'm going to dispose of that motion simply
18 by saying that it's allowed only to the extent of requiring
19 it to be submitted to the Court for review, in camera to the
20 Court for review.
21 Now, I think those are the only discovery motions
22 outstanding. Are there other motions like that that are
23 outstanding that the parties can pick up? Now we've
24 identified some, a motion in limine. What else is out
25 there? This is not to force you to fine tune early on, but

Page 25

1 my sense of getting this case, a posture for trial is that
2 it will be an iterative process, and I'd like to at least
3 grapple, begin grappling with the larger issues. Are there
4 larger issues from the motion in limine point of view? If
5 we're talking about a March trial, motions in limine
6 ordinarily would be much later in the process, so time in
7 February.
8 MR. WEINBERGER: None are coming to me
9 immediately, your Honor. I'd like an opportunity to think
10 about it, but none are coming to me immediately. I expect
11 this will be dealt with in the pretrial order that your
12 Honor issues, but I'm assuming Abbott witnesses, for
13 example, who will be made available for cross-examination
14 live at trial, if we want them, and that Hancock will do the
15 same.
16 THE COURT: If they're in their control, I think
17 they have to be, and that goes for both sides, and my
18 experience is that if people really want to have former
19 employees present, they can get here. Can I force them?
20 Probably not, but they have a way of finding the time, so I
21 will issue what I'll call, we'll mark it up in a fashion,
22 but I think it will simply be a draft of my pretrial order
23 that can be refined as you see fit here, with my approval,
24 that sets the dates for various events to happen, and we'll
25 take that up as well at the October 25th hearing.

7 (Pages 22 to 25)

Page 26

1    Now what I would like as well is a joint, call it
2  a status report, but it just provides an occasion for you to
3  think about and then propose as part of the agenda for the
4  25th any issues that you want to have discussed.  What I
5  would like to do is have that on October 12th.  That will be
6  a joint status report that would address the procedures that
7  we're going to follow here.
8    MR. DAVIS:  So, your Honor, just so I understand,
9  you would expect the joint status report will, for example,
10 address proposed changes to the draft pretrial order?
11    THE COURT:  Yes, it would have proposed changes to
12 that, suggestions of what are presently anticipated to be
13 motions in limine and any other matters, refinements for
14 purposes of trial, and my hope is that I will have some
15 document for you that gives you the benefit, if you call it
16 that, of my thinking on the summary judgment motions to
17 dismiss before that time.  I'm not holding myself to that,
18 but that's my present expectation.  All right.  Now, are
19 there any other things that we need to take up at this
20 point?
21    MR. DAVIS:  I can't think of any right now, your
22 Honor.
23    THE COURT:  Okay.  So we'll see you on the 25th,
24 and then we'll be receiving some of these materials in the
25 interim.  Okay.  Thank you very much.  We'll be in recess.

Page 27

1    THE CLERK:  All rise.
2    (Whereupon, the hearing was suspended at
3  10:42 a.m.)
4
5      C E R T I F I C A T E
6
7  UNITED STATES DISTRICT COURT )
8  DISTRICT OF MASSACHUSETTS   )
9  CITY OF BOSTON           )
10
11    I, Valerie A. O'Hara, Registered Professional
12 Reporter, do hereby certify that the foregoing transcript
13 was recorded by me stenographically at the time and place
14 aforesaid in No. 05-11150-DPW, John Hancock Life Insurance
15 Company vs. Abbott Laboratories and thereafter by me reduced
16 to typewriting and is a true and accurate record of the
17 proceedings.
18    *Valerie A. O'Hara*
19    VALERIE A. O'HARA
20    REGISTERED PROFESSIONAL REPORTER
21
22
23
24
25

70225d76-5fb1-4336-a91c-752f87382f83

# Exhibit 11

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| | ) | CIVIL ACTION NO. 05-11150-DPW |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ABBOTT LABORATORIES, | ) ) | |
| Defendant. | ) ) ) | |

## JOINT STATUS REPORT

Pursuant to this Court's order at the status conference on September 19, 2007, plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and Manulife Insurance Company (f/k/a "Investors Partner Life Insurance") (collectively, "John Hancock"), and defendant Abbott Laboratories ("Abbott") hereby submit this Joint Status Report.

A.  The Court's Order Regulating Non-Jury Trial dated September 27, 2007 (Docket Entry No. 178) ("Pre-trial Order").

    1.  John Hancock's Position

John Hancock has no proposed changes to the Court's Pre-Trial Order, which John Hancock understands reflects the Court's usual practice in non-jury proceedings. John Hancock further believes that, given the extensive discovery and dispositive

motion practice in this case, the parties already are well aware of the relevant issues and evidence, and that the pre-trial timetable set out in the Court's proposed Order is reasonable and fair to both sides and need not be modified.

    2.    <u>Abbott's Position</u>

Abbott respectfully proposes the following changes to the Court's Pre-Trial Order:

    (i)    The current order provides that the party having the burden of proof on any claim or defense shall serve Proposed Findings of Fact and Conclusions of Law on or before noon on January 21, 2008. Order, § II.2. It provides that on or before noon on February 4, 2008, counsel receiving the Proposed Findings and Conclusions may serve Proposed Additional or Substitute Findings and Conclusions. *Id.*, § II.3.b. Under the current order, John Hancock, as the party bearing the burden of proof on its claims, will have more than 90 days (from now until January 21, 2008) to prepare its Proposed Findings and Conclusions, while Abbott will have only two weeks to prepare its Proposed Additional or Substitute Findings. In order to allow Abbott sufficient time to respond to Hancock's Proposed Findings and Conclusions, Abbott proposes that the party having the burden of proof on any claim or defense serve Proposed Findings and Conclusions on or before January 7, 2008, rather than January 21, 2008. This proposed modification would still allow Hancock more than 70 days to prepare its Proposed Findings and Conclusions, while Abbott will have four weeks to prepare its response.

    (ii)    The current order provides that each party shall concurrently file its witness list, affidavits of witnesses, deposition testimony, and exhibits on or before

noon on February 4, 2008. *Id.*, § II.4. Under this requirement for simultaneous filings, Abbott would be required to identify and file the evidence it will need to offer in support of its defense (including witness affidavits) *before* it knows what evidence John Hancock intends to offer in its case in chief. Therefore, Abbott would need to prepare and file an overbroad set of exhibits and affidavits -- responding to all the evidence in this case that Hancock could *potentially* introduce. Abbott believes it would be in the interests of efficiency and economy to have a staggered schedule for the submission of evidence. Abbott accordingly proposes that Hancock file its witness lists, affidavits, depositions, and exhibits on or before noon on January 14, 2008 and that Abbott file its witness lists, affidavits, depositions, and exhibits three weeks later, on or before noon on February 4, 2008. Under this modified, staggered schedule, Hancock will still have more than seventy-five days to identify and file its evidentiary submissions.

       (iii)    The current order provides that counsel for the parties shall confer "well in advance" of the date for submission of exhibits (which is currently February 4, 2008 and which Abbott proposes to change to January 14, 2008 for plaintiffs and February 4, 2008 for the defendants) to determine whether objections will be made to the proffered exhibits. *Id.*, § II.4.c. Abbott proposes setting a date certain for the exchange of proposed exhibits to ensure sufficient time for counsel to consult regarding objections. Specifically, Abbott proposes that at noon on December 14, 2007, the parties exchange lists and copies of exhibits they intend to offer and promptly conduct a supplemental exchange if they identify any additional documents they intend to offer as exhibits.

B.    Additional Discovery Issues and Disputes.

The parties anticipate that, prior to trial, they may require the Court's assistance in resolving discovery disputes relating to the following issues:

1.    Abbott's Actual Spending On Program Related Costs.

After the close of discovery, Abbott supplemented its response to Interrogatory No. 15 of John Hancock's Second Set of Interrogatories to state that Abbott had expended approximately $20 million more on Program Related Costs over the four-year Program Term and the subsequent year than Abbott had disclosed in its prior sworn discovery responses.   John Hancock asserts that this information is relevant to the question of Abbott's obligations to Hancock under Section 3.3(b) of the Research Funding Agreement.  John Hancock has requested additional information from Abbott concerning its revised spending figures, and the parties are in disagreement over what additional information Abbott is required to provide and in what form.   The parties hope to resolve their disputes without the Court's intervention, but may be unable to do so.

2.    Abbott's Other Contractual Compliance Audits.

Should the Court deny StoneTurn LLP's Motion to Quash or Modify Subpoena (Docket Entry No. 121), currently scheduled for oral argument on October 25, 2007, and order StoneTurn to produce documents related to its other contractual compliance audits, John Hancock intends to seek production of documents concerning Abbott's other contractual compliance audits that were requested in Hancock's First Request for

Production of Documents.[1]   Abbott previously resisted the production of such documents on the ground that they are irrelevant to this proceeding, but now seeks their production from StoneTurn.   John Hancock believes that evidence of prior contractual compliance audits, if produced by one side, should be produced by both.

Abbott's position regarding evidence of prior contractual compliance audits is set forth in Section C.2(iv) below.

C.   Motions in Limine.

Other than Abbott's motion in limine regarding John Hancock's expert, Mr. Alan Friedman, to be filed by Abbott on October 12, 2007, the parties currently anticipate the following additional motions in limine:

    1.   John Hancock's Anticipated Motions in Limine:

        (i)   Evidence Contrary To The Representations Made By Abbott In The Descriptive Memoranda.

John Hancock believes that, as evidenced in Abbott's recent summary judgment papers, Abbott intends to distance itself at trial from the express representations that it made to John Hancock in the Descriptive Memoranda attached to, and incorporated in, the parties' Research Funding Agreement.   *See, e.g.*, Abbott's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Count II of the First Amended Supplemental Complaint, p. 6; Abbott's Response to Hancock's Statement of Undisputed Facts in Support of Plaintiffs' Motion for Partial Summary Judgment on Count II of the First Amended Supplemental Complaint, p. 39, ¶ 38 (arguing that John

---

[1]   Request No. 14 of John Hancock's First Request for Production of Documents and Things, dated October 7, 2005, requests "[d]ocuments concerning other contractual compliance audits that Abbott has undertaken or been subject to at any time from January 1, 1995 to the present, including, without limitation, documents sufficient to identify names of parties who participated in each audit, the inclusive date(s) of each audit, the purpose(s) of each audit, the audit processes employed, and the results of each audit."

Hancock conducted its own due diligence or declined Abbott's offers to provide further information; rather than review every piece of data, Hancock requested 4-8 page memoranda); *id.*, ¶¶ 31 (p. 21), 39 (p. 37), 49 (p. 59-60) (arguing that John Hancock's consultant, Lynn Klotz, verified the accuracy of the Descriptive Memoranda). Based upon the integration clause in that Agreement, John Hancock intends to file a motion in limine precluding Abbott from offering any evidence that is contrary to the express representations contained in the Descriptive Memoranda, that purports to demonstrate the disclosure of such contrary facts to John Hancock prior to the execution of the Agreement, or that would tend to demonstrate a lack of awareness on Abbott's part of the express representations contained in the Descriptive Memoranda.

(ii)    Unreliable Or Unsubstantiated Testimony by Avram Tucker.

John Hancock intends to submit a motion in limine to exclude the testimony of Mr. Avram Tucker, Abbott's designated damages expert, regarding: (a) any of the alleged "numerous methodological and calculation errors" in the report of John Hancock's damages expert, Mr. Alan Friedman, that Mr. Tucker was unable to identify or explain when asked to do so at his deposition in this action; (b) any hypothetical renegotiation of the Research Funding Agreement or alternative terms that Mr. Tucker speculates Abbott and John Hancock might have agreed upon if the actual condition and prospects of ABT-518, ABT-594 and/or ABT-773 had been disclosed to Hancock before the execution of that Agreement; and (c) Abbott's legal obligations under the Research Funding Agreement, which are beyond Mr. Tucker's area of expertise. None of these topics constitutes an appropriate subject for expert testimony under

Federal Rule of Evidence 702 ("Rule 702"), and John Hancock will seek to preclude any related opinion testimony by Mr. Tucker accordingly.

    2.    <u>Abbott's Anticipated Motions in Limine:</u>

    (i)    Opinions by Barry I. Gold, Ph.D., Not Disclosed in His Report.

Based on statements made at the deposition of Dr. Gold, Abbott believes John Hancock may seek to introduce expert opinions by Dr. Gold that were not disclosed in his expert report. The deadline for providing expert reports in this matter was October 13, 2006. During his deposition on June 1, 2007, Dr. Gold testified regarding opinions that were not contained in his expert report and stated that he was planning on submitting a revised expert report. Abbott has not received a revised expert report from Dr. Gold. Given that the trial has been set for March 2008, and that the discovery deadline has passed, Abbott would be severely prejudiced if John Hancock were allowed to submit a revised expert report at this late stage. Abbott will therefore seek to exclude any expert opinions by Dr. Gold not included in his expert report.

    (ii)    Unreliable Testimony by William R. Fairweather, Ph.D.

Abbott intends to submit a motion in limine to exclude the testimony of Dr. Fairweather on clinical trial statistical issues. Dr. Fairweather prepared an expert report which purports to set forth the method by which the statistical power of clinical studies is calculated. Dr. Fairweather's report states that the usable sample size (number of patients) to calculate the power of the M99-114 clinical study for ABT-594 was limited to the number of patients that completed the clinical trial and that the patients who did not complete the clinical trial should have been excluded from Abbott's power calculation. In his deposition, Mr. Fairweather testified that the usable

sample size for a power calculation would not be limited to the number of patients that completed the clinical trial but would also include patients who had terminated before the end of the clinical trial. Dr. Fairweather's admission that the assumption in his report that the usable sample size for the clinical trial was limited to the number of patients who completed the clinical trial was incorrect renders his opinion unreliable and inadmissible under Rule 702. Moreover, Dr. Fairweather's expert report contains several opinions regarding Abbott documents that are not appropriate subjects of expert testimony under Rule 702. For example, Dr. Fairweather purports to opine on Abbott's state of mind regarding the development status of ABT-594 based on his reading of a document that was prepared by McKinsey & Company. Abbott will seek to exclude Dr. Fairweather's testimony regarding any such opinions.

> (iii)   Allegations Not Included in the First Amended Supplemental Complaint.

Abbott believes John Hancock may seek to introduce evidence regarding alleged misrepresentations, omissions, or breaches of contract that are not identified in the First Amended Supplemental Complaint and, in some cases, were not identified in discovery responses until after the close of discovery. For example, in the three versions of its complaint that Hancock has filed in this case, John Hancock never made any allegations regarding ABT-773 dosing or the ABT-773 pediatric program. Similarly, in response to an interrogatory asking Hancock to "state the basis" for all its allegations of misrepresentations, Hancock made no mention of any of these claims. After the close of discovery, Hancock served a supplemental interrogatory response that included these allegations. Subsequently, John Hancock also included these allegations in its motion for partial summary judgment. John Hancock's belated assertion of these allegations,

after the close of discovery, prejudices Abbott and violates Rule 9(b) of the Federal Rules of Civil Procedure, which requires pleading with particularity allegations of fraud or mistake. Abbott intends to file a motion in limine excluding evidence regarding allegations that are not identified in the First Amended Supplemental Complaint, including but not limited to allegations regarding ABT-773 dosing and the ABT-773 pediatric program.

(iv)    Evidence Regarding Audits Other than the Audit of Abbott
        Pursuant to the Research Funding Agreement

Abbott's position (as stated in its opposition to StoneTurn's Motion to Quash) is that evidence regarding prior contractual compliance audits, whether of Abbott or any other company, should be excluded on the grounds that it is irrelevant, a waste of time, and confusing. Testimony by StoneTurn employees regarding prior audit policies and procedures also would constitute improper expert testimony because, among other things, John Hancock never designated them as expert witnesses. Unless John Hancock agrees not to introduce evidence regarding audits other than the audit at issue in this case, Abbott plans to file a motion in limine to exclude such evidence.

Several months ago, as a precautionary measure, Abbott sought documents regarding prior audits from StoneTurn so it would be prepared to cross-examine the witnesses in the event the Court allows testimony regarding prior audits. Abbott has offered to withdraw its request for production of documents if John Hancock will agree that it will not introduce evidence at trial regarding prior audits, but John Hancock has declined the offer. Unlike John Hancock, Abbott has no plans to affirmatively introduce evidence of prior audits and should not be required to engage in a

burdensome production of irrelevant documents from its files regarding unrelated prior audits, as John Hancock suggests in Section B.2.

As the parties prepare for trial, other issues, which may appropriately be addressed in motions in limine, may be identified.

JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, AND MANULIFE INSURANCE COMPANY

By their attorneys,

/s/ Brian A. Davis
Brian A. Davis (BBO No. 546462)
Joseph H. Zwicker (BBO No. 560219)
Karen Collari Troake (BBO No. 566922)
CHOATE, HALL & STEWART
Two International Place
Boston, MA 02110
Telephone: 617-248-5000
Fax: 617-248-4000

ABBOTT LABORATORIES

By its attorneys,

/s/ Jeffrey I. Weinberger
Jeffrey I. Weinberger (Pro hac vice)
Gregory D. Phillips (Pro hac vice)
Eric J. Lorenzini (Pro hac vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: 213-683-9100

and

Peter E. Gelhaar (BBO No. 188310)
Michael S. D'Orsi (BBO No. 566960)
DONNELLY, CONROY
& GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
Telephone: 617-720-2880

Date: October 12, 2007

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on October 12, 2007.

             */s/ Richard C. Abati*
             Richard C. Abati

4260519v1

# Exhibit 12

4370665_1

1

1              UNITED STATES DISTRICT COURT

2              DISTRICT OF MASSACHUSETTS

3    ----------------------------------
     JOHN HANCOCK LIFE INSURANCE       :
4    COMPANY, et al                    :      Civil Action
                       Plaintiff       :      No. 05-11150-DPW
5                                      :
                   v.                  :      Courtroom No. 1
6                                      :      1 Courthouse Way
                                       :      Boston, MA 02210
7    ABBOTT LABORATORIES,              :      2:30 p.m., Thursday
                       Defendant       :      October 25, 2007
8    ----------------------------------

9                   Pretrial Conference

10

11   Before:       THE HONORABLE DOUGLAS P. WOODLOCK,
                    UNITED STATES DISTRICT JUDGE
12

13
     APPEARANCES:
14
     Choate, Hall & Stewart, (by Brian A. Davis, Esq.,
15    Karen C. Troake, Esq., and Joseph H. Zwicker, Esq.)
      Two International Place, Boston, MA 02110,
16    on behalf of the Plaintiffs.

17   Griesinger, Tighe & Maffei, LLP,
      (by Andrew C. Griesinger, Esq.)
18    176 Federal Street, Boston, MA 02110-2214,
      on behalf of the StoneTurn Group, LLP.
19
     Donnelly, Conroy & Gelhaar, LLP,
20    (by Michael S. D'Orsi, Esq.),
      One Beacon Street, 33rd Floor, Boston, MA 02108,
21    on behalf of the Defendant, Abbott Laboratories.

22   Munger Tolles & Olson, (by Jeffrey I. Weinberger, Esq.)
      335 South Grand Ave. - Suite 3500,
23    Los Angeles, CA 90071-1560,
      on behalf of the Defendant, Abbott Laboratories.
24
     Eric J. Lorenzini, Esq.
25    444 N. Sierra Bonita Ave., Los Angeles, CA 90036,
      on behalf of the Defendant, Abbott Laboratories.

2

1              THE CLERK:  Civil Action 05-11150, John

2    Hancock Life Insurance Company, Et Al v. Abbott

3    Laboratories.

4              THE COURT:  With respect to the outstanding

Page 1

4370665_1

1          THE COURT:  M-hm.

2          MR. DAVIS:  You originally proposed February

3    4th.

4          THE COURT:  Right.  It's going to stay there.

5          What's going to happen is that there's of a

6    further refinement, which is that the parties will start

7    exchange their lists of witnesses --

8          MR. DAVIS:  Understood.

9          THE COURT:  -- by December 14th.  And, you

10   know, somebody is likely to say:  Well, we're going to

11   call, or, do you have to call them, why are we wasting

12   our time on that.  But, it's the beginning of what some

13   presidential candidates might call a conversation.

14         So, we make that modificiation in order 2.2

15   and, with respect to order 2.4, we make a modest

16   modification to have Hancock file its witness list and

17   exhibits on January 14th and Abbott on February 4th.

18         Do you have a position?  I think Abbott is

19   something that requires the parties to exchange those

20   lists and copies of exhibits, at least the initial ones

21   by December 14th, to begin the discussion -- make people

22   aware of who the witnesses are likely to be and what

23   kind of potential documents will be used.  Okay?

24         MR. DAVIS:  Yes.

25         THE COURT:  Mr. Lovett, I think, will make the

40

1    change in the order so that you have a formal order that

2    deals with that.

3          Now, turning to B.  Someone found $20 million

4    more?  Is that what happened?  We're talking B.1,

5    additional actual spending on program-related costs?

4370665_1

6            MR. DAVIS:  What I can tell your Honor is that
7      Abbott, when they calculated the first year of program
8      spending, they concluded the period prior to, the actual
9      effective date of the agreement.  That's not part of the
10     first program.  The first program year begins on March
11     13th, 2001.

12           When we pointed that out to Abbott, that
13     effects the amount of actual spending.  In addition,
14     when we asked to clarify that, then, Abbott went back
15     and changed other numbers that previously had been
16     submitted by way of interrogatories to pick up about 20
17     million of that spending, by new numbers.  We don't know
18     the origin of the new numbers.  But, they changed their
19     actual spending with respect to other compounds in other
20     years.

21           So, there's a bit of a question mark right now
22     as to what --
23           THE COURT:  So, what's going on?
24           MR. WEINBERGER:  Well, what's going on, your
25     Honor, is that we -- you will recall that Hancock wanted

                                                            41

1      to know previous counsel and the previous counsel in
2      this case.

3            There's an interrogtory --
4            THE COURT:  Let me just say that -- I'll put
5      it in and maybe frame it a little bit more.

6            Abbott can pick and choose its counsel.  They
7      can decide to substitute, all of that.  But, the train
8      keeps running.

9            MR. WEINBERGER:  Oh, I understand.  I'm not --
10     hear me out, if you will, your Honor.  Because, I'm not
                        Page 34

4370665_1

11    offering that.  I just want to give the Court some
12    background into what happened.
13            So, there was an interrogatory served back at
14    that time which, I think correctly, previous counsel
15    interpreted to require spending for the year.  And, it
16    was answered accordingly.
17            A year later, Hancock came to us and said:  We
18    think we're entitled to information for the nine-month
19    period of the program year.
20            We disagreed with that.  Nevertheless,
21    discovery was closed.  We disagree with that.
22    Nevertheless we went back and we gave them -- we went
23    back and we had the information computed for the nine-
24    month period.  And, in the course of doing that, we
25    found out that there were additional dollars that were

42

1     spent that had not been in the prior interrogatories.
2     So, we supplemented the answer with the good and the bad
3     for us.
4             We gave them -- in fact, it gets out to be a
5     higher number for them.  But, we gave them all the
6     information, both the good and the bad.  And, now, what
7     they'd like to do is they'd like to use the good that
8     was given to them after the discovery was concluded and
9     which we contend was not called for, but keep us from
10    putting in the evidence of the information that doesn't
11    help them.  And, that's just not an ideal --
12            MR. DAVIS:  That's not our position, your
13    Honor.  I'm not trying to preclude them from doing it,
14    I'm just trying to understand it.  That's all.  The
15    numbers changed.  And, that wasn't the first time the
Page 35

4370665_1

16    numbers changed from Abbott.

17         The interrogatory responses that he's -- that

18    Mr. Weinberger is referring to was Abbott's second try

19    where they had previously revised their --

20         THE COURT:  I guess I'm like Satchel Paige.  I

21    don't want to move back.  The issue for me is does this

22    mean mean more discovery?  Does this mean interference

23    with the orderly development of the case?

24         MR. WEINBERGER:  We've given them the source

25    material.  We told them we're happy to answer any

                                                        43

1    questions that they have or explore any additional

2    information they might need.  And, that's about what

3    we're perfectly willingly to happen.

4         We do not think this requires any kind of

5    extensive or communicating additional discovery beyond

6    information we've given very recently.

7         THE COURT:  Okay.

8         MR. DAVIS:  Your Honor, the source material is

9    the summary that they prepared.  what I would propose

10    they do is we'll just identify -- what I would; like to

11    do is get some identification of the specific errors

12    that they saw so that what those adjustments were and

13    the costs of those adjustments, where they came from.

14    If they can do that in the first instance, then, we'll

15    have some better understanding.

16         THE COURT:  All right.  So, my general feeling

17    is that this ought to work out.

18         My second observation, without controlling it

19    or attempting to control it, at this stage, is if anyone

20    thinks that recomputation or multiple recomputation is

4370665_1

21    the start of impeachment of someone, there better be

22    good reason to say that.

23          I don't ordinarily think that.  I will -- you

24    know, sometimes in the course of -- I'll use as an

25    example, in criminal cases, with transcripts of persons

44

1    with English transcripts, but frequently with foreign

2    language give the interations to the defense on the

3    condition that the defense not use that as a way of

4    impeaching the case agent because he didn't get the

5    Spanish word right or something.

6          Here, again, you know, they redid it.  I'm

7    only concerned, unless somebody shows me something that

8    has some punch to it -- I'm only concerned with what the

9    ultimate position is of the parties with respect to the

10    dollars involved.

11          Maybe there's more out there.  What I hear is

12    -- suggests to me there's --

13          MR. DAVIS:  Actually, that's really not my

14    intention at all, your Honor.  It doesn't go to that.

15    It goes to -- and part of the reason why we really

16    haven't pressed hard on this point right now -- it goes

17    to that frequent 3(b) issue.

18          THE COURT:  M-hm.

19          MR. DAVIS:  So, the number that results from

20    that depends on what their actual spending was.  So,

21    it's really the question of what number will be

22    generated by that and finding out what --

23          THE COURT:  But, nothing I'm going to do on

24    that is going to make a difference.

25          MR. WEINBERGER:  Well, actually, your Honor,
                              Page 37

4370665_1

45

1    if your Honor rules in our favor, then, we will just --
2              THE COURT:  Oh, No.  Mooting it out.  I
3    understand that.  But, it's not going to make a
4    difference if -- I'm not being asked to do anything
5    that --
6              MR. DAVIS:  Correct.
7              THE COURT:  Okay, right.
8              So, I'll assume that this is going to be
9    resolved by the parties.
10             The other contractual compliance audits, we've
11   had a discussion on, I think, here.
12             I'm not sure -- turning to C -- motions in
13   limine and in utero that you list here.  The first one
14   having to do with evidence contrary to the
15   representations made by Abbott in its descriptive
16   memorandum.  I'm not exactly sure what you're getting at
17   here.
18             MR. DAVIS:  Your Honor, Abbott made various
19   representations concerning the actual program compounds
20   in the descriptive memos.  They warranted that anything
21   that was material in any of those descriptive memos was
22   honest and true, that it was accurate as of the date of
23   the deal.
24             We've seen some indication in Abbott's papers
25   that it's going to take a contrary position, they're

46

1    going to start producing evidence to the effect that:
2    Well, maybe some of it wasn't quite true, but that
3    Hancock was put on notice on that before the deal was

Page 38

# Exhibit 13

## Guzelsu, Ozge

| | |
|---|---|
| **From:** | Abati, Richard [RAbati@choate.com] |
| **Sent:** | Tuesday, May 15, 2007 2:42 PM |
| **To:** | Guzelsu, Ozge |
| **Cc:** | Lorenzini, Eric; Weinberger, Jeffrey; Phillips, Gregory; Davis, Brian; Zwicker, Joseph H.; Troake, Karen Collari |
| **Subject:** | Hancock // Abbott |
| **Attachments:** | @ |

Ozge:

I write to propose that the parties agree to schedule the supplementation of their discovery responses based on all of the discovery taken in this matter (if necessary).  Since discovery ends on May 29, 2007 and there are a few depositions going forward shortly thereafter, I would propose the exchange of such supplements on June 14, 2007.  Does this work for Abbott?  Please advise.

Thanks,

Rich

Richard C. Abati

Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
t 617-248-5076
f 617-248-4000
rabati@choate.com <mailto:rabati@choate.com>
www.choate.com <http://www.choate.com/>

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message, please destroy it and notify the sender of the er

**Attachments:**

 att5D.gif                                                                    (1 KB)

3/12/2008