UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER LIFE INSURANCE COMPANY), | ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 05-11150-DPW |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| ABBOTT LABORATORIES, | ) ) |  |
| Defendant. | ) ) |  |

**JOHN HANCOCK'S ANNOTATED PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**JOHN HANCOCK v. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | | *Background Facts* | | | |
| 1. | Plaintiff John Hancock Life Insurance Company, a company duly formed and existing under the laws of the Commonwealth of Massachusetts, provides insurance and investment products to retail and institutional customers.  John Hancock also is an investor in a diversified portfolio of investments, including commercial loans, corporate bonds, public and private securities and various other types of investment vehicles. | Blewitt, ¶ 4 | | | |
| 2. | Plaintiff John Hancock Variable Life Insurance Company ("JHVL") is an affiliated company of John Hancock Life Insurance Company, duly formed and existing under the laws of the Commonwealth of Massachusetts. JHVL provides variable life insurance products that link life insurance coverage and an investment return to an underlying portfolio of investments selected by the policyholder. | Blewitt, ¶ 5 | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 3. | Plaintiff Manulife Insurance Company ("Manulife") is an insurance company duly formed and existing under the laws of the State of Delaware.  Prior to approximately February 2005, Manulife was known as "Investors Partner Life Insurance Company."  Manulife is a wholly-owned subsidiary of JHVL that sells various types of life insurance products. | Blewitt, ¶ 6 | | | |
| 4. | Unless otherwise indicated, plaintiffs John Hancock, JHVL and Manulife are collectively referred to herein as "John Hancock," "Hancock" or the "Plaintiffs." | Blewitt, ¶ 7 | | | |
| 5. | Defendant Abbott Laboratories ("Abbott"), a corporation duly formed and existing under the laws of the State of Illinois, is a broad-based healthcare company that discovers, develops, manufactures and markets products and services that span the continuum of care from prevention and diagnosis to treatment and cure. | | Ex. 321 at 1 (Abbott's 2006 10K) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 6. | Abbott's principal businesses are global pharmaceuticals, nutritionals, and medical products.  Abbott has nearly 100 years experience developing new pharmaceutical compounds.  Abbott's "areas of expertise" in the field of pharmaceuticals include anti-infectives, neuroscience and oncology. | | Ex. 321 at 1 (Abbott's 2006 10K) | | |
| 7. | For fiscal 2006, Abbott achieved sales and net earnings of $22.48 billion and $1.72 billion, respectively.  Abbott currently employs over 65,000 people worldwide, and spends more than $2.3 billion annually on research and development. | | Ex. 321 at 7, 26, 34 (Abbott's 2006 10K) | | |
| | *The Negotiation of the Research Funding Agreement* | | | | |
| 8. | This action arises out of a "Research Funding Agreement" that John Hancock and Abbott executed on March 13, 2001 (the "Agreement"). | | Ex. 32 at JH 008115 (RFA) | | |
| 9. | Prior to 2001, John Hancock and Abbott had developed a business relationship based upon a series of joint investments in various pharmaceutical or biotech companies. | Blewitt, ¶¶ 11-16, 19

Deemer, ¶ 9 | Ex. 277 at AL 000100 (Abbott Slide Presentation re: John Hancock) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 10. | In or about 1999, Abbott and John Hancock began discussions about a possible investment by Hancock in a portfolio of new pharmaceutical compounds that Abbott had under development. | Blewitt, ¶¶ 18-19<br><br>Deemer, ¶ 10 | | | |
| 11. | Most of the preliminary discussions concerning the Agreement took place between Stephen Blewitt, a Managing Director in John Hancock's Bond and Corporate Finance Group, Philip Deemer, then the Director of Abbott's Corporate Licensing Department, and Stephen Cohen, Abbott's Controller for the Pharmaceutical Research and Development Division. | Blewitt, ¶ 19 | Ex. 66 at AL 000132 (e-mail message from S. Blewitt to P. Deemer and S. Cohen) | Deemer, 1491:12-14 | Deemer, 25:20-26:1 |
| 12. | Abbott was interested in a potential funding agreement with Hancock, in part, because it offered Abbott the opportunity to supplement its internal research and development budget from what Abbott regarded as the least expensive external funding source. John Hancock, in turn, was seeking above-average returns on a portion of its investment portfolio, while simultaneously reducing its level of risk. | Blewitt, ¶ 21 | Ex. 412 (Abbott internal presentation titled "Abbott-John Hancock Funding Collaboration") | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 13. | Over time, the parties began to concentrate their discussions on an investment structure whereby John Hancock would invest approximately $50 million per year over a four-year period to fund the development of a specified "basket" of pharmaceutical compounds in Abbott's then current research and development portfolio. Abbott was informed by John Hancock, and understood, that the proposed deal structure was highly dependent upon the number of pharmaceutical compounds included in the transaction, as well as the stage of development and expected sales of each compound. | Blewitt, ¶¶ 22, 24<br><br>Hartz, ¶¶ 7, 9 | Ex. 30 (Proposed Summary of Terms)<br><br>Ex. 66 at AL 000132 (e-mail message from S. Blewitt to P. Deemer and S. Cohen) | Hartz, 492:21-493:2<br><br>Deemer, 1496:20-1497:4<br><br>Tucker, 1539:17-1541:6 | Deemer, 104:14-22 |
| 14. | John Hancock specifically requested a diversified basket of compounds reflecting a variety of therapeutic indications, stages of development, and expected sales in order to provide an acceptable return on Hancock's proposed investment and reduce Hancock's overall level of risk. | Blewitt, ¶ 25<br><br>Hartz, ¶ 11 | Ex. 150 at JH 002424-25 (Blewitt memorandum to Hancock executives re: Proposed JH-Abbott deal)<br><br>Ex. 125 at JH 001203 (Hancock Purchase Recommendations for the Abbott deal (a/k/a the "Yellow Report")) | Blewitt, 15:20-17:5 138:12-139:4<br><br>Tucker, 1539:17-1541:6 1542:14-1545:11 1579:5-11 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 15. | In or about mid-2000, the parties began the process of identifying a suitable basket of pharmaceutical compounds to include in the proposed deal, and to develop a mutually-acceptable royalty payment structure. | Blewitt, ¶ 26 | | | |
| 16. | Among the compounds proposed by Abbott for inclusion in the John Hancock basket were ABT-518, a Matrix Metalloproteinase Inhibitor (MMPI) for the treatment of cancer; ABT-594, a selective neuronal nicotinic *receptor* (NNR) agonist for the treatment of chronic pain that just was commencing a Phase IIb clinical trial for diabetic neuropathic pain; ABT-773, one of a new class of powerful antibiotics known as "ketolides"; and ABT-980, a selective alpha blocker for the treatment of urinary tract blockages. | Blewitt, ¶ 26<br><br>Klotz, ¶ 17 | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 17. | In entering into its proposed investment with Abbott, John Hancock intended to invest only in promising development candidates with positive commercial prospects. John Hancock did not intend to invest in compounds that Abbott knew, or had reason to believe, would be discontinued shortly. | Blewitt, ¶ 27<br><br>Hartz, ¶ 12 | Ex. 150 at JH 002424-25 (Blewitt memorandum to Hancock executives re: Proposed JH-Abbott deal)<br><br>Ex. 125 at JH 001207 (Hancock Purchase Recommendations for the Abbott deal (a/k/a the "Yellow Report")) | | |
| 18. | John Hancock needed up-to-date and accurate information concerning the status of, and prospects for, the compounds that were to be included in its proposed deal with Abbott in order to understand and properly evaluate that deal. | Blewitt, ¶ 28<br><br>Klotz, ¶ 19 | | | Deemer, 92:15-93:13 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 19. | John Hancock was not in a position, however, to independently know the current status, prospects or plans for each of the deal compounds within Abbott's pharmaceutical R&D organization.  That is why John Hancock required, with Abbott's agreement, that Abbott formally represent and warrant to Hancock the up-to-date status, condition and plans for the various "Program Compounds" in the proposed basket of compounds. | Blewitt, ¶ 28<br><br>Klotz, ¶ 19 | Ex. 32 at ABBT 008107-8 (RFA)<br><br>Ex. 265 (Feb. 2001 ABT-518 Descriptive Memorandum)<br><br>Ex. 182 (Feb. 2001 ABT-594 Descriptive Memorandum)<br><br>Ex. 164 (Feb. 2001 ABT-773 Descriptive Memorandum) | Blewitt, 46:4-25 184:12-186:12 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 20. | During negotiations, Abbott provided John Hancock with a variety of technical, financial and other information concerning the Program Compounds. Abbott established internal working groups, which included personnel from Abbott's business development, new product development, and research and development organizations, to prepare a series of written "Descriptive Memoranda" for use by John Hancock in understanding and assessing the scientific status of, and commercial prospects for, each Program Compound. | Blewitt, ¶ 30<br><br>Hartz, ¶ 14<br><br>Leonard, ¶¶ 11-13 | Ex. 275 (Apr. 2000 e-mail message from R. Weiland to J. Leonard, P. Deemer, S. Cohen, *et al.*)<br><br>Ex. 276 (June 2000 e-mail message from P. Deemer to S. Cohen)<br><br>Ex. 1 (May 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 63 (Apr. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 109 (May 2000 ABT-773 Descriptive Memorandum)<br><br>Ex. 32 at JH 008152-209 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 21. | The Descriptive Memoranda prepared by Abbott describe, among other things: (a) the development status and technical merits of each compound (including the status and/or results of any clinical trials); (b) the specific indications (*i.e.*, conditions or disease states) for which the compounds were being developed by Abbott; (c) the nature and severity of any known or suspected side effects; (d) the estimated size of the U.S. and ex-U.S. commercial markets for each compound; and (e) the identity of any actual or potential competing products from other pharmaceutical companies. | Blewitt, ¶ 31<br><br>Klotz, ¶ 18 | Ex. 32 at JH 008153-209 (RFA) | | |
| 22. | Drafts of the Descriptive Memoranda created by the Abbott working groups were circulated to more senior Abbott management personnel, including Mr. Deemer and Dr. John Leonard, Abbott's Vice President of Development, for review before they were sent to John Hancock. | | Ex. 836 (draft Descriptive Memoranda with handwritten notations of J. Leonard)<br><br>Ex. 276 (e-mail message from J. Ropers to P. Deemer and S. Cohen) | | Leiden, 49:15-50:5 52:18-54:2<br><br>Leonard (Nov. 2006), 24:2-25:20 53:19-54: 6 68:12-69:18 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 23. | During negotiations, Abbott also provided information about its planned nominal and expected spending on each of the Program Compounds over the life of the Agreement in the form of various multi-year projections and drafts of Abbott's first "Annual Research Plan" ("ARP"). | Blewitt, ¶ 29<br><br>Hartz, ¶ 15 | Ex. 146 (Nominal & Expected Sales Forecast) | | |
| 24. | Abbott personnel involved in the deal with John Hancock understood that the Descriptive Memoranda, ARPs and other materials that Abbott was providing to John Hancock were being supplied to, and used by, Hancock for the purpose of understanding and evaluating the proposed deal. | Blewitt, ¶¶ 28-30 | Ex. 276 (e-mail message from P. Deemer to S. Cohen)<br><br>Ex. 32 at JH 008107, 153-209 (RFA) | | Deemer, 134:14-136:4<br><br>Leonard, 25:7-20 |
| 25. | Abbott personnel involved in the deal with John Hancock understood that Abbott's expected spending on the Program Compounds was important to John Hancock because Hancock regarded Abbott's own internal spending plans as a useful barometer of the commercial and technical prospects for the various Program Compounds. | Blewitt, ¶ 29<br><br>Gold, ¶ 18 | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 26. | John Hancock's employees and consultants, including Mr. Blewitt and Dr. Lynn Klotz, a pharmaceutical consultant who was retained by Hancock to assist in analyzing the proposed Program Compounds, actually reviewed and utilized Abbott's Descriptive Memoranda, ARPs and other information in understanding and evaluating those compounds and in deciding whether to go forward with the proposed transaction. | Klotz, ¶¶ 14-15, 17, 19<br><br>Blewitt, ¶¶ 32, 34 | Ex. 110 (e-mail message and memorandum from L. Klotz to S. Blewitt) | Blewitt, 140:4-141:10 95:9-12 | |
| 27. | John Hancock personnel utilized the information provided by Abbott, in conjunction with general industry data obtained from other sources, to prepare a detailed computer model, known as a "Monte Carlo" simulation, *which* Hancock used to develop financial projections and expectations for the proposed deal with Abbott. | Blewitt, ¶ 36<br><br>Hartz, ¶¶ 16-17 | Ex. 122 (example of a Hancock Monte Carlo simulation)<br><br>Ex. 125 at JH 001213-16 (Hancock Purchase Recommendations for the Abbott deal (a/k/a the "Yellow Report")) | Blewitt, 21:8-22:1 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 28. | John Hancock's Monte Carlo simulation entailed running multiple projected scenarios that assessed each Program Compound's commercial and scientific risk profile in order to calculate a combined risk-assessment and single expected rate-of-return on John Hancock's total investment, which information was used, in turn, by Hancock to determine what financial terms to demand in the Agreement, as well as whether to enter into the Agreement at all. | Blewitt, ¶ 37<br><br>Hartz, ¶ 17 | Ex. 122 (example of a Hancock Monte Carlo simulation)<br><br>Ex. 125 at JH 001214-15 (Hancock Purchase Recommendations for the Abbott deal (a/k/a the "Yellow Report")) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 29. | Specific data that John Hancock's Monte Carlo simulation considered and analyzed included, among other things: (a) the number of compounds in Hancock's proposed basket; (b) the likelihood that each compound actually would be fully developed by Abbott and obtain regulatory approval; (c) the anticipated commercial launch date for each compound; (d) likely peak and total sales for each compound once launched; (e) anticipated royalty rates; (f) estimates of the milestone and royalty payments that Hancock was likely to receive on both an annual and an aggregate basis; (g) Hancock's estimated risk of loss on the transaction; and (h) Hancock's estimated annual rate of return on the transaction. | Blewitt, ¶ 38 | Ex. 125 at JH 001214-15 (Hancock Purchase Recommendations for the Abbott deal (a/k/a the "Yellow Report")) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 30. | In many instances, John Hancock's Monte Carlo simulation incorporated more conservative projections than those provided by Abbott in the Descriptive Memoranda and other materials provided to Hancock by Abbott, including lower peak sales projections for the Program Compounds. | Blewitt, ¶ 39 Hartz, ¶ 18 | *Compare* Ex. 122 (example of a Hancock Monte Carlo simulation) *and* Ex. 125 at JH 001214-5 (Hancock Purchase Recommendations for the Abbott deal (a/k/a the "Yellow Report")) *with* Ex. 1 at ABBT 246454 (May 2000 ABT-518 Descriptive Memorandum) *and* Ex. 63 at ABBT 0107550 (Apr. 2000 ABT-594 Descriptive Memorandum) *and* Ex. 109 at ABBT 246470 (May 2000 ABT-773 Descriptive Memorandum) | Blewitt, 22:2-16 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 31. | Under John Hancock's method of analyzing its proposed deal with Abbott, the elimination of even a single Program Compound from the basket would have had a significant, adverse impact on the results of that analysis. | Blewitt, ¶ 40<br><br>Hartz, ¶ 19 | | Tucker, 1539:17-1541:6 | |
| 32. | John Hancock notified Abbott during negotiations of Hancock's expected returns on its investment with Abbott. On March 7, 2000, Mr. Blewitt forwarded to Mr. Deemer and Mr. Cohen a draft Summary of Terms. In his accompanying e-mail message, Mr. Blewitt stated, in part, that,<br><br>    [w]e believe that a diversified basket of compounds should yield the investor an IRR of 20-25%. Based on your desire to reduce the cost of capital and our desire to lower our risk, we have built in milestone payments, a tiered royalty structure, and a termination date for the royalties. The model provides us with an expected yield of 18-22%. | Blewitt, ¶ 41 | Ex. 66 at AL 000132 (e-mail message from S. Blewitt to P. Deemer and S. Cohen) | Blewitt, 136:15-24 139:5-140:3 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 33. | Negotiations over the terms of the proposed Agreement between John Hancock and Abbott continued into the Fall of 2000. | Blewitt, ¶ 46<br><br>Hartz, ¶ 23 | Ex. 124 (Aug. 2000 Draft RFA)<br><br>Ex. 129 (Nov. 2000 Draft RFA) | | |
| 34. | In late October 2000, Abbott notified John Hancock that it had discontinued the development of ABT-980, one of the proposed Program Compounds.  John Hancock responded by informing Abbott that Hancock was not willing to proceed with the Agreement on the terms then proposed due to the failure of ABT-980. | Blewitt, ¶¶ 54-55<br><br>Hartz, ¶ 29 | Ex. 128 at JH 000778 (e-mail message from P. Deemer to S. Blewitt) | Hartz, 505:19-23<br><br>Blewitt, 210:16-211:20 | Deemer, 219:1-11 222:24-223:11 |
| 35. | Rather than abandoning their proposed deal, the parties first attempted to compensate for the loss of ABT-980 by significantly altering the structure and terms of the deal, including, among other things, the timing and amount of John Hancock's potential investment, as well as the milestones that would trigger Abbott's payment obligations.  Several draft agreements incorporating the modified deal structure and terms were exchanged between the parties in late 2000. | Blewitt, ¶ 56 | Ex. 129 (Nov. 2000 Draft RFA) | Blewitt, 212:24-213:10<br><br>Hartz, 505:24-506:5<br><br>Deemer 1491:15-1492:19 1493:4-18 1511:2-14 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 36. | Unbeknownst to John Hancock, members of Abbott's senior management viewed the modified deal structure less favorably than the original structure.  In an internal memorandum that Mr. Deemer sent to Arthur Higgins, President of Abbott's Pharmaceutical Products Division, on or about December 1, 2000, Mr. Deemer acknowledged the position of Abbott's management and spelled out a planned chronology of events pursuant to which Abbott would notify John Hancock, in stages spread over a series of weeks, *inter alia*, that Abbott's "management is less enthusiastic about moving forward due to the new deal structure," and eventually that Abbott's management "wants to postpone a final decision until the new year."  Mr. Deemer simultaneously informed Mr. Higgins that he "would not anticipate reverting back to the original deal structure unless there is a change in the portfolio or possibly an IOU." | Blewitt, ¶ 57 | Ex. 130 (memorandum from P. Deemer to A. Higgins) | | Deemer, 223:12 – 224:16 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 37. | Abbott's management eventually decided, in early 2001, to move forward with the proposed deal as originally structured, and to compensate John Hancock for the loss of ABT-980 by adding two new drug compounds (ABT-510 and ABT-*492*) to the planned portfolio of Program Compounds. | Blewitt, ¶¶ 58, 60-62 | | | |
| 38. | After due consideration, John Hancock accepted Abbott's proposal. | Blewitt, ¶ 62 | | | |
| 39. | Abbott and John Hancock thereafter continued to modify and refine the terms of their proposed agreement in various ways, but the group of nine Program Compounds remained unaltered through the execution of the Agreement on March 13, 2001. | Blewitt, ¶¶ 63-64 | Ex. 32 at JH 008138 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | | *Abbott's Initial Portfolio Prioritization Review* | | | |
| 40. | While Abbott was negotiating the final terms of its Agreement with John Hancock in early 2001, Abbott simultaneously was conducting a thorough review of all of the pharmaceutical compounds that it then had in development as a consequence of Abbott's acquisition of Knoll Pharmaceutical *Division of BASF Corporation* ("Knoll") in late 2000. | Leonard, ¶ 21<br><br>Leiden, ¶ 11 | Ex. 103 (Mar. 2001 Portfolio Review Meeting Agenda) | | Leiden, 74:5-76:14 |
| 41. | Abbott retained the consulting firm of McKinsey & Company ("McKinsey") in or about January 2001 to assist in the evaluation and prioritization of Abbott's pharmaceutical development portfolio, and to help manage the eventual integration of various compounds that Abbott had acquired as part of the Knoll transaction into Abbott's existing research and development organization (the "Abbott Portfolio Prioritization *Process*"). | | Ex. 323 (McKinsey's engagement letter)<br><br>Ex. 324 (letter from J. Hopfield to J. Leiden) | | Hopfield, 16:4-9 18: 9-19:12 47:4-11<br><br>Leonard (June 2007), 433:11-15 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 42. | McKinsey's duties and responsibilities with respect to Abbott's Portfolio Prioritization *Process and the Knoll integration project generally* included, but were not limited to, attendance at, participation in, and memorialization of various internal Abbott meetings, *and the preparation of action plans.* | | Ex. 103 (Mar. 2001 Portfolio Review Meeting Agenda)<br><br>Ex. 104 (e-mail message from McKinsey to J. Leiden w/Initial Portfolio Prioritization)<br><br>Ex. 198 (e-mail message from J. Hopfield to J. Leiden)<br><br>Ex. 199 (McKinsey Integration Plan Presentation)<br><br>Ex. 323 (McKinsey engagement letter)<br><br>Ex. 324 (letter from J. Hopfield to J. Leiden) | Leiden, 1172:16-1173:25 1174:8-9 1177:22-1178:20 1180:3-21 | Hopfield, 18:9-19:12 24:6-25:12 87:1-89:7 160:13-19 160:22-162:24<br><br>Leonard (Jun. 2007), 436:17-438:12 |
| 43. | Jessica Hopfield is one of the lead McKinsey consultants who worked on the Abbott Portfolio Prioritization Project. | | Ex. 324 (letter from J. Hopfield to J. Leiden) | Leiden, 1175:18-24 | Hopfield, 16:4-19:12<br><br>Leonard (Jun. 2007), 433:11- 24 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 44. | Dr. Hopfield is the co-leader of McKinsey's pharmaceuticals and medical products practice.  She holds an undergraduate degree in biology from Yale University and a Ph.D. in neurobiology from Rockefeller University.  Prior to joining McKinsey, Dr. Hopfield worked for the pharmaceutical firm Merck & Co., Inc. in the areas of clinical development, project planning and management, and marketing. | | | | Hopfield, 8:10-12:12 |
| 45. | With McKinsey's assistance and participation, Abbott conducted an "Initial Portfolio Prioritization Review" from Wednesday, March 7, through Friday, March 9, 2001 (*i.e.*, approximately one week before the Agreement was executed), for the purpose of reviewing and assessing the technical, scientific, medical and commercial status of Abbott's entire portfolio of pharmaceutical compounds in development, including ABT-518, ABT-594 and ABT-773. | Leonard, ¶ 21<br><br>Leiden, ¶ 11 | Ex. 103 (Mar. 2001 Portfolio Review Meeting Agenda)<br><br>Ex. 282 at ABBT 0164030 (e-mail message from X. Frapaise to J. Arnott, *et al.*) | Leiden, 1181:1-12 | Hopfield, 47:4-11<br><br>Leiden, 75:5-76:14 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 46. | Attendees at Abbott's Initial Portfolio Prioritization Review in early March 2001 included, among others, various members of Abbott's senior management, including Dr. Jeffrey Leiden, then Executive Vice President of Abbott's Pharmaceuticals Division and its Chief Scientific Officer, and Dr. Leonard; selected McKinsey consultants, including Dr. Hopfield; and, at appropriate points in time, the various Abbott personnel chiefly responsible for the development of the specific compounds being reviewed. | Leonard, ¶ 21<br><br>Leiden, ¶ 11 | Ex. 103 at ABBT 0118740 (Mar. 2001 Portfolio Review Meeting Agenda)<br><br>Ex. 57 at 54-56 (Abbott's Responses to JH's 2nd Requests for Admissions at Nos. 89, 90, 91, 92 referring to 142 (Initial Portfolio Prioritization)) | | Leiden, 86:19-87:24<br><br>Hopfield, 85:4-19 88:2-8 |
| 47. | As part of their assigned duties, representatives of McKinsey, including Dr. Hopfield, memorialized and summarized the conclusions and directives that resulted from Abbott's March 2001 Initial Portfolio Prioritization Review in a document *titled* "Initial Portfolio Prioritization." | | Ex. 104 (e-mail message from McKinsey to J. Leiden) | Leiden, 1175:15-1176:25 1177:1-1178:20 | Hopfield, 87:1-89:7 90:17-91:20 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 48. | Drafts of the Initial Portfolio Prioritization were sent by McKinsey to Dr. Leiden at Abbott for his review and comments on or prior to March 13, 2001. Copies of the Initial Portfolio Prioritization subsequently were incorporated in various presentations and meeting materials distributed to and reviewed by Abbott personnel in the course of the Abbott Portfolio Prioritization Project. | | Ex. 104 (e-mail message from McKinsey to J. Leiden)  Ex. 197 at MCK 00351-57 (Mar. 19, 2001 memorandum for R&D Discussion)  Ex. 198 at MCK 00413-19 (e-mail message from McKinsey to J. Leiden) | | Hopfield, 90:17-91:20 107:1-109:4 |
| 49. | At no time did anyone from Abbott inform Dr. Hopfield or anyone else from McKinsey that the information contained in the March 2001 Initial Portfolio Prioritization was inaccurate in any way. | | | Leiden, 1183:11-13 1184:7-1185:19  Leonard, 898:24-902:4 | Hopfield, 50:1-22 |
| | *The Final Agreement* | | | | |
| 50. | The final version of the Agreement between John Hancock and Abbott was executed by Mr. Blewitt of John Hancock, and Dr. Leiden of Abbott on March 13, 2001. | Blewitt, ¶ 65  Hartz, ¶ 32 | Ex. 32 at JH 008115 (RFA) | | Leiden, 19:22-20:12 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 51. | The terms of the Agreement call for John Hancock to invest up to $214 million over four years in the development of nine Program Compounds including, but not limited to, ABT-518, ABT-594 and ABT-773. | Blewitt, ¶ 70 | Ex. 32 at JH 008091, 138 (RFA) | | |
| 52. | Under the terms of the Agreement, John Hancock's ability to earn a return on its investment in the Program Compounds depends on the commercial success of those compounds. If some or all of the compounds fail or otherwise are unsuccessful, Hancock's financial return is reduced accordingly. | Blewitt, ¶ 71 <br><br> Hartz, ¶ 11 <br><br> Friedman, ¶ 8 | Ex. 32 at JH 008097-99 (RFA) | | |
| 53. | Similarly, because John Hancock only shares in the revenues, if any, generated by the Program Compounds for a set number of years, Hancock stands to gain more if the Program Compounds are developed quickly. | Blewitt, ¶ 72 <br><br> Friedman, ¶ 9 | Ex. 32 at JH 008088-89 (RFA) | | |
| 54. | Mr. Deemer sent the final versions of the Descriptive Memoranda for each of the Program Compounds, as well as Abbott's first ARP, to John Hancock on February 15, 2001 (*i.e.*, approximately one month before the Agreement was executed). | | Ex. 281 (e-mail message from P. Deemer to S. Blewitt) | Blewitt, 150:15-151:3 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 55. | Mr. Deemer subsequently assured Mr. Blewit by e-mail on March 12, 2001 (*i.e.*, the day before the Agreement was executed) that Dr. Leonard, Abbott's Vice President of Development, had "looked at all of the documents one last time in preparation for execution" and noted only one "oversight"; a slight delay in the commencement of Abbott's Phase I study of ABT-518.  According to Mr. Deemer, "Phase I was to have started on December 2000 (4Q2000), but in fact did not start until earlier this month." | Blewitt, ¶ 66 | Ex. 70 at ABBT 0004031 (e-mail message from P. Deemer to S. Blewitt) | Deemer, 1506:15-1508:24 <br><br> Leonard, 857:5-858:11 862:11-20 863:13-864:20 865:8-866:10 866:20-867:10 867:19-868:5 | Deemer, 174:20-177:1 |
| 56. | Mr. Deemer further told Mr. Blewitt that, although the purported delay in the commencement of Phase I for ABT-518 had "pushed the timeline [for ABT-518] back by a quarter throughout," the estimated "launch date [for ABT-518] is not affected and is actually planned one quarter earlier."  Mr. Deemer attributed Abbott's alleged delay in starting the Phase I trial of ABT-518 to delays in "completing this financing." | Blewitt, ¶ 66 | Ex. 70 at ABBT 0004031 (e-mail message from P. Deemer to S. Blewitt) | | Deemer, 177:12-179:22 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 57. | No other changes, concerns, discrepancies or errors regarding ABT-518 -- or any other Program Compound -- were disclosed to John Hancock by anyone at Abbott before the Agreement was executed by the parties. | Blewitt, ¶¶ 68-69 | | | Leonard (Nov. 2006), 230:6-231:9 |
| 58. | Mr. Deemer and other Abbott personnel understood, before the Agreement was signed, that each one of the Program Compounds in the proposed basket of compounds was important to the deal, and that even a slow down in the development of any of the Program Compounds, if disclosed to John Hancock, likely would cause Hancock to *postpone and renegotiate* the proposed deal or, possibly, withdraw from the deal entirely. | | Ex. 75 (e-mail message from P. Deemer to P. Nisen) | Deemer, 1510:3-1513:2 | Deemer, 103:6-104:3 105:13-106:12 |
| 59. | The final Descriptive Memoranda (also referred to in the Agreement as "Compound Reports") were attached to, and incorporated in, the Agreement as collective Exhibit 12.2(i). Abbott's purported spending plans as of the date of the Agreement were contained in its first ARP, which was attached to, and incorporated in, the Agreement as Exhibit 1.6. | Blewitt, ¶ 73 | Ex. 32 at JH 008152-210, 116-136 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 60. | Abbott expressly represented and warranted both the completeness and the accuracy of the information contained in its Descriptive Memoranda and in its first ARP in Article 12 of the Agreement.  More specifically, Abbott represented and warranted to John Hancock in Section 12.2(i) that,<br><br>[n]either this Agreement nor any Exhibit to this Agreement (including the compound reports attached as Exhibit 12.2(i) hereto (the "Compound Reports")) contains any untrue statement of material fact or omits to state any material fact necessary to make the statements contained herein or therein not misleading.  There is no fact known to Abbott (other than generally available information concerning the pharmaceutical industry in general) as of the date of this Agreement that has not been disclosed in this Agreement or any Exhibit to this Agreement which has resulted in, or could reasonably be expected to result in, a material adverse effect on the prospects or condition (including safety, efficacy, scientific viability or commercial [viability]) of the Research Program or any of the | Blewitt, ¶ 74 | Ex. 32 at JH 008107 (RFA) | Blewitt, 141:2-143:9 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | Program Compounds. | | | | |
| 61. | Abbott further expressly represented and warranted to John Hancock in Section 12.2(m) that,<br><br>[w]ith respect to each Program Compound, since the date of its respective Compound Report, to the knowledge of Abbott, no condition, circumstance or fact has arisen (other than generally available information concerning the pharmaceutical industry in general) nor has Abbott made any change in the conduct of the Research Program which, individually or in the aggregate, has resulted in, or could reasonably be expect[ed] to result in, a material adverse effect on the prospects or condition (including safety, efficacy, scientific viability or commercial [viability]) of such Program Compounds. | Blewitt, ¶ 67 | Ex. 32 at JH 008108 (RFA) | | |

## JOHN HANCOCK V. ABBOTT (05-11150)
## JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 62. | John Hancock actually and justifiably relied upon various representations made by Abbott in the Agreement, including the representations contained in Sections 12.2(i) and 12.2(m), in deciding to enter into the Agreement on March 13, 2001 on the terms stated. | Blewitt, ¶ 75 | Ex. 32 at JH 008081 RFA) | Blewitt, 141:2-143:9 | Leiden, 27:24-29:1 |
| 63. | The representations made by Abbott in Sections 12.2(i) and 12.2(m) of the Agreement, among others, were material to John Hancock's decision to enter into the Agreement on March 13, 2001 on the terms stated. | Blewitt, ¶¶ 76, 86, 99, 112 | | | |
| | *Abbott's Misrepresentation and Fraud Regarding the Actual Status and Prospects of the Program Compounds as of the Date of the Agreement* | | | | |
| 64. | As of March 13, 2001, the actual status and prospects of at least three of the Program Compounds, ABT-518, ABT-594 and ABT-773, were materially different from what Abbott represented to John Hancock in the Agreement. | Blewitt, ¶ 77<br><br>Hartz, ¶ 38 | *See* Supporting Evidence for Paragraphs 72(a)-(g); 98(a)-(v); 115(a)-(f), *supra* | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 65. | As of March 13, 2001, Abbott's actual plans for at least *two* of the Program Compounds, ABT-518 and ABT-594, were materially different from what Abbott represented to John Hancock in the Agreement. | Blewitt, ¶ 77<br><br>Hartz, ¶ 38 | *See* Supporting Evidence for Paragraphs 72(a)-(g); 98(a)-(v), *supra* | | |
| | *ABT-518* | | | | |
| 66. | According to Abbott, ABT-518 is an MMPI, a family of compounds that is intended to inhibit the growth of cancerous tumors. | Leonard, ¶ 16<br><br>Klotz, ¶ 20 | Ex. 32 at JH 008194 (RFA) | | |
| 67. | Over the approximately ten months of active contract negotiations leading up to the execution of the Agreement, Abbott supplied John Hancock with three versions of its Descriptive Memorandum for ABT-518 and/or its MMPI program; an initial draft dated May 31, 2000; an updated draft dated November 1, 2000; and the final version dated February 2001 that forms part of collective Exhibit 12.2(i) to the Agreement. | Blewitt, ¶ 78 | Ex. 1 (May 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 2 (Nov. 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 265 (Feb. 2001 ABT-518 Descriptive Memorandum)<br><br>Ex. 32 at JH 008193-99 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 68. | Each version of Abbott's Descriptive Memorandum consistently described ABT-518, *inter alia*, as follows: | Blewitt, ¶ 79 | | | |
| | (a)  "Abbott's Matrix Metalloproteinase Inhibitor (MMPI) program represents a novel therapeutic class, with the potential to alter the way cancer is treated by preventing or modifying disease progression and/or metastases"; | Blewitt, ¶ 79(a) Klotz, ¶ 20(a) | Ex. 1 at ABBT 246448 (May 2000 ABT-518 Descriptive Memorandum) Ex. 2 at ABBT 245830 (Nov. 2000 ABT-518 Descriptive Memorandum) Ex. 265 at ABBT 0004033 (Feb. 2001 ABT-518 Descriptive Memorandum) Ex. 32 at JH 008194 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (b) "The MMP selectivity profile exhibited by ABT-518 distinguishes it from competitor's compounds"; and | Blewitt, ¶ 79(b)<br><br>Klotz, ¶ 20(b) | Ex. 1 at ABBT 246448 (May 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 2 at ABBT 245830 (Nov. 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 265 at ABBT 0004033 (Feb. 2001 ABT-518 Descriptive Memorandum)<br><br>Ex. 32 at JH 008194 (RFA) | Blewitt, 53:14-22 63:6-23 146:7-148:7<br><br>Klotz, 401:2-9 443:16-445:11 448:7-450:3 476:12-25 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (c)  "ABT-518 is therefore a compelling development candidate with the potential to demonstrate antitumor effects superior to the [other] MMP inhibitors currently undergoing clinical trials." | Blewitt, ¶ 79(c)  Klotz, ¶ 20(c) | Ex. 1 at ABBT 246448-9 (May 2000 ABT-518 Descriptive Memorandum)  Ex. 2 at ABBT 245830-1 (Nov. 2000 ABT-518 Descriptive Memorandum)  Ex. 265 at ABBT 0004033-34 (Feb. 2001 ABT-518 Descriptive Memorandum)  Ex. 32 at JH 008194-5 (RFA) | Klotz, 477:14-478:12 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 69. | The various versions of Abbott's Descriptive Memorandum for ABT-518 also consistently identify other "MMPIs in Clinical Development for Cancer" as including "Marimistat" [*sic*], which reportedly was being developed by British Biotechnology and Schering Plough, and "Prinomastat," which reportedly was being developed by a combination of Agouron Pharmaceuticals, Warner Lambert and Pfizer. | Blewitt, ¶ 80<br><br>Klotz, ¶ 21 | Ex. 1 at ABBT 246451 (May 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 2 at ABBT 245833 (Nov. 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 265 at ABBT 0004036 (Feb. 2001 ABT-518 Descriptive Memorandum)<br><br>Ex. 32 at JH 008196-97 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 70. | With respect to these competing MMPI compounds, each version of Abbott's Descriptive Memorandum states that, <br><br> [a]lthough Abbott's timing to market is not optimal, the shortcomings of the competitive products provide an opportunity for a compound with an improved SE or efficacy profile.  Current animal models seem to predict Abbott's compound [*i.e.*, ABT-518] is superior to those currently in clinical trials, and has the potential to be best in class. | Blewitt, ¶ 81 <br><br> Klotz, ¶ 21 | Ex. 1 at ABBT 246451 (May 2000 ABT-518 Descriptive Memorandum) <br><br> Ex. 2 at ABBT 245833 (Nov. 2000 ABT-518 Descriptive Memorandum) <br><br> Ex. 265 at ABBT 0004036 (Feb. 2001 ABT-518 Descriptive Memorandum) <br><br> Ex. 32 at JH 008197 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 71. | Prior to the execution of the Agreement, Abbott never wavered in its representations to John Hancock that Abbott regarded ABT-518 as a "compelling development candidate" that had "the potential to be best in class" among a "novel therapeutic class" of similar compounds being developed by a range of pharmaceutical companies. | Blewitt, ¶ 82 | Ex. 1 at ABBT 246448-9 (May 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 2 at ABBT 245830-1 (Nov. 2000 ABT-518 Descriptive Memorandum)<br><br>Ex. 265 at ABBT 0004033-34 (Feb. 2001 ABT-518 Descriptive Memorandum)<br><br>Ex. 32 at JH 008194-5 (RFA) | | |
| 72. | Abbott's express representation to John Hancock in the Agreement that Abbott still regarded ABT-518 to be a "compelling development candidate" as of March 13, 2001, as well as various other representations that Abbott made to Hancock in the Agreement regarding the purported prospects and condition of ABT-518, were materially false and/or incomplete. Material facts that Abbott either misrepresented or failed to disclose to John Hancock include, *inter alia*, the following: | Blewitt, ¶ 83 | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (a)  Contrary to the representations made by Abbott in its Descriptive Memorandum for ABT-518, Abbott knew before the Agreement was signed that other pharmaceutical companies had dramatically curtailed or discontinued their own MMPI programs.  *For example, Abbott represented in its Descriptive Memorandum for ABT-518 that, as of March 13, 2001, Marimastat and Prinomastat, two competing MMPI compounds, were in "Phase III" development,*  Members of Abbott's management were aware no later than February 2001, *however,* that Agouron Pharmaceuticals and Pfizer had announced *in August 2000* that they were "stopping Phase III trials of Prinomastat in advanced prostate [cancer] and NSCLC [non-small cell lung cancer] because 'primary efficacy objectives were not met,'" and that "Marimastat development was discontinued" by British Biotech on February 15, 2001; | | Ex. 308 at ABBT 0017616 (Jul. 2000 "Top Issues")  Ex. 196 at ABBT 0061747-48 (Aug. 2001 Press Release)  Ex. 67 at ABBT 0000345 (Feb. 2001 Monthly Report)  Ex. 157 at ABBT 302721 (Oncology Portfolio Analysis Inputs)  Ex. 32 at JH 008197 (FRA) | Leonard, 873:16-24 875:5-21 876:21-879:15 | Nabulsi, 43:24-44:3 44:18-45:7 47:15-18 50:15-51:15 53: 9-20 60:11-22 65:24-66:10 92:7-22 94:7-20 95:5-96:10 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (b) Less than one week prior to the execution of the Agreement, the senior management of Abbott's Pharmaceuticals Division -- led by Dr. Leiden and including Dr. Leonard -- reviewed ABT-518's current status and prospects as part of the comprehensive Initial Portfolio Prioritization Review that they conducted on March 7-9, 2001. Questions were raised about ABT-518 during the course of the review in light of the information that several competitor MMPIs already had been discontinued; | Leonard, ¶¶ 22-23<br><br>Leiden, ¶¶ 12-15 | Ex. 103 at ABBT 0118741 (March 2001 Portfolio Review Meeting Agenda)<br><br>Ex. 293 at ABBT 300143 (March 2001 MMPI Work Group Meeting Minutes)<br><br>Ex. 69 (March 2001 MMPI Monthly Meeting Agenda) | Leonard, 880:3-881:13 | Nabulsi, 118:9-119:8 119:15-21 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (c)  Shortly after the presentation and discussion concerning ABT-518, Dr. Leiden, in his capacity as Executive Vice President of Abbott's Pharmaceuticals Division and its Chief Scientific Officer, ordered an immediate halt to all expenditures on the development of ABT-518 due to his concerns about the low prospects of success for that compound.  Dr. Leiden's order to "Hold/T[erminate]" ABT-518 and "halt all further expenditure" on that Program Compound was memorialized in the Initial Portfolio Prioritization document prepared by McKinsey and distributed shortly thereafter to various Abbott personnel, including Dr. Leiden; | | Ex. 104 at MCK 00423-25 (e-mail message from McKinsey to J. Leiden)<br><br>Ex. 147 at ABBT 0155603 (Initial Portfolio Review) | Leonard, 879:23-881:13 881:22-883:10 886:1-19<br><br>Blewitt, 145:7-146:6 | Nabulsi, 145:15-147:9 150:19-22 151:1-11<br><br>Leonard (Nov. 2006), 92:7-18<br><br>Hopfield, 98:20-99:7 99:18-100:7 103:4-105:15<br><br>Deemer, 94:2-101:12 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (d)  Consistent with the decision made at Abbott's Initial Portfolio Prioritization Review in early March 2001, Abbott personnel working on ABT-518 were instructed by their superiors on Sunday, March 11, 2001 (*i.e.*, two days before the Agreement was executed), to "stop all development activities immediately."  Dr. Azmi Nabulsi, an Abbott employee who was working on the Phase I study of ABT-518 that Abbott recently had commenced in the Netherlands, notified his counterpart in Europe the same day that "we are not proceeding with the trial as a result of the [ABT-518] projects re-prioritization following the acquisition of Knoll"; | | Ex. 144 (e-mail message from A. Nabulsi to J. Looman)  Ex. 295 (e-mail message from D. D'Amico to jhm@nki.nl)  Ex. 78 (Timeline of ABT-518 Phase I trial events prepared by J. Looman) | | Nabulsi, 164:1-165:22 145:15-147:9  Looman, 50:4-51:9 62:7-63:23 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|---|
| | (e) | As a consequence of Abbott's order to stop all development activities on ABT-518 immediately because of the low prospects of success for that compound, further enrollment in the Phase I trial of ABT-518 was halted on or about March 12, 2001 (*i.e.*, the day before the Agreement was executed); | | Ex. 144 (e-mail message from A. Nabulsi to J. Looman)<br><br>Ex. 71 (e-mail message from D. D'Amico to jhm@nki.nl) | | Looman, 79:12-16 |
| | (f) | When Mr. Deemer learned, just before the Agreement was signed, that Abbott's senior management had decided to halt further development of ABT-518, he contacted Dr. Leonard to remind him that ABT-518 was one of the Program Compounds in the planned John Hancock portfolio of compounds. Dr. Leonard, in turn, promptly spoke with Dr. Leiden, reminded him of the impending Agreement with John Hancock, and suggested that Abbott proceed with the development of ABT-518; and | Leonard, ¶ 25<br><br>Leiden, ¶¶16-17 | Ex. 75 (e-mail message from P. Deemer to P. Nisen) | Deemer, 1493:25-1495:2 1499:24-1500:24 1502:13-1503:5 1505:21-1506:14<br><br>Leonard, 887:17-889:10 | Deemer, 106:14-111:5<br><br>Leonard, 97:12-98:1<br><br>Leiden, 246:3-247:3 248:16-249:9 256:23-257:12 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (g) *Sometime on* March 13, 2001 (*i.e.*, the day the Agreement was executed), Dr. Leiden directed Abbott personnel to recommence the Phase I trial of ABT-518 and signed the Agreement on Abbott's behalf. | Leonard, ¶ 26  Leiden, ¶ 16 | Ex. 72 (e-mail message from P. Gjelsten to J. Looman)  Ex. 4 (e-mail message from M. Rieser and D. D'Amico to P. Gjelsten) | | Deemer, 111:17-112:15 |
| 73. | The Phase I trial of ABT-518 did not immediately recommence on March 13, 2001. It took Abbott personnel and the clinicians at the trial sites more than another week to resume patient enrollment in the trial. | | Ex. 76 (e-mail message from J. Looman to D. D'Amico)  Ex. 57 at 10-11 (Abbott's Responses to JH's 2nd Requests for Admissions at No. 14) | | |
| 74. | Certain other development work on ABT-518, including various toxicology tests and analyses, never was resumed by Abbott after being halted, per Dr. Leiden's order, on or about March 12, 2001. | | Ex. 77 (e-mail message from D. D'Amico to L. Loberg) | Leonard, 1011:20-1012:16 | Loberg, 62:10-63:14 74:5-74:13 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 75. | Abbott *reaffirmed* its *decision to terminate the* previously-halted Phase I clinical trial of ABT-518 again less than sixty (60) days after the Agreement was executed. | | Ex. 198 at MCK 00408-10, 14 (e-mail message from McKinsey to J. Leiden)<br><br>Ex. 302 at ABBT 0000361 (May 2001 ABT-518 Monthly Highlights) | | |
| 76. | Although Abbott's purported reason for resuming that trial was to give Abbott personnel the opportunity to review additional data on competing MMPI compounds that was scheduled to be released at the annual meeting of the American Society of Clinical Oncology (ASCO) in San Francisco, California on May 12-15, 2001, Abbott's senior management -- again including Dr. Leiden and Dr. Leonard -- did not wait to receive and review that data before *deciding*, once again, *to* halt to all development work on ABT-518. | | Ex. 198 at MCK 00408-10 (e-mail message from McKinsey to J. Leiden)<br><br>Ex. 286 at ABBT 0045243-44 (Apr. 2001 MMPI Monthly Meeting Agenda Objectives) | Leonard, 883:12-885:8 887:12-16 898:24-899:10 902:5-903:17 948:10-949:20 1008:25-1009:7<br><br>Leiden, 1205:11-1206:1 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 77. | Abbott's renewed decision to terminate the development of ABT-518 was made the week before the ASCO meeting during Abbott's Final Portfolio Prioritization Review and Strategy Retreat (the "Final Portfolio Prioritization Review"), which was held on May 5-6, 2001. | | Ex. 198 at MCK 00408-10 (e-mail message from McKinsey to J. Leiden)<br><br>Ex. 199 at MCK 00144 (McKinsey Integration Plan presentation) | Leonard, 898:23-24 902:5-903:17 904:1-2 904:18-906:15 907:6-17 | |
| 78. | Abbott's decision *in early May 2001* to terminate ABT-518 once-and-for-all was memorialized in a document titled "Strategy Retreat Output" that was prepared by representatives of McKinsey and subsequently distributed to various Abbott personnel, including Dr. Leiden. *Abbott's decision also was memorialized in an "Integration Plan Presentation by the R&D Team" that was prepared by McKinsey and used at an Abbott R&D Steering Committee meeting on or about May 25, 2001.* | | Ex. 198 at MCK 00410 (e-mail message from McKinsey to J. Leiden)<br><br>Ex. 199 at MCK 00144, 186 (McKinsey Integration Plan presentation) | Leonard, 904:1-2 904:18-906:15 907:6-17 | Hopfield, 160:13-19 160:22-162:24 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 79. | *In any event, the results of the May 2001 ASCO conference were not material to Abbott's decision to terminate ABT-518.* According to Dr. Azmi Nabulsi, who led Abbott's ABT-518 development team and was an attendee at the ASCO conference in San Francisco, the ASCO results did not provide significantly new information on competing MMPI compounds to Abbott. | | Ex. 51 (ASCO 2001 MMPI Update) | Leonard, 948:10-949:20 1008:25-1009:7 | Nabulsi, 255:17-257:20 261:14-262:10 264:20-23 266:6-13 293:20-294:14 |
| 80. | News of Abbott's renewed decision to cease the development of ABT-518 and, once again, to halt the Phase I trial of that compound was conveyed to Abbott employees working on ABT-518 in early June 2001, and to the investigators conducting the trial in mid-June 2001. | | Ex. 221 at ABBT 0057877 (MMPI Working Group Meeting Minutes)<br><br>Ex. 303 at ABBT 0033089 (Abbott memorandum re: termination of ABT-518 Phase I study) | | Leonard (Nov. 2006), 265:21-266:16 |
| 81. | As a result of Abbott's decision to terminate the development of ABT-518 in May 2001, before completion of its Phase I trial in human subjects, no pharmacodynamic analyses or formal efficacy analyses could be completed, and no safety conclusions could be drawn from the aborted Phase I study, for the purpose of making a Go/No Go decision for ABT-518. | | Ex. 57 at 15-17 (Abbott's Responses to JH's 2nd Requests for Admissions at Nos. 24, 25, 26) | Leonard, 912:21-22 913:13-914:9 | Nabulsi, 275:2-15 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 82. | Abbott did not notify John Hancock of its renewed decision to terminate ABT-518 until September 20, 2001, at which time Abbott stated only that it had "refocused its efforts in cancer discovery and, as a result, has made the decision to terminate the MMPI Program, which includes Program Compound ABT-518." | Blewitt, ¶ 91 | Ex. 13 (letter from D. Pals to S. Blewitt) | | |
| 83. | Abbott provided no additional information regarding the basis for, or the history of, its decision to terminate ABT-518 to John Hancock. | Blewitt, ¶ 91 | Ex. 13 (letter from D. Pals to S. Blewitt) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 84. | Just one week after Abbott's Agreement with John Hancock was executed, Mr. Deemer sent Dr. Perry Nisen, the head of Abbott's Oncology R&D Program, an e-mail message stating, in part, <br><br> You probably heard that Hancock was signed last week: $214,000,000 over 4 years!  A long time coming but finally done.  We had a little scare at the end when it looked like 518 was being slowed down which could have been the deathnell [*sic*] to the deal.  I worked with John [Leonard] to protest that and I understand it is back on track… | | Ex. 184 (e-mail messages between P. Deemer and P. Nisen) | Deemer, 1509:10-1513:2 | Deemer, 191:10-193:23 |
| 85. | Mr. Deemer and other Abbott management personnel understood before the Agreement with John Hancock was executed that ABT-518 was an important part of the proposed portfolio of Program Compounds that was encompassed by that Agreement.  They recognized that even a slow down in the development of ABT-518, if disclosed to John Hancock, had the potential to delay, kill or otherwise impact the structure *and terms* of that Agreement. | | Ex. 184 (e-mail messages between P. Deemer and P. Nisen) | Deemer, 1495:8-20 1496:12-23 1497:18-24 | Deemer, 103:6-104:3 105:13-106:12 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 86. | The "scare" that Mr. Deemer referred to in his e-mail to Dr. Nisen was Abbott's fear that John Hancock would not enter into the Agreement if Hancock knew about Abbott's prior decision to halt all further development of ABT-518 because of the low prospects of success for that compound. | | Ex. 184 (e-mail messages between P. Deemer and P. Nisen) | Deemer, 1499:5-22 1509:10-1513:2 | |
| 87. | The true prospects and condition of ABT-518 as of March 13, 2001 was information material to John Hancock's decision to enter into the Agreement. | Blewitt, ¶ 86 Hartz, ¶ 41 | | Blewitt, 144:11-148:7 | Nabulsi, 211:8-24 Looman, 56:23-57:11 63:1-23 |
| 88. | Abbott misrepresented and/or failed to disclose material information concerning the prospects and condition of ABT-518 to John Hancock in the Agreement. | Blewitt, ¶ 83 | *See* Supporting Evidence for Paragraphs 72(a)-(g), *supra* | *See* Supporting Evidence for Paragraphs 72(a)-(g), *supra* | *See* Supporting Evidence for Paragraphs 72(a)-(g), *supra* |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 89. | Abbott's misrepresentations *and* failures to disclose material information concerning the prospects and condition of ABT-518 to John Hancock in the Agreement were, in whole or in significant part, undertaken wantonly, willfully and with knowledge of their falsity for the purpose of fraudulently inducing Hancock to enter into that Agreement. | | *See* Supporting Evidence for Paragraphs 72(a)-(g), *supra* | *See* Supporting Evidence for Paragraphs 72(a)-(g), *supra* | *See* Supporting Evidence for Paragraphs 72(a)-(g), *supra* |
| 90. | Had Abbott informed John Hancock of the true prospects and condition of ABT-518 as of March 13, 2001, that information would have significantly altered the economics and attractiveness of the proposed funding deal from John Hancock's perspective, and Hancock would not have entered into that Agreement in its present form, or would not have entered into any funding agreement with Abbott whatsoever. | Blewitt, ¶ 87<br><br>Hartz, ¶¶ 42-43 | Ex. 184 (e-mail messages between P. Deemer and P. Nisen) | Blewitt, 144:11-146:6<br><br>Tucker, 1548:11-25<br><br>Deemer, 1499:5-22 1509:10-1513:2 | Deemer, 103:6-104:3 105:13-106:12 |
| 91. | As a result of Abbott's misrepresentations, omissions and fraud with respect to ABT-518, John Hancock has suffered monetary and other damages. | Blewitt, ¶ 152<br><br>Friedman, ¶ 79 | Ex. 208 at 3-4 (Updated Expert Report of A. Friedman) | Hartz, 506:16-508:16 512:16-513:7 513:22-515:1<br><br>Friedman, 816:19-817:8 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | | | *ABT-594* | | |
| 92. | According to Abbott, ABT-594 is a selective neuronal nicotinic *receptor* ("NNR") agonist, a class of compounds intended to treat moderate to severe pain, including neuropathic pain. | Leonard, ¶¶ 41-42<br><br>Klotz, ¶ 22 | Ex. 182 at ABBT 246794 (Feb. 2001 ABT-594 Descriptive Memorandum) | | |
| 93. | Neuropathic pain is chronic pain resulting from injury to the nervous system. | Klotz, ¶ 22 | | | |
| 94. | Over the approximately ten months of active contract negotiations leading up to the execution of the Agreement, Abbott supplied John Hancock with three versions of its Descriptive Memorandum for ABT-594; an initial draft dated April 2000; an updated draft dated November 2000; and the final version, dated February 2001, that forms part of collective Exhibit 12.2(i) to the Agreement. | Blewitt, ¶ 92 | Ex. 63 (Apr. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 64 (Nov. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 182 (Feb. 2001 ABT-594 Descriptive Memorandum)<br><br>Ex. 32 at JH 008165-173 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 95. | With some minor variations, each version of Abbott's Descriptive Memorandum consistently described ABT-594, *inter alia*, as follows: | Blewitt, ¶ 93 | | | |
| | (a) "ABT-594 is a non-opioid, non-[steroidal anti-inflammatory drug] analgesic that is … 30 to 100-fold more potent and equally efficacious to morphine in several well-characterized animal models of pain. The preclinical side effect and dependency liability profile of ABT-594 is superior to that of morphine"; | Blewitt, ¶ 93(a) | Ex. 63 at ABBT 0107547 (Apr. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 64 at ABBT 144601.UR (Nov. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 182 at ABBT 246794 (Feb. 2001 ABT-594 Descriptive Memorandum)<br><br>Ex. 32 at JH 008171 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (b)  Abbott's "initial targeted indication [for ABT-594] is symptomatic treatment of diabetic neuropathic pain"; | Blewitt, ¶ 93(b) | Ex. 63 at ABBT 0107547 (Apr. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 64 at ABBT 144601.UR (Nov. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 182 at ABBT 246794 (Feb. 2001 ABT-594 Descriptive Memorandum)<br><br>Ex. 32 at JH 008166 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (c)  "A phase IIb study for neuropathic pain at higher, titrated doses of ABT-594 began in April 2000 and ends in June 2001.  A total of 320 patients is anticipated to be included in the study"; | Blewitt, ¶ 93(e) | Ex. 64 at ABBT 144606.UR (Nov. 2000 ABT-594 Descriptive Memorandum)  Ex. 182 at ABBT 246799 (Feb. 2001 ABT-594 Descriptive Memorandum)  Ex. 32 at JH 008171 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (d)  Abbott's New Drug Application (NDA) filing for ABT-594 was "expected in 3Q2003"; | Blewitt, ¶ 93(f) | Ex. 63 at ABBT 0107547 (Apr. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 64 at ABBT 144601.UR (Nov. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 182 at ABBT 246794 (Feb. 2001 ABT-594 Descriptive Memorandum)<br><br>Ex. 32 at JH 008166 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (e) Abbott "expected" ABT-594 "to be the first neuronal nicotinic receptor agonist to receive an indication for pain.  It has a novel mechanism of action and a potentially broad coverage of chronic pain conditions.  In addition, it has an opioid-like efficacy without tolerance, dependence or abuse potential, while having equivalent/superior efficacy to other drugs used to treat neuropathic pain"; *and* | Blewitt, ¶ 93(d) | Ex. 63 at ABBT 107549 (Apr. 2000 ABT-594 Descriptive Memorandum)  Ex. 64 at ABBT 144606.UR (Nov. 2000 ABT-594 Descriptive Memorandum)  Ex. 182 at ABBT 246799 (Feb. 2001 ABT-594 Descriptive Memorandum)  Ex. 32 at JH 008171 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (f) *ABT-594 was "generally well tolerated" in the prior Phase I and Phase II studies conducted by Abbott, with the "most common adverse events for subjects receiving ABT-594" being "dizziness, nausea, vomiting, asthenia and diarrhea, all of which [according to Abbott's initial draft Descriptive Memorandum for ABT-594] were considered mild by investigators."* | | Ex. 63 at ABBT 107549 (Apr. 2000 ABT-594 Descriptive Memorandum) <br><br> Ex. 64 at ABBT 144606.UR (Nov. 2000 ABT-594 Descriptive Memorandum) <br><br> Ex. 182 at ABBT 246799 (Feb. 2001 ABT-594 Descriptive Memorandum) <br><br> Ex. 32 at JH 008171 (RFA) | Klotz, 479:6-20 482:4-483:7 486:8-487:4 | |
| 96. | Abbott simultaneously represented to John Hancock in its first ARP that Abbott's "2001 Current Projection (Plan)" for spending on ABT-594, as of the date of the Agreement, was "35.0" million dollars, including over $11.5 million for additional Phase II and Phase III studies of the compound that Abbott purportedly planned to commence in Calendar Year 2001. | Blewitt, ¶ 94 | Ex. 32 at JH 008121-22 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 97. | Prior to the execution of the Agreement, Abbott never wavered in its representations to John Hancock that ABT-594 had "an opioid-like efficacy without tolerance, dependence or abuse potential," *that ABT-594 was "well tolerated" by subjects in prior clinical studies,* and that Abbott "expected" ABT-594 "to be the first neuronal nicotinic receptor agonist to receive an indication for pain." | Blewitt, ¶ 95 | Ex. 63 at ABBT 0107549 (Apr. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 64 at ABBT 144606.UR (Nov. 2000 ABT-594 Descriptive Memorandum)<br><br>Ex. 182 at ABBT 246799 (Feb. 2001 ABT-594 Descriptive Memorandum)<br><br>Ex. 32 at JH 008171 (RFA) | Leonard, 916:24-918:7<br><br>Blewitt, 148:8-150:3 152:14-154:3 154:16-155:13 156:23-158:14 186:13-188:4 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 98. | Abbott's express representation to John Hancock in the Agreement that Abbott "expected" ABT-594 "to be the first neuronal nicotinic receptor agonist to receive an indication for pain" as of March 13, 2001, as well as various other representations that Abbott made to Hancock in the Agreement regarding the prospects and condition of ABT-594 and Abbott's expected spending on that compound, were materially false and/or incomplete. Material facts that Abbott either misrepresented or failed to disclose to John Hancock include, *inter alia*, the following: | Blewitt, ¶ 96 | Ex. 32 at JH 008171 (RFA) | | |

JOHN HANCOCK V. ABBOTT (05-11150)
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (a)  Abbott's Phase IIb trial of ABT-594 for the treatment of diabetic neuropathic pain (known within Abbott as trial "M99-114") commenced in April 2000.  The Phase IIb trial was designed to include 320 "subjects" or patients in a "double-blinded" format in order to achieve what Abbott perceived would be a statistically significant result. Almost immediately, Abbott's Phase IIb trial encountered problems with "premature terminations" (*i.e.*, subjects dropping out of the trial early) due primarily to "adverse events" ("AEs") or side effects among trial subjects involving moderate-to-severe nausea, emesis (*i.e.*, vomiting) and dizziness; | | Ex. 16 at ABBT 0065820 (Feb. 2000 M99-114 Clinical Protocol)<br><br>Ex. 80 at ABBT 0004422 (June 2000 ABT-594 Project Status Report)<br><br>Ex. 81 (e-mail message from M. Collicott to B. McCarthy) | Rodda, 1289:8-23 1291:6-16 1297:10-1299:9 1314:10-13 | McCarthy (Sept. 2006), 89:8-90:8<br><br>Leonard (Nov. 2006), 141:18-142:12 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (b) By June 2000, Abbott's ABT-594 Product Development Team already was reviewing the available "strategic options" to address the slow enrollment of subjects in the trial.  The premature termination and enrollment problems did not improve, however.  As of July 7, 2000, of the 78 subjects who had entered Abbott's Phase IIb study of ABT-594, "at least" 31 had prematurely terminated their involvement in the study due to adverse events; | | Ex. 80 at ABBT 0004422 (Jun. 2000 Status Report)  Ex. 83 (e-mail message from B. McCarthy to J. Morris) | | McCarthy (Sept. 2006), 86:3-86:22 89:8-90:8  Collicott, 105:13-107:14 |
| | (c) By August 2000, there was "much concern with the drop out rate" in the Phase IIb trial among members of Abbott's ABT-594 Product Development Team; | | Ex. 86 at ABBT 0162186 (Aug. 2000 ABT-594 Product Development Team Meeting Minutes) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (d) Abbott continued to try various measures in the Summer and Fall of 2000 to address the premature termination and enrollment problems that it was encountering in its Phase IIb trial of ABT-594, including sending written surveys to the various clinical test sites to "examine AEs (nausea, vomiting, and dizziness)," and extending the enrollment deadline for the trial from September 22, 2000, to March 2, 2001. Abbott even investigated the possible use of one or more outside patient recruitment firms to assist in identifying and enrolling more subjects in the study. The patient recruitment firms that Abbott solicited were informed, *inter alia*, that the Phase IIb study had a "[h]igh study dropout rate of 34% primarily due to side effects of the investigational drug;" | | Ex. 86 at ABBT 0162186 (Aug. 31, 2000 ABT-594 Product Development Team Meeting Minutes)<br><br>Ex. 85 at ABBT 0042272 (8/31 ABT-594 Product Dev. Team Meeting Minutes)<br><br>Ex. 87 at ABBT 0113704 (e-mail message from M. Collicott to C. Silber)<br><br>Ex. 90 at ABBT 233742 (Phonescreen Clinical Trial Recruitment proposal)<br><br>Ex. 89 at ABBT 240988 (Sept. 2000 M99-114 Study Patient Recruitment Program by Patient Quest) | Leonard, 919:18-921:22<br><br>Gold, 350:17-352:1 | McCarthy (Sept. 2006), 86:3-86:22 101:19-102:10<br><br>McCarthy (Mar. 2007), 53:23-54:10 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (e) By the Fall of 2000, members of Abbott's senior management regarded ABT-594 as having "questionable commercial viability"; | | Ex. 88 at ABBT 0577823 (Sept. 2000 Pharmaceutical Strategy Update Presentation) | Leonard, 922:13-923:18 | |
| | (f) In mid-to-late 2000, Abbott employees with responsibility for supervising the Phase IIb trial of ABT-594 reviewed the preliminary, blinded trial data and concluded that the episodes of nausea and vomiting observed in the trial probably were dose-related. *It was a typical practice within Abbott to use blinded clinical data for the purpose of making preliminary assessments about compounds under development. The Abbott employees with responsibility for supervising the Phase IIb trial of ABT-594* considered, but ultimately rejected, revising the trial while it was underway to eliminate the highest dosage (*i.e.*, 300 microgram) cohort in an effort to reduce the observed rate of nausea and vomiting; | | Ex. 83 (e-mail message from B. McCarthy to J. Morris)<br><br>Ex. 84 at ABBT 0161645 (e-mail message from M. Biarnesen to A. Matalonis)<br><br>Ex. 788 at ABBT 119422.UR (ABT-773 Dosing Options) | C. Meyer, 629:14-18 630:4-17 631:7-11 632:4-16 | McCarthy (Mar. 2007), 41:20-42:13<br><br>McCarthy (Sept. 2006), 113:3-11 242:11-243:21 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|---|
| | (g) | In early December 2000, Abbott's management decided not to retain a patient recruitment firm for its Phase IIb study of ABT-594, concluding that doing so was not a "viable option at this time"; | | Ex. 181 at ABBT 0004455 (Nov. 2000 ABT-594 Status Report) | | McCarthy (Sept. 2006), 118:3-119:6 |
| | (h) | Rather than continue to try to bolster patient enrollment in its Phase IIb trial of ABT-594, Abbott decided in December 2000 to prematurely *discontinue* that trial as of January 5, 2001, a date that Abbott recognized was "2 months ahead of [its] most recent estimate of March 5, 2001" and would result in "less than [Abbott's] original target of 320 patients"; | | Ex. 313 at ABBT 0017554 (Dec. 2000 "Top" Issues)<br><br>Ex. 57 at 28-30 (Abbott's Responses to JH's 2nd Requests for Admissions at Nos. 43, 44, 46, 47)<br><br>Ex. 32 at JH008171 (RFA)<br><br>Ex. 105 at ABBT0066043 (Final Clinical Study Report for Abbott's Phase IIb study of ABT-594) | Blewitt, 150:9-14 151:11-152:13 156:7-22 | Leiden, 160:15-161:13<br><br>Leonard (Nov. 2006), 166:7-167:17 168:19-169:3<br><br>McCarthy (Sept. 2006), 248:20-22 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|---|
| | (i) | Enrollment in Abbott's Phase IIb study of ABT-594 actually was stopped on January 5, 2001, at 266 subjects; | | Ex. 105 at ABBT 0065985 (Final Clinical Study Report for Abbott's Phase IIb study of ABT-594)<br><br>Ex. 20 (e-mail message from M. Collicott to J. Schanzenbach) | | Collicott, 196:9-196:18 |
| | (j) | Abbott *personnel* understood, *or should have understood*, as of December 2000 that prematurely *discontinuing Abbott's* Phase IIb study of ABT-594 at less than 320 subjects would undermine the statistical validity of that study and render it effectively useless for advancing the further development of ABT-594; | Fairweather, ¶¶ 14, 37-44 | Ex. 97 at CNSTLA 0530 (Dec. 2000 Constella Group notes of communication with M. Collicott)<br><br>Ex. 94 (e-mail message from B. McCarthy to J. Morris)<br><br>Ex. 20 at ABBT 233540 (e-mail message from M. Collicott to J. Schanzenbach) | Fairweather, 586:13-588:22 589:5-25<br><br>Rodda, 1292:5-1296:6 1296:7-1297:9 1302:25-1305:10 1305:25-1309:1 1311:7-21 1314:22-1315:15 | McCarthy (Sept. 2006), 105:14-106:8 136:15-137:4<br><br>Rodda, 63:15-64:21 72:6-72:15 88:16-25 95:17-25 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (k)  Abbott made the decision in early December 2000 to prematurely *discontinue* its Phase IIb trial of ABT-594 based, in significant part, on the belief of Abbott personnel that the final results of that trial were likely to demonstrate that ABT-594 was not a viable commercial product; | Fairweather ¶¶ 14, 37-44 | Ex. 95 (e-mail message from E. Kowaluk to B. Cox)<br><br>Ex. 143 at ABBT 0162925 (Abbott's New Organizational Plan Roll-Out Presentation) | | McCarthy (Sept. 2006), 155:1-155-18 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (l)   Abbott made what it described internally as "significant changes" in its developmental strategy for ABT-594 at or around the time that Abbott decided to prematurely *discontinue* its Phase IIb trial of that compound.  Those significant changes included Abbott's decision in late 2000 to explore a potential co-development partnership for ABT-594 with other pharmaceutical companies; | | Ex. 105 at ABBT 0066043 (July 2001 M99-114 Clinical Trial Report)  Ex. 57 at 36 (Abbott's Responses to JH's 2nd Requests for Admissions at No. 57)  Ex. 234 (e-mail message from B. McCarthy to R. Weiland, *et al.*)  Ex. 93 (e-mail message from J. Sullivan to R. Weiland)  Ex. 296 (e-mail message from B. McCarthy to A. Landsberg)  Ex. 241 at ABBT 0102282 (e-mail message from C. Silber to J. Tyree) | Leonard, 952:9-10 953:24-954:24 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (m) Abbott personnel were concerned, however, about the potential impact of disclosing what was described internally at Abbott as ABT-594's "nausea and vomiting issue" to possible co-development partners; | | Ex. 93 at ABBT 0120836 (e-mail message from J. Sullivan to R. Weiland) | Leonard, 958:7-9 958:19-960:6 | |
| | (n) In the end, none of the pharmaceutical companies that Abbott approached in late 2000 or early 2001 concerning ABT-594 was willing to enter into a co-development agreement for that compound; | | Ex. 21 (e-mail message from J. Dolan to J. Leonard and C. Silber) Ex. 57 at 37 (Abbott's Responses to JH's 2nd Requests for Admissions at No. 59) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (o) At or around the same time that Abbott made significant changes in its developmental strategy for ABT-594 and began searching for a co-development partner for that compound, Abbott significantly reduced its planned spending on ABT-594 for Calendar Year 2001 *on the assumption that it would be making a "No Go" decision on ABT-594 in the second quarter of 2001.* Although Abbott continued to represent to John Hancock in drafts and in the final version of its first ARP that it expected spending "35.0" million dollars on the development of ABT-594 in 2001, Abbott's actual planned spending on ABT-594 in 2001 had dropped, as of early March 2001, to approximately $9.3 million, a reduction of more than 73 percent; | | Ex. 57 at 45-49 (Abbott's Responses to JH's 2nd Requests for Admissions at Nos. 74, 76, 77, 78)<br><br>Ex. 132 at ABBT 0037564 (Abbott 2001 Plan Final Reference Package)<br><br>Ex. 325 (PPD Plan Review)<br><br>Ex. 131 at ABBT 0503358 (Analgesia Venture 2001 Plan)<br><br>Ex. 153 at ABBT 364019 (e-mail message from T. Woidat to A. Higgins)<br><br>Ex. 284 at ABBT 140276.UR (GPRD 2001 April Update)<br><br>Ex. 32 at JH 008121 (RFA) | Leiden, 1185:22-1186:21 1186:22-1187:1 1187:12-1188:6 1188:24-1189:11 1189:20-1191:11<br><br>Leonard, 1003:12-1005:7<br><br>Gold, 338:10-339:7 | Woidat, 171:11-20 191:12-19 199:1-200:2 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (p)  Abbott's reduced spending for 2001 included enough funds to complete a "Go/No Go" decision regarding ABT-594 following the prematurely terminated Phase IIb trial, but did not include any funding for the previously planned additional Phase II or Phase III trials of that compound, which were described in Abbott's internal 2001 Plan Final Reference Package as having been "Delayed"; | | Ex. 57 at 45-46 (Abbott's Responses to JH's 2nd Requests for Admissions at No. 74)  Ex. 132 at ABBT 0037544 (Abbott 2001 Plan Final Reference Package) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (q)  Representatives of Abbott's ABT-594 Product Development Team made a presentation concerning ABT-594 to members of Abbott's senior management (including Dr. Leiden) on February 2, 2001. Information concerning the prematurely terminated Phase IIb trial was included in the presentation.  The presentation also included information about potential NNR "back-up" or "follow-on" compounds to ABT-594.  At the conclusion of the presentation, Abbott's management recommended that Abbott personnel develop a "comprehensive strategy to address tolerability issues related to NNRs for pain, including ABT-594 and follow-ons"; | Leonard, ¶ 51

Leiden, ¶ 28 | Ex. 99 (e-mail message from B. McCarthy to E. Kowaluk)

Ex. 161 at ABBT 0115991 (e-mail message from B. McCarthy to C. Silber)

Ex. 98 at ABBT 0002431-4, 57-8, 69 (Feb. 2001 Project Review for ABT-089 and ABT-594) | Gold, 342:25-344:25 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (r) *By February 2001, Abbott knew from blinded data obtained from its Phase IIb clinical trial of ABT-594 that the drop-out rate among subjects in that trial was almost 50%, with moderate-to-severe nausea, vomiting and/or dizziness reported as the principal reasons for the observed early terminations. Abbott also knew, or should have known, from the available data that many premature terminations occurred within the first few days of treatment and that the rate of premature terminations was fairly constant as some participants received higher doses, which were strong indications that the tolerance issues observed among subjects in the trial likely were drug-related, not dose-related.* | | Ex. 101 at ABBT 238330, ABBT238332-33 (e-mail from M. Collicott message to stherriault@rsi-nc.com) | Fairweather, 593:22-596:25<br><br>Gold, 369:9-371:3 | Rodda, 87:11-13 88:16-25 95:17-25 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|---|
| | (s) | By *March 2001*, Abbott scientific personnel who were charged with discovering and developing new NNR compounds had concluded that "ABT-594 … is an imperfect drug" due, in large part, to the "key adverse events of emesis, nausea, and dizziness that have consistently been observed during clinical evaluation of ABT-594"; | | Ex. 243 at ABBT 298380 (e-mail message from E. Kowaluk to M. Verlinden)<br><br>Ex. 102 at ABBT 0024132, 37 (Abbott Global Pharmaceutical Discovery Internal Review - March 2001") | Gold, 340:20-341:7<br><br>Rodda, 1295:9-16 1314:22-1315:15 1338:16-22 | |
| | (t) | Members of Abbott's senior management, including Drs. Leiden and Leonard, reviewed ABT-594 again in the course of Abbott's Initial Portfolio Prioritization Review on March 7-9, 2001.  Preliminary data from the recently discontinued Phase IIb trial of ABT-594 was discussed during the Initial Portfolio Prioritization Review, and concerns were expressed about the data; | Leonard, ¶ 53<br><br>Leiden, ¶ 29 | Ex. 103 at ABBT 0118742 (Mar. 2001 Portfolio Review Meeting Agenda)<br><br>Ex. 104 at MCK 00427 (e-mail message from McKinsey to J. Leiden)<br><br>Ex. 57 at 39-40 (Abbott's Responses to JH's 2nd Requests for Admissions at Nos. 63, 64) | | Hopfield, 81:20-82:5 99:9-102:15 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (u)  As part of, or shortly after, the Initial Portfolio Prioritization Review, members of Abbott's senior management, again including Dr. Leiden, met in *a smaller* executive session and discussed what they thought would be the likely outcome of the Phase IIb trial of ABT-594 and, ultimately, Abbott's development program for that compound.  *They* surmised that the Phase IIb trial outcome would be negative, with the result that *Abbott* likely would terminate ABT-594; and | Leonard, ¶ 23 | Ex. 104 at MCK 00427 (e-mail message from McKinsey to J. Leiden) | Fairweather, 582:17-583:5 | Hopfield, 100:8-102:15 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (v)  The collective consensus of Abbott's senior management, reached prior to March 13, 2001, that ABT-594 was a "probable T[erminate]" was memorialized in the Initial Portfolio Prioritization document prepared by McKinsey.  *A slightly revised version of the Initial Portfolio Prioritization document, also classifying ABT-594 as a "probable T[erminate]," was distributed to Abbott personnel at various integration project meetings in and after March 2001.  At no time did anyone from Abbott ever inform McKinsey employees working on that project that any of the references to ABT-594 in the Initial Portfolio Prioritization document were inaccurate.* | | Ex. 104 at MCK 00427 (e-mail message from McKinsey to J. Leiden)  Ex. 197 at MCK 00354 (March 2001 memorandum for R&D Discussion)  Ex. 198 at MCK00416 (e-mail message from J. Hopfield to J. Leiden)  Ex. 142 at ABBT 0155584 (Initial Portfolio Prioritization) | Leonard, 889:23 891:8-892:20 895:6-897:4 898:24-902:4  Leiden, 1183:11-13 1184:7-1185:17 | Hopfield, 90:17-91:20 100:8-17 50:1-22 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 99. | As Abbott's senior management predicted at the Initial Portfolio Prioritization Review in early March 2001, Abbott in fact terminated the development of ABT-594 not long after the results of the Phase IIb neuropathic pain trial were officially unblinded in April 2001.  Those results confirmed that each of the three dosages of ABT-594 tested in the study "Were Associated with a Dose Dependent Increase in Adverse Events, Especially Nausea, Vomiting and Dizziness."  The resultant "Unfavorable Side Effect Profile" was sufficient to terminate the compound. | | Ex. 57 at 50-51 (Abbott's Responses to JH's 2nd Requests for Admissions at No. 81)<br><br>Ex. 251 at ABBT 0515808 (October 2001 Decision Support Group Highlights)<br><br>Ex. 245 at ABBT 0001758 (April M99-114 Study Review)<br><br>Ex. 254 at ABBT 0024005 (DDC: A-429202 Neuronal Nicotinic Receptor (NNR) Agonist, Discovery Development Candidate)<br><br>Ex. 246 at ABBT 0184279 (May 2001 ABT-594 Phase II(b) Diabetic Neuropathic Pain Results:  M99-114 Study Review) | | McCarthy (Sept. 2006), 241:23-243:21 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 100. | Abbott notified John Hancock of its decision to terminate the development of ABT-594 on November 20, 2001, at which time Abbott told Hancock only that it had "decided to terminate further development of ABT-594 (a drug for the treatment of neuropathic pain)." | Blewitt, ¶ 103 | Ex. 33 (letter from D. Pals to S. Blewitt) | | |
| 101. | Abbott provided no additional information regarding the basis for, or the history of, its decision to terminate ABT-594 to John Hancock. | Blewitt, ¶ 103 | Ex. 33 (letter from D. Pals to S. Blewitt) | | |
| 102. | The true prospects and condition of ABT-594 as of March 13, 2001, as well as Abbott's actual expected spending on ABT-594 in Calendar Year 2001 as of that date, was information material to John Hancock's decision to enter into the Agreement. | Blewitt, ¶ 99<br><br>Hartz, ¶ 41 | | Blewitt, 122:4-22 123:23-124:8 148:19-150:3 151:11-158:14 187:12-188:4 188:5-193:22 | |
| 103. | Abbott misrepresented and/or failed to disclose material information concerning the prospects and condition of ABT-594, and its expected spending on that compound, to John Hancock in the Agreement. | Blewitt, ¶ 96 | *See* Supporting Evidence for Paragraphs 98(a)-(v), *supra* | *See* Supporting Evidence for Paragraphs 98(a)-(v), *supra* | *See* Supporting Evidence for Paragraphs 98(a)-(v), *supra* |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 104. | Abbott's misrepresentations *and* failures to disclose material information concerning the prospects and condition of ABT-594, and its expected spending on that compound, to John Hancock in the Agreement were, in whole or in significant part, undertaken wantonly, willfully and with knowledge of their falsity for the purpose of fraudulently inducing Hancock to enter into that Agreement. | | *See* Supporting Evidence for Paragraphs 98(a)-(v), *supra* | *See* Supporting Evidence for Paragraphs 98(a)-(v), *supra* | *See* Supporting Evidence for Paragraphs 98(a)-(v), *supra* |
| 105. | Had Abbott informed John Hancock of the true prospects and condition of ABT-594, as well as Abbott's actual expected spending on that compound, as of March 13, 2001, that information would have significantly altered the economics and attractiveness of the proposed funding deal from John Hancock's perspective, and Hancock would not have entered into that Agreement in its present form, or would not have entered into any funding agreement with Abbott whatsoever. | Blewitt, ¶ 100<br><br>Hartz, ¶¶ 42-43 | | Blewitt, 122:4-22 123:23-124:8 148:19-150:3 151:11-158:14 187:12-193:22 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 106. | As a result of Abbott's misrepresentations, omissions and fraud with respect to ABT-594, John Hancock has suffered monetary and other damages. | Blewitt, ¶ 152<br><br>Friedman, ¶ 79-81 | Ex. 208 at 3-4 (Updated Expert Report of A. Friedman) | Hartz, 506:16-508:16 512:16-513:7 513:22-515:1<br><br>Friedman, 816:19-817:8 | |
| | | | *ABT-773* | | |
| 107. | According to Abbott, ABT-773 is a member of a "promising new class of antibiotics known as ketolides" that was "likely to have activity against resistant strains of bacteria and will, therefore, compete effectively against currently marketed antibiotics." | Leiden, ¶ 34 | Ex. 32 at JH 008154 (RFA) | | |
| 108. | Over the approximately ten months of active contract negotiations leading up to the execution of the Agreement, Abbott supplied John Hancock with three versions of its Descriptive Memorandum for ABT-773; an initial draft dated June 5, 2000; an updated draft dated November 1, 2000; and the final version, dated February 2001, that forms part of collective Exhibit 12.2(i) to the Agreement. | Blewitt, ¶ 104 | Ex. 109 (June 2000 ABT-773 Descriptive Memorandum)<br><br>Ex. 111 (Nov. 2000 ABT-773 Descriptive Memorandum)<br><br>Ex. 164 (Feb. 2001 ABT-773 Descriptive Memorandum) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 109. | Each version of Abbott's Descriptive Memorandum consistently described ABT-773, *inter alia*, as follows: | Blewitt, ¶ 105 | | | |
| | (a) "Product features such as high efficacy, activity against resistant strains of bacteria and convenience should enable it to compete against both Zithromax and newer agents such as quinolones"; | Blewitt, ¶ 105(a) | Ex. 109 at ABBT 246467 (June 2000 ABT-773 Descriptive Memorandum)<br><br>Ex. 111 at ABBT 0006649 (Nov. 2000 ABT-773 Descriptive Memorandum)<br><br>Ex. 164 at JH 008154 (Feb. 2001 ABT-773 Descriptive Memorandum) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (b)   "Dosing is expected to be once-a-day.  A 5-day convenience pak at a competitive price will help maximize sales"; | Blewitt, ¶ 105(b)  Gold, ¶ 25 | Ex. 109 at ABBT 246467 (June 2000 ABT-773 Descriptive Memorandum)  Ex. 111 at ABBT 0006649 (Nov. 2000 ABT-773 Descriptive Memorandum)  Ex. 164 at JH 008154 (Feb. 2001 ABT-773 Descriptive Memorandum) | Blewitt, 159:18-160:8 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (c) "The likely profile of ABT-773 justifies further development: <br><br> - ABT-773 pertains to a new class of antibiotics. <br><br> - Good activity against resistant Gram+ organisms, particularly macrolide-resistant *S. pneumoniae.* <br><br> - Convenience, safety and tolerability profile competitive with [Zithromax]. <br><br> - Oral suspension and I.V. forms enabling penetration into pediatrics and hospital segments." | Blewitt, ¶ 105(c) | Ex. 109 at ABBT 246469 (June 2000 ABT-773 Descriptive Memorandum) <br><br> Ex. 111 at ABBT 0006651 (Nov. 2000 ABT-773 Descriptive Memorandum) <br><br> Ex. 164 at JH 008156 (Feb. 2001 ABT-773 Descriptive Memorandum) | Blewitt, 158:15-159:17 | |
| 110. | Zithromax is a competing macrolide-based antibiotic that already was commercially available at the time the Agreement was executed in March 2001. Abbott believed as of early 2001 that Zithromax's tolerability had "redefined expectations for tolerability of new agents" and had "moved the market toward short course therapies dosed once daily." | Blewitt, ¶ 106 <br><br> Klotz, ¶ 25 | Ex. 32 at JH 008154 (RFA) <br><br> Ex. 117 at ABBT 0576832 (ABT-773 Feb. 2001 Update) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 111. | Quinolones are yet another type of antibiotic with which ABT-773 potentially would compete. | Blewitt, ¶ 107<br><br>Klotz, ¶ 26 | Ex. 32 at JH 008154 (RFA) | | |
| 112. | Prior to the execution of the Agreement, Abbott never wavered in its representations to John Hancock that ABT-773 was "expected" to have "once-a-day" or "QD" dosing and a "[c]onvenience, safety and tolerability profile competitive" with Zithromax, and that Abbott was developing "[o]ral suspension and I.V. forms" of ABT-773 that would "enable[e] penetration into pediatrics and hospital segments." | Blewitt, ¶ 108 | Ex. 32 at JH 008154, 56 (RFA) | Blewitt, 97:15-98:9<br><br>Klotz, 488:5-489:8 | |
| 113. | Abbott recognized, prior to March 2001, that "once-a-day" or "QD" dosing of ABT-773 would be "necessary for [the] commercial success" of that compound because other competing drugs *already* on the market *offered* once-a-day dosing for the same indications that ABT-773 was *expected* to address. | | Ex. 107 at ABBT 0004844 (May 1999 ABT-773 Project Status Report)<br><br>Ex. 108 at ABBT 0570750, ABBT 0570762 (ABT-773 2000 Strategic Marketing Plan)<br><br>Ex. 117 at ABBT 0576854 (ABT-773 Feb. 2001 Update) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 114. | Abbott further recognized, prior to March 2001, that United States Food and Drug Administration (FDA) rules typically require a drug sponsor to conduct studies in pediatrics as part of the overall approval process for new pharmaceutical compounds, and that "meeting this rule is a regulatory obligation and a cost of doing business." | Gold, ¶¶ 86-87 | Ex. 120 (e-mail message from J. Fox to J. Steck) | | |
| 115. | Abbott's express representations to John Hancock in the Agreement that Abbott "expected" ABT-773 to have "once-a-day" dosing and a "[c]onvenience, safety and tolerability profile competitive" with Zithromax, as well as various other representations that Abbott made to Hancock in the Agreement regarding the prospects and condition of ABT-773, were materially false and/or incomplete. Material facts that Abbott either misrepresented or failed to disclose to John Hancock include, *inter alia*, the following: | Blewitt, ¶ 109 | Ex. 32 at JH 008154, 56 (RFA)<br><br>Ex. 164 at JH 008154 (Feb. 2001 ABT-773 Descriptive Memorandum) | | |
| | (a)  Although not referenced anywhere in the Agreement, Abbott had significant, unresolved issues concerning the safety of ABT-773 as of March 2001, particularly with respect to the potential for | | Ex. 118 at ABBT 205042-44 (Feb. 2001 ABT-773 Update)<br><br>Ex. 117 at ABBT 0576842-47 (Feb. 2001 ABT-773 | C. Meyer, 611:20-612:17<br><br>Bukofzer, 1079:12-1080:21 1082:20-1083:15 1087:22-1088:22 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | abnormal heartbeat prolongation (also known as "QT" or "QTc" prolongation) and chemical-driven liver damage (also known as "hepatoxicity," "hepatotoxicity," "liver toxicity" or simply "liver tox") among clinical trial subjects who took the compound.<br><br>*For example, by Spring 2001, Dr. Stanley Bukofzer, who led Abbott's development of ABT-773, made a presentation regarding liver function data acknowledging that: (1) all pre-clinical trials (completed before the RFA was signed) demonstrated elevated liver functions in animals; (2) clinical trials then underway in human subjects showed "several patients with elevated" liver functions, and a 4-9% occurrence of elevated liver functions – greater than the FDA would accept; and (3) that ABT-773's liver function data was worse than "Clari," one of Abbott's competitors. Based on this data, Abbott estimated the probability that "liver function data will result in the termination of the program" at* | | Update)<br><br>Ex. 211 at ABBT 116121.UR (ABT-773 2Q/2001 Transparencies)<br><br>Ex. 104 at MCK00424 (e-mail message from McKinsey to J. Leiden)<br><br>Ex. 121 (e-mail message from M. Verlinden to E. Sun) | 1090:19-1091:5 1091:6-1092:13 1093:8-1102:3<br><br>Leonard, 963:9-966:5 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | *30%. Abbott had previously estimated that probability at 40%.*<br><br>Moreover, "despite significant issues with the quality of the QT data collection to date," senior Abbott personnel working on the development of ABT-773 internally recognized by early 2001 that a "QT signal has emerged from both the pre-clinical and clinical programs" sufficient "to establish that there probably is an issue…."; | | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (b) Abbott personnel had discussions concerning ABT-773 with representatives of the FDA in late 2000 in which the FDA described "hepatotoxicity and QT changes" as the "two primary toxicities they are worried about with macrolides and ketolides," and asked Abbott to undertake additional dog toxicology testing of ABT-773 focused specifically on those issues.  By February 2001, Abbott internally was describing "QTc Issues" and "Liver Toxicity Issues" as "Key Issues Facing the ABT-773 development program."  Both of these "Key Issues" remained unresolved when Abbott and John Hancock entered into the Agreement just one month later; | | Ex. 112 at ABBT 0017833 (Nov. 2000 "Top" Issues)<br><br>Ex. 118 at ABBT 205042-44 (Feb. 2001 ABT-773 Update)<br><br>Ex. 212 (e-mail message from J. Fox to R. Mittag)<br><br>Ex. 114 at ABBT 0558682-83 (e-mail message from J. Fox to J. Leonard)<br><br>Ex. 115 (Nov. 2000 FDA Contact Report) | Fox, 1114:12-1116:21 1117:8-1120:2 1120:9-13 1120:21-1121:23 1122:7-15<br><br>C. Meyer, 611:20-612:17 | C. Meyer, 54:19-55:3 69:16-70:4 90:14-91:5<br><br>Fox, 45:17-46:4 49:10-49:18 61:19-62:22<br><br>Leonard (June 2007), 390:15-390:20 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (c)  Abbott recognized well before the Agreement with John Hancock was signed in March 2001 that a "once-a-day formulation [of ABT-773] may not be possible based on the short half-life of the drug and the apparent short absorption window in the GI tract."  In June 2000, Abbott internal documents described "[u]ncertainty in ABT-773 convenience profile *i.e.* potential for [twice-a-day] dosing" as one of the "Key Commercial Issues" facing ABT-773; | | Ex. 107 at ABBT 0004844 (May 1999 ABT-773 Project Status Report)

Ex. 108 at ABBT 0570762 (June 2000 ABT-773 Ketolide Antibiotic Strategic Marketing Plan) | Bukofzer, 1061:17-1062:2 1070:6-19 1071:16-1073:25 1074:20-25 1075:11-22

C. Meyer, 602:4-21 604:8-22 605:21-606:16 | C. Meyer, 30:8-30:16 31:9-32:2 38:5-8 38:15-21 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (d) Although Abbott represented to John Hancock in the Agreement that the dosing of ABT-773 was "expected to be once-a-day," Abbott had concluded *at least* one month earlier that 300 mg, once-a-day dosing of ABT-773 "was not viable" for any indication "due to high levels of diarrhea (10-20%) and taste perversion (10-20%)," and still needed data from an ongoing Phase III trial before it could determine whether 150 mg, once-a-day dosing might be viable for two of the four target indications; CAP (community acquired pneumonia) and sinusitis (chronic sinus infection). Abbott simultaneously recognized that the "[a]bsence of consistent QD dosing for all indications" presented "a significant commercial hurdle" for ABT-773 in the United States; | | Ex. 117 at ABBT 0576853-54 (Feb. 2001 ABT-773 Update) <br><br> Ex. 118 at ABBT 205044 (Feb. 2001 ABT-773 Update) <br><br> Ex. 32 at JH 008154 (RFA) | Bukofzer, 1059:20-1060:3 1060:11-1061:9 1062:3-1063:10 1063:19-1064:17 1065:7-1067:1 1067:14-1068:20 1074:20-25 1075:11-22 1075:23-1078:2 | Bukofzer, 56:2-56:22 57:2-57:17 72:10-72:23 171:10-173:14 298:16-299:10 300:14-300:19 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (e) Abbott knew, prior to March 2001, that the development of a pediatric oral-suspension formulation of ABT-773 would be "very difficult" because taste tests showed the compound to be "5 to 7 times more bitter than clarithromycin," another antibiotic that Abbott already marketed under the trade name Biaxin®. Abbott further knew that its inability to develop a pediatric formulation of ABT-773 could pose a significant regulatory hurdle for that compound in the United States because of FDA rules; and | | Ex. 118 at ABBT 205045-46 (Feb. 2001 ABT-773 Update)<br><br>Ex. 120 (e-mail message from J. Fox to J. Steck)<br><br>Ex. 119 at ABBT 205079-82 (Feb. 2001 ABT-773 Update) | C. Meyer, 601:1-21<br><br>Fox, 1123:2-9 1123:18-1124:17 1124:18-1125:25 1126:13-1127:18<br><br>Bukofzer, 1084:6-22 1086:6-15 1087:1-4 1087:17-21 | C. Meyer, 98:13-99:8<br><br>115:14-17 117:18-118:16<br><br>Fox, 129:6-9 133:22-134:20 136:11-137:17 138:1-138:6 |
| | (f) Notwithstanding, *or perhaps because of the difficulties associated with developing a pediatric formulation of ABT-773*, Abbott's entire pediatric oral suspension program for ABT-773 was "on hold" and unfunded as of early 2001. | | Ex. 120 (e-mail message from J. Fox to J. Steck)<br><br>Ex. 118 at ABBT 205045-46 (Feb. 2001 ABT-773 Update) | Bukofzer, 1085:16-24 | C. Meyer, 117:18-118:16 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 116. | The material information concerning the prospects and condition of ABT-773 that Abbott misrepresented or failed to disclose to John Hancock in the Agreement played an important role in the decision of Abbott's Pharmaceutical Executive Committee ("PEC") (including, once again, Dr. Leiden and Dr. Leonard) to recommend, less than nine months after the Agreement was executed, that Abbott's entire ABT-773 development project "be put on hold," and that Abbott make efforts to "aggressively pursue out-licensing or selling the compound." | | Ex. 28 at ABBT 209487 (Summary of PEC Meeting memorandum from J. Leiden to M. Beatrice)<br><br>Ex. 167 (memorandum from J. Leiden and J. Leonard to M. White) | Leiden, 1208:8-1209:19 | C. Meyer, 184:4-184:16<br><br>Leonard (June 2007), 347:15-348:5 |
| 117. | In subsequently explaining the rationale behind the PEC's recommendations to Miles D. White, Abbott's Chief Executive Officer, in an internal memorandum sent in early January 2002, Dr. Leiden and Dr. Leonard specifically cited, among other things, that: | | Ex. 167 (memorandum from J. Leiden and J. Leonard to M. White) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (a) "Once daily dosing has not been achieved in 3 of 4 respiratory indications," which resulted in a "corresponding decrease in the commercial value; particularly given the global trend toward once-a-day/shorter course therapy"; | | Ex. 167 at ABBT 0559668 (memorandum from J. Leiden and J. Leonard to M. White) | | |
| | (b) ABT-773 had "[u]nresolved potential safety issues," including "QT prolongation … [that] has not been fully characterized and remains a potential liability," as well as "[s]ignificant liver enzyme elevations [that] have been observed in a few subjects in clinical trials to date, most recently in a study to evaluate QT prolongation"; and | | Ex. 167 at ABBT 0559669-70 (memorandum from J. Leiden and J. Leonard to M. White) | Leiden, 1208:8-1209:9 | |
| | (c) ABT-773's "emerging side effect profile," which Dr. Leiden and Dr. Leonard described as "neither significantly better nor worse than clarithromycin in terms of taste and the potential for drug-to-drug interactions." | | Ex. 167 at ABBT 0559669 (memorandum from J. Leiden and J. Leonard to M. White) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 118. | Abbott senior management adopted the PEC's recommendation and decided, in or about early 2002, to suspend further development of ABT-773.  Taisho, a Japanese pharmaceutical company with whom Abbott shared certain ABT-773 development costs, was informed in January 2002 that Abbott had "deci[ded] to stop the global development of ABT-773 except for the Japan market place," and that a "strategy for the partnering of ABT-773 is being developed and will be reviewed with management at the end of February." | | Ex. 176 at ABBT 247162 (January 2002 Highlights memorandum from J. Tyree to J. Leiden) | | |
| 119. | In February 2002, Abbott developed *an official* "Communications Plan" to convey the news of its decision concerning ABT-773 *to various internal and external groups, including Abbott employees, the medical community, and regulatory agencies.  Abbott's Communications Plan falsely stated, in part, that Abbott had encountered "no specific unexpected safety issues" in the development of ABT-773.* | | Ex. 175 at ABBT 229759 (Final ABT-773 Communications Plan) | C. Meyer, 618:5-8 622:9-624:5 | |
| 120. | Word of Abbott's decision to "delay" the further development of ABT-773 first was conveyed to Abbott employees working on the project on or about February 12, 2002. | | Ex. 175 at ABBT 229753-54 (Final ABT-773 Communications Plan) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 121. | Two months later, in April 2002, Dr. Leonard asked Dr. Leiden by e-mail how Dr. Leiden wished to "handle the 773 communication" to John Hancock. Dr. Leiden responded, <br><br> I think we should tell them that we are <br><br> 1.  reviewing the Ketek [*i.e.*, another ketolide] situation re size of safety database <br><br> 2.  Carrying out additional ph I studies of QT and hepatoxicity at [the] request of FDA to assess the class effects of Ketolides <br><br> 3.  Analyzing existing ph II and ph III results for impact on label and market opportunity <br><br> That we expect this analysis to be complete by June July and at that point we will be in a position to make a decision on if and how to proceed with additional phIII development <br><br> We will keep them in the loop as our analysis proceeds. |  | Ex. 292 at ABBT 225709 (e-mail message from J. Leonard to T. Lyons) |  | Leonard, 378:1-387:10 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 122. | No mention was made by Dr. Leiden in his proposed response to John Hancock of Abbott's failure to achieve once daily dosing in 3 of 4 respiratory indications, of ABT-773's still "unresolved safety issues," or of the PEC's resulting recommendation, made four months earlier, to suspend further development of ABT-773. | | Ex. 292 (e-mail message from J. Leonard to T. Lyons) | | Leonard, 378:1-387:10 |
| 123. | Dr. Leonard forwarded Dr. Leiden's proposed response to John Hancock to Thomas Lyons, Controller of Abbott's Global Pharmaceutical Research and Development Division, with the comment "The Hancock response that Jeff wants." | | Ex. 292 at ABBT 225709 (e-mail message from J. Leonard to T. Lyons) | | Leonard, 378:1-387:10 |
| 124. | Abbott never officially notified John Hancock in writing of its decision to terminate Abbott's further development of ABT-773.  John Hancock first learned of that decision during a conference call with Abbott later in 2002. | Blewitt, ¶ 118 | | | |
| 125. | The true prospects and condition of ABT-773 as of March 13, 2001 was information material to John Hancock's decision to enter into the Agreement. | Blewitt, ¶ 112<br><br>Hartz, ¶ 41 | | Blewitt, 105:24-109:25 160:9-163:5 197:6-203:20 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 126. | Abbott misrepresented and/or failed to disclose material information concerning the prospects and condition of ABT-773 to John Hancock in the Agreement. | Blewitt, ¶¶ 109, 111 | *See* Supporting Evidence for Paragraphs 115-124, *supra* | *See* Supporting Evidence for Paragraphs 115-124, *supra* | *See* Supporting Evidence for Paragraphs 115-124, *supra* |
| 127. | By misrepresenting and/or failing to disclose material information concerning the prospects and condition of ABT-773 to John Hancock in the Agreement, Abbott breached that Agreement. | | Ex. 32 at JH 008107-8 (RFA) | | |
| 128. | Abbott's misrepresentations or failures to disclose material information concerning the prospects and condition of ABT-773 to John Hancock in the Agreement were, in whole or in significant part, undertaken wantonly, willfully and with knowledge of their falsity for the purpose of fraudulently inducing Hancock to enter into that Agreement. | | *See* Supporting Evidence for Paragraphs 115-124, *supra* | *See* Supporting Evidence for Paragraphs 115-124, *supra* | *See* Supporting Evidence for Paragraphs 115-124, *supra* |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 129. | Had Abbott informed John Hancock of the true prospects and condition of ABT-773 as of March 13, 2001, that information would have significantly altered the economics and attractiveness of the proposed funding deal from John Hancock's perspective, and Hancock would not have entered into that Agreement in its present form, or would not have entered into any funding agreement with Abbott whatsoever. | Blewitt, ¶ 113<br><br>Hartz, ¶¶ 42-43 | | Blewitt, 105:24-109:25 160:9-163:5 197:6-203:20 | |
| 130. | As a result of Abbott's misrepresentations, omissions, breach of contract and fraud with respect to ABT-773, John Hancock has suffered monetary and other damages. | Blewitt, ¶ 152<br><br>Friedman, ¶ 79 | Ex. 208 at 3-4 (Updated Expert Report of A. Friedman) | Hartz, 506:16-508:16 512:16-513:7 513:22-515:1 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | *Abbott's Misrepresentations and Fraud Concerning Its Intended and Reasonably Expected Spending* | | | | |
| 131. | Section 2.2 of the Agreement requires Abbott, *inter alia*, to provide John Hancock, at least forty-five days (45) prior to the start of each Program Year, with a written ARP that spells out Abbott's *"intended and reasonably expected"* Research Program expenditures for that year and for each year remaining in the Program Term. *The word "expected" is a decision analysis term that is synonymous with "risk adjusted."* | Blewitt, ¶ 119 | Ex. 32 at JH 008089-90 (RFA) | Hendricks, 1387:17-1388:15 | Hendricks, 109:22-111:24 |
| 132. | If Abbott's ARP for any given year did not "reasonably demonstrate [Abbott's] ... intent and reasonable expectation to expend on Program Related Costs during the Program Term an amount in excess of the Aggregate Spending Target" as set forth in the Agreement, then John Hancock's "obligation to make any remaining Program Payments for any succeeding Program Years" automatically would terminate pursuant to Section 3.4(iv) of the Agreement. | Blewitt, ¶ 120 | Ex. 32 at JH 008092 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 133. | *Although Abbott was aware, as of 2001, that it was required to provide John Hancock with its* "intended and reasonably expected" *spending on* Program Related Costs *in the ARPs that it sent to Hancock, Abbott nonetheless* misrepresented its expected expenditures *in the various* ARPs that it *actually sent* to Hancock, including its ARP for 2002.  The Research Program cost projections that Abbott has provided to John Hancock in its various ARPs reflect Abbott's "nominal" *or "non-risk adjusted"* spending, as opposed to its "expected" spending. | Blewitt, ¶ 123 | Ex. 32 at JH 008116-36 (RFA)  Ex. 133 at JH 000788 (ARP 2002)  Ex. 34 at JH 001072 (ARP 2003)  Ex. 135 at JH 001284 (ARP 2004)  Ex. 43 at ABBT 0024248 (ARP 2005)  Ex. 377 at ABBT 008946 (e-mail message from R. Funk to T. Lyons) | Blewitt, 218:20-219:25  Hendricks, 1367:23-1368:16 1397:20-1400:16 | Hendricks, 109:9-111:5 115:1-117:24 129:14-131:14 |
| 134. | At all relevant times, Abbott's actual intended and reasonably expected spending on Program Related Costs was considerably less than the amounts communicated to John Hancock in Abbott's various ARPs, including its ARP for 2002. | Blewitt, ¶ 123 | Ex. 310 at MCK00067 (Portfolio Analysis of 2001 Abbott Global Pharma Dev. Assets)  Ex. 32 at JH 008116-36 (RFA) | Hendricks, 1387:17-1397:18 | Hendricks, 110:12-111:24 115:1-117:24 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 135. | *It is not possible to determine from examining Abbott's 2002 ARP whether Abbott's* intended and reasonably expected spending on Program Related Costs over the four-year Program Term, as of the end of 2001, *exceeded* $614 million. | | Ex. 34 at JH 001072 (ARP 2003)<br><br>Ex. 133 at JH 000788 (ARP 2002)<br><br>Ex. 135 at JH 001284 (ARP 2004)<br><br>Ex. 43 at ABBT 0024248 (ARP 2005) | Hendricks, 1397:20-1400:16 | |
| 136. | John Hancock actually and justifiably relied upon the representations concerning Abbott's intended and reasonably expected spending on Program Related Costs contained in Abbott's various ARPs, including its ARP for 2002, in making its Second Program Payment of $54,000,000 to Abbott in January 2003. | Blewitt, ¶ 122 | Ex. 133 at JH 000788 (ARP 2002)<br><br>Ex. 65 (Letter from T. Lyons to S. Blewitt) | | |
| 137. | By misrepresenting its intended and reasonably expected spending plans to John Hancock in its various ARPs, including its ARP for 2002, Abbott breached the Agreement. | | Ex. 32 at JH 008082, 92 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 138. | Abbott misrepresented its intended and reasonably expected spending plans to John Hancock in its various ARPs, including its ARP for 2002, wantonly, willfully and with knowledge of their falsity for the purpose of fraudulently inducing Hancock to make Program Payments to Abbott that otherwise would not have been due under the terms of that Agreement. | | *See* Supporting Evidence for Paragraphs 131-135, *supra* | *See* Supporting Evidence for Paragraphs 131-135, *supra* | *See* Supporting Evidence for Paragraphs 131-135, *supra* |
| 139. | Had Abbott informed John Hancock of its actual intended and reasonably expected spending plans in its various ARPs, including its ARP for 2002, Hancock likely would not have been required to make its Second Program Payment in the amount of $54,000,000 in January 2003. | Blewitt, ¶¶ 123, 124 | Ex. 32 at JH 008092 (RFA) | | |
| 140. | As a result of Abbott's misrepresentations, breach of contract and fraud with respect to its intended and reasonably expected spending plans, John Hancock has suffered monetary and other damages. | Blewitt, ¶ 152 | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | *Abbott's Failure to Spend the Aggregate Carryover Amount* | | | | |
| 141. | In the Agreement, Abbott agreed to spend a minimum of $614 million (defined in the Agreement as the "Aggregate Spending Target") on qualified research and development expenses (defined in the Agreement as "Program Related Costs") over the four-year Program Term. | | Ex. 32 at JH 008091 (RFA) | Blewitt, 225:22-226:15 | |
| 142. | Under the terms of the Agreement, the four-year Program Term commenced on March 13, 2001, and ended at midnight on December 31, 2004. | Blewitt, ¶ 126 | Ex. 32 at JH 008088 (RFA) | | |
| 143. | Section 3.3(b) of the Agreement further provides that,<br><br>[i]f Abbott does not expend on Program Related Costs the full amount of the Aggregate Spending Target during the Program Term, Abbott will expend the difference between its expenditures for Program Related Costs during the Program Term and the Aggregate Spending Target (the 'Aggregate Carryover Amount') on Program Related Costs during the subsequent year commencing immediately after the end of the Program Term.  If | Blewitt, ¶ 127 | Ex. 32 at JH 008091-92 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | Abbott does not spend the Aggregate Carryover Amount on Program Related Costs during such subsequent year, Abbott will pay to John Hancock one-third of the Aggregate Carryover Amount that remains unspent by Abbott, within thirty (30) days after the end of such subsequent year." | | | | |
| 144. | The "subsequent year commencing immediately after the end of the Program Term" was the calendar year ending at midnight on December 31, 2005. | Blewitt, ¶ 128 | Ex. 32 at JH 008088 (RFA) | | |
| 145. | Abbott did not spend the Aggregate Spending Target on Program Related Costs over the four-year Program Term. | Blewitt, ¶ 131 | Ex. 55 at 4 (Abbott's Response to JH's 2nd Set of Ints. at No. 15) Ex. 139 (2006 ARP) Ex. 140 (2007 ARP) | | |
| 146. | Abbott's actual spending on Program Related Costs over the four-year Program Term *is unknown. The actual spending numbers contained in the various ARP's that Abbott has provided to John Hancock over the course of the Research Program are inaccurate because they include spending pre-* | Friedman, ¶ 65, Table 18 | Ex. 55 at 4 (Abbott's Response to JH's 2nd Set of Ints. at No. 15) Ex. 329 at 4 (Abbott's Amended Responses and Objections to JH's 2nd Set of Ints. at No. | Stiles, 1432:17-1433:4 1434:12-1438:15 1441:18-1443:17 1454:13-1456:21 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | *dating the commencement of the Program Term on March 13, 2001. The revised spending numbers that Abbott provided in its Amended Responses and Objections to John Hancock's Second Set of Interrogatories, served on August 3, 2007, also are inaccurate because they too include charges that pre-date the commencement of the Program Term. The most accurate estimate of Abbott's actual spending on Program Related Costs over the four-year Program Term is $442.0 million, which reflects Abbott's historically-reported spending on Program Related Costs (including all milestones and management fees paid by Abbott to John Hancock, which qualify as Program Related Costs under Section 1.43 of the Agreement), adjusted to exclude spending pre-dating the commencement of the Program Term on March 13, 2001.* | | 15)<br><br>Ex. 208 at 14, Exhibits 6.1 and 6.2 (Updated Expert Report of A. Friedman)<br><br>Ex. 786 at ABBT 0578012 (Abbott Project Expense Report) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 147. | Accordingly, the Aggregate Carryover Amount was approximately $172.0 million. | Friedman, ¶ 65, Table 18 | Ex. 55 at 4 (Abbott's Response to JH's 2nd Set of Ints. at No. 15)<br><br>Ex. 329 at 4 (Abbott's Amended Responses and Objections to JH's 2nd Set of Ints. at No. 15)<br><br>Ex. 208 at 14, Exhibits 6.1 and 6.2 (Updated Expert Report of A. Friedman) | Stiles, 1457:11-1460:6 | |
| 148. | Abbott did not expend the Aggregate Carryover Amount in 2005. | Blewitt, ¶ 131 | Ex. 55 at 4 (Abbott's Response to JH's 2nd Set of Ints.)<br><br>Ex. 329 at 4 (Abbott's Amended Responses and Objections to Hancock's Second Set of Ints.) | | |
| 149. | Abbott's *reported* actual spending on Program Related Costs in 2005 was approximately $72.9 million. | Friedman, ¶ 65, Table 18 | Ex. 55 at 4 (Abbott's Response to JH's 2nd Set of Ints.) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 150. | Accordingly, the Aggregate Carryover Amount that remained unspent by Abbott at the end of 2005 was approximately $99.1 million. | Friedman, ¶ 64, Table 18 | Ex. 55 at 4 (Abbott's Response to JH's 2nd Set of Ints.)<br><br>Ex. 208 at 14, Exhibits 6.1 and 6.2 (Updated Expert Report of Friedman) | | |
| 151. | One-third of the unspent portion of the Aggregate Carryover Amount is approximately $33.0 million. | Friedman, ¶ 64, Table 18 | Ex. 55 at 4 (Abbott's Response to JH's 2nd Set of Ints.)<br><br>Ex. 208 at 14, Exhibits 6.1 and 6.2 (Updated Expert Report of A. Friedman) | | |
| 152. | Abbott did not pay John Hancock one-third of the unspent portion of the Aggregate Carryover Amount within thirty (30) days of the end of 2005 (*i.e.*, January 30, 2006), or at any other time, pursuant to the terms of the Agreement. | Blewitt, ¶ 132 | | | |
| 153. | By failing to pay John Hancock one-third of the unspent portion of the Aggregate Carryover Amount within thirty (30) days of the end of 2005, Abbott breached the Agreement. | | Ex. 32 at JH 008092 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 154. | As a result of Abbott's breach of its obligation to pay John Hancock one-third of the unspent portion of the Aggregate Carryover Amount, Hancock has suffered monetary and other damages. | Blewitt, ¶ 152 Friedman, ¶ 65, Table 18 | Ex. 208 at 14, Exhibits 6.1 and 6.2 (Updated Expert Report of A. Friedman) | | |
| | *Abbott's Intentional Obstruction of John Hancock's Attempted Audit of Abbott's Compliance with the Agreement* | | | | |
| 155. | Section 2.5 of the Agreement provides, in part, that,<br><br>Abbott shall, and shall cause each Subcontractor to, maintain complete and accurate records … for purposes of demonstrating compliance with the terms hereof, that fully and properly reflect all work done, results achieved and Program Related Costs expended in performance of the Research Program.  The books and records of Abbott and each Subcontractor related to the Research Program … shall be subject to copying, inspection and audit by (and at the expense of) John Hancock at any time and from time to time.  Such audit shall occur on reasonable notice and during normal business hours by an independent auditor | | Ex. 32 at JH 008090-91 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | selected by John Hancock and reasonably acceptable to Abbott…. In the event that such audit reveals any material breach of Abbott's responsibilities hereunder, Abbott shall (i) pay the reasonable fees and expenses charged by such auditor, and (ii) fully and promptly cure such breach. | | | | |
| 156. | On April 12, 2004, John Hancock notified Abbott in writing that Hancock was exercising its right under Section 2.5 of the Agreement to audit Abbott's compliance with the Agreement. John Hancock simultaneously designated representatives of The StoneTurn Group ("StoneTurn"), a consulting firm founded by various former employees of the international accounting firm of Deloitte & Touche, as its independent auditor. | Blewitt, ¶ 137 | Ex. 136 at JHII 011883-84 (letter from S. Blewitt to J. Tyree) | Blewitt, 226:16-227:14 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 157. | John Hancock's April 12, 2004 notification letter included, as "Schedule A," a non-exclusive list of various specific documents and information that StoneTurn personnel wished to inspect and copy, including, *inter alia*, materials concerning Abbott's development of the Program Compounds, its termination of various Program Compounds, its expenditures on Program Related Costs, and the status of each Program Compound as of March 13, 2001. | Blewitt, ¶ 137 | Ex. 136 at JHII 0011884-86 (letter from S. Blewitt to J. Tyree) | Blewitt, 227:12-229:2 | |
| 158. | John Hancock's April 12, 2004 notification further asked that Abbott make the requested documents and information materials available to StoneTurn personnel for inspection and copying on or before May 12, 2004 (*i.e.*, approximately thirty (30) days later). | Blewitt, ¶ 137 | Ex. 136 at JHII 011884 (letter from S. Blewitt to J. Tyree with Schedule A) | | |
| 159. | Abbott responded to John Hancock's demand for an audit of Abbott's books and records pursuant to Section 2.5 of the Agreement by engaging in a protracted, unjustified and unreasonable campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to examine and assess Abbott's compliance with terms of the Agreement. | Martinez, ¶¶ 29-33, 36-39, 43, 50-57<br><br>Hair, ¶¶ 16-20, 22-29<br><br>Blewitt, ¶ 138 | Ex. 188 at ABBT 0000176-81A (e-mail message from B. Davis to S. D'Amore)<br><br>Ex. 48 (e-mail message from M. Hair to M. Campbell)<br><br>Ex. 49 (e-mail message from M. Campbell to | Martinez, 698:1-9 698:13-700:6 700:12-25 701:7-22 703:5-25<br><br>Hair, 721:5-722:1 722:4-724:25 725:24-729:18 | Campbell, 57:4-58:7 87:24-90:8 92:5-93:5 95:15-96:9 107:14-23 159:9-14 175:11-176:2 207:13-23 208:12-19 287:14-289:9 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | | | M. Hair)<br><br>Ex. 177 (StoneTurn Index of Documents Not Received)<br><br>Ex. 189 at ABBT 0000270 (e-mail message from M. Hair to M. Campbell)<br><br>Ex. 80 (Abbott status report for ABT-594)<br><br>Ex. 178 (meeting minutes re: ABT-594)<br><br>Ex. 83 (e-mail message from B. McCarthy to J. Morris)<br><br>Ex. 201 (Abbott status report for ABT-594)<br><br>Ex. 144 (e-mail message from A. Nabulsi to J. Looman) | Campbell, 1234:16-1237:17 1237:20-1240:4 1240:15-1243:10 1245:4-1248:11 1248:15-1252:11 | 290:1-16 297:12-23 298:13-22 312:1-8 |
| 160. | Specific tactics employed by Abbott to hinder, delay and obstruct the legitimate efforts of John Hancock and StoneTurn include, *inter alia*: | | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (a) refusing to approve John Hancock's chosen auditor, StoneTurn, for over two months, then arbitrarily withdrawing its objection; | Martinez, ¶¶ 15-16 | | | |
| | (b) delaying production of many of the relevant books and records requested by John Hancock and StoneTurn for almost one year; | Martinez, ¶¶ 33, 35-37, 45, 48<br><br>Hair, ¶ 19 | Ex. 187 at ABBT 0126771 (e-mail message from C. Martinez to M. Campbell)<br><br>Ex. 191 at JHII 021601, 04, 05 (StoneTurn Communications Log) | | |
| | (c) completely refusing to collect and make available for inspection and copying numerous relevant books and records requested by John Hancock and StoneTurn, including, but not limited to, documents concerning Abbott's actual expenditures on Program Related Costs, internal Abbott e-mails, *reports and other documents* discussing or pertaining to the *status of the* Program Compounds *as of March 13, 2001*, and files relating to the *status of the* | Martinez, ¶¶ 21, 26, 34, 41, 44, 53, 56<br><br>Hair, ¶¶ 16, 18 | Ex. 188 at ABBT 0000176-81A (e-mail message from B. Davis to S. D'Amore)<br><br>Ex. 48 (e-mail message from M. Hair to M. Campbell)<br><br>Ex. 49 (e-mail message from M. Campbell to M. Hair)<br><br>Ex. 177 (StoneTurn Index of Documents Not Received) | Martinez, 698:1-9 698:13-700:6 700:12-25<br><br>Hair, 721:5-722:1 722:4-723:21 727:3-729:19<br><br>Campbell, 1248:15-1252:11 | Campbell, 57:17-58:7 87:24-90:8 92:5-93:5 95:15-96:9 107:14-23 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | Program Compounds *as of March 13, 2001,* that were maintained by individual Abbott employees; | | Ex. 189 at ABBT 0000270 (e-mail message from M. Hair to M. Campbell) | | |
| | | | Ex. 80 (Abbott status report for ABT-594) | | |
| | | | Ex. 178 (meeting minutes re: ABT-594) | | |
| | | | Ex. 83 (e-mail message from B. McCarthy to J. Morris) | | |
| | | | Ex. 201 (Abbott status report for ABT-594) | | |
| | | | Ex. 144 (e-mail message from A. Nabulsi to J. Looman) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (d)  broadly redacting various books and records produced during the course of the audit so as to eliminate relevant information and effectively render certain documents completely unintelligible, notwithstanding the existence of a written confidentiality agreement between the parties; | Martinez, ¶ 43 <br><br> Hair, ¶ 17 | Ex. 188 at ABBT 0000178-81A (redacted document) | | Campbell, 271:5-16 271:23-272:2 273:9-16 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (e)  withholding as "privileged" various financial and other business documents that did not actually qualify for protection from disclosure to John Hancock and StoneTurn; | Martinez, ¶¶ 48, 54-55<br><br>Hair, ¶¶ 22, 26-29 | Ex. 177 (StoneTurn Index of Documents Not Received)<br><br>Ex. 193 (transcription of Abbott document by M. Hair)<br><br>Ex. 189 at ABBT 0000270 (e-mail message from M. Hair and M. Campbell)<br><br>Ex. 327 (e-mail message from S. D'Amore to K. Wittenberg)<br><br>Ex. 48 (e-mail message from M. Hair to M. Campbell)<br><br>Ex. 49 (e-mail message from M. Campbell to M. Hair) | Martinez, 698:1-9<br><br>Hair, 721:5-723:21<br><br>Campbell, 1248:15-1252:11 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (f) refusing to justify or provide support for Abbott's assertion that various financial and other business documents requested by John Hancock were "privileged" and thereby protected from disclosure to Hancock and StoneTurn; | Martinez, ¶ 55<br><br>Hair, ¶ 29 | Ex. 189 at ABBT 0000270 (e-mail message from M. Hair to M. Campbell) | Campbell, 1248:15-1252:11 | |
| | (g) refusing to allow StoneTurn to make copies of any books or records produced in the course of the audit; | Martinez, ¶¶ 33, 35-37, 45-46, 53-54 | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (h)  delaying for six months or more the copying of certain books and records designated for copying by StoneTurn; | Martinez, ¶¶ 33, 35-37, 45-46, 53-54<br><br>Hair, ¶¶ 26-28 | Ex. 49 (e-mail message from M. Campbell to M. Hair)<br><br>Ex. 177 (StoneTurn Index of Documents Not Received)<br><br>Ex. 189 at ABBT 0000270 (e-mail message from M. Hair and M. Campbell)<br><br>Ex. 327 (e-mail message from S. D'Amore to K. Wittenberg)<br><br>Ex. 193 (transcription of Abbott document by M. Hair)<br><br>Ex. 191 JHII 021601, 4-5 (StoneTurn Communications Log)<br><br>Ex. 187 at ABBT 0126769-71 (e-mail message from C. Martinez to M. Campbell) | Campbell, 1248:15-1252:11<br><br>Hair, 721:5-723:21<br><br>Martinez, 698:1-9 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | | | Ex. 48 (e-mail message from M. Hair to M. Campbell)  Ex. 49 (e-mail message from M. Campbell to M. Hair) | | |
| | (i)   completely refusing to provide John Hancock or StoneTurn with copies of numerous books and records made available for inspection by Abbott and designated for copying by StoneTurn; | Martinez, ¶¶ 45, 53-54  Hair, ¶¶ 26-28 | Ex. 177 (StoneTurn Index of Documents Not Received)  Ex. 189 at ABBT 0000270 (e-mail message from M. Hair to M. Campbell)  Ex. 327 (e-mail message from S. D'Amore to K. Wittenberg)  Ex. 193 (transcription of Abbott document by M. Hair)  Ex. 48 (e-mail message from M. Hair to M. Campbell)  Ex. 49 (e-mail message from M. Campbell to M. Hair) | Martinez, 698:1-9  Hair, 721:5-722:1 722:4-723:21  Campbell, 1248:15-1252:11 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|---|
| | (j) | repeatedly ignoring and violating previously-acknowledged deadlines for the completion of Abbott's production of books and records responsive to John Hancock and StoneTurn's requests; | Martinez, ¶¶ 14-16, 33, 36, 39<br><br>Hair, ¶ 19 | | | |
| | (k) | ignoring or refusing to *provide substantives answers to* various written and oral inquiries by John Hancock and StoneTurn regarding the books and records actually produced by Abbott; | Martinez, ¶¶ 23, 27-28, 30-31, 33, 40-42, 49-52<br><br>Hair, ¶¶ 16-20, 23-25 | Ex. 48 (e-mail message from M. Hair to M. Campbell)<br><br>Ex. 49 (e-mail message from M. Campbell to M. Hair)<br><br>Ex. 191 at JHII 021601, 3-4, 6 (StoneTurn Communications Log) | Martinez , 701:7-22 703:5-25<br><br>Hair, 722:4-723:21 725:24-727:2<br><br>Campbell, 1241:25-1243:10 | Campbell, 181:14-183:13 |
| | (l) | completely refusing to permit John Hancock or StoneTurn to interview any Abbott personnel regarding the subject matter of the audit; | Martinez, ¶¶ 41-42, 49<br><br>Hair, ¶¶ 19-20 | | Martinez, 701:7-22<br><br>Hair, 725:24-727:2<br><br>Campbell, 1242:24-1243:6 | Campbell, 290:3-16 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | (m) knowingly under-funding and under-staffing Abbott's response to John Hancock's audit request so as to further delay the efforts of John Hancock and StoneTurn; and | Hair, ¶ 15 | | Hair, 725:24-727:2 | Campbell, 18:3-12 268:17-24 |
| | (n) acting in a manner contrary to the usual course of contractual compliance audits, and contrary to Abbott's own conduct in reasonably similar circumstances in the past. | Martinez, ¶¶ 9-10 | | | Campbell, 57:4-58:7 87:24-90:8 92:5-93:5 95:15-96:9 107:14-23 159:9-14 175:11-176:2 207:13-23 208:12-19 287:14-289:9 290:1-16 297:12-23 298:13-22 312:1-8 |
| 161. | On March 22, 2005, Abbott arbitrarily notified John Hancock that Abbott had fulfilled its obligations with respect to the audit and that Abbott would not respond to any further requests from, or make any additional documents or information available to, Hancock or StoneTurn. | Martinez, ¶¶ 50-52 Hair, ¶ 25 | Ex. 49 (e-mail message from M. Campbell to M. Hair) | Hair, 722:4-723:21 Campbell, 1243:11-1248:11 | Campbell, 289:1-290:1 298:13-22 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 162. | As a result of Abbott's campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and StoneTurn to audit Abbott's compliance with the terms of the Agreement, Abbott never provided all of the documentation and information that was necessary for StoneTurn to complete its compliance audit on Hancock's behalf. | Martinez, ¶ 57<br><br>Blewitt, ¶ 140 | | Martinez,<br>698:1-9<br>698:13-700:6<br>700:12-25<br>701:7-22<br>703:5-25<br><br>Hair,<br>721:5-724:25<br>725:24-729:18<br><br>Campbell,<br>1234:16-1237:17<br>1237:20-1240:4<br>1240:15-1243:10<br>1245:4-1248:11<br>1248:15-1252:11 | |
| 163. | As a result of Abbott's campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement, Abbott effectively deprived John Hancock of its rights under that Agreement, including, *inter alia*, Hancock's rights under Section 2.5. | Martinez, ¶ 57<br><br>Blewitt, ¶ 141 | Ex. 32 at JH 008090-1 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 164. | As a result of Abbott's campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement, Abbott breached its obligations to John Hancock under that Agreement, including, *inter alia*, Abbott's obligations under Section 2.5. | | Ex. 32 at JH 008090-1 (RFA) | | |
| 165. | Abbott engaged in its campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement, *inter alia*, in order to conceal and further Abbott's misrepresentations, omissions and fraud with respect to that Agreement. | | *See* Supporting Evidence for Paragraphs 155-163, *supra* | *See* Supporting Evidence for Paragraphs 155-163, *supra* | *See* Supporting Evidence for Paragraphs 155-163, *supra* |
| 166. | As a result of Abbott's unlawful campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement, John Hancock has suffered monetary and other damages. | Blewitt, ¶¶ 142, 152 | Ex. 156A (StoneTurn's Invoices Related to Audit Activities)<br><br>Ex. 156B (Choate's Invoices Related to Audit Activities)<br><br>Ex. 156C (Choate's Invoices Related to Audit Activities) | Blewitt, 229:17-231:10 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| | *Abbott's Failure to Maximize the Value of ABT-518 and ABT-594* | | | | |
| 167. | Section 4.3(d) of the Agreement provides that, "as soon as is practicable, Abbott shall maximize the commercial value, if any, of [a] Ceased Compound" (defined in the Agreement as a Program Compound that Abbott has "substantially cease[d] developing, marketing or selling") to "both parties by out-licensing or divesting such Ceased Compound to a third party," and that Abbott thereafter shall,      remunerate John Hancock based on sales of such Ceased Compound by the third party that has acquired or licensed the Ceased Compound … in a manner most consistent with the allocation that would have applied hereunder had such Ceased Compound not been so out-licensed or divested…. | | Ex. 32 at JH 008094-95 (RFA) | Blewitt, 220:7-222:3 | |
| 168. | Abbott substantially ceased developing ABT-518 in 2001.  Accordingly, ABT-518 is a "Ceased Compound" for purposes of Section 4.3(d) of the Agreement. | Blewitt, ¶ 145  Leonard, ¶ 38  Leiden, ¶ 22 | Ex. 32 at JH 008095 (RFA)  Ex. 13 (Letter from D. Pals to S. Blewitt) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 169. | In the more than six years since 2001, Abbott has not out-licensed or divested ABT-518 to a third party. | Blewitt, ¶ 146 | | | |
| 170. | By failing to out-license or divest ABT-518 to a third party from 2001 to the present, Abbott has breached the Agreement. | | Ex. 32 at JH 008094-95 (RFA) | | |
| 171. | Abbott substantially ceased developing ABT-594 in 2001. Accordingly, ABT-594 is a "Ceased Compound" for purposes of Section 4.3(d) of the Agreement. | Blewitt, ¶ 147  Leonard, ¶ 55  Leiden, ¶ 33 | Ex. 32 at JH 008094-95 (RFA)  Ex. 106 (Letter from D. Pals to S. Blewitt) | Blewitt, 222:4-8 | |
| 172. | In the more than six years since 2001, Abbott has not out-licensed or divested ABT-594 to a third party. | Blewitt, ¶ 148 | | Blewitt, 128:8-20 222:9-10 | |
| 173. | ABT-894 is another NNR currently under development by Abbott. | | Ex. 274 at ABBT 0080815 (Apr. 2005 memorandum re: ABT-894)  Ex. 170 (Abbott Press Release) | | Leonard (Nov. 2006), 320:22-321:5 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 174. | ABT-894 is a back-up or follow-on compound to ABT-594. | | Ex. 274 at ABBT 0080815 (Apr. 2005 memorandum re: ABT-894) | | Leonard (Nov. 2006), 321:23-322:1 |
| 175. | ABT-894 is not a Program Compound encompassed by the Agreement. | | Ex. 32 at JH 008138 (RFA) | | |
| 176. | *Since terminating the development of ABT-594,* Abbott has made no effort to out-license or divest *that compound* to a third party due, *inter alia,* to Abbott's desire to avoid a potential negative impact on the value of Abbott's back-up or follow-on compounds to ABT-594, including ABT-894. | | Ex. 155 at ABBT 371710 (e-mail message from S. Lebold to D. Carlson)<br><br>Ex. 255 at ABBT 0546449 (e-mail message from B. McCarthy to M. Verlinden)<br><br>Ex. 262 at ABBT 245657-59 (e-mail message from B. McCarthy to M. Biarnesen) | Leonard, 971:24-975:20 | McCarthy (Sept. 2006), 274:9-277:13<br><br>McCarthy (Mar. 2007), 171:14-172:12 |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 177. | As a result of Abbott's failure to out-license or divest ABT-518 and/or ABT-594 to one or more third parties in violation of the terms of the Agreement, John Hancock has suffered monetary and other damages. | Blewitt, ¶¶ 149-150, 152<br><br>Friedman, ¶¶ 14, 43 (including Table 14, 44, 58 (including Table 17), 79 (including Table 22) | Ex. 208 at 13 (Updated Expert Report of A. Friedman) | Blewitt, 225:17-20 | |
| | | ***John Hancock's Damages*** | | | |
| 178. | Abbott's breaches of the Agreement and fraud are of such a nature and of such importance that the Agreement would not have been made without them. | Blewitt, ¶ 89, 90, 100, 113, 151 | *See* Supporting Evidence for Paragraphs 90, 105, 129, *supra* | *See* Supporting Evidence for Paragraphs 90, 105, 129, *supra* | *See* Supporting Evidence for Paragraphs 90, 105, 129, *supra* |
| 179. | John Hancock's actual damages resulting from Abbott's breaches of the Agreement and fraud can be, and have been, calculated by Hancock's expert witness, Mr. Alan Friedman, with reasonable certainty using reliable principles and methods applied reliably to sufficient facts and data. | Friedman, ¶ 15<br><br>Blewitt, ¶ 153 | Ex. 331 at 19, 30-31 (AICPA Practice Aid Series)<br><br>Ex. 331A at 89 (AICPA Practice Aid Series)<br><br>Ex. 208 at 2, 6, 7, 14 (Updated Expert Report of A. Friedman) | Friedman, 804:23-811:5 817:10-818:20<br><br>Tucker, 1551:6-1563:12 1582:8-1587:9 1610:12-19 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 180. | As a result of Abbott's breach of contract and fraud with respect to ABT-518 alone, John Hancock has suffered actual monetary damages having a present value of *between $5-24 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violations and misconduct.* | Friedman, ¶ 79, Table 22 | Ex. 208 at Exhibit 8.1 (Updated Expert Report of A. Friedman) | | |
| 181. | As a result of Abbott's breach of contract and fraud with respect to ABT-594 alone, John Hancock has suffered actual monetary damages having a present value of *between $44-132 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violations and misconduct.* | Friedman, ¶ 79, Table 22 | Ex. 208 at Exhibit 8.2 (Updated Expert Report of A. Friedman) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 182. | As a result of Abbott's breach of contract and fraud with respect to ABT-773 alone, John Hancock has suffered actual monetary damages having a present value of *between $201-246 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violations and misconduct.* | Friedman, ¶ 79, Table 22 | Ex. 208 at Exhibit 8.3 (Updated Expert Report of A. Friedman) | | |
| 183. | *As a result of Abbott's breach of contract and fraud with respect to ABT-518, ABT-594 and ABT-773 combined, John Hancock has suffered actual monetary damages having a present value of between $176-288 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violations and misconduct.* | Friedman, ¶ 80, Table 23 (as corrected, Mar. 7, 2008) | | | |
| 184. | *Because it represents a fair compromise between the potential "High Case" and "Low Case" scenarios, Mr. Friedman's "Base Case" analysis is a more reasonable estimate of the likely outcome of events but for Abbott's violations and misconduct.* | Friedman, ¶ 23 | Ex. 208 at 7-10 (Updated Expert Report of A. Friedman) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 185. | As a result of Abbott's breach of contract and fraud with respect to its intended and reasonably expected spending plans, John Hancock has suffered actual monetary damages *in the amount* of *$54 million.* | Blewitt, ¶ 124 | Ex. 32 at JH 008091 (RFA) | | |
| 186. | As a result of Abbott's breach of contract with respect to its obligation to pay John Hancock one-third of the unspent portion of the Aggregate Carryover Amount, Hancock has suffered actual monetary damages *in the amount of $33 million.* | Friedman, ¶ 65, Table 18 | Ex. 208 at 14 (Updated Expert Report of A. Friedman) | Friedman, 818:21-820:3 | |
| 187. | As a result of Abbott's breach of contract with respect to its campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement, Hancock has suffered actual monetary damages *in the amount of $330,000.* | Blewitt, ¶ 142 | Ex. 156A (StoneTurn's Invoices related to Audit Activities)<br><br>Ex. 156B (Choate's Invoices related to Audit Activities)<br><br>Ex. 156C (Choate's Invoices related to Audit Activities) | Blewitt, 229:17-231:10 | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 188. | As a result of Abbott's breach of contract with respect to its failure to out-license or divest ABT-518 to a third party, Hancock has suffered actual monetary damages having a present value *of between $5-24 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violation.* | Friedman, ¶ 79, Table 22 | Ex. 208 at Exhibit 8.1 (Updated Expert Report of A. Friedman) | | |
| 189. | As a result of Abbott's breach of contract with respect to its failure to out-license or divest ABT-594 to a third party, Hancock has suffered actual monetary damages having a present value *of between $44-132 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violation.* | Friedman, ¶ 79, Table 22 | Ex. 208 at Exhibit 8.2 (Updated Expert Report of A. Friedman) | | |
| 190. | *John Hancock's actual damages as a result of Abbott's breach of contract and fraud* total $_____. | Friedman, ¶ 80, Table 23 (as corrected, Mar. 7, 2008) | Ex. 208 at Exhibit 8.1 (Updated Expert Report of A. Friedman) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 191. | Prejudgment interest on John Hancock's *actual damages, using Illinois' standard statutory prejudgment interest rate of five percent (5%) per annum,* totals $ _____. | Friedman, ¶¶ 42, 57, 65 (including Table 18), 67 (including Table 19), 77 (including Table 21), 79 including Table 22), 81 | | | |
| 192. | *Alternatively, the parties can be returned to the status quo ante if Abbott refunds the sum of $89.6 million to John Hancock, which sum represents the Program Payments actually made by Hancock, less any payments already received by Hancock.* | Friedman, ¶ 67 | Ex. 208 at 4, Exhibit 7.1 (Updated Report of A. Friedman) | | |
| 193. | *Prejudgment interest on John Hancock's rescission damages, using Illinois' standard statutory prejudgment interest rate of five percent (5%) per annum, totals $28.4 million.* | Friedman, ¶ 67 | Ex. 208 at 4, Exhibit 7.1 (Updated Report of A. Friedman) | | |
| 194. | *In litigating this action, John Hancock has incurred reasonable expenses (including attorneys' fees) in the amount of $_____.* | Note: John Hancock's total fees and expenses to date will be provided by Hancock as directed by the Court. | | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 195. | John Hancock's compensable "Losses" under the Agreement, including its actual damages, reasonable expenses *(including* attorneys' fees*) and pre-judgment interest,* total $_____. | | | | |
| 196. | *As a result of the willful and wanton nature of Abbott's misrepresentations, omissions and fraud, John Hancock is entitled to punitive damages in the amount of $ _____ .* | | | | |
| | ***Additional Facts Contravening Abbott's Assertion that John Hancock's Claim for Rescission is Barred by Judicial Estoppel, Waiver, Laches, Delay, Ratification or the Terms of the Agreement*** | | | | |
| 197. | In November 2003, representatives of John Hancock and Abbott engaged in settlement discussions concerning the parties' disputes regarding the Agreement. At that time, James Tyree, then Abbott's Vice President of Global Licensing and New Business Development, vehemently denied any violations of the Agreement or intentional misconduct on Abbott's part. Mr. Tyree specifically stated, in part, that "Abbott takes any allegations of fraud very seriously and, after investigating the matter, has concluded that no basis exists for any such allegation by John Hancock." | | Ex. 151 at 1 (letter from J. Tyree to S. Blewitt) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 198. | During *Hancock I*, the Court expressly limited John Hancock's claims against Abbott to the question of "whether or not the termination of the Plaintiff's obligations as a result of shortfalls in the aggregate spending targets is well-founded." | | Docket No. 11 (Case No. 03-12501) at 1 (Scheduling Order) | | |
| 199. | During *Hancock I*, John Hancock's counsel expressed to the Court, during a scheduling conference on March 30, 2004, his concern that Abbott subsequently might seek to preclude Hancock from asserting additional claims against Abbott pertaining to the Agreement on the basis that such claims should have been asserted in *Hancock I*. | | Docket No. 12 (Case No. 03-12501) at 22:5-23:19 | | |
| 200. | Abbott, through its counsel, expressly agreed in open Court on March 30, 2004, that Abbott would not subsequently seek to preclude John Hancock from asserting additional claims against Abbott pertaining to the Agreement on the basis that such claims should have been asserted in *Hancock I*. | Martinez, ¶ 57 | Docket No. 12 (Case No. 03-12501) at 22:5-23:19 | Martinez, 700:12-25 | |
| 201. | On April 12, 2004, John Hancock informed Abbott, pursuant to Section 2.5 of the Agreement, that Hancock was exercising its right to conduct an audit of Abbott to determine Abbott's compliance with the terms of the Agreement. | *See* Supporting Evidence for Initial Proposed FOF Paragraph 156, *supra*. | *See* Supporting Evidence for Initial Proposed FOF Paragraph 156, *supra* | *See* Supporting Evidence for Initial Proposed FOF Paragraph 156, *supra* | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 202. | Abbott responded to John Hancock's demand for an audit of Abbott's compliance with the terms of the Agreement by engaging in a protracted, unjustified and unreasonable campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to examine and assess Abbott's compliance. | *See* Supporting Evidence for Initial Proposed FOF Paragraphs 159, 160(a)-(n), *supra*. | *See* Supporting Evidence for Initial Proposed FOF Paragraphs 159, 160(a)-(n), *supra*. | *See* Supporting Evidence for Initial Proposed FOF Paragraphs 159, 160(a)-(n), *supra*. | |
| 203. | As a result of Abbott's campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement, Abbott did not provide the documentation and information that was necessary to complete that compliance audit. | Blewitt, ¶ 140 | | | |
| 204. | Abbott engaged in its campaign to hinder, delay and obstruct the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement, *inter alia*, in order to conceal and further Abbott's misrepresentations, omissions and fraud with respect to that Agreement. | *See* Supporting Evidence for Initial Proposed FOF Paragraph 165 *supra*. | *See* Supporting Evidence for Initial Proposed FOF Paragraph 165 *supra*. | *See* Supporting Evidence for Initial Proposed FOF Paragraph 165 *supra*. | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 205. | John Hancock's efforts to audit Abbott's compliance with the terms of the Agreement ended in or about March 2005 after Abbott notified Hancock that Abbott would not make any additional records or other information available for inspection by John Hancock or its independent auditor. | Blewitt, ¶ 139 | *See* Supporting Evidence for Initial Proposed FOF Paragraphs 161, *supra* | *See* Supporting Evidence for Initial Proposed FOF Paragraphs 161, *supra* | |
| 206. | After Abbott's March 2005 decision to cease responding to John Hancock's attempted compliance audit, and prior to the Court's decision in *Hancock I*, John Hancock filed its Complaint in this action (*Hancock II*) on June 3, 2005.  John Hancock's original Complaint alleged that, but for Abbott's misrepresentations and omissions, John Hancock "would have demanded different terms … or may not have entered into the Agreement at all" and requested "such other and further relief as the Court deems just and appropriate in the circumstances," including, without limitation, rescission. | | Docket No. 1 (Civil Case No. 05-11150) at ¶¶ 24, 26, 28 (Complaint) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 207. | John Hancock began *reducing its expected returns* on its investment in the Agreement as a result of Abbott's termination of ABT-518, ABT-594 and ABT-773 long before it filed its Complaint in *Hancock II*. As of late 2003, John Hancock*'s* estimated internal rate of return *was* ten to thirteen percent (10-13%), down from the eighteen to twenty-two percent (*17.5-22%*) estimated yield that Hancock communicated to Abbott during negotiations. John Hancock also projected a dramatically increased probability of losing its entire invested capital. | Hartz, ¶ 37 | Ex. 698 at JHII 012067, 012069 (Draft of Investment Review Report) | | |
| 208. | In or about *the fall of* 2006, Abbott argued for the first time that John Hancock could not obtain rescission of the Agreement as an alternative remedy for Abbott's misrepresentations or fraud because John Hancock did not explicitly request such relief in its Complaint. | | Docket No. 110 (Civil Case No. 05-11150) at 9-10 (Memorandum in Opp, to Defendant's Motion to Strike Prayer for Rescission) | | |
| 209. | On October 24, 2006, John Hancock filed a Motion for Leave to Amend its Complaint in *Hancock II* (the "Motion to Amend") to add an explicit, alternative prayer for rescission of the Agreement. | | Docket No. 62 (Civil Case No. 05-11150) (Motion to Amend Amended Complaint) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 210. | Abbott originally opposed John Hancock's Motion to Amend on the grounds, *inter alia*, that: (a) John Hancock allegedly had "already elected to enforce the Research Funding Agreement and failed to promptly seek rescission"; (b) Hancock allegedly was barred by its conduct in *Hancock I* "from seeking the inconsistent remedy of rescission of the [A]greement"; (c) Hancock allegedly had "continued to accept benefits under the [Agreement] after it discovered Abbott's allegedly fraudulent conduct"; (d) Hancock allegedly had "waived its right to seek rescission" of the Agreement; and (e) Abbott allegedly "would be prejudiced if Hancock were allowed to add an alternative damages theory at this late date." | | Docket No. 79 (Civil Case No. 05-11150) at 11, 13-14 (Memorandum in Opp. to Plaintiffs' Motion for Leave to Amend the Supplemental Complaint) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 211. | On December 6, 2006, Abbott agreed, in return for other concessions by John Hancock, to voluntarily withdraw its opposition to Hancock's Motion to Amend its Complaint to add an explicit, alternative prayer for rescission of the Agreement, including Abbott's arguments that: (a) John Hancock allegedly had "already elected to enforce the Research Funding Agreement and failed to promptly seek rescission"; (b) Hancock allegedly was barred by its conduct in *Hancock I* "from seeking the inconsistent remedy of rescission of the [A]greement"; (c) Hancock allegedly had "continued to accept benefits under the [Agreement] after it discovered Abbott's allegedly fraudulent conduct"; (d) Hancock allegedly had "waived its right to seek rescission" of the Agreement; and (e) Abbott allegedly "would be prejudiced if Hancock were allowed to add an alternative damages theory at this late date." | | Electronic Clerks Notes re: Motion Hearing held on 12/06/06 (Civil Case No. 05-11150)<br><br>Docket No. 101 (Civil Case No. 05-11150) at 3-4 (Transcript of 12/06/06 Hearing)<br><br>Docket No. 102 (Civil Case No. 05-11150) (Stipulation and Proposed Order Regarding Certain Motions and Scheduling)<br><br>Electronic Order entered Adopting Stipulation on 01/05/07 (Civil Case No. 05-11150) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 212. | Abbott, through its counsel, simultaneously represented to the Court that Abbott's withdrawal of its opposition to John Hancock's Motion to Amend resolved "anything that ha[d] been filed or [was] in the gleam in the eye of any of the attorneys" with respect to the issues raised in that motion. | | Docket No. 101 (Civil Case No. 05-11150) at 3-4 (Transcript of 12/06/06 Hearing) | | |
| 213. | On December 6, 2006, Abbott also withdrew its opposition to John Hancock's Motion to Compel discovery concerning ABT-773 (the "Motion to Compel").  Prior to withdrawing its opposition to John Hancock's Motion to Compel, Abbott had asserted that Hancock was not permitted to undertake any discovery concerning ABT-773, and affirmatively had blocked Hancock's efforts to conduct discovery regarding that Program Compound. | | Electronic Clerks Notes re: Motion Hearing held on 12/06/06 (Civil Case No. 05-11150)

Docket No. 101 (Civil Case No. 05-11150) at 3-4 (Transcript of 12/06/06 Hearing) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 214. | Abbott confirmed its agreement to withdraw its opposition to John Hancock's Motion to Amend and Hancock's Motion to Compel in a Stipulation and Proposed Order that was filed jointly by the parties on December 21, 2006.  The Court subsequently adopted the parties' Stipulation and Proposed Order on January 5, 2007. | | Docket No. 102 (Civil Case No. 05-11150) (Stipulation and Proposed Order Regarding Certain Motions and Scheduling)  Electronic Order entered Adopting Stipulation on 01/05/07 (Civil Case No. 05-11150) | | |
| 215. | The legal arguments that Abbott now raises in opposition to John Hancock's alternative prayer for rescission of the Research Funding Agreement are essentially identical to the legal arguments that Abbott previously agreed to withdraw in December 2006. | | Docket No. 79 (Civil Case No. 05-11150) at 11, 13-14 (Memorandum in Opp. to Plaintiffs' Motion for Leave to Amend the Supplemental Complaint) | | |
| 216. | Despite withdrawing its opposition to John Hancock's Motion to Compel discovery on ABT-773 on December 6, 2006, Abbott did not produce to Hancock the bulk of its documents relating to ABT-773 until March 2007. | | Docket No. 167 (Civil Case No. 05-11150) at 11-13 and n. 5 (Memorandum in Opp. to Abbott's Summary Judgment Claim on Rescission) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 217. | From November through December 2006, Abbott produced for the first time a substantial number of additional documents relating to its misrepresentations regarding ABT-518 and ABT-594, including many documents that had been requested in the course of John Hancock's attempted compliance audit of Abbott in 2004-2005. | | Docket No. 167 (Civil Case No. 05-11150) at 11-13 and n. 5 (Memorandum in Opp. to Abbott's Summary Judgment Claim on Rescission) | | |
| 218. | John Hancock did not learn all of Abbott's material misrepresentations and omissions regarding ABT-518, ABT-594 and ABT-773 until the completion of discovery in 2007. On November 8, 2007, John Hancock filed, with leave of Court, a Second Amended Supplemental Complaint alleging those misrepresentations. | | Docket No. 167 (Civil Case No. 05-11150) at 11-13 and n. 5<br><br>Docket No. 198 (Civil Case No. 05-11150) (Second Amended Supplemental Complaint) | | |
| 219. | Section 11.2 of the Research Funding Agreement expressly and unequivocally grants John Hancock the right to terminate that Agreement, "in addition to all other rights available to John Hancock under law and equity," including, without limitation, "such other legal or equitable remedies as shall be appropriate under the circumstances." | | Ex. 32 at JH 008103 (RFA) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 220. | Pursuant to the express terms agreed upon by the parties, Section 11.2 serves solely to provide conditions and procedures for termination of the Agreement and is not a limitation of remedies clause. | | Docket No. 167 (Civil Case No. 05-11150) at 3-5 (Plaintiffs' Memorandum in Opp. to Defendant's Motion for Summary Judgment on Hancock's Rescission Claim) | | |
| | ***Additional Facts Contravening Abbott's Assertion that Enforcing Section 3.3(b) of the Agreement According to its Express Terms Would Render that Provision an Invalid and Unenforceable Penalty*** | | | | |
| 221. | Abbott admitted that Section 3.3(b) was intended by the parties to serve as a contractual mechanism whereby Abbott would "refund" a portion of John Hancock's Program Payments to Hancock under certain circumstances set forth in that Agreement. | | Ex. 30 at AL 000116-17 (Proposed Summary of Terms)<br><br>Ex. 412 at AL 000075 (Abbott-John Hancock Funding Collaboration Presentation) | | |
| 222. | At no time prior to the commencement of this action did Abbott ever contend that Section 3.3(b) of the Agreement was intended by the parties to constitute a liquidated damages provision. | | Ex. 32 at JH 008210-11 (RFA)<br><br>Ex. 412 at AL 000075 (Abbott-John Hancock Funding Collaboration Presentation) | | |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED FINDING OF FACT | AFFIDAVIT CITATION | TRIAL EXHIBIT NUMBER | TRIAL TRANSCRIPT CITATION | DEPOSITION DESIGNATION |
|---|---|---|---|---|---|
| 223. | At no time prior to the commencement of this action did Abbott ever contend that Section 3.3(b) of the Agreement constituted an invalid and unenforceable penalty. | | Ex. 32 at JH 008210-11 (RFA)<br><br>Ex. 412 at AL 000075 (Abbott-John Hancock Funding Collaboration Presentation) | | |
| 224. | Abbott provided an opinion letter, written by Brian J. Smith, Abbott's Assistant Secretary, Divisional Vice-President and in-house counsel, to John Hancock in conjunction with the execution of the Agreement. A copy of that opinion letter is attached to the Agreement. It states, in part, that "the Research Funding Agreement," including Section 3.3(b), "has been duly and validly authorized by [Abbott] … and constitutes a valid and binding legal obligation of [Abbott] enforceable against it in accordance with its terms…." | | Ex. 32 at JH 008210-11 (RFA) | | |

# PROPOSED CONCLUSIONS OF LAW

**JOHN HANCOCK v. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| | ***Jurisdiction, Venue, and Choice of Law*** |
| 1. | This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interests and costs. |
| 2. | Venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(1).  Abbott resides in this district within the meaning of 28 U.S.C. § 1391(c).  Furthermore, pursuant to Section 16.2 of the Agreement, the parties agreed to the "exclusive jurisdiction of the courts of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts … for the purpose of any suit, action or other proceeding" arising out of their obligations under the Agreement, and agreed to "waive[] any and all objections that [they] may have as to venue in any such courts." |
| 3. | Pursuant to Section 16.2 of the Agreement, Illinois law governs John Hancock's causes of action against Abbott.  Agreement, § 16.2; John Hancock Life Ins. Co. v. Abbott Laboratories, 478 F.3d 1, 6 (1st Cir. 2006) (applying Illinois law to interpretation and application of the Agreement); Lambert v. Kysar, 983 F.2d 1110, 1118 (1st Cir. 1983) (Massachusetts district courts "routinely enforce choice-of-law provisions"). |
| | ***Abbott's Fraud (Count I)*** |
| 4. | Count I of John Hancock's Second Amended Supplemental Complaint (the "Complaint") asserts a cause of action against Abbott for fraud.  In order to prove fraud under Illinois law, John Hancock must demonstrate that: (a) Abbott knowingly made a false statement and/or omission of material fact; (b) Hancock relied on that statement and/or omission; (c) Abbott made the statement and/or omission with the intent to induce Hancock to enter the Agreement; and (d) the statement and/or omission caused harm to Hancock.  See, e.g., Board of Ed. of City of Chicago v. A, C and S, Inc., 131 Ill.2d 428, 452, 546 N.E.2d 580, 646 (Ill. 1989); Soules v. General Motors Corp., 79 Ill.2d 282, 286, 402 N.E.2d 599, 601 (Ill. 1980). |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 5. | A fact is "material" in the context of an investment if it relates to the type of information that a reasonable investor would consider in making the investment. *See, e.g.,* Wernikoff v. Health Care Services Corp., 376 Ill.App.3d 228, 234, 877 N.E.2d 11, 16 (1st Dist. 2007) (*citing* Connick v. Suzuki Motor Co., 174 Ill.2d 482, 505, 675 N.E.2d 584 (Ill. 1996)); SEC v. Householder, 2002 WL 1466812, at *5 (N.D. Ill. July 8, 2002) (*citing* Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988)). |
| 6. | Abbott cannot claim "'negligence' as against [its] own deliberate fraud" by asserting that John Hancock had an independent duty to conduct an investigation that may have uncovered the falsity of Abbott's misrepresentations. *See* Chicago Title and Trust Co. v. First Arlington Nat'l Bank, 118 Ill.App.3d 401, 408, 454 N.E.2d 723, 729 (1st Dist. 1983) (*quoting* Lining v. Strong, 1883 WL 10302 at *5 (Ill. 1883); *see also* Eisenberg v. Goldstein, 29 Ill.2d 617, 621, 195 N.E.2d 184, 186 (1964) ("One who by misrepresentation has induced another to act to his prejudice cannot relieve himself of liability by … imput[ing] negligence to the other merely because of the latter's reliance on the misrepresentation."); Schmidt v. Landfield, 20 Ill.2d 89, 94, 169 N.E.2d 229, 231 (Ill. 1960) ("As a general rule one who is guilty of fraudulent misrepresentation cannot interpose a defense that the person defrauded was negligent in failing to discover the truth") (internal citations omitted). |
| 7. | In calculating damages for fraud, Illinois follows the "benefit of the bargain" approach. *See* Giammanco v. Giammanco, 253 Ill.App.3d 750, 759, 625 N.E.2d 990, 998 (2nd Dist. 1994). "[D]amages are determined by assessing the difference between the actual value of the property sold and the value the property would have had if the representations had been true." Gerrill Corp. v. Jack L. Hargrove Builders, Inc., 128 Ill.2d 179, 196, 538 N.E.2d 530, 538 (Ill. 1989) (internal citations omitted). |
| 8. | Under Illinois law, once the existence of damage is established, evidence tending to reasonably approximate the extent of the damage is admissible. Absolute certainty as to the amount of damage in such cases is not required to justify a recovery. It is only necessary that the evidence tend to establish a basis for the assessment of damages with a fair degree of probability.<br><br>De Koven Drug Co. v. First Nat'l Bank of Evergreen Park, 27 Ill.App.3d 798, 802, 327 N.E.2d 378, 380-381 (1st Dist. 1975) (*citing* Barnett v. Caldwell Furniture Co., 277 Ill. 286, 115 N.E. 389 (1917)). |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 9. | *In appropriate circumstances, actual damages may be awarded based on the probability of the injured party's lost chance of success. See, e.g.* Miller v. Allstate Ins. Co.*, 573 So.2d 24, 29 (Fla. App. 3 Dist. 1990) (value of plaintiffs' opportunity or chance of success at the time of the breach was proper basis for a damages award);* Wachtel v. Nat'l Alfalfa Journal Co.*, 176 N.W. 801, 803-4 (Iowa 1920) (contestant in a magazine contest recovered damages for lost chance to win when contest was discontinued, and jury was to consider her reasonable probability of success);* Kansas City, M. & O. Ry. v Bell*, 197 S.W. 322, 323 (Tex. Civ. App. 1917) (damages for lost chance of winning prize money permitted based on the probability that the plaintiffs' hogs would have won a hog exhibition);* RESTATEMENT (SECOND) OF CONTRACTS *§ 348 (1981);See generally,  Melvin Aron Eisenberg,* Probability and Chance in Contract Law*, 45 UCLA L. Rev. 1005 (1998); Howard Ross Feldman, Comment,* Chances As Protected Interests: Recovery for the Loss of a Chance and Increased Risk*, 17 U. BALT. L. REV. 139 (1987); Note,* Damages Contingent Upon Chance*, 18 RUTGERS L. REV. 875 (1964).* |
| 10. | *Under Illinois law, punitive damages may properly be awarded in an action for fraud.  See, e.g.,* Black v. Iovino*, 219 Ill.App.3d 378, 393, 580 N.E.2d 139, 149 (1st Dist. 1991).  "Punitive damages are proper in a fraud case where the false representations are wantonly and designedly made."* Gehrett v. Chrysler Corp., 317 Ill. Dec. 946, *882 N.E.2d 1102, 1118 (2d Dist. 2008).  They are "appropriate to punish and deter conduct where [the] defendant is guilty of fraud."* Obermaier v. Obermaier*, 128 Ill.App.3d 602, 610, 470 N.E.2d 1047, 1053 (1st Dist. 1984) (same).* |
| 11. | *Under Illinois law, "the question of whether to award punitive damages rests within the sound discretion of the trial court and will not be set aside absent an abuse of that discretion."* Black*, 219 Ill.App.3d at 393, 580 N.E.2d at 149; see also* Obermaier*, 128 Ill.App.3d at 610, 470 N.E.2d at 1053 (same).* |
| 12. | John Hancock bears the burden of proving Abbott's fraud by clear and convincing evidence.  *See* Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill.2d 100, 191-192, 835 N.E.2d 801, 856 (Ill. 2005);* Cole v. Ignatius*, 114 Ill.App.3d 66, 74, 448 N.E.2d 538, 544 (1st Dist. 1983). |
| 13. | John Hancock has satisfied its burden of proving Abbott's fraud by clear and convincing evidence in this case. |
| 14. | Based on the foregoing findings of fact, the Court concludes that Abbott fraudulently and intentionally induced John Hancock to enter into the Agreement by: |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| | (a)    knowingly *and intentionally* misrepresenting and/or failing to disclose material information concerning the prospects and condition of ABT-518 to John Hancock in the Agreement; |
| | (b)    knowingly *and intentionally* misrepresenting and/or failing to disclose material information concerning the prospects and condition of ABT-594 to John Hancock in the Agreement; |
| | (c)    knowingly *and intentionally* misrepresenting and/or failing to disclose material information concerning the prospects and condition of ABT-773 to John Hancock in the Agreement; and |
| | (d)    knowingly *and intentionally* misrepresenting its intended and reasonably expected spending plans to John Hancock in its various ARPs, including its ARP for 2002. |
| 15. | The Court concludes that Abbott's fraudulent misrepresentations and omissions were material to John Hancock's decision to enter into the Agreement. |
| 16. | The Court concludes that John Hancock justifiably relied upon Abbott's fraudulent misrepresentations and omissions in entering into the Agreement. |
| 17. | The Court concludes that John Hancock justifiably relied upon Abbott's fraudulent misrepresentations and omissions in making its Second Program Payment in the amount of $54,000,000 in January 2003. |
| 18. | The Court concludes that John Hancock was under no duty to independently discover the existence, or determine the veracity, of Abbott's misrepresentations and omissions before entering into the Agreement. |
| 19. | The Court concludes that John Hancock suffered actual, compensable harm as a result of Abbott's fraudulent misrepresentations and omissions. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 20. | The Court concludes that, as a result of Abbott's fraudulent misrepresentations and omissions, Abbott is obligated to compensate John Hancock for its resulting damages. |
| 21. | The Court concludes that, as a result of the *willful and wanton* nature of Abbott's misrepresentations, omissions *and fraud*, the imposition of punitive damages on Abbott in the amount of $ _____ is warranted. |
| | ***Abbott's Breach of Contract (Count II)*** |
| 22. | Count II of John Hancock's Complaint asserts a cause of action against Abbott for breach of contract. In order to prove breach of contract under Illinois law, John Hancock must demonstrate: (a) the existence of a valid and enforceable contract; (b) the performance of that contract by John Hancock; (c) breach of the contract by Abbott; and (d) resulting injury to Hancock. *See, e.g.,* Hickox v. Bell, 195 Ill.App.3d 976, 992, 552 N.E.2d 1133, 1143 (5th Dist. 1990); *see also* Priebe v. Autobarn, Ltd., 240 F.3d 584, 587 (7th Cir. 2001). |
| 23. | The Court concludes that the Agreement constitutes a valid and enforceable contract. |
| 24. | The Court concludes that John Hancock has fully performed its obligations under the Agreement. |
| 25. | Under Illinois law, every contract includes an implied covenant of good faith and fair dealing. *See, e.g.,* Dayan v. McDonald's Corp., 125 Ill.App.3d 972, 989-990, 466 N.E.2d 958, 971 (1st Dist. 1984). |
| 26. | The covenant of good faith and fair dealing requires that a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *See, e.g.,* Dayan, 125 Ill.App.3d at 990-991, 466 N.E.2d at 971; *see also* Gore v. Indiana Ins. Co., 376 Ill. App.3d 282, 286, 876 N.E.2d 156, 161 (1st Dist. 2007) (the purpose of the implied covenant of good faith and fair dealing "is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract"). |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 27. | Violation of an express representation or warranty constitutes a breach of contract. *See* <u>Trustees of Indiana Univ. v. Aetna Casualty & Surety Co.</u>, 920 F.2d 429, 435 n.7 (7th Cir. 2001). |
| 28. | John Hancock is not required to prove that it actually relied on Abbott's express representations and warranties in order to prevail on its claim against Abbott for breach of those representations and warranties. *See* <u>Mowbray v. Waste Mgmt. Holdings, Inc.</u>, 45 F.Supp.2d 132, 137 (D.Mass. 1999) ("[P]roof of reliance is unnecessary when the existence of a contractual warranty is undisputed," applying Illinois law and citing <u>Wickoff v. Vanderveld</u>, 897 F.2d 232 (7th Cir. 1990), and <u>Pension Benefit Guar. Corp. v. Ziffer</u>, No. 91-C-7762, 1994 U.S. Dist. LEXIS 87 (N.D. Ill. Jan. 4, 1994)). |
| 29. | In calculating damages for breach of contract, Illinois follows the "benefit of the bargain" approach. *See, e.g.,* <u>Frank Horton & Co. v. Cook Elec. Co.</u>, 356 F.2d 485, 491-492 (7th Cir. 1966). |
| 30. | As before, under Illinois law, "[a]bsolute certainty as to the amount of damage … is not required to justify a recovery.  It is only necessary that the evidence tend to establish a basis for the assessment of damages with a fair degree of probability." <u>De Koven Drug</u>, 27 Ill.App.3d at 802, 327 N.E.2d at 380-381. |
| 31. | *In appropriate circumstances, actual damages may be awarded based on the probability of the injured party's lost chance of success. See, e.g.* <u>Miller v. Allstate Ins. Co.</u>, *573 So.2d 24, 29 (Fla. App. 3 Dist. 1990) (value of plaintiffs' opportunity or chance of success at the time of the breach was proper basis for a damages award);* <u>Wachtel v. Nat'l Alfalfa Journal Co.</u>, *176 N.W. 801, 803-4 (Iowa 1920) (contestant in a magazine contest recovered damages for lost chance to win when contest was discontinued, and jury was to consider her reasonable probability of success);* <u>Kansas City, M. & O. Ry. v Bell</u>, *197 S.W. 322 at 323 (Tex. Civ. App. 1917) (damages for lost chance of winning prize money permitted based on the probability that the plaintiffs' hogs would have won a hog exhibition); Restatement (Second) of Contracts § 348 (1981); See generally, Melvin Aron Eisenberg,* <u>Probability and Chance in Contract Law</u>, *45 UCLA L. Rev. 1005 (1998); Howard Ross Feldman, Comment,* <u>Chances As Protected Interests: Recovery for the Loss of a Chance and Increased Risk</u>, *17 U. Balt. L. Rev. 139 (1987); Note,* <u>Damages Contingent Upon Chance</u>, *18 RUTGERS L. REV. 875 (1964).* |
| 32. | Section 3.3(b) of the Agreement is not an invalid and unenforceable penalty or liquidated damages provision. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 33. | Contractual provisions negotiated by experienced businesspeople and their legal counsel that, at the time of contracting, allocate financial risks and burdens that would be borne by the parties under certain reasonably foreseeable circumstances are valid and binding under Illinois law.  *See* McClure Eng'g Assoc., Inc. v. Reuben H. Donnelley Corp., 95 Ill.2d 68, 72, 447 N.E.2d 400, 403 (Ill. 1983); Fleet Business Credit, LLC v. Enterasys Networks, Inc., 352 Ill.App.3d 456, 466, 471-473, 816 N.E.2d 619, 627, 631-633 (1st Dist. 2004) (rejecting defendant's argument that contractual provision, which required it to purchase certain financing contracts from lender in the event of a default, was a "liquidated damages clause" and an "unenforceable penalty provision," rather than a "risk-allocation contract"); Chicago Steel Rule and Die Fabricators Co. v. ADT Security Systems, Inc., 327 Ill.App.3d 642, 651, 763 N.E.2d 839, 846 (1st Dist. 2002) (upholding an exculpatory clause in a business contract on the ground that "[w]e find nothing unreasonable about the fact that the commercial parties of equal bargaining power were free to allocate the risk of loss by contract"); Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc., 315 Ill.App.3d 248, 258, 733 N.E.2d 718, 725-726 (1st Dist. 2000) (noting that such provisions are especially applicable among "sophisticated businesses, capable of protecting their own interests – and appropriately allocating risks – in the bargaining process"). |
| 34. | Under Illinois law, "[p]enalties, or liquidated damages clauses in general, are distinct from alternative forms of performing the obligations under the contract."  River East Plaza, LLC v. Variable Annuity Life Co., 498 F.3d 718, 722 (7th Cir. 2007). |
| 35. | Under Illinois law, a contractual provision is not void or voidable as an unenforceable penalty unless "'the sole purpose of the clause is to secure performance of the contract."  *Id.* (citations omitted, emphasis added). |
| 36. | The sole purpose of Section 3.3(b) of the Research Funding Agreement is not to secure performance of that Agreement. |
| 37. | Section 3.3(b) of the Agreement constitutes a valid risk and cost allocation mechanism agreed upon by both John Hancock and Abbott. |
| 38. | *Under Illinois law, a plaintiff may recover punitive damages for breach of contract "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression."  Morrow v. L.A. Goldschmidt Assoc., Inc., 112 Ill.2d 87, 95, 492 N.E.2d 181, 184 (Ill. 1986) (quoting Bank of Lincolnwood v. Comdisco, Inc., 111 Ill.App.3d 822, 829, 444 N.E.2d 657, 662(1st Dist. 1982)).* |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 39. | John Hancock bears the burden of proving Abbott's breach of contract by a preponderance of the evidence. *See* <u>Mannion v. Stallings & Co.</u>, 204 Ill.App.3d 179, 186, 561 N.E.2d 1134, 1138 (1st Dist. 1990). |
| 40. | John Hancock has satisfied its burden of proving Abbott's breach of contract by a preponderance of the evidence in this case. |
| 41. | Based on the foregoing findings of fact, the Court concludes that Abbott breached the Agreement by: |
|  | (a)    misrepresenting and/or failing to disclose material information concerning the prospects and condition of ABT-518 to John Hancock in the Agreement; |
|  | (b)    misrepresenting and/or failing to disclose material information concerning the prospects and condition of ABT-594 to John Hancock in the Agreement; |
|  | (c)    misrepresenting and/or failing to disclose material information concerning the prospects and condition of ABT-773 to John Hancock in the Agreement; |
|  | (d)    misrepresenting its intended and reasonably expected spending plans to John Hancock in its various ARPs, including its ARP for 2002; |
|  | (e)    failing to pay John Hancock one-third of the unspent portion of the Aggregate Carryover Amount within thirty (30) days of the end of 2005; |
|  | (f)    hindering, delaying and obstructing the legitimate efforts of John Hancock and its independent auditor to audit Abbott's compliance with the terms of the Agreement; |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| | (g)    failing to out-license or divest ABT-518 to a third party from 2001 to the present; |
| | (h)    failing to out-license or divest ABT-594 to a third party from 2001 to the present; and |
| | (i)    exercising its discretion under the Agreement unreasonably, with improper motive, arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of the parties. |
| 42. | The Court concludes that Abbott's misrepresentations, omissions and breach of contract resulted in, or reasonably could have been expected to result in, a material adverse effect on the prospects or condition (including safety, efficacy, scientific viability or commercial viability) of the Research Program or any of the Program Compounds. |
| 43. | The Court concludes that John Hancock suffered actual harm as a result of Abbott's misrepresentations, omissions and breach of contract. |
| 44. | The Court concludes that, as a result of Abbott's misrepresentations, omissions and breach of contract, Abbott is obligated to compensate John Hancock for its resulting damages. |
| 45. | The Court concludes that, as a result of the willful and wanton nature of Abbott's misrepresentations, omissions and breach of contract, the imposition of punitive damages on Abbott in the amount of $ _____ is warranted. |
| | ***Indemnification by Abbott (Count III)*** |
| 46. | Count III of John Hancock's Complaint asserts a cause of action against Abbott for indemnification pursuant to the terms of the Agreement.  Section 12.6 of the Agreement provides, in relevant part, that "Abbott shall indemnify and hold John Hancock … harmless … from and against any Losses related to or arising out of, directly or indirectly … any breach by Abbott of its representations, warranties or obligations hereunder…." |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 47. | Compensable "Losses" are defined in Section 1.27 of the Agreement as "any claims, demands, liabilities, costs, damages, judgments, settlements and other reasonable expenses (including attorneys' fees)." |
| 48. | The Court concludes that John Hancock suffered compensable Losses as a result of Abbott's various misrepresentations, omissions and breach of contract. |
| 49. | The Court concludes that, as a result of Abbott's various misrepresentations, omissions and breach of contract, Abbott is obligated under Section 12.6 of the Agreement to indemnify John Hancock for its resulting Losses. |
| | ***Alternative Remedy of Rescission (Prayer (e))*** |
| 50. | Under Fed. R. Civ. P. 54(c), "[e]very [] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *See, e.g.*, U.S. v. Marin, 651 F.2d 24, 30-31 (1st Cir. 1981) (Rule 54(c) "has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved" (citations omitted)); In re Blinds to Go Share Purchase Litig., 443 F.3d 1, 8 (1st Cir. 2006) (although plaintiff did not explicitly request rescission, court upheld finding of such remedy because "in choosing among equitable remedies, a *nisi prius* court has the ability -- indeed, the duty -- to weigh all the relevant facts and circumstances and to craft appropriate relief on a case-by-case basis" (citation omitted)). |
| 51. | Fed. R. Civ. P. 54(c) authorizes the Court to rescind the Agreement if Hancock is entitled to such relief. |
| 52. | Rescission is an equitable remedy that involves the unwinding of a contract so as to return the contracting parties, to the extent possible, to the status quo ante. *See, e.g.*, Finke v. Woodard, 122 Ill.App.3d 911, 919, 462 N.E.2d 13, 19 (4th Dist. 1984) ("The purpose of a rescissionary award is to disaffirm the transaction of the parties and restore them to the status quo ante as it existed prior to the execution of the contract" (citation omitted)). The "termination" of a contract, on the other hand, ends the parties' contractual relationship without necessarily altering their existing conditions or status. *See, e.g.*, Wiley v. Mason, 224 B.R. 58, 71 (N.D. Ill. 1998) ("'rescission' amounts to the unmaking of a contract or an undoing of it from the beginning, and not merely a termination"), rev'd on other grounds, 237 B.R. 677 (N.D. Ill. 1999). |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 53. | Under Illinois law, rescission is an alternative and equitable remedy for fraud or breach of contract. *See* Home Savings Ass'n of Kansas City v. State Bank of Woodstock, 763 F.Supp. 292, 296 (N.D. Ill. 1991); Newton v. Aitken, 260 Ill.App.3d 717, 719, 633 N.E.2d 213, 216 (3d Dist. 1994) (court may award rescission where there is material breach or fraud). |
| 54. | Whether rescission is warranted in a particular case depends upon whether "the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." C3 Technologies, Inc. v. Fontana Machine & Engineering Co., 1992 WL 97712, at *4 (quotations and citations omitted); Trapkus v. Edstrom's Inc., 140 Ill.App.3d 720, 725, 489 N.E.2d 340, 345 (3d Dist. 1986). |
| 55. | The Court concludes that Abbott's misrepresentations, omissions, fraud and breach of contract in this matter were of such a nature and of such importance that the Agreement would not have been made without them. |
| 56. | Abbott waived the legal arguments that it asserts to John Hancock's prayer for rescission by voluntarily agreeing to withdraw its prior opposition, based on essentially identical grounds, to John Hancock's Motion to Amend its Complaint in December 2006. |
| 57. | A party that withdraws its opposition to an opposing party's motion and confirms its withdrawal when explicitly asked by the Court at oral proceedings "can be understood as waiving any objection." Lopez del Valle v. Gobierno de la Capital, 855 F. Supp. 34, 35 (D.P.R. 1994); *see also* Mountain Wireless, Inc. v. Cumulus Broadcasting, Inc., 2001 WL 40908, *1 (D. Me. Jan. 17, 2001) (by dropping previous assertion of misrepresentation in its reply memorandum to defendant's opposition, plaintiff waived argument). |
| 58. | John Hancock also did not engage in undue delay and is not precluded by the doctrine of laches from seeking rescission of the Agreement. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 59. | A defendant cannot defeat a rescission claim on grounds of undue delay when the defendant itself is responsible, in whole or in large part, for the alleged delay.  *See* Roda v. Berko, 401 Ill. 335, 342, 81 N.E.2d 912, 916 (Ill. 1948) ("[W]here there is an intentional and deliberate fraud, as appears from the allegations of the amended complaint in this case, it is not the privilege of the perpetrator of the fraud to interpose a defense that the one defrauded was not sufficiently careful to discover the fraud and prevent its accomplishment.  In such a case one cannot impute negligence as against his own deliberate fraud and say that the party defrauded gave him too much credit for honesty."); *see also* Evans v. Brooks, 124 P. 599, 603 (Okla. 1912) (delay of eight months after discovery of fraud not fatal to rescission claim when the delay was caused by defendant); Denny v. Guyton, 327 Mo. 1030, 1055, 40 S.W.2d 562, 571 (1931) (delay in bringing suit does not bar rescission when "the delay was caused by defendant's conduct"). |
| 60. | Sections 11.2 and 11.3 of the Agreement do not bar John Hancock from seeking or obtaining rescission of the Agreement as an alternative remedy at trial.  Even assuming, *arguendo*, that the language of these sections did limit available remedies for material misrepresentations, omissions and fraud, under Illinois law, exculpatory clauses for willful and wanton conduct are void as a matter of public policy.  *See, e.g.,* Kleinwort Benson N.A., Inc. v. Quantum Fin. Servs., Inc., 285 Ill.App.3d 201, 215-216, 673 N.E.2d 369, 379 (1st Dist. 1996) (individual citations omitted). |
| 61. | The doctrine of judicial estoppel does not preclude John Hancock from seeking or obtaining rescission of the Agreement as an alternative remedy at trial. |
| 62. | Judicial estoppel applies only when a party has "deliberately chang[ed] [the] positions" that it took from a previous action in order to gain some unfair "legal advantage" over a party in a subsequent proceeding.  *See* New Hampshire v. Maine, 532 U.S. 742, 749-750 (2001) (internal quotations and citations omitted); Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004); Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) (judicial estoppel applies when "intentional self-contradiction is being used as a means of obtaining unfair advantage..." (quotation marks omitted)).  John Hancock did not do so. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 63. | Illinois law requires that a party demonstrate that it actually has been prejudiced by an opposing party's purported delay in seeking rescission of a contract in order to bar rescission on that basis. *See, e.g.,* Renth v. Krausz, 219 Ill.App.3d 120, 121, 579 N.E.2d 11, 12 (5th Dist. 1991) (rescission of contract based upon allegation of laches requires demonstration that the claimant's "lack of due diligence has caused prejudice to an opponent"); Hay v. Albrecht, 169 Ill.App.3d 120, 121, 124, 523 N.E.2d 211, 213-214 (2d Dist. 1988) (holding in an action for rescission of an installment contract to purchase a farm that "the defense of laches is only applicable if there has been unreasonable delay in asserting a right coupled with prejudice to the opposing party as a result of the delay"); Bledsoe v. Carpenter, 163 Ill.App.3d 823, 826, 516 N.E.2d 1013, 1015 (3d Dist. 1987) (for alleged delay to bar rescission of a contract, it "must be such that, taken with other circumstances, it has caused prejudice to the defendant"). |
| 64. | Bare-bones claims of prejudice based upon a party's mere continued performance of contractual obligations fails to constitute the "serious prejudice" that is necessary to justify a finding of judicial estoppel from seeking rescission of contract. *See* Desjardins v. Van Buren Community Hosp., 37 F.3d 21, 23 (1st Cir. 1994) (rejecting plaintiff's judicial estoppel argument when the defendant's alleged change in position had not "been shown to have caused any serious prejudice to judicial proceedings or the position of the opposing party"); Time Warner Sports Merch. v. Chicagoland Processing Corp., 974 F.Supp. 1163, 1170 (N.D. Ill. 1997) (rejecting claim of prejudice based on continued performance of contract). |
| 65. | Continued performance under a contract does not constitute sufficient prejudice to bar rescission as a remedy. *See, id.* |
| 66. | Abbott has not suffered, and will not suffer, any actual prejudice as a result of John Hancock seeking and obtaining rescission of the Agreement as an alternative remedy at trial. |
| 67. | The Court may not and will not consider, in support of Abbott's claim that John Hancock is precluded from seeking or obtaining rescission of the Agreement, Abbott's allegations regarding the November 2003 settlement negotiations between the parties. Those settlement negotiations, and any and all statements made in the course of those settlement negotiations, may not be offered or admitted for any purpose in this proceeding pursuant to Fed. R. Evid. 408. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 68. | The Court concludes that, as a result of Abbott's misrepresentations, omissions, fraud and breach of contract in this matter, *John Hancock may elect to rescind* the Agreement and return *the parties to the status quo ante by requiring Abbott to refund to John Hancock* any and all Program Payments made *to Abbott* by Hancock, less any payments already received *from Abbott* by Hancock, plus interest and costs. |
| 69. | *If John Hancock elects to rescind the Agreement as permitted, Hancock nonetheless shall recover punitive damages from Abbott in the amount of $_____ due to the willful and wanton nature of Abbott's misrepresentations, omissions and breach of contract. See, e.g.,* Mehovic v. Mehovic, *133 N.C.App. 131, 136-137, 514 S.E.2d 730, 734 (N.C. 1999) (upholding award of punitive damages in conjunction with rescission remedy and stating, "[w]hile our courts have not specifically addressed the propriety of awarding punitive damages based upon the remedy of rescission, the modern trend contemplates no logical reason for permitting punitive damages for the tort of fraud and deceit in a law action, and foreclosing such damages for fraud and deceit in an equitable action.");* Mid-State Homes, Inc. v. Johnson, *294 Ala. 59, 66, 311 So.2d 312, 318 (Ala. 1975) (upholding award of punitive damages in conjunction with rescission remedy and stating, "[t]o allow [punitive damages] when a contract is affirmed, and not when there is a rescission, is illogical when the purposes of punitive damages are considered. The punitive and deterrent force of the law should be present in both types of cases since both arise from perpetration of fraud.");* cf. Cummings v. *Dusenberry, 129 Ill. App. 3d 338, 346, 472 N.E.2d 575, 581 (2 Dist. 1984) (where rescission was awarded, had fraud been found, plaintiffs would have been entitled to exemplary damages.* |
| | ***Abbott's Affirmative Defenses*** |
| 70. | Abbott has raised various affirmative defenses to John Hancock's claims in this action. Affirmative defenses must be plainly set forth in the defendant's answer, and the facts establishing the defenses must be plead by the defendant with the same degree of specificity as is required of a plaintiff alleging the essential elements of a cause of action. *See* Goldman v. Walco Tool & Eng. Co., 243 Ill.App.3d 981, 989, 614 N.E.2d 42, 48 (1st Dist. 1993), *appeal denied*, 152 Ill.2d 558, 622 N.E.2d 1204 (Ill. 1993). |
| 71. | Abbott's first affirmative defense asserts that John Hancock's Complaint fails to state a claim upon which relief may be granted. In order to succeed, such an affirmative defense must, at the minimum, fulfill the basic pleading requirements of the Federal Rules of Civil Procedure. *See* Bobbit v. Victorian House, Inc., 532 F.Supp. 734, 737 (N.D. Ill. 1982) (cited with approval by Heller Fin. Inc. v. Midwhey Power Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989)). |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 72. | An affirmative defense that the plaintiff has failed to state a claim upon which relief may be granted will be stricken if the defendant cannot prove any set of facts in support of the defense that defeats the complaint. *See* Builders Bank v. First Bank & Trust Co. of Illinois, 2004 WL 626827, at *2 (N.D. Ill. March 25, 2004). |
| 73. | Abbott has failed to introduce sufficient evidence to prevail on some or all of the elements of its affirmative defense that John Hancock's Complaint fails to state a claim upon which relief may be granted.   Accordingly, that defense is hereby rejected. |
| 74. | Abbott's second affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of waiver.  Under Illinois law, waiver is the express or implied intentional relinquishment of a known right. *See, e.g.,* Pantle v. Indus. Comm'n, 61 Ill.2d 365, 372, 335 N.E.2d 491, 496 (Ill. 1975). |
| 75. | Abbott has failed to introduce sufficient evidence to prevail on some or all of the elements of its affirmative defense that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of waiver.  Accordingly, that defense is hereby rejected. |
| 76. | Abbott's third affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of estoppel.  Under Illinois law, a defense of equitable estoppel requires: (1) words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) knowledge by the party against whom estoppel is asserting at the time the representations were made that the representations are false, or that the representation was made with gross negligence as to their truth; (3) the truth respecting the representations was unknown to the party asserting estoppel at the time the representations were made and when they were acted upon; (4) the party against whom estoppel is claimed must intend or reasonably expect that the representations or concealment would be acted upon by the party asserting estoppel or the public generally; (5) the party asserting estoppel must have relied upon the representation in good faith to its detriment; and (6) the party claiming the benefit of the estoppel would be prejudiced if the other party is permitted to deny the falsity of the misrepresentation or concealment. *See* Geddes v. Mill Creek Country Club, Inc., 196 Ill.2d 302, 313-314, 751 N.E.2d 1150, 1157 (Ill. 2001) (*citing* Vaughan v. Speaker, 126 Ill.2d 150, 162-163, 533 N.E.2d 885, 890 (Ill. 1988)). |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 77. | Abbott has failed to introduce sufficient evidence to prevail on some or all of the elements of its affirmative defense that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of estoppel. Accordingly, that defense is hereby rejected. |
| 78. | Abbott's fourth affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrines of laches and unclean hands. Under Illinois law, "a party asserting laches [as an affirmative defense] must prove two fundamental elements: (1) lack of due diligence by the party asserting a claim; and (2) prejudice to the party asserting laches." Negron v. City of Chicago, 376 Ill.App.3d 242, 247, 876 N.E.2d 148, 153 (1st Dist. 2007) (internal citations omitted). For the doctrine of laches to apply, a defendant must assert that the plaintiff had knowledge of his right but failed to assert it in a timely manner. Id. Further, "[a] reasonable excuse for delay in filing the petition will defeat the defense." Id. |
| 79. | A defendant asserting "unclean hands" as a defense must prove that the plaintiff is guilty of fraud or bad faith toward the defendant. See Beitner v. Marzahl, 354 Ill.App.3d 142, 150, 819 N.E.2d 1266, 1274 (2d Dist. 2004). "It is within the sound discretion of the trial court whether to apply the doctrine of unclean hands, and its application is not favored." Id. |
| 80. | Abbott has failed to introduce sufficient evidence to prevail on some or all of the elements of its affirmative defense that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrines of laches and unclean hands. Accordingly, that defense is hereby rejected. |
| 81. | Abbott's fifth affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of election of remedies. Under Illinois law, a party pursuing a claim for breach of contract simultaneously may seek both its actual damages and rescission of the underlying agreement as alternative remedies. See Quality Components Corporation v. Kel-Keef Enterprises, Inc., 316 Ill.App.3d 998, 1008-1011, 738 N.E.2d 524, 531-534 (1st Dist. 2000). |
| 82. | As a "general rule," Illinois confines the doctrine of election of remedies "to cases where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res judicata can be applied." Kel-Keef, 316 Ill.App.3d at 1008, 738 N.E.2d at 531. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 83. | *An election of remedies typically does not take place unless and until the claimant has prosecuted a remedial right to judgment. Kel-Keef, 316 Ill.App.3d at 1008, 738 N.E.2d at 532 (citations and quotations omitted). Until the plaintiff makes such an election, he or she may submit "both the legal and equitable claim[s] to the jury." Finke v. Woodard, 122 Ill.App.3d 911, 919 (4th Dist. 1984); see also First National Bank of Lake Park v. Gay, 694 So.2d 784, 786 (Fla. App. 1997) (holding that a plaintiff may seek dual remedies "even where remedies are mutually exclusive, [as] an election between such remedies can be made at any time prior to the entry of judgment. Although [the plaintiff] could recover only on one remedy, it had the right to await the outcome of the entire trial and elect its remedy at the end of trial.") (quotations omitted).* |
| 84. | *So long as an election is made prior to the entry of the judgment, the doctrine of election of remedies does not bar a plaintiff from electing its remedy after a verdict is granted. See, e.g., Genetti v. Caterpillar, Inc., 261 Neb. 98, 123, 621 N.W.2d 529, 547 (Neb. 2001) (holding "once a plaintiff receives verdicts under both theories of recovery, he or she must elect between them."); Wynfield Inns v. Edward Leroux Group, Inc., 896 F.2d 483, 488 (11th Cir. 1990) (holding that generally "an election between inconsistent remedies is made after a verdict is entered but prior to entry of judgment.").* |
| 85. | Abbott has failed to introduce sufficient evidence to prevail on some or all of the elements of its affirmative defense that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of election of remedies. Accordingly, that defense is hereby rejected. |
| 86. | Abbott's sixth affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of ratification. "A victim of fraud who accepts the benefits flowing from a contract for a considerable length of time may ratify the contract." Hofferkamp v. Brehm, 273 Ill.App.3d 263, 273, 652 N.E.2d 1381, 1389 (4th Dist. 1995). However, "ratification can be effected only when it appears that the party to be charged with ratification clearly evidences an intent to abide and be bound by the act, with full knowledge of the act." Id.; see also Guaranty Bank and Trust Co. v. Reyna, 201 N.E.2d 144, 151 (1st Dist. 1964). |
| 87. | Abbott has failed to introduce sufficient evidence to prevail on some or all of the elements of its affirmative defense that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of ratification. Accordingly, that defense is hereby rejected. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 88. | Abbott's seventh affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by the "doctrine of delay." Illinois courts do not recognize an affirmative defense of delay separate and apart from the defense of laches. As stated above, "a party asserting laches [as an affirmative defense under Illinois law] must prove two fundamental elements: (1) lack of due diligence by the party asserting a claim; and (2) prejudice to the party asserting laches." Negron, 376 Ill.App.3d at 247, 876 N.E.2d at 153 (internal citations omitted). For the doctrine of laches to apply, a defendant must assert that the plaintiff had knowledge of his right but failed to assert it in a timely manner. Id. Further, "[a] reasonable excuse for delay in filing the petition will defeat the defense." Id. |
| 89. | Abbott has failed to introduce sufficient evidence to prevail on some or all of the elements of its affirmative defense that John Hancock's claims and requests for relief are barred, in whole or in part, by the doctrine of delay (or laches). Accordingly, that defense is hereby rejected. |
| 90. | Abbott's eighth affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by the applicable statutes of limitation. Under Illinois law, the statute of limitations for a claim alleging breach of contract is ten (10) years. See 735 ILCS 5/13-206; Armstrong v. Guigler, 174 Ill.2d 281, 291, 673 N.E.2d 290, 295 (Ill. 1996) (Illinois statute of limitations for a breach of written contract claim is ten years). The statute of limitations for a claim asserting fraud is five (5) years. See ILCS 5/13-205; Thompson v. Howard, 32 Ill.App.3d 991, 996, 337 N.E.2d 94, 99 (3d Dist. 1975) (Illinois statute of limitations for fraud and tortious misrepresentation claims is five years). |
| 91. | Abbott has failed to introduce sufficient evidence to prevail on its affirmative defense that John Hancock's claims against Abbott are barred by the applicable statutes of limitation. Accordingly, that defense is hereby rejected. |
| 92. | Abbott's ninth affirmative defense asserts that John Hancock's claims and requests for relief are barred, in whole or in part, by Hancock's own alleged violations and breaches of the Agreement. |
| 93. | John Hancock has fulfilled all of its obligations under the Agreement. Accordingly, Abbott's affirmative defense that John Hancock's claims against Abbott are barred, in whole or in part, by Hancock's own alleged violations and breaches of the Agreement is hereby rejected. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 94. | Abbott's tenth affirmative defense asserts that some or all of the damages or other relief claimed by John Hancock are not recoverable as a matter of law. |
| 95. | John Hancock is seeking damages or other relief for breach of contract, fraud and indemnification.  In calculating damages for fraud and breach of contract claims, Illinois follows the "benefit of the bargain" approach.  *See* Giammanco, 253 Ill.App.3d at 759, 625 N.E.2d at 998 (fraud); Frank Horton, 356 F.2d at 491-492 (breach of contract). |
| 96. | Section 12.6 of the Agreement expressly provides, in relevant part, that "Abbott shall indemnify and hold John Hancock … harmless … from and against any Losses related to or arising out of, directly or indirectly … any breach by Abbott of its representations, warranties or obligations hereunder…."  Compensable "Losses" are defined in Section 1.27 of the Agreement as "any claims, demands, liabilities, costs, damages, judgments, settlements and other reasonable expenses (including attorneys' fees)." |
| 97. | Under Illinois law, "[a]bsolute certainty as to the amount of damage … is not required to justify a recovery.  It is only necessary that the evidence tend to establish a basis for the assessment of damages with a fair degree of probability."  De Koven Drug, 27 Ill.App.3d at 802, 327 N.E.2d at 380-381. |
| 98. | *In appropriate circumstances, actual damages may be awarded based on the probability of the injured party's lost chance of success. See, e.g. Miller v. Allstate Ins. Co., 573 So.2d 24, 29 (Fla. App. 3 Dist. 1990) (value of plaintiffs' opportunity or chance of success at the time of the breach was proper basis for a damages award); Wachtel v. Nat'l Alfalfa Journal Co., 176 N.W. 801, 803-4 (Iowa 1920) (contestant in a magazine contest recovered damages for lost chance to win when contest was discontinued, and jury was to consider her reasonable probability of success); Kansas City, M. & O. Ry. v Bell, 197 S.W. 322 at 323 (Tex. Civ. App. 1917) (damages for lost chance of winning prize money permitted based on the probability that the plaintiffs' hogs would have won a hog exhibition); RESTATEMENT (SECOND) OF CONTRACTS § 348 (1981); See generally, Melvin Aron Eisenberg, Probability and Chance in Contract Law, 45 UCLA L. Rev. 1005 (1998); Howard Ross Feldman, Comment, Chances As Protected Interests: Recovery for the Loss of a Chance and Increased Risk, 17 U. BALT. L. REV. 139 (1987); Note, Damages Contingent Upon Chance, 18 RUTGERS L. REV. 875 (1964).* |
| 99. | Abbott has failed to introduce sufficient evidence to prevail on its affirmative defense that some or all of the damages or other relief claimed by John Hancock are not recoverable as a matter of law.  Accordingly, that defense is hereby rejected. |

**JOHN HANCOCK V. ABBOTT (05-11150)**
**JOHN HANCOCK'S ANNOTATED PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW**

| PARAGRAPH NUMBER | TEXT OF PROPOSED CONCLUSION OF LAW |
|---|---|
| 100. | Abbott's eleventh affirmative defense asserts that John Hancock's claim for fraud is barred by the economic loss doctrine.  Under Illinois law, solely economic losses are generally not recoverable in tort actions in the absence of personal injury or property damage.  *See, e.g.,* Moorman Manuf. Co. v. Nat'l Tank Co., 91 Ill.2d 69, 88-89, 435 N.E.2d 443, 452 (Ill. 1982).  However, this rule does not apply "where the plaintiff's damages are the proximate result of a defendant's intentional, false representation (fraud)."  In re Illinois Bell Switching Station Litigation, 161 Ill.2d 233, 240-241, 641 N.E.2d 440, 443-444 (Ill. 1994). |
| 101. | Abbott has failed to introduce sufficient evidence to prevail on its affirmative defense that John Hancock's claim for fraud is barred by the economic loss doctrine.  Accordingly, that defense is hereby rejected. |
| 102. | Judgment shall enter in favor of plaintiffs John Hancock, JHVL, and Manulife against defendant Abbott Labs in the amount of $ _____. |

4324753v6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 5, 2008.

<u>*/s/Richard C. Abati*</u>
Richard C. Abati