## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and MANULIFE INSURANCE COMPANY (f/k/a INVESTORS PARTNER INSURANCE COMPANY),<br><br>     Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>     Defendants. | CIVIL ACTION NO. 05-11150-DPW<br>Hon. Judge Douglas P. Woodlock |

### CROSS-REFERENCE OF ABBOTT'S POST-TRIAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW TO PLAINTIFFS' ANNOTATED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant Abbott Laboratories ("Abbott") respectfully submits this Cross-Reference of Abbott's Post-Trial Proposed Findings of Fact and Conclusions of Law to Plaintiff's Annotated Proposed Findings of Fact and Conclusions of Law.  A cross-reference chart for proposed findings of fact is attached hereto as Exhibit A and a cross-reference chart for proposed conclusions of law is attached hereto as Exhibit B.  In most cases, responses to Hancock's proposed findings and conclusions are located in the corresponding paragraphs of Abbott's proposed findings and conclusions.  In some cases, however, responsive information is located in non-corresponding paragraphs (in part due to Hancock's consolidation of two formerly separate sets of proposed findings and conclusions and insertion of new paragraphs).  Thus, the attached charts are designed to assist the Court in locating responsive findings and conclusions.

In addition, the charts include a small number of supplemental findings and conclusions in response to new findings and conclusions that were proposed by Hancock for the first time in its April 23, 2008 submission. Under the post-trial schedule, Abbott did not have an opportunity to respond to Hancock's new proposed findings and conclusions, other than underlining text to indicate that a finding or conclusion is in dispute or bracketing the text to indicate an objection. In most instances, no supplemental response is necessary because the new findings and conclusions are fully addressed by Abbott's original proposed findings and conclusions. In the small number of instances where Abbott believes a supplemental response is appropriate, however, Abbott has included its supplemental response in the final column of the attached cross-reference charts.

Dated:  May 27, 2008

ABBOTT LABORATORIES

By its attorneys

/s/ Eric J. Lorenzini
Eric J. Lorenzini

Jeffrey I. Weinberger (Admitted Pro Hac Vice)
Gregory D. Phillips (Admitted Pro Hac Vice)
Eric J. Lorenzini (Admitted Pro Hac Vice)
Ozge Guzelsu (Admitted Pro Hac Vice)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071
(213) 683-9100

and

Michael S. D'Orsi
Peter E. Gelhaar (BBO #188310)
Michael S. D'Orsi (BBO #566960)
DONNELLY, CONROY & GELHAAR LLP
1 Beacon St., 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880
peg@dcglaw.com
msd@dcglaw.com

*Counsel for Abbott Laboratories*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 27, 2008.

Date: May 27, 2008.

_____ /s/ Eric J. Lorenzini _____

## Exhibit A:

**CROSS-REFERENCE CHART FOR**
**PROPOSED FINDINGS OF FACT**

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| *Background Facts* | | | |
| 1 | No Additional or Substitute Findings | | |
| 2 | No Additional or Substitute Findings | | |
| 3 | No Additional or Substitute Findings | | |
| 4 | No Additional or Substitute Findings | | |
| 5 | No Additional or Substitute Findings | | |
| 6 | No Additional or Substitute Findings | | |
| 7 | No Additional or Substitute Findings | | |
| *The Negotiation of the Research Funding Agreement* | | | |
| 8 | No Additional or Substitute Findings | | |
| 9 | No Additional or Substitute | | |

---

[1] Unless otherwise noted, references are to paragraph numbers in the Proposed Findings of Fact section of Abbott's Post-Trial Add'l & Subs. Proposed Findings of Fact & Conclusions of Law, filed May 5, 2008.

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | Findings | | |
| 10 | 10 | | |
| 11 | 11 | | |
| 12 | 12 | | |
| 13 | 13 | | |
| 14 | 14 | | |
| 15 | No Additional or Substitute Findings | | |
| 16 | No Additional or Substitute Findings | | |
| 17 | 17 | | |
| 18 | 18 | | |
| 19 | 19 | | |
| 20 | 20 | | |
| 21 | 21 | | |
| 22 | 22 | | |
| 23 | 23 | | |
| 24 | 24 | | |
| 25 | 25 | | |
| 26 | 26 | | |
| 27 | 27 | | |
| 28 | No Additional or Substitute Findings | | |
| 29 | 29 | | |
| 30 | 30 | | |
| 31 | 31 | | |
| 32 | 32 | | |
| 33 | No Additional or Substitute Findings | | |

2

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 34 | 34 | | |
| 35 | 35 | | |
| 36 | 36 | | |
| 37 | 37 | | |
| 38 | 38 | | |
| 39 | 39 | | |
| *Abbott's Initial Portfolio Prioritization Review* | | | |
| 40 | 40 | | |
| 41 | 41 | | |
| 42 | 42 | | |
| 43 | 43 | | |
| 44 | 44 | | |
| 45 | 45 | | |
| 46 | No Additional or Substitute Findings | | |
| 47 | 47, 72(c) 98(s)-(u) | | |
| 48 | 48 | | |
| 49 | 49 | | |
| *The Final Agreement* | | | |
| 50 | No Additional or Substitute Findings | | |
| 51 | No Additional or Substitute Findings | | |
| 52 | 52 | | |
| 53 | 53 | | |

3

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 54 | No Additional or Substitute Findings | | |
| 55 | 55, 57 | | |
| 56 | 56, 57 | | |
| 57 | 55, 57 | | |
| 58 | 58, 85-86, 178 | | |
| 59 | 59 | | |
| 60 | 32, 60 | | |
| 61 | No Additional or Substitute Findings | | |
| 62 | 62 | | |
| 63 | 63 | | |
| *Hancock's Claim Regarding Alleged Misrepresentation of the Actual Status and Prospects of the Program Compounds as of the Date of the Agreement* | | | |
| 64 | 64 | | |
| 65 | 65 | | |
| *ABT-518* | | | |
| 66 | 66 | | |
| 67 | No Additional or Substitute Findings | | |
| 68 | 68 | | |
| 68(a) | 68, 70 | | |
| 68(b) | 68, 70 | | |
| 68(c) | 68, 70-71 | | |
| 69 | 68-69, 72(a) | | |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 70 | 68, 70 | | |
| 71 | 71 | | |
| 72 | 72 | | |
| 72(a) | 72(a) | | |
| 72(b) | 72(b) | | |
| 72(c) | 72(c) | | |
| 72(d) | 72(d) | | |
| 72(e) | 72(e) | | |
| 72(f) | 72(f)-(g) | | |
| 72(g) | 72(f)-(g) | | |
| 73 | 73 | | |
| 74 | 74 | | |
| 75 | 72(b)-(g), 75 | | |
| 76 | 72(b)-(g), 76-79 | | |
| 77 | 76-79 | | |
| 78 | 78 | *Abbott's decision also was memorialized in an "Integration Plan Presentation by the R&D Team" that was prepared by McKinsey and used at an Abbott R&D Steering Committee meeting on or about May 25, 2001.* | The "Integration Plan Presentation" does not memorialize a decision to terminate ABT-518 on or about May 25, 2001. Ex. 199. The document, prepared by McKinsey, reflects that McKinsey was calculating potential savings *if* ABT-518 or other compounds *were to be terminated* by June 1, 2001. Ex. 199 at 8; Leonard Tr. 987:2-989:15; Hopfield Depo. 209:7-210:6. If the document |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | was intended to reflect decisions, it contains numerous inaccuracies.  Leonard Tr. 904:1-911:21. |
| 79 | 79 | | |
| 80 | 80 | | |
| 81 | 81 | | |
| 82 | 81-82 | | |
| 83 | 83 | | |
| 84 | 84-86 | | |
| 85 | 84-86 | | |
| 86 | 84-86 | | |
| 87 | 87 | | |
| 88 | 88 | | |
| 89 | 89 | | |
| 90 | 90 | | |
| 91 | 91 | | |
| | *ABT-594* | | |
| 92 | 92 | | |
| 93 | No Additional or Substitute Findings | | |
| 94 | No Additional or Substitute Findings | | |
| 95 | 95 | | |
| 95(a) | 95 | | |
| 95(b) | 95 | | |
| 95(c) | 95 | | |

6

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 95(d) | 95 | | |
| 95(e) | 95 | | |
| 95(f) | 95, 98(a), 98(r) | | |
| 96 | 96 | | |
| 97 | 95, 97 | | |
| 98 | 98 | | |
| 98(a) | 98(a), (c), (d), (f), (j) | | |
| 98(b) | 98(b) | | |
| 98(c) | 98(c), (d), (f), (j) | | |
| 98(d) | 98(c), (d), (f), (j) | | |
| 98(e) | 98(e), (j), (s) | | |
| 98(f) | 98(f), 98(j), (c), (d) | *It was a typical practice within Abbott to use blinded clinical data for the purpose of making preliminary assessments about compounds under development.* | Blinded data was not used by Abbott to make preliminary assessments about compounds under development.  9/26/06 McCarthy Depo. 189:23-190:10; Leonard Aff. ¶¶ 46, 50, 52-53; Leiden Aff. ¶¶ 29-31; Rodda Aff. ¶¶ 51-52.  Blinded data is reviewed by Abbott to do safety and medical checks. Meyer Tr. 629:21-632:3 ("blinded data is used to evaluate safety, which is an ongoing requirement of all pharmaceutical companies in drug development"); Rodda Aff. ¶ 48. |
| 98(g) | 98(g) | | |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 98(h) | 98(h) | | |
| 98(i) | 98(i) | | |
| 98(j) | 98(h), (j) | | |
| 98(k) | 98(h) - (k) | | |
| 98(l) | 98(h)-(n) | | |
| 98(m) | 98(m) | | |
| 98(n) | 98(n) | | |
| 98(o) | 98(o), (s) | Abbott significantly reduced its planned spending on ABT-594 for Calendar Year 2001 *on the assumption that it would be making a "No Go" decision on ABT-594 in the second quarter of 2001.* | The 2001 Plan Final Reference Package includes the 2001 Plan budget for ABT-594 as of March 2001. Ex. 132 at p. 50. The footnote referred to by Hancock does not reflect any assumption by Abbott that it would be making a "No Go" decision regarding ABT-594 in 2001; it only signifies that the 2001 Plan provided for funding until the "Go/ No Go" milestone.  The same document notes that there is a "Medium" probability of a "Go" decision, in which event there would be an additional $9.8 million in expenditures. *Id.,* p. 28; *see also* Leonard Tr. 1002:16-1004:15 ("It's if there were a No-Go decision, then, this is what the total spending would |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | be."). ABT-594 was "milestone funded" from the July 2001 "Go/No Go" milestone forward. Ex. 791 at ABBT112987.UR; Ex. 132 at 28; Ex. 620 at p. 13; Leonard Tr. 1002:16-1004:15. |
| 98(p) | 98(p) | | |
| 98(q) | 98(j), (q) | | |
| 98(r) | 98(a), (j), (r) | *By February 2001, Abbott knew from blinded data obtained from its Phase IIb clinical trial of ABT-594 that the drop-out rate among subjects in that trial was almost 50%, with moderate-to-severe nausea, vomiting and/or dizziness reported as the principal reasons for the observed early terminations. Abbott also knew, or should have known, from the available data that many premature terminations occurred within the first few days of treatment and that the rate of premature terminations was fairly constant as some participants received higher doses, which* | The document relied on by Hancock does not indicate that nausea, vomiting, and/or dizziness were the principal reasons for the early terminations. Ex. 101. The document notes there was a termination rate of 49% (132 early terminations out of 269 patients randomized), but that included drop-outs unrelated to adverse events. *Id.* at ABBT238330, ABBT238332-33. The chart listing available information regarding the early terminations (the chart includes 104 of the 132 patients who dropped out), indicates that less than half of those patients (49) experienced nausea, vomiting |

9

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | *were strong indications that the tolerance issues observed among subjects in the trial likely were drug-related, not dose-related.* | or dizziness (including, for the sake of this analysis, "GI problems", "stomach ache", and "lightheadedness"). *Id.*. at ABBT238332-33 (note that although "95" is listed in the total row of the chart, the chart actually lists 104 patients); Gold Tr. 305:13-313:6. In other words, of the 269 patients randomized in the study, only 18% (49 out of 269) are identified on the chart as having experienced nausea, vomiting, or dizziness and dropped out of the study. *Id.* at ABBT238330, ABBT238332-33. Dr. Gold admitted that he exaggerated when he testified in his affidavit, based on this document, that half of the patients in the M99-114 clinical trial dropped out because of nausea, vomiting, and/or dizziness). Gold Tr. 305:13-313:6. Moreover, there is no indication that the adverse events experienced by the patients were "moderate or |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | severe" in nature. Ex. 101. To the contrary, the clinical study report for the M99-114 clinical trial noted that "[m]ost adverse events were mild or moderate in severity." Ex. 105 at p. vi.<br><br>Furthermore, Abbott could not draw conclusions regarding whether the adverse events were drug-related or dose-related based on the number of drop-outs in the first few days or based on other information regarding timing of drop-outs. Because of the nature of the compound, Abbott knew that some patients would experience adverse events in the first few days, but that for many of these patients the adverse events would dissipate or disappear after the first 3-4 days. Ex. 257 (letter to investigators in M99-114 trial stating that patients "may experience nausea, vomiting and/or dizziness at the beginning of the study" but |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | many patients "may go on to develop tolerance to the adverse events over the first week," that "vomiting may resolve," and "more mild adverse events (e.g. mild nausea and dizziness) may also improve over the first week of dosing)"; Ex. 16 at 8-9 (Feb. 8, 2001 M99-114 protocol noting that in previous trials "subjects generally tolerated ABT-594 better . . . after 3-4 days of repeated dosing (the period in which most adverse events occur)" and "ABT-594 appeared to be tolerated better after the first week of therapy."); Leonard Depo. 142:16-143:8.  In addition, the rates of nausea, vomiting and dizziness experienced by patients in the first two days of the study (when patients were receiving a maximum dose of 75 micrograms BID) were consistent with the rates experienced by patients in the earlier Phase IIa trial at 75 |

12

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | micrograms BID, which were reported to Hancock in the Descriptive Memorandum. Ex. 257 (letter to investigators noting that approximately 12% of patients have nausea, 9% have dizziness, and 4% have vomiting on Day 1 or 2 of the study"); Ex. 360 at 12 (noting that titration scheme of M99-114 trial provides for dosing at 75 micrograms BID during first two days of trial); Ex. 32 at JH008171 (Descriptive Memorandum reporting that in Phase IIa study in which patients were dosed at 75 micrograms BID, 15% of patients reported nausea, 13% reported headache, 7% reported dizziness, and 5% reported vomiting). Therefore, drop-outs during the first few days were not unexpected and the titration schedule of the clinical trial and timing of drop-outs did not provide reliable information regarding whether the adverse events were related |

13

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | to all doses of the drug. *Id.*; Leonard Depo. 142:16-143:8 |
| 98(s) | 98(r)-(t) | | |
| 98(t) | 98(s)-(t) | | |
| 98(u) | 98(u) | | |
| 98(v) | 48, 49, 98(s)-(u), | | |
| 99 | 98(u), 99 | | |
| 100 | 100 | | |
| 101 | 101 | | |
| 102 | 102 | | |
| 103 | 103 | | |
| 104 | 104 | | |
| 105 | 105 | | |
| 106 | 106 | | |
| | | *ABT-773* | |
| 107 | 107 | | |
| 108 | No Additional or Substitute Findings | | |
| 109 | 109, 112 | | |
| 109(a) | 109, 112 | | |
| 109(b) | 109, 112 | | |
| 109(c) | 109 | | |
| 110 | No Additional or Substitute Findings | | |
| 111 | 111 | | |
| 112 | 109, 112 | | |
| 113 | 113, 115(c), (d) | | |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 114 | 109, 114, 115(e)-(f) | | |
| 115 | 115 | | |
| 115(a) | 107, 115(a)-(b), | *For example, by Spring 2001, Dr. Stanley Bukofzer, who led Abbott's development of ABT-773, made a presentation regarding liver function data acknowledging that: (1) all pre-clinical trials (completed before the RFA was signed) demonstrated elevated liver functions in animals; (2) clinical trials then underway in human subjects showed "several patients with elevated" liver functions, – greater than the FDA would accept; and (3) that ABT-773's liver function data was worse than "Clari," one of Abbott's competitors. Based on this data, Abbott estimated the probability that "liver function data will result in the termination of the program" at 30%. Abbott had previously estimated that probability at 40%.* | The slide presentation relied upon by Hancock was not drafted or presented by Dr. Bukofzer, and, as evidenced by the numerous handwritten notes, it was a working draft. *See, e.g.*, Ex. 211 at ABBT116115.UR, ABBT116121-22.UR (examples of pages with handwritten notes); Bukofzer Tr. 1094:24-1095:10, 1095:22-1096:20, 1099:3-5.2:12-1104:8.<br><br>More important, the draft is dated May 30, 2001, two and a half months after the March 13, 2001 execution of the RFA, thus does not provide evidence of the state of Abbott's knowledge as of date of the RFA. Ex. 211 at ABBT116121.UR. For example, there is no evidence that data regarding a 4-9% occurrence of elevated liver function was available to |

15

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | Abbott as of March 13, 2001. Ex. 211 at ABBT116121.UR; Bukofzer Tr. 1094:20-1104:8, 1110:23-1112:4. To the contrary, the record indicates that prior to the date of the RFA, Abbott did not have any such data. *See, e.g.*, Ex. 587 at 1 (noting that in repeat of Japanese study, "[n]o increases were seen in ALS/ALT, with all values within the normal range. Based on these results, ABT-773 is clear in terms of hepatotoxicity profile"); *see also* Add'l & Subs. Findings, ¶ 115(a). Similarly, prior to the RFA (and, significantly, prior to the Ketek advisory) Abbott did not have concerns regarding pre-clinical liver function test results or have data indicating that "LFT data are currently worse than Clari" (a/k/a Biaxin). *Compare* Ex. 211 at ABBT116115.UR *with* Ex. 622 at 1-2 (March 7-9, 2001 portfolio review presentation does not mention |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | liver function in comparison of ABT-773 with Biaxin and notes that pre-clinical tests in monkeys at highest dose "only showed mild LFT elevation"); *see also* Ex. 631 at ABBT120473.UR.<br><br>Similarly, there is no evidence that either the handwritten or typewritten estimates of the probability of termination due to liver function data that are recorded on the May 30, 2001 draft slide (30% and 40%) are remotely reflective of Abbott's probability estimates as of the date of the agreement.  To the contrary, as of the date of the agreement, Abbott's overall estimate of the probability of termination *due to any and all factors* (not merely liver safety data), was only 28%. Hendricks Aff., ¶¶ 9-15; Ex. 591 at p. 21 (72% probability of success); Ex. 800 at p. 1 (same); Ex. 801 at p. A3 (same).  As of the time of the |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | agreement, if Abbott had estimated the probability of termination based solely on liver function data was anywhere near 30% or 40%, the overall estimated probability of termination would have been much higher than 28%. |
| 115(b) | 115(a)-(b) | | |
| 115(c) | 115(c)-(d) | | |
| 115(d) | 109, 112-113, 115(c)-(d), | | |
| 115(e) | 109, 114, 115(e)-(f), | | |
| 115(f) | 109, 114, 115(e)-(f) | | |
| 116 | 116, 117 | | |
| 117 | 116, 117 | | |
| 117(a) | 116, 117 | | |
| 117(b) | 116, 117 | | |
| 117(c) | 116, 117 | | |
| 118 | 118, 124 | | |
| 119 | 117, 119 | In February 2002, Abbott developed *an official* "Communications Plan" to convey the news of its decision concerning ABT-773 *to various internal and external groups, including Abbott employees, the medical community, and regulatory* | The "Communications Plan" created by Abbott accurately reflected the state of the ABT-773 program as of February 2002. Ex. 175. The Communications Plan noted that the "drug has generated no specific unexpected safety issues." *Id.* at ABBT229759. |

18

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | *agencies. Abbott's Communications Plan falsely stated, in part, that Abbott had encountered "no specific unexpected safety issues" in the development of ABT-773.* | The Communications Plan also noted that "it is felt that there is no data generated to date that would exclude ABT-773 from obtaining regulatory approval, but the cost and timeline to achieve that have changed." *Id.* at ABBT229761. The information in the Communications Plan reflects the same information that Abbott was generating internally regarding ABT-773. Ex. 676. After the four unexpected elevated liver function test results in October 2001, Abbott did a complete analysis of all liver function tests in its entire database which revealed no significant case of liver toxicity. Ex. 676 at ABBT220671 (January 2002 Presentation to Abbott CEO). Based on that analysis, Abbott concluded that ABT-773 did not have specific safety issues. *Id.* However, given the increased hurdle with regard to safety issues created by the |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | Ketek advisory, Abbott recognized that "a finding of a single case in the future could drive the database requirement of up to 10,000 patients." *Id.* The Communications Plan drafted by Abbott in February 2002 accurately reflected the analysis of the safety data for ABT-773 as well as the hurdle created by the Ketek advisory. Ex. 175; Ex. 676. |
| 120 | 120 | | |
| 121 | 121 | | |
| 122 | 122 | | |
| 123 | No Additional or Substitute Findings | | |
| 124 | 124 | | |
| 125 | 125 | | |
| 126 | 126 | | |
| 127 | 127 | | |
| 128 | 128 | | |
| 129 | 129 | | |
| 130 | 130 | | |
| *Hancock's Claim Regarding Abbott's Projected Spending* | | | |
| 131 | 131-133 | | |
| 132 | 132 | | |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 133 | 131-134 | | |
| 134 | 131-135 | | |
| 135 | 131-135, 140 | *It is not possible to determine from examining Abbott's 2002 ARP whether Abbott's* intended and reasonably expected spending on Program Related Costs over the four-year Program Term, as of the end of 2001, *exceeded* $614 million. | In its 2002 ARP, Abbott provided its 2002 budget and 2003-04 projected costs for the Program Compounds, which reasonably demonstrated its "intent and reasonable expectation" to spend in excess of $614 million.  Add'l & Subs. Findings 131-135, 140.  Even if the RFA had required Abbott to report its risk-adjusted expected spending, Abbott's risk-adjusted expected spending was well-above $614 million.  Tucker Aff., ¶¶ 90-91. Hancock introduced no evidence that Abbott's risk-adjusted expected spending was less than $614 million. Add'l & Subs. Findings, ¶ 140. Mr. Blewitt merely offered the conclusory and unsupported testimony that "[h]ad Abbott informed me and others of its 'intended and reasonably expected' spending plans . . . I believe that John Hancock |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | *quite possibly* would not have been required to make, and I believe Hancock *quite possibly* would not have made, its Second Program Payment in the amount of $54,000,000 in January 2003." Blewitt Aff., ¶ 124 (emphasis added). |
| 136 | 136 | | |
| 137 | 137 | | |
| 138 | 138 | | |
| 139 | 139 | | |
| 140 | 131-134, 140 | | |
| *Hancock's Section 3.3(b) (Aggregate Carryover Amount) Claim* | | | |
| 141 | 141, 147 | | |
| 142 | No Additional or Substitute Findings | | |
| 143 | No Additional or Substitute Findings | | |
| 144 | No Additional or Substitute Findings | | |
| 145 | 141-147 | | |
| 146 | 146 | Abbott's actual spending on Program Related Costs over the four-year Program Term *is unknown. The actual spending numbers contained in the* | Abbott's actual spending on Program Compounds during the Program Term (March 13, 2001 to December 31, 2004) can reasonably be determined |

22

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | *various APPs that Abbott has provided to John Hancock over the course of the Research Program are inaccurate because they include spending pre-dating the commencement of the Program Term on March 13, 2001. The revised spending numbers that Abbott provided in its Amended Responses and Objections to John Hancock's Second Set of Interrogatories, served on August 3, 2007, also are inaccurate because they too include charges that pre-date the commencement of the Program Term. The most accurate estimate of Abbott's actual spending on Program Related Costs over the four-year Program Term is $442.0 million, which reflects Abbott's historically-reported spending on Program Related Costs (including all milestone and management fees paid by Abbott to John Hancock, which qualify as Program Related Costs under Section 1.43 of the* | based on the project expense reports generated by Abbott in the ordinary course of business, which list expenditures by month. Pursuant to a stipulation of the parties, Abbott provided Hancock with Amended Interrogatory Responses attaching its 2001 project expense reports, and concurrently produced its 2002 to 2005 project expense reports. Stipulation (Dkt. 151); Ex. 329 at Ex. A; Ex. 786, 848, 863, 864, 865. The project expense reports are routinely generated and relied upon by Abbott in the ordinary course of business and constitute the most accurate record of Abbott's actual monthly and annual expenditures on programs. Stiles Aff., ¶¶ 8-9; 1444:20-25. Both parties' expert witnesses used the project expenditure reports to calculate March 13, 2001 to December 31, 2004 spending (calculating March 13-31, 2001 |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | *Agreement), adjusted to exclude spending pre-dating the commencement of the Program Term on March 13, 2001.* | expenditures on a pro rata basis). Friedman, ¶ 65, Table 18 & Ex. 208 (calculation of $456.2 mill.); Ex. 900 (Mr. Tucker's calculation of $456.3 mill.) |
| 147 | 146-147 | | |
| 148 | 146, 148 | | |
| 149 | 149 | | |
| 150 | 150 | | |
| 151 | 151 | | |
| 152 | 152 | | |
| 153 | 141-153 | | |
| 154 | 154 | | |
| *Hancock's Audit Claim* | | | |
| 155 | 155 | | |
| 156 | 156 | | |
| 157 | 157 | | |
| 158 | 157-158 | | |
| 159 | 159 | | |
| 160 | 160 | | |
| 160(a) | 160(a) | | |
| 160(b) | 160(b) | | |
| 160(c) | 160(c), 163 | | |
| 160(d) | 160(d)-(f) | | |
| 160(e) | 160(d)-(f) | | |
| 160(f) | 160(d)-(f) | | |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 160(g) | 160(g) | | |
| 160(h) | 160(g)-(h) | | |
| 160(i) | 160(i) | | |
| 160(j) | 160(b), 160(j) | | |
| 160(k) | 160(k), 165 | | |
| 160(l) | 160(l) | | |
| 160(m) | 160(m) | | |
| 160(n) | 160(n) | | |
| 161 | 156-161 | | |
| 162 | 162, 163 | | |
| 163 | 160(c), 163 | | |
| 164 | 164 | | |
| 165 | 156-165 | | |
| 166 | 164, 166 | | |
| *Hancock's Out-licensing Claim* | | | |
| 167 | 167 | | |
| 168 | No Additional or Substitute Findings | | |
| 169 | 169 | | |
| 170 | 170 | | |
| 171 | No Additional or Substitute Findings | | |
| 172 | 172 | | |
| 173 | No Additional or Substitute Findings | | |
| 174 | No Additional or Substitute Findings | | |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 175 | No Additional or Substitute Findings | | |
| 176 | 176-177 | | |
| 177 | 169-170, 176-177 | | |
| *Hancock's Damage Claim* | | | |
| 178 | 178 | | |
| 179 | 179 | | |
| 180 | 180 | | |
| 181 | 181 | | |
| 182 | 182 | | |
| 183 | 183 | | |
| 184 | 179 | *Because it represents a fair compromise between the potential "High Case" and "Low Case" scenarios, Mr. Friedman's "Base Case" analysis is a more reasonable estimate of the likely outcome of events but for Abbott's violations and misconduct.* | Mr. Friedman's "Base Case" and "Low Case" analyses both fail to calculate damages with reasonable certainty, fail to establish damage causation, and are unduly speculative calculations of "lost profits" from new products. Add'l & Subs. Findings, 179. Furthermore, even if Mr. Friedman's methodology was proper, there is no evidence that the Base Case is more reasonable. Mr. Friedman never calculated damages based on the "High Case" and |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | never expressed an opinion regarding whether the "Base Case" or the "Low Case" was more reasonable.  Friedman, ¶ 23; Ex. 208 at 7-10.  To the contrary, Mr. Friedman acknowledged that the Base Case does not account for all risk factors.  Friedman Tr. 794:10-797:9. |
| 185 | 183 | | |
| 186 | 184 | | |
| 187 | 166, 185 | | |
| 188 | 177, 186 | As a result of Abbott's breach of contract with respect to its failure to out-license or divest ABT-518 to a third party, Hancock has suffered actual monetary damages having a present value *of between $5-24 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violation.* | Neither Mr. Friedman nor Hancock ever offered any evidence regarding the amount of royalties or milestone payments, if any, Hancock would have received if Abbott successfully outlicensed or sold ABT-518 after termination of the compound.  Friedman Aff., ¶ 80; Friedman Tr. 804:1-8; Ex. 208 (Mr. Friedman's expert report includes no calculation of damages from alleged breach of the out-licensing provisions of the RFA); Blewitt Aff., ¶¶ 143-150 (Mr. Blewitt's |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | testimony merely states that because Abbott has not out-licensed or divested itself of ABT-518, Hancock has not received royalties or milestone payments, and does not include any allegation or evidence regarding the amount of payments that Hancock would have received); Ex. 743 at 7-8 (Hancock's response to interrogatory No. 20, which asked Hancock to "state the basis" for its allegation that Abbott suffered monetary damages from Abbott's failure to out-license or divest ABT-518, merely makes the conclusory allegation that Hancock suffered unspecified lost royalties and other payments); L.R.. 26.5(c)(8) (defining term "state the basis" to require detailed statement of all facts that form the basis of the claim).  As purported support for its new proposed finding of $5-24 million in damages, which was asserted |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | for the first time in its April 23, 2008 filing, Hancock inexplicably cites to Mr. Friedman's opinion regarding the lost profits due to the alleged misrepresentations, which is based on an entirely separate and unrelated analysis. |
| 189 | 187 | As a result of Abbott's breach of contract with respect to its failure to out-license or divest ABT-594 to a third party, Hancock has suffered actual monetary damages having a present value of *between $44-132 million, depending upon whether Mr. Friedman's "Low Case" analysis or his "Base Case" analysis is found to be a more reasonable estimate of the likely outcome of events but for Abbott's violation.* | Neither Mr. Friedman nor Hancock ever offered any evidence regarding the amount of royalties or milestone payments, if any, Hancock would have received if Abbott successfully outlicensed or sold ABT-594 after termination of the compound. Friedman Aff., ¶ 80; Friedman Tr. 804:1-8; Ex. 208 (Mr. Friedman's expert report includes no calculation of alleged damages from alleged breach of the out-licensing provisions of the RFA); Blewitt Aff., ¶¶ 143-150 (Mr. Blewitt's testimony merely states that because Abbott has not out-licensed or divested itself of ABT-594, Hancock has not received |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | royalties or milestone payments, and does not include any allegation or evidence regarding the amount of payments that Hancock would have received); Ex. 743 at 7-8 (Hancock's response to interrogatory No. 20, which asked Hancock to "state the basis" for its allegation that Abbott suffered monetary damages from Abbott's failure to out-license or divest ABT-594, merely makes the conclusory allegation that Hancock suffered unspecified lost royalties and other payments); L.R.. 26.5(c)(8) (defining term "state the basis" to require detailed statement of all facts that form the basis of the claim).  As purported support for its new proposed finding of $44-132 million in damages, which was asserted for the first time in its April 23, 2008 filing, Hancock inexplicably cites to Mr. Friedman's opinion regarding |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | | | the lost profits due to the alleged misrepresentations, which is based on an entirely separate and unrelated analysis. |
| 190 | 180-189 | | |
| 191 | 189 | | |
| 192 | 39-40; Abbott's Post-Trial Supplemental Findings & Conclusions, filed May 5, 2008 (Dkt. No. 390) ("Supp. Findings & Concl.") 1-64 | | |
| 193 | Conclusions of Law section of Abbott's Post-Trial Add'l & Subs. Findings of Fact & Concl. of Law, 39-40; Supp. Findings & Concl. 1-64 | | |
| 194 | 188 | | |
| 195 | 188 | | |
| 196 | 178-188 | | |
| *Hancock's Rescission Claim* | | | |
| 197 | Supp. Findings & Concl. 2-5 | | |
| 198 | Supp. Findings & Concl. 6-7, 73-75, 100-101 | | |
| 199 | Supp. Findings & Concl. 73-75, 100-101 | | |
| 200 | Supp. Findings & Concl. 73-75, 100-101 | | |

31

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| 201 | Supp. Findings & Concl. 10 | | |
| 202 | 155-65; Supp. Findings & Concl. 11-14 | | |
| 203 | 155-65; Supp. Findings & Concl. 11-14 | | |
| 204 | 155-65; Supp. Findings & Concl. 11-14 | | |
| 205 | 155-65; Supp. Findings & Concl. 11-14 | | |
| 206 | Supp. Findings & Concl. 15-21, 92 | | |
| 207 | Supp. Findings & Concl. 8-9, 35-40, 50 | | |
| 208 | Supp. Findings & Concl. 41-47, 51-52 | | |
| 209 | Supp. Findings & Concl. 51 | | |
| 210 | Supp. Findings & Concl. 52 | | |
| 211 | Supp. Findings & Concl. 53-58, 102 | | |
| 212 | Supp. Findings & Concl. 103 | | |
| 213 | 163; Supp. Findings & Concl. 14, 98-99; *see also* Aff. of Eric J. Lorenzini in Supp. of Abbott's Mot. to Strike, filed Nov. 29, 2007 (Dkt. No. 206), ¶¶ 12-18 | | |
| 214 | Supp. Findings & Concl. 53, 102 | | |
| 215 | Supp. Findings & Concl. 53, | | |

32

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | 102-03 | | |
| 216 | 163; Supp. Findings & Concl. 14, 98-99; *see also* Aff. of Eric J. Lorenzini in Supp. of Abbott's Mot. to Strike, filed Nov. 29, 2007 (Dkt. No. 206), ¶¶ 12-18 | | |
| 217 | 163; Supp. Findings & Concl. 13-14, 98-99; *see also* Aff. of Eric J. Lorenzini in Supp. of Abbott's Mot. to Strike, filed Nov. 29, 2007 (Dkt. No. 206), ¶ 20 | | |
| 218 | 160(c) at p. 101; 163; Supp. Findings & Concl. 13-14, 98-99; *see also* Aff. of Eric J. Lorenzini in Supp. of Abbott's Mot. to Strike, filed Nov. 29, 2007 (Dkt. No. 206), ¶ 20 | | |
| 219 | Supp. Findings & Concl. 60-64, 78-90 | | |
| 220 | Supp. Findings & Concl. 60-64, 78-90 | | |
| *Hancock's Interpretation of Section 3.3(b) Would Render It An Unenforceable Penalty Provision* | | | |
| 221 | Supp. Findings & Concl. 65- | | |

| Paragraph Number of Hancock's Annotated Proposed Findings | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Findings of Fact in Hancock's Annotated Proposed Findings | Abbott's Supplemental Response to Hancock's New Proposed Findings of Fact |
|---|---|---|---|
| | 68, 159-63 | | |
| 222 | Supp. Findings & Concl. 65-68, 159-63 | | |
| 223 | Supp. Findings & Concl. 65-68, 159-63 | | |
| 224 | Supp. Findings & Concl. 65-68, 159-63 | | |

5161274.2

## Exhibit B:

**CROSS-REFERENCE CHART FOR
PROPOSED CONCLUSIONS OF LAW**

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| *Jurisdiction, Venue, and Choice of Law* | | | |
| 1 | No Additional or Substitute Conclusions | | |
| 2 | No Additional or Substitute Conclusions | | |
| 3 | No Additional or Substitute Conclusions | | |
| *Hancock's Fraud Claim (Count I)* | | | |
| 4 | 4 | | |
| 5 | 5 | | |
| 6 | 6, 39 | | |
| 7 | 7 | | |
| 8 | 8 | | |
| 9 | 8, Findings of Fact section of Abbott's Post-Trial Add'l & Substitute Proposed Findings of Fact and Concl. of Law ("Add'l & Subst. | *In appropriate circumstances, actual damages may be awarded based on the probability of the injured party's lost chance of success.  See, e.g., Miller v. Allstate, Co., 573 So. 2d 24, 29 (Fla. App. 3* | Hancock does not cite any Illinois case law to support application of the "loss of chance" doctrine.  *See* Hancock's Annotated Prop. Concl., ¶¶ 9, 31, 98.  Furthermore, the law review articles and out-of-state cases on which |

---

[1] Unless otherwise noted, references are to paragraph numbers in the Proposed Conclusions of Law section of Abbott's Post-Trial Add'l & Subs. Proposed Findings of Fact & Conclusions of Law, filed May 5, 2008.

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | Findings"), 179; Abbott's Reply in Supp. of Mot. in Limine to Exclude Expert Testimony of Alan Friedman, pp. 8-9. | *Dist 1990) (value of plaintiffs' opportunity or chance of success at the time of the breach was proper basis for a damages award);* Wachtel v. Nat'l Alfalfa Journal Co., *176 N.W. 801, 803-04 (Iowa 1920) (contestant in a magazine contest recovered damages for lost chance to win when contest was discontinued, and jury was to consider her reasonable probability of success);* Kansas City, M & O Ry. V. Bell*, 197 S.W. 322, 323 (Tex. Civ. App. 1917) (damages for lost chance of winning prize money permitted based on the probability that the plaintiffs' hogs would have won a hog exhibition); RESTATEMENT (SECOND) OF CONTRACTS § 348 (1981); See generally, Melvin Aron Eisenberg,* Probability and Chance in Contract Law*, 45 UCLA L. REV. 1005 (1998); Howard Ross Feldman, Comment,* Chances As Protected Interests: Recovery for the Loss of a Chance and Increased Risk*, 17 U. BALT. L. REV. 139 (1987); Note,* Damages Contingent Upon Chance*, 18 RUTGERS L. REV.* | Hancock relies confirm that the "loss of chance" doctrine has been limited to aleatory contracts, medical malpractice cases, and other highly unusual circumstances not present here. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 348, cmt. d (1981) (rule applies to cases involving "a promise based on a fortuitous event", *i.e.*, an aleatory contract as defined in Section 379); RESTATEMENT (SECOND) OF CONTRACTS § 379, cmt. a ("An aleatory contract is one in which at least one party is under a duty that is conditional on the occurrence of an event that, so far as the parties to the contract are aware, is dependent on chance. Its occurrence may be within the control of third persons or beyond the control of any person. . . . Common examples are contracts of insurance and suretyship, as well as gambling contracts."); "Howard Ross Feldman, Comment, Chances As Protected Interests: Recovery for the Loss of a Chance and Increased Risk, 17 U. Balt. L. Rev. 139, 139 (1987) ("Loss of chance cases typically arise in the context of medical malpractice"); *id.* at 141 n.14 (citing |

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | | *875 (1964).* | cases cited involving aleatory contracts); *Kansas City, M & O Ry. Co. v. Bell*, 197 S.W. 322 (1917) (magazine contest); *Wachtel v. Nat'l Alfalfa Journal Co.*, 176 N.W. 801 (Iowa 1920) (lost chance of winning prize money in a hog exhibition); *Miller v. Allstate Ins. Co.*, 673 So. 2d 24, 25-26, 29 (Fla. App. 3 Dist. 1990) (under Florida law, a "severely injured" driver could seek damages from insurance company for the lost chance of recovery in a product liability action against the automobile manufacturer, where the insurance company spoliated critical evidence). *See also* Abbott's Mem. in Supp. of Mot. in Limine to Exclude Testimony of Mr. Friedman (Dkt. No. 185), pp. 10-12. The successful development of Program Compounds and payment of royalties to Hancock pursuant to the RFA is not conditional on chance, but on the results of clinical trials and other scientific and commercial factors and decision-making. *See, e.g.*, Add'l & Subs. Findings, ¶¶ 79, 99, 116-118. Although some commentators have advocated application of the "loss of |

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | | | chance" doctrine outside the aleatory contract and medical malpractice context, they recognize that is not the current law.  *See, e.g.*, Melvin Aron Eisenberg, <u>Probability And Chance In Contract Law</u>, 45 UCLA L. Rev. 1005, 1076 (1998) (noting that "the role of probability and chance in contract law" has not been converted into "explicit doctrine."); Note, <u>Damages Contingent Upon Chance</u>, 18 Rutgers L. Rev. 875, 888 (1964) (under the American rule, in cases involving  "breach of an ordinary business contract . . . courts have not been willing to award damages for a lost chance to profit, no matter how that chance is computed."); *id.* at 875, 892. Hancock has not cited any cases approving "loss of chance" damages as a remedy for misrepresentation, fraud, or breach of warranty.  *See* Hancock's Annotated Prop. Concl., ¶¶ 9, 31, 98. Nor has Hancock cited any cases approving damages based on the loss of a chance for profits from a business venture.  *Id.*  Allowing damages based on loss of chance for profits from novel, developmental pharmaceutical compounds that had never been |

4

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | | | approved or marketed would constitute a dramatic departure from Illinois law, effectively reversing Illinois' long-standing rule against damages based on lost profits from a new business or new product. *See* Abbott's Add'l & Subs. Concl. of Law, ¶ 8. |
| 10 | 4 | *Under Illinois law, punitive damages may properly be awarded in an action for fraud. See, e.g., Black v. Iovino, 219 Ill.App.3d 378, 393, 580 N.E. 2d 139, 149 (1st Dist. 1991). "Punitive damages are proper in a fraud case where the false representations are wantonly and designedly made." Gehrett v. Chrysler Corp., 317 Ill. Dec. 946, 882 N.E. 2d 1102, 1118 (2d Dist. 2008). They are "appropriate to punish and deter conduct where [the] defendant is guilty of fraud." Obermaier v. Obermaier, 128 Ill.App.3d 602, 610, 470 N.E.2d 1047, 1053 (1st Dist. 1984) (same).* | Punitive damages "will be awarded only where the defendant's conduct is willful or outrageous due to evil motive or a reckless indifference to the rights of others." *Franz v. Calaco Dev. Corp.*, 818 N.E.2d 357, 366 (Ill. App. Ct. 2004). "Because punitive damages are not favored in the law, they are available only in cases where the wrongful act complained of is characterized by wantonness, malice, oppression, willfulness, or other circumstances of aggravation." *Id.* |
| 11 | 4, 8 | *Under Illinois law, "the question of whether to award punitive damages rests within the sound discretion of the trial court and will not be set aside absent an abuse of that* | In a bench trial, a finding of whether the facts prove "willfulness or other aggregating factors" is reviewed using a "manifest-weight standard." *Franz*, 818 N.E.2d at 366. The ultimate |

5

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | | *discretion." Black, 219 Ill.App.3d at 393, 580 N.E.2d at 149; see also Obermaier, 128 Ill.App.3d at 610, 470 N.E.2d at 1053 (same).* | decision of whether to award punitive damages is reviewed using an abuse of discretion standard. *Id.* |
| 12 | 9 | | |
| 13 | 10 | | |
| 14 | 11 | | |
| 14(a) | 11, Add'l & Subst. Findings 66-91 | | |
| 14(b) | 11, Add'l & Subst. Findings 92-106 | | |
| 14(c) | 11, Add'l & Subst. Findings 107-130 | | |
| 14(d) | 11, Add'l & Subst. Findings 131-140 | | |
| 15 | 12 | | |
| 16 | 13 | | |
| 17 | 14 | | |
| 18 | 6, 15, 39 | | |
| 19 | 16 | | |
| 20 | 17 | | |
| 21 | 18 | | |
| *Hancock's Breach of Contract Claim (Count II)* | | | |
| 22 | 19 | | |
| 23 | No Additional or Substitute Conclusions | | |
| 24 | No Additional or | | |

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | Substitute Conclusions | | |
| 25 | No Additional or Substitute Conclusions | | |
| 26 | 23 | | |
| 27 | 24 | | |
| 28 | 25 | | |
| 29 | 26 | | |
| 30 | 27 | | |
| 31 | 8 | *See* Hancock's Proposed Conclusion of Law, ¶ 9 | *See* Abbott's Supplemental Response to Hancock's New Proposed Conclusion of Law, ¶ 9 |
| 32 | 77; Abbott's Post-Trial Supp. Findings of Fact & Concl. of Law ("Supp. Findings & Concl.") 128-63 | | |
| 33 | 77; Supp. Findings & Concl. 128, 132 | | |
| 34 | 77; Supp. Findings & Concl. 152-55 | | |
| 35 | 77; Supp. Findings & Concl. 130, 156 | | |
| 36 | 77; Supp. Findings & Concl. 156; *see also id.* 140-51 | | |
| 37 | 77; Supp. Findings & Concl. 152-55 | | |
| 38 | 34 | *Under Illinois law, a plaintiff may recover punitive damages for breach* | "[I]t is well settled in Illinois that a party suing on a breach of contract may |

7

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | | *of contract "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression." <u>Morrow v. L.A. Goldschmidt Assoc., Inc.</u>, 112 Ill.2d 87, 95, 492 N.E.2d 181, 184 (Ill. 1986) (quoting <u>Bank of Lincolnwood v. Comdisco, Inc.</u>, 111 Ill.App.3d 822, 829, 444 N.E.2d 657, 662 (1st Dist. 1982)).* | recover only compensatory damages[.]" *Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.*, 586 F.Supp. 926, 929 (N.D. Ill. 1984). Punitive damages are only recoverable where the breach constitutes an "independent and willful tort accompanied by fraud, malice, wantonness or oppression." *Id.* Where a plaintiff asserts claims for both breach of contract and an independent tort, punitive damages may only be awarded "if plaintiff is able to sustain his burden under the tort theory." *Id.* |
| 39 | No Additional or Substitute Conclusions | | |
| 40 | 29 | | |
| 41 | 30 | | |
| 41(a) | 30; Add'l & Subs. Findings 66-91 | | |
| 41(b) | 30; Add'l & Subs. Findings 92-106 | | |
| 41(c) | 30; Add'l & Subs. Findings 107-130 | | |
| 41(d) | 30; Add'l & Subs. Findings 131-140 | | |
| 41(e) | 30; Add'l & Subs. Findings 141-154 | | |
| 41(f) | 30; Add'l & Subs. Findings 155-166 | | |

5161369.2

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| 41(g) | 30; Add'l & Subs. Findings 167-177 | | |
| 41(h) | 30; Add'l & Subs. Findings 167-177 | | |
| 41(i) | 30; Add'l & Subs. Findings 50-177 | | |
| 42 | 31 | | |
| 43 | 32 | | |
| 44 | 33 | | |
| 45 | 34 | | |
| *Hancock's Indemnification Claim (Count III)* | | | |
| 46 | 35 | | |
| 47 | 36 | | |
| 48 | 37 | | |
| 49 | 38 | | |
| *Hancock's Rescission Claim (Prayer (e))* | | | |
| 50 | Supp. Findings & Concl. 104 | | |
| 51 | Supp. Findings & Concl. 104 | | |
| 52 | Supp. Findings & Concl. 78-90 | | |
| 53 | 39 | | |
| 54 | Abbott's Mem. in Opp. to Hancock's Mot. for | | |

9

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | Summ. Judg., filed Aug. 21, 2007 (Dkt. 167), pp. 25-27. | | |
| 55 | 41; Add'l & Subs. Findings 178 | | |
| 56 | Supp. Findings & Concl. 102-03 | | |
| 57 | Supp. Findings & Concl. 102-03 | | |
| 58 | Supp. Findings & Concl. 91-123, 126 | | |
| 59 | Supp. Findings & Concl. 98-99 | | |
| 60 | Supp. Findings & Concl. 78-90 | | |
| 61 | Supp. Findings & Concl. 69-77 | | |
| 62 | Supp. Findings & Concl. 69-72, 74 | | |
| 63 | Supp. Findings & Concl. 76 | | |
| 64 | Supp. Findings & Concl. 76-77 | | |
| 65 | Supp. Findings & Concl. 76-77, 116-20 | | |
| 66 | Supp. Findings & Concl. 77, 117-20 | | |
| 67 | Supp. Findings & Concl. 5; Abbott's Mot. to | | |

10

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | Overrule Hancock's Objections, filed Apr. 4, 2008 (Dkt. 380), p. 11 | | |
| 68 | Add'l & Subs. Findings, 39-42; Abbott's Supp. Findings & Concl. ¶¶ 69-127 | | |
| 69 | Add'l & Subs. Findings, 18, 34 | | |
| *Abbott's Affirmative Defenses* | | | |
| 70 | No Additional or Substitute Conclusions | | |
| 71 | No Additional or Substitute Conclusions | | |
| 72 | No Additional or Substitute Conclusions | | |
| 73 | 73-77, Add'l & Subs. Findings 141-154; Supp. Findings & Concl. 128-63 | | |
| 74 | Supp. Findings & Concl. 91-123 | | |
| 75 | Supp. Findings & Concl. 91-123 | | |
| 76 | Supp. Findings & Concl. 125 | | |
| 77 | Supp. Findings & Concl. | | |

11

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| | 125 | | |
| 78 | Supp. Findings & Concl. 126 | | |
| 79 | No Additional or Substitute Conclusions | | |
| 80 | Supp. Findings & Concl. 126 | | |
| 81 | Supp. Findings & Concl. 127 | | |
| 82 | Supp. Findings & Concl. 33-34, 48-49, 110, 127 | | |
| 83 | Supp. Findings & Concl. 33-34, 48-49, 110, 127 | | |
| 84 | Supp. Findings & Concl. 33-34, 48-49, 110, 127 | | |
| 85 | Supp. Findings & Concl. 33-34, 48-49, 110, 127 | | |
| 86 | Supp. Findings & Concl. 105-110, 124 | | |
| 87 | Supp. Findings & Concl. 105-110, 124 | | |
| 88 | Supp. Findings & Concl. 91-123 | | |
| 89 | Supp. Findings & Concl. 91-123 | | |
| 90 | No Additional or Substitute Conclusions | | |
| 91 | No Additional or Substitute Conclusions | | |

| Paragraph Number of Hancock's Conclusions of Law | Paragraph Numbers Containing Abbott's Response[1] | New Proposed Conclusions of Law in Hancock's Annotated Proposed Conclusions of Law | Abbott's Supplemental Response to Hancock's New Proposed Conclusions of Law |
|---|---|---|---|
| 92 | No Additional or Substitute Conclusions | | |
| 93 | No Additional or Substitute Conclusions | | |
| 94 | No Additional or Substitute Conclusions | | |
| 95 | 26 | | |
| 96 | 35-38 | | |
| 97 | 8 | | |
| 98 | 8 | *See* Hancock's Proposed Conclusion of Law, ¶ 9. | *See* Abbott's Supplemental Response to Hancock's New Proposed Conclusion of Law, ¶ 9 |
| 99 | 8 | | |
| 100 | No Additional or Substitute Conclusions | | |
| 101 | No Additional or Substitute Conclusions | | |
| 102 | 10-18, 30-34, 37-42 | | |

5161369.2